1   Peter K. Stris (SBN 216226)
       peter.stris@strismaher.com
2   Brendan S. Maher (SBN 217043)
       brendan.maher@strismaher.com
3   Victor O'Connell (SBN 288094)
       victor.oconnell@strismaher.com
4   Kristina Kourasis (SBN 291729)
       kristina.kourasis@strismaher.com
5   STRIS & MAHER LLP
    725 South Figueroa Street, Suite 1830
6   Los Angeles, CA 90017
    Telephone: (213) 995-6800
7   Facsimile: (213) 261-0299

8   Seth Zajac (SBN 285718)
       s.zajac@sovhealth.com
9   SOVEREIGN ASSET MANAGEMENT, INC.
    d/b/a SOVEREIGN HEALTH GROUP
10  1211 Puerta Del Sol, Suite 280
    San Clemente, CA 92673
11  Telephone: (949) 276-5553
    Facsimile: (949) 272-5797

12

13  *Attorneys for Plaintiffs*

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                   SOUTHERN DIVISION

17  DUAL DIAGNOSIS TREATMENT          Case No.
    CENTER, INC., a California
18  corporation; SATYA HEALTH OF      **COMPLAINT FOR:**
    CALIFORNIA, INC., a California
19  corporation; ADEONA              **VIOLATIONS OF ERISA**
    HEALTHCARE, INC., a California   **(29 U.S.C. § 1132(A)(1)(B))**
20  corporation; SOVEREIGN HEALTH
    OF FLORIDA, INC., a Delaware     **VIOLATIONS OF ERISA**
21  corporation; SOVEREIGN HEALTH    **(29 U.S.C. § 1132(A)(2))**
    OF PHOENIX, INC., a Delaware
22  corporation; and SOVEREIGN ASSET **VIOLATIONS OF ERISA**
    MANAGEMENT, INC., a Delaware     **(29 U.S.C. § 1132(A)(3))**
23  corporation,
                                     JURY TRIAL DEMANDED
24              Plaintiffs,

25          v.

26  BLUE CROSS OF CALIFORNIA d/b/a
    ANTHEM BLUE CROSS; ANTHEM
27  HEALTH PLANS, INC. d/b/a
    ANTHEM BLUE CROSS AND BLUE
28  SHIELD; ANTHEM HEALTH PLANS

Stris &
Maher LLP

                              1
              COMPLAINT FOR VIOLATIONS OF ERISA

1  OF KENTUCKY, INC. d/b/a
   ANTHEM BLUE CROSS AND BLUE
2  SHIELD; ANTHEM INSURANCE
   COMPANIES, INC. d/b/a ANTHEM
3  BLUE CROSS AND BLUE SHIELD;
   ARKANSAS BLUE CROSS AND
4  BLUE SHIELD d/b/a
   BLUEADVANTAGE
5  ADMINISTRATORS OF
   ARKANSAS; BCBSM, INC. d/b/a
6  BLUE CROSS BLUE SHIELD OF
   MINNESOTA; BLUE CROSS AND
7  BLUE SHIELD OF ARIZONA, INC.;
   BLUE CROSS AND BLUE SHIELD
8  OF FLORIDA, INC. d/b/a FLORIDA
   BLUE; BLUE CROSS AND BLUE
9  SHIELD OF KANSAS CITY, INC.
   d/b/a BLUE KC; BLUE CROSS AND
10 BLUE SHIELD OF
   MASSACHUSETTS HMO BLUE,
11 INC.; BLUE CROSS AND BLUE
   SHIELD OF NEBRASKA; BLUE
12 CROSS AND BLUE SHIELD OF
   NORTH CAROLINA; BLUE CROSS
13 BLUE SHIELD OF TENNESSEE,
   INC.; BLUE CROSS BLUE SHIELD
14 OF WYOMING; BLUE CROSS OF
   IDAHO HEALTH SERVICE, INC.
15 d/b/a BLUE CROSS OF IDAHO;
   CALIFORNIA PHYSICIANS'
16 SERVICE d/b/a BLUE SHIELD OF
   CALIFORNIA; COMMUNITY
17 INSURANCE COMPANY d/b/a
   ANTHEM BLUE CROSS AND BLUE
18 SHIELD; EMPIRE HEALTHCHOICE
   ASSURANCE, INC. d/b/a EMPIRE
19 BLUECROSS BLUESHIELD and/or
   ANTHEM BLUE CROSS AND BLUE
20 SHIELD; GROUP
   HOSPITALIZATION AND MEDICAL
21 SERVICES, INC. d/b/a CAREFIRST
   BLUECROSS BLUESHIELD;
22 HAWAII MEDICAL SERVICE
   ASSOCIATION d/b/a BLUE CROSS
23 BLUE SHIELD OF HAWAI'I;
   HEALTH CARE SERVICE
24 CORPORATION, A MUTUAL
   LEGAL RESERVE COMPANY d/b/a
25 BLUECROSS BLUESHIELD OF
   ILLINOIS; BLUECROSS
26 BLUESHIELD OF MONTANA; and/or
   BLUECROSS BLUESHIELD OF
27 TEXAS; HIGHMARK, INC. d/b/a
   HIGHMARK BLUE SHIELD;
28 HORIZON HEALTHCARE

Stris &
Maher LLP

2

SERVICES, INC. d/b/a HORIZON
BLUE CROSS BLUE SHIELD OF
NEW JERSEY; INDEPENDENCE
BLUE CROSS, INC.; LOUISIANA
HEALTH SERVICE & INDEMNITY
COMPANY d/b/a BLUE CROSS AND
BLUE SHIELD OF LOUISIANA;
PREMERA BLUE CROSS; REGENCE
INSURANCE HOLDING
CORPORATION d/b/a REGENCE
BLUECROSS BLUESHIELD OF
OREGON; REGENCE BLUECROSS
BLUESHIELD OF UTAH; and/or
REGENCE BLUESHIELD; ROCKY
MOUNTAIN HOSPITAL AND
MEDICAL SERVICE, INC. d/b/a
BLUE CROSS AND BLUE SHIELD
OF COLORADO and/or ANTHEM
BLUE CROSS AND BLUE SHIELD;
3M EMPLOYEES WELFARE
BENEFITS ASSOCIATION (TRUST
II); ALLTECH, INC. BENEFIT PLAN;
AWC EMPLOYEE BENEFIT TRUST;
BAXTER INTERNATIONAL INC.
AND SUBSIDIARIES WELFARE
BENEFIT PLAN; CHICO'S FAS, INC.
HEALTH & WELFARE BENEFIT
PLAN; CONAGRA FOODS, INC.
WELFARE BENEFIT WRAP PLAN;
COVANCE, INC. HEALTH &
WELFARE PLAN; C.R. BARD, INC.
EMPLOYEE BENEFIT PLAN;
EATON CORPORATION MEDICAL
PLAN FOR U.S. EMPLOYEES;
ELLIOTT ELECTRIC SUPPLY, L.P.
HEALTH BENEFIT PLAN; ERNST &
YOUNG MEDICAL PLAN; GEICO
CORPORATION CONSOLIDATED
WELFARE BENEFITS PROGRAM;
GREEN TREE COMPREHENSIVE
WELFARE PLAN; GROUP HEALTH
& WELFARE BENEFITS PLAN OF
AMERICAN EAGLE AIRLINES, INC.
& ITS AFFILIATES; THE GROUP
LIFE AND HEALTH BENEFITS
PLAN FOR EMPLOYEES OF
PARTICIPATING AMR
CORPORATION SUBSIDIARIES;
H.E. BUTT GROCERY COMPANY
WELFARE BENEFIT PLAN;
HUNTINGTON BANCSHARES
INCORPORATED HEALTH CARE
PLAN; J.R. SIMPLOT COMPANY
GROUP HEALTH & WELFARE
PLAN; LINE CONSTRUCTION

COMPLAINT FOR VIOLATIONS OF ERISA

Stris &
Maher LLP

BENEFIT FUND; LIVE NATION ENTERTAINMENT, INC. GROUP BENEFITS PLAN; MARTIN MARIETTA MEDICAL PLAN; THE MILTON S. HERSHEY MEDICAL CENTER HEALTH AND WELFARE PLAN; NAVY FEDERAL CREDIT UNION WELFARE BENEFITS PLAN; NOVARTIS CORPORATION WELFARE BENEFIT PLAN; ORASURE TECHNOLOGIES INC. HEALTH AND WELFARE PLAN; OREGON TEAMSTER EMPLOYERS TRUST; OWENS-ILLINOIS SALARY EMPLOYEES WELFARE BENEFIT PLAN; PETER KIEWIT SONS', INC. HEALTH & WELFARE PLAN; RIO TINTO AMERICA INC. HEALTH & WELFARE PLAN; R.R. DONNELLEY & SONS COMPANY GROUP BENEFITS PLAN; SAS INSTITUTE INC. WELFARE BENEFITS PLAN; SEABRIGHT INSURANCE COMPANY GROUP HEALTH PLAN; TUV AMERICA, INC. INSURANCE BENEFITS PLAN; TWIN CITIES BAKERY DRIVERS HEALTH & WELFARE FUND; VERIZON NATIONAL PPO WEST; VERTICAL SEARCH WORKS, INC. MEDICAL PLAN; VIASAT, INC. EMPLOYEE BENEFIT PLAN; WAL-MART STORES, INC. ASSOCIATES HEALTH & WELFARE PLAN; WEBMD HEALTH & WELFARE PLAN; WELLS FARGO & CO. HEALTH PLAN; XEROX BUSINESS SERVICES, LLC FUNDED WELFARE BENEFIT PLAN; and DOES 1 to 10, inclusive,

Defendants.

Stris & Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

## INTRODUCTION

1.     The Blue Cross Blue Shield Association (the "Association") and its affiliated insurance companies (the "Blue Cross Companies") (collectively "Blue Cross") provide health insurance coverage to about one in three Americans. According to Blue Cross's own press, ninety-one percent of health care providers have contracted with Blue Cross entities to offer discounted services to Blue Cross members, and ninety-seven percent of the claims that Blue Cross pays are to such "in-network" providers.

2.     This litigation arises out of Blue Cross's efforts to coerce the few remaining "out-of-network" providers, such as Plaintiffs Dual Diagnosis Treatment Center, Inc.; Satya Health of California, Inc.; Adeona Healthcare, Inc.; Sovereign Health of Florida, Inc.; and Sovereign Health of Phoenix, Inc., to join Blue Cross's vast provider network.

3.     In a nutshell, Blue Cross refuses to honor assignments its individual insureds give to out-of network providers like Plaintiffs. As a matter of practice, Plaintiffs submit claims for benefits to Blue Cross Companies on industry standard UB-04 forms; on those forms they explicitly indicate that they have received an assignment of benefits. The Blue Cross Companies flatly and summarily ignore the assignments and mail payments to their individual insureds. In this case, Blue Cross's systemic disregard of these valid assignment contracts led the Blue Cross Companies to send *millions* of dollars to chemically dependent individuals instead of Plaintiffs, who as a result can only recover pennies on the dollar for the medical services they provided.

4.     Because the vast majority of Blue Cross insureds who seek treatment from Plaintiffs receive health insurance through work, their benefits are covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Plaintiffs became "beneficiaries" under ERISA when they received valid

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

assignments of benefits from their Blue Cross insured patients, and they became "claimants" when they submitted UB-04 claim forms to the Blue Cross Companies.

5.     Plaintiffs bring this suit to enforce their valid assignments of benefits and to vindicate their rights under ERISA, and to the extent applicable, state law. Plaintiffs not only seek to recover damages for benefit claims that have been wrongfully denied, but also to enjoin Blue Cross from blatantly disregarding numerous federal regulations that require benefit denials to be in writing, specific, and reasoned—regulations that stand as an obstacle to Blue Cross's cynical bid to stonewall and bully smaller medical providers.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and pursuant to 28 U.S.C. § 1367.

7.     ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All Defendants are either residents of the United States or subject to service in the United States and this Court therefore has personal jurisdiction over them.

8.     Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because much of the conduct that is the subject of this lawsuit occurred within this District, and at least one Defendant resides in this District and all Defendants conduct business within this District, either directly or through wholly owned and controlled subsidiaries.

## THE PARTIES

**A.     Plaintiffs**

9.     Plaintiffs are entities that provide in- and outpatient substance abuse and/or mental health treatment in California, Arizona, and Florida.

10.     Dual Diagnosis Treatment Center, Inc. ("Dual Diagnosis") is a corporation duly organized and existing under the laws of California. Dual Diagnosis

Stris &
Maher LLP

6

does business as "Sovereign Health of California," and on occasion under other names in accordance with its governing certifications and licensures. Dual Diagnosis is certified to operate and maintain behavioral health treatment facilities in San Clemente, Culver City, and Palm Springs, California.

11.    Satya Health of California, Inc. ("Satya") is a corporation duly organized and existing under the laws of California. Satya does business as "Sovereign by the Sea II," and on occasion under other names in accordance with its governing certifications and licensures. Satya is licensed to operate and maintain behavioral health treatment facilities in San Clemente, Culver City, and Palm Springs, California.

12.    Adeona Healthcare, Inc. ("Adeona") is a corporation duly organized and existing under the laws of California. Adeona does business as "Sovereign Health Rancho/San Diego." Adeona is licensed to operate and maintain a children's group home in El Cajon, California.

13.    Sovereign Health of Florida, Inc. ("Sovereign Florida") is a corporation duly organized and existing under the laws of Delaware, doing business as "Sovereign Health of Florida." Sovereign Florida is licensed to operate and maintain a residential care facility in Fort Myers, Florida.

14.    Sovereign Health of Phoenix, Inc. ("Sovereign Phoenix") is a corporation duly organized and existing under the laws of Delaware, doing business as "Sovereign Health of Phoenix." Sovereign Phoenix is licensed to operate and maintain a behavioral health residential facility in Chandler, Arizona.

15.    Sovereign Asset Management, Inc. ("SAM") is a corporation duly organized and existing under the laws of Delaware, doing business as "Sovereign Health Group."

16.    For purposes of this Complaint, Dual Diagnosis, Satya, Adeona, Sovereign Florida, Sovereign Phoenix, and SAM are collectively referred or

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1   individually referred to as "Sovereign," as context requires. The Sovereign entities

2   are also collectively referred to as "Provider Plaintiffs" or "Plaintiffs."

3   **B.     Significant Non-Parties**

4          17.    Medical Concierge, Inc. ("Medlink") is a corporation duly organized

5   and existing under the laws of California, doing business as "Medlink." Medlink is

6   licensed to operate and maintain an adult residential facility ("ARF") for ambulatory

7   mentally ill adults. At pertinent times, Medlink agreed to provide rehabilitation

8   services to Sovereign as a fully furnished and appropriately licensed ARF, and to act

9   as Sovereign's agent in certain intake and claim matters, and Sovereign agreed to

10  provide extensive non-medical management and administrative services, in exchange

11  for fair consideration.

12         18.    MedPro Billing, Inc. ("MedPro") is a corporation duly organized and

13  existing under the laws of Florida. MedPro provides benefits verification and

14  eligibility information, utilization review, and medical billing and collection services

15  to mental health and substance abuse treatment providers. At pertinent times, MedPro

16  agreed to provide benefits verification and eligibility information, utilization review,

17  and medical billing and collection services to, and in certain ways act as an agent for,

18  Sovereign, in exchange for fair consideration.

19  **C.     Defendants**

20         19.    This lawsuit involves detoxification, residential treatment, day

21  treatment, and other drug abuse recovery or treatment services rendered by Provider

22  Plaintiffs to many individuals ("Former Patients") who Plaintiffs are informed and

23  believe, at all relevant times, possessed health insurance covering some or all of the

24  services that Plaintiffs provided.

25         20.    Plaintiffs are informed and believe that the relevant health insurance of

26  each Former Patient was provided by an employer-sponsored plan covered by

27  ERISA.

Stris &
Maher LLP   28

COMPLAINT FOR VIOLATIONS OF ERISA

21.     Plaintiffs are also informed and believe that, with regard to each and every Former Patient, the ERISA-governed coverage was insured and/or administered by one or more Blue Cross Company.

22.     **<u>The Welfare Plan Defendants.</u>** Based upon documents obtained by Plaintiffs to date, Plaintiffs are informed and believe that the health insurance of each Former Patient was obtained through what ERISA defines as an "employee benefit plan." 29 U.S.C. § 1002(3). Specifically, Plaintiffs are informed and believe that the health insurance of each Former Patient was obtained through what ERISA defines as a "welfare plan." 29 U.S.C. § 1002(1). Section 502(d)(1) of ERISA, 29 U.S.C. § 1132(d)(1) provides that "[a]n employee benefit plan [such as a welfare plan] may sue or be sued under this subchapter as an entity . . . ." Plaintiffs name the following ERISA-governed welfare plans as defendants in this lawsuit:

a.     <u>3M Employees Welfare Benefits Association (Trust II)</u> (the "3M Plan"). Plaintiffs are informed and believe that Defendant 3M Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the 3M Plan is 3M Center 224-2W-15, St. Paul, Minnesota 55144.

b.     <u>Alltech, Inc. Benefit Plan</u> (the "Alltech Plan"). Plaintiffs are informed and believe that Defendant Alltech Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Alltech Plan is 3031 Catnip Hill Pike, Nicholasville, Kentucky 40356.

c.     <u>AWC Employee Benefit Trust</u> (the "AWC Plan"). Plaintiffs are informed and believe that Defendant AWC Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the AWC Plan is 1076 Franklin Street SE, Olympia, Washington 98501.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1    d.    Baxter International Inc. and Subsidiaries Welfare Benefit Plan
2 (the "Baxter Plan"). Plaintiffs are informed and believe that Defendant Baxter Plan
3 is an employer-sponsored welfare plan capable of suing and being sued pursuant to
4 section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the
5 Baxter Plan is One Baxter Parkway, Deerfield, Illinois 60015.

6    e.    Chico's FAS, Inc. Health & Welfare Benefit Plan (the "FAS
7 Plan"). Plaintiffs are informed and believe that Defendant FAS Plan is an employer-
8 sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of
9 ERISA, 29 U.S.C. § 1132(d). The principal place of business of the FAS Plan is 11215
10 Metro Parkway, Fort Meyers, Florida 33966.

11    f.    ConAgra Foods, Inc. Welfare Benefit WRAP Plan (the "ConAgra
12 Plan"). Plaintiffs are informed and believe that Defendant ConAgra Plan is an
13 employer-sponsored welfare plan capable of suing and being sued pursuant to section
14 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the
15 ConAgra Plan is 1 Conagra Drive, Omaha, Nebraska 68102.

16    g.    Covance, Inc. Health & Welfare Plan (the "Covance Plan").
17 Plaintiffs are informed and believe that Defendant Covance Plan is an employer-
18 sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of
19 ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Covance Plan is
20 210 Carnegie Center, Princeton, New Jersey 08540.

21    h.    C.R. Bard, Inc. Employee Benefit Plan (the "Bard Plan").
22 Plaintiffs are informed and believe that Defendant Bard Plan is an employer-
23 sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of
24 ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Bard Plan is 730
25 Central Avenue, Murray Hill, New Jersey 07974.

26    i.    Eaton Corporation Medical Plan for U.S. Employees (the "Eaton
27 Plan"). Plaintiffs are informed and believe that Defendant Eaton Plan is an employer-
28 sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of

Stris &
Maher LLP

10

1   ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Eaton Plan is

2   1000 Eaton Boulevard, Cleveland, Ohio 44122.

3         j.      Elliott Electric Supply, L.P. Health Benefit Plan (the "Elliott

4   Electric Plan"). Plaintiffs are informed and believe that Defendant Elliott Electric

5   Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant

6   to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of

7   the Elliott Electric Plan is 2526 North Stallings Drive, Nacogdoches, Texas 75963.

8         k.      Ernst & Young Medical Plan (the "Ernst & Young Plan").

9   Plaintiffs are informed and believe that Defendant Ernst & Young Plan is an

10  employer-sponsored welfare plan capable of suing and being sued pursuant to section

11  502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Ernst

12  & Young Plan is 200 Plaza Drive, Secaucus, New Jersey 07094.

13        l.      Geico Corporation Consolidated Welfare Benefits Program (the

14  "Geico Plan"). Plaintiffs are informed and believe that Defendant Geico Plan is an

15  employer-sponsored welfare plan capable of suing and being sued pursuant to section

16  502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Geico

17  Plan is One Geico Plaza, Washington D.C. 20076.

18        m.      Green Tree Comprehensive Welfare Plan (the "Green Tree Plan").

19  Plaintiffs are informed and believe that Defendant Green Tree Plan is an employer-

20  sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of

21  ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Green Tree Plan

22  is 600 Landmark Towers, 345 St. Peter Street, St. Paul, Minnesota 55102.

23        n.      Group Health & Welfare Benefits Plan of American Eagle

24  Airlines, Inc. & Its Affiliates (the "AEA Plan"). Plaintiffs are informed and believe

25  that Defendant AEA Plan is an employer-sponsored welfare plan capable of suing

26  and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The

27  principal place of business of the AEA Plan is 4333 Amon Carter Boulevard, MD-

28  5485, Fort Worth, Texas 76155.

Stris &
Maher LLP

1         o.     The Group Life and Health Benefits Plan for Employees of

2 Participating AMR Corporation Subsidiaries (the "American Air Plan"). Plaintiffs are

3 informed and believe that Defendant American Air Plan is an employer-sponsored

4 welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA,

5 29 U.S.C. § 1132(d). The principal place of business of the American Air Plan is 4333

6 Amon Carter Boulevard, Fort Worth, Texas 76155.

7         p.     H.E. Butt Grocery Company Welfare Benefit Plan (the "H.E. Butt

8 Grocery Plan"). Plaintiffs are informed and believe that Defendant H.E. Butt Grocery

9 Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant

10 to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of

11 the H.E. Butt Grocery Plan is 646 South Main Avenue, San Antonio, Texas 78204.

12         q.     Huntington Bancshares Incorporated Health Care Plan (the

13 "Huntington Plan"). Plaintiffs are informed and believe that Defendant Huntington

14 Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant

15 to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of

16 the Huntington Plan is 41 South High Street HC0339, Columbus, Ohio 43215.

17         r.     J.R. Simplot Company Group Health & Welfare Plan (the

18 "Simplot Plan"). Plaintiffs are informed and believe that Defendant Simplot Plan is

19 an employer-sponsored welfare plan capable of suing and being sued pursuant to

20 section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the

21 Simplot Plan is 999 Main Street, Boise, Idaho 83702.

22         s.     Line Construction Benefit Fund (the "Lineco Plan"). Plaintiffs are

23 informed and believe that Defendant Lineco Plan is an employer-sponsored welfare

24 plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C.

25 § 1132(d). The principal place of business of the Lineco Plan is 2000 Springer Drive,

26 Lombard, Illinois 60148.

27         t.     Live Nation Entertainment, Inc. Group Benefits Plan (the "Live

28 Nation Plan"). Plaintiffs are informed and believe that Defendant Live Nation Plan is

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Live Nation Plan is 7060 Hollywood Boulevard, 2nd Floor, Hollywood, California 90028.

u. <u>Martin Marietta Medical Plan</u> (the "Martin Marietta Plan"). Plaintiffs are informed and believe that Defendant Martin Marietta Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Martin Marietta Plan is 2710 Wycliff Road, Raleigh, North Carolina 27607.

v. <u>The Milton S. Hershey Medical Center Health and Welfare Plan</u> (the "Milton S. Hershey Plan"). Plaintiffs are informed and believe that Defendant Milton S. Hershey Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Milton S. Hershey Plan is 500 University Drive, Hershey, Pennsylvania 17033.

w. <u>Navy Federal Credit Union Welfare Benefits Plan</u> (the "Navy Credit Union Plan"). Plaintiffs are informed and believe that Defendant Navy Credit Union Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Navy Credit Union Plan is 820 Follin Lane, Merrifield, Virginia 22119.

x. <u>Novartis Corporation Welfare Benefit Plan</u> (the "Novartis Plan"). Plaintiffs are informed and believe that Defendant Novartis Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Novartis Plan is One South Ridgedale Avenue, East Hanover, New Jersey 07936.

y. <u>Orasure Technologies Inc. Health and Welfare Plan</u> (the "Orasure Tech Plan"). Plaintiffs are informed and believe that Defendant Orasure Tech Plan is

Stris &
Maher LLP

13

1   an employer-sponsored welfare plan capable of suing and being sued pursuant to

2   section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the

3   Orasure Tech Plan is 220 East First Street, Bethlehem, Pennsylvania 18015.

4          z.      <u>Oregon Teamster Employers Trust</u> (the "Oregon Teamster Plan").

5   Plaintiffs are informed and believe that Defendant Oregon Teamster Plan is an

6   employer-sponsored welfare plan capable of suing and being sued pursuant to section

7   502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Oregon

8   Teamster Plan is 3140 NE Broadway Street, Portland, Oregon 97208.

9          aa.     <u>Owens-Illinois Salary Employees Welfare Benefit Plan</u> (the

10  "Owens-Illinois Plan"). Plaintiffs are informed and believe that Defendant Owens-

11  Illinois Plan is an employer-sponsored welfare plan capable of suing and being sued

12  pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of

13  business of the Owens-Illinois Plan is One Michael Owens Way, Perrysburg, Ohio

14  43551.

15         bb.     <u>Peter Kiewit Sons', Inc. Health & Welfare Plan</u> (the "Kiewit

16  Plan"). Plaintiffs are informed and believe that Defendant Kiewit Plan is an

17  employer-sponsored welfare plan capable of suing and being sued pursuant to section

18  502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Kiewit

19  Plan is 1000 Kiewit Plaza, 3555 Farnam Street, Omaha, Nebraska 68131.

20         cc.     <u>Rio Tinto America Inc. Health & Welfare Plan</u> (the "Rio Tinto

21  Plan"). Plaintiffs are informed and believe that Defendant Rio Tinto Plan is an

22  employer-sponsored welfare plan capable of suing and being sued pursuant to section

23  502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Rio

24  Tinto Plan is 4700 Daybreak Parkway, South Jordan, Utah 84095.

25         dd.     <u>R.R. Donnelley & Sons Company Group Benefits Plan</u> (the "R.R.

26  Donnelley Plan"). Plaintiffs are informed and believe that Defendant R.R. Donnelley

27  Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant

28

1   to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of

2   the R.R. Donnelley Plan is 111 South Wacker Drive, Chicago, Illinois 60606.

3            ee.   <u>SAS Institute Inc. Welfare Benefits Plan</u> (the "SAS Plan").

4   Plaintiffs are informed and believe that Defendant SAS Plan is an employer-

5   sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of

6   ERISA, 29 U.S.C. § 1132(d). The principal place of business of the SAS Plan is SAS

7   Campus Dr., Cary, NC 27513.

8            ff.   <u>Seabright Insurance Company Group Health Plan</u> (the "Seabright

9   Plan"). Plaintiffs are informed and believe that Defendant Seabright Plan is an

10  employer-sponsored welfare plan capable of suing and being sued pursuant to section

11  502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the

12  Seabright Plan is 1501 Fourth Avenue, Suite 2600, Seattle, Washington 98101.

13           gg.   <u>TUV America, Inc. Insurance Benefits Plan</u> (the "TUV Plan").

14  Plaintiffs are informed and believe that the TUV Plan is an employer-sponsored

15  welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA,

16  29 U.S.C. § 1132(d). The principal place of business of the TUV Plan is 10 Centennial

17  Drive, Peabody, Massachusetts 01960.

18           hh.   <u>Twin Cities Bakery Drivers Health & Welfare Fund</u> (the "Bakery

19  Drivers Plan"). Plaintiffs are informed and believe that Defendant Bakery Drivers

20  Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant

21  to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of

22  the Bakery Drivers Plan is 2919 Eagandale Boulevard, Suite 120, Eagan, Minnesota

23  55121.

24           ii.   <u>Verizon National PPO West</u> (the "Verizon Plan"). Plaintiffs are

25  informed and believe that Defendant Verizon Plan is an employer-sponsored welfare

26  plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C.

27  § 1132(d). The principal place of business of the Verizon Plan is One Verizon Way,

28  Basking Ridge, New Jersey 07920.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

jj.     Vertical Search Works, Inc. Medical Plan (the "Vertical Plan"). Plaintiffs are informed and believe that Defendant Vertical Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Vertical Plan is 1919 Gallows Road, Suite 1050, Vienna, Virginia 22182.

kk.     ViaSat, Inc. Employee Benefit Plan (the "ViaSat Plan"). Plaintiffs are informed and believe that Defendant ViaSat Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the ViaSat Plan is 6155 El Camino Real, Carlsbad, California 92009.

ll.     Wal-Mart Stores, Inc. Associates Health & Welfare Plan (the "Wal-Mart Plan"). Plaintiffs are informed and believe that Defendant Wal-Mart Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Wal-Mart Plan is 508 Southwest 8th Street, Bentonville, Arkansas 72716.

mm.    WebMD Health & Welfare Plan (the "WebMD Plan"). Plaintiffs are informed and believe that Defendant WebMD Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the WebMD Plan is 111 Eighth Avenue, 7th Floor, New York, New York 10011.

nn.    Wells Fargo & Co. Health Plan (the "WF Plan"). Plaintiffs are informed and believe that Defendant WF Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the WF Plan is Wells Fargo & Company, 333 Market Street, MAC A0109-080, 8th Floor, San Francisco, California 94105.

oo.    Xerox Business Services, LLC Funded Welfare Benefit Plan (the "Xerox Plan"). Plaintiffs are informed and believe that Defendant Xerox Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section

Stris & Maher LLP

16

502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Xerox Plan is 1303 Ridgeview, R382-LV301, Lewisville, Texas 75057.

        pp.   <u>DOES 1 through 10, inclusive</u>. Plaintiffs' efforts to identify the ERISA-governed welfare plans through which each Former Patient obtained health insurance are ongoing. This process is extremely time and resource intensive. Plaintiffs intend to amend this Complaint to include additional Welfare Plan Defendants if and when Plaintiffs ascertain their identities.

23.    The welfare plans listed above are collectively referred to hereafter as the "Welfare Plan Defendants."

24.    **<u>The Blue Cross Defendants.</u>** Plaintiffs are informed and believe that each and every Welfare Plan Defendant has a contractual relationship with one or more Blue Cross Company that is relevant to the claims asserted in this lawsuit. Plaintiffs are informed and believe that the Association is comprised of "thirty-seven independent and locally operated Blue Cross and Blue Shield companies and the Blue Cross and Blue Shield Association," which "owns and manages the Blue Cross and Blue Shield trademarks and names in more than 170 countries and territories around the world." *See* http://www.bcbs.com/about-the-association/. Plaintiffs name the following members of the Association as defendants in this lawsuit:

        a.   <u>Anthem Health Plans, Inc</u>. ("Connecticut Blue"). Plaintiffs are informed and believe that Defendant Connecticut Blue is a nonprofit corporation, authorized to do business in the state of Connecticut. Defendant Connecticut Blue does business under the trade name Anthem Blue Cross and Blue Shield. Its principal place of business is located at 370 Bassett Road, North Haven, Connecticut 06473.

        b.   <u>Anthem Health Plans of Kentucky, Inc.</u> ("Kentucky Blue"). Plaintiffs are informed and believe that Defendant Kentucky Blue is a corporation, authorized to do business in the state of Kentucky. Defendant Kentucky Blue does business under the trade name Anthem Blue Cross and Blue Shield. Its principal place of business is located at 13550 Triton Park Boulevard, Louisville, Kentucky 40223.

Stris & Maher LLP

17

c.      Anthem Insurance Companies, Inc. ("Indiana Blue"). Plaintiffs are informed and believe that Defendant Indiana Blue is registered to do business in Indiana as a domestic insurance corporation. Indiana Blue does business under the trade name Anthem Blue Cross and Blue Shield. Its principal place of business is located at 120 Monument Circle, Indianapolis, Indiana 46204.

d.      Arkansas Blue Cross and Blue Shield ("Arkansas Blue"). Plaintiffs are informed and believe that Defendant Arkansas Blue is a not-for-profit mutual insurance company, authorized to do business in the state of Arkansas. Defendant Arkansas Blue does business under the trade name BlueAdvantage Administrators of Arkansas. Its principal place of business is located at 601 S. Gaines Street, Little Rock, Arkansas 72203.

e.      BCBSM, Inc. ("Minnesota Blue"). Plaintiffs are informed and believe that Defendant Minnesota Blue is a nonprofit corporation, authorized to do business in the state of Minnesota. Defendant Minnesota Blue does business under the trade name Blue Cross Blue Shield of Minnesota. Its principal place of business is located at 3535 Blue Cross Road, Eagan, Minnesota 55122.

f.      Blue Cross and Blue Shield of Arizona, Inc. ("Arizona Blue"). Plaintiffs are informed and believe that Defendant Arizona Blue is a nonprofit corporation registered to do business in Arizona. Its principal place of business is located at 2444 West Las Palmaritas Drive, Phoenix, Arizona 85021.

g.      Blue Cross and Blue Shield of Florida, Inc. ("Florida Blue"). Plaintiffs are informed and believe that Defendant Florida Blue is an active Florida nonprofit corporation. Defendant Florida Blue formally does business under the trade name Florida Blue. Its principal place of business is located at 4800 Deerwood Campus Parkway, Jacksonville, Florida 32246.

h.      Blue Cross and Blue Shield of Kansas City, Inc. ("Kansas City Blue"). Plaintiffs are informed and believe that Defendant Kansas City Blue is a Missouri insurance company. Defendant Kansas City Blue does business under its

Stris &
Maher LLP

18

COMPLAINT FOR VIOLATIONS OF ERISA

1  legal name and under the trade name Blue KC. Its principal place of business is

2  located at 2301 Main Street, Kansas City, Missouri 64108.

3          i.    Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.

4  ("Massachusetts Blue"). Plaintiffs are informed and believe that Defendant

5  Massachusetts Blue is incorporated in Massachusetts as a nonprofit health

6  maintenance organization. Its principal place of business is located at Landmark

7  Center, 401 Park Drive, Boston, Massachusetts 02215.

8          j.    Blue Cross and Blue Shield of Nebraska ("Nebraska Blue").

9  Plaintiffs are informed and believe that Defendant Nebraska Blue is a mutual benefit

10 corporation, authorized to do business in the state of Nebraska. Its principal place of

11 business is located at 1919 Aksarben Drive, Omaha, Nebraska 68106.

12         k.    Blue Cross and Blue Shield of North Carolina ("North Carolina

13 Blue"). Plaintiffs are informed and believe that Defendant North Carolina Blue is a

14 North Carolina hospital and medical service corporation. Its principal place of

15 business 5901 Chapel Hill Road, Durham, North Carolina 27707.

16         l.    Blue Cross Blue Shield of Tennessee, Inc. ("Tennessee Blue").

17 Plaintiffs are informed and believe that Defendant Tennessee Blue is a nonprofit

18 corporation, authorized to do business in the state of Tennessee. Its principal place of

19 business is located at 1 Cameron Hill Circle, Chattanooga, Tennessee 37402.

20         m.    Blue Cross Blue Shield of Wyoming ("Wyoming Blue").

21 Plaintiffs are informed and believe that Defendant Wyoming Blue is registered to do

22 business as a nonprofit corporation in the state of Wyoming. Its principal place of

23 business is located at 4000 House Avenue, Cheyenne, Wyoming 82003.

24         n.    Blue Cross of California ("California Blue Cross"). Plaintiffs are

25 informed and believe that Defendant California Blue Cross is registered in the state

26 of California as a corporation and operates therein as a health insurer. Defendant

27 California Blue Cross does business under the trade name Anthem Blue Cross. Its

Stris &
Maher LLP   28

COMPLAINT FOR VIOLATIONS OF ERISA

1   principal place of business is located at 21555 Oxnard Street, Woodland Hills,

2   California 91367.

3           o.      Blue Cross of Idaho Health Service, Inc. ("Idaho Blue"). Plaintiffs

4   are informed and believe that Defendant Idaho Blue is a corporation formed under

5   the laws of Idaho. Defendant Idaho Blue operates under the trade name Blue Cross

6   of Idaho. Its principal place of business is located at 3000 East Pine Avenue,

7   Meridian, Idaho 83642.

8           p.      California Physicians' Service ("California Blue Shield"). 

9   Plaintiffs are informed and believe that Defendant California Blue Shield is registered

10  to do business as a nonprofit mutual benefit corporation in the state of California.

11  Defendant California Blue Shield does business under the trade name Blue Shield of

12  California. Its principal place of business is located at 50 Beale Street, San Francisco,

13  California 94105.

14          q.      Community Insurance Company ("Ohio Blue"). Plaintiffs are

15  informed and believe that Defendant Ohio Blue is a health insurer, authorized to do

16  business in the state of Ohio. Defendant Ohio Blue does business under the trade

17  name Anthem Blue Cross and Blue Shield. Its principal place of business is located

18  at 4361 Irwin Simpson Road, Mason, Ohio 45040.

19          r.      Empire HealthChoice Assurance, Inc. ("New York Blue"). 

20  Plaintiffs are informed and believe that Defendant New York Blue is a nonprofit

21  corporation in the state of New York. Defendant New York Blue does business as a

22  health insurer under the trade name Empire BlueCross BlueShield. It also does

23  business as a claims administrator through a subsidiary under the trade name Anthem

24  Blue Cross Blue Shield ("New York Anthem Blue"). The principal place business of

25  New York Blue is located at 1 Liberty Plaza, 165 Broadway, New York, New York

26  10006; and the principle place of business of New York Anthem Blue is 85 Crystal

27  Run Road, Middletown, New York 10940.

Stris &
Maher LLP   28

COMPLAINT FOR VIOLATIONS OF ERISA

1           s.      Group Hospitalization and Medical Services, Inc. ("CareFirst

2    Blue"). Plaintiffs are informed and believe that Defendant CareFirst Blue is a not-

3    for-profit corporation authorized to do business in the state of Virginia and the District

4    of Columbia. Defendant CareFirst Blue does business under the trade name CareFirst

5    BlueCross BlueShield. Its principal place of business is located at 840 First Street

6    NE, Washington D.C. 20065.

7            t.      Hawaii Medical Service Association ("Hawaii Blue"). Plaintiffs

8    are informed and believe that Defendant Hawaii Blue is a mutual benefits society,

9    authorized to do business in the state of Hawaii. Defendant Hawaii Blue does

10    business under the trade name Blue Cross Blue Shield of Hawaii. Its principal place

11    of business is located at 818 Keeaumoku Street, Honolulu, Hawaii 96814.

12            u.      Health Care Service Corporation, a Mutual Legal Reserve

13    Company ("Illinois, Montana, and Texas Blue"). Plaintiffs are informed and believe

14    that Defendant Illinois, Montana, and Texas Blue, a Mutual Legal Reserve Company

15    is active and licensed to do business in the states of Illinois, Montana, and Texas.

16    Defendant Illinois, Montana, and Texas Blue does business under the trade names

17    BlueCross BlueShield of Illinois, BlueCross BlueShield of Montana, and BlueCross

18    BlueShield of Texas. Its corporate office is located at 300 East Randolph Street,

19    Chicago, Illinois 60601; its Montana state headquarters is located at 560 North Park

20    Avenue, Helena, Montana 59604; and its Texas state headquarters is located at1001

21    East Lookout Drive, Richardson, Texas 75082.

22            v.      Highmark, Inc. ("Pennsylvania Blue"). Plaintiffs are informed

23    and believe that Defendant Pennsylvania Blue is registered to do business in

24    Pennsylvania as an active, nonprofit corporation. Defendant Pennsylvania Blue does

25    business under the trade name Highmark Blue Shield. Its principal place of business

26    is located at 1800 Center Street, Camp Hill, Pennsylvania 17089.

27            w.      Horizon Healthcare Services, Inc. ("New Jersey Blue"). Plaintiffs

28    are informed and believe that Defendant New Jersey Blue is registered to do business

in New Jersey as an active, nonprofit corporation. Defendant New Jersey Blue does business under the trade name Horizon Blue Cross Blue Shield of New Jersey. Its principal place of business is located at 3 Penn Plaza East, Newark, New Jersey 07105.

    x.    <u>Independence Blue Cross, Inc</u>. ("Philadelphia Blue"). Plaintiffs are informed and believe that Defendant Philadelphia Blue is a nonprofit corporation, authorized to do business in the state of Pennsylvania. Its principal place of business is located at 1901 Market Street, Philadelphia, Pennsylvania 19103.

    y.    <u>Louisiana Health Service & Indemnity Company</u> ("Louisiana Blue"). Plaintiffs are informed and believe that Defendant Louisiana Blue is licensed to do business in Louisiana as an insurance entity. Defendant Louisiana Blue does business under the trade name Blue Cross and Blue Shield of Louisiana. Its principal place of business is located at 5525 Reitz Avenue, Baton Rouge, Louisiana 70809.

    z.    <u>Premera Blue Cross</u> ("Washington Premera Blue"). Plaintiffs are informed and believe that Defendant Premera Blue Cross is a nonprofit corporation organized under the laws of Washington. Its principal place of business is located at 7001 220th Street SW, Building 1, Mountlake Terrace, Washington 98043.

    aa.    <u>Regence Insurance Holding Corporation</u> ("Oregon, Utah, and Washington Regence Blue"). Plaintiffs are informed and believe that Defendant Oregon, Utah, and Washington Regence Blue is a nonprofit corporation, authorized to do business in the states of Oregon, Utah, and Washington. In Oregon, it does business under the trade name Regence BlueCross BlueShield of Oregon, where its principal place of business is located at 100 SW Market Street, Portland, Oregon 97201. In Utah, it does business under the trade name Regence BlueCross BlueShield of Utah, where its principal place of business is located at 2890 East Cottonwood Parkway, Salt Lake City, Utah 84121. And in Washington, it does business under the trade name Regence BlueShield, where its principal place of business is located at 1800 Ninth Avenue, Seattle, Washington 98101.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

bb.    Rocky Mountain Hospital and Medical Service, Inc. ("Colorado Blue"). Plaintiffs are informed and believe that Defendant Colorado Blue is a nonprofit corporation, authorized to do business in the state of Colorado. Defendant Colorado Blue does business under the trade names Anthem Blue Cross and Blue Shield and Blue Cross and Blue Shield of Colorado. Its principal place of business is located at 555 Middle Creek Parkway, Colorado Springs, Colorado 80921.

25.    The Blue Cross Companies listed above are collectively referred to hereafter as the "Blue Cross Defendants."

## RELEVANT FACTS

### A.    Sovereign Provides Gold-Standard Substance Abuse Treatment Services.

26.    Sovereign is a leading provider of comprehensive addiction and mental health treatment programs to chemically dependent individuals in California and other states.

27.    It is widely accepted that the services rendered by Sovereign and similar providers are extremely important. According to the National Institute on Drug Abuse, every dollar spent on substance abuse treatment saves $4.87 in health care costs and $7.00 in crime costs. *See* National Institute on Drug Abuse, *Principles of Drug Addiction Treatment: A Research-Based Guide* (3d ed.) (October 1999).

28.    Sovereign's approach to substance abuse treatment is consistent with best practices in the industry. Its proven track record has also earned Sovereign accolades from trade and government groups. Dual Diagnosis, for example, has received the Gold Seal of Approval from the Joint Commission, an independent not-for-profit organization that is the nation's oldest and largest standards-setting and accrediting body in health care. And the California Board of Behavioral Health Sciences, the California Association for Alcohol/Drug Educators, and the National Association for Alcoholism and Drug Abuse Counsels have approved Sovereign entities to provide continuing education to licensed professionals.

Stris &
Maher LLP

**B.      Many Patients Pay Sovereign Through ERISA-Governed Welfare Plans.**

29.      Sovereign, a for-profit enterprise, allows prospective patients to pay for its services out-of-pocket or with health insurance. Unfortunately, many individuals in need of treatment cannot afford to pay for Sovereign's services up front. Sovereign is only able to treat such individuals who have health insurance that covers some or all of its services.

30.      This litigation involves Former Patients who paid for Sovereign's services through health insurance provided by the Welfare Plan Defendants. Such plans and their benefits are governed by ERISA.

31.      ERISA is a landmark federal law enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits owed to those employees and beneficiaries.

32.      To that end, ERISA imposes extensive procedural requirements on employee benefit plans. For example, it mandates that a written instrument be established and maintained, 29 U.S.C. § 1102; that a straightforward summary of material plan terms be furnished to participants and beneficiaries, 29 U.S.C. § 1022; that a grievance and appeals process be established, 29 U.S.C. § 1133; and that fiduciary duties be satisfied by those who manage the plan, 29 U.S.C. § 1104.

33.      ERISA also gives plan participants and their beneficiaries the right to sue for benefits, 29 U.S.C. § 1132(a)(1)(B); to enforce or clarify their rights under the plan, *id.*; to enjoin violations of ERISA or the terms of the plan, 29 U.S.C. § 1132(a)(3)(A); or "to obtain other appropriate equitable relief . . . ," 29 U.S.C. § 1132(a)(3)(B).

34.      Each of the plans offered by Welfare Plan Defendants covered the mental health and/or substance abuse treatment services provided by Sovereign to the Former Patients. As explained below, before agreeing to provide treatment, Sovereign's practice is to contact a patient's insurer to confirm that the treatment it offers is covered, and the assigned benefits claims brought here arise from services

Stris &
Maher LLP

24

provided to Former Patients for which Sovereign received such a coverage confirmation.

**C.    The Blue Cross Defendants Insured and/or Administered the Former Patients' ERISA-Governed Welfare Plans.**

35.    ERISA distinguishes between self-insured and fully insured employee benefit plans. In self-insured plans, the employer pays directly for the covered health care services provided to participants and beneficiaries. In fully insured plans, the employer buys group health insurance coverage and the insurance company pays for covered health care services.

36.    The Welfare Plan Defendants include both self-insured and fully insured employee benefit plans. Plaintiffs are informed and believe that:

a.    Each fully insured Welfare Plan Defendant bought group health insurance coverage from a Blue Cross Defendant and retained a Blue Cross Defendant as a third-party administrator ("TPA"); and

b.    Each self-insured Welfare Plan Defendant retained a Blue Cross Defendant as a TPA.

37.    Plaintiffs are informed and believe that, either as group insurers or group TPAs, the Blue Cross Defendants provided extensive services to the Welfare Plan Defendants pursuant to administrative service agreements ("ASAs") between the parties. These services included: determining to whom and in what amounts benefits are paid, drafting and providing plan members with ERISA plan documents, interpreting plan documents, providing notices to employees and their beneficiaries, determining usual and customary rates, and/or hearing and deciding administrative appeals.

38.    Plaintiffs are informed and believe that as insurers or TPAs, the Blue Cross Defendants "effectively controlled the decision whether to honor or deny a claim" on behalf of the Welfare Plan Defendants. *Cyr v. Reliance Life Ins. Co.*, 642 F.3d 1202, 1204 (9th Cir. 2011). Indeed, Plaintiffs are informed and believe that the

Stris & Maher LLP

Welfare Plan Defendants had little if any involvement in claims administration or pricing and deferred entirely to the Blue Cross Defendants.

39.     Because the Blue Cross companies, as either insurers or TPAs, exercised discretion in connection with the granting or denial of benefits and otherwise with respect to plan administration, they are fiduciaries under ERISA.

40.     Plaintiffs are informed and believe that the Blue Cross Companies that served as TPAs, were, because of terms of the ASAs or otherwise, motivated by financial incentives to keep benefit costs to the self-insured Welfare Plan Defendants low.

41.     The Blue Cross Defendants who insured the Welfare Plan Defendants had independent financial incentives to keep benefit costs low because they paid for covered health care services themselves.

**D.     Sovereign Investigates Prospective Patients' Health Insurance Coverage.**

42.     Before it agrees to treat any patient, Sovereign takes steps to ensure that it will be compensated for its services. When a prospective patient seeks to pay with his or her health insurance, Sovereign investigates whether and to what extent the patient's insurance policy covers its various levels of service.

43.     As explained above, this litigation involves Former Patients who paid for Sovereign's services through health insurance coverage provided by the Welfare Plan Defendants—insured and/or administered by one or more Blue Cross Defendant. When each Former Patient first sought treatment, Sovereign or its agents verified that he or she was insured and ascertained the scope of his or her coverage through the following procedures.

44.     Sovereign or its agents first secured the Former Patient's consent to contact his or her health insurance company, along with the identifying information necessary for Sovereign to interact with the insurer. Sovereign or its agents also asked for the dedicated phone number for healthcare providers associated with the Former Patient's insurance policy ("Provider Hotline"). Plaintiffs are informed and believe

Stris &
Maher LLP

26

that each Former Patient authorized Sovereign to contact the Provider Hotline of a Blue Cross Defendant. Sovereign or its agents recorded this information in the top box of a comprehensive document entitled "Insurance Verification Form."

45.     Sovereign or its agents called the Provider Hotline listed on the Insurance Verification Form on each Former Patient's behalf. When it reached a Blue Cross Defendant, Sovereign or its agents relayed the Former Patient's identifying information and requested details about his or her coverage. Sovereign or its agents recorded the information learned from the Blue Cross Defendant on the bottom of the Insurance Verification Form.

46.     To complete Sovereign's Insurance Verification Form, Sovereign or its agents inquired exhaustively into the characteristics of the Former Patient's health insurance coverage, including with respect to:

a.     The general characteristics of the health insurance policy (including fields for effective date and renewal date, the type of plan, and whether it covers preexisting conditions, among other things);

b.     The existence and scope of any substance abuse or mental health coverage (including fields regarding deductible for in-network and out-of-network services and maximum out-of-pocket payments for in-network and out-of-network services, among other things);

c.     Any precertification requirements (including fields indicating whether precertification required for inpatient treatment, residential treatment, partial hospitalization, intensive outpatient treatment, and/or outpatient treatment by in-network and out-of-network providers); and

d.     Copayments for each type of treatment and any limits on the length of treatment.

47.     Sovereign or its agents also investigated the logistics of securing authorization and payment for Sovereign's services, including:

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

a.    How to comply with precertification requirements (including fields for pre-certification company and telephone number);

b.    The name of the insurance company and the entity to which benefit claims should be submitted (including fields for insurance company and claims address); and

c.    Whether the Former Patient's health insurance benefits were assignable. The answer to this question was recorded by circling "Yes" or "No" (or "Y" or "N") next to the word "assignable" on the Insurance Verification Form.

48.    After the insurance verification process, Sovereign then contacted each Former Patient to discuss his or her insurance policy and to make appropriate arrangements for treatment.

**E.    Each Former Patient Had "Preferred Provider Organization" Coverage for Substance Abuse and Mental Health Treatment Services.**

49.    Sovereign only wishes to provide services that prospective patients can afford. As such, as a matter of course Sovereign investigated whether the treatment needed by a patient (including the Former Patients) was covered by insurance.

50.    When Sovereign or its agents called the Blue Cross Defendants' Provider Hotlines, it learned that each Former Patient's health insurance policy had at least the following key features: (1) coverage for substance abuse / mental health treatment offered by Sovereign, and (2) preferred provider organization ("PPO") coverage.

51.    A PPO plan covers medical expenses incurred when the insured visits either an "in-network" provider (*i.e.*, a provider who has a contractual relationship with the insurance company) or an "out-of-network" provider (*i.e.*, one who does not have a contractual relationship with the insurance company).

a.    PPO coverage tends to be significantly more expensive than health maintenance organization ("HMO") coverage because it gives insureds the option to visit the providers of their choice, who are typically entitled to

Stris &
Maher LLP

28

reimbursement at the "usual and customary rate" for their services and not a lower negotiated rate. Many insureds are nevertheless willing to pay a premium for PPO coverage to, *inter alia*, gain access to a bigger and better pool of providers.

b.      No law required the Welfare Plan Defendants to offer PPO coverage instead of HMO coverage. Each Welfare Plan Defendant chose to offer the more robust and expensive insurance to their employees, and each Former Patient or subscriber enrolled in and paid for that premium level of coverage.

c.      Sovereign is out-of-network with respect to all members of the Association. In other words, Sovereign is not contracted with any Blue Cross Defendant to provide services to their insureds at a discounted rate.

52.   In short, Sovereign and its agents learned from the Blue Cross Defendants that each Former Patient had PPO coverage for substance abuse and mental health treatments and services, and that the Blue Cross Defendants were the relevant insurance companies, administrators, and contacts for those plans.

**F.   Sovereign Obtains Valid Benefit Assignments from Each Former Patient.**

53.   Sovereign (or its agents, on Sovereign's behalf) obtained and obtains a valid assignment of benefits ("Assignment") from all patients before treating them.

54.   The Assignments give Sovereign the right to be paid directly for any services rendered to patients, and also entitles Sovereign to assert patients' legal rights to recover benefits. These legal rights include the right to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit for violations of ERISA.

55.   Sovereign or its agents obtained an Assignment from each Former Patient.

56.   The Assignments accordingly entitle Sovereign to collect payment for services provided to the Former Patients directly from the Blue Cross Defendants.

57.   The Assignments also conferred legal standing on Sovereign to assert various legal claims against the Welfare Plan Defendants and the Blue Cross

Stris &
Maher LLP

29

Defendants under ERISA, including the claims in this Complaint. It is well-settled that assignees are "beneficiaries" under ERISA with standing to assert the claims of their assignors. *See Misic v. Building Services Employees Health & Welfare Trust*, 789 F.2d 1374, 1379 (9th Cir. 1986). And any beneficiary—including an assignee—who makes a claim is a "claimant" under federal law. 29 C.F.R. § 2560.503-1(a) ("[T]his section sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries (hereinafter referred to as claimants).").

**G.    After Providing Covered Services, Sovereign Submitted Claims for Benefits to the Blue Cross Defendants Following Blue Cross Procedures.**

58.    Sovereign provided medically necessary services to the Former Patients that were covered by their plans.

59.    Sovereign then sought payment by submitting the appropriate documents to the appropriate Blue Cross Defendants in accordance with the Association's "BlueCard Program" described below. These claims for payment notified the Blue Cross Defendants that Sovereign had obtained valid Assignments from the Former Patients and asserted Sovereign's right to receive any benefits owed to the Former Patients under the terms of their health plans.

60.    **The BlueCard Program.** Plaintiffs are informed and believe that the BlueCard Program is "a single electronic network for claims processing and reimbursement" for all Blue Cross Companies. *See* Blue Shield of California, "Introducing the BlueCard Program," www.blueshieldca.com.

61.    All Blue Cross Defendants are BlueCard Program participants.

62.    The BlueCard Program requires health care providers to submit claims for benefits to the Blue Cross entity that controls the territory in which the provider is located (the "Host Entity"). *See generally* BlueCard Introduction, www.blueshield ca.com ("When an out-of-area Blue Plan member seeks medical care from your

office, use the information and tools in this section to submit those claims to Blue Shield of California.").

63.     Plaintiffs are informed and believe that the insurance cards that the Blue Cross Defendants issued to the Former Patients instructed health providers to communicate with and submit claims directly to the Host Entity for their location. Plaintiffs are informed and believe that the Blue Cross Defendant on the Provider Hotline likewise instructed Sovereign or its agents to submit claims to the Host Entity for the territory in which Sovereign is located. The Host Entity was listed on the Insurance Verification Form.

64.     Sovereign complied with the BlueCard Program by submitting claims for payment directly to the Host Entity for the territory in which Sovereign is located. For many of the Former Patients, for example, the Host Entity would be California Blue Cross.

65.     Plaintiffs are informed and believe that the Host Entity processes claims on behalf of the distant or out-of-state Blue Cross Company (the "Home Entity"). BlueCard Tutorial at 7. The Host Entity sends the claim to the Home Entity, which authorizes the Host Entity to finalize and pay the claim. *Id.* The Host Entity then remits payment. *Id.*; *see also* Horizon Blue FAQs ("Once we receive your claims, we will electronically route them to the out-of-state Blue Cross Blue Shield [Entity] that will process the claim according to each member's contract. They will transmit the claim information to us . . . ."). If the Host Entity and the Home Entity are one and the same, Plaintiffs are informed and believe that such Blue Cross Company alone handles claim processing.

66.     **Uniform Billing ("UB") Forms.** Sovereign or its agent timely submitted its claims for payment to the correct Host Entity using industry standard UB-04 forms.

67.     UB forms are promulgated by the National Uniform Billing Committee ("NUBC"), an organization formed in 1975 "to develop and maintain a single billing

1   form and standard data to be used nationwide by institutional, private and public

2   providers and payers for handling health care claims." NUBC, "About Us,"

3   http://www.nubc.org/aboutus/index.dhtml ("About NUBC"). Plaintiffs are informed

4   and believe that the Association is a member of NUBC. NUBC, "Member

5   Organizations," http://www.nubc.org/aboutus/memberorganizations.dhtml.

6   　　　68.　　The NUBC approved the UB-04 in February of 2005. Department of

7   Health & Human Services, "CMS Manual System: Pub 100-04 Medicare Claims

8   Processing, Transmittal 1104" (Nov. 3, 2006) ("Transmittal 1104"), at 3. The UB-04

9   form is now the "'de facto' institutional claim standard." About NUBC; *see also*

10  Transmittal 1104 at 3 ("The Form UB-04 (CMS-1450) answers the needs of many

11  health insurers. It is the basic form prescribed by CMS for the Medicare

12  program . . . .").

13  　　　69.　　The UB-04 form includes information sufficient to allow insurance

14  companies to identify, process, and pay claims. For example, it contains fields for the

15  service provided, the appropriate code for that service, and the charge for the service

16  that the provider believes is usual and customary. The UB-04 form also includes a

17  field ("ASG BEN" in field 53) in which the provider indicates whether it has received

18  an assignment of health care benefits from the patient.

19  　　　70.　　Each UB-04 form submitted in connection with services that Sovereign

20  provided to a Former Patient indicated that Sovereign had received an assignment of

21  health care benefits from the Former Patient.

22  **H.　　The Blue Cross Defendants Approved Sovereign's Claims but Arbitrarily**

23  　　　**Disregarded Its Assignments.**

24  　　　71.　　A valid assignment obligates the debtor to pay the assignee, not the

25  original creditor: "When there is a valid assignment in place, performance under a

26  contract runs to the assignee. Thus, when a creditor assigns its interest in an existing

27  debt owed to it, the debtor must generally pay the debt to the assignee, not the original

28  creditor." 6A C.J.S. Assignments § 106. Indeed, "after a debtor has received notice of

Stris &
Maher LLP

32

a valid assignment, or obtained knowledge of it in any manner, a payment to the assignor or any person other than the assignee is at the debtor's peril and does not discharge him or her from liability to the assignee." *Id.*

72.   Plaintiffs are informed and believe that the Blue Cross Defendants approved and authorized payment on Sovereign's claims for benefits in connection with the services provided to the Former Patient, but did not pay Sovereign (apparently on the grounds that Sovereign was an assignee). In other words, despite Blue Cross Defendants being informed of and on written notice that Sovereign was an assignee—and despite Blue Cross Defendants approving the underlying claim for covered services—the Blue Cross Defendants mailed checks directly to the Former Patients and not to Sovereign.

73.   Plaintiffs are informed and believe that the Blue Cross Defendants' disregard of Sovereign's Assignments is consistent with acknowledged BlueCard policy to disregard the assignments of out-of-network providers like Sovereign. As one Blue Cross Company put it: "payments for services rendered by providers who do not contract with [Blue Cross] are sent directly to our customers. Thus, out-of-network providers face the inconvenience of attempting to collect payment from the customer and the accompanying possibility of incurring bad debts." *See* Blue Cross Blue Shield Oklahoma, "Blue Perspective: BCBSOK Position on Legislation and Regulatory Issues," http://www.bcbsok.com/grassroots/pdf/blueperspective_aob27-103003.pdf.

74.   Indeed, when Sovereign sought payment for covered claims the Former Patients had assigned to it, Blue Cross uniformly refused to pay, or even to acknowledge, Sovereign's benefit claims. Neither Sovereign's initial UB-04 requests for payment nor its follow-up letters written by experienced ERISA counsel resulted in payment or a reasoned denial.

75.   The Blue Cross Defendants' policy of not honoring assignments to out-of-network providers like Sovereign furthers their objective to pressure such

Stris &
Maher LLP

providers to contract with the Blue Cross Defendants and become in-network providers.

      a.     In-network providers with respect to insurance plans agree to accept discounted reimbursement rates in exchange for the benefits of network status, which include increased business, advertisements, and lower co-payments and deductibles for members.

      b.     Conversely, out-of-network providers receive less plan business, but they are entitled to receive payment based on their charges for services rendered without any discount.

76.    Plaintiffs are informed and believe that in recent years, Blue Cross Defendants contracts have demanded such low reimbursement rates and have become so onerous and one-sided in favor of Blue Cross Defendants that many providers have determined that they cannot afford to enter into, maintain, or renew such contracts. As a result, a growing number of providers have become out-of-network with the Blue Cross Defendants.

77.    Plaintiffs are informed and believe that the Blue Cross Defendants punish out-of-network providers by underpaying them for the medically necessary, covered services they provide to Blue Cross Defendants insured individuals.

78.    The Blue Cross Defendants know or should know that failing to honor assignments results in underpayment to providers because patients do not always forward their benefits checks to their providers, and are less likely to contest improper denials of benefits.

79.    In this litigation, the Blue Cross Defendants' policy of disregarding assignments to out-of-network providers like Sovereign led them to send large sums of money to chemically dependent individuals. That practice was patently reckless with respect to the health and safety of the Former Patients, as well as the health and safety of the general public. It also all but guaranteed that Sovereign would receive only a fraction of what it was owed for its services.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

**I.**     **In Clear Violation of ERISA, No Defendant Ever Informed Sovereign Its Basis for Refusing to Honor Sovereign's Assignments.**

80.    Sovereign formally asserted claims for ERISA benefits to ERISA fiduciaries by submitting UB-04s to the Blue Cross Defendants for services provided to the Former Patients.

81.    Sovereign's UB-04s never received any response from the Blue Cross Defendants. As Sovereign learned only later and at great expense, the Blue Cross Defendants instead had approved and authorized payment on the claims for Sovereign's services to the Former Patients. The Blue Cross Defendants then issued payment checks to the Former Patients.

82.    When the Blue Cross Defendants refused to pay Sovereign's claims and instead sent claims payment checks to the Former Patients, they made "adverse benefit determinations" against Sovereign under ERISA. *See* 29 C.F.R. § 2560.503-1(m)(4) (defining "adverse benefit determination" as including *"a failure to provide or make payment"* for a claimed benefit).

83.    Federal law and regulations set forth extensive procedural requirements for making adverse benefit determinations in the health insurance context. Generally speaking, plans must propound denials in writing, set forth the specific reasons for such a denial, and afford a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim. *See generally* 29 U.S.C. § 1133.

84.    Among other things, the plan or its representative must explain, "in a manner calculated to be understood by the claimant (i) the specific reason or reasons for the adverse determination; (ii) reference to the specific plan provisions on which the determination is based; (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; [and] (iv) a description of the plan's review procedures and the time limits applicable to such procedures, including a statement

of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review. . . ." 29 C.F.R. § 2560.503-1(g)(i)-(iv). *See also* 29 C.F.R. §2590.715-2719(b).

85.     In spite of such detailed regulations, Sovereign received no written notice that such adverse benefit determinations had taken place at all. As a result, Sovereign did not know whether the Blue Cross Defendants had acted on their claims at all, what decisions they had reached if they had, or why they never received payment from the Blue Cross Defendants. Only after a costly and protracted investigation was Sovereign able to ascertain what was happening.

86.     Defendants obviously failed to comply, in any respect, with the relevant federal regulations governing the manner and means by which an insurer must make an adverse benefit determination. As a result, any administrative prerequisites to litigation are deemed exhausted and a claimant may commence suit in federal court. *See* 29 C.F.R. § 2560.503-1(l) ("In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies . . . .") and 29 C.F.R. §2590.715-2719(b)(2)(ii)(F) (deemed exhaustion).

**J.     At Great Effort and Expense, Sovereign Attempts to Collect Plan Documents and Learns the Scope of Defendants' ERISA Violations.**

87.     When the Blue Cross Defendants uniformly refused to acknowledge Sovereign's benefit claims, Sovereign undertook an independent investigation.

88.     Specifically, for the Former Patients, Sovereign at great effort and expense attempted to determine the name of the welfare plan providing the Former Patients' respective coverage.

89.     Once Sovereign obtained that information, Sovereign was able to obtain for some welfare plans the operative plan documents governing the terms of the Former Patient's coverage.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

90.     Because several of those plan documents did *not* bar the assignment of benefits, it became clear that Blue Cross Defendants were refusing to pay Sovereign's validly assigned claims without any investigation into whether the applicable plan documents supported their position. It also became clear that the Welfare Plan Defendants were totally derelict in their responsibility to make sure that the operative plan documents were and are being followed.

91.     Nonetheless, Sovereign attempted—through over two dozen letters sent to the Blue Cross Defendants—to inquire as to why its Assigned Claims were denied. Those letters were ignored or otherwise unsuccessful in getting the Blue Cross Defendants to comply with the required federal claims handling regulations.

92.     Given the utter futility of its efforts at non-judicial resolution, Sovereign files this suit to seek relief.

## FIRST CLAIM FOR RELIEF

### (Against All Defendants—Seeking to Recover Benefits)

### (29 U.S.C. § 1132(a)(1)(B))

93.     The allegations of the prior paragraphs of this Complaint are hereby repeated as if fully set forth herein.

94.     Sovereign provided services to many individuals who, at the time of the services provided, were participants or beneficiaries of ERISA-governed plans sponsored and/or administered by the Welfare Plan Defendants and insured and/or administered by the Blue Cross Defendants (the "ERISA Beneficiaries").

95.     Before providing services to any ERISA Beneficiary, Sovereign obtained, or had an agent obtain for Sovereign's benefit, an assignment of benefits which, *inter alia*, required that any ERISA benefit payments due as a result of its services be paid directly to Sovereign or its designee.

96.     After confirming that the services it offered were covered by the plan and providing services to each ERISA Beneficiary, Sovereign or its agent submitted claims to the relevant Blue Cross Defendant requesting payment of ERISA benefits

Stris &
Maher LLP

37

1  to Sovereign due as a result of the services provided (an "Assigned Claim" or
2  collectively the "Assigned Claims").

3       97.    The Blue Cross Defendants refused to pay Sovereign for the Assigned
4  Claims. Upon information and belief, in some instances the Blue Cross Defendant
5  paid some or all of the Assigned Claim directly to the ERISA Beneficiary.

6       98.    Pleaded in paragraphs 99 to 172 below are, for representative individual
7  patients, the specifics for the Assigned Claims for which Sovereign or its designee is
8  the assignee or similar right holder. Patient names have been redacted and replaced
9  with a numerical identifier to preserve confidentiality. In some instances, the welfare
10  plan is not currently known to Sovereign, but the insurer or TPA is.

11       99.    On information and belief: Patient 1 was a participant in or beneficiary
12  of an unknown ERISA-governed welfare plan during all times relevant to this
13  complaint. Further, on information and belief:

14         a.    With regard to the relevant welfare benefits implicated by this
15  lawsuit: Patient 1's plan either (i) is insured by North Carolina Blue and/or California
16  Blue Cross or (ii) is self-insured and has entered into an agreement with North
17  Carolina Blue and/or California Blue Cross by which the unknown plan receives third
18  party administrative services.

19         b.    On or around July 22, 2013, Sovereign began providing mental
20  health and/or drug addiction treatment to Patient 1, who validly assigned all claims
21  arising as a result of Sovereign's services pursuant to the unknown plan.

22         c.    Shortly thereafter, Sovereign submitted claims seeking
23  reimbursement for these services to California Blue Cross or North Carolina Blue on
24  the industry-standard UB-04 form. Sovereign indicated that it was requesting that
25  benefits be paid to it as an assignee by inserting the letter Y in the appropriate field
26  (box 53) each time it submitted a claim.

27
Stris & Maher LLP  28

COMPLAINT FOR VIOLATIONS OF ERISA

d.      California Blue Cross, North Carolina Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 1 instead of Sovereign.

100.   On information and belief: Patient 2 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 2's plan either (i) is insured by California Blue Shield or (ii) is self-insured and has entered into an agreement with California Blue Shield by which the unknown plan receives third party administrative services.

b.      On or around September 4, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 2, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Shield and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 2 instead of Sovereign.

101.   On information and belief: Patient 3 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 3's plan either (i) is insured by Montana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Montana Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

b.      On or around October 23, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 3, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Montana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Montana Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 3 instead of Sovereign.

102.   On information and belief: Patient 4 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 4's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with /or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around April 14, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 4, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 4 instead of Sovereign.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

103.   On information and belief: Patient 5 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: Patient 5's plan either (i) is insured by North Carolina Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with North Carolina Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.   On or around February 11, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 5, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.   Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or North Carolina Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.   California Blue Cross, North Carolina Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 5 instead of Sovereign.

104.   On information and belief: Patient 6 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: Patient 6's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

b.      On or around January 7, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 6, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 6 instead of Sovereign.

105.   On information and belief: Patient 7 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 7's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around September 20, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 7, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 7 instead of Sovereign.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

106.  On information and belief: Patient 8 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

    a.    With regard to the relevant welfare benefits implicated by this lawsuit: Patient 8's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

    b.    On or around December 14, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 8, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

    c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.    California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 8 instead of Sovereign.

107.  On information and belief: Patient 9 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

    a.    With regard to the relevant welfare benefits implicated by this lawsuit: Patient 9's plan either (i) is insured by New York Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New York Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

    b.    On or around February 18, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 9, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New York Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, New York Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 9 instead of Sovereign.

108.   On information and belief: Patient 10 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: Patient 10's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

b.     On or around March 19, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 10, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 10 instead of Sovereign.

109.   On information and belief: Patient 11 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 11's plan either (i) is insured by California Blue Shield or (ii) is self-insured and has entered into an agreement with California Blue Shield by which the unknown plan receives third party administrative services.

b.      On or around November 12, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 11, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Shield and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 11 instead of Sovereign.

110.   On information and belief: Patient 12 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 12's plan either (i) is insured by California Blue Shield or (ii) is self-insured and has entered into an agreement with California Blue Shield by which the unknown plan receives third party administrative services.

b.      On or around June 26, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 12, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as

Stris &
Maher LLP

an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

       d.    California Blue Shield and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 12 instead of Sovereign.

111.   On information and belief: Patient 13 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

       a.    With regard to the relevant welfare benefits implicated by this lawsuit: Patient 13's plan either (i) is insured by California Blue Shield or (ii) is self-insured and has entered into an agreement with California Blue Shield by which the unknown plan receives third party administrative services.

       b.    On or around August 12, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 13, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

       c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

       d.    California Blue Shield and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 13 instead of Sovereign.

112.   On information and belief: Patient 14 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

       a.    With regard to the relevant welfare benefits implicated by this lawsuit: Patient 14's plan either (i) is insured by Indiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1    and/or California Blue Cross by which the unknown plan receives third party

2    administrative services.

3          b.     On or around January 25, 2013, Sovereign began providing

4    mental health and/or drug addiction treatment to Patient 14, who validly assigned all

5    claims arising as a result of Sovereign's services pursuant to the unknown plan.

6          c.     Shortly thereafter, Sovereign submitted claims seeking

7    reimbursement for these services to California Blue Cross or Indiana Blue on the

8    industry-standard UB-04 form. Sovereign indicated that it was requesting that

9    benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

10   (box 53) each time it submitted a claim.

11         d.     California Blue Cross, Indiana Blue, and/or the unknown plan

12   thereafter paid some or all of the assigned benefits to Patient 14 instead of Sovereign.

13   113.  On information and belief: Patient 15 was a participant in or beneficiary

14   of an unknown ERISA-governed welfare plan during all times relevant to this

15   complaint. Further, on information and belief:

16         a.     With regard to the relevant welfare benefits implicated by this

17   lawsuit: Patient 15's plan either (i) is insured by Hawaii Blue and/or California Blue

18   Cross or (ii) is self-insured and has entered into an agreement with Hawaii Blue

19   and/or California Blue Cross by which the unknown plan receives third party

20   administrative services.

21         b.     On or around April 11, 2014, Sovereign began providing mental

22   health and/or drug addiction treatment to Patient 15, who validly assigned all claims

23   arising as a result of Sovereign's services pursuant to the unknown plan.

24         c.     Shortly thereafter, Sovereign submitted claims seeking

25   reimbursement for these services to California Blue Cross or Hawaii Blue on the

26   industry-standard UB-04 form. Sovereign indicated that it was requesting that

27   benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

28   (box 53) each time it submitted a claim.

Stris &
Maher LLP

1      d.      California Blue Cross, Hawaii Blue, and/or the unknown plan

2  thereafter paid some or all of the assigned benefits to Patient 15 instead of Sovereign.

3      114.   On information and belief: Patient 16 was a participant in or beneficiary

4  of an unknown ERISA-governed welfare plan during all times relevant to this

5  complaint. Further, on information and belief:

6      a.      With regard to the relevant welfare benefits implicated by this

7  lawsuit: Patient 16's plan either (i) is insured by Indiana Blue and/or California Blue

8  Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue

9  and/or California Blue Cross by which the unknown plan receives third party

10  administrative services.

11      b.      On or around October 29, 2013, Sovereign began providing

12  mental health and/or drug addiction treatment to Patient 16, who validly assigned all

13  claims arising as a result of Sovereign's services pursuant to the unknown plan.

14      c.      Shortly   thereafter,   Sovereign   submitted   claims   seeking

15  reimbursement for these services to California Blue Cross or Indiana Blue on the

16  industry-standard UB-04 form. Sovereign indicated that it was requesting that

17  benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

18  (box 53) each time it submitted a claim.

19      d.      California Blue Cross, Indiana Blue, and/or the unknown plan

20  thereafter paid some or all of the assigned benefits to Patient 16 instead of Sovereign.

21      115.   On information and belief: Patient 17 was a participant in or beneficiary

22  of an unknown ERISA-governed welfare plan during all times relevant to this

23  complaint. Further, on information and belief:

24      a.      With regard to the relevant welfare benefits implicated by this

25  lawsuit: Patient 17's plan either (i) is insured by New Jersey Blue and/or California

26  Blue Cross or (ii) is self-insured and has entered into an agreement with New Jersey

27  Blue and/or California Blue Cross by which the unknown plan receives third party

28  administrative services.

Stris &
Maher LLP

48

    b.  On or around August 28, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 17, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

    c.  Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New Jersey Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.  California Blue Cross, New Jersey Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 17 instead of Sovereign.

  116. On information and belief: Patient 18 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

    a.  With regard to the relevant welfare benefits implicated by this lawsuit: Patient 18's plan either (i) is insured by Louisiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Louisiana Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

    b.  On or around May 15, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 18, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

    c.  Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Louisiana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.  California Blue Cross, Louisiana Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 18 instead of Sovereign.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

117.   On information and belief: Patient 19 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: Patient 19's plan either (i) is insured by Ohio Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Ohio Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.   On or around March 24, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 19, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.   Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Ohio Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.   California Blue Cross, Ohio Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 19 instead of Sovereign.

118.   On information and belief: Patient 20 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: Patient 20's plan either (i) is insured by New Jersey Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New Jersey Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1           b.      On or around August 30, 2013, Sovereign began providing mental

2 health and/or drug addiction treatment to Patient 20, who validly assigned all claims

3 arising as a result of Sovereign's services pursuant to the unknown plan.

4           c.      Shortly  thereafter,  Sovereign  submitted  claims  seeking

5 reimbursement for these services to California Blue Cross or New Jersey Blue on the

6 industry-standard UB-04 form. Sovereign indicated that it was requesting that

7 benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

8 (box 53) each time it submitted a claim.

9           d.      California Blue Cross, New Jersey Blue, and/or the unknown plan

10 thereafter paid some or all of the assigned benefits to Patient 20 instead of Sovereign.

11    119.   On information and belief: Patient 21 was a participant in or beneficiary

12 of an unknown ERISA-governed welfare plan during all times relevant to this

13 complaint. Further, on information and belief:

14           a.      With regard to the relevant welfare benefits implicated by this

15 lawsuit: Patient 21's plan either (i) is insured by New Jersey Blue and/or California

16 Blue Cross or (ii) is self-insured and has entered into an agreement with New Jersey

17 Blue and/or California Blue Cross by which the unknown plan receives third party

18 administrative services.

19           b.      On or around November 27, 2012, Sovereign began providing

20 mental health and/or drug addiction treatment to Patient 21, who validly assigned all

21 claims arising as a result of Sovereign's services pursuant to the unknown plan.

22           c.      Shortly  thereafter,  Sovereign  submitted  claims  seeking

23 reimbursement for these services to California Blue Cross or New Jersey Blue on the

24 industry-standard UB-04 form. Sovereign indicated that it was requesting that

25 benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

26 (box 53) each time it submitted a claim.

27           d.      California Blue Cross, New Jersey Blue, and/or the unknown plan

28 thereafter paid some or all of the assigned benefits to Patient 21 instead of Sovereign.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

120.   On information and belief: Patient 22 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 22's plan either (i) is insured by Nebraska Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Nebraska Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around December 27, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 22, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Nebraska Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Nebraska Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 22 instead of Sovereign.

121.   On information and belief: Patient 23 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 23's plan either (i) is insured by Kansas City Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Kansas City Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

b.     On or around January 21, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 23, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Kansas City Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Kansas City Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 23 instead of Sovereign.

122.   On information and belief: Patient 24 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: Patient 24's plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.     On or around March 26, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 24, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

d.      California Blue Cross, Texas Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 24 instead of Sovereign.

123.   On information and belief: Patient 25 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 25's plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around May 2, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 25, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Texas Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 25 instead of Sovereign.

124.   On information and belief: Patient 26 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 26's plan either (i) is insured by Connecticut Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Connecticut Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

b.      On or around August 2, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 26, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Connecticut Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Connecticut Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 26 instead of Sovereign.

125.   On information and belief: Patient 27 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 27's plan either (i) is insured by Philadelphia Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Philadelphia Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around September 30, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 27, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Philadelphia Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

1     d.     California Blue Cross, Philadelphia Blue, and/or the unknown

2   plan thereafter paid some or all of the assigned benefits to Patient 27 instead of

3   Sovereign.

4     126.   On information and belief: Patient 28 was a participant in or beneficiary

5   of an unknown ERISA-governed welfare plan during all times relevant to this

6   complaint. Further, on information and belief:

7     a.     With regard to the relevant welfare benefits implicated by this

8   lawsuit: Patient 28's plan either (i) is insured by Washington Regence Blue and/or

9   California Blue Cross or (ii) is self-insured and has entered into an agreement with

10   Washington Regence Blue and/or California Blue Cross by which the unknown plan

11   receives third party administrative services.

12     b.     On or around July 30, 2013, Sovereign began providing mental

13   health and/or drug addiction treatment to Patient 28, who validly assigned all claims

14   arising as a result of Sovereign's services pursuant to the unknown plan.

15     c.     Shortly   thereafter,   Sovereign   submitted   claims   seeking

16   reimbursement for these services to California Blue Cross or Washington Regence

17   Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting

18   that benefits be paid to it as an assignee by inserting the letter Y in the appropriate

19   field (box 53) each time it submitted a claim.

20     d.     California Blue Cross, Washington Regence Blue, and/or the

21   unknown plan thereafter paid some or all of the assigned benefits to Patient 28 instead

22   of Sovereign.

23     127.   On information and belief: Patient 29 was a participant in or beneficiary

24   of an unknown ERISA-governed welfare plan during all times relevant to this

25   complaint. Further, on information and belief:

26     a.     With regard to the relevant welfare benefits implicated by this

27   lawsuit: Patient 29's plan either (i) is insured by CareFirst Blue and/or California

28   Blue Cross or (ii) is self-insured and has entered into an agreement with CareFirst

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1  Blue and/or California Blue Cross by which the unknown plan receives third party

2  administrative services.

3      b.    On or around February 12, 2013, Sovereign began providing

4  mental health and/or drug addiction treatment to Patient 29, who validly assigned all

5  claims arising as a result of Sovereign's services pursuant to the unknown plan.

6      c.    Shortly thereafter, Sovereign submitted claims seeking

7  reimbursement for these services to California Blue Cross or CareFirst Blue on the

8  industry-standard UB-04 form. Sovereign indicated that it was requesting that

9  benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

10 (box 53) each time it submitted a claim.

11      d.    California Blue Cross, CareFirst Blue, and/or the unknown plan

12 thereafter paid some or all of the assigned benefits to Patient 29 instead of Sovereign.

13  128.   On information and belief: Patient 30 was a participant in or beneficiary

14 of an unknown ERISA-governed welfare plan during all times relevant to this

15 complaint. Further, on information and belief:

16      a.    With regard to the relevant welfare benefits implicated by this

17 lawsuit: Patient 30's plan either (i) is insured by Tennessee Blue and/or California

18 Blue Cross or (ii) is self-insured and has entered into an agreement with Tennessee

19 Blue and/or California Blue Cross by which the unknown plan receives third party

20 administrative services.

21      b.    On or around February 14, 2013, Sovereign began providing

22 mental health and/or drug addiction treatment to Patient 30, who validly assigned all

23 claims arising as a result of Sovereign's services pursuant to the unknown plan.

24      c.    Shortly thereafter, Sovereign submitted claims seeking

25 reimbursement for these services to California Blue Cross or Tennessee Blue on the

26 industry-standard UB-04 form. Sovereign indicated that it was requesting that

27 benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

28 (box 53) each time it submitted a claim.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1         d.    California Blue Cross, Tennessee Blue, and/or the unknown plan
2    thereafter paid some or all of the assigned benefits to Patient 30 instead of Sovereign.
3         129.   On information and belief: Patient 31 was a participant in or beneficiary
4    of Defendant TUV Plan during all times relevant to this complaint. Further, on
5    information and belief:
6         a.    With regard to the relevant welfare benefits implicated by this
7    lawsuit: the TUV Plan either (i) is insured by Massachusetts Blue and/or California
8    Blue Cross or (ii) is self-insured and has entered into an agreement with
9    Massachusetts Blue and/or California Blue Cross by which the TUV Plan receives
10   third party administrative services.
11        b.    On or around September 10, 2012, Sovereign began providing
12   mental health and/or drug addiction treatment to Patient 31, who validly assigned all
13   claims arising as a result of Sovereign's services pursuant to the TUV Plan.
14        c.    Shortly thereafter, Sovereign submitted claims seeking
15   reimbursement for these services to California Blue Cross or Massachusetts Blue on
16   the industry-standard UB-04 form. Sovereign indicated that it was requesting that
17   benefits be paid to it as an assignee by inserting the letter Y in the appropriate field
18   (box 53) each time it submitted a claim.
19        d.    California Blue Cross, Massachusetts Blue, and/or TUV Plan
20   thereafter paid some or all of the assigned benefits to Patient 31 instead of Sovereign.
21        130.   On information and belief: Patient 32 was a participant in or beneficiary
22   of Defendant AEA Plan during all times relevant to this complaint. Further, on
23   information and belief:
24        a.    With regard to the relevant welfare benefits implicated by this
25   lawsuit: the AEA Plan either (i) is insured by Texas Blue and/or California Blue Cross
26   or (ii) is self-insured and has entered into an agreement with Texas Blue and/or
27   California Blue Cross by which the AEA Plan receives third party administrative
28   services.

Stris & Maher LLP

58

COMPLAINT FOR VIOLATIONS OF ERISA

1       b.     On or around October 4, 2012, Sovereign began providing mental

2   health and/or drug addiction treatment to Patient 32, who validly assigned all claims

3   arising as a result of Sovereign's services pursuant to the AEA Plan.

4       c.     Shortly thereafter, Sovereign submitted claims seeking

5   reimbursement for these services to California Blue Cross or Texas Blue on the

6   industry-standard UB-04 form. Sovereign indicated that it was requesting that

7   benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

8   (box 53) each time it submitted a claim.

9       d.     California Blue Cross, Texas Blue, and/or AEA Plan thereafter

10   paid some or all of the assigned benefits to Patient 32 instead of Sovereign.

11      131.  On information and belief: Patient 33 was a participant in or beneficiary

12   of Defendant WF Plan during all times relevant to this complaint.

13   Further, on information and belief:

14       a.     With regard to the relevant welfare benefits implicated by this

15   lawsuit: the WF Plan either (i) is insured by Indiana Blue and/or California Blue

16   Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue

17   and/or California Blue Cross by which the WF Plan receives third party

18   administrative services.

19       b.     On or around February 26, 2013, Sovereign began providing

20   mental health and/or drug addiction treatment to Patient 33, who validly assigned all

21   claims arising as a result of Sovereign's services pursuant to the WF Plan.

22       c.     Shortly thereafter, Sovereign submitted claims seeking

23   reimbursement for these services to California Blue Cross or Indiana Blue on the

24   industry-standard UB-04 form. Sovereign indicated that it was requesting that

25   benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

26   (box 53) each time it submitted a claim.

27       d.     California Blue Cross, Indiana Blue, and/or WF Plan thereafter

28   paid some or all of the assigned benefits to Patient 33 instead of Sovereign.

Stris &
Maher LLP

132.   On information and belief: Patient 34 was a participant in or beneficiary of Defendant Seabright Plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Seabright Plan either (i) is insured by Washington Premera Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Premera Blue and/or California Blue Cross by which the Seabright Plan receives third party administrative services.

b.     On or around November 12, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 34, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Seabright Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington Premera Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Washington Premera Blue, and/or Seabright Plan thereafter paid some or all of the assigned benefits to Patient 34 instead of Sovereign.

133.   On information and belief: Patient 35 was a participant in or beneficiary of Defendant Simplot Plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Simplot Plan either (i) is insured by Idaho Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Idaho Blue and/or California Blue Cross by which the Simplot Plan receives third party administrative services.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1    b.    On or around November 29, 2013, Sovereign began providing

2    mental health and/or drug addiction treatment to Patient 35, who validly assigned all

3    claims arising as a result of Sovereign's services pursuant to the Simplot Plan.

4    c.    Shortly thereafter, Sovereign submitted claims seeking

5    reimbursement for these services to California Blue Cross or Idaho Blue on the

6    industry-standard UB-04 form. Sovereign indicated that it was requesting that

7    benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

8    (box 53) each time it submitted a claim.

9    d.    California Blue Cross, Idaho Blue, and/or Simplot Plan thereafter

10   paid some or all of the assigned benefits to Patient 35 instead of Sovereign.

11   134.   On information and belief: Patient 36 was a participant in or beneficiary

12   of Defendant H.E. Butt Grocery Plan during all times relevant to this complaint.

13   Further, on information and belief:

14   a.    With regard to the relevant welfare benefits implicated by this

15   lawsuit: the H.E. Butt Grocery Plan either (i) is insured by Texas Blue and/or

16   California Blue Cross or (ii) is self-insured and has entered into an agreement with

17   Texas Blue and/or California Blue Cross by which the H.E. Butt Grocery Plan

18   receives third party administrative services.

19   b.    On or around December 30, 2013, Sovereign began providing

20   mental health and/or drug addiction treatment to Patient 36, who validly assigned all

21   claims arising as a result of Sovereign's services pursuant to the H.E. Butt Grocery

22   Plan.

23   c.    Shortly thereafter, Sovereign submitted claims seeking

24   reimbursement for these services to California Blue Cross or Texas Blue on the

25   industry-standard UB-04 form. Sovereign indicated that it was requesting that

26   benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

27   (box 53) each time it submitted a claim.

28

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1        d.      California Blue Cross, Texas Blue, and/or H.E. Butt Grocery Plan

2  thereafter paid some or all of the assigned benefits to Patient 36 instead of Sovereign.

3        135.   On information and belief: Patient 37 was a participant in or beneficiary

4  of Defendant Orasure Tech Plan during all times relevant to this complaint. Further,

5  on information and belief:

6        a.      With regard to the relevant welfare benefits implicated by this

7  lawsuit: the Orasure Tech Plan either (i) is insured by Pennsylvania Blue and/or

8  California Blue Cross or (ii) is self-insured and has entered into an agreement with

9  Pennsylvania Blue and/or California Blue Cross by which the Orasure Tech Plan

10  receives third party administrative services.

11        b.      On or around June 30, 2014, Sovereign began providing mental

12  health and/or drug addiction treatment to Patient 37, who validly assigned all claims

13  arising as a result of Sovereign's services pursuant to the Orasure Tech Plan.

14        c.      Shortly   thereafter,   Sovereign   submitted   claims   seeking

15  reimbursement for these services to California Blue Cross or Pennsylvania Blue on

16  the industry-standard UB-04 form. Sovereign indicated that it was requesting that

17  benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

18  (box 53) each time it submitted a claim.

19        d.      California Blue Cross, Pennsylvania Blue, and/or Orasure Tech

20  Plan thereafter paid some or all of the assigned benefits to Patient 37 instead of

21  Sovereign.

22        136.   On information and belief: Patient 38 was a participant in or beneficiary

23  of Defendant FAS Plan during all times relevant to this complaint. Further, on

24  information and belief:

25        a.      With regard to the relevant welfare benefits implicated by this

26  lawsuit: the FAS Plan either (i) is insured by Florida Blue and/or California Blue

27  Cross or (ii) is self-insured and has entered into an agreement with Florida Blue

Stris &
Maher LLP    28

COMPLAINT FOR VIOLATIONS OF ERISA

and/or California Blue Cross by which the FAS Plan receives third party administrative services.

b.    On or around January 13, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 38, who validly assigned all claims arising as a result of Sovereign's services pursuant to the FAS Plan.

c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Florida Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.    California Blue Cross, Florida Blue, and/or FAS Plan thereafter paid some or all of the assigned benefits to Patient 38 instead of Sovereign.

137.   On information and belief: Patient 39 was a participant in or beneficiary of Defendant Navy Credit Union Plan during all times relevant to this complaint. Further, on information and belief:

a.    With regard to the relevant welfare benefits implicated by this lawsuit: the Navy Credit Union Plan either (i) is insured by Colorado Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Colorado Blue and/or California Blue Cross by which the Navy Credit Union Plan receives third party administrative services.

b.    On or around June 28, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 39, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Navy Credit Union Plan.

c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Colorado Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

1          d.      California Blue Cross, Colorado Blue, and/or Navy Credit Union

2    Plan thereafter paid some or all of the assigned benefits to Patient 39 instead of

3    Sovereign.

4         138.   On information and belief: Patient 40 was a participant in or beneficiary

5    of Defendant Elliott Electric Plan during all times relevant to this complaint. Further,

6    on information and belief:

7          a.     With regard to the relevant welfare benefits implicated by this

8    lawsuit: the Elliott Electric Plan either (i) is insured by Texas Blue and/or California

9    Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue

10   and/or California Blue Cross by which the Elliott Electric Plan receives third party

11   administrative services.

12         b.    On or around October 10, 2014, Sovereign began providing

13   mental health and/or drug addiction treatment to Patient 40, who validly assigned all

14   claims arising as a result of Sovereign's services pursuant to the Elliott Electric Plan.

15         c.    Shortly thereafter, Sovereign submitted claims seeking

16   reimbursement for these services to California Blue Cross or Texas Blue on the

17   industry-standard UB-04 form. Sovereign indicated that it was requesting that

18   benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

19   (box 53) each time it submitted a claim.

20         d.     California Blue Cross, Texas Blue, and/or Elliott Electric Plan

21   thereafter paid some or all of the assigned benefits to Patient 40 instead of Sovereign.

22        139.   On information and belief: Patient 41 was a participant in or beneficiary

23   of Defendant SAS Plan during all times relevant to this complaint.

24   Further, on information and belief:

25         a.     With regard to the relevant welfare benefits implicated by this

26   lawsuit: the SAS Plan either (i) is insured by North Carolina Blue and/or California

27   Blue Cross or (ii) is self-insured and has entered into an agreement with North

1   Carolina Blue and/or California Blue Cross by which the SAS Plan receives third
2   party administrative services.

3           b.      On or around January 8, 2014, Sovereign began providing mental
4   health and/or drug addiction treatment to Patient 41, who validly assigned all claims
5   arising as a result of Sovereign's services pursuant to the SAS Plan.

6           c.      Shortly    thereafter,    Sovereign    submitted    claims    seeking
7   reimbursement for these services to California Blue Cross or North Carolina Blue on
8   the industry-standard UB-04 form. Sovereign indicated that it was requesting that
9   benefits be paid to it as an assignee by inserting the letter Y in the appropriate field
10  (box 53) each time it submitted a claim.

11          d.      California Blue Cross, North Carolina Blue, and/or SAS Plan
12  thereafter paid some or all of the assigned benefits to Patient 41 instead of Sovereign.

13      140.    On information and belief: Patient 42 was a participant in or beneficiary
14  of Defendant Bakery Drivers Plan during all times relevant to this complaint. Further,
15  on information and belief:

16          a.      With regard to the relevant welfare benefits implicated by this
17  lawsuit: the Bakery Drivers Plan either (i) is insured by Minnesota Blue and/or
18  California Blue Cross or (ii) is self-insured and has entered into an agreement with
19  Minnesota Blue and/or California Blue Cross by which the Bakery Drivers Plan
20  receives third party administrative services.

21          b.      On or around November 6, 2014, Sovereign began providing
22  mental health and/or drug addiction treatment to Patient 42, who validly assigned all
23  claims arising as a result of Sovereign's services pursuant to the Bakery Drivers Plan.

24          c.      Shortly    thereafter,    Sovereign    submitted    claims    seeking
25  reimbursement for these services to California Blue Cross or Minnesota Blue on the
26  industry-standard UB-04 form. Sovereign indicated that it was requesting that
27  benefits be paid to it as an assignee by inserting the letter Y in the appropriate field
28  (box 53) each time it submitted a claim.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1    d. California Blue Cross, Minnesota Blue, and/or Bakery Drivers

2 Plan thereafter paid some or all of the assigned benefits to Patient 42 instead of

3 Sovereign.

4   141. On information and belief: Patient 43 was a participant in or beneficiary

5 of Defendant WF Plan during all times relevant to this complaint.

6 Further, on information and belief:

7    a. With regard to the relevant welfare benefits implicated by this

8 lawsuit: WF Plan either (i) is insured by Indiana Blue and/or California Blue Cross

9 or (ii) is self-insured and has entered into an agreement with Indiana Blue and/or

10 California Blue Cross by which WF Plan receives third party administrative services.

11    b. On or around May 17, 2013, Sovereign began providing mental

12 health and/or drug addiction treatment to Patient 43, who validly assigned all claims

13 arising as a result of Sovereign's services pursuant to the WF Plan.

14    c. Shortly thereafter, Sovereign submitted claims seeking

15 reimbursement for these services to California Blue Cross or Indiana Blue on the

16 industry-standard UB-04 form. Sovereign indicated that it was requesting that

17 benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

18 (box 53) each time it submitted a claim.

19    d. California Blue Cross, Indiana Blue, and/or WF Plan thereafter

20 paid some or all of the assigned benefits to Patient 43 instead of Sovereign.

21   142. On information and belief: Patient 44 was a participant in or beneficiary

22 of Defendant Simplot Plan during all times relevant to this complaint. Further, on

23 information and belief:

24    a. With regard to the relevant welfare benefits implicated by this

25 lawsuit: the Simplot Plan either (i) is insured by Idaho Blue and/or California Blue

26 Cross or (ii) is self-insured and has entered into an agreement with Idaho Blue and/or

27 California Blue Cross by which the Simplot Plan receives third party administrative

28 services.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1          b.        On or around August 1, 2012, Sovereign began providing mental

2    health and/or drug addiction treatment to Patient 44, who validly assigned all claims

3    arising as a result of Sovereign's services pursuant to the Simplot Plan.

4          c.        Shortly    thereafter,    Sovereign    submitted    claims    seeking

5    reimbursement for these services to California Blue Cross or Idaho Blue on the

6    industry-standard UB-04 form. Sovereign indicated that it was requesting that

7    benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

8    (box 53) each time it submitted a claim.

9          d.        California Blue Cross, Idaho Blue, and/or Simplot Plan thereafter

10   paid some or all of the assigned benefits to Patient 44 instead of Sovereign.

11        143.   On information and belief: Patient 45 was a participant in or beneficiary

12   of Defendant American Air Plan during all times relevant to this complaint. Further,

13   on information and belief:

14         a.        With regard to the relevant welfare benefits implicated by this

15   lawsuit: the American Air Plan either (i) is insured by Texas Blue and/or California

16   Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue

17   and/or California Blue Cross by which the American Air Plan receives third party

18   administrative services.

19         b.        On or around May 8, 2014, Sovereign began providing mental

20   health and/or drug addiction treatment to Patient 45, who validly assigned all claims

21   arising as a result of Sovereign's services pursuant to the American Air Plan.

22         c.        Shortly    thereafter,    Sovereign    submitted    claims    seeking

23   reimbursement for these services to California Blue Cross or Texas Blue on the

24   industry-standard UB-04 form. Sovereign indicated that it was requesting that

25   benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

26   (box 53) each time it submitted a claim.

27         d.        California Blue Cross, Texas Blue, and/or American Air Plan

28   thereafter paid some or all of the assigned benefits to Patient 45 instead of Sovereign.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

144.   On information and belief: Patient 46 was a participant in or beneficiary of Defendant Wal-Mart Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Wal-Mart Plan either (i) is insured by Arkansas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Arkansas Blue and/or California Blue Cross by which the Wal-Mart Plan receives third party administrative services.

b.      On or around May 29, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 46, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Wal-Mart Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Arkansas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Arkansas Blue, and/or Wal-Mart Plan thereafter paid some or all of the assigned benefits to Patient 46 instead of Sovereign.

145.   On information and belief: Patient 47 was a participant in or beneficiary of Defendant Green Tree Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Green Tree Plan either (i) is insured by Minnesota Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue and/or California Blue Cross by which the Green Tree Plan receives third party administrative services.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1        b.      On or around October 10, 2013, Sovereign began providing

2 mental health and/or drug addiction treatment to Patient 47, who validly assigned all

3 claims arising as a result of Sovereign's services pursuant to the Green Tree Plan.

4        c.      Shortly thereafter, Sovereign submitted claims seeking

5 reimbursement for these services to California Blue Cross or Minnesota Blue on the

6 industry-standard UB-04 form. Sovereign indicated that it was requesting that

7 benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

8 (box 53) each time it submitted a claim.

9        d.      California Blue Cross, Minnesota Blue, and/or Green Tree Plan

10 thereafter paid some or all of the assigned benefits to Patient 47 instead of Sovereign.

11      146.   On information and belief: Patient 48 was a participant in or beneficiary

12 of Defendant Martin Marietta Plan during all times relevant to this complaint.

13 Further, on information and belief:

14      a.      With regard to the relevant welfare benefits implicated by this

15 lawsuit: the Martin Marietta Plan either (i) is insured by North Carolina Blue and/or

16 California Blue Cross or (ii) is self-insured and has entered into an agreement with

17 North Carolina Blue and/or California Blue Cross by which the Martin Marietta Plan

18 receives third party administrative services.

19      b.      On or around May 7, 2013, Sovereign began providing mental

20 health and/or drug addiction treatment to Patient 48, who validly assigned all claims

21 arising as a result of Sovereign's services pursuant to the Martin Marietta Plan.

22      c.      Shortly thereafter, Sovereign submitted claims seeking

23 reimbursement for these services to California Blue Cross or North Carolina Blue on

24 the industry-standard UB-04 form. Sovereign indicated that it was requesting that

25 benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

26 (box 53) each time it submitted a claim.

27

28

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

d.      California Blue Cross, North Carolina Blue, and/or Martin Marietta Plan thereafter paid some or all of the assigned benefits to Patient 48 instead of Sovereign.

147.   On information and belief: Patient 49 was a participant in or beneficiary of Defendant Xerox Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Xerox Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the Xerox Plan receives third party administrative services.

b.      On or around March 11, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 49, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Xerox Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Texas Blue, and/or Xerox Plan thereafter paid some or all of the assigned benefits to Patient 49 instead of Sovereign.

148.   On information and belief: Patient 50 was a participant in or beneficiary of Defendant Ernst & Young Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Ernst & Young Plan either (i) is insured by New York Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with

Stris & Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

New York Blue and/or California Blue Cross by which the Ernst & Young Plan receives third party administrative services.

b.      On or around February 25, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 50, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Ernst & Young Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New York Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, New York Blue, and/or Ernst & Young Plan thereafter paid some or all of the assigned benefits to Patient 50 instead of Sovereign.

149.   On information and belief: Patient 51 was a participant in or beneficiary of Defendant Owens-Illinois Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Owens-Illinois Plan either (i) is insured by Ohio Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Ohio Blue and/or California Blue Cross by which the Owens-Illinois Plan receives third party administrative services.

b.      On or around January 16, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 51, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Owens-Illinois Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Ohio Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

        d.     California Blue Cross, Ohio Blue, and/or Owens-Illinois Plan thereafter paid some or all of the assigned benefits to Patient 51 instead of Sovereign.

        150.   On information and belief: Patient 52 was a participant in or beneficiary of Defendant Huntington Plan during all times relevant to this complaint. Further, on information and belief:

        a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Huntington Plan either (i) is insured by Ohio Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Ohio Blue and/or California Blue Cross by which the Huntington Plan receives third party administrative services.

        b.     On or around November 1, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 52, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Huntington Plan.

        c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Ohio Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

        d.     California Blue Cross, Ohio Blue, and/or Huntington Plan thereafter paid some or all of the assigned benefits to Patient 52 instead of Sovereign.

        151.   On information and belief: Patient 53 was a participant in or beneficiary of Defendant Live Nation Plan during all times relevant to this complaint. Further, on information and belief:

        a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Live Nation Plan either (i) is insured by California Blue Cross or (ii) is

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1    self-insured and has entered into an agreement with California Blue Cross by which

2    the Live Nation Plan receives third party administrative services.

3           b.     On or around March 3, 2014, Sovereign began providing mental

4    health and/or drug addiction treatment to Patient 53, who validly assigned all claims

5    arising as a result of Sovereign's services pursuant to the Live Nation Plan.

6           c.     Shortly   thereafter,   Sovereign   submitted   claims   seeking

7    reimbursement for these services to California Blue Cross on the industry-standard

8    UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as

9    an assignee by inserting the letter Y in the appropriate field (box 53) each time it

10   submitted a claim.

11          d.     California Blue Cross and/or Live Nation Plan thereafter paid

12   some or all of the assigned benefits to Patient 53 instead of Sovereign.

13      152.   On information and belief: Patient 54 was a participant in or beneficiary

14   of Defendant R.R. Donnelley Plan during all times relevant to this complaint. Further,

15   on information and belief:

16          a.     With regard to the relevant welfare benefits implicated by this

17   lawsuit: the R.R. Donnelley Plan either (i) is insured by Texas Blue and/or California

18   Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue

19   and/or California Blue Cross by which the R.R. Donnelley Plan receives third party

20   administrative services.

21          b.     On or around June 25, 2013, Sovereign began providing mental

22   health and/or drug addiction treatment to Patient 54, who validly assigned all claims

23   arising as a result of Sovereign's services pursuant to the R.R. Donnelley Plan.

24          c.     Shortly   thereafter,   Sovereign   submitted   claims   seeking

25   reimbursement for these services to California Blue Cross or Texas Blue on the

26   industry-standard UB-04 form. Sovereign indicated that it was requesting that

27   benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

28   (box 53) each time it submitted a claim.

Stris &
Maher LLP

1      d.      California Blue Cross, Texas Blue, and/or R.R. Donnelley Plan

2 thereafter paid some or all of the assigned benefits to Patient 54 instead of Sovereign.

3      153.   On information and belief: Patient 55 was a participant in or beneficiary

4 of Defendant WebMD Plan during all times relevant to this complaint. Further, on

5 information and belief:

6      a.      With regard to the relevant welfare benefits implicated by this

7 lawsuit: the WebMD Plan either (i) is insured by New Jersey Blue and/or California

8 Blue Cross or (ii) is self-insured and has entered into an agreement with New Jersey

9 Blue and/or California Blue Cross by which the WebMD Plan receives third party

10 administrative services.

11      b.      On or around October 1, 2014, Sovereign began providing mental

12 health and/or drug addiction treatment to Patient 55, who validly assigned all claims

13 arising as a result of Sovereign's services pursuant to the WebMD Plan.

14      c.      Shortly thereafter, Sovereign submitted claims seeking

15 reimbursement for these services to California Blue Cross or New Jersey Blue on the

16 industry-standard UB-04 form. Sovereign indicated that it was requesting that

17 benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

18 (box 53) each time it submitted a claim.

19      d.      California Blue Cross, New Jersey Blue, and/or WebMD Plan

20 thereafter paid some or all of the assigned benefits to Patient 55 instead of Sovereign.

21      154.   On information and belief: Patient 56 was a participant in or beneficiary

22 of Defendant ViaSat Plan during all times relevant to this complaint. Further, on

23 information and belief:

24      a.      With regard to the relevant welfare benefits implicated by this

25 lawsuit: the ViaSat Plan either (i) is insured by California Blue Cross or (ii) is self-

26 insured and has entered into an agreement with California Blue Cross by which the

27 ViaSat Plan receives third party administrative services.

Stris &
Maher LLP 28

COMPLAINT FOR VIOLATIONS OF ERISA

b.      On or around October 8, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 56, who validly assigned all claims arising as a result of Sovereign's services pursuant to the ViaSat Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or ViaSat Plan thereafter paid some or all of the assigned benefits to Patient 56 instead of Sovereign.

155.   On information and belief: Patient 57 was a participant in or beneficiary of Defendant ConAgra Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the ConAgra Plan either (i) is insured by Nebraska Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Nebraska Blue and/or California Blue Cross by which the ConAgra Plan receives third party administrative services.

b.      On or around January 9, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 57, who validly assigned all claims arising as a result of Sovereign's services pursuant to the ConAgra Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Nebraska Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Nebraska Blue, and/or ConAgra Plan thereafter paid some or all of the assigned benefits to Patient 57 instead of Sovereign.

Stris &
Maher LLP

75

156.   On information and belief: Patient 58 was a participant in or beneficiary of Defendant Kiewit Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Kiewit Plan either (i) is insured by Wyoming Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Wyoming Blue and/or California Blue Cross by which the Kiewit Plan receives third party administrative services.

b.      On or around September 21, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 58, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Kiewit Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Wyoming Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Wyoming Blue, and/or Kiewit Plan thereafter paid some or all of the assigned benefits to Patient 58 instead of Sovereign.

157.   On information and belief: Patient 59 was a participant in or beneficiary of Defendant Lineco Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Lineco Plan either (i) is insured by Illinois Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Illinois Blue and/or California Blue Cross by which the Lineco Plan receives third party administrative services.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1      b.      On or around February 12, 2014, Sovereign began providing

2 mental health and/or drug addiction treatment to Patient 59, who validly assigned all

3 claims arising as a result of Sovereign's services pursuant to the Lineco Plan.

4      c.      Shortly thereafter, Sovereign submitted claims seeking

5 reimbursement for these services to California Blue Cross or Illinois Blue on the

6 industry-standard UB-04 form. Sovereign indicated that it was requesting that

7 benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

8 (box 53) each time it submitted a claim.

9      d.      California Blue Cross, Illinois Blue, and/or Lineco Plan thereafter

10 paid some or all of the assigned benefits to Patient 59 instead of Sovereign.

11      158.   On information and belief: Patient 60 was a participant in or beneficiary

12 of Defendant Novartis Plan during all times relevant to this complaint. Further, on

13 information and belief:

14      a.      With regard to the relevant welfare benefits implicated by this

15 lawsuit: the Novartis Plan either (i) is insured by New Jersey Blue and/or California

16 Blue Cross or (ii) is self-insured and has entered into an agreement with New Jersey

17 Blue and/or California Blue Cross by which the Novartis Plan receives third party

18 administrative services.

19      b.      On or around July 14, 2014, Sovereign began providing mental

20 health and/or drug addiction treatment to Patient 60, who validly assigned all claims

21 arising as a result of Sovereign's services pursuant to the Novartis Plan.

22      c.      Shortly thereafter, Sovereign submitted claims seeking

23 reimbursement for these services to California Blue Cross or New Jersey Blue on the

24 industry-standard UB-04 form. Sovereign indicated that it was requesting that

25 benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

26 (box 53) each time it submitted a claim.

27      d.      California Blue Cross, New Jersey Blue, and/or Novartis Plan

28 thereafter paid some or all of the assigned benefits to Patient 60 instead of Sovereign.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

159.   On information and belief: Patient 61 was a participant in or beneficiary of Defendant Globecast Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Globecast Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Globecast Plan receives third party administrative services.

b.      On or around July 3, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 61, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Globecast Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or Globecast Plan thereafter paid some or all of the assigned benefits to Patient 61 instead of Sovereign.

160.   On information and belief: Patient 62 was a participant in or beneficiary of Defendant Milton S. Hershey Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Milton S. Hershey Plan either (i) is insured by Pennsylvania Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Pennsylvania Blue and/or California Blue Cross by which the Milton S. Hershey Plan receives third party administrative services.

b.      On or around January 11, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 62, who validly assigned all

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1   claims arising as a result of Sovereign's services pursuant to the Milton S. Hershey
2   Plan.

3          c.     Shortly thereafter, Sovereign submitted claims seeking
4   reimbursement for these services to California Blue Cross or Pennsylvania Blue on
5   the industry-standard UB-04 form. Sovereign indicated that it was requesting that
6   benefits be paid to it as an assignee by inserting the letter Y in the appropriate field
7   (box 53) each time it submitted a claim.

8          d.     California Blue Cross, Pennsylvania Blue, and/or Milton S.
9   Hershey Plan thereafter paid some or all of the assigned benefits to Patient 62 instead
10  of Sovereign.

11      161.   On information and belief: Patient 63 was a participant in or beneficiary
12  of Defendant AWC Plan during all times relevant to this complaint. Further, on
13  information and belief:

14          a.     With regard to the relevant welfare benefits implicated by this
15  lawsuit: the AWC Plan either (i) is insured by Washington Regence Blue and/or
16  California Blue Cross or (ii) is self-insured and has entered into an agreement with
17  Washington Regence Blue and/or California Blue Cross by which the AWC Plan
18  receives third party administrative services.

19          b.     On or around March 28, 2014, Sovereign began providing mental
20  health and/or drug addiction treatment to Patient 63, who validly assigned all claims
21  arising as a result of Sovereign's services pursuant to the AWC Plan.

22          c.     Shortly thereafter, Sovereign submitted claims seeking
23  reimbursement for these services to California Blue Cross or Washington Regence
24  Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting
25  that benefits be paid to it as an assignee by inserting the letter Y in the appropriate
26  field (box 53) each time it submitted a claim.

27
28

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

d. California Blue Cross, Washington Regence Blue, and/or AWC Plan thereafter paid some or all of the assigned benefits to Patient 63 instead of Sovereign.

162. On information and belief: Patient 64 was a participant in or beneficiary of Defendant Rio Tinto Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Rio Tinto Plan either (i) is insured by Utah Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Utah Blue and/or California Blue Cross by which the Rio Tinto Plan receives third party administrative services.

b. On or around September 4, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 64, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Rio Tinto Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Utah Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Utah Blue, and/or Rio Tinto Plan thereafter paid some or all of the assigned benefits to Patient 64 instead of Sovereign.

163. On information and belief: Patient 65 was a participant in or beneficiary of Defendant Oregon Teamster Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Oregon Teamster Plan either (i) is insured by Oregon Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with

Stris & Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1  Oregon Blue and/or California Blue Cross by which the Oregon Teamster Plan
2  receives third party administrative services.

3      b.    On or around September 22, 2014, Sovereign began providing
4  mental health and/or drug addiction treatment to Patient 65, who validly assigned all
5  claims arising as a result of Sovereign's services pursuant to the Oregon Teamster
6  Plan.

7      c.    Shortly thereafter, Sovereign submitted claims seeking
8  reimbursement for these services to California Blue Cross or Oregon Blue on the
9  industry-standard UB-04 form. Sovereign indicated that it was requesting that
10 benefits be paid to it as an assignee by inserting the letter Y in the appropriate field
11 (box 53) each time it submitted a claim.

12      d.    California Blue Cross, Oregon Blue, and/or Oregon Teamster
13 Plan thereafter paid some or all of the assigned benefits to Patient 65 instead of
14 Sovereign.

15      164.   On information and belief: Patient 66 was a participant in or beneficiary
16 of Defendant Geico Plan during all times relevant to this complaint. Further, on
17 information and belief:

18      a.    With regard to the relevant welfare benefits implicated by this
19 lawsuit: the Geico Plan either (i) is insured by CareFirst Blue and/or California Blue
20 Cross or (ii) is self-insured and has entered into an agreement with CareFirst Blue
21 and/or California Blue Cross by which the Geico Plan receives third party
22 administrative services.

23      b.    On or around October 19, 2013, Sovereign began providing
24 mental health and/or drug addiction treatment to Patient 66, who validly assigned all
25 claims arising as a result of Sovereign's services pursuant to the Geico Plan.

26      c.    Shortly thereafter, Sovereign submitted claims seeking
27 reimbursement for these services to California Blue Cross or CareFirst Blue on the
28 industry-standard UB-04 form. Sovereign indicated that it was requesting that

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1   benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

2   (box 53) each time it submitted a claim.

3       d.      California Blue Cross, CareFirst Blue, and/or Geico Plan

4   thereafter paid some or all of the assigned benefits to Patient 66 instead of Sovereign.

5       165.   On information and belief: Patient 67 was a participant in or beneficiary

6   of Defendant Verizon Plan during all times relevant to this complaint. Further, on

7   information and belief:

8       a.      With regard to the relevant welfare benefits implicated by this

9   lawsuit: the Verizon Plan either (i) is insured by Ohio Blue and/or California Blue

10  Cross or (ii) is self-insured and has entered into an agreement with Ohio Blue and/or

11  California Blue Cross by which the Verizon Plan receives third party administrative

12  services.

13      b.      On or around May 22, 2014, Sovereign began providing mental

14  health and/or drug addiction treatment to Patient 67, who validly assigned all claims

15  arising as a result of Sovereign's services pursuant to the Verizon Plan.

16      c.      Shortly   thereafter,   Sovereign   submitted   claims   seeking

17  reimbursement for these services to California Blue Cross or Ohio Blue on the

18  industry-standard UB-04 form. Sovereign indicated that it was requesting that

19  benefits be paid to it as an assignee by inserting the letter Y in the appropriate field

20  (box 53) each time it submitted a claim.

21      d.      California Blue Cross, Ohio Blue, and/or Verizon Plan thereafter

22  paid some or all of the assigned benefits to Patient 67 instead of Sovereign.

23      166.   On information and belief: Patient 68 was a participant in or beneficiary

24  of Defendant 3M Plan during all times relevant to this complaint. Further, on

25  information and belief:

26      a.      With regard to the relevant welfare benefits implicated by this

27  lawsuit: the 3M Plan either (i) is insured by Minnesota Blue and/or California Blue

28  Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue

Stris &
Maher LLP

82

and/or California Blue Cross by which the 3M Plan receives third party administrative services.

      b.    On or around February 20, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 68, who validly assigned all claims arising as a result of Sovereign's services pursuant to the 3M Plan.

      c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Minnesota Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.    California Blue Cross, Minnesota Blue, and/or 3M Plan thereafter paid some or all of the assigned benefits to Patient 68 instead of Sovereign.

167.   On information and belief: Patient 69 was a participant in or beneficiary of Defendant Covance Plan during all times relevant to this complaint. Further, on information and belief:

      a.    With regard to the relevant welfare benefits implicated by this lawsuit: the Covance Plan either (i) is insured by New Jersey Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New Jersey Blue and/or California Blue Cross by which the Covance Plan receives third party administrative services.

      b.    On or around March 4, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 69, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Covance Plan.

      c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New Jersey Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1     d.    California Blue Cross, New Jersey Blue, and/or Covance Plan
2 thereafter paid some or all of the assigned benefits to Patient 69 instead of Sovereign.

3     168.   On information and belief: Patient 70 was a participant in or beneficiary
4 of Defendant Vertical Plan during all times relevant to this complaint. Further, on
5 information and belief:

6     a.    With regard to the relevant welfare benefits implicated by this
7 lawsuit: the Vertical Plan either (i) is insured by CareFirst Blue and/or California
8 Blue Cross or (ii) is self-insured and has entered into an agreement with CareFirst
9 Blue and/or California Blue Cross by which the Vertical Plan receives third party
10 administrative services.

11     b.    On or around October 12, 2013, Sovereign began providing
12 mental health and/or drug addiction treatment to Patient 70, who validly assigned all
13 claims arising as a result of Sovereign's services pursuant to the Vertical Plan.

14     c.    Shortly thereafter, Sovereign submitted claims seeking
15 reimbursement for these services to California Blue Cross or CareFirst Blue on the
16 industry-standard UB-04 form. Sovereign indicated that it was requesting that
17 benefits be paid to it as an assignee by inserting the letter Y in the appropriate field
18 (box 53) each time it submitted a claim.

19     d.    California Blue Cross, CareFirst Blue, and/or Vertical Plan
20 thereafter paid some or all of the assigned benefits to Patient 70 instead of Sovereign.

21     169.   On information and belief: Patient 71 was a participant in or beneficiary
22 of Defendant Bard Plan during all times relevant to this complaint. Further, on
23 information and belief:

24     a.    With regard to the relevant welfare benefits implicated by this
25 lawsuit: the Bard Plan either (i) is insured by New Jersey Blue and/or California Blue
26 Cross or (ii) is self-insured and has entered into an agreement with New Jersey Blue
27 and/or California Blue Cross by which the Bard Plan receives third party
28 administrative services.

Stris &
Maher LLP

84
COMPLAINT FOR VIOLATIONS OF ERISA

b.      On or around June 18, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 71, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Bard Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New Jersey Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, New Jersey Blue, and/or Bard Plan thereafter paid some or all of the assigned benefits to Patient 71 instead of Sovereign.

170.   On information and belief: Patient 72 was a participant in or beneficiary of Defendant Eaton Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Eaton Plan either (i) is insured by New York Anthem Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New York Anthem Blue and/or California Blue Cross by which the Eaton Plan receives third party administrative services.

b.      On or around May 6, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 72, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Eaton Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New York Anthem Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

d. California Blue Cross, New York Anthem Blue, and/or Eaton Plan thereafter paid some or all of the assigned benefits to Patient 72 instead of Sovereign.

171. On information and belief: Patient 73 was a participant in or beneficiary of Defendant Baxter Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Baxter Plan either (i) is insured by Illinois Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Illinois Blue and/or California Blue Cross by which the Baxter Plan receives third party administrative services.

b. On or around May 14, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 73, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Baxter Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Illinois Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Illinois Blue, and/or Baxter Plan thereafter paid some or all of the assigned benefits to Patient 73 instead of Sovereign.

172. On information and belief: Patient 74 was a participant in or beneficiary of Defendant Alltech Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Alltech Plan either (i) is insured by Kentucky Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Kentucky Blue

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1  and/or California Blue Cross by which the Alltech Plan receives third party
2  administrative services.

3        b.     On or around August 7, 2014, Sovereign began providing mental
4  health and/or drug addiction treatment to Patient 74, who validly assigned all claims
5  arising as a result of Sovereign's services pursuant to the Alltech Plan.

6        c.     Shortly thereafter, Sovereign submitted claims seeking
7  reimbursement for these services to California Blue Cross or Kentucky Blue on the
8  industry-standard UB-04 form. Sovereign indicated that it was requesting that
9  benefits be paid to it as an assignee by inserting the letter Y in the appropriate field
10 (box 53) each time it submitted a claim.

11       d.     California Blue Cross, Kentucky Blue, and/or Alltech Plan
12 thereafter paid some or all of the assigned benefits to Patient 74 instead of Sovereign.

13     173.  Because Blue Cross Defendants' policy of refusing to acknowledge,
14 honor, or pay Assigned Claims is ongoing, other instances of wrongfully denied
15 claims—besides those detailed above—have occurred and are occurring. As those
16 instances become known to Sovereign, it will offer proof of and seek relief for those
17 claims in accordance with the relief sought herein.

18     174.  For each and every Assigned Claim, the relevant Blue Cross Defendant's
19 decision to disregard Sovereign's assignment of benefits (and to, instead, send a
20 check directly to the ERISA Beneficiary who had assigned his/her claims to
21 Sovereign) constitutes an "adverse benefits determination" under the applicable
22 federal law and regulations.

23     175.  For each and every Assigned Claim, the relevant Blue Cross Defendant's
24 adverse benefits determination grossly violated ERISA and the applicable federal
25 regulations, which require that adverse benefit determinations "set forth, in a manner
26 calculated to be understood by the claimant—(i) the specific reason or reasons for the
27 adverse determination; (ii) reference to the specific plan provisions on which the
28 determination is based; (iii) a description of any additional material or information

Stris &
Maher LLP

87

1   necessary for the claimant to perfect the claim and an explanation of why such
2   material or information is necessary; (iv) a description of the plan's review
3   procedures and the time limits applicable to such procedures, including a statement
4   of the claimant's right to bring a civil action under section 502(a) of the Act following
5   an adverse benefit determination on review. . . ." 29 C.F.R. § 2560.503-1(g)(1).

6       176.   As a result of Defendants' malfeasance, Plaintiffs are deemed to have
7   exhausted all administrative remedies available to them. Federal regulations are clear
8   that when claims procedure requirements are violated by administrators, claimants
9   may immediately proceed to federal court. *See* 29 C.F.R. § 2560.503-1(l) and 29
10  C.F.R. §2590.715-2719(b)(2)(ii)(F).

11      177.   In addition, and in the alternative, any exhaustion of Plaintiffs'
12  administrative remedies regarding the Assigned Claims would be futile. Plaintiffs
13  properly submitted UB-04 forms seeking payment for the Assigned Claims, and those
14  UB-04s were ignored. Plaintiffs also sent over two dozen follow-up letters, written
15  by expert ERISA counsel, to Blue Cross Defendants seeking information and
16  demanding payment; those follow-up efforts also failed to motivate the Blue Cross
17  Defendants to comply with the governing claims regulations (or in many cases even
18  respond intelligibly). As the Blue Cross Defendants (and the affiliated Welfare Plan
19  Defendants) clearly have a policy of not paying any assigned claims, nor following
20  any governing regulations concerning the handling of such claims, further
21  administrative efforts brought by an assignee such as Sovereign would be futile.

22      178.   When no provision in an ERISA welfare plan prohibits assignment of a
23  benefits claim, the assignee is entitled to payment. Upon information and belief, some
24  if not all of Sovereign's Assigned Claims were made under welfare plans that lacked
25  an anti-assignment provision. For those Assigned Claims, pursuant to 29 U.S.C. §
26  1132(a)(1)(B), Sovereign is entitled to receive payment equal to the value of those
27  claims for covered services.

28

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

179.   Even if a provision in an ERISA welfare plan prohibits assignment, those provisions are deemed waived with respect to specific claims made if the provision is not timely asserted by a plan administrator. Because no anti-assignment provision was identified and asserted by the Blue Cross Defendants as a ground to not pay Sovereign, Sovereign is entitled to receive payment on Assigned Claims for covered services even for those plans that have anti-assignment provisions. In addition, or in the alternative, anti-assignment provisions with respect to Sovereign's Assigned Claims are barred by relevant state law that is not preempted by ERISA.

180.   In light of the foregoing, under 29 U.S.C. § 1132(a)(1)(B), Sovereign is entitled to payment on all of its Assigned Claims, and is further entitled to recover attorneys' fees and costs under 29 U.S.C. § 1132(g), which together total in the millions.

## SECOND CLAIM FOR RELIEF

### (Against All Defendants—Seeking Removal of Breaching Fiduciaries)

### (29 U.S.C § 1132(a)(2) & 29 U.S.C. § 1109(a))

181.   The allegations of the prior paragraphs of this Complaint are hereby repeated as if fully set forth herein.

182.   29 U.S.C. § 1132(a)(2) permits a plaintiff to bring a claim for "appropriate relief" under 29 U.S.C. § 1109, which provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter . . . shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

183.   All of the Welfare Plan Defendants, by ERISA statutory command, must have a named fiduciary.

184.   As set forth above, all the Blue Cross Defendants handled or otherwise exercised discretion with respect to benefit claim administration, review, and payment. Each of them is therefore a fiduciary under ERISA.

Stris &
Maher LLP

185.   Accordingly, pursuant to sections §§ 1132(a)(2) and 1109(a), Plaintiffs seek an order removing and dismissing the named fiduciaries of the Welfare Plan Defendants. Plaintiffs also seek an order removing and permanently barring the Blue Cross Defendants from serving as fiduciaries for any of the Welfare Plan Defendants.

186.   In addition to the removal of fiduciaries sought above, Sovereign is further entitled to recover attorneys' fees and costs under 29 U.S.C. § 1132(g).

## THIRD CLAIM FOR RELIEF

### (Against the Blue Cross Defendants—Seeking Injunctive & Declaratory Relief)
### (29 U.S.C § 1132(a)(3))

187.   The allegations of the prior paragraphs of this Complaint are hereby repeated as if fully set forth herein.

188.   29 U.S.C. § 1132(a)(3) permits a plaintiff to "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

189.   As set forth above, with respect to the Assigned Claims asserted by Sovereign, the Blue Cross Defendants have, as a matter of policy, pattern, and practice, grossly violated ERISA and the applicable claims procedure regulations promulgated by the relevant federal agencies.

190.   Plaintiffs seek a declaratory judgment that the Blue Cross Defendant's practice of ignoring or summarily denying Sovereign's Assigned Claims without consulting the operative plan document and without informing Sovereign of the fact of its denial, or the specific basis therefore, violates ERISA.

191.   Plaintiffs seek an order that the Blue Cross Defendants (and those controlled by them) must, with respect to all past and future Assigned Claims submitted by Sovereign or its agents to a Blue Cross Defendant:

a.   Consult and carefully review the operative welfare plan documents with respect to any Assigned Claim;

Stris &
Maher LLP

90

b.     Inform Sovereign, promptly and in writing, whether each Assigned Claim is approved or denied;

c.     Inform Sovereign, promptly and in writing, of the particular plan provision or provisions upon which any denial of an Assigned Claim, in whole or in part, is based;

d.     Promptly provide Sovereign with a complete copy of the operative plan document from which any provision has been cited as justification for the denial, in whole or in part, of an Assigned Claim;

e.     Inform Sovereign, promptly and in writing, of any appeal rights it has with respect to the denial, in whole or in part, of Assigned Claim;

f.     Otherwise strictly follow the federal regulations concerning the handling of claims, as set forth in 29 C.F.R. § 2560.503-1 and/or 29 C.F.R. §2590.715-2719(b); and

g.     Insofar as an Assigned Claim is covered by the subject Welfare Plan, pay Sovereign (rather than the assignor) directly and promptly.

192.   In addition to the injunctive and equitable relief sought above, Sovereign is further entitled to recover attorneys' fees and costs under 29 U.S.C. § 1132(g).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.     For damages, in an amount to be proven at trial, plus all applicable interest and costs;

2.     For all attorneys' fees and costs incurred in bringing this action, to the extent recoverable by law;

3.     For the removal and dismissal of all fiduciaries who have breached their ERISA-imposed duties in connection with the welfare plans at issue here;

4.     For a declaration that the claims practices of the Defendants regarding Assigned Claims submitted by Sovereign violate governing law;

Stris & Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA

1        5.      For an order enjoining Defendants from continuing their illegal claims

2    practices and commanding that they immediately and strictly comply with the

3    governing federal regulations;

4        6.      And for all other relief the Court deems appropriate, proper, and just.

5                                **<u>DEMAND FOR JURY TRIAL</u>**

6    Plaintiffs demand a jury trial for all claims so triable.

7

8    Dated: May 8, 2015                         STRIS & MAHER LLP

9                                        <u>/s/ Peter K. Stris</u>

10                                       Peter K. Stris

11                                       *Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stris &
Maher LLP

COMPLAINT FOR VIOLATIONS OF ERISA