EILEEN R. RIDLEY, CA Bar No. 151735
    eridley@foley.com
MICHAEL A. NARANJO, CA Bar No. 221449
    mnaranjo@foley.com
ALAN R. OUELLETTE, CA Bar No. 272745
    aouellette@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET
SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE: 415.434.4484
FACSIMILE:   415.434.4507

Attorneys for the Anthem Defendants[1]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| DUAL DIAGNOSIS TREATMENT CENTER, INC., a California corporation, et al., <br><br>       Plaintiffs, <br><br>       vs. <br><br> BLUE CROSS OF CALIFORNIA, dba ANTHEM BLUE CROSS, et al., <br><br>       Defendants. | Case No. 8:15-cv-00736-DOC-RNB <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OMNIBUS MOTION TO DISMISS AND/OR STRIKE** <br><br> Date:      December 21, 2015 <br> Time:     1:30 p.m. <br> Location:   Courtroom 9D <br><br> Judge:     Honorable David O. Carter <br><br> Complaint Filed:   May 8, 2015 |

---

[1] Exhibit A, attached hereto, identifies the individual defendants that are referred to collectively herein as the "Anthem Defendants."

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    SUMMARY OF ALLEGATIONS ............................................................... 3

III.   LEGAL STANDARD ................................................................................. 4

IV.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ........ 4

       A.    PLAINTIFFS LACK STANDING TO ASSERT CLAIMS UNDER
             ERISA ................................................................................................ 4

             1.    Plaintiffs Lack Derivative Standing On All Of Their
                   Claims Because The Purported Assignments Are Mere
                   Authorizations For Direct Payment. ................................... 7

             2.    Plaintiffs' Alleged "Assignments", Even As Pled, Do
                   Not Extend To Claims Under ERISA's Civil
                   Enforcement Provisions, And Thus Plaintiffs Are
                   Without Derivative Standing To Bring Counts 2 and 3 ............. 10

       B.    PLAINTIFFS' CLAIMS MUST BE DISMISSED WHERE THE
             APPLICABLE PLANS PROHIBIT ASSIGNMENTS. ......................... 16

             1.    Well-Established Ninth Circuit Authority And Other
                   Federal Court Decisions Have Unequivocally Upheld
                   Anti-Assignment Clauses In ERISA-Governed Plans. ............ 16

             2.    Plaintiffs Have Failed To Allege Facts Demonstrating
                   that Defendants Waived Their Right To Enforce The
                   Anti-Assignment Provisions. ............................................. 18

       C.    EVEN ASSUMING PLAINTIFFS COULD ESTABLISH ERISA
             STANDING, PLAINTIFFS' CLAIMS MUST BE DISMISSED
             BECAUSE PLAINTIFFS DO NOT ALLEGE THAT THEY GAVE
             SUFFICIENT NOTICE OF THE TERMS OF THE PURPORTED
             ASSIGNMENTS TO DEFENDANTS. ................................................ 20

       D.    THE COMPLAINT SUFFERS FROM OTHER DEFECTS ................. 23

             1.    Plaintiffs Fail To Allege Cognizable Procedural
                   Violations Under ERISA ................................................... 23

             2.    Plaintiffs' Second Count For Breach Of Fiduciary Duty
                   Under 29 U.S.C. § 1132(a)(2) Fails As A Matter Of
                   Law As To The ERISA Plan Defendants ............................. 26

             3.    Plaintiffs' Third Count For Equitable Relief Under 29
                   U.S.C. § 1132(a)(3) Fails Because It Seeks Relief That
                   Is Not Appropriate Under ERISA. ...................................... 26

       E.    PLAINTIFFS' DEMAND FOR A JURY TRIAL SHOULD BE
             STRICKEN. ....................................................................................... 27

1

V.      CONCLUSION.................................................................................27

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:15-cv-00736-DOC-RNB
4839-6860-3685.13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
    2015 WL 1608991 (C.D. Cal. Apr. 10, 2015) ................................. 12, 14, 19

*Alocozy v. U.S. Citizenship & Immig. Servs.*,
    704 F.3d 795 (9th Cir. 2012) ...................................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................... 4

*Aviation W. Charters, Inc. v. United Healthcare Ins. Co.*,
    2014 WL 5814232 (D. Ariz. Nov. 10, 2014) .............................. 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................... 4

*Black & Decker Disability Plan v. Nord*,
    538 U.S. 822 (2003)......................................... 24

*Blue Cross of Ca. v. Anesthesia Care Assocs. Medi. Grp., Inc.*,
    187 F.3d 1045 (9th Cir. 1999) ..................................... 5

*Borrero v. United HealthCare of N.Y., Inc.*,
    610 F.3d 1296 (11th Cir. 2010) ....................................6

*Bowles v. Reade*,
    198 F.3d 752 (9th Cir. 1999) .................................... 26

*Branch v. Tunnell*,
    14 F.3d 449 (9th Cir. 1994) ......................................7

*Brown v. Blue Cross Blue Shield of Tenn. Inc.*,
    No. 1:14-CV-00223, 2015 WL 3622338 (E.D. Tenn. June 9, 2015) .................. 7, 9, 22

*Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*,
    2014 WL 6603761 (C.D. Cal. July 28, 2014)............................... 9

*City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*,
    156 F.3d 223 (1st Cir. 1998) ..................................... 17

*Clair v. Harris Trust & Sav. Bank,*
    190 F.3d 495 (7th Cir. 1999) ...................................................................... 15

*Cohen v. Independence Blue Cross,*
    820 F. Supp. 2d 594 (D.N.J. 2011) ............................................................ 18

*Davidowitz v. Delta Dental Plan of Cal., Inc.,*
    946 F.2d 1476 (9th Cir. 1991) .................................................................... 16

*Eden Surgical Ctr. v. B. Braun Med., Inc.,*
    420 F. App'x 696 (9th Cir. 2011) ........................................................ 11, 16

*Filler v. Anthem Blue Cross,*
    2012 U.S. Dist. LEXIS 182356 (C.D. Cal. Dec. 17, 2012) ........................ 25

*FMC Corp. v. Holliday,*
    498 U.S. 52 (1990) ...................................................................................... 17

*Hahnemann Univ. Hosp. v. All Shore, Inc.,*
    514 F.3d 300 (3d Cir. 2008) ................................................................. 10, 15

*Hobbs v. Blue Cross Blue Shield of Ala.,*
    276 F.3d 1236 (11th Cir. 2001) .................................................................... 6

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau,*
    701 F.2d 1276 (9th Cir. 1983) .............................................................. 10, 13

*Kling v. Fid. Mgmt. Trust Co.,*
    323 F. Supp. 2d 132 (D. Mass. 2004) ......................................................... 26

*LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.,*
    298 F.3d 348 (5th Cir. 2002) ...................................................................... 16

*Long Beach Mem'l. Med. Ctr. v. Cal. Mart Empl. Benefit Plan,*
    1992 U.S. App LEXIS 3346 (9th Cir. Feb. 22, 1999) ................................ 16

*Mass. Mut. Life Ins. Co. v. Russell,*
    473 U.S. 134 (1985) .................................................................................... 26

*Med. Mut. of Ohio v. DeSoto,*
    245 F.3d 561 (6th Cir. 2001) ...................................................................... 17

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
    521 F.3d 1097 (9th Cir. 2008) ...................................................................... 4

*MHA, LLC v. Aetna Health*,
　　2013 WL 705612 (D.N.J. Feb. 25, 2013) ....................................................... 8

*Misic v. Bldg. Serv. Empls. Health & Welfare Trust*,
　　789 F.2d 1374 (9th Cir. 1986) (per curiam) ................................................. 25

*Mondry v. Am. Family Mut. Ins. Co.*,
　　557 F.3d 781 (7th Cir. 2009) ......................................................................... 26

*Morlan v. Universal Guar. Life Ins. Co.*,
　　298 F.3d 609 (7th Cir. 2002) ......................................................................... 17

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*,
　　2014 WL 895407 (D.N.J. Mar. 6, 2014) ......................................................... 9

*Nevill v. Shell Oil Co.*,
　　835 F.2d 209 (9th Cir. 1987) ......................................................................... 27

*Pakovich v. Verizon, Ltd. Plan*,
　　653 F.3d 488 (7th Cir. 2011) ......................................................................... 25

*Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*,
　　371 F.3d 1291 (11th Cir. 2004) ............................................................... 17, 18

*Premier Health Ctr., P.C. v. UnitedHealth Grp.*,
　　292 F.R.D. 204 (D.N.J. 2013) ....................................................................... 10

*Principal Mut. Life Ins. Co.v. Charter Barclay Hosp.*,
　　81 F.3d 53 (7th Cir. 1996) ............................................................................... 9

*Providence Health Plan v. McDowell*,
　　361 F.3d 1243 (9th Cir. 2004) ....................................................................... 25

*Quaresma v. BC Life & Health Ins. Co.*,
　　623 F. Supp. 2d 1110 (E.D. Cal. 2007) .................................................... 16, 18

*Reich v. Metrahealth, Inc.*,
　　87 F.3d 1321 (9th Cir. 1996) ........................................................................... 6

*Resisting Envt'l Destruction on Indigenous Lands v. U.S. Envt'l Prot.
　　Agency*,
　　716 F.3d 1155 (9th Cir. 2013) ....................................................................... 24

*Riverview Health Inst., LLC v. Med. Mut. of Ohio*,
　　601 F.3d 505 (6th Cir. 2010) ......................................................................... 20

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F.2d 530 (9th Cir. 1984) ..................................................................... 4

*Rojas v. Cigna Health & Life Ins. Co.*,
   793 F.3d 253 (2d Cir. 2015) .................................................................. 5, 11

*Rush Prudential HMO, Inc., v. Moran*,
   536 U.S. 355 (2002) ................................................................................ 17

*Sanctuary Surgical Ctr., Inc. v. Aetna*,
   546 F. App'x 846 (11th Cir. 2013) ......................................... 6, 11, 12, 14

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*,
   578 F.3d 505 (7th Cir. 2009) .................................................................. 15

*Silk v. Metro. Life Ins. Co.*,
   310 F. App'x 138 (9th Cir. 2009) ........................................................... 25

*Sleep Lab at W. Houston v. Tex. Children's Hosp.*,
   2015 WL 3507894 (S.D. Tex. June 2, 2015) .......................................... 27

*Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*,
   770 F.3d 1282 (9th Cir. 2014) .........................................................*passim*

*St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield*,
   49 F.3d 1460 (10th Cir. 1995) ................................................................ 17

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) .................................................................. 7

*Steinman v. Hicks*,
   252 F. Supp. 2d 746 (C.D. Ill. 2003) ..................................................... 26

*Superior Energy Servs., LLC v. Cabinda Gulf Oil Co.*,
   2013 WL 6406324 (N.D. Cal. Dec. 6, 2013) ......................................... 21

*Tex. Life, Accident Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*,
   105 F.3d 210 (5th Cir. 1997) .............................................................. 8, 13

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) .................................................................... 7

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ................................................................................ 26

*Via Christi Reg'l Med. Ctr., Inc. v. Blue Cross & Blue Shield of Kan., Inc.*,
2006 WL 3469544 (D. Kan. Nov. 30, 2006) ............................................... 12

*In re WellPoint, Inc. Out-Of-Network "UCR" Rates Litig.*,
903 F. Supp. 2d 880 (C.D. Cal. 2012) .............................................. 12, 14

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
588 F.3d 659 (9th Cir. 2009) ......................................................... 4

*Wise v. Verizon Commc'ns, Inc.*,
600 F.3d 1180 (9th Cir. 2010) .......................................... 15, 26, 27

**California Cases**

*Cockerell v. Title Ins. & Trust Co.*,
267 P.2d 16 (Cal. 1954) ...................................................... 21, 22, 23

*Nat'l Reserve Co. of Am. v. Metro. Trust Co. of Cal.*,
17 Cal. 2d 827 (1941) ................................................................ 10, 13

**Other State Cases**

*Kohl v. Blue Cross & Blue Shield of Fla., Inc.*,
955 So. 2d 1140 (Fla. Dist. Ct. App. 2007) .................................... 17

*Obstetricians-Gynecologists, P.C. v. Blue Cross & Blue Shield of Nebr.*,
361 N.W.2d 550 (Neb. 1985) ..................................................... 18

**Federal Statutes**

29 U.S.C. § 1002(8) ...................................................................... 6

29 U.S.C. § 1024 .......................................................................... 9

29 U.S.C. § 1132 ......................................................................... 6, 9

29 U.S.C. § 1132(a) ...................................................................... 1

29 U.S.C. § 1132(a)(1) ................................................................. 5

29 U.S.C. § 1132(a)(1)(A) ........................................................... 9

29 U.S.C. § 1132(a)(1)(B) .................................................. 3, 9, 27

29 U.S.C. § 1132(a)(2) ...................................................... *passim*

29 U.S.C. § 1132(a)(3) .................................................................................*passim*

29 U.S.C. § 1132(c) ..........................................................................................9, 11

Fed. R. Civ. P. 12(f) ..............................................................................................27

Fed. R. Civ. P. 12(b)(6) ..................................................................................4, 7, 14

**Other Authorities**

29 C.F.R. 2560.503-1 .........................................................................................9, 23

29 C.F.R. § 2560.503-1(a) .....................................................................................23

29 C.F.R. § 2560.503-1(m)(4) ...............................................................................24

FAQs About The Benefit Claims Procedure Regulation at B-2,
    http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html (last visited
    September 14, 2015) ...........................................................................................24

FAQs About The Benefit Claims Procedure Regulation at B-3,
    http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html (last visited
    September 14, 2015) ...........................................................................................24

Restatement (Second) of Contracts, § 324 (1981) ................................................14

## I.       __INTRODUCTION__

The Complaint filed by Plaintiffs Dual Diagnosis Treatment Center, Inc., *et al*. (collectively, "Plaintiffs") alleges that the Defendants[2] improperly paid medical benefits to Defendants' members, who are alleged to be Plaintiffs' patients and participants or beneficiaries of health benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  Plaintiffs do not dispute that payments were made, but instead contend they should have received those payments directly.  Thus, Plaintiffs assert claims under ERISA to recover the benefits that Defendants allegedly paid to their members directly and to obtain equitable relief.  Plaintiffs' Complaint should be dismissed with prejudice for two principal reasons:  First, the Complaint fails to set forth any plausibly alleged facts establishing that Plaintiffs possess standing to assert claims under ERISA.  Second, even if Plaintiffs had alleged facts sufficient to establish that they have ERISA standing, each claim alleged by Plaintiffs would still fail as a matter of law.

As an initial matter, each claim alleged by Plaintiffs fails for the simple reason that Plaintiffs lack standing to assert claims under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a).  It is well settled that health care providers, such as Plaintiffs, are not themselves beneficiaries under ERISA and do not have direct statutory standing to bring claims under ERISA.  Instead, Plaintiffs' rights under ERISA, if any, are purely derivative of their patients' rights and are limited to those rights that were expressly and knowingly transferred pursuant to a valid assignment.  Here, however, Plaintiffs fail to allege the substance of a valid assignment.  Rather, as revealed by the patient-signed acknowledgement forms themselves (which Plaintiffs revealed for the first time in pre-litigation demand letters as to some but not of all the underlying claims[3]), Plaintiffs' purported "assignments of benefits" are nothing more than mere direct-payment

---

[2] Exhibit B, attached hereto, identifies the individual defendants that are referred to collectively herein as "Defendants" for purposes of this Motion and join in the filing of this Motion.
[3] The "assignment" forms can be consulted by the Court on Defendants' dismissal motion because Plaintiffs refer to them, and incorporate their terms, in the Complaint. Defendants requested all the assignment forms but Plaintiffs refused to provide them.

authorizations that do not manifest any intent by Defendants' members to assign, convey, or otherwise transfer to Plaintiffs their legal rights to plan benefits or the ability to bring claims under ERISA.  When patients merely authorize direct payment to a provider on their behalves they do not transfer any of their ERISA rights to the provider.  For this reason alone, each claim alleged by Plaintiffs fails as a matter of law and should be dismissed with prejudice.

Even if the Court accepts as true that Plaintiffs obtained "assignments," the terms of the assignments alleged in the Complaint do not encompass the right to assert claims arising from an alleged breach of fiduciary duty (Count 2) or for equitable relief under ERISA (Count 3) and, therefore, those claims fail as a matter of law for want of statutory standing.  Moreover, any such assignments would be unenforceable against the many plans at issue that contain anti-assignment provisions.  Any purported assignment under those plans is void *ab initio* under well settled case law in the Ninth Circuit.  As a result, the anti-assignment provisions nullify Plaintiffs' purported "assignments," and Plaintiffs lack derivative standing to assert their claims under ERISA for this independent reason.

Further, even if Plaintiffs could establish ERISA standing on the basis of their patient-signed acknowledgement forms (they cannot), each count alleged in the Complaint would nevertheless fail as a matter of law because Plaintiffs failed to provide timely notice of the terms and scope of the purported "assignments" to Defendants. Plaintiffs confess that the only action they took to apprise Defendants of their purported "assignments" was to check a box on the claim forms they submitted to some Defendants indicating that they had obtained some kind of patient-signed authorization or "assignment" to receive payments from the patients' plans.  However, merely checking the "assignment" box on a claim form is equally consistent with the provider merely obtaining a direct-payment authorization rather than an actual assignment – indeed, that is exactly what happened here.  Were this checked box enough on its own to transfer a payor's obligations to pay to providers, Defendants and other payors would be left with a Catch-22: honor the agreement with a member by paying her for claims and risk a suit by

2

a provider upset that it did not receive direct payment, or take the provider on its word and risk a suit by a member upset that she did not receive payment.   Such a result is untenable.

In the end, Plaintiffs' claims fail because Plaintiffs admit in their Complaint that Defendants paid the applicable benefits to the ERISA plan participants or beneficiaries that received services from Plaintiffs, and Plaintiffs do not plead facts establishing that Defendants were duty-bound to pay Plaintiffs instead.  Thus, Defendants' alleged conduct does not constitute an adverse benefit determination under ERISA and the payment of benefits to Plaintiffs' patients extinguishes any derivative right to reimbursement that Plaintiffs can assert in this action.  Accordingly, the Complaint should be dismissed in its entirety with prejudice.

## II.   <u>SUMMARY OF ALLEGATIONS</u>

Plaintiffs are health care providers that "provide in- and outpatient substance abuse and/or mental health treatment in California, Arizona, and Florida."  [Compl., ¶ 9.] Plaintiffs allege that they provided health care services to plan participants and beneficiaries of employer-sponsored plans governed by ERISA.  [*Id*. at ¶¶ 19-20.] Plaintiffs are "out-of-network" providers without preexisting contractual relationships with Defendants.  Defendants are alleged to administer and/or insure certain ERISA-governed plans at issue in Plaintiffs' Complaint.  [*Id*. at ¶¶ 20, 21, 51(c).]  Plaintiffs allege that they obtain "valid assignment of benefits […] from all patients before treating them."  [*Id*. at ¶ 53.]  According to Plaintiffs, "[t]he Assignments give [Plaintiffs] the right to be paid directly for any services rendered to patients, and also entitles [Plaintiffs] to assert patients' legal rights to recover benefits."  [*Id*. at ¶ 54.]  For each of the medical claims at issue in the Complaint, Plaintiffs allege that the Defendants in the action improperly paid benefits to Plaintiffs' patients, rather than to Plaintiffs directly.  [*Id*. at ¶ 72.]

Based on these allegations, Plaintiffs aver the following claims under ERISA as to each Defendant: (1) to recover benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); (2) to

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:15-cv-00736-DOC-RNB

4839-6860-3685.13

remove the named fiduciary for each of the ERISA-governed plans at issue pursuant to 29 U.S.C. § 1132(a)(2); and (3) for declaratory and injunctive relief pursuant to 29 U.S.C. § 1132(a)(3).  [Compl., ¶¶ 90, 181, 187.]

## III.  LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]'-'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Courts are not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Iqbal*, 556 U.S. at 678-79.  Plaintiffs must provide the basis for their claimed entitlement to relief beyond mere labels and conclusions or formulaic recitation of the elements of the causes of action.  *See Twombly*, 550 U.S. at 555-57.  Conclusory statements, unlike proper factual allegations, are not entitled to a presumption of truth.  *See Iqbal*, 556 U.S. at 681.  Under this standard, a motion to dismiss should be granted where, as here, the complaint does not proffer enough facts to state a claim for relief that is plausible on its face.  *See Twombly*, 550 U.S. at 558-59, *see also William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"); *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).

## IV.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

### A.  Plaintiffs Lack Standing to Assert Claims Under ERISA.

It is well settled that, in order to state a claim under ERISA, "'a plaintiff must fall within one of ERISA's nine specific civil enforcement provisions, each of which details

who may bring suit and what remedies are available.'" *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014) (quoting *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1247 (9th Cir. 2000)). Plaintiffs' first claim for relief to recover ERISA plan benefits can be brought only by an ERISA plan participant or beneficiary. 29 U.S.C. § 1132(a)(1) (providing that a civil action to recover benefits may be brought by "a participant or beneficiary"). Plaintiffs' second claim for relief (to remove the named fiduciary for each of the ERISA-governed plans at issue) and third claim (for relief for declaratory and injunctive relief) may only be asserted "by a participant, beneficiary, or fiduciary," 29 U.S.C. § 1132(a)(2) and (a)(3).[4]

It is equally well settled that health care providers (such as Plaintiffs), are not "beneficiaries" within the meaning of ERISA and therefore do not possess direct statutory standing to pursue their claims under ERISA. Their standing, if any, is purely derivative of their patients' rights. In *Spinedex*, the Ninth Circuit held that Spinedex, a health care provider that obtained an assignment of benefits from its patients, "cannot bring claims for benefits on its own behalf"; rather, "[i]t must do so derivatively, relying on its patients' assignments of their benefits claims." 770 F.3d at 1289 (citing *Misic v. Bldg. Serv. Empls. Health & Welfare Trust*, 789 F.2d 1374, 1377-79 (9th Cir. 1986) (per curiam)). In so holding, the Ninth Circuit confirmed that health care providers do not themselves become beneficiaries within the meaning of ERISA even with a valid assignment of benefits and, as a result, are not conferred with direct statutory standing to assert ERISA claims on their "own behalf." *See id.*; *see also Blue Cross of Ca. v. Anesthesia Care Assocs. Medi. Grp., Inc.*, 187 F.3d 1045, 1047 (9th Cir. 1999) (concluding "that the fact that … medical providers obtained assignments of benefits from beneficiaries of ERISA-covered health care plans does not convert their claims into claims for benefits under ERISA-covered health care plans").

Other courts agree. *See, e.g., Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 253 (2d Cir. 2015) (holding that health care provider is "not a beneficiary as defined by

---

[4] The Secretary of Labor may also pursue a claim under 29 U.S.C. § 1132 (a)(2).

ERISA and that its rights, if any, are limited by the assignments made by its patients."); *Sanctuary Surgical Ctr., Inc. v. Aetna*, 546 F. App'x 846, 851 (11th Cir. 2013) (noting, in the context of a case where a health care provider possessed an assignment of benefits, that the "only parties with standing to sue a plan subject to ERISA under 29 U.S.C. § 1132 are 'participant[s],' 'beneficiar[ies],' 'fiduciar[ies],' and the Secretary of Labor" and holding that "[h]ealthcare providers fall outside this group"); *Borrero v. United HealthCare of N.Y., Inc.*, 610 F.3d 1296, 1302 (11th Cir. 2010) (holding that "[h]ealthcare providers may have standing under ERISA only when they derivatively assert rights of their patients as beneficiaries of an ERISA plan" and explaining that "[t]o sue derivatively, the provider must have obtained a written assignment of claims from a patient with standing to sue under ERISA"); *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001) (same).[5]

Because Plaintiffs are not beneficiaries within the meaning of ERISA, the inquiry becomes whether the forms that were allegedly executed by Plaintiffs' patients confer derivative standing on Plaintiffs to assert the types of claims alleged in the Complaint. For the reasons set forth below, Plaintiffs lack derivative standing to assert any of the three claims alleged in the Complaint.[6]

---

[5] *See also Reich v. Metrahealth, Inc.*, 87 F.3d 1321, at 1-2 (9th Cir. 1996) (holding that a physician is not a beneficiary under 29 U.S.C. § 1002(8) and therefore lacks standing to assert the causes of action available to plan participants); *Nat'l Med. Care, Inc. v. United Health Care of Fla., Inc.*, WL 268205, at *2 (S.D. Fla. Jan. 26, 2001) (holding that a provider of medical services is not a "beneficiary" even if a plan participant authorizes the plan to make payments directly to that provider or assigns that provider the right to recover payments for the medical services).

[6] Defendants note that the standing challenge they bring by way of this motion is not a dispute about whether the federal court properly has jurisdiction of the case given Plaintiffs' assertion of ERISA rights. Rather, Defendants' standing challenge is on the substantive merits of Plaintiffs' claims to ERISA rights given the narrow scope of the "assignments" in question and the fact that their terms convey no legal rights under ERISA whatsoever. Indeed, ERISA is not mentioned in the "assignment" form– instead, the terms only convey permissive (not mandatory) authorization to direct payment to the provider.

### 1. Plaintiffs Lack Derivative Standing On All Of Their Claims Because The Purported Assignments Are Mere Authorizations For Direct Payment.

Plaintiffs assert that "[t]he Assignments give [Plaintiffs] the right to be paid directly for any services rendered to patients, and also [entitle Plaintiffs] to assert patients' legal rights to recover benefits[,] … includ[ing] the right to file claims and appeals … and to bring suit for violations of ERISA." [Compl. ¶ 54.]  However, the actual language used in the so-called "Assignments of Benefits" forms reveals that they are nothing of the sort.  Instead, all the purported "assignments" do is recite the patient's authorization for the provider to bill the payor directly, and for the payor, in turn, to issue payment directly to the provider on the patient's behalf.  Because the so-called "assignment" forms assign none of the patients' legal rights, Plaintiffs lack derivative standing to pursue any ERISA claims based on those forms.

The actual "Assignment of Benefits"[7] forms (exemplars of which Plaintiffs provided to some Defendants for the first time in pre-litigation demand letters)[8] provide in their entirety simply that the patient "authorize[s] and request[s]" payment of benefits directly to Plaintiffs:

> I hereby authorize and request that payment of authorized insurance company benefits be made on my behalf to directly to SATYA HEALTH OF CALIFORNIA - DBA - SOVEREIGN BY THE SEA II for the amount due to me for any medical or psychological/psychiatric treatment or services that are rendered to me by SATYA HEALTH OF CALIFORNIA - DBA - SOVEREIGN BY THE SEA II

---

[7] While the document is entitled "Assignment of Benefits" it must be evaluated not by its header but by its terms – none of which provide Plaintiffs' with any assignment of patient legal rights.  *Brown v. Blue Cross Blue Shield of Tenn. Inc.*, No. 1:14-CV-00223,  2015 WL 3622338, at *3 n.3 (E.D. Tenn. June 9, 2015) (citing *United States v. Leslie Salt Co.*, 350 U.S. 383, 389 (1956)).

[8] "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (disapproved on other grounds).  A court may treat such documents as "part of the complaint, and thus may assume that [their] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Moreover, the Court need not accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

7

4839-6860-3685.13

> I authorize the holder of medical or other information to release the information needed or related to claims for services rendered to me by SATYA HEALTH OF CALIFORNIA - DBA - SOVEREIGN BY THE SEA II to any necessary government agency, including but not limited to the Social Security Administration; Health Care Financing Administration, and to any insurance payor or provider in regards to my claims.

[Declaration of Sonia Gutierrez ("Gutierrez Decl."), Exs. 1-27 (Authorization Forms).] Other purported "assignments" at issue use materially identical language. [*See* Gutierrez Decl., Exs. 1-27.]

Conspicuously absent from these forms is any language manifesting an intent to assign, convey, or otherwise transfer to Plaintiffs legal rights to the member's benefits - much less any ERISA causes of action. The absence of such language is fatal: "[i]t is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person [in a manner that is express and knowing]." *Tex. Life, Accident Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 218 (5th Cir. 1997) (internal quotation marks omitted). The plain text of the forms instead indicates they are only direct-payment authorization forms, not assignments of the patient's legal rights.

Other courts have properly held that direct-payment authorization forms do not confer standing upon providers to bring ERISA claims against payors. In *MHA, LLC v. Aetna Health*, 2013 WL 705612 (D.N.J. Feb. 25, 2013), another court held that virtually identical forms did not constitute an assignment. There, the form provided:

> I authorize payment directly to Meadowlands Hospital Medical Center for hospital medical insurance benefits (from Medicare, Medicaid, commercial insurance, worker's compensation, auto insurance, etc.) that I may be entitled to for the charges of the care/treatment provided to me.

*Id.* at *4. It was thus "plain … that the quoted General Consent/Authorization language merely authorizes an insurer to make payments to MHA directly rather than through the patient as an intermediary." *Id.* The upshot was that "this authorization is precisely the kind" of document that is "insufficient to confer ERISA standing upon a provider," and

4839-6860-3685.13

so the court dismissed the provider's ERISA claims with prejudice.  *Id., Brown*, 2015 WL 3622338, at *6-7 (similar); *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 2014 WL 895407, at *1 (D.N.J. Mar. 6, 2014) (similar); *Principal Mut. Life Ins. Co.v. Charter Barclay Hosp.*, 81 F.3d 53, 56 (7th Cir. 1996) (noting distinction between assignment and "mere[] ... authorization for direct payment"); *Nat'l Med. Care*, 2001 WL 268205, at *2 (awarding summary judgment to defendant-payor because plaintiff-provider failed to show that it possessed assignment).

The shortcomings of the direct-payment authorization form becomes clearer still when contrasted with what a real assignment looks like.  *See, e.g., Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*, 2014 WL 6603761, at *11 (C.D. Cal. July 28, 2014) (emphasis added) (assignment conferred standing on plaintiff-provider to pursue ERISA claims; assignment stated, 'I hereby *assign my right* to assert any and all causes of action for judicial review to [provider]....  *My assignee may 'stand in my shoes*', as that phrase is understood under assignment law.  I intend for my *personal standing under ERISA's disclosure and civil enforcement procedures* under 29 U.S.C. §§ 1024 and 1132 to be hereby *transferred to my assignee*, so that it may seek judicial review of denied claims and/or disclosure under 29 U.S.C. § 1132(a)(1)(B), 29 U.S.C. § 1132(a)(1)(A), and/or 29 C.F.R. 2560.503-1.  This assignment specifically includes an *assignment of my rights to seek relief* as a claimant under 29 U.S.C. § 1132(c) and my rights to seek attorney fees under 29 U.S.C. § 1132(g)....  The assignment of benefits and ERISA rights by me is complete: *I retain no interest in the benefits and/or rights due to me* under these claims for medical care and/or facility fees.').

If a mere authorization for direct payment amounted to an assignment, plan participants unknowingly would be stripped of their statutory protections, contrary to ERISA's purposes.  It is black-letter law that a valid assignment irrevocably transfers the whole of the interest or right assigned, extinguishing the assignor's interest: "if there is a valid assignment [of benefits to a healthcare provider], the [provider] becomes the only claimant because the original claimant gives up her claim by the assignment."

4839-6860-3685.13

*Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 308 n.5 (3d Cir. 2008).  In
other words, as a result of a valid assignment, the assignor loses all control over the
subject matter of the assignment and all interest in the right-assigned.  *Id.; see also*
*Spinedex*, 770 F.3d at 1293 (holding that "[b]ecause [plan participants] assigned their
right to seek payment from their Plans, they may not themselves seek payment of those
claims").  This means, if a direct-payment authorization were held to constitute an
assignment, then all plan participants or beneficiaries who sign authorizations like the
one at issue here would have assigned away their entitlement to enforce any ERISA right,
including prospective claims regarding the plan - even though the provider to whom the
rights ostensibly were assigned might have no interest or personal stake in enforcing
those rights.  Consequently, "to allow a healthcare provider to assert ERISA claims
outside the logical scope of an assignment from a subscriber would unknowingly deprive
the subscriber of standing to assert those claims in the future."  *Premier Health Ctr., P.C.*
*v. UnitedHealth Grp.*, 292 F.R.D. 204, 219 (D.N.J. 2013).  "Such a result would run
contrary to the 'principle object of the ERISA statute which is to protect plan participants
and beneficiaries,' such as spouses and dependents."  *Id.*  (alterations omitted).

## 2. Plaintiffs' Alleged "Assignments," Even As Pled, Do Not Extend To Claims Under ERISA's Civil Enforcement Provisions, And Thus Plaintiffs Are Without Derivative Standing To Bring Counts 2 and 3.

Even assuming that the payment authorizations obtained by Plaintiffs could be
construed as assignments of the patients' legal rights to benefits (which the actual text of
the acknowledgement forms forecloses) the forms would not confer standing on Plaintiffs
to assert ERISA claims for equitable relief or claims arising from the alleged breach of a
fiduciary duty as a matter of law.  As discussed above, the rights of health care providers
under an assignment are limited to the language of the purported assignment and a court's
task in analyzing the scope of an assignment is to "enforce the intent of the parties."
*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1283 (9th
Cir. 1983); *Nat'l Reserve Co. of Am. v. Metro. Trust Co. of Cal.*, 17 Cal. 2d 827, 832

10

4839-6860-3685.13

(1941) ("In determining what rights or interests pass under an assignment, the intention of the parties as manifested in the instrument is controlling."). "Assignment agreements are generally interpreted narrowly" and "the scope of an assignment cannot exceed the terms of the assignment agreement itself." *Sanctuary Surgical*, 546 F. App'x at 851-52 (citing *Tex. Life,* 105 F.3d at 218-19); *see also Rojas*, 793 F.3d at 258-59 (holding that health care providers have standing to assert claims under ERISA only if they are expressly assigned by their patients). The Ninth Circuit has reiterated that courts must look to the language of an ERISA assignment itself to determine the scope of the assigned claims. *See Eden Surgical Ctr. v. B. Braun Med., Inc.*, 420 F. App'x 696, 697 (9th Cir. 2011) (noting that the "question [was] whether the plan participants assigned Eden the right to sue for statutory penalties" and concluding that the language of the assignments did not encompass the right to bring claims under § 1132(c)).

Under this standard, the Complaint fails to allege facts indicating that the assignments allegedly obtained by Plaintiffs confer standing to bring claims under ERISA for equitable relief or breach of fiduciary duty. Quite to the contrary, if the Complaint is to be credited notwithstanding the actual text of the exemplar patient-signed acknowledgment forms that Plaintiffs have produced, the most that was provided to Plaintiffs was an authorization that the Plaintiffs obtained the "right to be paid directly" and the "legal rights to recover benefits." [Compl., ¶ 54.] Even if this alleged authorization were read incorrectly to provide Plaintiffs an assignment of their patients' legal rights to benefits (as opposed to merely authorizing direct payment on the patients' behalves), by their terms the alleged forms do not encompass an assignment of the right to assert claims for equitable relief under ERISA or ERISA claims arising from an alleged breach of fiduciary duty. Thus, Plaintiff's second claim (to remove the fiduciary for each of the ERISA-governed plans) and third claim (for declaratory and injunctive relief) must be dismissed with prejudice.

///

///

4839-6860-3685.13

a.     **Plaintiffs Do Not Possess Derivative Standing To Bring ERISA Claims Arising From The Alleged Breach of Fiduciary Duty Under 29 U.S.C. § 1132(a)(2).**

In Count 2, Plaintiffs seek "an order removing and dismissing the named fiduciaries" of the ERISA plans at issue and "permanently barring  the Blue Cross Defendants from serving as fiduciaries for any of the Welfare Plan Defendants" under 29 U.S.C. § 1132(a)(2).  [Compl., ¶ 185.]  The authorization forms, by Plaintiffs' own admission, extend only to the "right to be paid directly" and the "legal rights to recover benefits."  [*Id.* at ¶ 54.]  As a result, the authorizations allegedly executed by Plaintiffs' patients, even if construed as assignments, do not confer standing on Plaintiffs to assert ERISA claims under 29 U.S.C. § 1132(a)(2) arising from an alleged breach of fiduciary duty.  *Sanctuary Surgical*, 546 F. App'x at 852 (holding that plaintiff's argument that an assignment of the rights to medical benefits confers standing to bring a breach of fiduciary duty claim under ERISA "stretches beyond its breaking point" because the assignment at issue "assigns only the right to receive benefits and not the right to assert claims for breach of fiduciary duty."); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 2015 WL 1608991, at *13-15 (C.D. Cal. Apr. 10, 2015) (holding than an assignment of "all rights and benefits under my contract with my INSURANCE COMPANY" does not manifest an intent to assign claims for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2)); *In re WellPoint, Inc. Out-Of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 892, 899 (C.D. Cal. 2012) (Gutierrez, J.) (holding that an assignment of benefits does not confer standing on a provider to bring a claim for breach of fiduciary duty under ERISA); *Via Christi Reg'l Med. Ctr., Inc. v. Blue Cross & Blue Shield of Kan., Inc.*, 2006 WL 3469544, at *7 (D. Kan. Nov. 30, 2006) (noting that the "scope of the assignment depends foremost upon the language of the agreement itself" and holding that hospital lacked standing to assert ERISA fiduciary breach claim because patient assigned only "medical benefits payable").

In *Spinedex*, the Ninth Circuit considered whether an assignment of the "RIGHTS AND BENEFITS" under an ERISA plan conferred standing on Spinedex, a health care

12

provider, to bring a claim for breach of fiduciary duty against the claims administrator for the plans at issue.  770 F.3d at 1292.  In response to Spinedex's argument that such an assignment encompasses all of the patient-assignor's "rights" under ERISA, including the right to bring a claim for breach of fiduciary duty, the Ninth Circuit held that "it is essential to an assignment of a right that the [assignor] manifest an intention to transfer the right to another person." *Id*. (citing *Britton v. Co-Op Banking Grp.*, 4 F.3d 742, 746 (9th Cir. 1993) (internal quotation marks omitted)). The Ninth Circuit concluded that an assignment of the "RIGHTS AND BENEFITS" under an ERISA plan "nowhere indicates that, by executing the assignment, patients were assigning to Spinedex rights to bring claims for breach of fiduciary duty."  *Id*.  As a result, the Court ruled that "Spinedex has no right to bring claims for breach of fiduciary duty."  *Id*.  This reasoning applies with even greater force to Plaintiffs' claim under 29 U.S.C. § 1132(a)(2), inasmuch as the authorizations allegedly collected by Plaintiffs do not contain any reference to patients' plan "RIGHTS" that is not connected to the recovery of benefits.  Count 2 should therefore be dismissed with prejudice.

Further, "only an express and knowing assignment of an ERISA fiduciary breach claim is valid." *Tex. Life*, 105 F.3d at 218 ("Because an assignment of a fiduciary duty breach claim affects all plan participants, and unsuccessful claims can waste plan resources ... these claims are not assigned by implication or by operation of law.") *Id*. Here, the assignment alleged by Plaintiffs makes no mention of ERISA breach of fiduciary duty claims and is instead (as alleged) limited to the "right to be paid directly" and the "legal rights to recover benefits" only.  [Compl., ¶ 54.]  Plaintiffs therefore fail to allege any facts that could support a finding that the patient-assignors made an "express and knowing assignment" of an ERISA breach of fiduciary duty claim or that the plan members otherwise *intended* to assign their right to bring a claim for breach of fiduciary duty.  *See Klamath-Lake Pharm. Ass'n*, 701 F.2d at 1283 (holding that the Court's task in interpreting the scope of an assignment is to "enforce the intent of the parties"); *Nat'l Reserve Co.*, 17 Cal. 2d at 832 (holding that the intention of the parties as manifested in

13

the instrument is controlling); *see also* Restatement (Second) of Contracts, § 324 (1981) ("It is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee.").

In short, the plain terms of the authorization forms do not encompass the right to assert a claim arising from Defendants' alleged breach of fiduciary duty.  Moreover, Plaintiffs fail to allege any facts capable of supporting a finding that Plaintiffs' patients made an "express and knowing" assignment of any fiduciary breach claim.  Accordingly, Plaintiffs' claim under 29 U.S.C. § 1132(a)(2) fails as a matter of law for this independent reason and should be dismissed with prejudice.

> **b.      Plaintiffs Do Not Possess Derivative Standing To Bring An ERISA Claim For Equitable Relief Under 29 U.S.C. § 1132(a)(3).**

Similarly, the authorization forms provide no indication of an intent to assign rights to bring claims for equitable relief under 29 U.S.C. § 1132(a)(3).  Thus, even if construed as assignments, the terms do not convey the right to pursue equitable claims under ERISA.  *See Sanctuary Surgical*, 546 F. App'x at 851-52 (rejecting a health care provider's claim that an assignment of the right to receive insurance benefits carries with it the ability to bring a claim under 29 U.S.C. § 1132(a)(3) and affirming the District Court's order dismissing plaintiff's 29 U.S.C. § 1132(a)(3) claim with prejudice under Rule 12(b)(6)); *Almont Ambulatory Surgery Ctr.*, 2015 WL 1608991, at *13-15 (holding than an assignment of "all rights and benefits under my contract with my INSURANCE COMPANY" does not manifest an intent to assign claims for equitable relief under 29 U.S.C. § 1132(a)(3)); *In re WellPoint*, 903 F. Supp. 2d at 895 (holding that an assignment that "expressly relate[s] to the right to receive benefits" does not confer standing on a provider to bring a claim under 29 U.S.C. § 1132(a)(3) and dismissing the claim under Rule 12(b)(6)).

By alleging that they assumed their patients' rights to assert equitable claims under ERISA, Plaintiffs are claiming that their patients have relinquished the right to

14

subsequently assert such claims on their own behalf. *Spinedex*, 770 F.3d at 1293 (holding that "[b]ecause [plan participants] assigned their right to seek payment from their Plans, they may not themselves seek payment of those claims"); *Hahnemann*, 514 F.3d at 307 n.5 (citing *Principal Mut. Life Ins. Co. v. Charter Barclay Hosp., Inc.*, 81 F.3d 53, 55-56 (7th Cir. 1996)) ("[I]f there is a valid assignment, the hospital becomes the only claimant [because] the original claimant having given up his claim by the assignment.").

Plaintiffs' contention that they have standing to assert claims for declaratory and injunctive relief under ERISA runs contrary to the principal purpose of ERISA, which is to protect the rights of plan participants to the benefits they have been promised, not the rights of those who incidentally deal with an ERISA plan. *See Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 513-14 (7th Cir. 2009); *Clair v. Harris Trust & Sav. Bank*, 190 F.3d 495, 498 (7th Cir. 1999). This is especially true where, as here, a health care provider seeks to displace the plan participant's or beneficiary's right to bring a claim for equitable relief under 29 U.S.C. § 1132(a)(3), which is intended to be a "catchall" or "safety net" designed to offer appropriate equitable protection for violations not adequately remedied under other ERISA provisions. *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010). If an assignment directed exclusively to the patient's rights to benefits were considered to confer standing on health care providers to bring claims for equitable relief under 29 U.S.C. § 1132(a)(3), it would deprive the patient-assignor of a full array of equitable protections and place a provider's interest above that of the member. Such a result would be inconsistent both with the terms of the forms alleged by Plaintiffs and with ERISA's central purpose of protecting plan participants and beneficiaries. Accordingly, Plaintiffs' third claim for relief should be dismissed with prejudice for this reason alone.

///

///

///

**B.   Plaintiffs' Claims Must Be Dismissed Where The Applicable Plans Prohibit Assignments.**

Out of the 74 underlying claims alleged in the Complaint, approximately 40 are barred by anti-assignment clauses contained in the ERISA plans (the Anti-Assignment Plans).  [*See* Addendum of Anti-Assignment Plans and Relevant Anti-Assignment Provisions.[9]]  The Anti-Assignment Plans expressly prohibit a plan participant or beneficiary from assigning plan benefits, and thus bar any attempt by Plaintiffs to sue on the basis of such assignments.

**1.   Well-Established Ninth Circuit Authority And Other Federal Court Decisions Have Unequivocally Upheld Anti-Assignment Clauses In ERISA-Governed Plans.**

Under controlling Ninth Circuit precedent, anti-assignment clauses in ERISA plans are valid and enforceable. *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1481 (9th Cir. 1991) (granting motion to dismiss providers' ERISA claims on the grounds that the plan's "non-assignment clause is legal"); *Spinedex,* 770 F.3d at 1296 (affirming summary judgment against provider's claims because "an anti-assignment provision in the [plan] prevented [the provider's] patients from assigning claims under that [p]lan."); *Long Beach Mem'l. Med. Ctr. v. Cal. Mart Empl. Benefit Plan*, 1992 U.S. App LEXIS 3346, at *2 (9th Cir. Feb. 22, 1999) ("Because this court has held that non-assignment clauses are valid under ERISA, the district court did not err by concluding that Medical Center failed to state a claim because it lacked standing."); *Eden*, 420 F. App'x at 697 (same).[10]  Indeed, courts in many other jurisdictions similarly have held that

---

[9] Defendants contend that all plans with anti-assignment clauses should benefit from the enforcement of those clauses.  Defendants reserve their rights under the applicable plan terms.  Thus, to the extent that any plan is inadvertently not included in the list noted above, Defendants still reserve their rights of enforcement as to any anti-assignment provision related to their plans.

[10] *See also Quaresma v. BC Life & Health Ins. Co.*, 623 F. Supp. 2d 1110, 1128-29 (E.D. Cal. 2007) (dismissing for lack of standing healthcare provider's causes of action based on assignment because health care plan prohibited assignment of benefits); *Aviation W. Charters, Inc. v. United Healthcare Ins. Co.*, 2014 WL 5814232, at *3 (D. Ariz. Nov. 10, 2014) (because of plan's anti-assignment provision, "[a]ny purported assignment without consent is invalid for purposes of giving Plaintiff a federal cause of action under ERISA").

16

anti-assignment clauses in ERISA plans are valid and enforceable.  *See*, *e.g., LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc*., 298 F.3d 348, 352 (5th Cir. 2002); *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 229 (1st Cir. 1998); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield*, 49 F.3d 1460, 1464 (10th Cir. 1995); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 615 (7th Cir. 2002); *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004); *Renfrew Ctr. v. Blue Cross & Blue Shield of Cent. N.Y.*, Inc., 1997 WL 204309, at *4 (N.D.N.Y. Apr. 10, 1997).

Because the Anti-Assignment Plans prohibit assignments and such clauses are valid and enforceable in ERISA plans, any purported assignment of benefits under these plans is void *ab initio*.  As an apparent afterthought, the Complaint alleges that anti-assignment provisions are not enforceable under unspecified state insurance laws.  [*See* Compl., ¶ 179].  This allegation, however, does not assist plaintiffs.  State insurance laws do not regulate those Anti-Assignment Plans for which benefits are paid directly out of employer funds (so-called "self-funded" plans)  because no insurance is involved at all. Moreover, to the extent Plaintiffs seek to apply these state laws to self-funded plans (the Complaint does not so allege), those laws fall within ERISA's express-preemption clause and cannot be "saved" from preemption as an insurance regulation because self-funded plans, like the ones at issue here, cannot be deemed to be insurers.  *See FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990); *Rush Prudential HMO, Inc., v. Moran*, 536 U.S. 355 (2002); *Med. Mut. of Ohio v. DeSoto*, 245 F.3d 561, 574 (6th Cir. 2001).  There is no relevant state law that "is not preempted by ERISA" that could "bar" enforcement of anti-assignment provisions in self-funded plans.

Further, cases upholding anti-assignment clauses apply with equal force to fully insured plans as they do to self-funded plans.  Plaintiffs do not even identify any states alleged to have laws that prohibit the use of anti-assignment clauses in health care plans. Many states have expressly held that anti-assignment clauses are enforceable.  *See*, *e.g.*, *Kohl v. Blue Cross & Blue Shield of Fla., Inc*., 955 So. 2d 1140, 1144-1145 (Fla. Dist. Ct.

App. 2007) (holding that an anti-assignment clause in a health insurance policy is valid and enforceable); *Obstetricians-Gynecologists, P.C. v. Blue Cross & Blue Shield of Nebr.*, 361 N.W.2d 550, 556 (Neb. 1985) (upholding validity of nonassignment provision in health care contracts, noting that a "nonassignment clause is a valuable tool in persuading health care providers to participate in its physician's voluntary cost effectiveness program and accept set fees for health services, keeping health care costs down and passing that savings on to its subscribers"). Thus, Plaintiffs lack ERISA standing to pursue any claim for benefits under the Anti-Assignment Plans.

As set forth above, if Plaintiffs are to have any standing to pursue a claim for ERISA benefits, it can only be through the receipt of a valid assignment of benefits that is broad enough to encompass the claims asserted by Plaintiffs. [*See* Part A.] However, each of the anti-assignment clauses contained in the Anti-Assignment Plans is valid and enforceable and nullifies each such purported assignment. Consequently, Plaintiffs cannot maintain an action to recover benefits allegedly due under any of the Anti-Assignment Plans. *Physicians Multispecialty Grp.*, 371 F.3d at 1296 (provider lacked standing to maintain ERISA action by virtue of a valid anti-assignment provision in the plan); *Quaresma*, 623 F. Supp. 2d at 1128-29 (dismissing a claim for benefits, in part, based on lack of standing); *Cohen v. Independence Blue Cross*, 820 F. Supp. 2d 594, 605-06 (D.N.J. 2011) (dismissing physician's ERISA claim for lack of standing because health plan included a non-assignment provision).

### 2. Plaintiffs Have Failed To Allege Facts Demonstrating that Defendants Waived Their Right To Enforce The Anti-Assignment Provisions.

In apparent anticipation of a standing challenge based on the anti-assignment clauses, Plaintiffs allege that Defendants waived any right to enforce anti-assignment clauses in any plan at issue by failing to notify Plaintiffs of the clauses and assert the clauses as a basis not to pay Plaintiffs directly. [Compl., ¶ 179.] However, these allegations are insufficient to overcome the dispositive impact of the anti-assignment clauses upon their ERISA claims. "'Waiver' is the intentional relinquishment of a known

18

right." *Alocozy v. U.S. Citizenship & Immig. Servs.*, 704 F.3d 795, 797 (9th Cir. 2012). Here, the Complaint is devoid of any allegation that any Defendant intentionally relinquished a known right, and thus, the waiver allegations are deficient. Indeed, waiver allegations similar to those alleged in the Complaint have been held to be insufficient as a matter of law.

In *Almont Ambulatory Surgery Center,* several health care providers argued that defendants waived their right to rely on the plans' anti-assignment provisions because such provisions were not asserted by defendants during the claims administration process as a reason to deny benefits or otherwise. *See* 2015 WL 1608991, at *22. The court disagreed. Because the plans in question allowed providers to act as the patients' authorized representatives when submitting claims or appeals, defendants could have understood that providers were proceeding in their capacity as the patients' authorized representatives, rather than assignees of their patients' plan benefits. Thus, defendants' failure to raise the anti-assignment clauses during the administrative claims process, as alleged in the complaint, did not rise to the level of an intentional relinquishment of any known rights pertaining to the anti-assignment clauses. *Id.* at *25-30. As a result, to the extent plaintiffs' claims arose under plans with anti-assignment clauses, such claims were dismissed because the proffered assignments could not confer standing on the providers to bring ERISA claims. *Id.* at *30; *see also Spinedex*, 770 F.3d at 1296 (holding insurer did not waive anti-assignment clause by failing to raise it in the administrative claims process). Plaintiffs' waiver allegations are similar to those held to be insufficient in *Almont Surgery Center* and are thus equally deficient.

Moreover, Plaintiffs' waiver argument is based on a contrived "duty to notify" that does not exist. A payor cannot be required to inform providers that their claimed assignments are not valid under the applicable plans because the existence of an anti-assignment clause in a plan means that the payor owes procedural duties only to plan members. Plaintiffs' allegation that paying a patient directly where a plan bars assignments nevertheless somehow constitutes an "adverse benefit determination" to the

provider ignores the legal force and effect of the anti-assignment clause, and, if accepted, would expand the Anti-Assignment Plans' procedural obligations in precisely the way the anti-assignment clauses were intended to foreclose.  [Compl., ¶¶ 82-83.]  Where assignments are not permitted, the provider has no rights under the ERISA plan at all; the plan is not required to render any notice to the provider because the provider is not a beneficiary.  *See*, *e.g. Riverview Health Inst., LLC v. Med. Mut. of Ohio,* 601 F.3d 505, 521-22 (6th Cir. 2010).  Consequently, the Anti-Assignment Plan Defendants are entitled to enforce the anti-assignment clauses, and Plaintiffs' claims against these parties are thus foreclosed.

Because each Anti-Assignment Plan contains a valid and enforceable clause precluding assignments to providers like Plaintiffs, the forms that Plaintiffs allege they obtained from their patients – even considered as assignments of benefits – are null and void.  Consequently, irrespective of the many other defects in Plaintiffs' Complaint, Plaintiffs' cannot maintain this ERISA action against the Anti-Assignment Plan Defendants, and their claims should be dismissed with prejudice.

C.   **Even Assuming Plaintiffs Could Establish ERISA Standing, Plaintiffs' Claims Must Be Dismissed Because Plaintiffs Do Not Allege That They Gave Sufficient Notice Of The Terms Of The Purported Assignments To Defendants.**

Even if Plaintiffs had obtained valid assignments of their patients' benefits under plans that do not contain anti-assignment provisions, Plaintiffs' claims would nevertheless fail as matter of law because Plaintiffs did not provide sufficient notice of the alleged assignments' scope.  Thus, Defendants were not required to pay Plaintiffs rather than Defendants' members.

Each claim asserted by Plaintiffs is predicated on the assertion that they provided "notice" to Defendants that Plaintiffs' patients assigned their legal rights to plan benefits to Plaintiffs.  In support of this assertion, Plaintiffs allege that the claim form they use to submit claims for reimbursement to Defendants "includes a field in which the provider indicates whether it has received an assignment of health care benefits from the patient"

and that each of the claim forms that were submitted to Defendants indicated that Plaintiffs "received an assignment of health care benefits" from their patients.  [Compl., ¶¶ 69-70.]  Critically, however, Plaintiffs' Complaint does not allege that Plaintiffs ever furnished Defendants with a copy of the executed "assignment," or otherwise presented information to Defendants identifying which rights, if any, were purportedly assigned to Plaintiffs.  Indeed, Plaintiffs candidly acknowledge that the only indication they provided to Defendants that a patient assigned benefits was by indicating "Y" or "N" in "field 53," labeled "ASG BEN" on the claim forms.  [Compl. ¶ 69; *see id.* ¶ 70.]  Plaintiffs do not allege that they provided Defendants with any documentation supporting their assertion that these "assignments" were actually made or otherwise describe the basis for or terms of the purported "assignments."  Thus, the checked boxes on the claim forms are the sole basis on which they assert that the "Blue Cross Defendants [were] informed of [*sic*] and on written notice that [Plaintiffs were] assignee[s]."  [Compl. ¶ 72.]  This slender reed collapses under the weight Plaintiffs put on it.

To enforce an assignment, California law "requires that the evidence of assignment be clear and positive to protect an obligor [here, a payor] from any further claim by the primary obligee [here, the member]."  *Cockerell v. Title Ins. & Trust Co.*, 267 P.2d 16, 21 (Cal. 1954); *see also Superior Energy Servs., LLC v. Cabinda Gulf Oil Co.*, 2013 WL 6406324, at *6-7 (N.D. Cal. Dec. 6, 2013) (insufficient evidence of assignment).  A provider's action of merely checking the "assignment" box on a claim form neither provides evidence nor puts a payor on notice of a valid assignment or its terms, and, thus, cannot require a payor to pay benefits directly to the provider.  Instead, the provider must provide the signed assignment form to the payor in order to impose a duty on the obligor to render performance to it.  Merely checking the box on a claim form is, at most, an assertion that some kind of patient-signed form providing some form of authorization or direction exists.  It does not allow a payor to determine whether the language of the form truly effects a transfer of the patient's legal rights under the applicable plan.

This is of particular significance in the health care context, as cases are legion in

21

which courts have found so-called "assignments" to be nothing of the sort because their language simply *authorizes* the insurer to pay benefits directly to the provider on the member's behalf.  [*See* Part IV.A.1.]  A checked box provides no notice of the nature of the alleged "assignment" and fails to inform the reader that what Plaintiffs call assignments are really mere authorizations of direct payment.  While a payment authorization *allows* a payor to render payment to the provider, it does not mandate it.  Instead, the payor's payment obligation is discharged when it renders payment to either the provider or its members.[11]

Merely checking the "assignment" box on a claim form does not shift a payor's performance obligation because doing so would subject payors to inconsistent and duplicative demands from purported assignees and assignors.  Under Plaintiffs' theory, a payor presented with a checked box must take a provider at its word that a valid and broad assignment was made and pay the provider in short order, even while risking the ire of a patient who later files a Section 502(a)(1)(B) suit against the payor claiming that he never assigned any of his legal rights to the provider.  This is untenable, in no small part because the provider is the entity that has within its possession all evidence of the purported assignment.  Moreover, it places the provider's interests above that of the member - a result anathema to ERISA's purpose.  *See, Brown*, 2015 WL 3622338, at *17-18, n.6 (reasoning that permitting a provider to pursue ERISA claims on the basis of ambiguous assignments allows the provider to elect whether to hold the form out as an authorization of direct payment or, where it believes the patient will not pay, to divest the member of his or her ERISA rights by asserting the forms as assignments). That is why, as the California Supreme Court explained in *Cockerell*, "[i]n an action by an assignee to

---

[11] The UB-04 instructions confirm that merely checking the box does not enable a payor to determine that an effective assignment has occurred.  *See, e.g.*, BCBSMA 2010 Supplement to the NUBC UB-04 Data Specifications Manual for Participating Facilities at 9 ("Enter Y for Yes or N for No to indicate that the provider has a signed form *authorizing* the third-party payer to remit payment directly to the provider.") (emphasis added), *available at* https://www.bluecrossma.com/staticcontent/npi_docs/UB_04BillingGuide.pdf.

4839-6860-3685.13

enforce an assigned right,… the measure of sufficiency requires that the evidence of assignment be clear and positive *to protect an obligor from any further claim by the primary obligee*."  267 P.2d at 21 (emphasis added).  Plaintiffs' alleged representation on their claim forms that they had obtained some form of assignment or authorization from their patients was insufficient to establish "clear[ly] and positive[ly]" that their patients' plan rights had been transferred.  Thus, the Complaint fails to allege any facts that can conceivably support Plaintiffs' claims for alleged violations of ERISA, and each claim fails as a matter of law on this separate ground as well.

### D.   The Complaint Suffers From Other Defects.

#### 1.   Plaintiffs Fail To Allege Cognizable Procedural Violations Under ERISA.

In addition to claiming that Defendants made benefit payments to Plaintiffs' patients that belonged to Plaintiffs directly, Plaintiffs complain that Defendants' alleged conduct constituted an "adverse benefit determination" under the Department of Labor's ("DOL's") Claims Procedure Regulation, 29 C.F.R. § 2560.503-1, *et seq.* [Compl., ¶ 82.] This contention goes nowhere.

ERISA Claims Procedure Regulation applies only where there is an adverse benefit determination as to the ERISA plan participant or beneficiary.  29 C.F.R. § 2560.503-1(a) (providing that "this section sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries (hereinafter referred to as claimants).").  As set forth above, Plaintiffs are not beneficiaries within the meaning of ERISA as a matter of law, and they do not allege facts establishing that the acquired their patients' legal rights to plan benefits.  [*See* Part IV.A.]  Thus, the inquiry becomes whether Defendants' alleged conduct constitutes an adverse benefit determination as to Plaintiffs' patients, who are alleged to be ERISA plan participants or beneficiaries.  Yet, the Complaint concedes that Defendants did, in fact, pay the applicable benefit for the claims at issue by mailing the payment directly to the ERISA plan participants and beneficiaries.  [Compl., ¶ 72.]  Thus, both under ERISA's Claims

23

Procedure Regulation and as a matter of common sense, there was no "adverse benefit determination." It is undisputed that Defendants allowed and <u>paid</u> the applicable benefit on the claim to the only parties with a legal entitlement to same – the ERISA plan participants or beneficiaries. *See* 29 C.F.R. § 2560.503-1(m)(4).  Accordingly, each claim alleged by Plaintiffs in their Complaint fails as a matter of law and should be dismissed with prejudice.

Even assuming that there was an "adverse benefit determination" as to Plaintiffs' patients (which is not the case), Plaintiffs would not be entitled to any of the notice and appeal rights under ERISA's Claims Procedure Regulation and would not have the ability to pursue a claim based on any alleged failure by Defendants to afford Plaintiffs notice and appeal rights.  [*See* Compl., ¶¶ 80-86.]  Under the DOL's interpretation of its own regulation, "[a]n assignment of benefits by a claimant is generally limited to assignment of the claimant's right to receive a benefit payment under the terms of the plan [and typically] are not a grant of authority to act on a claimant's behalf in pursuing and appealing a benefit determination under a plan."  *See* FAQs About The Benefit Claims Procedure Regulation at B-2, http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html (last visited September 14, 2015).  In other words, health care providers, such as Plaintiffs, are not entitled to receive notice or a right to an administrative appeal under the Claims Procedure Regulation in instances where the providers obtain mere assignments of benefits.  *Id.*; *see also id* at B-3 (confirming that an individual or entity is an "authorized representative" for purposes of ERISA's Claims Procedure Regulation only where "a claimant clearly designates an authorized representative to act and receive notices on his or her behalf with respect to a claim").  The Supreme Court and the Ninth Circuit instruct that an agency's interpretation of its own regulations is "'controlling unless' plainly erroneous or inconsistent with the regulation." *Resisting Envt'l Destruction on Indigenous Lands v. U.S. Envt'l Prot. Agency*, 716 F.3d 1155, 1165 (9th Cir. 2013) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).  The DOL's interpretation at issue here is a written document discussing ambiguities in the agency's

24

own ERISA regulation and is entitled to deference.  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833-34 (2003) (holding that "[d]eference is due" to the Department of Labor Claims Procedure Regulation Frequently Asked Questions website).  Thus, to the extent that Plaintiffs' claims are predicated on any allegation that Plaintiffs were due notice and appeal rights under ERISA's Claims Procedure Regulation, any such claim fails as a matter of law.

Second, Plaintiffs' claims each fail as a matter of law on the independent ground that the rights that a health care provider can assert under ERISA based on an assignment can never exceed the rights belonging to the ERISA plan participant or beneficiary. *Spinedex*, 770 F.3d at 1289; *Misic*, 789 F.2d at 1377-79.  When, as the Complaint admits, Plaintiffs only received an acknowledgement that benefit payments may (but were not required to) be made to Plaintiffs and the Defendants in the action <u>paid</u> the ERISA plan participants and beneficiaries for the services at issue, those payments extinguished any claim for benefits that could be asserted by Plaintiffs' patients.  *See Filler v. Anthem Blue Cross*, 2012 U.S. Dist. LEXIS 182356, at *25 (C.D. Cal. Dec. 17, 2012) (Snyder, J.) (holding that "because plaintiffs do not dispute that all of the benefits owed pursuant to the ERISA plan at issue have already been paid in full, plaintiffs will clearly be unable to state a cognizable claim for ERISA benefits under section 502(a)"); *see also Silk v. Metro. Life Ins. Co.*, 310 F. App'x 138, 139-40 (9th Cir. 2009) (finding that a claim for benefits became moot after the defendant paid the benefits); *Providence Health Plan v. McDowell*, 361 F.3d 1243, 1248 (9th Cir. 2004) (holding that a claim for unpaid benefits under ERISA does not "relate to" the terms of an ERISA plan where the ERISA benefits have already been paid); *Lemons v. Reliance Std. Life Ins. Co.*, 534 App'x 162 (3d Cir. 2013) (claim that benefits were arbitrarily terminated rendered moot when benefits were reinstated after lawsuit was filed); *Pakovich v. Verizon, Ltd. Plan*, 653 F.3d 488, 492 (7th Cir. 2011) (holding that an ERISA benefit claim is moot after the payment of ERISA benefits).  Because the rights of Plaintiffs to assert claims under ERISA are derivative of the rights of Plaintiffs' patients and are necessarily limited by the terms of the

acknowledgement forms they received from their patients, the payment to Plaintiffs' patients extinguished any claim to recover benefits against Defendants.

### 2. Plaintiffs' Second Count For Breach Of Fiduciary Duty Under 29 U.S.C. § 1132(a)(2) Fails As A Matter Of Law As To The ERISA Plan Defendants.

A claim for breach of fiduciary duty is necessarily derivative in that it is brought on behalf of the ERISA plan. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985). As it relates to the ERISA plan Defendants, Plaintiffs seek to sue the very plans on whose behalf they supposedly seek relief for breach of fiduciary duty. This is illogical, and the ERISA plan Defendants are therefore entitled to dismissal with prejudice. *See, e.g., Kling v. Fid. Mgmt. Trust Co.*, 323 F. Supp. 2d 132, 147 (D. Mass. 2004) (holding that a suit under 29 U.S.C. § 1132(a)(2) is necessarily on behalf of the plan and thus the plan cannot be a defendant to such suit); *Steinman v. Hicks*, 252 F. Supp. 2d 746, 756 (C.D. Ill. 2003) (plan was "entitled to a summary judgment because it cannot be named as a defendant in a suit in which it must be considered to be the plaintiff"). Thus, Plaintiffs' claim for breach of fiduciary duty fails as a matter of law and should be dismissed with prejudice.

### 3. Plaintiffs' Third Count For Equitable Relief Under 29 U.S.C. § 1132(a)(3) Fails Because It Seeks Relief That Is Not Appropriate Under ERISA.

As to Plaintiffs' claim under 29 U.S.C. § 1132(a)(3), the Supreme Court has held that equitable relief under 29 U.S.C. § 1132(a)(3) is only "appropriate" where Congress did not provide adequate relief elsewhere in the statute. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). Thus, the Ninth Circuit has denied plaintiffs relief under 29 U.S.C. § 1132(a)(3) "where another section of ERISA already provided them with an adequate remedy." *Bowles v. Reade*, 198 F.3d 752, 760 (9th Cir. 1999). Significantly, a plaintiff need not have already received relief under another section of ERISA to be precluded from seeking relief under 29 U.S.C. § 1132(a)(3). Instead, where relief is available elsewhere in ERISA, relief under 29 U.S.C. § 1132(a)(3) is not "appropriate" and is thus barred. *See Bowles*, 198 F.3d at 760; *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781,

26

805 (7th Cir. 2009); *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010).  Here, Plaintiffs have asserted a claim for relief under 29 U.S.C. § 1132(a)(1)(B). Therefore, the 'catchall' provision is not available as a source of relief.  *Wise*, 600 F.3d at 1190.  A plaintiff simply is not permitted to obtain relief under 29 U.S.C. § 1132(a)(3) where it has asserted claims under another ERISA section.  *See id*; *see also Sleep Lab at W. Houston v. Tex. Children's Hosp.*, 2015 WL 3507894, at *10 (S.D. Tex. June 2, 2015) (holding that "claims for money damages under § 1132(a)(1)(B) arising from wrongful denial of benefits cannot coexist with claims for equitable relief under § 1132(a)(3).").

### E.    Plaintiffs' Demand For A Jury Trial Should Be Stricken.

Plaintiffs' Complaint includes a demand for a jury trial.  [Compl., p. 92:6.] However, the Ninth Circuit has held that "in ERISA actions there is no independent constitutional or statutory right to a jury trial."  *Nevill v. Shell Oil Co.*, 835 F.2d 209, 213 (9th Cir. 1987).  Because all of Plaintiffs' purported claims are brought under ERISA, Plaintiffs' demand for a jury should be stricken from the Complaint.[12]

## V.    <u>CONCLUSION</u>

For the reasons set forth above, the Defendants respectfully request that the Court dismiss each and every claim averred in Plaintiffs' Complaint without leave to amend.

---

[12] Fed. R. Civ. P. 12(f) allows the Court to "strike from a pleading… any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

4839-6860-3685.13

DATED: September 14, 2015

**FOLEY & LARDNER LLP**
Eileen R. Ridley
Michael A. Naranjo
Alan R. Ouellette


By: /s/ Eileen R. Ridley
Eileen R. Ridley
Attorneys for Defendants BLUE CROSS OF CALIFORNIA, dba ANTHEM BLUE CROSS; ANTHEM HEALTH PLANS, INC., dba ANTHEM BLUE CROSS AND BLUE SHIELD; ANTHEM HEALTH PLANS OF KENTUCKY, INC., dba ANTHEM BLUE CROSS AND BLUE SHIELD; ANTHEM INSURANCE COMPANIES, INC., dba ANTHEM BLUE CROSS AND BLUE SHIELD; COMMUNITY INSURANCE COMPANY, dba ANTHEM BLUE CROSS AND BLUE SHIELD; EMPIRE HEALTH CHOICE ASSURANCE, INC., dba EMPIRE BLUE CROSS AND BLUE SHIELD; ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC., dba ANTHEM BLUE CROSS AND BLUE SHIELD; ERNST & YOUNG MEDICAL PLAN; LIVE NATION ENTERTAINMENT INC. GROUP BENEFITS PLAN; VERIZON NATIONAL PPO WEST and VIASAT, INC. EMPLOYEE BENEFIT PLAN

4839-6860-3685.13

| | |
|---|---|
| 1 | DATED:  September 14, 2015 |

**VON BEHREN & HUNTER LLP**
William E. von Behren
Carol B. Lewis
Joann V. Lee


By: /s/ William E. von Behren
William E. von Behren
Attorneys for Defendants BLUE CROSS
AND BLUE SHIELD OF FLORIDA, INC.;
BLUE CROSS AND BLUE SHIELD OF
MASSACHUSETTS HMO BLUE, INC.;
BLUE CROSS AND BLUE SHIELD OF
NORTH CAROLINA; BLUECROSS
BLUESHIELD TENNESSEE, INC.;
CALIFORNIA PHYSICIANS' SERVICE
dba BLUE SHIELD OF CALIFORNIA;
REGENCE BLUECROSS BLUESHIELD
OF OREGON, erroneously sued herein as
REGENCE INSURANCE HOLDING
CORPORATION; REGENCE BLUECROSS
BLUESHIELD OF UTAH, erroneously sued
herein as REGENCE INSURANCE
HOLDING CORPORATION; REGENCE
BLUESHIELD erroneously sued herein as
REGENCE INSURANCE HOLDING
CORPORATION; HAWAII MEDICAL
SERVICE ASSOCIATION; HIGHMARK
INC.; HORIZON HEALTHCARE
SERVICES, INC. d/b/a HORIZON BLUE
CROSS BLUE SHIELD OF NEW JERSEY;
PREMERA BLUE CROSS; LOUISIANA
HEALTH SERVICE & INDEMNITY
COMPANY dba BLUE CROSS AND BLUE
SHIELD OF LOUISIANA; C.R. BARD,
INC. EMPLOYEE BENEFIT PLAN;
MARTIN MARIETTA MEDICAL PLAN;
NOVARTIS CORPORATION WELFARE
BENEFIT PLAN; SAS INSTITUTE INC.
WELFARE BENEFITS PLAN;
SEABRIGHT INSURANCE COMPANY
GROUP HEALTH PLAN; COVANCE INC.
HEALTH AND WELFARE PLAN;
CHICO'S FAS, INC. HEALTH &
WELFARE BENEFIT PLAN and
ORASURE TECHNOLOGIES, INC.
HEALTH AND WELFARE PLAN

DATED:  September 14, 2015

**O'MELVENY & MYERS LLP**
Brian Boyle
Matthew W. Close
Raymond Collins Kilgore


By:  /s/ Matthew W. Close
Matthew W. Close
Attorneys for Defendants HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, OPERATING IN ILLINOIS AS BLUE CROSS AND BLUE SHIELD OF ILLINOIS, IN MONTANA AS BLUE CROSS AND BLUE SHIELD OF MONTANA, AND IN TEXAS AS BLUE CROSS AND BLUE SHIELD OF TEXAS; BAXTER INTERNATIONAL INC. MEDICAL PLAN; ELLIOTT ELECTRIC SUPPLY, INC. HEALTH BENEFIT PLAN; GROUP HEALTH & WELFARE BENEFITS PLAN OF AMERICAN EAGLE AIRLINES; GROUP LIFE AND HEALTH BENEFITS PLAN FOR EMPLOYEES OF PARTICIPATING AMR CORP. SUBSIDIARIES; R. R. DONNELLEY & SONS COMPANY GROUP BENEFITS PLAN; AND XEROX BUSINESS SERVICES, LLC FUNDED WELFARE BENEFIT PLAN

DATED:  September 14, 2015

**CALL & JENSEN**
A Professional Corporation
Scott P. Shaw
Kent R. Christensen
J. Randall Boyer


By:  /s/ J. Randall Boyer
J. Randall Boyer
Attorneys for Defendant XEROX BUSINESS SERVICES, LLC FUNDED WELFARE BENEFIT PLAN

30

DATED:  September 14, 2015

By:  /s/ Patrick de Gravelles
Patrick de Gravelles
Attorneys for Defendant GROUP
HOSPITALIZATION AND MEDICAL
SERVICES, INC.

DATED:  September 14, 2015

**REED SMITH LLP**
Daniel J. Hofmeister
Amir Shlesinger

By:  /s/ Daniel J. Hofmeister
Daniel J. Hofmeister
Attorneys for Defendants 3M EMPLOYEES'
WELFARE BENEFITS ASSOCIATION
(TRUST II) PLAN, BCBSM, INC. d/b/a
BLUE CROSS AND BLUE SHIELD OF
MINNESOTA, BLUE CROSS AND BLUE
SHIELD OF KANSAS CITY d/b/a BLUE
KC (erroneously sued as BLUE CROSS
AND BLUE SHIELD OF KANSAS CITY,
INC.), BLUE CROSS AND BLUE SHIELD
OF NEBRASKA, BLUE CROSS BLUE
SHIELD WYOMING, BLUE CROSS OF
IDAHO HEALTH SERVICE, INC.,
WALTER INVESTMENT MANAGEMENT
CORP. COMPREHENSIVE WELFARE
BENEFIT PLAN (formerly known as
GREEN TREE COMPREHENSIVE
WELFARE PLAN), J.R. SIMPLOT
COMPANY GROUP HEALTH &
WELFARE PLAN, PETER KIEWIT SONS',
INC. HEALTH & WELFARE PLAN and
TWIN CITIES BAKERY DRIVERS
HEALTH & WELFARE FUND

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:15-cv-00736-DOC-RNB
4839-6860-3685.13

DATED:  September 14, 2015

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Katherine M. Katchen


By:  /s/ Katherine M. Katchen
Katherine M. Katchen
Attorneys for Defendants USAble MUTUAL INSURANCE COMP ANY, d/b/a ARKANSAS BLUE CROSS AND BLUE SHIELD and BLUEADVANTAGE ADMINISTRATORS OF ARKANSAS, WAL-MART STORES, INC. ASSOCIATES HEALTH& WELFARE PLAN, and INDEPENDENCE BLUE CROSS


DATED:  September 14, 2015

**BURKE, WILLIAMS & SORENSEN, LLP**
Melissa M. Cowan


By:  /s/ Melissa M. McCowan
Melissa M. Cowan
Attorneys for Defendant THE MILTON S. HERSHEY MEDICAL CENTER HEALTH AND WELFARE PLAN


DATED:  September 14, 2015

**MORGAN LEWIS AND BOCKIUS LLP**
Nicole A. Diller


By:  /s/ Nicole A. Diller
Nicole A. Diller
Attorneys for Defendants OWENS-ILLINOIS SALARY EMPLOYEES WELFARE BENEFIT PLAN and GEICO CORPORATION CONSOLIDATED WELFARE BENEFITS PROGRAM

4839-6860-3685.13

DATED:  September 14, 2015

**GOODWIN PROCTER LLP**
Hong-An Vu


By:  /s/ Hong-An Vu
Hong-An Vu
Attorneys for Defendant VERTICAL
SEARCH WORKS, INC. MEDICAL PLAN

DATED:  September 14, 2015

**LAW OFFICES OF RONALD S. KRAVITZ**
Ronald S. Kravitz


By:  /s/ Ronald S. Kravitz
Ronald S. Kravitz
Attorney for Defendants WELLS FARGO &
COMPANY HEALTH PLAN and
HUNTINGTON BANCSHARES
INCORPORATED HEALTH CARE PLAN

DATED:  September 14, 2015

**GORDON & REES LLP**
Ronald K. Alberts
Jennifer L. Ghozland
Hilary E. Feybush


By:  /s/ Ronald K. Alberts
Ronald K. Alberts
Attorneys for Defendants ALLTECH, INC.
BENEFIT PLAN, RIO TINTO AMERICA
INC. HEALTH & WELFARE PLAN and
OREGON TEAMSTER EMPLOYERS
TRUST

DATED:  September 14, 2015

**VALLE MAKOFF, LLP**
John Moscarino


By:  /s/ John Moscarino
John Moscarino
Attorneys for EATON CORPORATION
MEDICAL PLAN FOR U.S. EMPLOYEES

33

DATED: September 14, 2015            **JACKSON LEWIS P.C.**
                                     Nicky Jatana
                                     **HUSCH BLACKWELL LLP**
                                     Hillary L. Klein (Admitted, *Pro Hac Vice*)


                                     By: /s/ Nicky Jatana
                                     Nicky Jatana
                                     Attorneys for Defendants CONAGRA
                                     FOODS, INC. WELFARE BENEFIT WRAP
                                     PLAN

DATED: September 14, 2015            **DICKSTEIN SHAPIRO LLP**
                                     James H. Turken
                                     Christopher Kadish


                                     By: /s/ Christopher Kadish
                                     Christopher Kadish
                                     Attorneys for Defendants WEBMD
                                     HEALTH &WELFARE PLAN


*Filer's Attestation:  Pursuant to Local Rule 5-4.3.4(a)(2)(i), Eileen R. Ridley hereby attests that concurrence in the filing of this document and its contents was obtained from all signatories listed.*

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:15-cv-00736-DOC-RNB
4839-6860-3685.13

## EXHIBIT A – ANTHEM DEFENDANTS

1.     BLUE CROSS OF CALIFORNIA, dba ANTHEM BLUE CROSS;

2.     ANTHEM HEALTH PLANS, INC., dba ANTHEM BLUE CROSS AND BLUE SHIELD;

3.     ANTHEM HEALTH PLANS OF KENTUCKY, INC., dba ANTHEM BLUE CROSS AND BLUE SHIELD;

4.     ANTHEM INSURANCE COMPANIES, INC., dba ANTHEM BLUE CROSS AND BLUE SHIELD;

5.     COMMUNITY INSURANCE COMPANY, dba ANTHEM BLUE CROSS AND BLUE SHIELD;

6.     EMPIRE HEALTH CHOICE ASSURANCE, INC., dba EMPIRE BLUE CROSS AND BLUE SHIELD;

7.     ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC., dba ANTHEM BLUE CROSS AND BLUE SHIELD;

8.     ERNST & YOUNG MEDICAL PLAN;

9.     LIVE NATION, INC. AND LIVE NATION ENTERTAINMENT INC. GROUP BENEFITS PLAN;

10.     VERIZON NATIONAL PPO WEST; and

11.     VIASAT, INC. EMPLOYEE BENEFIT PLAN.

## EXHIBIT B - DEFENDANTS

1.    BLUE CROSS OF CALIFORNIA, dba ANTHEM BLUE CROSS;

2.    ANTHEM HEALTH PLANS, INC., dba ANTHEM BLUE CROSS AND BLUE SHIELD;

3.    ANTHEM HEALTH PLANS OF KENTUCKY, INC., dba ANTHEM BLUE CROSS AND BLUE SHIELD;

4.    ANTHEM INSURANCE COMPANIES, INC., dba ANTHEM BLUE CROSS AND BLUE SHIELD;

5.    COMMUNITY INSURANCE COMPANY, dba ANTHEM BLUE CROSS AND BLUE SHIELD;

6.    EMPIRE HEALTH CHOICE ASSURANCE, INC., dba EMPIRE BLUE CROSS AND BLUE SHIELD;

7.    ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC., dba ANTHEM BLUE CROSS AND BLUE SHIELD;

8.    ERNST & YOUNG MEDICAL PLAN;

9.    LIVE NATION ENTERTAINMENT INC. GROUP BENEFITS PLAN;

10.    VERIZON NATIONAL PPO WEST;

11.    VIASAT, INC. EMPLOYEE BENEFIT PLAN;

12.    BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC.;

13.    BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC.;

14.    BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA;

15.    BLUECROSS BLUESHIELD TENNESSEE, INC.;

16.    CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA;

17a.    REGENCE BLUECROSS BLUESHIELD OF OREGON, erroneously sued herein as REGENCE INSURANCE HOLDING CORPORATION;

17b.   REGENCE BLUECROSS BLUESHIELD OF UTAH, erroneously sued herein as REGENCE INSURANCE HOLDING CORPORATION;

17c.   REGENCE BLUESHIELD erroneously sued herein as REGENCE INSURANCE HOLDING CORPORATION;

18.   HAWAII MEDICAL SERVICE ASSOCIATION;

19.   HIGHMARK INC.;

20.   HORIZON HEALTHCARE SERVICES, INC. d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY;

21.   PREMERA BLUE CROSS;

22.   LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY dba BLUE CROSS and BLUE SHIELD OF LOUISIANA;

23.   C.R. BARD, INC. EMPLOYEE BENEFIT PLAN;

24.   MARTIN MARIETTA MEDICAL PLAN;

25.   NOVARTIS CORPORATION WELFARE BENEFIT PLAN;

26.   SAS INSTITUTE INC. WELFARE BENEFITS PLAN;

27.   SEABRIGHT INSURANCE COMPANY GROUP HEALTH PLAN;

28.   COVANCE INC. HEALTH AND WELFARE PLAN;

29.   CHICOS FAS, INC. HEALTH & WELFARE BENEFIT PLAN;

30.   ORASURE TECHNOLOGIES INC. HEALTH AND WELFARE PLAN;

31.   HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, OPERATING IN ILLINOIS AS BLUE CROSS AND BLUE SHIELD OF ILLINOIS, IN MONTANA AS BLUE CROSS AND BLUE SHIELD OF MONTANA, AND IN TEXAS AS BLUE CROSS AND BLUE SHIELD OF TEXAS;

32.   BAXTER INTERNATIONAL INC. AND SUBSIDIARIES WELFARE BENEFIT PLAN;

33.   ELLIOTT ELECTRIC SUPPLY, L.P. HEALTH BENEFIT PLAN;

2

34.     GROUP HEALTH & WELFARE BENEFITS PLAN OF AMERICAN EAGLE AIRLINES;

35.     GROUP LIFE AND HEALTH BENEFITS PLAN FOR EMPLOYEES OF PARTICIPATING AMR CORP. SUBSIDIARIES;

36.     R.R. DONNELLEY & SONS COMPANY GROUP BENEFITS PLAN;

37.     XEROX BUSINESS SERVICES, LLC FUNDED WELFARE BENEFIT PLAN;

38.     GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC.;

39.     3M EMPLOYEES WELFARE BENEFITS ASSOCIATION (TRUST II);

40.     BCBSM, INC. d/b/a BLUE CROSS BLUE SHIELD OF MINNESOTA;

41.     BLUE CROSS BLUE SHIELD OF KANSAS CITY d/b/a BLUE KC (erroneously sued as BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, INC.),

42.     BLUE CROSS AND BLUE SHIELD OF NEBRASKA;

43.     BLUE CROSS BLUE SHIELD WYOMING;

44.     BLUE CROSS OF IDAHO HEALTH SERVICE, INC.;

45.     GREEN TREE COMPREHENSIVE WELFARE PLAN;

46.     J.R. SIMPLOT COMPANY GROUP HEALTH & WELFARE PLAN;

47.     PETER KIEWIT SONS, INC. HEALTH & WELFARE PLAN;

48.     TWIN CITIES BAKERY DRIVERS HEALTH & WELFARE FUND;

49.     USAble MUTUAL INSURANCE COMP ANY, d/b/a ARKANSAS BLUE CROSS AND BLUE SHIELD;

50.     BLUEADVANTAGEADMINISTRATORS OF ARKANSAS, and WAL-MART STORES, INC. ASSOCIATES HEALTH& WELFARE PLAN;

51.     THE MILTON S. HERSHEY MEDICAL CENTER HEALTH AND WELFARE PLAN;

52. OWENS-ILLINOIS SALARY EMPLOYEES WELFARE BENEFIT PLAN;

53. GEICO CORPORATION CONSOLIDATED WELFARE BENEFITS PROGRAM;

54. VERTICAL SEARCH WORKS, INC. MEDICAL PLAN

55. WELLS FARGO & CO. HEALTH PLAN;

56. HUNTINGTON BANCSHARES INCORPORATED HEALTH CARE PLAN;

57. ALLTECH, INC. BENEFIT PLAN;

58. RIO TINTO AMERICA INC. HEALTH & WELFARE PLAN;

59 OREGON TEAMSTER EMPLOYERS TRUST;

60. EATON CORPORATION MEDICAL PLAN FOR U.S. EMPLOYEES;

61. CONAGRA FOODS, INC. WELFARE BENEFIT WRAP PLAN;

62. WEBMD HEALTH & WELFARE PLAN; and

63. INDEPENDENCE BLUE CROSS, LLC.