1  Peter K. Stris (SBN 216226)
       peter.stris@strismaher.com
2  Brendan S. Maher (SBN 217043)
       brendan.maher@strismaher.com
3  Victor O'Connell (SBN 288094)
       victor.oconnell@strismaher.com
4  Kristina Kourasis (SBN 291729)
       kristina.kourasis@strismaher.com
5  STRIS & MAHER LLP
   725 South Figueroa Street, Suite 1830
6  Los Angeles, CA 90017
   Telephone: (213) 995-6800
7  Facsimile: (213) 261-0299

8  Seth Zajac (SBN 285718)
       s.zajac@sovhealth.com
9  SOVEREIGN ASSET MANAGEMENT, INC.
   d/b/a SOVEREIGN HEALTH GROUP
10 1211 Puerta Del Sol, Suite 280
   San Clemente, CA 92673
11 Telephone: (949) 276-5553
   Facsimile: (949) 272-5797

12

13 *Attorneys for Plaintiffs*

14  **UNITED STATES DISTRICT COURT**

15  **CENTRAL DISTRICT OF CALIFORNIA**

16  **SOUTHERN DIVISION**

| | |
|---|---|
| 17 DUAL DIAGNOSIS TREATMENT CENTER, INC., a California | Case No. SACV15−736 DOC (RNBx) |
| 18 corporation; SATYA HEALTH OF CALIFORNIA, INC., a California | **FIRST AMENDED COMPLAINT FOR:** |
| 19 corporation; ADEONA HEALTHCARE, INC., a California | **VIOLATIONS OF ERISA** |
| 20 corporation; SOVEREIGN HEALTH OF FLORIDA, INC., a Delaware | **(29 U.S.C. § 1132(a)(1)(B))** |
| 21 corporation; SOVEREIGN HEALTH OF PHOENIX, INC., a Delaware | **VIOLATIONS OF ERISA** |
| 22 corporation; and SOVEREIGN ASSET MANAGEMENT, INC., a Delaware | **(29 U.S.C. § 1132(a)(2))** |
| 23 corporation, | **VIOLATIONS OF ERISA** |
| | **(29 U.S.C. § 1132(a)(3))** |
| 24          Plaintiffs, | **UNFAIR COMPETITION** |
| 25          v. | **(Common Law and Cal. Bus. & Prof. Code §§ 17200 *et seq*)** |
| 26 BLUE CROSS OF CALIFORNIA d/b/a ANTHEM BLUE CROSS; ANTHEM | **JURY TRIAL DEMANDED** |
| 27 HEALTH PLANS, INC. d/b/a ANTHEM BLUE CROSS AND BLUE | |

Stris &
Maher LLP

28

1   SHIELD; ANTHEM HEALTH PLANS
    OF KENTUCKY, INC. d/b/a ANTHEM
2   BLUE CROSS AND BLUE SHIELD;
    ANTHEM INSURANCE
3   COMPANIES, INC. d/b/a ANTHEM
    BLUE CROSS AND BLUE SHIELD;
4   ANTHEM HEALTH PLANS OF
    VIRGINIA, INC.; THE ANTHEM
5   COMPANIES, INC. d/b/a BLUE
    CROSS BLUE SHIELD OF
6   WISCONSIN; BLUE CROSS AND
    BLUE SHIELD OF ALABAMA;
7   BLUE CROSS AND BLUE SHIELD
    OF GEORGIA, INC., d/b/a ANTHEM
8   BLUE CROSS AND BLUE SHIELD;
    USAble MUTUAL INSURANCE
9   COMPANY d/b/a ARKANSAS BLUE
    CROSS AND BLUE SHIELD and/or
10  BLUEADVANTAGE
    ADMINISTRATORS OF ARKANSAS;
11  BCBSM, INC. d/b/a BLUE CROSS
    BLUE SHIELD OF MINNESOTA;
12  BLUE CROSS AND BLUE SHIELD
    OF ARIZONA, INC.; BLUE CROSS
13  AND BLUE SHIELD OF FLORIDA,
    INC. d/b/a FLORIDA BLUE; BLUE
14  CROSS AND BLUE SHIELD OF
    KANSAS CITY d/b/a BLUE KC;
15  BLUE CROSS AND BLUE SHIELD
    OF KANSAS, INC.; BLUE CROSS
16  AND BLUE SHIELD OF
    MASSACHUSETTS, INC.; BLUE
17  CROSS AND BLUE SHIELD OF
    MASSACHUSETTS HMO BLUE,
18  INC.; BLUE CROSS AND BLUE
    SHIELD OF NEBRASKA; BLUE
19  CROSS BLUE SHIELD OF
    MICHIGAN MUTUAL INSURANCE
20  COMPANY; BLUE CROSS AND
    BLUE SHIELD OF NORTH
21  CAROLINA; BLUE CROSS AND
    BLUE SHIELD OF SOUTH
22  CAROLINA; BLUE CROSS BLUE
    SHIELD OF TENNESSEE, INC.;
23  BLUE CROSS BLUE SHIELD OF
    WYOMING; BLUE CROSS OF
24  IDAHO HEALTH SERVICE, INC.
    d/b/a BLUE CROSS OF IDAHO;
25  CALIFORNIA PHYSICIANS'
    SERVICE d/b/a BLUE SHIELD OF
26  CALIFORNIA; COMMUNITY
    INSURANCE COMPANY d/b/a
27  ANTHEM BLUE CROSS AND BLUE
    SHIELD; EMPIRE HEALTHCHOICE

Stris &
Maher LLP   28

2

ASSURANCE, INC. d/b/a EMPIRE
BLUECROSS BLUESHIELD and/or
ANTHEM BLUE CROSS AND BLUE
SHIELD; EXCELLUS HEALTH
PLAN, INC. d/b/a EXCELLUS BLUE
CROSS BLUE SHIELD; GROUP
HOSPITALIZATION AND MEDICAL
SERVICES, INC. d/b/a CAREFIRST
BLUECROSS BLUESHIELD;
CAREFIRST OF MARYLAND, INC.
d/b/a CAREFIRST BLUECROSS
BLUESHIELD; HAWAI'I MEDICAL
SERVICE ASSOCIATION d/b/a BLUE
CROSS BLUE SHIELD OF HAWAI'I;
HEALTH CARE SERVICE
CORPORATION, A MUTUAL LEGAL
RESERVE COMPANY d/b/a
BLUECROSS BLUESHIELD OF
ILLINOIS; BLUECROSS
BLUESHIELD OF MONTANA;
BLUECROSS BLUESHIELD OF
NEW MEXICO; BLUECROSS
BLUESHIELD OF OKLAHOMA;
and/or BLUECROSS BLUESHIELD
OF TEXAS; HIGHMARK, INC.;
HIGHMARK BLUE CROSS BLUE
SHIELD; HIGHMARK BLUE
SHIELD; BLUE CROSS OF
NORTHEASTERN PENNSYLVANIA;
HIGHMARK BCBSD INC. d/b/a
HIGHMARK BLUE CROSS BLUE
SHIELD DELAWARE.; HORIZON
HEALTHCARE SERVICES, INC. d/b/a
HORIZON BLUE CROSS BLUE
SHIELD OF NEW JERSEY;
INDEPENDENCE BLUE CROSS,
INC.; LOUISIANA HEALTH
SERVICE & INDEMNITY COMPANY
d/b/a BLUE CROSS AND BLUE
SHIELD OF LOUISIANA; PREMERA
BLUE CROSS; PREMERA BLUE
CROSS BLUE SHIELD OF ALASKA;
REGENCE BLUECROSS
BLUESHIELD OF OREGON;
REGENCE BLUECROSS
BLUESHIELD OF UTAH; REGENCE
BLUESHIELD d/b/a BLUE SHIELD
OF WASHINGTON; ROCKY
MOUNTAIN HOSPITAL AND
MEDICAL SERVICE, INC. d/b/a
BLUE CROSS AND BLUE SHIELD
OF COLORADO and/or ANTHEM
BLUE CROSS AND BLUE SHIELD;
WELLMARK, INC. d/b/a

Stris &
Maher LLP

3

1  WELLMARK BLUE CROSS BLUE
   SHIELD OF IOWA; WELLMARK OF
2  SOUTH DAKOTA, INC. d/b/a
   WELLMARK BLUE CROSS BLUE
3  SHIELD OF SOUTH DAKOTA; 3M
   EMPLOYEES' WELFARE BENEFITS
4  ASSOCIATION (TRUST II) PLAN;
   ALLTECH, INC. BENEFIT PLAN;
5  BAXTER INTERNATIONAL INC.
   AND SUBSIDIARIES WELFARE
6  BENEFIT PLAN; CHICO'S FAS, INC.
   HEALTH & WELFARE BENEFIT
7  PLAN; CONAGRA FOODS, INC.
   WELFARE BENEFIT WRAP PLAN;
8  COVANCE, INC. HEALTH &
   WELFARE PLAN; C.R. BARD, INC.
9  EMPLOYEE BENEFIT PLAN;
   EATON CORPORATION MEDICAL
10 PLAN FOR U.S. EMPLOYEES;
   ELLIOTT ELECTRIC SUPPLY, INC.
11 GROUP HEALTH PLAN; ERNST &
   YOUNG MEDICAL PLAN; GEICO
12 CORPORATION CONSOLIDATED
   WELFARE BENEFITS PROGRAM;
13 WALTER INVESTMENT
   MANAGEMENT CORP.
14 COMPREHENSIVE WELFARE
   BENEFIT PLAN; GROUP HEALTH &
15 WELFARE BENEFITS PLAN OF
   AMERICAN EAGLE AIRLINES, INC.
16 & ITS AFFILIATES; THE GROUP
   LIFE AND HEALTH BENEFITS
17 PLAN FOR EMPLOYEES OF
   PARTICIPATING AMR
18 CORPORATION SUBSIDIARIES;
   H.E. BUTT GROCERY COMPANY
19 WELFARE BENEFIT PLAN;
   HUNTINGTON BANCSHARES
20 INCORPORATED HEALTH CARE
   PLAN; J.R. SIMPLOT COMPANY
21 GROUP HEALTH & WELFARE
   PLAN; LIVE NATION
22 ENTERTAINMENT, INC. GROUP
   BENEFITS PLAN; MARTIN
23 MARIETTA MEDICAL PLAN; THE
   MILTON S. HERSHEY MEDICAL
24 CENTER HEALTH AND WELFARE
   PLAN; NOVARTIS CORPORATION
25 WELFARE BENEFIT PLAN;
   ORASURE TECHNOLOGIES INC.
26 HEALTH AND WELFARE PLAN;
   OREGON TEAMSTER EMPLOYERS
27 TRUST; OWENS-ILLINOIS SALARY
   EMPLOYEES WELFARE BENEFIT

PLAN; PETER KIEWIT SONS', INC. HEALTH & WELFARE PLAN; RIO TINTO AMERICA INC. HEALTH & WELFARE PLAN; SAS INSTITUTE INC. WELFARE BENEFITS PLAN; SEABRIGHT HOLDINGS, INC. GROUP HEALTH PLAN; TUV AMERICA, INC. INSURANCE BENEFITS PLAN; TWIN CITIES BAKERY DRIVERS HEALTH & WELFARE FUND; VERIZON NATIONAL PPO WEST; VERTICAL SEARCH WORKS, INC. MEDICAL PLAN; VIASAT, INC. EMPLOYEE BENEFIT PLAN; WAL-MART STORES, INC. ASSOCIATES HEALTH & WELFARE PLAN; WEBMD HEALTH AND WELFARE PLAN; WELLS FARGO & COMPANY HEALTH PLAN; XEROX BUSINESS SERVICES, LLC FUNDED WELFARE BENEFIT PLAN; GKN EMPLOYEE WELFARE BENEFIT PLAN; ION GEOPHYSICAL CORPORATION GROUP HEALTH PLAN; XEROX CORPORATION WELFARE PLAN; THE LILLY EMPLOYEE WELFARE PLAN; BLUE CROSS & BLUE SHIELD OF ARIZONA, INC. EMPLOYEE HEALTH PLAN; HL FINANCIAL SERVICES, LLC EMPLOYEE BENEFITS PLAN; NHS HUMAN SERVICES WELFARE PLAN; THE MASTER BUILDERS ASSOCIATION HEALTH INSURANCE TRUST; NORDSTROM, INC. WELFARE BENEFIT PLAN; HOME DEPOT WELFARE BENEFITS PLAN; ROCKET SOFTWARE GROUP INSURANCE BENEFITS PLAN; INTEGRA TELECOM, INC. HEALTH & WELFARE PLAN; TIME WARNER CABLE BENEFITS PLAN; IESI CORPORATION EMPLOYEE WELFARE BENEFITS PLAN; PEAK 10, INC. EMPLOYEE BENEFIT PLAN; PEAK FINANCE COMPANY GROUP HEALTH PLAN; DYCOM INDUSTRIES HEALTH AND WELFARE PLAN; MEDTRONIC, INC. GROUP INSURANCE PLAN; PEPSICO EMPLOYEE HEALTH CARE

1  PROGRAM; FOLLETT
   CORPORATION EMPLOYEES
2  BENEFIT TRUST; OGLETREE,
   DEAKINS, NASH, SMOAK &
3  STEWART, P.C. GROUP MEDICAL
   PLAN; WAFERTECH LLC HEALTH
4  & WELFARE PLAN; ALASKA AIR
   GROUP, INC. WELFARE BENEFIT
5  PLAN; FNB CORPORATION
   HEALTH AND WELFARE PLAN;
6  LECROY HEALTH AND
   DISABILITY BENEFIT PLAN;
7  SIMMONS WELFARE BENEFIT
   PLAN; MEDIANEWS GROUP
8  WELFARE BENEFITS PLAN;
   ASCENSION SMARTHEALTH
9  MEDICAL PLAN; SALLIE MAE
   EMPLOYEES COMPREHENSIVE
10 WELFARE BENEFITS PLAN;
   ACTIVE POWER, INC. HEALTH
11 AND WELFARE PLAN;
   MACHINISTS HEALTH & WELFARE
12 TRUST FUND; MUELLER WATER
   PRODUCTS, INC. FLEXIBLE
13 BENEFITS PLAN; CNS HEALTH
   AND WELFARE BENEFITS PLAN;
14 ALLIANT INSURANCE SERVICES
   WELFARE BENEFITS PLAN;
15 PUBLIX SUPER MARKETS, INC.
   GROUP HEALTH BENEFIT PLAN;
16 COMMUNITY HEALTH SYSTEMS
   GROUP HEALTH PLAN; USUI
17 INTERNATIONAL GROUP HEALTH
   & WELFARE PLAN; TRANSPORT
18 CORPORATION OF AMERICA, INC.
   EMPLOYEE HEALTH AND
19 WELFARE BENEFIT PLAN;
   ARDENT HEALTH SERVICES
20 WELFARE BENEFIT PLAN; FRANK
   CALANDRA, INC. MEDICAL PLAN;
21 NATIONAL MEDICAL CARE, INC.
   GROUP MEDICAL, DENTAL, LIFE
22 AND AD&D PLAN; THE STEAK N
   SHAKE EMPLOYEE BENEFIT
23 PLAN; HENRY SCHEIN, INC.
   DEPENDENT AND MEDICAL
24 FLEXIBLE SPENDING ACCOUNT
   PLAN; LIBERTY MUTUAL
25 MEDICAL PLAN; CORRECTIONS
   CORPORATION OF AMERICA SCA
26 EMPLOYEES BENEFIT PLAN; THE
   SOUTHWEST SHIPYARD, L.P.
27 CAFETERIA PLAN; F5 NETWORKS,
   INC. EMPLOYEE BENEFIT PLAN;

MDU RESOURCES GROUP, INC. HEALTH AND WELFARE BENEFITS PROGRAM; EMPLOYEES' BENEFIT PLAN OF GENERAL MILLS, INC.; GROUP WELFARE PLAN FOR QUEST DIAGNOSTICS INCORPORATED; NORTHROP GRUMMAN CORPORATION GROUP BENEFITS PLAN; SIERRA NEVADA BREWING CO. WELFARE BENEFITS PLAN; RAYONIER, INC. WELFARE PLANS; NECA/IBEW FAMILY MEDICAL CARE PLAN; RANDALL S. FUDGE P.C. EMPLOYEE BENEFITS PLAN; GENTIVA HEALTH SERVICES HEALTH & WELFARE PLAN; eHEALTH WELFARE PLAN; TUV AMERICA, INC. INSURANCE BENEFITS PLAN; CONSOLIDATED GRAPHICS, INC. GROUP BENEFITS PLAN; FASTRAC MARKETS LLC EMPLOYEE WELFARE BENEFIT PLAN; FERGUSON ENTERPRISES INC. FLEXIBLE BENEFITS PLAN; SACRED HEART UNIVERSITY'S GROUP HEALTH INSURANCE BENEFIT PLAN; PIONEER ENERGY SERVICES CORP. GROUP HEALTH PLAN; THE KROGER CO. HEALTH & WELFARE BENEFIT PLAN; THE HARTFORD FIRE INSURANCE COMPANY EMPLOYEE MEDICAL AND DENTAL EXPENSE BENEFITS PLAN; BLOOMBERG L.P. HEALTH AND WELFARE PLAN; INTEL CORPORATION HEALTH AND WELFARE BENEFIT PLAN; ST. LUKE'S LUTHERAN CARE CENTER EMPLOYEE HEALTH CARE PLAN; BANK OF THE WEST EMPLOYEE BENEFIT PLAN; TAC MANUFACTURING, INC. EMPLOYEE WELFARE BENEFIT PLAN; INLANDBOATMEN'S UNION OF THE PACIFIC NATIONAL HEALTH BENEFIT TRUST; CARGOTEC HOLDING, INC. GROUP HEALTH & WELFARE PLAN; SHEET METAL WORKERS' LOCAL NO. 40 HEALTH FUND; THE AEROSPACE CORPORATION GROUP HOSPITAL-MEDICAL PLAN; ALBERTSON'S LLC HEALTH

Stris &
Maher LLP

7

& WELFARE PLAN; SPOKANE TEACHERS CREDIT UNION EMPLOYEE MEDICAL & DENTAL PLAN; CONSTRUCTION INDUSTRY LABORERS WELFARE FUND; INTEVAC LIFE AND WELFARE PLAN; MIDWEST OPERATING ENGINEERS WELFARE FUND RETIREE HEALTH AND WELFARE PLAN; UNIVERSITY OF NEBRASKA FOUNDATION WELFARE BENEFITS PLAN; TENET EMPLOYEE BENEFIT PLAN; THE LINCOLN ELECTRIC COMPANY WELFARE BENEFITS PLAN; INTERRAIL SIGNALS, INC. WELFARE BENEFIT PLAN; UNITED SURGICAL PARTNERS, INTL WELFARE BENEFIT PLAN; KENTUCKY CONSTRUCTION INDUSTRY TRUST; GENERAL NUTRITION GROUP INSURANCE PLAN; SCANA CORPORATION HEALTH & WELFARE PLAN; ENSCO HEALTH PLAN; METAL-MATIC, INC. WELFARE BENEFIT PLAN; LAYNE CHRISTENSEN COMPANY HEALTH AND WELFARE PLAN; LIMITED BRANDS, INC. HEALTH AND WELFARE BENEFITS PLAN; ASANTE EMPLOYEE BENEFITS PLAN; NATURE'S PATH FOODS, INC. WELFARE BENEFIT PLAN; SOUTHERN CALIFORNIA IBEW-NECA HEALTH TRUST FUND; BIMBO BAKERIES USA HEALTH AND WELFARE PLAN; SAGE SOFTWARE INC. AND CO-SPONSORING AFFILIATES HEALTH AND WELFARE PLAN; BAYHEALTH MEDICAL CENTER EMPLOYEE HEALTH AND DENTAL INSURANCE PLAN; PORTLAND AREA UFCW LOCAL 555-EMPLOYERS HEALTH PLAN; TRINET EMPLOYEE BENEFIT INSURANCE PLAN; U.S. LBM HOLDINGS, LLC EMPLOYEE BENEFIT PLAN; U.S. RENAL CARE, INC. WELFARE BENEFIT PLAN; YATES PETROLEUM CORPORATION, ET AL. FLEXIBLE BENEFITS CAFETERIA PLAN;

Stris & Maher LLP

8

UNITED STATES STEEL PLAN FOR
ACTIVE EMPLOYEE INSURANCE
BENEFITS; PUGET SOUND PILOTS
GROUP HEALTH PLAN;
AMERIFLIGHT, LLC GROUP LIFE &
HEALTH INSURANCE PLAN;
MORRIS BART EMPLOYEE
BENEFITS PLAN; GLOBECAST
HEALTH AND WELFARE BENEFITS
PLAN; GLOBYS, INC. GROUP
HEALTH PLAN; CARGILL,
INCORPORATED & PARTICIPATING
AFFILIATES GROUP HEALTH
PLAN; ACWA/JPIA EMPLOYEE
BENEFITS PROGRAM; THE DOG
LADY, LLC GROUP HEALTH PLAN;
UNIVERSITY OF HAWAI'I /
CHAMINADE UNIVERSITY
STUDENT PLAN; HDR, INC. GROUP
INSURANCE PLAN; BRICKLAYERS
AND ALLIED CRAFTWORKERS
LOCAL 1 PA/DE HEALTH &
WELFARE FUND; PROFIT INSIGHT
HOLDINGS, LLC GROUP HEALTH
PLAN; DELTA KAPPA GAMMA
SOCIETY INTERNATIONAL
HEALTH BENEFIT PLAN; DIRT
FREE FLOOD SERVICES INC.
HEALTH BENEFIT PLAN; EINSTEIN
NOAH RESTAURANT GROUP, INC.
EMPLOYEE BENEFIT PLAN;
NORTHERN CALIFORNIA SHEET
METAL WORKERS HEALTH CARE
PLAN; JENNINGS AMERICAN
LEGION HOSPITAL EMPLOYEE
BENEFIT PLAN; MERCY HEALTH
SERVICES, INC. AND
SUBSIDIARIES MEDICAL PLAN;
TUCSON ELECTRIC POWER
COMPANY EMPLOYEE GROUP
INSURANCE PLAN;
and DOES 1 to 10, inclusive,

Defendants.

## **INTRODUCTION**

1.     The Blue Cross Blue Shield Association (the "Association") and its
affiliated insurance companies (the "Blue Cross Companies") (collectively "Blue

Stris &
Maher LLP

Cross") provide health insurance coverage to about one in three Americans. According to Blue Cross's own press, ninety-one percent of health care providers have contracted with Blue Cross entities to offer discounted services to Blue Cross members, and ninety-seven percent of the claims that Blue Cross pays are to such "in-network" providers.

2.     This litigation arises out of Blue Cross's efforts to coerce the few remaining "out-of-network" providers, such as Plaintiffs Dual Diagnosis Treatment Center, Inc.; Satya Health of California, Inc.; Adeona Healthcare, Inc.; Sovereign Health of Florida, Inc.; and Sovereign Health of Phoenix, Inc., to join Blue Cross's vast provider network.

3.     In a nutshell, Blue Cross refuses to honor assignments its individual insureds give to out-of network providers like Plaintiffs. As a matter of practice, Plaintiffs submit claims for benefits to Blue Cross Companies on industry standard UB-04 forms; on those forms they explicitly indicate that they have received an assignment of benefits. The Blue Cross Companies flatly and summarily ignore the assignments and mail payments to their individual insureds. In this case, Blue Cross's systemic disregard of these valid assignment contracts led the Blue Cross Companies to send *millions* of dollars to chemically dependent individuals instead of Plaintiffs, who as a result can only recover pennies on the dollar for the medical services they provided.

4.     Because the vast majority of Blue Cross insureds who seek treatment from Plaintiffs receive health insurance through work, their benefits are covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Plaintiffs became "beneficiaries" under ERISA when they received valid assignments of benefits from their Blue Cross insured patients, and they became "claimants" when they submitted UB-04 claim forms to the Blue Cross Companies.

Stris & Maher LLP

10

5.     Plaintiffs bring this suit to enforce their valid assignments of benefits and to vindicate their rights under ERISA, and to the extent applicable, state law. Plaintiffs not only seek to recover damages for benefit claims that have been wrongfully denied, but also to enjoin Blue Cross from blatantly disregarding numerous federal regulations that require benefit denials to be in writing, specific, and reasoned—regulations that stand as an obstacle to Blue Cross's cynical bid to stonewall and bully smaller medical providers.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and pursuant to 28 U.S.C. § 1367.

7.     ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All Defendants are either residents of the United States or subject to service in the United States and this Court therefore has personal jurisdiction over them.

8.     Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because much of the conduct that is the subject of this lawsuit occurred within this District, and at least one Defendant resides in this District and all Defendants conduct business within this District, either directly or through wholly owned and controlled subsidiaries.

## THE PARTIES

**A.     Plaintiffs**

9.     Plaintiffs are entities that provide in- and outpatient substance abuse and/or mental health treatment in California, Arizona, and Florida.

10.    Dual Diagnosis Treatment Center, Inc. ("Dual Diagnosis") is a corporation duly organized and existing under the laws of California. Dual Diagnosis does business as "Sovereign Health of California," and on occasion

Stris & Maher LLP

11

under other names in accordance with its governing certifications and licensures. Dual Diagnosis is certified to operate and maintain behavioral health treatment facilities in San Clemente, Culver City, and Palm Springs, California.

11.     Satya Health of California, Inc. ("Satya") is a corporation duly organized and existing under the laws of California. Satya does business as "Sovereign by the Sea II," and on occasion under other names in accordance with its governing certifications and licensures. Satya is licensed to operate and maintain behavioral health treatment facilities in San Clemente, Culver City, and Palm Springs, California.

12.     Adeona Healthcare, Inc. ("Adeona") is a corporation duly organized and existing under the laws of California. Adeona does business as "Sovereign Health Rancho/San Diego." Adeona is licensed to operate and maintain a children's group home in El Cajon, California.

13.     Sovereign Health of Florida, Inc. ("Sovereign Florida") is a corporation duly organized and existing under the laws of Delaware, doing business as "Sovereign Health of Florida." Sovereign Florida is licensed to operate and maintain a residential care facility in Fort Myers, Florida.

14.     Sovereign Health of Phoenix, Inc. ("Sovereign Phoenix") is a corporation duly organized and existing under the laws of Delaware, doing business as "Sovereign Health of Phoenix." Sovereign Phoenix is licensed to operate and maintain a behavioral health residential facility in Chandler, Arizona.

15.     Sovereign Asset Management, Inc. ("SAM") is a corporation duly organized and existing under the laws of Delaware, doing business as "Sovereign Health Group."

16.     For purposes of this Complaint, Dual Diagnosis, Satya, Adeona, Sovereign Florida, Sovereign Phoenix, and SAM are collectively referred or

individually referred to as "Sovereign," as context requires. The Sovereign entities are also collectively referred to as "Provider Plaintiffs" or "Plaintiffs."

**B.     Significant Non-Parties**

17.    Medical Concierge, Inc. ("Medlink") is a corporation duly organized and existing under the laws of California, doing business as "Medlink." Medlink is licensed to operate and maintain an adult residential facility ("ARF") for ambulatory mentally ill adults. At pertinent times, Medlink agreed to provide rehabilitation services to Sovereign as a fully furnished and appropriately licensed ARF, and to act as Sovereign's agent in certain intake and claim matters, and Sovereign agreed to provide extensive non-medical management and administrative services, in exchange for fair consideration.

18.    MedPro Billing, Inc. ("MedPro") is a corporation duly organized and existing under the laws of Florida. MedPro provides benefits verification and eligibility information, utilization review, and medical billing and collection services to mental health and substance abuse treatment providers. At pertinent times, MedPro agreed to provide benefits verification and eligibility information, utilization review, and medical billing and collection services to, and in certain ways act as an agent for, Sovereign, in exchange for fair consideration.

**C.    Defendants**

19.    This lawsuit involves behavioral health treatment services rendered by Provider Plaintiffs to many individuals ("Former Patients") who Plaintiffs are informed and believe, at all relevant times, possessed health insurance covering some or all of the services that Plaintiffs provided.

20.    Plaintiffs are informed and believe that the relevant health insurance of each Former Patient was provided by an employer-sponsored plan covered by ERISA.

Stris &
Maher LLP

13

21.    Plaintiffs are also informed and believe that, with regard to each and every Former Patient, the ERISA-governed coverage was insured and/or administered by one or more Blue Cross Company.

22.    **The Welfare Plan Defendants.** Based upon documents obtained by Plaintiffs to date, Plaintiffs are informed and believe that the health insurance of each Former Patient was obtained through what ERISA defines as an "employee benefit plan." 29 U.S.C. § 1002(3). Specifically, Plaintiffs are informed and believe that the health insurance of each Former Patient was obtained through what ERISA defines as a "welfare plan." 29 U.S.C. § 1002(1). Section 502(d)(1) of ERISA, 29 U.S.C. § 1132(d)(1) provides that "[a]n employee benefit plan [such as a welfare plan] may sue or be sued under this subchapter as an entity . . . ." Plaintiffs name the following one hundred and fifty-eight [158] ERISA-governed welfare plans as defendants in this lawsuit:

(1)    3M Employees' Welfare Benefits Association (Trust II) Plan (the "3M Plan"). Plaintiffs are informed and believe that Defendant 3M Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the 3M Plan is 3M Center, 224-2W-15, St. Paul, Minnesota 55144.

(2)    Alltech, Inc. Benefit Plan (the "Alltech Plan"). Plaintiffs are informed and believe that Defendant Alltech Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Alltech Plan is 3031 Catnip Hill Pike, Nicholasville, Kentucky 40356.

(3)    Baxter International Inc. and Subsidiaries Welfare Benefit Plan (the "Baxter Plan"). Plaintiffs are informed and believe that Defendant Baxter Plan is an employer-sponsored welfare plan capable of suing and being sued

Stris &
Maher LLP

14

pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Baxter Plan is One Baxter Parkway, Deerfield, Illinois 60015.

(4)   <u>Chico's FAS, Inc. Health & Welfare Benefit Plan</u> (the "FAS Plan"). Plaintiffs are informed and believe that Defendant FAS Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the FAS Plan is 11215 Metro Parkway, Fort Meyers, Florida 33966.

(5)   <u>ConAgra Foods, Inc. Welfare Benefit WRAP Plan</u> (the "ConAgra Plan"). Plaintiffs are informed and believe that Defendant ConAgra Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the ConAgra Plan is 1 Conagra Drive, Omaha, Nebraska 68102.

(6)   <u>Covance, Inc. Health & Welfare Plan</u> (the "Covance Plan"). Plaintiffs are informed and believe that Defendant Covance Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Covance Plan is 210 Carnegie Center, Princeton, New Jersey 08540.

(7)   <u>C.R. Bard, Inc. Employee Benefit Plan</u> (the "Bard Plan"). Plaintiffs are informed and believe that Defendant Bard Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Bard Plan is 730 Central Avenue, Murray Hill, New Jersey 07974.

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

(8)   Eaton Corporation Medical Plan for U.S. Employees (the "Eaton Plan"). Plaintiffs are informed and believe that Defendant Eaton Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Eaton Plan is 1000 Eaton Boulevard, Cleveland, Ohio 44122.

(9)   Elliott Electric Supply, Inc. Group Health Plan (the "Elliott Electric Plan"). Plaintiffs are informed and believe that Defendant Elliott Electric Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Elliott Electric Plan is 2526 North Stallings Drive, Nacogdoches, Texas 75963.

(10)   Ernst & Young Medical Plan (the "Ernst & Young Plan"). Plaintiffs are informed and believe that Defendant Ernst & Young Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Ernst & Young Plan is 200 Plaza Drive, Secaucus, New Jersey 07094.

(11)   Geico Corporation Consolidated Welfare Benefits Program (the "Geico Plan"). Plaintiffs are informed and believe that Defendant Geico Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Geico Plan is One Geico Plaza, Washington D.C. 20076.

(12)   Walter Investment Management Corp. Comprehensive Welfare Benefit Plan, formerly known as Green Tree Comprehensive Welfare Plan (the "Green Tree Plan"). Plaintiffs are informed and believe that Defendant Green Tree Plan is an employer-sponsored welfare plan capable of suing and

Stris & Maher LLP

16

being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Green Tree Plan is 600 Landmark Towers, 345 St. Peter Street, St. Paul, Minnesota 55102.

(13)   Group Health & Welfare Benefits Plan of American Eagle Airlines, Inc. & Its Affiliates (the "AEA Plan"). Plaintiffs are informed and believe that Defendant AEA Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the AEA Plan is 4333 Amon Carter Boulevard, MD-5485, Fort Worth, Texas 76155.

(14)   The Group Life and Health Benefits Plan for Employees of Participating AMR Corporation Subsidiaries (the "American Air Plan"). Plaintiffs are informed and believe that Defendant American Air Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the American Air Plan is 4333 Amon Carter Boulevard, Fort Worth, Texas 76155.

(15)   H.E. Butt Grocery Company Welfare Benefit Plan (the "H.E. Butt Grocery Plan"). Plaintiffs are informed and believe that Defendant H.E. Butt Grocery Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the H.E. Butt Grocery Plan is 646 South Main Avenue, San Antonio, Texas 78204.

(16)   Huntington Bancshares Incorporated Health Care Plan (the "Huntington Plan"). Plaintiffs are informed and believe that Defendant Huntington Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The

Stris & Maher LLP

17

1    principal place of business of the Huntington Plan is 41 South High Street

2    HC0339, Columbus, Ohio 43215.

3         (17)   J.R. Simplot Company Group Health & Welfare Plan (the

4    "Simplot Plan"). Plaintiffs are informed and believe that Defendant Simplot

5    Plan is an employer-sponsored welfare plan capable of suing and being sued

6    pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

7    place of business of the Simplot Plan is 999 Main Street, Boise, Idaho 83702.

8         (18)   Live Nation Entertainment, Inc. Group Benefits Plan (the "Live

9    Nation Plan"). Plaintiffs are informed and believe that Defendant Live Nation

10   Plan is an employer-sponsored welfare plan capable of suing and being sued

11   pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

12   place of business of the Live Nation Plan is 7060 Hollywood Boulevard, 2nd

13   Floor, Hollywood, California 90028.

14        (19)   Martin Marietta Medical Plan (the "Martin Marietta Plan").

15   Plaintiffs are informed and believe that Defendant Martin Marietta Plan is an

16   employer-sponsored welfare plan capable of suing and being sued pursuant to

17   section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of

18   business of the Martin Marietta Plan is 2710 Wycliff Road, Raleigh, North

19   Carolina 27607.

20        (20)   The Milton S. Hershey Medical Center Health and Welfare Plan

21   (the "Milton S. Hershey Plan"). Plaintiffs are informed and believe that

22   Defendant Milton S. Hershey Plan is an employer-sponsored welfare plan

23   capable of suing and being sued pursuant to section 502(d) of ERISA, 29

24   U.S.C. § 1132(d). The principal place of business of the Milton S. Hershey

25   Plan is 500 University Drive, Hershey, Pennsylvania 17033.

26        (21)   Novartis Corporation Welfare Benefit Plan (the "Novartis

27   Plan"). Plaintiffs are informed and believe that Defendant Novartis Plan is an

28

Stris &
Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Novartis Plan is One South Ridgedale Avenue, East Hanover, New Jersey 07936.

(22)   OraSure Technologies Inc. Health and Welfare Plan (the "OraSure Tech Plan"). Plaintiffs are informed and believe that Defendant OraSure Tech Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the OraSure Tech Plan is 220 East First Street, Bethlehem, Pennsylvania 18015.

(23)   Oregon Teamster Employers Trust (the "Oregon Teamster Plan"). Plaintiffs are informed and believe that Defendant Oregon Teamster Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Oregon Teamster Plan is 3140 NE Broadway Street, Portland, Oregon 97208.

(24)   Owens-Illinois Salary Employees Welfare Benefit Plan (the "Owens-Illinois Plan"). Plaintiffs are informed and believe that Defendant Owens-Illinois Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Owens-Illinois Plan is One Michael Owens Way, Perrysburg, Ohio 43551.

(25)   Peter Kiewit Sons', Inc. Health & Welfare Plan (the "Kiewit Plan"). Plaintiffs are informed and believe that Defendant Kiewit Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of

Stris &
Maher LLP

business of the Kiewit Plan is 1000 Kiewit Plaza, 3555 Farnam Street, Omaha, Nebraska 68131.

(26)   Rio Tinto America Inc. Health & Welfare Plan (the "Rio Tinto Plan"). Plaintiffs are informed and believe that Defendant Rio Tinto Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Rio Tinto Plan is 4700 Daybreak Parkway, South Jordan, Utah 84095.

(27)   Consolidated Graphics, Inc. Group Benefits Plan (the "Consolidated Graphics Plan"). Plaintiffs are informed and believe that Defendant Consolidated Graphics Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Consolidated Graphics Plan is 1614 East 40th Street, Cleveland, Ohio 44103.

(28)   SAS Institute Inc. Welfare Benefits Plan (the "SAS Plan"). Plaintiffs are informed and believe that Defendant SAS Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the SAS Plan is SAS Campus Drive, Cary, North Carolina 27513.

(29)   SeaBright Holdings, Inc. Group Health Plan (the "SeaBright Plan"). Plaintiffs are informed and believe that Defendant SeaBright Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the SeaBright Plan is 1501 Fourth Avenue, Suite 2600, Seattle, Washington 98101.

(30)   TUV America, Inc. Insurance Benefits Plan (the "TUV Plan"). Plaintiffs are informed and believe that the TUV Plan is an employer-

Stris & Maher LLP

20

1    sponsored welfare plan capable of suing and being sued pursuant to section

2    502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the

3    TUV Plan is 10 Centennial Drive, Peabody, Massachusetts 01960.

4         (31)   Twin Cities Bakery Drivers Health & Welfare Fund (the

5    "Bakery Drivers Plan"). Plaintiffs are informed and believe that Defendant

6    Bakery Drivers Plan is an employer-sponsored welfare plan capable of suing

7    and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d).

8    The principal place of business of the Bakery Drivers Plan is 2919 Eagandale

9    Boulevard, Suite 120, Eagan, Minnesota 55121.

10        (32)   Verizon National PPO West (the "Verizon Plan"). Plaintiffs are

11   informed and believe that Defendant Verizon Plan is an employer-sponsored

12   welfare plan capable of suing and being sued pursuant to section 502(d) of

13   ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Verizon

14   Plan is One Verizon Way, Basking Ridge, New Jersey 07920.

15        (33)   Vertical Search Works, Inc. Medical Plan (the "Vertical Plan").

16   Plaintiffs are informed and believe that Defendant Vertical Plan is an

17   employer-sponsored welfare plan capable of suing and being sued pursuant to

18   section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of

19   business of the Vertical Plan is 1919 Gallows Road, Suite 1050, Vienna,

20   Virginia 22182.

21        (34)   ViaSat, Inc. Employee Benefit Plan (the "ViaSat Plan").

22   Plaintiffs are informed and believe that Defendant ViaSat Plan is an

23   employer-sponsored welfare plan capable of suing and being sued pursuant to

24   section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of

25   business of the ViaSat Plan is 6155 El Camino Real, Carlsbad, California

26   92009.

27

28

Stris &
Maher LLP

1         (35)   Wal-Mart Stores, Inc. Associates Health & Welfare Plan (the

2    "Wal-Mart Plan"). Plaintiffs are informed and believe that Defendant Wal-

3    Mart Plan is an employer-sponsored welfare plan capable of suing and being

4    sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The

5    principal place of business of the Wal-Mart Plan is 508 Southwest 8th Street,

6    Bentonville, Arkansas 72716.

7         (36)   WebMD Health and Welfare Plan (the "WebMD Plan").

8    Plaintiffs are informed and believe that Defendant WebMD Plan is an

9    employer-sponsored welfare plan capable of suing and being sued pursuant to

10   section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of

11   business of the WebMD Plan is 111 Eighth Avenue, 7th Floor, New York,

12   New York 10011.

13        (37)   Wells Fargo & Company Health Plan (the "WF Plan"). Plaintiffs

14   are informed and believe that Defendant WF Plan is an employer-sponsored

15   welfare plan capable of suing and being sued pursuant to section 502(d) of

16   ERISA, 29 U.S.C. § 1132(d). The principal place of business of the WF Plan

17   is Wells Fargo & Company, 333 Market Street, MAC A0109-080, 8th Floor,

18   San Francisco, California 94105.

19        (38)   Xerox Business Services, LLC Funded Welfare Benefit Plan

20   (the "Xerox Plan"). Plaintiffs are informed and believe that Defendant Xerox

21   Plan is an employer-sponsored welfare plan capable of suing and being sued

22   pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

23   place of business of the Xerox Plan is 1303 Ridgeview, R382-LV301,

24   Lewisville, Texas 75057.

25        (39)   GKN Employee Welfare Benefit Plan (the "GKN Plan").

26   Plaintiffs are informed and believe that Defendant GKN Plan is an employer-

27   sponsored welfare plan capable of suing and being sued pursuant to section

28   

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the GKN Plan is 1150 West Bradley Avenue, El Cajon, California 92020.

(40)   <u>ION Geophysical Corporation Group Health Plan</u> (the "ION Geophysical Plan"). Plaintiffs are informed and believe that Defendant ION Geophysical Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the ION Geophysical Plan is 2105 City West Boulevard, Suite 400, Houston, Texas 77042.

(41)   <u>Xerox Corporation Welfare Plan</u> (the "Xerox Corp. Plan"). Plaintiffs are informed and believe that Defendant Xerox Corp. Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Xerox Corp. Plan is 45 Glover Avenue, Norwalk, Connecticut 06856.

(42)   <u>The Lilly Employee Welfare Plan</u> (the "Eli Lilly Plan"). Plaintiffs are informed and believe that Defendant Eli Lilly Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Eli Lilly Plan is Lilly Corporate Center, Indianapolis, Indiana 46285.

(43)   <u>Blue Cross & Blue Shield of Arizona, Inc. Employee Health Plan</u> (the "BCBSAZ Employee Plan"). Plaintiffs are informed and believe that Defendant BCBSAZ Employee Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the BCBSAZ Employee Plan is 8220 N. 23rd Avenue, Phoenix, Arizona 85021.

Stris &
Maher LLP

(44)   <u>HL Financial Services, LLC Employee Benefits Plan</u> (the "Hilliard Lyons Plan").  Plaintiffs are informed and believe that Defendant Hilliard Lyons Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Hilliard Lyons Plan is 500 West Jefferson Street, Suite 700, Louisville, Kentucky 40202.

(45)   <u>NHS Human Services Welfare Plan</u> (the "NHS Plan"). Plaintiffs are informed and believe that Defendant NHS Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the NHS Plan is 620 E. Germantown Pike, Lafayette Hill, Pennsylvania 19444.

(46)   <u>The Master Builders Association Health Insurance Trust</u> (the "Master Builders Plan"). Plaintiffs are informed and believe that Defendant Master Builders Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Master Builders Plan is 335 116th Avenue S.E., Bellevue, Washington 98004.

(47)   <u>Nordstrom, Inc. Welfare Benefit Plan</u> (the "Nordstrom Plan"). Plaintiffs are informed and believe that Defendant Nordstrom Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Nordstrom Plan is 1617 Seventh Avenue, Suite 2600, Seattle, Washington 98101.

(48)   <u>Home Depot Welfare Benefits Plan</u> (the "Home Depot Plan"). Plaintiffs are informed and believe that Defendant Home Depot Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of

Stris & Maher LLP

24

business of the Home Depot Plan is 2455 Ferry Road, Atlanta, Georgia 30339.

(49) <u>Rocket Software Group Insurance Benefits Plan</u> (the "Rocket Software Plan"). Plaintiffs are informed and believe that Defendant Rocket Software Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Rocket Software Plan is 77 4th Avenue, Suite 100, Waltham, Massachusetts 02451.

(50) <u>Integra Telecom, Inc. Health & Welfare Plan</u> (the "Integra Plan"). Plaintiffs are informed and believe that Defendant Integra Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Integra Plan is 18110 S.E. 34th Street, Building One, Suite 100, Vancouver, Washington 98683.

(51) <u>Time Warner Cable Benefits Plan</u> (the "Time Warner Plan"). Plaintiffs are informed and believe that Defendant Time Warner Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Time Warner Plan is 7820 Crescent Executive Drive, Charlotte, North Carolina 28217.

(52) <u>IESI Corporation Employee Welfare Benefits Plan</u> (the "IESI Corp. Plan"). Plaintiffs are informed and believe that Defendant IESI Corp. Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the IESI Corp. Plan is 2301 Eagle Parkway, Suite 200, Fort Worth, Texas 76177.

(53)   <u>Peak 10, Inc. Employee Benefit Plan</u> (the "Peak 10 Plan"). Plaintiffs are informed and believe that Defendant Peak 10 Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Peak 10 Plan is 8809 Lenox Pointe Drive, Suite A, Charlotte, North Carolina 28273.

(54)   <u>Peak Finance Company Group Health Plan</u> (the "Peak Finance Plan").  Plaintiffs are informed and believe that Defendant Peak Finance Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Peak Finance Plan is 5900 Canoga Avenue, Suite 200, Woodland Hills, California 91367.

(55)   <u>Dycom Industries Health and Welfare Plan</u> (the "Dycom Plan"). Plaintiffs are informed and believe that Defendant Dycom Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Dycom Plan is 11780 U.S. Highway 1, Suite 101, Palm Beach Gardens, Florida 33408.

(56)   <u>Medtronic, Inc. Group Insurance Plan</u> (the "Medtronic Plan"). Plaintiffs are informed and believe that Defendant Medtronic Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Medtronic Plan is 710 Medtronic Parkway N.E., LC245, Minneapolis, Minnesota 55432.

(57)   <u>PepsiCo Employee Health Care Program</u> (the "PepsiCo Plan"). Plaintiffs are informed and believe that Defendant PepsiCo Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to

Stris &
Maher LLP

26

section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the PepsiCo Plan is 700 Anderson Hill Road, Purchase, New York 10577.

(58) <u>Follett Corporation Employees Benefit Trust</u> (the "Follett Plan"). Plaintiffs are informed and believe that Defendant Follett Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Follett Plan is 3 Westbrook Corporate Center, Westchester, Illinois 60154.

(59) <u>Ogletree, Deakins, Nash, Smoak & Stewart, P.C. Group Medical Plan</u> (the "Ogletree Deakins Plan"). Plaintiffs are informed and believe that Defendant Ogletree Deakins Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Ogletree Deakins Plan is 300 N. Main Street, Greenville, South Carolina 29601.

(60) <u>WaferTech LLC Health & Welfare Plan</u> (the "WaferTech Plan"). Plaintiffs are informed and believe that Defendant WaferTech Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the WaferTech Plan is 5509 N.W. Parker Street, Camas, Washington 98607.

(61) <u>Alaska Air Group, Inc. Welfare Benefit Plan</u> (the "Alaska Air Plan"). Plaintiffs are informed and believe that Defendant Alaska Air Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Alaska Air Plan is 19300 International Boulevard, Seattle, Washington 98188.

Stris & Maher LLP

1    (62)   <u>FNB Corporation Health and Welfare Plan</u> (the "FNB Corp. Plan"). Plaintiffs are informed and believe that Defendant FNB Corp. Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the FNB Corp. Plan is 1 South Hermitage Road, Hermitage, Pennsylvania 16148.

7    (63)   <u>LeCroy Health and Disability Benefit Plan</u> (the "LeCroy Plan"). Plaintiffs are informed and believe that Defendant LeCroy Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the LeCroy Plan is 700 Chestnut Ridge Road, Chestnut Ridge, New York 10977.

13   (64)   <u>Simmons Welfare Benefit Plan</u> (the "Simmons Plan"). Plaintiffs are informed and believe that Defendant Simmons Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Simmons Plan is 3560 Lenox Road, Suite 1100, Atlanta, Georgia 30326.

18   (65)   <u>MediaNews Group Welfare Benefits Plan</u> (the "MediaNews Plan"). Plaintiffs are informed and believe that Defendant MediaNews Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the MediaNews Plan is 101 West Colfax Avenue, Suite 1100, Denver, Colorado 80202.

24   (66)   <u>Ascension SmartHealth Medical Plan</u> (the "Ascension Plan"). Plaintiffs are informed and believe that Defendant Ascension Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of

Stris & Maher LLP

28

28

1   business of the Ascension Plan is 101 S. Hanley Road, Suite 200, St. Louis,

2   Missouri 63105.

3       (67)   Sallie Mae Employees Comprehensive Welfare Benefits Plan

4   (the "Sallie Mae Plan"). Plaintiffs are informed and believe that Defendant

5   Sallie Mae Plan is an employer-sponsored welfare plan capable of suing and

6   being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The

7   principal place of business of the Sallie Mae Plan is 300 Continental Drive,

8   Newark, Delaware 19713.

9       (68)   Active Power, Inc. Health and Welfare Plan (the "Active Power

10  Plan"). Plaintiffs are informed and believe that Defendant Active Power Plan

11  is an employer-sponsored welfare plan capable of suing and being sued

12  pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

13  place of business of the Active Power Plan is 2128 W. Braker Lane, BK12,

14  Austin, Texas 78758.

15      (69)   Machinists Health & Welfare Trust Fund (the "Machinists

16  Plan"). Plaintiffs are informed and believe that Defendant Machinists Plan is

17  an employer-sponsored welfare plan capable of suing and being sued

18  pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

19  place of business of the Machinists Plan is 9125 15th Place S., Seattle,

20  Washington 98108.

21      (70)   Mueller Water Products, Inc. Flexible Benefits Plan (the

22  "Mueller Plan"). Plaintiffs are informed and believe that Defendant Mueller

23  Plan is an employer-sponsored welfare plan capable of suing and being sued

24  pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

25  place of business of the Mueller Plan is 1200 Abernathy Road N.E., Suite

26  1200, Atlanta, Georgia 30328.

27

28

Stris &
Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

1    (71)   <u>CNS Health and Welfare Benefits Plan</u> (the "CNS Plan").
2    Plaintiffs are informed and believe that Defendant CNS Plan is an employer-
3    sponsored welfare plan capable of suing and being sued pursuant to section
4    502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the
5    CNS Plan is 5215 Ashe Road, Bakersfield, California 93313.

6    (72)   <u>Alliant Insurance Services Welfare Benefits Plan</u> (the "Alliant
7    Plan").  Plaintiffs are informed and believe that Defendant Alliant Plan is an
8    employer-sponsored welfare plan capable of suing and being sued pursuant to
9    section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of
10   business of the Alliant Plan is 1301 Dove Street, Suite 200, Newport Beach,
11   California 92660.

12   (73)   <u>Publix Super Markets, Inc. Group Health Benefit Plan</u> (the
13   "Publix Plan").  Plaintiffs are informed and believe that Defendant Publix
14   Plan is an employer-sponsored welfare plan capable of suing and being sued
15   pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal
16   place of business of the Publix Plan is 3300 Publix Corporate Parkway,
17   Lakeland, Florida 33811.

18   (74)   <u>Community Health Systems Group Health Plan</u> (the "CHS
19   Group Plan"). Plaintiffs are informed and believe that Defendant CHS Group
20   Plan is an employer-sponsored welfare plan capable of suing and being sued
21   pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal
22   place of business of the CHS Group Plan is 4000 Meridian Boulevard,
23   Franklin, Tennessee 37067.

24   (75)   <u>USUI International Group Health & Welfare Plan</u> (the "USUI
25   Plan").  Plaintiffs are informed and believe that Defendant USUI Plan is an
26   employer-sponsored welfare plan capable of suing and being sued pursuant to

27

28

Stris &
Maher LLP

section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the USUI Plan is 88 Partnership Way, Sharonville, Ohio 45241.

(76)   Transport Corporation of America, Inc. Employee Health and Welfare Benefit Plan (the "Transport America Plan").  Plaintiffs are informed and believe that Defendant Transport America Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Transport America Plan is 1715 Yankee Doodle Road, Eagan, Minnesota 55121.

(77)   Ardent Health Services Welfare Benefit Plan (the "Ardent Plan").  Plaintiffs are informed and believe that Defendant Ardent Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Ardent Plan is 1 Burton Hills Boulevard, Suite 250, Nashville, Tennessee 37215.

(78)   Frank Calandra, Inc. Medical Plan (the "JENNMAR Plan"). Plaintiffs are informed and believe that Defendant JENNMAR Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the JENNMAR Plan is 258 Kappa Drive, Pittsburgh, Pennsylvania 15238.

(79)   National Medical Care, Inc. Group Medical, Dental, Life and AD&D Plan (the "Fresenius Plan").  Plaintiffs are informed and believe that Defendant Fresenius Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Fresenius Plan is 920 Winter Street, Waltham, Massachusetts 02451.

Stris &
Maher LLP

(80)   The Steak N Shake Employee Benefit Plan (the "Steak N Shake Plan").   Plaintiffs are informed and believe that Defendant Steak N Shake Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Steak N Shake Plan is 107 South Pennsylvania Avenue, Suite 400, Indianapolis, Indiana 46204.

(81)   Henry Schein, Inc. Dependent and Medical Flexible Spending Account Plan (the "Schein Plan").   Plaintiffs are informed and believe that Defendant Schein Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Schein Plan is 135 Duryea Road, Melville, New York 11747.

(82)   Liberty Mutual Medical Plan (the "Liberty Plan").   Plaintiffs are informed and believe that Defendant Liberty Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Liberty Plan is 175 Berkeley Street, Boston, Massachusetts 02116.

(83)   Corrections Corporation of America SCA Employees Benefit Plan (the "Corrections Corp. Plan").   Plaintiffs are informed and believe that Defendant Corrections Corp. Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Corrections Corp. Plan is 10 Burton Hills Boulevard, Nashville, Tennessee 37215.

(84)   The Southwest Shipyard, LP Cafeteria Plan (the "S.W. Shipyard Plan").   Plaintiffs are informed and believe that Defendant S.W. Shipyard Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

Stris & Maher LLP

place of business of the S.W. Shipyard Plan is 18310 Market Street, Channelview, Texas 77530.

(85)   F5 Networks, Inc. Employee Benefit Plan (the "F5 Plan"). Plaintiffs are informed and believe that Defendant F5 Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the F5 Plan is 401 Elliott Avenue West, Seattle, Washington 98119.

(86)   MDU Resources Group, Inc. Health and Welfare Benefits Program (the "MDU Plan").   Plaintiffs are informed and believe that Defendant MDU Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the MDU Plan is 1200 W. Century Avenue, Bismarck, North Dakota 58503.

(87)   Employees' Benefit Plan of General Mills, Inc. (the "General Mills Plan"). Plaintiffs are informed and believe that Defendant General Mills Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the General Mills Plan is 1 General Mills Boulevard, BT02-C, Minneapolis, Minnesota 55426.

(88)   Group Welfare Plan for Quest Diagnostics Incorporated (the "Quest Plan").   Plaintiffs are informed and believe that Defendant Quest Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Quest Plan is 1290 Wall Street West, Lyndhurst, New Jersey 07071.

(89)   Northrop Grumman Corporation Group Benefits Plan (the "Northrop Grumman Plan").   Plaintiffs are informed and believe that

Stris &
Maher LLP

28

33

1   Defendant Northrop Grumman Plan is an employer-sponsored welfare plan
2   capable of suing and being sued pursuant to section 502(d) of ERISA, 29
3   U.S.C. § 1132(d). The principal place of business of the Northrop Grumman
4   Plan is 2980 Fairview Park Drive, Falls Church, Virginia 22042.

5        (90)   Sierra Nevada Brewing Co. Welfare Benefits Plan (the "Sierra
6   Nevada Plan").  Plaintiffs are informed and believe that Defendant Sierra
7   Nevada Plan is an employer-sponsored welfare plan capable of suing and
8   being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The
9   principal place of business of the Sierra Nevada Plan is 1075 East 20th Street,
10  Chico, California 95928.

11       (91)   Rayonier, Inc. Welfare Plans (the "Rayonier Plan").  Plaintiffs
12  are informed and believe that Defendant Rayonier Plan is an employer-
13  sponsored welfare plan capable of suing and being sued pursuant to section
14  502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the
15  Rayonier Plan is 225 Water Street, Suite 1400, Jacksonville, Florida 32202.

16       (92)   NECA/IBEW Family Medical Care Plan (the "NECA/IBEW
17  Plan").  Plaintiffs are informed and believe that Defendant NECA/IBEW
18  Plan is an employer-sponsored welfare plan capable of suing and being sued
19  pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal
20  place of business of the NECA/IBEW Plan is 5837 Highway 41 North,
21  Ringgold, Georgia 30736.

22       (93)   Randall S. Fudge P.C. Employee Benefits Plan (the "Fudge
23  Plan").  Plaintiffs are informed and believe that Defendant Fudge Plan is an
24  employer-sponsored welfare plan capable of suing and being sued pursuant to
25  section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of
26  business of the Fudge Plan is 4801 Classen Boulevard, Suite 202, Oklahoma
27  City, Oklahoma 73118.

28

Stris &
Maher LLP

34

1    (94)   Gentiva Health Services Health & Welfare Plan (the "Gentiva

2    Plan").  Plaintiffs are informed and believe that Defendant Gentiva Plan is an

3    employer-sponsored welfare plan capable of suing and being sued pursuant to

4    section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of

5    business of the Gentiva Plan is 3350 Riverwood Parkway, Suite 1400,

6    Atlanta, Georgia 30339.

7    (95)   eHealth Welfare Plan (the "eHealth Plan").   Plaintiffs are

8    informed and believe that Defendant eHealth Plan is an employer-sponsored

9    welfare plan capable of suing and being sued pursuant to section 502(d) of

10   ERISA, 29 U.S.C. § 1132(d). The principal place of business of the eHealth

11   Plan is 440 E. Middlefield Road, Mountain View, California 94043.

12   (96)   Fastrac Markets LLC Employee Welfare Benefit Plan (the

13   "Fastrac Plan").  Plaintiffs are informed and believe that Defendant Fastrac

14   Plan is an employer-sponsored welfare plan capable of suing and being sued

15   pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

16   place of business of the Fastrac Plan is 6500 New Venture Gear Road, E.

17   Syracuse, New York 13057.

18   (97)   Ferguson Enterprises Inc. Flexible Benefits Plan (the "Ferguson

19   Plan").  Plaintiffs are informed and believe that Defendant Ferguson Plan is

20   an employer-sponsored welfare plan capable of suing and being sued

21   pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

22   place of business of the Ferguson Plan is 12500 Jefferson Avenue, Newport

23   News, Virginia 23602.

24   (98)   Sacred Heart University's Group Health Insurance Benefit Plan

25   (the "Sacred Heart Plan").  Plaintiffs are informed and believe that Defendant

26   Sacred Heart Plan is an employer-sponsored welfare plan capable of suing

27   and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d).

28

Stris &
Maher LLP

35

The principal place of business of the Sacred Heart Plan is 5151 Park Avenue, Fairfield, Connecticut 06825.

(99)   Pioneer Energy Services Corp. Group Health Plan (the "Pioneer Energy Plan").   Plaintiffs are informed and believe that Defendant Pioneer Energy Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Pioneer Energy Plan is 1250 N.E. Loop 410, Suite 1000, San Antonio, Texas 78209.

(100)  The Kroger Co. Health & Welfare Benefit Plan (the "Kroger Plan").  Plaintiffs are informed and believe that Defendant Kroger Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Kroger Plan is 1014 Vine Street, Cincinnati, Ohio 45202.

(101)  The Hartford Fire Insurance Company Employee Medical and Dental Expense Benefits Plan (the "Hartford Plan").  Plaintiffs are informed and believe that Defendant Hartford Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Hartford Plan is One Hartford Plaza, H01-142, Hartford, Connecticut 06155.

(102)  Bloomberg LP Health and Welfare Plan (the "Bloomberg Plan").  Plaintiffs are informed and believe that Defendant Bloomberg Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Bloomberg Plan is 731 Lexington Avenue, New York, New York 10022.

(103)  Intel Corporation Health and Welfare Benefit Plan (the "Intel Plan").  Plaintiffs are informed and believe that Defendant Intel Plan is an

Stris & Maher LLP

28

36

employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Intel Plan is 1600 Rio Rancho Boulevard, Rio Rancho, New Mexico 87124.

(104) <u>St. Luke's Lutheran Care Center Employee Health Care Plan</u> (the "St. Luke's Plan").  Plaintiffs are informed and believe that Defendant St. Luke's Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the St. Luke's Plan is 1219 South Ramsey Street, Blue Earth, Minnesota 56013.

(105) <u>Bank of the West Employee Benefit Plan</u> (the "Bank of the West Plan").  Plaintiffs are informed and believe that Defendant Bank of the West Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Bank of the West Plan is 300 South Grand Avenue, Suite 600, Los Angeles, California 90071.

(106) <u>TAC Manufacturing, Inc. Employee Welfare Benefit Plan</u> (the "TAC Plan").  Plaintiffs are informed and believe that Defendant TAC Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the TAC Plan is 4111 County Farm Road, Jackson, Michigan 49201.

(107) <u>Inlandboatmen's Union of the Pacific National Health Benefit Trust</u> (the "IBU Health Plan").  Plaintiffs are informed and believe that Defendant IBU Health Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C.

1    § 1132(d). The principal place of business of the IBU Health Plan is 1220

2    S.W. Morrison Street, Suite 300, Portland, Oregon 97205.

3        (108) <u>Cargotec Holding, Inc. Group Health & Welfare Plan</u> (the

4    "HIAB Plan").  Plaintiffs are informed and believe that Defendant HIAB

5    Plan is an employer-sponsored welfare plan capable of suing and being sued

6    pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

7    place of business of the HIAB Plan is 12233 William Road, Perrysburg, Ohio

8    43351.

9        (109) <u>Sheet Metal Workers' Local No. 40 Health Fund</u> (the "SMW

10   No. 40 Plan").  Plaintiffs are informed and believe that Defendant SMW No.

11   40 Plan is an employer-sponsored welfare plan capable of suing and being

12   sued   pursuant   to   section   502(d)   of   ERISA,   29   U.S.C.

13   § 1132(d). The principal place of business of the SMW No. 40 Plan is 100

14   Old Forge Road, Rocky Hill, Connecticut 06067.

15       (110) <u>The Aerospace Corporation Group Hospital-Medical Plan</u> (the

16   "Aerospace Plan").   Plaintiffs are informed and believe that Defendant

17   Aerospace Plan is an employer-sponsored welfare plan capable of suing and

18   being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The

19   principal place of business of the Aerospace Plan is 2310 E. El Segundo

20   Boulevard, El Segundo, California 90245.

21       (111) <u>Albertson's LLC Health & Welfare Plan</u> (the "Albertson's

22   Plan").  Plaintiffs are informed and believe that Defendant Albertson's Plan

23   is an employer-sponsored welfare plan capable of suing and being sued

24   pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

25   place of business of the Albertson's Plan is 250 Parkcenter Boulevard, Boise,

26   Idaho 83706.

27

28

Stris &
Maher LLP

1    (112) <u>Spokane Teachers Credit Union Employee Medical & Dental</u> <u>Plan</u> (the "STCU Plan").  Plaintiffs are informed and believe that Defendant STCU Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the STCU Plan is 1620 North Signal Drive, Liberty Lake, Washington 99019.

(113) <u>Construction Industry Laborers Welfare Fund</u> (the "CIL Plan"). Plaintiffs are informed and believe that Defendant CIL Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the CIL Plan is 6405 Metcalf, Suite 200, Overland Park, Kansas 66202.

(114) <u>Intevac Life and Welfare Plan</u> (the "Intevac Plan").  Plaintiffs are informed and believe that Defendant Intevac Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Intevac Plan is 3560 Bassett Street, Santa Clara, California 95054.

(115) <u>Midwest Operating Engineers Welfare Fund Retiree Health and</u> <u>Welfare Plan</u> (the "MOE Fund Retiree Plan").  Plaintiffs are informed and believe that Defendant MOE Fund Retiree Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the MOE Fund Retiree Plan is 6150 Joliet Road, Countryside, Illinois 60525.

(116) <u>University of Nebraska Foundation Welfare Benefits Plan</u> (the "Nebraska Foundation Plan").  Plaintiffs are informed and believe that Defendant Nebraska Foundation Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

U.S.C. § 1132(d). The principal place of business of the Nebraska Foundation Plan is 1010 Lincoln Mall, Lincoln, Nebraska 68501.

(117) <u>Tenet Employee Benefit Plan</u> (the "Tenet Plan"). Plaintiffs are informed and believe that Defendant Tenet Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Tenet Plan is 1445 Ross Avenue, Suite 1400, Dallas, Texas 75202.

(118) <u>The Lincoln Electric Company Welfare Benefits Plan</u> (the "Lincoln Electric Plan"). Plaintiffs are informed and believe that Defendant Lincoln Electric Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Lincoln Electric Plan is 22801 St. Clair Avenue, Cleveland, Ohio 44117.

(119) <u>Interrail Signals, Inc. Welfare Benefit Plan</u> (the "Interrail Plan"). Plaintiffs are informed and believe that Defendant Interrail Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Interrail Plan is 12443 San Jose Boulevard, Suite 1103, Jacksonville, Florida 32223.

(120) <u>United Surgical Partners, Intl Welfare Benefit Plan</u> (the "Surgical Partners Plan"). Plaintiffs are informed and believe that Defendant Surgical Partners Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Surgical Partners Plan is 15305 Dallas Parkway, Suite 1600, LB 28, Addison, Texas 75001.

(121) <u>Kentucky Construction Industry Trust</u> (the "Kentucky Construction Plan"). Plaintiffs are informed and believe that Defendant

Stris &
Maher LLP

40

1    Kentucky Construction Plan is an employer-sponsored welfare plan capable

2    of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C.

3    § 1132(d). The principal place of business of the Kentucky Construction Plan

4    is 333 West Vine Street, Lexington, Kentucky 40507.

5        (122) General Nutrition Group Insurance Plan (the "GNC Plan").

6    Plaintiffs are informed and believe that Defendant GNC Plan is an employer-

7    sponsored welfare plan capable of suing and being sued pursuant to section

8    502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the

9    GNC Plan is 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

10       (123) SCANA Corporation Health & Welfare Plan (the "SCANA

11   Plan").  Plaintiffs are informed and believe that Defendant SCANA Plan is an

12   employer-sponsored welfare plan capable of suing and being sued pursuant to

13   section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of

14   business of the SCANA Plan is 220 Operation Way, Cayce, South Carolina

15   29033.

16       (124) Ensco Health Plan (the "Ensco Plan").  Plaintiffs are informed

17   and believe that Defendant Ensco Plan is an employer-sponsored welfare

18   plan capable of suing and being sued pursuant to section 502(d) of ERISA,

19   29 U.S.C. § 1132(d). The principal place of business of the Ensco Plan is

20   5847 San Felipe, Suite 3300, Houston, Texas 77057.

21       (125) Metal-Matic, Inc. Welfare Benefit Plan (the "Metal-Matic

22   Plan").  Plaintiffs are informed and believe that Defendant Metal-Matic Plan

23   is an employer-sponsored welfare plan capable of suing and being sued

24   pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

25   place of business of the Metal-Matic Plan is 629 Second Street S.E.,

26   Minneapolis, Minnesota 55414.

27

28

Stris &
Maher LLP

1    (126) <u>Layne Christensen Company Health and Welfare Plan</u> (the "Layne Plan").  Plaintiffs are informed and believe that Defendant Layne Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Layne Plan is 1800 Hughes Landing Boulevard, Suite 700, The Woodlands, Texas 77380.

2    (127) <u>Limited Brands, Inc. Health and Welfare Benefits Plan</u> (the "L-Brands Plan").  Plaintiffs are informed and believe that Defendant L-Brands Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the L-Brands Plan is Three Limited Parkway, Columbus, Ohio 43230.

3    (128) <u>Asante Employee Benefits Plan</u> (the "Asante Plan").  Plaintiffs are informed and believe that Defendant Asante Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Asante Plan is 2650 Siskiyou Boulevard, Medford, Oregon 97504.

4    (129) <u>Nature's Path Foods, Inc. Welfare Benefit Plan</u> (the "Nature's Path Plan").  Plaintiffs are informed and believe that Defendant Nature's Path Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Nature's Path Plan is 9100 Van Horne Way, Richmond, BC V6X 1W3, Canada.

5    (130) <u>Southern California IBEW-NECA Health Trust Fund</u> (the "So. Cal. IBEW-NECA Plan").  Plaintiffs are informed and believe that Defendant So. Cal. IBEW-NECA Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C.

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

1   § 1132(d). The principal place of business of the So. Cal. IBEW-NECA Plan

2   is 6023 Garfield Avenue, Commerce, California 90040.

3       (131) <u>Bimbo Bakeries USA Health and Welfare Plan</u> (the "Bimbo

4   Plan").  Plaintiffs are informed and believe that Defendant Bimbo Plan is an

5   employer-sponsored welfare plan capable of suing and being sued pursuant to

6   section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of

7   business of the Bimbo Plan is 225 Business Center Drive, Horsham,

8   Pennsylvania 19044.

9       (132) <u>Sage Software Inc. and Co-Sponsoring Affiliates Health and</u>

10  <u>Welfare Plan</u> (the "Sage Software Plan).  Plaintiffs are informed and believe

11  that Defendant Sage Software Plan is an employer-sponsored welfare plan

12  capable of suing and being sued pursuant to section 502(d) of ERISA, 29

13  U.S.C. § 1132(d). The principal place of business of the Sage Software Plan

14  is 6561 Irvine Center Drive, Irvine, California 92618.

15      (133) <u>Bayhealth Medical Center Employee Health and Dental</u>

16  <u>Insurance Plan</u> (the "Bayhealth Plan").  Plaintiffs are informed and believe

17  that Defendant Bayhealth Plan is an employer-sponsored welfare plan

18  capable of suing and being sued pursuant to section 502(d) of ERISA, 29

19  U.S.C. § 1132(d). The principal place of business of the Bayhealth Plan is

20  640 South State Street, Dover, Delaware 19901.

21      (134) <u>Portland Area UFCW Local 555-Employers Health Plan</u> (the

22  "Portland UFCW Plan").  Plaintiffs are informed and believe that Defendant

23  Portland UFCW Plan is an employer-sponsored welfare plan capable of suing

24  and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d).

25  The principal place of business of the Portland UFCW Plan is 7600 S.W.

26  Mohawk Street, Tualatin, Oregon 97062.

27

28

Stris &
Maher LLP

43

(135) <u>TriNet Employee Benefit Insurance Plan</u> (the "TriNet Plan"). Plaintiffs are informed and believe that Defendant TriNet Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the TriNet Plan is 1100 San Leandro Boulevard, Suite 300, San Leandro, California 94577.

(136) <u>U.S. LBM Holdings, LLC Employee Benefit Plan</u> (the "LBM Holdings Plan"). Plaintiffs are informed and believe that Defendant LBM Holdings Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the LBM Holdings Plan is 1990 Larsen Road, Green Bay, Wisconsin 54303.

(137) <u>U.S. Renal Care, Inc. Welfare Benefit Plan</u> (the "U.S. Renal Plan"). Plaintiffs are informed and believe that Defendant U.S. Renal Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the U.S. Renal Plan is 2400 Dallas Parkway, Suite 350, Plano, Texas 75093.

(138) <u>Yates Petroleum Corporation, et al. Flexible Benefits Cafeteria Plan</u> (the "Yates Petroleum Plan"). Plaintiffs are informed and believe that Defendant Yates Petroleum Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Yates Petroleum Plan is 105 S. 4th Street, Artesia, New Mexico 88210.

(139) <u>United States Steel Plan for Active Employee Insurance Benefits</u> (the "U.S. Steel Plan"). Plaintiffs are informed and believe that Defendant U.S. Steel Plan is an employer-sponsored welfare plan capable of suing and

Stris &
Maher LLP

44

1    being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The

2    principal place of business of the U.S. Steel Plan is 600 Grant Street, Room

3    2643, Pittsburgh, Pennsylvania 15219.

4        (140) <u>Puget Sound Pilots Group Health Plan</u> (the "Puget Sound Pilots

5    Plan").   Plaintiffs are informed and believe that Defendant Puget Sound

6    Pilots Plan is an employer-sponsored welfare plan capable of suing and being

7    sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The

8    principal place of business of the Puget Sound Pilots Plan is First & Stewart

9    Building, 101 Stewart Street, Suite 900, Seattle, Washington 98101.

10       (141) <u>Ameriflight, LLC Group Life & Health Insurance Plan</u> (the

11   "Ameriflight Plan").   Plaintiffs are informed and believe that Defendant

12   Ameriflight Plan is an employer-sponsored welfare plan capable of suing and

13   being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The

14   principal place of business of the Ameriflight Plan is 4700 Empire Avenue,

15   Hangar 1, Burbank, California 91505.

16       (142) <u>Morris Bart Employee Benefits Plan</u> (the "Bart Plan").

17   Plaintiffs are informed and believe that Defendant Bart Plan is an employer-

18   sponsored welfare plan capable of suing and being sued pursuant to section

19   502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the

20   Bart Plan is 909 Poydras Street, Suite 2000, New Orleans, Louisiana 70112.

21       (143) <u>Globecast Health and Welfare Benefits Plan</u> (the "Globecast

22   Plan").  Plaintiffs are informed and believe that Defendant Globecast Plan is

23   an employer-sponsored welfare plan capable of suing and being sued

24   pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

25   place of business of the Globecast Plan is 10 East 40th Street, 11th Floor,

26   New York, New York 10016.

27

28

Stris &
Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

1      (144) <u>Globys, Inc. Group Health Plan</u> (the "Globys Plan"). Plaintiffs

2  are informed and believe that Defendant Globys Plan is an employer-

3  sponsored welfare plan capable of suing and being sued pursuant to section

4  502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the

5  Globys Plan is 705 5th Avenue South, Suite 700, Seattle, Washington 98104.

6      (145) <u>Cargill, Incorporated & Participating Affiliates Group Health</u>

7  <u>Plan</u> (the "Cargill Plan"). Plaintiffs are informed and believe that Defendant

8  Cargill Plan is an employer-sponsored welfare plan capable of suing and

9  being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The

10  principal place of business of the Cargill Plan is 15407 McGinty Road, Suite

11  15615, Wayzata, Minnesota 55391.

12      (146) <u>ACWA/JPIA Employee Benefits Program</u> (the "ACWA/JPIA

13  Plan"). Plaintiffs are informed and believe that Defendant ACWA/JPIA Plan

14  is an employer-sponsored welfare plan capable of suing and being sued

15  pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

16  place of business of the ACWA/JPIA Plan is 2100 Professional Drive,

17  Roseville, California 95661.

18      (147) <u>The Dog Lady, LLC Group Health Plan</u> (the "Dog Lady Plan").

19  Plaintiffs are informed and believe that Defendant Dog Lady Plan is an

20  employer-sponsored welfare plan capable of suing and being sued pursuant to

21  section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of

22  business of the Dog Lady Plan is 11818 Teale Street, Culver City, California

23  90230.

24      (148) <u>University of Hawai'I / Chaminade University Student Plan</u> (the

25  "UH / Chaminade Plan").  Plaintiffs are informed and believe that Defendant

26  UH / Chaminade Plan is an employer-sponsored welfare plan capable of

27  suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. §

Stris &
Maher LLP

28

46

1132(d). The principal place of business of the UH / Chaminade Plan is 818 Keeaumoku Street, Honolulu, Hawai'i 96814.

(149) <u>HDR, Inc. Group Insurance Plan</u> (the "HDR Plan").  Plaintiffs are informed and believe that Defendant HDR Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the HDR Plan is 8404 Indian Hills Drive, Omaha, Nebraska 68114.

(150) <u>Bricklayers and Allied Craftworkers Local 1 PA / DE Health & Welfare Fund</u> (the "Bricklayers Plan"). Plaintiffs are informed and believe that Defendant Bricklayers Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Bricklayers Plan is 2706 Black Lake Place, Philadelphia, Pennsylvania 19154.

(151) <u>Profit Insight Holdings, LLC Group Health Plan</u> (the "Profit Plan").  Plaintiffs are informed and believe that Defendant Profit Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Profit Plan is 249 Williamson Road, Suite 200, Mooresville, North Carolina 28117.

(152) <u>Delta Kappa Gamma Society International Health Benefit Plan</u> (the "DKG Plan").  Plaintiffs are informed and believe that Defendant DKG Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the DKG Plan is 416 West 12th Street, Austin, Texas 78701.

(153) <u>Dirt Free Flood Services Inc. Health Benefit Plan</u> (the "Dirt Free Plan").  Plaintiffs are informed and believe that Defendant Dirt Free Plan is

Stris & Maher LLP

an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Dirt Free Plan is 901 E. Mulberry Street, Angleton, Texas 77515.

(154) <u>Einstein Noah Restaurant Group, Inc. Employee Benefit Plan</u> (the "Einstein Bagels Plan").  Plaintiffs are informed and believe that Defendant Einstein Bagels Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Einstein Bagels Plan is 555 Zang Street, Suite 300, Lakewood, Colorado 80228.

(155) <u>Northern California Sheet Metal Workers Health Care Plan</u> (the "Nor. Cal. SMW Plan").  Plaintiffs are informed and believe that Defendant Nor. Cal. SMW Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Nor. Cal. SMW Plan is 2610 Crow Canyon Road, Suite 200, San Ramon, California 94583.

(156) <u>Jennings American Legion Hospital Employee Benefit Plan</u> (the "Jennings Plan").  Plaintiffs are informed and believe that Defendant Jennings Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Jennings Plan is 1634 Elton Road, Jennings, Louisiana 70546.

(157) <u>Mercy Health Services, Inc. and Subsidiaries Medical Plan</u> (the "Mercy Plan").  Plaintiffs are informed and believe that Defendant Mercy Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal

Stris & Maher LLP

place of business of the Mercy Plan is 345 St. Paul Place, Baltimore, Maryland 21202.

(158) <u>Tucson Electric Power Company Employee Group Insurance Plan</u> (the "Tucson Electric Plan").  Plaintiffs are informed and believe that Defendant Tucson Electric Plan is an employer-sponsored welfare plan capable of suing and being sued pursuant to section 502(d) of ERISA, 29 U.S.C. § 1132(d). The principal place of business of the Tucson Electric Plan is 88 East Broadway Boulevard, Tucson, Arizona 85701.

(159) <u>DOES 1 through 10, inclusive</u>. Plaintiffs' efforts to identify the ERISA-governed welfare plans through which each Former Patient obtained health insurance are ongoing. This process is extremely time and resource intensive. Plaintiffs intend to amend this Complaint to include additional Welfare Plan Defendants if and when Plaintiffs ascertain their identities.

The one hundred and fifty-eight [158] welfare plans listed above are collectively referred to hereafter as the "Welfare Plan Defendants."

23.   **The Blue Cross Defendants.**  Plaintiffs are informed and believe that the Blue Cross and Blue Shield System is comprised of "[t]hirty-six independent and locally operated Blue Cross and Blue Shield companies and the Blue Cross and Blue Shield Association," which "owns and manages the Blue Cross and Blue Shield trademarks and names in more than 170 countries and territories around the world."  http://www.bcbs.com/about-the-association/ (last visited October 5, 2015). According to the Association's website, its member companies and their subsidiaries "deliver health insurance coverage for more than 105 million members across all 50 states, the District of Columbia and Puerto Rico." http://www.bcbs.com/about-the-companies/ (providing links to the website of 63 Association member companies or their subsidiaries) (last visited October 5, 2015). Plaintiffs are informed and believe that each and every Welfare Plan Defendant has

a contractual relationship with one or more of those 63 Association member companies or their subsidiaries that is relevant to the claims asserted in this lawsuit. Plaintiffs name as defendants the following forty-nine [49] of those companies:

(1)     Blue Cross and Blue Shield of Alabama ("Alabama Blue"). Plaintiffs are informed and believe that Alabama Blue is an active, domestic nonprofit corporation registered to do business in Alabama. Its principal place of business is located at 450 Riverchase Parkway East, Birmingham, Alabama 35244.

(2)     Premera Blue Cross Blue Shield of Alaska ("Alaska Blue"). Plaintiffs are informed and believe that Defendant Alaska Blue is registered as a hospital and medical service corporation in the state of Alaska.  Its principal place of business is located at 2550 Denali Street, Suite 1404, Anchorage, Alaska 99503.

(3)     Blue Cross and Blue Shield of Arizona, Inc. ("Arizona Blue"). Plaintiffs are informed and believe that Defendant Arizona Blue is a nonprofit corporation registered to do business in Arizona. Its principal place of business is located at 2444 West Las Palmaritas Drive, Phoenix, Arizona 85021.

(4)     USAble Mutual Insurance Company ("Arkansas Blue"). Plaintiffs are informed and believe that Defendant Arkansas Blue is a not-for-profit mutual insurance company, authorized to do business in the state of Arkansas. Defendant Arkansas Blue does business under the trade names Arkansas Blue Cross and Blue Shield and BlueAdvantage Administrators of Arkansas. Its principal place of business is located at 601 S. Gaines Street, Little Rock, Arkansas 72203.

(5)     Blue Cross of California ("California Blue Cross"). Plaintiffs are informed and believe that Defendant California Blue Cross is registered in

Stris &
Maher LLP

50

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

1   the state of California as a corporation and operates therein as a health

2   insurer. Defendant California Blue Cross does business under the trade name

3   Anthem Blue Cross.  Plaintiffs are informed and believe that California Blue

4   Cross also sometimes operates through one or more subsidiaries, including

5   Anthem Blue Cross Life and Health Insurance Company.  The principal place

6   of business of California Blue Cross is located at 21555 Oxnard Street,

7   Woodland Hills, California 91367.

8   (6)   <u>California Physicians' Service</u> ("California Blue Shield").

9   Plaintiffs are informed and believe that Defendant California Blue Shield is

10  registered to do business as a nonprofit mutual benefit corporation in the state

11  of California. Defendant California Blue Shield does business under the trade

12  name Blue Shield of California. Plaintiffs are informed and believe that

13  California Blue Shield also sometimes operates through one or more

14  subsidiaries, including Blue Shield of California Life & Health Insurance

15  Company, which does business under the trade name Blue Shield of

16  California.   The principal place of business of California Blue Shield is

17  located at 50 Beale Street, San Francisco, California 94105.

18  (7)   <u>Rocky Mountain Hospital and Medical Service, Inc</u>. ("Colorado

19  Blue"). Plaintiffs are informed and believe that Defendant Colorado Blue is a

20  nonprofit corporation, authorized to do business in the state of Colorado.

21  Defendant Colorado Blue does business under the trade names Anthem Blue

22  Cross and Blue Shield and Blue Cross and Blue Shield of Colorado. Its

23  principal place of business is located at 555 Middle Creek Parkway, Colorado

24  Springs, Colorado 80921.

25  (8)   <u>Anthem Health Plans, Inc</u>. ("Connecticut Blue"). Plaintiffs are

26  informed and believe that Defendant Connecticut Blue is a nonprofit

27  corporation, authorized to do business in the state of Connecticut. Defendant

28

Stris &
Maher LLP

51

Connecticut Blue does business under the trade name Anthem Blue Cross and Blue Shield. Its principal place of business is located at 370 Bassett Road, North Haven, Connecticut 06473.

(9)    Highmark BCBSD, Inc. ("Delaware Blue"). Plaintiffs are informed and believe that Defendant Delaware Blue is an active nonprofit corporation registered to do business in in the state of Delaware. Defendant Delaware Blue is an independent licensee of the Blue Cross and Blue Shield Association and a member of the Highmark Health Plans enterprise, operating under the trade name Highmark Blue Cross Blue Shield Delaware. Its principal place of business is located at 800 Delaware Avenue, Suite 900, Wilmington, Delaware 19801.

(10)   Group Hospitalization and Medical Services, Inc. ("CareFirst District of Columbia Blue"). Plaintiffs are informed and believe that Defendant CareFirst District of Columbia Blue is a not-for-profit corporation authorized to do business in the state of Virginia and the District of Columbia. Defendant CareFirst District of Columbia Blue does business under the trade name CareFirst BlueCross BlueShield. Its principal place of business is located at 840 First Street N.E., Washington D.C. 20065.

(11)   Blue Cross and Blue Shield of Florida, Inc. ("Florida Blue"). Plaintiffs are informed and believe that Defendant Florida Blue is an active Florida nonprofit corporation. Defendant Florida Blue formally does business under the trade name Florida Blue. Its principal place of business is located at 4800 Deerwood Campus Parkway, Jacksonville, Florida 32246.

(12)   Blue Cross and Blue Shield of Georgia, Inc. ("Georgia Blue"). Plaintiffs are informed and believe that Defendant Georgia Blue is registered to do business in Georgia as an active, health insurance corporation. Defendant Georgia Blue does business under the trade name Blue Cross and

Stris &
Maher LLP

Blue Shield of Georgia. Its principal place of business is located at 1201 Peachtree Street, N.E., Atlanta, Georgia 30361.

(13)   <u>Hawai'i Medical Service Association</u> ("Hawai'i Blue"). Plaintiffs are informed and believe that Defendant Hawai'i Blue is a mutual benefits society, authorized to do business in the state of Hawai'i. Defendant Hawai'i Blue does business under the trade name Blue Cross Blue Shield of Hawai'i. Its principal place of business is located at 818 Keeaumoku Street, Honolulu, Hawai'i 96814.

(14)   <u>Blue Cross of Idaho Health Service, Inc.</u> ("Idaho Blue"). Plaintiffs are informed and believe that Defendant Idaho Blue is a corporation formed under the laws of Idaho. Defendant Idaho Blue operates under the trade name Blue Cross of Idaho. Its principal place of business is located at 3000 East Pine Avenue, Meridian, Idaho 83642.

(15)   <u>Health Care Service Corporation, a Mutual Legal Reserve Company</u> ("Illinois Blue"). Plaintiffs are informed and believe that Defendant Illinois Blue is active and licensed to do business in the state of Illinois and does business there under the trade names BlueCross BlueShield of Illinois. Its corporate office is located at 300 East Randolph Street, Chicago, Illinois 60601.

(16)   <u>Anthem Insurance Companies, Inc.</u> ("Indiana Blue"). Plaintiffs are informed and believe that Defendant Indiana Blue is registered to do business in Indiana as a domestic insurance corporation. Indiana Blue does business under the trade name Anthem Blue Cross and Blue Shield. Its principal place of business is located at 120 Monument Circle, Indianapolis, Indiana 46204.

(17)   <u>Wellmark, Inc.</u> ("Iowa Blue"). Plaintiffs are informed and believe that Defendant Iowa Blue is incorporated in Iowa as an active

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

insurance company.  Defendant Iowa Blue does business under the trade name Wellmark Blue Cross and Blue Shield of Iowa.  Its principal place of business is located at 1331 Grant Avenue, Des Moines, Iowa 50309.

(18)   <u>Blue Cross and Blue Shield of Kansas, Inc.</u> ("Kansas Blue"). Plaintiffs are informed and believe that Defendant Kansas Blue is registered to do business as an insurance company in the state of Kansas. Defendant Kansas Blue does business under the trade name Blue Cross and Blue Shield of Kansas. Its principal place of business is located at 1133 S.W. Topeka Boulevard, Topeka, Kansas 66629.

(19)   <u>Anthem Health Plans of Kentucky, Inc.</u> ("Kentucky Blue"). Plaintiffs are informed and believe that Defendant Kentucky Blue is a corporation, authorized to do business in the state of Kentucky. Defendant Kentucky Blue does business under the trade name Anthem Blue Cross and Blue Shield. Its principal place of business is located at 13550 Triton Park Boulevard, Louisville, Kentucky 40223.

(20)   <u>Louisiana Health Service & Indemnity Company</u> ("Louisiana Blue"). Plaintiffs are informed and believe that Defendant Louisiana Blue is licensed to do business in Louisiana as an insurance entity. Defendant Louisiana Blue does business under the trade name Blue Cross and Blue Shield of Louisiana. Plaintiffs are informed and believe that Louisiana Blue also does business through one or more subsidiaries, including HMO Louisiana, Inc., which does business under the trade name Blue Cross and Blue Shield of Louisiana.  The principal place of business of Louisiana Blue is located at 5525 Reitz Avenue, Baton Rouge, Louisiana 70809.

(21)   <u>CareFirst of Maryland, Inc.</u> ("CareFirst Maryland Blue"). Plaintiffs are informed and believe that Defendant CareFirst Maryland Blue is a non-stock corporation, organized under the laws of Maryland.  Defendant

CareFirst Maryland Blue operates under the same ownership of, and <u>shares</u> the same employees with, Defendant CareFirst District of Columbia Blue. Defendant CareFirst Maryland Blue also does business under the trade name CareFirst BlueCross BlueShield.  Its principal place of business is located at Canton Tower, 1501 South Clinton Street, Baltimore, Maryland 21224.

(22) <u>Blue Cross and Blue Shield of Massachusetts, Inc.</u> and <u>Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.</u> ("Massachusetts Blue"). Plaintiffs are informed and believe that Defendant Massachusetts Blue is incorporated in Massachusetts as a nonprofit health maintenance organization. Its principal place of business is located at Landmark Center, 401 Park Drive, Boston, Massachusetts 02215.

(23) <u>Blue Cross Blue Shield of Michigan Mutual Insurance Company</u> ("Michigan Blue").  Plaintiffs are informed and believe that Defendant Michigan Blue is registered to do business as a nonprofit mutual company in the state of Michigan. Defendant Michigan Blue does business under the trade name Blue Cross Blue Shield of Michigan.  Its principal place of business is located at 600 Lafayette East, Mail Code 1929, Detroit, Michigan 48826.

(24) <u>BCBSM, Inc.</u> ("Minnesota Blue"). Plaintiffs are informed and believe that Defendant Minnesota Blue is a nonprofit corporation, authorized to do business in the state of Minnesota. Defendant Minnesota Blue does business under the trade name Blue Cross Blue Shield of Minnesota. Its principal place of business is located at 3535 Blue Cross Road, Eagan, Minnesota 55122.

(25) <u>Blue Cross and Blue Shield of Kansas City</u> ("Kansas City Blue"). Plaintiffs are informed and believe that Defendant Kansas City Blue is a Missouri insurance company. Defendant Kansas City Blue does business

Stris &
Maher LLP

under its legal name and under the trade name Blue KC. Its principal place of business is located at 2301 Main Street, Kansas City, Missouri 64108.

(26)   <u>Health Care Service Corporation, a Mutual Legal Reserve Company</u> ("Montana Blue"). Plaintiffs are informed and believe that Defendant Montana Blue, a Mutual Legal Reserve Company, is active and licensed to do business in the states of Montana and does business there under the trade name BlueCross BlueShield of Montana.  Its corporate office is located at 300 East Randolph Street, Chicago, Illinois 60601; its Montana state headquarters is located at 560 North Park Avenue, Helena, Montana 59604.

(27)   <u>Blue Cross and Blue Shield of Nebraska</u> ("Nebraska Blue"). Plaintiffs are informed and believe that Defendant Nebraska Blue is a mutual benefit corporation, authorized to do business in the state of Nebraska. Its principal place of business is located at 1919 Aksarben Drive, Omaha, Nebraska 68106.

(28)   <u>Horizon Healthcare Services, Inc.</u> ("New Jersey Blue"). Plaintiffs are informed and believe that Defendant New Jersey Blue is registered to do business in New Jersey as an active, nonprofit corporation. Defendant New Jersey Blue does business under the trade name Horizon Blue Cross Blue Shield of New Jersey. Its principal place of business is located at 3 Penn Plaza East, Newark, New Jersey 07105.

(29)   <u>Health Care Service Corporation, a Mutual Legal Reserve Company</u> ("New Mexico Blue"). Plaintiffs are informed and believe that Defendant New Mexico Blue is active and licensed to do business in the state of New Mexico and does business there under the trade name BlueCross BlueShield of New Mexico. Its corporate office is located at 300 East Randolph Street, Chicago, Illinois 60601; its New Mexico state headquarters

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

is located at 5701 Balloon Fiesta Parkway N.E., Albuquerque, New Mexico 87113.

(30)   Empire HealthChoice Assurance, Inc. ("New York Empire Blue"). Plaintiffs are informed and believe that Defendant New York Empire Blue is a nonprofit corporation in the state of New York. Defendant New York Empire Blue does business as a health insurer under the trade name Empire BlueCross BlueShield.  Plaintiffs are informed and believe that New York Empire Blue also sometimes operates as a claims administrator through one or more subsidiaries, including and/or under the trade name Anthem Blue Cross Blue Shield ("New York Anthem Blue").  The principal place business of New York Empire Blue is located at 1 Liberty Plaza, 165 Broadway, New York, New York 10006; and the principle place of business of New York Anthem Blue is 85 Crystal Run Road, Middletown, New York 10940.

(31)   Excellus Health Plan, Inc. ("New York Excellus Blue"). Plaintiffs are informed and believe that Defendant New York Excellus Blue is registered to do business as a nonprofit indemnity health insurance company in the state of New York.  Defendant New York Excellus Blue does business under the trade name Excellus BlueCross BlueShield.  Its principal place of business is located at 165 Court Street, Rochester, New York 14647.

(32)   Blue Cross and Blue Shield of North Carolina ("North Carolina Blue"). Plaintiffs are informed and believe that Defendant North Carolina Blue is a North Carolina hospital and medical service corporation. Its principal place of business 5901 Chapel Hill Road, Durham, North Carolina 27707.

(33)   Community Insurance Company ("Ohio Blue"). Plaintiffs are informed and believe that Defendant Ohio Blue is a health insurer, authorized to do business in the state of Ohio. Defendant Ohio Blue does business under

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

the trade name Anthem Blue Cross and Blue Shield. Its principal place of business is located at 4361 Irwin Simpson Road, Mason, Ohio 45040.

(34)   Health Care Service Corporation, a Mutual Legal Reserve Company ("Oklahoma Blue"). Plaintiffs are informed and believe that Defendant Oklahoma Blue is active and licensed to do business in the state of Oklahoma, and does business there under the trade name BlueCross BlueShield of Oklahoma.  Plaintiffs are informed and believe that Oklahoma Blue sometimes operates through one or more subsidiaries including BlueLincs HMO.  The corporate office of Oklahoma Blue is located at 300 East Randolph Street, Chicago, Illinois 60601; its Oklahoma state headquarters is located at 1400 S. Boston Avenue, Tulsa, Oklahoma 74119.

(35)   Regence BlueCross BlueShield of Oregon ("Oregon Blue"). Plaintiffs are informed and believe that Defendant Oregon Blue is registered in the state of Oregon as a nonprofit corporation. Its principal place of business is located at 200 S.W. Market Street, Portland, Oregon 97201.

(36)   Highmark Blue Shield ("Central Pennsylvania Blue").  Plaintiffs are informed and believe that Defendant Central Pennsylvania Blue is registered as a nonprofit corporation in the state of Pennsylvania. Defendant Central Pennsylvania Blue is an independent licensee of the Blue Cross and Blue Shield Association.  Defendant Central Pennsylvania Blue does business as a full-service health plan in the 21 counties of central Pennsylvania and, as a partner in joint operating agreements with Defendant Northeastern Pennsylvania Blue, provides health insurance services in northeastern Pennsylvania. Its principal place of business is located at 1800 Center Street, Camp Hill, Pennsylvania 17089.

a.   Plaintiffs are informed and believe that Defendant Central Pennsylvania Blue is a subsidiary of Highmark, Inc. ("Highmark")

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris & Maher LLP

Plaintiffs are informed and believe that Defendant Highmark is an active, nonprofit corporation organized under the laws of Pennsylvania. Defendant Highmark is an independent licensee of the Blue Cross and Blue Shield Association and the operator of Highmark Health Plans, a corporate group of health insurers that includes (in addition to Defendant Central Pennsylvania Blue) Defendant Western Pennsylvania Blue, Defendant Northeastern Pennsylvania Blue, and Defendant Delaware Blue.  Plaintiffs are informed and believe that, through its subsidiaries and businesses in Highmark Health Plans, Defendant Highmark provides BCBS-branded health insurance plans in Pennsylvania, West Virginia, Delaware, and Ohio. Defendant Highmark's principal place of business is located at Fifth Avenue Place, 120 Fifth Avenue, Pittsburgh, Pennsylvania 15222.

(37)   Highmark Blue Cross Blue Shield ("Western Pennsylvania Blue"). Plaintiffs are informed and believe that Defendant Western Pennsylvania Blue is registered as a nonprofit corporation in the state of Pennsylvania.  Western Pennsylvania Blue is an independent licensee of the Blue Cross and Blue Shield Association and a member of the Highmark Health Plans enterprise, doing business in the 29 counties of western Pennsylvania. Its principal place of business is located at 1800 Center Street, Camp Hill, Pennsylvania 17089.

(38)   Blue Cross of Northeastern Pennsylvania, formerly Hospital Service Association of Northeastern Pennsylvania ("Northeastern Pennsylvania Blue"). Plaintiffs are informed and believe that Defendant Northeastern Pennsylvania Blue is registered to do business in Pennsylvania as an active, nonprofit corporation. Defendant Northeastern Pennsylvania Blue is an independent licensee of the Blue Cross and Blue Shield

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Association and a member of the Highmark Health Plans enterprise, operating in 12 counties in northeastern and central Pennsylvania. Its principal place of business is located at 19 North Main Street, Wilkes-Barre, Pennsylvania 18711.

(39)   Independence Blue Cross, Inc. ("Philadelphia Blue"). Plaintiffs are informed and believe that Defendant Philadelphia Blue is a nonprofit corporation, authorized to do business in the state of Pennsylvania. Its principal place of business is located at 1901 Market Street, Philadelphia, Pennsylvania 19103.

(40)   Blue Cross and Blue Shield of South Carolina ("South Carolina Blue"). Plaintiffs are informed and believe that Defendant South Carolina Blue is registered to do business as a mutual insurance company in the state of South Carolina.  Its headquarters is located at 2501 Faraway Drive, Columbia, South Carolina 29223.

(41)   Wellmark of South Dakota, Inc. ("South Dakota Blue"). Plaintiffs are informed and believe that Defendant South Dakota Blue is incorporated in South Dakota as an active, domestic insurance company. Defendant South Dakota Blue does business under the trade name Wellmark Blue Cross and Blue Shield of South Dakota.  Its principal place of business is located at 1601 West Madison, Sioux Falls, South Dakota 57104.

(42)   Blue Cross Blue Shield of Tennessee, Inc. ("Tennessee Blue"). Plaintiffs are informed and believe that Defendant Tennessee Blue is a nonprofit corporation, authorized to do business in the state of Tennessee. Its principal place of business is located at 1 Cameron Hill Circle, Chattanooga, Tennessee 37402.

(43)   Health Care Service Corporation, a Mutual Legal Reserve Company ("Texas Blue"). Plaintiffs are informed and believe that Defendant

Stris &
Maher LLP

1   Texas Blue is active and licensed to do business in the state of Texas and

2   does business there under the trade name BlueCross BlueShield of Texas. Its

3   corporate office is located at 300 East Randolph Street, Chicago, Illinois

4   60601; its Texas state headquarters is located at1001 East Lookout Drive,

5   Richardson, Texas 75082.

6       (44)   Regence BlueCross BlueShield of Utah ("Utah Blue"). Plaintiffs

7   are informed and believe that Defendant Utah Blue is registered in the state

8   of Utah as a nonprofit corporation.  In addition to its registered name,

9   Defendant Utah Blue also does business under the trade name BlueChoice.

10  Its principal place of business is located at 2890 E. Cottonwood Parkway,

11  Cottonwood, Utah 84121.

12      (45)   Anthem Health Plans of Virginia, Inc. ("Virginia Anthem

13  Blue"). Plaintiffs are informed and believe that Defendant Virginia Anthem

14  Blue is a health insurer, authorized to do business in the state of Virginia.

15  Defendant Virginia Anthem Blue does business under the trade name

16  Anthem Blue Cross and Blue Shield. Its principal place of business is located

17  at 2015 Staples Mill Road, Richmond, Virginia 23230.

18      (46)   Premera Blue Cross ("Washington Premera Blue"). Plaintiffs are

19  informed and believe that Defendant Premera Blue Cross is a nonprofit

20  corporation organized under the laws of Washington. Its principal place of

21  business is located at 7001 220th Street S.W., Building 1, Mountlake Terrace,

22  Washington 98043.

23      (47)   Regence BlueShield ("Washington Regence Blue"). Plaintiffs

24  are informed and believe that Defendant Washington Regence Blue is an

25  active nonprofit corporation formed under the laws of and authorized to do

26  business in the state of Washington. Its principal place of business is located

27  at 1800 Ninth Avenue, Seattle, Washington 98101.

Stris &
Maher LLP

28

61

(48)   <u>The Anthem Companies, Inc.</u> ("Wisconsin Blue"). Plaintiffs are informed and believe that Defendant Wisconsin Blue is a health insurer, authorized to do business in the state of Wisconsin.  Defendant Wisconsin Blue does business under the trade name Blue Cross and Blue Shield of Wisconsin.   Its principal place of business is located at N17 W24340 Riverwood Drive, Waukesha, Wisconsin 53188.

(49)   <u>Blue Cross Blue Shield of Wyoming</u> ("Wyoming Blue"). Plaintiffs are informed and believe that Defendant Wyoming Blue is registered to do business as a nonprofit corporation in the state of Wyoming. Its principal place of business is located at 4000 House Avenue, Cheyenne, Wyoming 82003.

The forty-nine defendants listed above are collectively referred to hereafter as the "Blue Cross Defendants."

## **RELEVANT FACTS**

**A.    Sovereign Provides Gold-Standard Treatment Services.**

24.    Sovereign is a leading provider of comprehensive addiction and mental health treatment programs to individuals in California and other states.

25.    It is widely accepted that the services rendered by Sovereign and similar providers are extremely important. For example, zccording to the National Institute on Drug Abuse, every dollar spent on substance abuse treatment saves $4.87 in health care costs and $7.00 in crime costs. *See* National Institute on Drug Abuse, *Principles of Drug Addiction Treatment: A Research-Based Guide* (3d ed.) (October 1999).

26.    Sovereign's approach to addiction and other mental health treatment is consistent with best practices in the industry. Its proven track record has also earned Sovereign accolades from trade and government groups. Dual Diagnosis, for example, has received the Gold Seal of Approval from the Joint Commission, an

independent not-for-profit organization that is the nation's oldest and largest standards-setting and accrediting body in health care. And the California Board of Behavioral Health Sciences, the California Association for Alcohol/Drug Educators, and the National Association for Alcoholism and Drug Abuse Counsels have approved Sovereign entities to provide continuing education to licensed professionals.

**B.      Many Patients Pay Sovereign Through ERISA-Governed Welfare Plans.**

27.     Sovereign, a for-profit enterprise, allows prospective patients to pay for its services out-of-pocket or with health insurance. Unfortunately, many individuals in need of treatment cannot afford to pay for Sovereign's services up front. Sovereign is only able to treat such individuals who have health insurance that covers some or all of its services.

28.     This litigation involves Former Patients who paid for Sovereign's services through health insurance provided by the Welfare Plan Defendants. Such plans and their benefits are governed by ERISA.

29.     ERISA is a landmark federal law enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits owed to those employees and beneficiaries.

30.     To that end, ERISA imposes extensive procedural requirements on employee benefit plans. For example, it mandates that a written instrument be established and maintained, 29 U.S.C. § 1102; that a straightforward summary of material plan terms be furnished to participants and beneficiaries, 29 U.S.C. § 1022; that a grievance and appeals process be established, 29 U.S.C. § 1133; and that fiduciary duties be satisfied by those who manage the plan, 29 U.S.C. § 1104.

31.     ERISA also gives plan participants and their beneficiaries the right to sue for benefits, 29 U.S.C. § 1132(a)(1)(B); to enforce or clarify their rights under the plan, *id.*; to enjoin violations of ERISA or the terms of the plan, 29 U.S.C.

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

§ 1132(a)(3)(A); or "to obtain other appropriate equitable relief . . . ," 29 U.S.C. § 1132(a)(3)(B).

32.    Each of the plans offered by Welfare Plan Defendants covered the mental health and/or substance abuse treatment services provided by Sovereign to the Former Patients. As explained below, before agreeing to provide treatment, Sovereign's practice is to contact a patient's insurer to confirm that the treatment it offers is covered, and the assigned benefits claims brought here arise from services provided to Former Patients for which Sovereign received such a coverage confirmation.

**C.    The Blue Cross Defendants Insured and/or Administered the Former Patients' ERISA-Governed Welfare Plans.**

33.    ERISA distinguishes between self-insured and fully insured employee benefit plans. In self-insured plans, the employer pays directly for the covered health care services provided to participants and beneficiaries. In fully insured plans, the employer buys group health insurance coverage and the insurance company pays for covered health care services.

34.    The Welfare Plan Defendants include both self-insured and fully insured employee benefit plans. Plaintiffs are informed and believe that:

a.    Each fully insured Welfare Plan Defendant bought group health insurance coverage from a Blue Cross Defendant and retained a Blue Cross Defendant as a third-party administrator ("TPA"); and

b.    Each self-insured Welfare Plan Defendant retained a Blue Cross Defendant as a TPA.

35.    Plaintiffs are informed and believe that, either as group insurers or group TPAs, the Blue Cross Defendants provided extensive services to the Welfare Plan Defendants pursuant to administrative service agreements ("ASAs") between the parties. These services included: determining to whom and in what amounts

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

benefits are paid, drafting and providing plan members with ERISA plan documents, interpreting plan documents, providing notices to employees and their beneficiaries, determining usual and customary rates, and/or hearing and deciding administrative appeals.

36.    Plaintiffs are informed and believe that as insurers or TPAs, the Blue Cross Defendants "effectively controlled the decision whether to honor or deny a claim" on behalf of the Welfare Plan Defendants. *Cyr v. Reliance Life Ins. Co.*, 642 F.3d 1202, 1204 (9th Cir. 2011). Indeed, Plaintiffs are informed and believe that the Welfare Plan Defendants had little if any involvement in claims administration or pricing and deferred entirely to the Blue Cross Defendants.

37.    Because the Blue Cross Defendants, as either insurers or TPAs, exercised discretion in connection with the granting or denial of benefits and otherwise with respect to plan administration, they are fiduciaries under ERISA.

38.    Plaintiffs are informed and believe that the Blue Cross Defendants that served as TPAs, were, because of terms of the ASAs or otherwise, motivated by financial incentives to keep benefit costs to the self-insured Welfare Plan Defendants low.

39.    The Blue Cross Defendants who insured the Welfare Plan Defendants had independent financial incentives to keep benefit costs low because they paid for covered health care services themselves.

**D.    Sovereign Investigates Prospective Patients' Health Insurance Coverage.**

40.    Before it agrees to treat any patient, Sovereign takes steps to ensure that it will be compensated for its services. When a prospective patient seeks to pay with his or her health insurance, Sovereign investigates whether and to what extent the patient's insurance policy covers its various levels of service.

41.    As explained above, this litigation involves Former Patients who paid for Sovereign's services through health insurance coverage provided by the Welfare

Stris &
Maher LLP

28

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Plan Defendants—insured and/or administered by one or more Blue Cross Defendant. When each Former Patient first sought treatment, Sovereign or its agents verified that he or she was insured and ascertained the scope of his or her coverage through the following procedures.

42.    Sovereign or its agents first secured the Former Patient's consent to contact his or her health insurance company, along with the identifying information necessary for Sovereign to interact with the insurer. Sovereign or its agents also asked for the dedicated phone number for healthcare providers associated with the Former Patient's insurance policy ("Provider Hotline"). Plaintiffs are informed and believe that each Former Patient authorized Sovereign to contact the Provider Hotline of a Blue Cross Defendant. Sovereign or its agents recorded this information in the top box of a comprehensive document entitled "Insurance Verification Form."

43.    Sovereign or its agents called the Provider Hotline listed on the Insurance Verification Form on each Former Patient's behalf. When it reached a Blue Cross Defendant, Sovereign or its agents relayed the Former Patient's identifying information and requested details about his or her coverage. Sovereign or its agents recorded the information learned from the Blue Cross Defendant on the bottom of the Insurance Verification Form.

44.    To complete Sovereign's Insurance Verification Form, Sovereign or its agents inquired exhaustively into the characteristics of the Former Patient's health insurance coverage, including with respect to:

   a.    The general characteristics of the health insurance policy (including fields for effective date and renewal date, the type of plan, and whether it covers preexisting conditions, among other things);

   b.    The existence and scope of any substance abuse or mental health coverage (including fields regarding deductible for in-network and out-of-

Stris & Maher LLP

66

network services and maximum out-of-pocket payments for in-network and out-of-network services, among other things);

    c.    Any precertification requirements (including fields indicating whether precertification required for inpatient treatment, residential treatment, partial hospitalization, intensive outpatient treatment, and/or outpatient treatment by in-network and out-of-network providers); and

    d.    Copayments for each type of treatment and any limits on the length of treatment.

45.    Sovereign or its agents also investigated the logistics of securing authorization and payment for Sovereign's services, including:

    a.    How to comply with precertification requirements (including fields for pre-certification company and telephone number);

    b.    The name of the insurance company and the entity to which benefit claims should be submitted (including fields for insurance company and claims address); and

    c.    Whether the Former Patient's health insurance benefits were assignable. The answer to this question was recorded by circling "Yes" or "No" (or "Y" or "N") next to the word "assignable" on the Insurance Verification Form.

46.    After the insurance verification process, Sovereign then contacted each Former Patient to discuss his or her insurance policy and to make appropriate arrangements for treatment.

**E.**    **Each Former Patient Had "Preferred Provider Organization" Coverage for Substance Abuse and Mental Health Treatment Services.**

47.    Sovereign only wishes to provide services that prospective patients can afford. As such, as a matter of course Sovereign investigates whether the treatment needed by a patient (including the Former Patients) was covered by insurance.

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

48.     When Sovereign or its agents called the Blue Cross Defendants' Provider Hotlines, it learned that each Former Patient's health insurance policy had at least the following key features: (1) coverage for substance abuse / mental health treatment offered by Sovereign, and (2) preferred provider organization ("PPO") coverage.

49.     A PPO plan covers medical expenses incurred when the insured visits either an "in-network" provider (*i.e.*, a provider who has a contractual relationship with the insurance company) or an "out-of-network" provider (*i.e.*, one who does not have a contractual relationship with the insurance company).

        a.     PPO coverage tends to be significantly more expensive than health maintenance organization ("HMO") coverage because it gives insureds the option to visit the providers of their choice, who are typically entitled to reimbursement at the "usual and customary rate" for their services and not a lower negotiated rate. Many insureds are nevertheless willing to pay a premium for PPO coverage to, inter alia, gain access to a bigger and better pool of providers.

        b.     No law required the Welfare Plan Defendants to offer PPO coverage instead of HMO coverage. Each Welfare Plan Defendant chose to offer the more robust and expensive insurance to their employees, and each Former Patient or subscriber enrolled in and paid for that premium level of coverage.

        c.     Sovereign is out-of-network with respect to all Blue Cross Defendants. In other words, Sovereign is not contracted with any Blue Cross Defendant to provide services to their insureds at a discounted rate.

50.     In short, Sovereign and its agents learned from the Blue Cross Defendants that each Former Patient had PPO coverage for substance abuse and

mental health treatments and services, and that the Blue Cross Defendants were the relevant insurance companies, administrators, and contacts for those plans.

**F.    Sovereign Obtains Valid Benefit Assignments from Each Former Patient.**

51.    Sovereign (or its agents, on Sovereign's behalf) obtained and obtains a valid assignment of benefits ("Assignment") from all patients before treating them.

52.    The Assignments give Sovereign the right to be paid directly for any services rendered to patients, and also entitle Sovereign to assert patients' legal rights to recover benefits. These legal rights include the right to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit for violations of ERISA.

53.    Sovereign or its agents obtained an Assignment from each Former Patient.  For some Former Patients, the Assignment was in or substantially similar to the form discussed in the Blue Cross Defendants' Omnibus Motion to Dismiss, and attached hereto as Exhibit A; however, for at least one Former Patient associate with every single Blue Cross Defendant (and in most instances, for multiple Former Patients associated with each Blue Cross Defendant) the form of Assignment was in or substantially similar to the form attached hereto as Exhibit B (albeit sometimes listing a different Plaintiff entity).

54.    The Assignments entitle Sovereign to collect payment for services provided to the Former Patients directly from the Blue Cross Defendants.

55.    The Assignments also confer legal standing on Sovereign to assert various legal claims against the Welfare Plan Defendants and the Blue Cross Defendants under ERISA, including the claims in this Complaint. It is well-settled that assignees are "beneficiaries" under ERISA with standing to assert the claims of their assignors. *See Misic v. Building Services Employees Health & Welfare Trust*, 789 F.2d 1374, 1379 (9th Cir. 1986). And any beneficiary—including an assignee— who makes a claim is a "claimant" under federal law. 29 C.F.R. § 2560.503-1(a)

("[T]his section sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries (hereinafter referred to as claimants).").

## G. After Providing Covered Services, Sovereign Submitted Claims for Benefits to the Blue Cross Defendants Following Blue Cross Procedures.

56.     Sovereign provided medically necessary services to the Former Patients that were covered by their plans.

57.     Sovereign then sought payment by submitting the appropriate documents to the appropriate Blue Cross Defendants in accordance with the Association's "BlueCard Program" described below. These claims for payment notified the Blue Cross Defendants that Sovereign had obtained valid Assignments from the Former Patients and asserted Sovereign's right to receive any benefits owed to the Former Patients under the terms of their health plans.

58.     **The BlueCard Program.** Plaintiffs are informed and believe that the BlueCard Program is "a single electronic network for claims processing and reimbursement" for all Blue Cross Companies. *See* Blue Shield of California, "Introducing the BlueCard Program," www.blueshieldca.com.

59.     All Blue Cross Defendants are BlueCard Program participants.

60.     The BlueCard Program requires health care providers to submit claims for benefits to the Blue Cross entity that controls the territory in which the provider is located (the "Host Entity"). *See generally* BlueCard Introduction, www.blueshieldca.com ("When an out-of-area Blue Plan member seeks medical care from your office, use the information and tools in this section to submit those claims to Blue Shield of California.").

61.     Plaintiffs are informed and believe that the insurance cards that the Blue Cross Defendants issued to the Former Patients instructed health providers to communicate with and submit claims directly to the Host Entity for their location.

Stris & Maher LLP

70

Plaintiffs are informed and believe that the Blue Cross Defendant on the Provider Hotline likewise instructed Sovereign or its agents to submit claims to the Host Entity for the territory in which Sovereign is located. The Host Entity was listed on the Insurance Verification Form.

62.     Sovereign complied with the BlueCard Program by submitting claims for payment directly to the Host Entity for the territory in which Sovereign is located. For many of the Former Patients, for example, the Host Entity would be California Blue Cross.

63.     Plaintiffs are informed and believe that the Host Entity processes claims on behalf of the distant or out-of-state Blue Cross Company (the "Home Entity"). BlueCard Tutorial at 7. The Host Entity sends the claim to the Home Entity, which authorizes the Host Entity to finalize and pay the claim. *Id.* The Host Entity then remits payment. *Id.*; *see also* Horizon Blue FAQs ("Once we receive your claims, we will electronically route them to the out-of-state Blue Cross Blue Shield [Entity] that will process the claim according to each member's contract. They will transmit the claim information to us . . . ."). If the Host Entity and the Home Entity are one and the same, Plaintiffs are informed and believe that such Blue Cross Company alone handles claim processing.

64.     **Uniform Billing ("UB") Forms.** Sovereign or its agent timely submitted its claims for payment to the correct Host Entity using industry standard UB-04 forms.

65.     UB forms are promulgated by the National Uniform Billing Committee ("NUBC"), an organization formed in 1975 "to develop and maintain a single billing form and standard data to be used nationwide by institutional, private and public providers and payers for handling health care claims." NUBC, "About Us," http://www.nubc.org/aboutus/index.dhtml ("About NUBC"). Plaintiffs are informed

and believe that the Association is a member of NUBC. NUBC, "Member Organizations," http://www.nubc.org/aboutus/memberorganizations.dhtml.

66.    The NUBC approved the UB-04 in February of 2005. Department of Health & Human Services, "CMS Manual System: Pub 100-04 Medicare Claims Processing, Transmittal 1104" (Nov. 3, 2006) ("Transmittal 1104"), at 3. The UB-04 form is now the "'de facto' institutional claim standard." About NUBC; *see also* Transmittal 1104 at 3 ("The Form UB-04 (CMS-1450) answers the needs of many health insurers. It is the basic form prescribed by CMS for the Medicare program . . . .").

67.    The UB-04 form includes information sufficient to allow insurance companies to identify, process, and pay claims. For example, it contains fields for the service provided, the appropriate code for that service, and the charge for the service that the provider believes is usual and customary. The UB-04 form also includes a field ("ASG BEN" in field 53) in which the provider indicates whether it has received an assignment of health care benefits from the patient.

68.    Each UB-04 form submitted in connection with services that Sovereign provided to a Former Patient indicated that Sovereign had received an assignment of health care benefits from the Former Patient.

**H.    Despite Extensive Dealings with Sovereign, the Blue Cross Defendants did not Notify Sovereign of the Terms of any Valid Anti-Assignment Provision That They Intended to Enforce.**

69.    After the verification of benefits, Defendants (or their agents) repeatedly continued to interact with Plaintiffs (or their agents) with respect to the Former Patients and claims for whom Plaintiffs received assignments. In addition to verification of services, such interaction, which was over a long period of time, included receiving and processing UB-04 claim forms for payment for the services,

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

communicating with Plaintiffs (or their agents) about the services and claims, and requesting additional documentation for the claims.

70.     During this continued interaction neither the Blue Cross Defendants nor their agents notified Plaintiffs or their agents of the specific terms of any alleged anti-assignment provision in any plan document.  Nor did they refuse to deal directly with Plaintiffs or their agents on the grounds of any such provision. Indeed, Plaintiff is informed and believes that Blue Cross Defendants (or their agents) regularly informed Plaintiffs' agents through express words in many cases, but at a minimum impliedly through their actions, that the claims of Former Patients at issue *were freely assignable.*   Accordingly, Defendants have waived, or are estopped from asserting, any anti-assignment clause as a defense to Plaintiffs' ERISA claims in this case.

71.     Moreover, the pattern and practice of the Blue Cross Defendants alleged herein has caused Plaintiffs to suffer direct and independent injury in violation of state law:

a.     The Blue Cross Defendants (or their agents) should have but failed to explain to Plaintiffs (or their agents) during the verification of benefits process, or at a minimum early in the Blue Cross Defendants' (or their agents') long and extensive course of dealing with Plaintiffs (or their agents) thereafter, that the Blue Cross Defendants would not pay Plaintiffs directly, and why.

b.     Whether they were declining to make payments directly to Plaintiffs because more documentation of a valid assignment was required, because, as Plaintiffs believe and allege they were engaging in a wrongful pattern and practice of declining to honor direct payment rights even though many of the relevant plan documents permit assignments, or because under their interpretation of a particular plan the Former Patients' benefits were not

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

assignable, the Blue Cross Defendants should have promptly notified Plaintiffs in writing.

c.     Instead, the Blue Cross Defendants dealt directly with Plaintiffs for other purposes, but said nothing to contradict the information Plaintiffs reasonably thought they had verified once during the verification of benefits process and again upon submitting UB-04s indicating that Plaintiffs had been assigned direct payment rights.

d.     By failing to clarify in writing to Plaintiffs (or even their Former Patients) during the verification of benefits process, or at a minimum promptly upon submission of a UB-04, that the Blue Cross Defendants would refuse to pay Plaintiffs directly and why, and by instead issuing payments directly to Former Patients in violation of their instructions and of the right to direct payment that Plaintiffs obtained (or at least legitimately believed they obtained), the Blue Cross Defendants engaged in an improper and unfair business practice.

e.     The Blue Cross Defendants' unfair business practice caused Plaintiffs—who reasonably believed that they would be paid directly and relied on the Blue Cross Defendants express or implied representations to the contrary—to suffer independent and direct harm in at least the following ways:

(1)     To the extent the Blue Cross Defendants now say they would have honored these assignments had more documentation been provided, their behavior deprived Plaintiffs of the opportunity to submit such documentation and obtain direct payment;

(2)     To the extent the Blue Cross Defendants now say their interpretation of relevant plan language is that it prohibits assignments, Plaintiffs were deprived of the ability to make alternate payment

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

1    arrangements with their Former Patients that would have avoided the

2    need for costly collection efforts and to write off revenue they expected

3    to receive when at least some Former Patients failed to submit the

4    payment checks they received to Plaintiffs, or failed to do so in a

5    timely manner; and

6          (3)    The wrongful behavior of the Blue Cross Defendants set

7    forth above obfuscated Plaintiffs' ability to ascertain whether the Blue

8    Cross Defendants were paying benefits at the appropriate amount

9    versus wrongfully denying claims in whole or in part which, on

10   information and belief, happened in at least some instances. This

11   deprived Plaintiffs of a meaningful opportunity to assist their Former

12   Patients with the administrative appeal process for benefits denials, and

13   at a minimum delayed and made unnecessarily difficult the ability to

14   ascertain whether initiating that process was appropriate, and Plaintiffs

15   lost money as a result.

16         72.    Unless the Blue Cross Defendants are enjoined from providing

17   inaccurate information about their willingness to honor assignments of benefits

18   during the verification of benefits process, and required promptly to state in writing

19   if they are unwilling to do so upon receipt of a UB-04 indicating that Plaintiffs have

20   received such assignments, the Blue Cross Defendants will continue to interfere

21   with the conduct of Plaintiffs' business, and Plaintiffs will continue to be directly

22   and irreparably harmed.

23   **I.    The Blue Cross Defendants Approved Sovereign's Claims but Arbitrarily**

24   **Disregarded Its Assignments.**

25         73.    A valid assignment obligates the debtor to pay the assignee, not the

26   original creditor: "When there is a valid assignment in place, performance under a

27   contract runs to the assignee. Thus, when a creditor assigns its interest in an existing

28

Stris & Maher LLP

debt owed to it, the debtor must generally pay the debt to the assignee, not the original creditor." 6A C.J.S. Assignments § 106. Indeed, "after a debtor has received notice of a valid assignment, or obtained knowledge of it in any manner, a payment to the assignor or any person other than the assignee is at the debtor's peril and does not discharge him or her from liability to the assignee." *Id.*

74.    Plaintiffs are informed and believe that the Blue Cross Defendants approved and authorized payment on Sovereign's claims for benefits in connection with the services provided to the Former Patients, but did not pay Sovereign (apparently on the grounds that Sovereign was an assignee). In other words, despite Blue Cross Defendants being informed of and on written notice that Sovereign was an assignee—and despite Blue Cross Defendants approving the underlying claim for covered services—the Blue Cross Defendants mailed checks directly to the Former Patients and not to Sovereign.

75.    Plaintiffs are informed and believe that the Blue Cross Defendants' disregard of Sovereign's Assignments is consistent with acknowledged BlueCard policy to disregard the assignments of out-of-network providers like Sovereign. As one Blue Cross Company put it: "payments for services rendered by providers who do not contract with [Blue Cross] are sent directly to our customers. Thus, out-of-network providers face the inconvenience of attempting to collect payment from the customer and the accompanying possibility of incurring bad debts." *See* Blue Cross Blue Shield Oklahoma, "Blue Perspective: BCBSOK Position on Legislation and Regulatory Issues," http://www.bcbsok.com/grassroots/pdf/blueperspective_aob27-103003.pdf.

76.    Indeed, when Sovereign sought payment for covered claims the Former Patients had assigned to it, Blue Cross uniformly refused to pay, or even to acknowledge, Sovereign's benefit claims. Neither Sovereign's initial UB-04

Stris &
Maher LLP

1  requests for payment nor its follow-up letters written by experienced ERISA

2  counsel resulted in payment or a reasoned denial.

3      77.    The Blue Cross Defendants' policy of not honoring assignments to out-

4  of-network providers like Sovereign furthers their objective to pressure such

5  providers to contract with the Blue Cross Defendants and become in-network

6  providers.

7          a.    In-network providers with respect to insurance plans agree to

8  accept discounted reimbursement rates in exchange for the benefits of network

9  status, which include increased business, advertisements, and lower co-payments

10  and deductibles for members.

11          b.    Conversely, out-of-network providers receive less plan business,

12  but they are entitled to receive payment based on their charges for services rendered

13  without any discount.

14      78.    Plaintiffs are informed and believe that in recent years, Blue Cross

15  Defendants contracts have demanded such low reimbursement rates and have

16  become so onerous and one-sided in favor of Blue Cross Defendants that many

17  providers have determined that they cannot afford to enter into, maintain, or renew

18  such contracts. As a result, a growing number of providers have become out-of-

19  network with the Blue Cross Defendants.

20      79.    Plaintiffs are informed and believe that the Blue Cross Defendants

21  punish out-of-network providers by underpaying them for the medically necessary,

22  covered services they provide to Blue Cross Defendants insured individuals.

23      80.    The Blue Cross Defendants know or should know that failing to honor

24  assignments results in underpayment to providers because patients do not always

25  forward their benefits checks to their providers, and are less likely to contest

26  improper denials of benefits.

27

28

Stris &
Maher LLP

77

81.    In this litigation, the Blue Cross Defendants' policy of disregarding assignments to out-of-network providers like Sovereign led them to send large sums of money to chemically dependent individuals. That practice was patently reckless with respect to the health and safety of the Former Patients, as well as the health and safety of the general public. It also all but guaranteed that Sovereign would receive only a fraction of what it was owed for its services.

**J.     In Clear Violation of ERISA, No Defendant Ever Informed Sovereign Its Basis for Refusing to Honor Sovereign's Assignments.**

82.    Sovereign formally asserted claims for ERISA benefits to ERISA fiduciaries by submitting UB-04s to the Blue Cross Defendants for services provided to the Former Patients.

83.    Sovereign's UB-04s never received any response from the Blue Cross Defendants. As Sovereign learned only later and at great expense, the Blue Cross Defendants instead had approved and authorized payment on the claims for Sovereign's services to the Former Patients. The Blue Cross Defendants then issued payment checks to the Former Patients.

84.    When the Blue Cross Defendants refused to pay Sovereign's claims and instead sent claims payment checks to the Former Patients, they made "adverse benefit determinations" against Sovereign under ERISA. *See* 29 C.F.R. § 2560.503-1(m)(4) (defining "adverse benefit determination" as including "a failure to provide or make payment" for a claimed benefit).

85.    Federal law and regulations set forth extensive procedural requirements for making adverse benefit determinations in the health insurance context. Generally speaking, plans must propound denials in writing, set forth the specific reasons for such a denial, and afford a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim. *See generally* 29 U.S.C. § 1133.

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

86.     Among other things, the plan or its representative must explain, "in a manner calculated to be understood by the claimant (i) the specific reason or reasons for the adverse determination; (ii) reference to the specific plan provisions on which the determination is based; (iii)      a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; [and] (iv) a description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review. . . ." 29 C.F.R. § 2560.503-1(g)(i)-(iv). *See also* 29 C.F.R. §2590.715-2719(b).

87.     In spite of such detailed regulations, Sovereign received no written notice that such adverse benefit determinations had taken place at all. As a result, Sovereign did not know whether the Blue Cross Defendants had acted on their claims at all, what decisions they had reached if they had, or why they never received payment from the Blue Cross Defendants. Only after a costly and protracted investigation was Sovereign able to ascertain what was happening.

88.     Defendants obviously failed to comply, in any respect, with the relevant federal regulations governing the manner and means by which an insurer must make an adverse benefit determination. As a result, any administrative prerequisites to litigation are deemed exhausted and a claimant may commence suit in federal court. *See* 29 C.F.R. § 2560.503-1(l) ("In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies . . . .") and 29 C.F.R. §2590.715-2719(b)(2)(ii)(F) (deemed exhaustion).

**K.     At Great Effort and Expense, Sovereign Attempts to Collect Plan Documents and Learns the Scope of Defendants' ERISA Violations.**

Stris & Maher LLP

79

89.     When the Blue Cross Defendants uniformly refused to acknowledge Sovereign's benefit claims, Sovereign undertook an independent investigation.

90.     Specifically, for the Former Patients, Sovereign at great effort and expense attempted to determine the name of the welfare plan providing the Former Patients' respective coverage.

91.     Once Sovereign obtained that information, Sovereign was able to obtain for some welfare plans the operative plan documents governing the terms of the Former Patient's coverage.

92.     Because several of those plan documents did *not* bar the assignment of benefits, it became clear that Blue Cross Defendants were refusing to pay Sovereign's validly assigned claims without any investigation into whether the applicable plan documents supported their position. *See also*, Omnibus Motion to Dismiss, ECF. 246-1 at 16 (contending that anti-assignment clauses bar only approximately 40 out of 74 underlying claims alleged in original complaint). It also became clear that the Welfare Plan Defendants were totally derelict in their responsibility to make sure that the operative plan documents were and are being followed.

93.     Nonetheless, Sovereign attempted—through over two dozen letters sent to the Blue Cross Defendants—to inquire as to why its Assigned Claims were denied. Those letters were ignored or otherwise unsuccessful in getting the Blue Cross Defendants to comply with the required federal claims handling regulations.

94.     Given the utter futility of its efforts at non-judicial resolution, Sovereign files this suit to seek relief.

## **FIRST CLAIM FOR RELIEF**

### **(Against All Defendants—Seeking to Recover Benefits)**

### **(29 U.S.C. § 1132(a)(1)(B))**

Stris &
Maher LLP

80

95.     The allegations of the prior paragraphs of this Complaint are hereby repeated as if fully set forth herein.

96.     Sovereign provided services to many individuals who, at the time of the services provided, were participants or beneficiaries of ERISA-governed plans sponsored and/or administered by the Welfare Plan Defendants and insured and/or administered by the Blue Cross Defendants (the "ERISA Beneficiaries").

97.     Before providing services to any ERISA Beneficiary, Sovereign obtained, or had an agent obtain for Sovereign's benefit, an assignment of benefits which, inter alia, required that any ERISA benefit payments due as a result of its services be paid directly to Sovereign or its designee.

98.     After confirming that the services it offered were covered by the plan and providing services to each ERISA Beneficiary, Sovereign or its agent submitted claims to the relevant Blue Cross Defendant requesting payment of ERISA benefits to Sovereign due as a result of the services provided (an "Assigned Claim" or collectively the "Assigned Claims").

99.     The Blue Cross Defendants refused to pay Sovereign for the Assigned Claims. Upon information and belief, in some instances the Blue Cross Defendant paid some or all of the Assigned Claim directly to the ERISA Beneficiary.

100.   Pleaded in paragraphs 101 to 366 below are, for representative individual patients, the specifics for the Assigned Claims for which Sovereign or its designee is the assignee or similar right holder. Patient names have been redacted and replaced with a numerical identifier to preserve confidentiality. In some instances, the welfare plan is not currently known to Sovereign, but the insurer or TPA is.

101.   On information and belief: Patient 1 was a participant in or beneficiary of Defendant Profit Plan during all times relevant to this complaint.  Further, on information and belief:

Stris & Maher LLP

81

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Profit Plan either (i) is insured by North Carolina Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with North Carolina Blue and/or California Blue Cross by which the Profit Plan receives third party administrative services.

b.      On or around July 22, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 1, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Profit Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or North Carolina Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, North Carolina Blue, and/or the Profit Plan thereafter paid some or all of the assigned benefits to Patient 1 instead of Sovereign.

102.   On information and belief: Patient 3 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 3's plan either (i) is insured by Montana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Montana Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around October 23, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 3, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Montana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Montana Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 3 instead of Sovereign.

103.   On information and belief: Patient 4 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: Patient 4's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with /or California Blue Cross by which the unknown plan receives third party administrative services.

b.     On or around April 14, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 4, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 4 instead of Sovereign.

104.   On information and belief: Patient 5 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

    a.    With regard to the relevant welfare benefits implicated by this lawsuit: Patient 5's plan either (i) is insured by North Carolina Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with North Carolina Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

    b.    On or around February 11, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 5, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

    c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or North Carolina Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.    California Blue Cross, North Carolina Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 5 instead of Sovereign.

105.   On information and belief: Patient 7 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

    a.    With regard to the relevant welfare benefits implicated by this lawsuit: Patient 7's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

b.      On or around September 20, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 7, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 7 instead of Sovereign.

106.  On information and belief: Patient 8 was a participant in or beneficiary of Defendant Ameriflight Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Ameriflight Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Ameriflight Plan receives third party administrative services.

b.      On or around December 14, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 8, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Ameriflight Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris & Maher LLP

85

d.      California Blue Cross and/or Ameriflight Plan thereafter paid some or all of the assigned benefits to Patient 8 instead of Sovereign.

107.   On information and belief: Patient 9 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 9's plan either (i) is insured by New York Empire Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New York Empire Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around February 18, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 9, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New York Empire Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, New York Empire Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 9 instead of Sovereign.

108.   On information and belief: Patient 10 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 10's plan either (i) is insured by California Blue Cross or (ii)

Stris &
Maher LLP

28

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

b.     On or around March 19, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 10, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 10 instead of Sovereign.

109.   On information and belief: Patient 11 was a participant in or beneficiary of Defendant Dog Lady Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Dog Lady Plan either (i) is insured by California Blue Shield Life or (ii) is self-insured and has entered into an agreement with California Blue Shield Life by which the Dog Lady Plan receives third party administrative services.

b.     On or around November 12, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 11, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Dog Lady Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield Life on the industry-standard UB-04 form. Sovereign indicated that it was requesting

Stris &
Maher LLP

that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.     California Blue Shield Life and/or Dog Lady Plan thereafter paid some or all of the assigned benefits to Patient 11 instead of Sovereign.

110.  On information and belief: Patient 14 was a participant in or beneficiary of Defendant Hartford Plan during all times relevant to this complaint.  Further, on information and belief:

      a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Hartford Plan either (i) is insured by Indiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue and/or California Blue Cross by which the Hartford Plan receives third party administrative services.

      b.     On or around January 25, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 14, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Hartford Plan.

      c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Indiana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.     California Blue Cross, Indiana Blue, and/or Hartford Plan thereafter paid some or all of the assigned benefits to Patient 14 instead of Sovereign.

111.  On information and belief: Patient 15 was a participant in or beneficiary of Defendant UH / Chaminade Plan during all times relevant to this complaint.  Further, on information and belief:

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris & Maher LLP

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the UH / Chaminade Plan either (i) is insured by Hawai'i Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Hawai'i Blue and/or California Blue Cross by which the UH / Chaminade Plan receives third party administrative services.

b.      On or around April 11, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 15, who validly assigned all claims arising as a result of Sovereign's services pursuant to the UH / Chaminade Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Hawai'i Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Hawai'i Blue, and/or UH / Chaminade Plan thereafter paid some or all of the assigned benefits to Patient 15 instead of Sovereign.

112. On information and belief: Patient 16 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 16's plan either (i) is insured by Indiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around October 29, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 16, who validly

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Indiana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Indiana Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 16 instead of Sovereign.

113.   On information and belief: Patient 17 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 17's plan either (i) is insured by New Jersey Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New Jersey Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around August 28, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 17, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New Jersey Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris & Maher LLP

90

d.      California Blue Cross, New Jersey Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 17 instead of Sovereign.

114.   On information and belief: Patient 18 was a participant in or beneficiary of Defendant Bart Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Bart Plan either (i) is insured by Louisiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Louisiana Blue and/or California Blue Cross by which the Bart Plan receives third party administrative services.

b.      On or around May 15, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 18, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Bart Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Louisiana Blue on the industry-standard UB-04 form.  Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Louisiana Blue, and/or the Bart Plan thereafter paid some or all of the assigned benefits to Patient 18 instead of Sovereign.

115.   On information and belief: Patient 19 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 19's plan either (i) is insured by Ohio Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Ohio

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.  On or around March 24, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 19, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.  Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Ohio Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.  California Blue Cross, Ohio Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 19 instead of Sovereign.

116. On information and belief: Patient 20 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.  With regard to the relevant welfare benefits implicated by this lawsuit: Patient 20's plan either (i) is insured by New Jersey Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New Jersey Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.  On or around August 30, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 20, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New Jersey Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, New Jersey Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 20 instead of Sovereign.

117. On information and belief: Patient 21 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 21's plan either (i) is insured by New Jersey Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New Jersey Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around November 27, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 21, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New Jersey Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris & Maher LLP

93

d.      California Blue Cross, New Jersey Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 21 instead of Sovereign.

118.   On information and belief: Patient 22 was a participant in or beneficiary of Defendant HDR Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the HDR Plan either (i) is insured by Nebraska Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Nebraska Blue and/or California Blue Cross by which the HDR Plan receives third party administrative services.

b.      On or around December 27, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 22, who validly assigned all claims arising as a result of Sovereign's services pursuant to the HDR Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Nebraska Blue on the industry-standard UB-04 form.  Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Nebraska Blue, and/or HDR Plan thereafter paid some or all of the assigned benefits to Patient 22 instead of Sovereign.

119.   On information and belief: Patient 23 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 23's plan either (i) is insured by Kansas City Blue and/or

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

California Blue Cross or (ii) is self-insured and has entered into an agreement with Kansas City Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around January 21, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 23, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Kansas City Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Kansas City Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 23 instead of Sovereign.

120.   On information and belief: Patient 24 was a participant in or beneficiary of Defendant Delta Kappa Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Delta Kappa Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the Delta Kappa Plan receives third party administrative services.

b.      On or around March 26, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 24, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Delta Kappa Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Texas Blue, and/or Delta Kappa Plan thereafter paid some or all of the assigned benefits to Patient 24 instead of Sovereign.

121.  On information and belief: Patient 25 was a participant in or beneficiary of Defendant Dirt Free Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Dirt Free Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the Dirt Free Plan receives third party administrative services.

b.      On or around May 2, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 25, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Dirt Free Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Texas Blue, and/or Dirt Free Plan thereafter paid some or all of the assigned benefits to Patient 25 instead of Sovereign.

Stris & Maher LLP

96

122.  On information and belief: Patient 26 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.  With regard to the relevant welfare benefits implicated by this lawsuit: Patient 26's plan either (i) is insured by Connecticut Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Connecticut Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.  On or around August 2, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 26, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.  Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Connecticut Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.  California Blue Cross, Connecticut Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 26 instead of Sovereign.

123.  On information and belief: Patient 27 was a participant in or beneficiary of Defendant Bricklayers Plan during all times relevant to this complaint.  Further, on information and belief:

a.  With regard to the relevant welfare benefits implicated by this lawsuit: the Bricklayers Plan either (i) is insured by Philadelphia Blue and/or California Blue Cross or (ii) is self-insured and has entered into an

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

agreement with Philadelphia Blue and/or California Blue Cross by which the Bricklayers Plan receives third party administrative services.

b.      On or around September 30, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 27, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Bricklayers Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Philadelphia Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Philadelphia Blue, and/or Bricklayers Plan thereafter paid some or all of the assigned benefits to Patient 27 instead of Sovereign.

124.   On information and belief: Patient 28 was a participant in or beneficiary of Defendant Puget Sound Pilots Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Puget Sound Pilots Plan either (i) is insured by Washington Regence Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Regence Blue and/or California Blue Cross by which the Puget Sound Pilots Plan receives third party administrative services.

b.      On or around July 30, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 28, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Puget Sound Pilots Plan.

Stris & Maher LLP

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington Regence Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Washington Regence Blue, and/or Puget Sound Pilots Plan thereafter paid some or all of the assigned benefits to Patient 28 instead of Sovereign.

125.  On information and belief: Patient 30 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 30's plan either (i) is insured by Tennessee Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Tennessee Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around February 14, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 30, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Tennessee Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

d.      California Blue Cross, Tennessee Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 30 instead of Sovereign.

126.  On information and belief: Patient 31 was a participant in or beneficiary of Defendant TUV Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the TUV Plan either (i) is insured by Massachusetts Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Massachusetts Blue and/or California Blue Cross by which the TUV Plan receives third party administrative services.

b.      On or around September 10, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 31, who validly assigned all claims arising as a result of Sovereign's services pursuant to the TUV Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Massachusetts Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Massachusetts Blue, and/or TUV Plan thereafter paid some or all of the assigned benefits to Patient 31 instead of Sovereign.

127.  On information and belief: Patient 32 was a participant in or beneficiary of Defendant AEA Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the AEA Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the AEA Plan receives third party administrative services.

b. On or around October 4, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 32, who validly assigned all claims arising as a result of Sovereign's services pursuant to the AEA Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Texas Blue, and/or AEA Plan thereafter paid some or all of the assigned benefits to Patient 32 instead of Sovereign.

128. On information and belief: Patient 33 was a participant in or beneficiary of Defendant WF Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the WF Plan either (i) is insured by Indiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue and/or California Blue Cross by which the WF Plan receives third party administrative services.

b. On or around February 26, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 33, who validly

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris & Maher LLP

assigned all claims arising as a result of Sovereign's services pursuant to the WF Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Indiana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Indiana Blue, and/or WF Plan thereafter paid some or all of the assigned benefits to Patient 33 instead of Sovereign.

129. On information and belief: Patient 34 was a participant in or beneficiary of Defendant SeaBright Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the SeaBright Plan either (i) is insured by Washington Premera Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Premera Blue and/or California Blue Cross by which the SeaBright Plan receives third party administrative services.

b. On or around November 12, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 34, who validly assigned all claims arising as a result of Sovereign's services pursuant to the SeaBright Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington Premera Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

d.     California Blue Cross, Washington Premera Blue, and/or SeaBright Plan thereafter paid some or all of the assigned benefits to Patient 34 instead of Sovereign.

130.  On information and belief: Patient 35 was a participant in or beneficiary of Defendant Simplot Plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Simplot Plan either (i) is insured by Idaho Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Idaho Blue and/or California Blue Cross by which the Simplot Plan receives third party administrative services.

b.     On or around November 29, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 35, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Simplot Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Idaho Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Idaho Blue, and/or Simplot Plan thereafter paid some or all of the assigned benefits to Patient 35 instead of Sovereign.

131.  On information and belief: Patient 36 was a participant in or beneficiary of Defendant H.E. Butt Grocery Plan during all times relevant to this complaint. Further, on information and belief:

Stris &
Maher LLP

103

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the H.E. Butt Grocery Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the H.E. Butt Grocery Plan receives third party administrative services.

b.      On or around December 30, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 36, who validly assigned all claims arising as a result of Sovereign's services pursuant to the H.E. Butt Grocery Plan.

c.      Shortly   thereafter,   Sovereign   submitted   claims   seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Texas Blue, and/or H.E. Butt Grocery Plan thereafter paid some or all of the assigned benefits to Patient 36 instead of Sovereign.

132.  On information and belief: Patient 37 was a participant in or beneficiary of Defendant OraSure Tech Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the OraSure Tech Plan either (i) is insured by Pennsylvania Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Pennsylvania Blue and/or California Blue Cross by which the OraSure Tech Plan receives third party administrative services.

b.      On or around June 30, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 37, who validly assigned all

claims arising as a result of Sovereign's services pursuant to the OraSure Tech Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Pennsylvania Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Pennsylvania Blue, and/or OraSure Tech Plan thereafter paid some or all of the assigned benefits to Patient 37 instead of Sovereign.

133. On information and belief: Patient 38 was a participant in or beneficiary of Defendant FAS Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the FAS Plan either (i) is insured by Florida Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Florida Blue and/or California Blue Cross by which the FAS Plan receives third party administrative services.

b. On or around January 13, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 38, who validly assigned all claims arising as a result of Sovereign's services pursuant to the FAS Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Florida Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

d.      California Blue Cross, Florida Blue, and/or FAS Plan thereafter paid some or all of the assigned benefits to Patient 38 instead of Sovereign.

134.   On information and belief: Patient 40 was a participant in or beneficiary of Defendant Elliott Electric Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Elliott Electric Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the Elliott Electric Plan receives third party administrative services.

b.      On or around October 10, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 40, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Elliott Electric Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Texas Blue, and/or Elliott Electric Plan thereafter paid some or all of the assigned benefits to Patient 40 instead of Sovereign.

135.   On information and belief: Patient 41 was a participant in or beneficiary of Defendant SAS Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the SAS Plan either (i) is insured by North Carolina Blue and/or

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

California Blue Cross or (ii) is self-insured and has entered into an agreement with North Carolina Blue and/or California Blue Cross by which the SAS Plan receives third party administrative services.

b.     On or around January 8, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 41, who validly assigned all claims arising as a result of Sovereign's services pursuant to the SAS Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or North Carolina Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, North Carolina Blue, and/or SAS Plan thereafter paid some or all of the assigned benefits to Patient 41 instead of Sovereign.

136. On information and belief: Patient 42 was a participant in or beneficiary of Defendant Bakery Drivers Plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Bakery Drivers Plan either (i) is insured by Minnesota Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue and/or California Blue Cross by which the Bakery Drivers Plan receives third party administrative services.

b.     On or around November 6, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 42, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Bakery Drivers Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Minnesota Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Minnesota Blue, and/or Bakery Drivers Plan thereafter paid some or all of the assigned benefits to Patient 42 instead of Sovereign.

137.   On information and belief: Patient 43 was a participant in or beneficiary of Defendant WF Plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: WF Plan either (i) is insured by Indiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue and/or California Blue Cross by which WF Plan receives third party administrative services.

b.     On or around May 17, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 43, who validly assigned all claims arising as a result of Sovereign's services pursuant to the WF Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Indiana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Indiana Blue, and/or WF Plan thereafter paid some or all of the assigned benefits to Patient 43 instead of Sovereign.

Stris & Maher LLP

108

138. On information and belief: Patient 44 was a participant in or beneficiary of Defendant Simplot Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Simplot Plan either (i) is insured by Idaho Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Idaho Blue and/or California Blue Cross by which the Simplot Plan receives third party administrative services.

b. On or around August 1, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 44, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Simplot Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Idaho Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Idaho Blue, and/or Simplot Plan thereafter paid some or all of the assigned benefits to Patient 44 instead of Sovereign.

139. On information and belief: Patient 45 was a participant in or beneficiary of Defendant American Air Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the American Air Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement

with Texas Blue and/or California Blue Cross by which the American Air Plan receives third party administrative services.

b.      On or around May 8, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 45, who validly assigned all claims arising as a result of Sovereign's services pursuant to the American Air Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Texas Blue, and/or American Air Plan thereafter paid some or all of the assigned benefits to Patient 45 instead of Sovereign.

140.  On information and belief: Patient 46 was a participant in or beneficiary of Defendant Wal-Mart Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Wal-Mart Plan either (i) is insured by Arkansas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Arkansas Blue and/or California Blue Cross by which the Wal-Mart Plan receives third party administrative services.

b.      On or around May 29, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 46, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Wal-Mart Plan.

Stris & Maher LLP

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Arkansas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Arkansas Blue, and/or Wal-Mart Plan thereafter paid some or all of the assigned benefits to Patient 46 instead of Sovereign.

141.  On information and belief: Patient 47 was a participant in or beneficiary of Defendant Green Tree Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Green Tree Plan either (i) is insured by Minnesota Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue and/or California Blue Cross by which the Green Tree Plan receives third party administrative services.

b.      On or around October 10, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 47, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Green Tree Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Minnesota Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris & Maher LLP

111

d.      California Blue Cross, Minnesota Blue, and/or Green Tree Plan thereafter paid some or all of the assigned benefits to Patient 47 instead of Sovereign.

142.   On information and belief: Patient 48 was a participant in or beneficiary of Defendant Martin Marietta Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Martin Marietta Plan either (i) is insured by North Carolina Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with North Carolina Blue and/or California Blue Cross by which the Martin Marietta Plan receives third party administrative services.

b.      On or around May 7, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 48, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Martin Marietta Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or North Carolina Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, North Carolina Blue, and/or Martin Marietta Plan thereafter paid some or all of the assigned benefits to Patient 48 instead of Sovereign.

143.   On information and belief: Patient 49 was a participant in or beneficiary of Defendant Xerox Plan during all times relevant to this complaint. Further, on information and belief:

Stris & Maher LLP

112

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Xerox Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the Xerox Plan receives third party administrative services.

b.      On or around March 11, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 49, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Xerox Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Texas Blue, and/or Xerox Plan thereafter paid some or all of the assigned benefits to Patient 49 instead of Sovereign.

144.  On information and belief: Patient 50 was a participant in or beneficiary of Defendant Ernst & Young Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Ernst & Young Plan either (i) is insured by New York Empire Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New York Empire Blue and/or California Blue Cross by which the Ernst & Young Plan receives third party administrative services.

b.      On or around February 25, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 50, who validly

Stris & Maher LLP

assigned all claims arising as a result of Sovereign's services pursuant to the Ernst & Young Plan.

c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New York Empire Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.    California Blue Cross, New York Empire Blue, and/or Ernst & Young Plan thereafter paid some or all of the assigned benefits to Patient 50 instead of Sovereign.

145.  On information and belief: Patient 51 was a participant in or beneficiary of Defendant Owens-Illinois Plan during all times relevant to this complaint. Further, on information and belief:

a.    With regard to the relevant welfare benefits implicated by this lawsuit: the Owens-Illinois Plan either (i) is insured by Ohio Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Ohio Blue and/or California Blue Cross by which the Owens-Illinois Plan receives third party administrative services.

b.    On or around January 16, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 51, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Owens-Illinois Plan.

c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Ohio Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

1        d.    California Blue Cross, Ohio Blue, and/or Owens-Illinois Plan

2    thereafter paid some or all of the assigned benefits to Patient 51 instead of

3    Sovereign.

4    146. On information and belief: Patient 52 was a participant in or

5    beneficiary of Defendant Huntington Plan during all times relevant to this

6    complaint. Further, on information and belief:

7        a.    With regard to the relevant welfare benefits implicated by this

8    lawsuit: the Huntington Plan either (i) is insured by Ohio Blue and/or

9    California Blue Cross or (ii) is self-insured and has entered into an agreement

10   with Ohio Blue and/or California Blue Cross by which the Huntington Plan

11   receives third party administrative services.

12       b.    On or around November 1, 2013, Sovereign began providing

13   mental health and/or drug addiction treatment to Patient 52, who validly

14   assigned all claims arising as a result of Sovereign's services pursuant to the

15   Huntington Plan.

16       c.    Shortly thereafter, Sovereign submitted claims seeking

17   reimbursement for these services to California Blue Cross or Ohio Blue on

18   the industry-standard UB-04 form. Sovereign indicated that it was requesting

19   that benefits be paid to it as an assignee by inserting the letter Y in the

20   appropriate field (box 53) each time it submitted a claim.

21       d.    California Blue Cross, Ohio Blue, and/or Huntington Plan

22   thereafter paid some or all of the assigned benefits to Patient 52 instead of

23   Sovereign.

24   147. On information and belief: Patient 53 was a participant in or

25   beneficiary of Defendant Live Nation Plan during all times relevant to this

26   complaint. Further, on information and belief:

27

28

Stris &
Maher LLP

115

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Live Nation Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Live Nation Plan receives third party administrative services.

b.     On or around March 3, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 53, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Live Nation Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross and/or Live Nation Plan thereafter paid some or all of the assigned benefits to Patient 53 instead of Sovereign.

148.  On information and belief: Patient 54 was a participant in or beneficiary of Defendant Consolidated Graphics Plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Consolidated Graphics Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the Consolidated Graphics Plan receives third party administrative services.

b.     On or around June 25, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 54, who validly assigned all

Stris &
Maher LLP

116

1    claims arising as a result of Sovereign's services pursuant to the Consolidated

2    Graphics Plan.

3         c.      Shortly   thereafter,   Sovereign   submitted   claims   seeking

4    reimbursement for these services to California Blue Cross or Texas Blue on

5    the industry-standard UB-04 form. Sovereign indicated that it was requesting

6    that benefits be paid to it as an assignee by inserting the letter Y in the

7    appropriate field (box 53) each time it submitted a claim.

8         d.      California   Blue   Cross,   Texas   Blue,   and/or   Consolidated

9    Graphics Plan thereafter paid some or all of the assigned benefits to Patient

10   54 instead of Sovereign.

11   149. On information and belief: Patient 55 was a participant in or

12   beneficiary of Defendant WebMD Plan during all times relevant to this complaint.

13   Further, on information and belief:

14        a.      With regard to the relevant welfare benefits implicated by this

15   lawsuit: the WebMD Plan either (i) is insured by New Jersey Blue and/or

16   California Blue Cross or (ii) is self-insured and has entered into an agreement

17   with New Jersey Blue and/or California Blue Cross by which the WebMD

18   Plan receives third party administrative services.

19        b.      On or around October 1, 2014, Sovereign began providing

20   mental health and/or drug addiction treatment to Patient 55, who validly

21   assigned all claims arising as a result of Sovereign's services pursuant to the

22   WebMD Plan.

23        c.      Shortly   thereafter,   Sovereign   submitted   claims   seeking

24   reimbursement for these services to California Blue Cross or New Jersey

25   Blue on the industry-standard UB-04 form. Sovereign indicated that it was

26   requesting that benefits be paid to it as an assignee by inserting the letter Y in

27   the appropriate field (box 53) each time it submitted a claim.

28

Stris &
Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

d.      California Blue Cross, New Jersey Blue, and/or WebMD Plan thereafter paid some or all of the assigned benefits to Patient 55 instead of Sovereign.

150.   On information and belief: Patient 56 was a participant in or beneficiary of Defendant ViaSat Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the ViaSat Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the ViaSat Plan receives third party administrative services.

b.      On or around October 8, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 56, who validly assigned all claims arising as a result of Sovereign's services pursuant to the ViaSat Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or ViaSat Plan thereafter paid some or all of the assigned benefits to Patient 56 instead of Sovereign.

151.   On information and belief: Patient 57 was a participant in or beneficiary of Defendant ConAgra Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the ConAgra Plan either (i) is insured by Nebraska Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement

with Nebraska Blue and/or California Blue Cross by which the ConAgra Plan receives third party administrative services.

      b.    On or around January 9, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 57, who validly assigned all claims arising as a result of Sovereign's services pursuant to the ConAgra Plan.

      c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Nebraska Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.    California Blue Cross, Nebraska Blue, and/or ConAgra Plan thereafter paid some or all of the assigned benefits to Patient 57 instead of Sovereign.

152. On information and belief: Patient 58 was a participant in or beneficiary of Defendant Kiewit Plan during all times relevant to this complaint. Further, on information and belief:

      a.    With regard to the relevant welfare benefits implicated by this lawsuit: the Kiewit Plan either (i) is insured by Wyoming Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Wyoming Blue and/or California Blue Cross by which the Kiewit Plan receives third party administrative services.

      b.    On or around September 21, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 58, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Kiewit Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Wyoming Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Wyoming Blue, and/or Kiewit Plan thereafter paid some or all of the assigned benefits to Patient 58 instead of Sovereign.

153.   On information and belief: Patient 60 was a participant in or beneficiary of Defendant Novartis Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Novartis Plan either (i) is insured by New Jersey Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New Jersey Blue and/or California Blue Cross by which the Novartis Plan receives third party administrative services.

b.      On or around July 14, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 60, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Novartis Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New Jersey Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

120

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

d.     California Blue Cross, New Jersey Blue, and/or Novartis Plan thereafter paid some or all of the assigned benefits to Patient 60 instead of Sovereign.

154.  On information and belief: Patient 61 was a participant in or beneficiary of Defendant Globecast Plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Globecast Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Globecast Plan receives third party administrative services.

b.     On or around July 3, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 61, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Globecast Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross and/or Globecast Plan thereafter paid some or all of the assigned benefits to Patient 61 instead of Sovereign.

155.  On information and belief: Patient 62 was a participant in or beneficiary of Defendant Milton S. Hershey Plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Milton S. Hershey Plan either (i) is insured by Central

Pennsylvania Blue, Highmark, and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Central Pennsylvania Blue, Highmark, and/or California Blue Cross by which the Milton S. Hershey Plan receives third party administrative services.

b. On or around January 11, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 62, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Milton S. Hershey Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross, Central Pennsylvania Blue, or Highmark on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Central Pennsylvania Blue, Highmark, and/or Milton S. Hershey Plan thereafter paid some or all of the assigned benefits to Patient 62 instead of Sovereign.

156. On information and belief: Patient 64 was a participant in or beneficiary of Defendant Rio Tinto Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Rio Tinto Plan either (i) is insured by Utah Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Utah Blue and/or California Blue Cross by which the Rio Tinto Plan receives third party administrative services.

b. On or around September 4, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 64, who validly

1    assigned all claims arising as a result of Sovereign's services pursuant to the
2    Rio Tinto Plan.

3        c.    Shortly thereafter, Sovereign submitted claims seeking
4    reimbursement for these services to California Blue Cross or Utah Blue on
5    the industry-standard UB-04 form. Sovereign indicated that it was requesting
6    that benefits be paid to it as an assignee by inserting the letter Y in the
7    appropriate field (box 53) each time it submitted a claim.

8        d.    California Blue Cross, Utah Blue, and/or Rio Tinto Plan
9    thereafter paid some or all of the assigned benefits to Patient 64 instead of
10   Sovereign.

11   157.  On information and belief: Patient 65 was a participant in or
12   beneficiary of Defendant Oregon Teamster Plan during all times relevant to this
13   complaint. Further, on information and belief:

14       a.    With regard to the relevant welfare benefits implicated by this
15   lawsuit: the Oregon Teamster Plan either (i) is insured by Oregon Blue and/or
16   California Blue Cross or (ii) is self-insured and has entered into an agreement
17   with Oregon Blue and/or California Blue Cross by which the Oregon
18   Teamster Plan receives third party administrative services.

19       b.    On or around September 22, 2014, Sovereign began providing
20   mental health and/or drug addiction treatment to Patient 65, who validly
21   assigned all claims arising as a result of Sovereign's services pursuant to the
22   Oregon Teamster Plan.

23       c.    Shortly thereafter, Sovereign submitted claims seeking
24   reimbursement for these services to California Blue Cross or Oregon Blue on
25   the industry-standard UB-04 form. Sovereign indicated that it was requesting
26   that benefits be paid to it as an assignee by inserting the letter Y in the
27   appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

28

123

d.      California Blue Cross, Oregon Blue, and/or Oregon Teamster Plan thereafter paid some or all of the assigned benefits to Patient 65 instead of Sovereign.

158.  On information and belief: Patient 66 was a participant in or beneficiary of Defendant Geico Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Geico Plan either (i) is insured by California Blue Cross, CareFirst Maryland Blue, and/or CareFirst District of Columbia Blue or (ii) is self-insured and has entered into an agreement with California Blue Cross, CareFirst Maryland Blue, and/or CareFirst District of Columbia Blue by which the Geico Plan receives third party administrative services.

b.      On or around October 19, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 66, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Geico Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross, CareFirst Maryland Blue, and/or CareFirst District of Columbia Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, CareFirst Maryland Blue, CareFirst District of Columbia Blue, and/or Geico Plan thereafter paid some or all of the assigned benefits to Patient 66 instead of Sovereign.

Stris &
Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

159. On information and belief: Patient 67 was a participant in or beneficiary of Defendant Verizon Plan during all times relevant to this complaint. Further, on information and belief:

    a.    With regard to the relevant welfare benefits implicated by this lawsuit: the Verizon Plan either (i) is insured by Ohio Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Ohio Blue and/or California Blue Cross by which the Verizon Plan receives third party administrative services.

    b.    On or around May 22, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 67, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Verizon Plan.

    c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Ohio Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.    California Blue Cross, Ohio Blue, and/or Verizon Plan thereafter paid some or all of the assigned benefits to Patient 67 instead of Sovereign.

160. On information and belief: Patient 68 was a participant in or beneficiary of Defendant 3M Plan during all times relevant to this complaint. Further, on information and belief:

    a.    With regard to the relevant welfare benefits implicated by this lawsuit: the 3M Plan either (i) is insured by Minnesota Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue and/or California Blue Cross by which the 3M Plan receives third party administrative services.

Stris & Maher LLP

b.      On or around February 20, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 68, who validly assigned all claims arising as a result of Sovereign's services pursuant to the 3M Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Minnesota Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Minnesota Blue, and/or 3M Plan thereafter paid some or all of the assigned benefits to Patient 68 instead of Sovereign.

161.   On information and belief: Patient 69 was a participant in or beneficiary of Defendant Covance Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Covance Plan either (i) is insured by New Jersey Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New Jersey Blue and/or California Blue Cross by which the Covance Plan receives third party administrative services.

b.      On or around March 4, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 69, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Covance Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New Jersey Blue on the industry-standard UB-04 form. Sovereign indicated that it was

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

1    requesting that benefits be paid to it as an assignee by inserting the letter Y in

2    the appropriate field (box 53) each time it submitted a claim.

3        d.    California Blue Cross, New Jersey Blue, and/or Covance Plan

4    thereafter paid some or all of the assigned benefits to Patient 69 instead of

5    Sovereign.

6    162.   On information and belief: Patient 70 was a participant in or

7    beneficiary of Defendant Vertical Plan during all times relevant to this complaint.

8    Further, on information and belief:

9        a.    With regard to the relevant welfare benefits implicated by this

10   lawsuit: the Vertical Plan either (i) is insured by CareFirst District of

11   Columbia Blue and/or California Blue Cross or (ii) is self-insured and has

12   entered into an agreement with CareFirst District of Columbia Blue and/or

13   California Blue Cross by which the Vertical Plan receives third party

14   administrative services.

15       b.    On or around October 12, 2013, Sovereign began providing

16   mental health and/or drug addiction treatment to Patient 70, who validly

17   assigned all claims arising as a result of Sovereign's services pursuant to the

18   Vertical Plan.

19       c.    Shortly thereafter, Sovereign submitted claims seeking

20   reimbursement for these services to California Blue Cross or CareFirst

21   District of Columbia Blue on the industry-standard UB-04 form. Sovereign

22   indicated that it was requesting that benefits be paid to it as an assignee by

23   inserting the letter Y in the appropriate field (box 53) each time it submitted a

24   claim.

25       d.    California Blue Cross, CareFirst District of Columbia Blue,

26   and/or Vertical Plan thereafter paid some or all of the assigned benefits to

27   Patient 70 instead of Sovereign.

28

Stris &
Maher LLP

127

163. On information and belief: Patient 71 was a participant in or beneficiary of Defendant Bard Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Bard Plan either (i) is insured by New Jersey Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New Jersey Blue and/or California Blue Cross by which the Bard Plan receives third party administrative services.

b. On or around June 18, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 71, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Bard Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New Jersey Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, New Jersey Blue, and/or Bard Plan thereafter paid some or all of the assigned benefits to Patient 71 instead of Sovereign.

164. On information and belief: Patient 72 was a participant in or beneficiary of Defendant Eaton Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Eaton Plan either (i) is insured by New York Anthem Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New York Anthem Blue and/or California Blue Cross by which the Eaton Plan receives third party administrative services.

Stris & Maher LLP

128

b.      On or around May 6, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 72, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Eaton Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New York Anthem Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, New York Anthem Blue, and/or Eaton Plan thereafter paid some or all of the assigned benefits to Patient 72 instead of Sovereign.

165. On information and belief: Patient 73 was a participant in or beneficiary of Defendant Baxter Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Baxter Plan either (i) is insured by Illinois Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Illinois Blue and/or California Blue Cross by which the Baxter Plan receives third party administrative services.

b.      On or around May 14, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 73, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Baxter Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Illinois Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

129

d.      California Blue Cross, Illinois Blue, and/or Baxter Plan thereafter paid some or all of the assigned benefits to Patient 73 instead of Sovereign.

166.   On information and belief: Patient 74 was a participant in or beneficiary of Defendant Alltech Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Alltech Plan either (i) is insured by Kentucky Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Kentucky Blue and/or California Blue Cross by which the Alltech Plan receives third party administrative services.

b.      On or around August 7, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 74, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Alltech Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Kentucky Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Kentucky Blue, and/or Alltech Plan thereafter paid some or all of the assigned benefits to Patient 74 instead of Sovereign.

167.   On information and belief: Patient 75 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 75's plan either (i) is insured by Utah Blue and/or California

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Blue Shield or (ii) is self-insured and has entered into an agreement with Utah Blue and/or California Blue Shield by which the unknown plan receives third party administrative services.

b.      On or around October 14, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 75, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield or Utah Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Shield, Utah Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 75 instead of Sovereign.

168.   On information and Patient 76 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 76's plan either (i) is insured by Tennessee Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Tennessee Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around September 4, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 76, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

Stris &
Maher LLP

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Tennessee Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Tennessee Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 76 instead of Sovereign.

169.   On information and belief: Patient 77 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 77's plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around May 13, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 77, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Texas Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 77 instead of Sovereign.

Stris &
Maher LLP

132

170.   On information and belief: Patient 78 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 78's plan either (i) is insured by Minnesota Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around June 3, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 78, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Minnesota Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Minnesota Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 78 instead of Sovereign.

171.   On information and belief: Patient 79 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 79's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around November 29, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 79, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 79 instead of Sovereign.

172.   On information and belief: Patient 80 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 80's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around March 6, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 80, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

134

d.      California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 80 instead of Sovereign.

173.  On information and belief: Patient 81 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 81's plan either (i) is insured by California Blue Shield or (ii) is self-insured and has entered into an agreement with California Blue Shield by which the unknown plan receives third party administrative services.

b.      On or around September 9, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 81, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Shield and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 81 instead of Sovereign.

174.  On information and belief: Patient 82 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 82's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

b.    On or around February 21, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 82, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.    California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 82 instead of Sovereign.

175.  On information and belief: Patient 83 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.    With regard to the relevant welfare benefits implicated by this lawsuit: Patient 83's plan either (i) is insured by New York Excellus Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New York Excellus Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.    On or around January 9, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 83, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New York Excellus Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

d.      California Blue Cross, New York Excellus Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 83 instead of Sovereign.

176.   On information and belief: Patient 84 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 84's plan either (i) is insured by North Carolina Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with North Carolina Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around November 15, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 84, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or North Carolina Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, North Carolina Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 84 instead of Sovereign.

177.   On information and belief: Patient 85 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 85's plan either (i) is insured by California Blue Cross or (ii)

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

b.     On or around June 6, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 85, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 85 instead of Sovereign.

178.  On information and belief: Patient 86 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: Patient 86's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

b.     On or around December 13, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 86, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that

Stris &
Maher LLP

138

benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.    California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 86 instead of Sovereign.

179.  On information and belief: Patient 87 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

      a.    With regard to the relevant welfare benefits implicated by this lawsuit: Patient 87's plan either (i) is insured by Louisiana HMO Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Louisiana HMO Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

      b.    On or around September 25, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 87, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

      c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Louisiana HMO Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.    California Blue Cross, Louisiana HMO Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 87 instead of Sovereign.

180.  On information and belief: Patient 88 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

Stris & Maher LLP

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 88's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around March 25, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 88, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 88 instead of Sovereign.

181.   On information and belief: Patient 89 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 89's plan either (i) is insured by CareFirst Maryland Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with CareFirst Maryland Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around February 13, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 89, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

Stris &
Maher LLP

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or CareFirst Maryland Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, CareFirst Maryland Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 89 instead of Sovereign.

182.   On information and belief: Patient 90 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 90's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around November 2, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 90, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 90 instead of Sovereign.

Stris &
Maher LLP

141

183.   On information and belief: Patient 91 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

      a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 91's plan either (i) is insured by Montana Blue and/or California Blue Shield or (ii) is self-insured and has entered into an agreement with Montana Blue and/or California Blue Shield by which the unknown plan receives third party administrative services.

      b.      On or around June 26, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 91, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

      c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield or Montana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.      California Blue Shield, Montana Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 91 instead of Sovereign.

184.   On information and belief: Patient 92 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

      a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 92's plan either (i) is insured by New Mexico Blue and/or California Blue Shield or (ii) is self-insured and has entered into an agreement with New Mexico Blue and/or California Blue Shield by which the unknown plan receives third party administrative services.

Stris & Maher LLP

142

b.      On or around October 29, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 92, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield or New Mexico Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Shield, New Mexico Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 92 instead of Sovereign.

185.   On information and belief: Patient 93 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 93's plan either (i) is insured by California Blue Cross, CareFirst Maryland Blue and/or CareFirst District of Columbia Blue or (ii) is self-insured and has entered into an agreement with California Blue Cross, CareFirst Maryland Blue and/or CareFirst District of Columbia Blue by which the unknown plan receives third party administrative services.

b.      On or around April 28, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 93, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross, CareFirst Maryland Blue and/or CareFirst District of Columbia Blue on the industry-

Stris &
Maher LLP

143

standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, CareFirst Maryland Blue, CareFirst District of Columbia Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 93 instead of Sovereign.

186.   On information and belief: Patient 94 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 94's plan either (i) is insured by Arizona Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Arizona Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around March 31, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 94, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Arizona Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Arizona Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 94 instead of Sovereign.

Stris &
Maher LLP

144

187.   On information and belief: Patient 95 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: Patient 95's plan either (i) is insured by California Blue Shield and/or California Blue Shield Life or (ii) is self-insured and has entered into an agreement with California Blue Shield and/or California Blue Shield Life by which the unknown plan receives third party administrative services.

b.   On or around April 11, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 95, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.   Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield or California Blue Shield Life on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.   California Blue Shield, California Blue Shield Life, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 95 instead of Sovereign.

188.   On information and belief: Patient 96 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: Patient 96's plan either (i) is insured by Florida Blue and/or California Blue Cross or (ii) is self-insured and has entered into an

Stris & Maher LLP

145

agreement with Florida Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b. On or around April 3, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 96, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Florida Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Florida Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 96 instead of Sovereign.

189. On information and belief: Patient 97 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: Patient 97's plan either (i) is insured by Nebraska Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Nebraska Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b. On or around January 23, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 97, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Nebraska Blue

Stris & Maher LLP

146

on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Nebraska Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 97 instead of Sovereign.

190.   On information and belief: Patient 98 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: Patient 98's plan either (i) is insured by Arkansas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Arkansas Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.     On or around April 24, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 98, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Arkansas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Arkansas Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 98 instead of Sovereign.

191.   On information and belief: Patient 99 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 99's plan either (i) is insured by Washington Regence Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Regence Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around February 11, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 99, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington Regence Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Washington Regence Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 99 instead of Sovereign.

192.   On information and belief: Patient 100 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 100's plan either (i) is insured by Wisconsin Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Wisconsin Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

Stris &
Maher LLP

b.      On or around March 2, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 100, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Wisconsin Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Wisconsin Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 100 instead of Sovereign.

193.   On information and belief: Patient 101 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 101's plan either (i) is insured by South Dakota Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with South Dakota Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around February 5, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 101, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or South Dakota Blue on the industry-standard UB-04 form. Sovereign indicated that it was

Stris & Maher LLP

requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

   d.   California Blue Cross, South Dakota Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 101 instead of Sovereign.

194.   On information and belief: Patient 102 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

   a.   With regard to the relevant welfare benefits implicated by this lawsuit Patient 102's plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

   b.   On or around February 28, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 102, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

   c.   Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

   d.   California Blue Cross, Texas Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 102 instead of Sovereign.

195.   On information and belief: Patient 103 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: Patient 103's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

b. On or around December 3, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 103, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 103 instead of Sovereign.

196. On information and belief: Patient 104 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: Patient 104's plan either (i) is insured by Maryland Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Maryland Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b. On or around June 30, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 104, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Maryland Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Maryland Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 104 instead of Sovereign.

197.   On information and belief: Patient 105 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: Patient 105's plan either (i) is insured by Oregon Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Oregon Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.     On or around September 16, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 105, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Oregon Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Oregon Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 105 instead of Sovereign.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

198. On information and belief: Patient 106 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: Patient 106's plan either (i) is insured by Florida Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Florida Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b. On or around April 2, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 106, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Florida Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Florida Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 106 instead of Sovereign.

199. On information and belief: Patient 107 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: Patient 107's plan either (i) is insured by New Jersey Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New Jersey Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

Stris & Maher LLP

153

b.      On or around February 4, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 107, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New Jersey Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, New Jersey Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 107 instead of Sovereign.

200.  On information and belief: Patient 108 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 108's plan either (i) is insured by Indiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around March 12, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 108, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Indiana Blue on the industry-standard UB-04 form. Sovereign indicated that it was

requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.      California Blue Cross, Indiana Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 108 instead of Sovereign.

201.  On information and belief: Patient 109 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

      a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 109's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

      b.      On or around November 19, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 109, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

      c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.      California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 109 instead of Sovereign.

202.  On information and belief: Patient 110 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

Stris &
Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 110's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around April 9, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 110, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 110 instead of Sovereign.

203.  On information and belief: Patient 111 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 111's plan either (i) is insured by Oklahoma Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Oklahoma Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around January 26, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 111, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

Stris & Maher LLP

156

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Oklahoma Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Oklahoma Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 111 instead of Sovereign.

204.  On information and belief: Patient 112 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 112's plan either (i) is insured by Alaska Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Alaska Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around March 19, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 112, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Alaska Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Alaska Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 112 instead of Sovereign.

Stris & Maher LLP

157

205. On information and belief: Patient 113 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

    a. With regard to the relevant welfare benefits implicated by this lawsuit: Patient 113's plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

    b. On or around March 23, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 113, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

    c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d. California Blue Cross, Texas Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 113 instead of Sovereign.

206. On information and belief: Patient 114 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

    a. With regard to the relevant welfare benefits implicated by this lawsuit: Patient 114's plan either (i) is insured by Alabama Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Alabama Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

Stris &
Maher LLP

b.     On or around January 28, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 114, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Alabama Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Alabama Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 114 instead of Sovereign.

207.   On information and belief: Patient 115 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: Patient 115's plan either (i) is insured by Washington Regence Blue, Washington Premera Blue, and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Regence Blue, Washington Premera Blue, and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.     On or around November 4, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 115, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross, Washington Regence Blue or Washington Premera Blue on the industry-standard UB-04

Stris &
Maher LLP

159

form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

     d.     California Blue Cross, Washington Regence Blue, Washington Premera Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 115 instead of Sovereign.

208. On information and belief: Patient 116 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

     a.     With regard to the relevant welfare benefits implicated by this lawsuit: Patient 116's plan either (i) is insured by Arizona Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Arizona Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

     b.     On or around March 12, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 116, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

     c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Arizona Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

     d.     California Blue Cross, Arizona Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 116 instead of Sovereign.

209.   On information and belief: Patient 117 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: Patient 117's  plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

b.   On or around November 11, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 117, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.   Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.   California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 117 instead of Sovereign.

210.   On information and belief: Patient 118 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: Patient 118's plan either (i) is insured by Virginia Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Virginia Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

Stris &
Maher LLP

161

b.      On or around April 14, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 118, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Virginia Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Virginia Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 118 instead of Sovereign.

211.   On information and belief: Patient 119 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 119's plan either (i) is insured by California Blue Shield and/or California Blue Shield Life or (ii) is self-insured and has entered into an agreement with California Blue Shield and/or California Blue Shield Life by which the unknown plan receives third party administrative services.

b.      On or around February 10, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 119, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield or California Blue Shield Life on the industry-standard UB-04 form. Sovereign indicated

Stris & Maher LLP

162

that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.     California Blue Shield, California Blue Shield Life, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 119 instead of Sovereign.

212.  On information and belief: Patient 120 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

      a.     With regard to the relevant welfare benefits implicated by this lawsuit: Patient 120's plan either (i) is insured by California Blue Shield or (ii) is self-insured and has entered into an agreement with California Blue Shield by which the unknown plan receives third party administrative services.

      b.     On or around January 26, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 120, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

      c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.     California Blue Shield and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 120 instead of Sovereign.

213.  On information and belief: Patient 121 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

Stris & Maher LLP

163

a.     With regard to the relevant welfare benefits implicated by this lawsuit: Patient 121's plan either (i) is insured by Tennessee Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Tennessee Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.     On or around April 2, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 121, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Tennessee Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Tennessee Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 121 instead of Sovereign.

214.  On information and belief: Patient 122 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: Patient 122's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

b.     On or around December 23, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 122, who validly

Stris &
Maher LLP

assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 122 instead of Sovereign.

215.   On information and belief: Patient 123 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 123's plan either (i) is insured by Philadelphia Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Philadelphia Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around April 24, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 123, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Philadelphia Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris & Maher LLP

d. California Blue Cross, Philadelphia Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 123 instead of Sovereign.

216. On information and belief: Patient 124 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: Patient 124's plan either (i) is insured by Oklahoma Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Oklahoma Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b. On or around May 15, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 124, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Oklahoma Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Oklahoma Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 124 instead of Sovereign.

217. On information and belief: Patient 125 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: Patient 125's plan either (i) is insured by California Blue Cross or

Stris &
Maher LLP

166

(ii) is self-insured and has entered into an agreement with California Blue Cross by which the unknown plan receives third party administrative services.

 b. On or around May 27, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 125, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

 c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

 d. California Blue Cross and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 125 instead of Sovereign.

218. On information and belief: Patient 126 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

 a. With regard to the relevant welfare benefits implicated by this lawsuit: Patient 126's plan either (i) is insured by Nebraska Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Nebraska Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

 b. On or around May 22, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 126, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

 c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Nebraska Blue

Stris & Maher LLP

on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Nebraska Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 126 instead of Sovereign.

219.   On information and belief: Patient 127 was a participant in or beneficiary of Defendant GKN Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the GKN Plan either (i) is insured by Western Pennsylvania Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Western Pennsylvania Blue and/or California Blue Cross by which the GKN Plan receives third party administrative services.

b.      On or around May 16, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 127, who validly assigned all claims arising as a result of Sovereign's services pursuant to the GKN Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Western Pennsylvania Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Western Pennsylvania Blue, and/or GKN Plan thereafter paid some or all of the assigned benefits to Patient 127 instead of Sovereign.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris & Maher LLP

220.  On information and belief: Patient 128 was a participant in or beneficiary of Defendant ION Geophysical Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the ION Geophysical Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the ION Geophysical Plan receives third party administrative services.

b.      On or around March 19, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 128, who validly assigned all claims arising as a result of Sovereign's services pursuant to the ION Geophysical Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Texas Blue, and/or ION Geophysical Plan thereafter paid some or all of the assigned benefits to Patient 128 instead of Sovereign.

221.  On information and belief: Patient 129 was a participant in or beneficiary of Defendant Xerox Corp. Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Xerox Corp. Plan either (i) is insured by Indiana Blue, New York Empire Blue, and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue, New York Empire Blue,

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

and/or California Blue Cross by which the Xerox Corp. Plan receives third party administrative services.

b.      On or around September 20, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 129, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Xerox Corp. Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross, Indiana Blue, or New York Empire Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Indiana Blue, New York Empire Blue, and/or Xerox Corp. Plan thereafter paid some or all of the assigned benefits to Patient 129 instead of Sovereign.

222.   On information and belief: Patient 130 was a participant in or beneficiary of Defendant Eli Lilly Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Eli Lilly Plan either (i) is insured by Indiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue and/or California Blue Cross by which the Eli Lilly Plan receives third party administrative services.

b.      On or around February 19, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 130, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Eli Lilly Plan.

Stris &
Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Indiana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Indiana Blue, and/or Eli Lilly Plan thereafter paid some or all of the assigned benefits to Patient 130instead of Sovereign.

223.   On information and belief: Patient 131 was a participant in or beneficiary of Defendant BCBSAZ Employee Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the BCBSAZ Employee Plan either (i) is insured by Arizona Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Arizona Blue and/or California Blue Cross by which the BCBSAZ Employee Plan receives third party administrative services.

b.      On or around August 14, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 131, who validly assigned all claims arising as a result of Sovereign's services pursuant to the BCBSAZ Employee Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Arizona Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Arizona Blue, and/or BCBSAZ Employee Plan thereafter paid some or all of the assigned benefits to Patient 131 instead of Sovereign.

Stris & Maher LLP

171

224.  On information and belief: Patient 132 was a participant in or beneficiary of Defendant Milton S. Hershey Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Milton S. Hershey Plan either (i) is insured by Central Pennsylvania Blue, Highmark, and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Central Pennsylvania Blue, Highmark, and/or California Blue Cross by which the Milton S. Hershey Plan receives third party administrative services.

b.     On or around November 12, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 132, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Milton S. Hershey Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross, Central Pennsylvania Blue, or Highmark on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Central Pennsylvania Blue, Highmark, and/or Milton S. Hershey Plan thereafter paid some or all of the assigned benefits to Patient 132 instead of Sovereign.

225.  On information and belief: Patient 133 was a participant in or beneficiary of Defendant Ernst & Young Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Ernst & Young Plan either (i) is insured by New York Empire Blue and/or California Blue Cross or (ii) is self-insured and has entered into

an agreement with New York Empire Blue and/or California Blue Cross by which the Ernst & Young Plan receives third party administrative services.

b.      On or around May 8, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 133, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Ernst & Young Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New York Empire Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, New York Empire Blue, and/or Ernst & Young Plan thereafter paid some or all of the assigned benefits to Patient 133 instead of Sovereign.

226.  On information and belief: Patient 134 was a participant in or beneficiary of Defendant Hilliard Lyons Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Hilliard Lyons Plan either (i) is insured by Kentucky Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Kentucky Blue and/or California Blue Cross by which the Hilliard Lyons Plan receives third party administrative services.

b.      On or around July 30, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 134, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Hilliard Lyons Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Kentucky Blue

Stris & Maher LLP

on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Kentucky Blue, and/or Hilliard Lyons Plan thereafter paid some or all of the assigned benefits to Patient 134 instead of Sovereign.

227.   On information and belief: Patient 135 was a participant in or beneficiary of Defendant Master Builders Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Master Builders Plan either (i) is insured by Washington Regence Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Regence Blue and/or California Blue Cross by which the Master Builders Plan receives third party administrative services.

b.     On or around October 24, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 135, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Master Builders Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington Regence Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Washington Regence Blue, and/or Master Builders Plan thereafter paid some or all of the assigned benefits to Patient 135 instead of Sovereign.

Stris & Maher LLP

174

228. On information and belief: Patient 136 was a participant in or beneficiary of Defendant Nordstrom Plan during all times relevant to this complaint. Further, on information and belief:

    a. With regard to the relevant welfare benefits implicated by this lawsuit: the Nordstrom Plan either (i) is insured by Iowa Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Iowa Blue and/or California Blue Cross by which the Nordstrom Plan receives third party administrative services.

    b. On or around October 14, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 136, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Nordstrom Plan.

    c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Iowa Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d. California Blue Cross, Iowa Blue, and/or Nordstrom Plan thereafter paid some or all of the assigned benefits to Patient 136 instead of Sovereign.

229. On information and belief: Patient 137 was a participant in or beneficiary of Defendant Home Depot Plan during all times relevant to this complaint. Further, on information and belief:

    a. With regard to the relevant welfare benefits implicated by this lawsuit: the Home Depot Plan either (i) is insured by Georgia Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Georgia Blue and/or California Blue Cross by which the Home Depot Plan receives third party administrative services.

b.      On or around December 19, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 137, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Home Depot Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Georgia Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Georgia Blue, and/or Home Depot Plan thereafter paid some or all of the assigned benefits to Patient 137 instead of Sovereign.

230.  On information and belief: Patient 138 was a participant in or beneficiary of Defendant Rocket Software Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Rocket Software Plan either (i) is insured by Massachusetts Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Massachusetts Blue and/or California Blue Cross by which the Rocket Software Plan receives third party administrative services.

b.      On or around December 13, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 138, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Rocket Software Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Massachusetts Blue on the industry-standard UB-04 form. Sovereign indicated that it was

requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Massachusetts Blue, and/or Rocket Software Plan thereafter paid some or all of the assigned benefits to Patient 138 instead of Sovereign.

231.   On information and belief: Patient 139 was a participant in or beneficiary of Defendant Integra Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Integra Plan either (i) is insured by Washington Regence Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Regence Blue and/or California Blue Cross by which the Integra Plan receives third party administrative services.

b.     On or around October 2, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 139, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Integra Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington Regence Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Washington Regence Blue, and/or Integra Plan thereafter paid some or all of the assigned benefits to Patient 139 instead of Sovereign.

232.   On information and belief: Patient 140 was a participant in or beneficiary of Defendant Time Warner Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Time Warner Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Time Warner Cable Plan receives third party administrative services.

b.      On or around March 19, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 140, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Time Warner Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or Time Warner Plan thereafter paid some or all of the assigned benefits to Patient 140 instead of Sovereign.

233.   On information and belief: Patient 141 was a participant in or beneficiary of Defendant IESI Corp. Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the IESI Corp. Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the IESI Corp. Plan receives third party administrative services.

b.      On or around February 14, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 141, who validly assigned all claims arising as a result of Sovereign's services pursuant to the IESI Corp. Plan.

Stris &
Maher LLP

178

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Texas Blue, and/or IESI Corp. Plan thereafter paid some or all of the assigned benefits to Patient 141 instead of Sovereign.

234. On information and belief: Patient 142 was a participant in or beneficiary of Defendant IESI Corp. Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the IESI Corp. Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the IESI Corp. Plan receives third party administrative services.

b.      On or around February 28, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 142, who validly assigned all claims arising as a result of Sovereign's services pursuant to the IESI Corp. Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

179

d.     California Blue Cross, Texas Blue, and/or IESI Corp. Plan thereafter paid some or all of the assigned benefits to Patient 142 instead of Sovereign.

235.   On information and belief: Patient 143 was a participant in or beneficiary of Defendant Peak Finance Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Peak Finance Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Peak Finance Plan receives third party administrative services.

b.     On or around July 25, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 143, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Peak Finance Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form.  Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross and/or the Peak Finance Plan thereafter paid some or all of the assigned benefits to Patient 143 instead of Sovereign.

236.   On information and belief: Patient 144 was a participant in or beneficiary of Defendant Globys Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Globys Plan either (i) is insured by Washington Regence Blue and/or California Blue Cross or (ii) is self-insured and has entered into an

Stris &
Maher LLP

180

agreement with Washington Regence Blue and/or California Blue Cross by which the Globys Plan receives third party administrative services.

b. On or around September 9, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 144, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Globys Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington Regence Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Washington Regence Blue, and/or Globys Plan thereafter paid some or all of the assigned benefits to Patient 144 instead of Sovereign.

237. On information and belief: Patient 145 was a participant in or beneficiary of Defendant Peak 10 Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Peak 10 Plan either (i) is insured by North Carolina Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with North Carolina Blue and/or California Blue Cross by which the Peak 10 Plan receives third party administrative services.

b. On or around January 9, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 145, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Peak 10 Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or North Carolina

181

Stris &
Maher LLP

Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.    California Blue Cross, North Carolina Blue, and/or Peak 10 Plan thereafter paid some or all of the assigned benefits to Patient 145 instead of Sovereign.

238.  On information and belief: Patient 146 was a participant in or beneficiary of Defendant IBU Health Plan during all times relevant to this complaint.  Further, on information and belief:

    a.    With regard to the relevant welfare benefits implicated by this lawsuit: the IBU Health Plan either (i) is insured by Washington Premera Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Premera Blue and/or California Blue Cross by which the IBU Health Plan receives third party administrative services.

    b.    On or around January 20, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 146, who validly assigned all claims arising as a result of Sovereign's services pursuant to the IBU Health Plan.

    c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington Premera Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.    California Blue Cross, Washington Premera Blue and/or IBU Health Plan thereafter paid some or all of the assigned benefits to Patient 146 instead of Sovereign.

Stris & Maher LLP

239.  On information and belief: Patient 147 was a participant in or beneficiary of Defendant Cargill Plan during all times relevant to this complaint.  Further, on information and belief:

a.  With regard to the relevant welfare benefits implicated by this lawsuit: the Cargill Plan either (i) is insured by Minnesota Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue and/or California Blue Cross by which the Cargill Plan receives third party administrative services.

b.  On or around May 29, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 147, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Cargill Plan.

c.  Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Minnesota Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.  California Blue Cross, Minnesota Blue, and/or Cargill Plan thereafter paid some or all of the assigned benefits to Patient 147 instead of Sovereign.

240.  On information and belief: Patient 148 was a participant in or beneficiary of Defendant ACWA/JPIA Plan during all times relevant to this complaint.  Further, on information and belief:

a.  With regard to the relevant welfare benefits implicated by this lawsuit: the ACWA/JPIA Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the ACWA/JPIA Plan receives third party administrative services.

Stris &
Maher LLP

183

b.      On or around March 2, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 148, who validly assigned all claims arising as a result of Sovereign's services pursuant to the ACWA/JPIA Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or the ACWA/JPIA Plan thereafter paid some or all of the assigned benefits to Patient 148 instead of Sovereign.

241.   On information and belief: Patient 149 was a participant in or beneficiary of Defendant Dycom Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Dycom Plan either (i) is insured by Florida Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Florida Blue and/or California Blue Cross by which the Dycom Plan receives third party administrative services.

b.      On or around October 1, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 149, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Dycom Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Florida Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris & Maher LLP

184

d. California Blue Cross, Florida Blue, and/or Dycom Plan thereafter paid some or all of the assigned benefits to Patient 149 instead of Sovereign.

242. On information and belief: Patient 150 was a participant in or beneficiary of Defendant Medtronic Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Medtronic Plan either (i) is insured by Minnesota Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue and/or California Blue Cross by which the Medtronic Plan receives third party administrative services.

b. On or around August 29, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 150, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Medtronic Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Minnesota Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Minnesota Blue, and/or Medtronic Plan thereafter paid some or all of the assigned benefits to Patient 150 instead of Sovereign.

243. On information and belief: Patient 151 was a participant in or beneficiary of Defendant PepsiCo Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the PepsiCo Plan either (i) is insured California Blue Cross or (ii) is

Stris & Maher LLP

self-insured and has entered into an agreement with California Blue Cross by which the PepsiCo Plan receives third party administrative services.

b.     On or around August 8, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 151, who validly assigned all claims arising as a result of Sovereign's services pursuant to the PepsiCo Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross and/or PepsiCo Plan thereafter paid some or all of the assigned benefits to Patient 151 instead of Sovereign.

244.   On information and belief: Patient 152 was a participant in or beneficiary of Defendant Follett Plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Follett Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Follett Plan receives third party administrative services.

b.     On or around June 6, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 152, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Follett Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that

benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.    California Blue Cross and/or Follett Plan thereafter paid some or all of the assigned benefits to Patient 152 instead of Sovereign.

245. On information and belief: Patient 153 was a participant in or beneficiary of Defendant Ogletree Deakins Plan during all times relevant to this complaint. Further, on information and belief:

    a.    With regard to the relevant welfare benefits implicated by this lawsuit: the Ogletree Deakins Plan either (i) is insured by South Carolina Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with South Carolina Blue and/or California Blue Cross by which the Ogletree Deakins Plan receives third party administrative services.

    b.    On or around May 9, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 153, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Ogletree Deakins Plan.

    c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or South Carolina Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.    California Blue Cross, South Carolina Blue, and/or Ogletree Deakins Plan thereafter paid some or all of the assigned benefits to Patient 153 instead of Sovereign.

246. On information and belief: Patient 154 was a participant in or beneficiary of Defendant WaferTech Plan during all times relevant to this complaint. Further, on information and belief:

Stris & Maher LLP

187

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the WaferTech Plan either (i) is insured by Oregon Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Oregon Blue and/or California Blue Cross by which the WaferTech Plan receives third party administrative services.

b.      On or around November 6, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 154, who validly assigned all claims arising as a result of Sovereign's services pursuant to the WaferTech Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Oregon Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Oregon Blue, and/or WaferTech Plan thereafter paid some or all of the assigned benefits to Patient 154 instead of Sovereign.

247.  On information and belief: Patient 155 was a participant in or beneficiary of Defendant Alaska Air Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Alaska Air Plan either (i) is insured by Washington Premera Blue and/or California Blue Shield or (ii) is self-insured and has entered into an agreement with Washington Premera Blue and/or California Blue Shield by which the Alaska Air Plan receives third party administrative services.

b.      On or around February 25, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 155, who validly

Stris &
Maher LLP

assigned all claims arising as a result of Sovereign's services pursuant to the Alaska Air Plan.

      c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield or Washington Premera Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.      California Blue Shield, Washington Premera Blue, and/or Alaska Air Plan thereafter paid some or all of the assigned benefits to Patient 155 instead of Sovereign.

248. On information and belief: Patient 156 was a participant in or beneficiary of Defendant FNB Corp. Plan during all times relevant to this complaint. Further, on information and belief:

      a.      With regard to the relevant welfare benefits implicated by this lawsuit: the FNB Corp. Plan either (i) is insured by Western Pennsylvania Blue, Highmark, and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Western Pennsylvania Blue, Highmark, and/or California Blue Cross by which the FNB Corp. Plan receives third party administrative services.

      b.      On or around April 2, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 156, who validly assigned all claims arising as a result of Sovereign's services pursuant to the FNB Corp. Plan.

      c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross, Western Pennsylvania Blue, or Highmark on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an

Stris &
Maher LLP

189

assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Western Pennsylvania Blue, Highmark, and/or FNB Corp. Plan thereafter paid some or all of the assigned benefits to Patient 156 instead of Sovereign.

249.   On information and belief: Patient 157 was a participant in or beneficiary of Defendant LeCroy Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the LeCroy Plan either (i) is insured by New York Empire Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New York Empire Blue and/or California Blue Cross by which the LeCroy Plan receives third party administrative services.

b.      On or around March 27, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 157, who validly assigned all claims arising as a result of Sovereign's services pursuant to the LeCroy Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New York Empire Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, New York Empire Blue, and/or LeCroy Plan thereafter paid some or all of the assigned benefits to Patient 157 instead of Sovereign.

250.   On information and belief: Patient 158 was a participant in or beneficiary of Defendant Simmons Plan during all times relevant to this complaint.  Further, on information and belief:

Stris &
Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Simmons Plan either (i) is insured by Northeastern Pennsylvania Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Northeastern Pennsylvania Blue and/or California Blue Cross by which the Simmons Plan receives third party administrative services.

b.      On or around September 26, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 158, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Simmons Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Northeastern Pennsylvania Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Northeastern Pennsylvania Blue, and/or Simmons Plan thereafter paid some or all of the assigned benefits to Patient 158 instead of Sovereign.

251.  On information and belief: Patient 159 was a participant in or beneficiary of Defendant MediaNews Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the MediaNews Plan either (i) is insured by Colorado Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Colorado Blue and/or California Blue Cross by which the MediaNews Plan receives third party administrative services.

Stris & Maher LLP

191

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

b. On or around October 2, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 159, who validly assigned all claims arising as a result of Sovereign's services pursuant to the MediaNews Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Colorado Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Colorado Blue, and/or MediaNews Plan thereafter paid some or all of the assigned benefits to Patient 159 instead of Sovereign.

252. On information and belief: Patient 160 was a participant in or beneficiary of Defendant Oregon Teamsters Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Oregon Teamsters Plan either (i) is insured by Oregon Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Oregon Blue and/or California Blue Cross by which the Oregon Teamsters Plan receives third party administrative services.

b. On or around March 14, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 160, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Oregon Teamsters Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Oregon Blue on the industry-standard UB-04 form. Sovereign indicated that it was

Stris & Maher LLP

1   requesting that benefits be paid to it as an assignee by inserting the letter Y

2   in the appropriate field (box 53) each time it submitted a claim.

3       d.      California Blue Cross, Oregon Blue, and/or Oregon Teamsters

4   Plan thereafter paid some or all of the assigned benefits to Patient 160

5   instead of Sovereign.

6   253.   On information and belief: Patient 161 was a participant in or

7   beneficiary of Defendant Ascension Plan during all times relevant to this

8   complaint.  Further, on information and belief:

9       a.      With regard to the relevant welfare benefits implicated by this

10   lawsuit: the Ascension Plan either (i) is insured by Michigan Blue and/or

11   California Blue Cross or (ii) is self-insured and has entered into an

12   agreement with Michigan Blue and/or California Blue Cross by which the

13   Ascension Plan receives third party administrative services.

14       b.      On or around June 30, 2014, Sovereign began providing mental

15   health and/or drug addiction treatment to Patient 161, who validly assigned

16   all claims arising as a result of Sovereign's services pursuant to the

17   Ascension Plan.

18       c.      Shortly   thereafter,   Sovereign   submitted   claims   seeking

19   reimbursement for these services to California Blue Cross or Michigan Blue

20   on the industry-standard UB-04 form.  Sovereign indicated that it was

21   requesting that benefits be paid to it as an assignee by inserting the letter Y

22   in the appropriate field (box 53) each time it submitted a claim.

23       d.      California Blue Cross, Michigan Blue, and/or Ascension Plan

24   thereafter paid some or all of the assigned benefits to Patient 161 instead of

25   Sovereign.

26   254.   On information and belief: Patient 162 was a participant in or

27   beneficiary of Defendant WF Plan during all times relevant to this

28   complaint.  Further, on information and belief:

Stris &
Maher LLP

193

a. With regard to the relevant welfare benefits implicated by this lawsuit: the WF Plan either (i) is insured by Ohio Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Ohio Blue and/or California Blue Cross by which the WF Plan receives third party administrative services.

b. On or around June 8, 2012, Sovereign began providing mental health and/or drug addiction treatment to Patient 162, who validly assigned all claims arising as a result of Sovereign's services pursuant to the WF Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Ohio Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Ohio Blue, and/or WF Plan thereafter paid some or all of the assigned benefits to Patient 162 instead of Sovereign.

255. On information and belief: Patient 163 was a participant in or beneficiary of Defendant Sallie Mae Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Sallie Mae Plan either (i) is insured by Virginia Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Virginia Blue and/or California Blue Cross by which the Sallie Mae Plan receives third party administrative services.

b. On or around April 25, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 163, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Sallie Mae Plan.

Stris &
Maher LLP

194

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Virginia Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Virginia Blue, and/or Sallie Mae Plan thereafter paid some or all of the assigned benefits to Patient 163 instead of Sovereign.

256. On information and belief: Patient 164 was a participant in or beneficiary of Defendant Active Power Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Active Power Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the Active Power Plan receives third party administrative services.

b. On or around July 2, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 164, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Active Power Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Texas Blue, and/or Active Power Plan thereafter paid some or all of the assigned benefits to Patient 164 instead of Sovereign.

Stris &
Maher LLP

195

257.   On information and belief: Patient 165 was a participant in or beneficiary of Defendant Machinists Plan during all times relevant to this complaint.  Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: the Machinists Plan either (i) is insured by Washington Regence Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Regence Blue and/or California Blue Cross by which the Machinists Plan receives third party administrative services.

b.   On or around September 4, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 165, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Machinists Plan.

c.   Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington Regence Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.   California Blue Cross, Washington Regence Blue, and/or Machinists Plan thereafter paid some or all of the assigned benefits to Patient 165 instead of Sovereign.

258.   On information and belief: Patient 166 was a participant in or beneficiary of Defendant Mueller Plan during all times relevant to this complaint.  Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: the Mueller Plan either (i) is insured by Alabama Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Alabama Blue and/or California Blue Cross by which the Mueller Plan receives third party administrative services.

Stris & Maher LLP

b.     On or around September 17, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 166, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Mueller Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Alabama Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Alabama Blue, and/or Mueller Plan thereafter paid some or all of the assigned benefits to Patient 166 instead of Sovereign.

259.   On information and belief: Patient 167 was a participant in or beneficiary of Defendant CNS Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the CNS Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the CNS Plan receives third party administrative services.

b.     On or around October 13, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 167, who validly assigned all claims arising as a result of Sovereign's services pursuant to the CNS Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris & Maher LLP

197

d.      California Blue Cross and/or CNS Plan thereafter paid some or all of the assigned benefits to Patient 167 instead of Sovereign.

260.  On information and belief: Patient 168 was a participant in or beneficiary of Defendant Quest Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Quest Plan either (i) is insured by New Jersey Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New Jersey Blue and/or California Blue Cross by which the Quest Plan receives third party administrative services.

b.      On or around March 19, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 168, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Quest Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New Jersey Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, New Jersey Blue, and/or Quest Plan thereafter paid some or all of the assigned benefits to Patient 168 instead of Sovereign.

261.  On information and belief: Patient 169 was a participant in or beneficiary of Defendant Alliant Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Alliant Plan either (i) is insured by California Blue Cross or (ii)

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

is self-insured and has entered into an agreement with California Blue Cross by which the Alliant Plan receives third party administrative services.

b.      On or around July 17, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 169, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Alliant Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or Alliant Plan thereafter paid some or all of the assigned benefits to Patient 169 instead of Sovereign.

262.  On information and belief: Patient 170 was a participant in or beneficiary of Defendant H.E. Butt Grocery Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the H.E. Butt Grocery Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the H.E. Butt Grocery Plan receives third party administrative services.

b.      On or around February 11, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 170, who validly assigned all claims arising as a result of Sovereign's services pursuant to the H.E. Butt Grocery Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was

Stris & Maher LLP

199

requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.    California Blue Cross, Texas Blue, and/or H.E. Butt Grocery Plan thereafter paid some or all of the assigned benefits to Patient 170 instead of Sovereign.

263. On information and belief: Patient 171 was a participant in or beneficiary of Defendant 3M Plan during all times relevant to this complaint. Further, on information and belief:

    a.    With regard to the relevant welfare benefits implicated by this lawsuit: the 3M Plan either (i) is insured by Minnesota Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue and/or California Blue Cross by which the 3M Plan receives third party administrative services.

    b.    On or around January 17, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 171, who validly assigned all claims arising as a result of Sovereign's services pursuant to the 3M Plan.

    c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Minnesota Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.    California Blue Cross, Minnesota Blue, and/or 3M Plan thereafter paid some or all of the assigned benefits to Patient 171 instead of Sovereign.

264. On information and belief: Patient 172 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

Stris & Maher LLP

200

a.       With regard to the relevant welfare benefits implicated by this lawsuit: Patient 172's plan either (i) is insured by Indiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.       On or around May 5 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 172, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.       Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Indiana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.       California Blue Cross, Indiana Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 172 instead of Sovereign.

265.  On information and belief: Patient 173 was a participant in or beneficiary of Defendant Publix Plan during all times relevant to this complaint.  Further, on information and belief:

a.       With regard to the relevant welfare benefits implicated by this lawsuit: the Publix Plan either (i) is insured by Florida Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Florida Blue and/or California Blue Cross by which the Publix Plan receives third party administrative services.

b.       On or around September 3, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 173, who validly

assigned all claims arising as a result of Sovereign's services pursuant to the Publix Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Florida Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Florida Blue, and/or Publix Plan thereafter paid some or all of the assigned benefits to Patient 173 instead of Sovereign.

266.   On information and belief: Patient 174 was a participant in or beneficiary of Defendant CHS Group Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the CHS Group Plan either (i) is insured by Tennessee Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Tennessee Blue and/or California Blue Cross by which the CHS Group Plan receives third party administrative services.

b.     On or around November 1, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 174, who validly assigned all claims arising as a result of Sovereign's services pursuant to the CHS Group Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Tennessee Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

d.      California Blue Cross, Tennessee Blue, and/or CHS Group Plan thereafter paid some or all of the assigned benefits to Patient 174 instead of Sovereign.

267.  On information and belief: Patient 175 was a participant in or beneficiary of Defendant USUI Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the USUI Plan either (i) is insured by Michigan Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Michigan Blue and/or California Blue Cross by which the USUI Plan receives third party administrative services.

b.      On or around September 15, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 175, who validly assigned all claims arising as a result of Sovereign's services pursuant to the USUI Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Michigan Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Michigan Blue, and/or USUI Plan thereafter paid some or all of the assigned benefits to Patient 175 instead of Sovereign.

268.  On information and belief: Patient 176 was a participant in or beneficiary of Defendant Transport America Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Transport America Plan either (i) is insured by Minnesota Blue

and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue and/or California Blue Cross by which the Transport America Plan receives third party administrative services.

b.   On or around April 11, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 176, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Transport America Plan.

c.   Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Minnesota Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.   California Blue Cross, Minnesota Blue, and/or Transport America Plan thereafter paid some or all of the assigned benefits to Patient 176 instead of Sovereign.

269.  On information and belief: Patient 177 was a participant in or beneficiary of Defendant JENNMAR Plan during all times relevant to this complaint.  Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: the JENNMAR Plan either (i) is insured by Western Pennsylvania Blue, Highmark, and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Western Pennsylvania Blue, Highmark, and/or California Blue Cross by which the JENNMAR Plan receives third party administrative services.

b.   On or around July 18, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 177, who validly assigned all claims arising as a result of Sovereign's services pursuant to the JENNMAR Plan.

Stris & Maher LLP

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross, Western Pennsylvania Blue, or Highmark on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Western Pennsylvania Blue, Highmark, and/or JENNMAR Plan thereafter paid some or all of the assigned benefits to Patient 177 instead of Sovereign.

270.   On information and belief: Patient 178 was a participant in or beneficiary of Defendant Fresenius Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Fresenius Plan either (i) is insured by Massachusetts Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with by Massachusetts Blue and/or California Blue Cross by which the Fresenius Plan receives third party administrative services.

b.      On or around September 24, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 178, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Fresenius Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or by Massachusetts Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris & Maher LLP

d.      California Blue Cross, by Massachusetts Blue, and/or Fresenius Plan thereafter paid some or all of the assigned benefits to Patient 178 instead of Sovereign.

271.   On information and belief: Patient 179 was a participant in or beneficiary of Defendant Steak N Shake Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Steak N Shake Plan either (i) is insured by Indiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue and/or California Blue Cross by which the Steak N Shake Plan receives third party administrative services.

b.      On or around January 22, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 179, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Steak N Shake Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Indiana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Indiana Blue, and/or the Steak N Shake Plan thereafter paid some or all of the assigned benefits to Patient 179 instead of Sovereign.

272.   On information and belief: Patient 180 was a participant in or beneficiary of Defendant Schein Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Schein Plan either (i) is insured by Massachusetts Blue and/or

Stris & Maher LLP

206

California Blue Cross or (ii) is self-insured and has entered into an agreement with Massachusetts Blue and/or California Blue Cross by which the Schein Plan receives third party administrative services.

b.     On or around March 10, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 180, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Schein Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Massachusetts Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Massachusetts Blue, and/or the Schein Plan thereafter paid some or all of the assigned benefits to Patient 180 instead of Sovereign.

273.   On information and belief: Patient 181 was a participant in or beneficiary of Defendant Liberty Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Liberty Plan either (i) is insured by Massachusetts Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Massachusetts Blue and/or California Blue Cross by which the Liberty Plan receives third party administrative services.

b.     On or around January 19, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 181, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Liberty Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Massachusetts Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Massachusetts Blue, and/or the Liberty Plan thereafter paid some or all of the assigned benefits to Patient 181 instead of Sovereign.

274.  On information and belief: Patient 182 was a participant in or beneficiary of Defendant Corrections Corp. Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Corrections Corp. Plan either (i) is insured by Tennessee Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Tennessee Blue and/or California Blue Cross by which the Corrections Corp. Plan receives third party administrative services.

b.      On or around March 5, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 182, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Corrections Corp. Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Tennessee Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Tennessee Blue, and/or Corrections Corp. Plan thereafter paid some or all of the assigned benefits to Patient 182 instead of Sovereign.

Stris &
Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

275.   On information and belief: Patient 183 was a participant in or beneficiary of Defendant S.W. Shipyard Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the S.W. Shipyard Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the S.W. Shipyard Plan receives third party administrative services.

b.      On or around December 11, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 183, who validly assigned all claims arising as a result of Sovereign's services pursuant to the S.W. Shipyard Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Texas Blue, and/or S.W. Shipyard Plan thereafter paid some or all of the assigned benefits to Patient 183 instead of Sovereign.

276.   On information and belief: Patient 184 was a participant in or beneficiary of Defendant F5 Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the F5 Plan either (i) is insured by Washington Premera Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Premera Blue and/or California Blue Cross by which the F5 Plan receives third party administrative services.

Stris &
Maher LLP

b.      On or around March 16, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 184, who validly assigned all claims arising as a result of Sovereign's services pursuant to the F5 Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington Premera Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Washington Premera Blue, and/or F5 Plan thereafter paid some or all of the assigned benefits to Patient 184 instead of Sovereign.

277.   On information and belief: Patient 185 was a participant in or beneficiary of Defendant MDU Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the MDU Plan either (i) is insured by Minnesota Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue and/or California Blue Cross by which the MDU Plan receives third party administrative services.

b.      On or around November 3, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 185, who validly assigned all claims arising as a result of Sovereign's services pursuant to the MDU Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Minnesota Blue on the industry-standard UB-04 form. Sovereign indicated that it was

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.    California Blue Cross, Minnesota Blue, and/or MDU Plan thereafter paid some or all of the assigned benefits to Patient 185 instead of Sovereign.

278.  On information and belief: Patient 186 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

      a.    With regard to the relevant welfare benefits implicated by this lawsuit: Patient 186's plan either (i) is insured by Washington Regence Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Regence Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

      b.    On or around May 4, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 186, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

      c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington Regence Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.    California Blue Cross, Washington Regence Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 186  instead of Sovereign.

279.  On information and belief: Patient 187 was a participant in or beneficiary of Defendant General Mills Plan during all times relevant to this complaint.  Further, on information and belief:

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

a. With regard to the relevant welfare benefits implicated by this lawsuit: the General Mills Plan either (i) is insured by Minnesota Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue and/or California Blue Cross by which the General Mills Plan receives third party administrative services.

b. On or around March 16, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 187, who validly assigned all claims arising as a result of Sovereign's services pursuant to the General Mills Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Minnesota Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Minnesota Blue, and/or General Mills Plan thereafter paid some or all of the assigned benefits to Patient 187 instead of Sovereign.

280. On information and belief: Patient 188 was a participant in or beneficiary of Defendant Northrop Grumman Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Northrop Grumman Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Northrop Grumman Plan receives third party administrative services.

b. On or around November 18, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 188, who validly

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris & Maher LLP

assigned all claims arising as a result of Sovereign's services pursuant to the Northrop Grumman Plan.

       c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

       d.      California Blue Cross and/or Northrop Grumman Plan thereafter paid some or all of the assigned benefits to Patient 188 instead of Sovereign.

281.  On information and belief: Patient 189 was a participant in or beneficiary of Defendant Sierra Nevada Plan during all times relevant to this complaint.  Further, on information and belief:

       a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Sierra Nevada Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Sierra Nevada Plan receives third party administrative services.

       b.      On or around January 22, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 189, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Sierra Nevada Plan.

       c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

d.      California Blue Cross and/or Sierra Nevada Plan thereafter paid some or all of the assigned benefits to Patient 189 instead of Sovereign.

282.   On information and belief: Patient 190 was a participant in or beneficiary of Defendant Rayonier Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Rayonier Plan either (i) is insured by Florida Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Florida Blue and/or California Blue Cross by which the Rayonier Plan receives third party administrative services.

b.      On or around March 17, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 190, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Rayonier Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Florida Blue on the industry-standard UB-04 form.  Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Florida Blue, and/or Rayonier Plan thereafter paid some or all of the assigned benefits to Patient 190 instead of Sovereign.

283.   On information and belief: Patient 191 was a participant in or beneficiary of Defendant Ardent Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Ardent Plan either (i) is insured by Oklahoma Blue and/or California Blue Cross or (ii) is self-insured and has entered into an

Stris &
Maher LLP

agreement with Oklahoma Blue and/or California Blue Cross by which the Ardent Plan receives third party administrative services.

b.      On or around April 24, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 191, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Ardent Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Oklahoma Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Oklahoma Blue, and/or Ardent Plan thereafter paid some or all of the assigned benefits to Patient 191 instead of Sovereign.

284.  On information and belief: Patient 192 was a participant in or beneficiary of Defendant NHS Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the NHS Plan either (i) is insured by Philadelphia Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Philadelphia Blue and/or California Blue Cross by which the NHS Plan receives third party administrative services.

b.      On or around September 17, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 192, who validly assigned all claims arising as a result of Sovereign's services pursuant to the NHS Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Philadelphia

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

       d.     California Blue Cross, Philadelphia Blue, and/or NHS Plan thereafter paid some or all of the assigned benefits to Patient 192 instead of Sovereign.

285.  On information and belief: Patient 193 was a participant in or beneficiary of Defendant Ferguson Plan during all times relevant to this complaint.  Further, on information and belief:

       a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Ferguson Plan either (i) is insured by Virginia Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Virginia Blue and/or California Blue Cross by which the Ferguson Plan receives third party administrative services.

       b.     On or around August 22, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 193, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Ferguson Plan.

       c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Virginia Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

       d.     California Blue Cross, Virginia Blue, and/or Ferguson Plan thereafter paid some or all of the assigned benefits to Patient 193 instead of Sovereign.

Stris & Maher LLP

216

286.   On information and belief: Patient 194 was a participant in or beneficiary of Defendant Hartford Plan during all times relevant to this complaint.  Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: the Hartford Plan either (i) is insured by Indiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue and/or California Blue Cross by which the Hartford Plan receives third party administrative services.

b.   On or around May 14, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 194, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Hartford Plan.

c.   Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Indiana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.   California Blue Cross, Indiana Blue, and/or Hartford Plan thereafter paid some or all of the assigned benefits to Patient 194 instead of Sovereign.

287.   On information and belief: Patient 195 was a participant in or beneficiary of Defendant Bloomberg Plan during all times relevant to this complaint.  Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: the Bloomberg Plan either (i) is insured by New York Empire Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New York Empire Blue and/or California Blue Cross by which the Bloomberg Plan receives third party administrative services.

Stris & Maher LLP

b.      On or around November 20, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 195, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Bloomberg Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New York Empire Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, New York Empire Blue, and/or Bloomberg Plan thereafter paid some or all of the assigned benefits to Patient 195 instead of Sovereign.

288.   On information and belief: Patient 196 was a participant in or beneficiary of Defendant MOE Fund Retiree Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the MOE Fund Retiree Plan either (i) is insured by Illinois Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Illinois Blue and/or California Blue Cross by which the MOE Fund Retiree Plan receives third party administrative services.

b.      On or around October 23, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 196, who validly assigned all claims arising as a result of Sovereign's services pursuant to the MOE Fund Retiree Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Illinois Blue on the industry-standard UB-04 form. Sovereign indicated that it was

Stris &
Maher LLP

requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.     California Blue Cross, Illinois Blue, and/or MOE Fund Retiree Plan thereafter paid some or all of the assigned benefits to Patient 196 instead of Sovereign.

289. On information and belief: Patient 197 was a participant in or beneficiary of Defendant Sallie Mae Plan during all times relevant to this complaint. Further, on information and belief:

      a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Sallie Mae Plan either (i) is insured by Delaware Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Delaware Blue and/or California Blue Cross by which the Sallie Mae Plan receives third party administrative services.

      b.     On or around January 16, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 197, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Sallie Mae Plan.

      c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Delaware Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.     California Blue Cross, Delaware Blue, and/or Sallie Mae Plan thereafter paid some or all of the assigned benefits to Patient 197 instead of Sovereign.

290. On information and belief: Patient 198 was a participant in or beneficiary of Defendant Ensco Plan during all times relevant to this complaint. Further, on information and belief:

Stris &
Maher LLP

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Ensco Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the Ensco Plan receives third party administrative services.

b. On or around March 27, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 198, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Ensco Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Texas Blue, and/or Ensco Plan thereafter paid some or all of the assigned benefits to Patient 198 instead of Sovereign.

291. On information and belief: Patient 199 was a participant in or beneficiary of Defendant Metal-Matic Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Metal-Matic Plan either (i) is insured by Minnesota Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue and/or California Blue Cross by which the Metal-Matic Plan receives third party administrative services.

b. On or around February 23, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 199, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Metal-Matic Plan.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris & Maher LLP

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Minnesota Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Minnesota Blue, and/or Metal-Matic Plan thereafter paid some or all of the assigned benefits to Patient 199 instead of Sovereign.

292.   On information and belief: Patient 200 was a participant in or beneficiary of Defendant Publix Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Publix Plan either (i) is insured by Florida Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Florida Blue and/or California Blue Cross by which the Publix Plan receives third party administrative services.

b.      On or around March 23, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 200, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Publix Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Florida Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Florida Blue, and/or Publix Plan thereafter paid some or all of the assigned benefits to Patient 200 instead of Sovereign.

Stris & Maher LLP

221

293.   On information and belief: Patient 201 was a participant in or beneficiary of Defendant TriNet Plan during all times relevant to this complaint.  Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: the TriNet Plan either (i) is insured by California Blue Shield or (ii) is self-insured and has entered into an agreement with California Blue Shield by which the TriNet Plan receives third party administrative services.

b.   On or around September 10, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 201, who validly assigned all claims arising as a result of Sovereign's services pursuant to the TriNet Plan.

c.   Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.   California Blue Shield and/or TriNet Plan thereafter paid some or all of the assigned benefits to Patient 201 instead of Sovereign.

294.   On information and belief: Patient 202 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: Patient 202's plan either (i) is insured by Kansas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Kansas Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.   On or around February 6, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 202, who validly

assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

      c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Kansas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.    California Blue Cross, Kansas Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 202 instead of Sovereign.

295. On information and belief: Patient 203 was a participant in or beneficiary of Defendant Ascension Plan during all times relevant to this complaint. Further, on information and belief:

      a.    With regard to the relevant welfare benefits implicated by this lawsuit: the Ascension Plan either (i) is insured by Michigan Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Michigan Blue and/or California Blue Cross by which the Ascension Plan receives third party administrative services.

      b.    On or around October 15, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 203, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Ascension Plan.

      c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Michigan Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris & Maher LLP

223

d.     California Blue Cross, Michigan Blue, and/or Ascension Plan thereafter paid some or all of the assigned benefits to Patient 203 instead of Sovereign.

296.   On information and belief: Patient 204 was a participant in or beneficiary of Defendant Medtronic Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Medtronic Plan either (i) is insured by Minnesota Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue and/or California Blue Cross by which the Medtronic Plan receives third party administrative services.

b.     On or around January 13, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 204, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Medtronic Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Minnesota Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Minnesota Blue, and/or Medtronic Plan thereafter paid some or all of the assigned benefits to Patient 204 instead of Sovereign.

297.   On information and belief: Patient 205 was a participant in or beneficiary of Defendant NECA/IBEW Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the NECA/IBEW Plan either (i) is insured by Georgia Blue and/or

Stris & Maher LLP

224

California Blue Cross or (ii) is self-insured and has entered into an agreement with Georgia Blue and/or California Blue Cross by which the NECA/IBEW Plan receives third party administrative services.

b.      On or around May 5, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 205, who validly assigned all claims arising as a result of Sovereign's services pursuant to the NECA/IBEW Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Georgia Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Georgia Blue, and/or NECA/IBEW Plan thereafter paid some or all of the assigned benefits to Patient 205 instead of Sovereign.

298.  On information and belief: Patient 206 was a participant in or beneficiary of Defendant Fudge Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Fudge Plan either (i) is insured by Oklahoma Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Oklahoma Blue and/or California Blue Cross by which the Fudge Plan receives third party administrative services.

b.      On or around April 3, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 206, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Fudge Plan.

Stris & Maher LLP

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Oklahoma Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Oklahoma Blue, and/or Fudge Plan thereafter paid some or all of the assigned benefits to Patient 206 instead of Sovereign.

299.   On information and belief: Patient 207 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: Patient 207's plan either (i) is insured by New York Excellus Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New York Excellus Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.     On or around March 18, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 207, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New York Excellus Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, New York Excellus Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 207 instead of Sovereign.

Stris & Maher LLP

226

300.   On information and belief: Patient 208 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.       With regard to the relevant welfare benefits implicated by this lawsuit: Patient 208's plan either (i) is insured by Montana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Montana Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.       On or around December 30, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 208, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.       Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Montana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.       California Blue Cross, Montana Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 208 instead of Sovereign.

301.   On information and belief: Patient 209 was a participant in or beneficiary of Defendant Gentiva Plan during all times relevant to this complaint.  Further, on information and belief:

a.       With regard to the relevant welfare benefits implicated by this lawsuit: the Gentiva Plan either (i) is insured by Georgia Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Georgia Blue and/or California Blue Cross by which the Gentiva Plan receives third party administrative services.

b.      On or around May 28, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 209, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Gentiva Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Georgia Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Georgia Blue, and/or Gentiva Plan thereafter paid some or all of the assigned benefits to Patient 209 instead of Sovereign.

302.  On information and belief: Patient 210 was a participant in or beneficiary of Defendant eHealth Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the eHealth Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the eHealth Plan receives third party administrative services.

b.      On or around January 24, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 210, who validly assigned all claims arising as a result of Sovereign's services pursuant to the eHealth Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris & Maher LLP

d.      California Blue Cross and/or eHealth Plan thereafter paid some or all of the assigned benefits to Patient 210 instead of Sovereign.

303.   On information and belief: Patient 211 was a participant in or beneficiary of Defendant Fastrac Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Fastrac Plan either (i) is insured by New York Excellus Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New York Excellus Blue and/or California Blue Cross by which the Fastrac Plan receives third party administrative services.

b.      On or around November 7, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 211, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Fastrac Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New York Excellus Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, New York Excellus Blue, and/or Fastrac Plan thereafter paid some or all of the assigned benefits to Patient 211 instead of Sovereign.

304.   On information and belief: Patient 212  was a participant in or beneficiary of Defendant Martin Marietta Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Martin Marietta Plan either (i) is insured by North Carolina Blue and/or California Blue Cross or (ii) is self-insured and has entered into an

Stris &
Maher LLP

229

agreement with North Carolina Blue and/or California Blue Cross by which the Martin Marietta Plan receives third party administrative services.

b.      On or around February 10, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 212, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Martin Marietta Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or North Carolina Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, North Carolina Blue, and/or Martin Marietta Plan thereafter paid some or all of the assigned benefits to Patient 212 instead of Sovereign.

305.   On information and belief: Patient 213 was a participant in or beneficiary of Defendant Sacred Heart Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Sacred Heart Plan either (i) is insured by Connecticut Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Connecticut Blue and/or California Blue Cross by which the Sacred Heart Plan receives third party administrative services.

b.      On or around April 28, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 213, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Sacred Heart Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Connecticut

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris &
Maher LLP

Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.　California Blue Cross, Connecticut Blue, and/or Sacred Heart Plan thereafter paid some or all of the assigned benefits to Patient 213 instead of Sovereign.

306.　On information and belief: Patient 214 was a participant in or beneficiary of Defendant Pioneer Energy Plan during all times relevant to this complaint.  Further, on information and belief:

a.　With regard to the relevant welfare benefits implicated by this lawsuit: the Pioneer Energy Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the Pioneer Energy Plan receives third party administrative services.

b.　On or around September 18, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 214, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Pioneer Energy Plan.

c.　Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.　California Blue Cross, Texas Blue, and/or Pioneer Energy Plan thereafter paid some or all of the assigned benefits to Patient 214 instead of Sovereign.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

307. On information and belief: Patient 215 was a participant in or beneficiary of Defendant Kroger Plan during all times relevant to this complaint. Further, on information and belief:

    a.    With regard to the relevant welfare benefits implicated by this lawsuit: the Kroger Plan either (i) is insured by Ohio Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Ohio Blue and/or California Blue Cross by which the Kroger Plan receives third party administrative services.

    b.    On or around May 19, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 215, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Kroger Plan.

    c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Ohio Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.    California Blue Cross, Ohio Blue, and/or Kroger Plan thereafter paid some or all of the assigned benefits to Patient 215 instead of Sovereign.

308. On information and belief: Patient 216 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

    a.    With regard to the relevant welfare benefits implicated by this lawsuit: Patient 216's plan either (i) is insured by Washington Regence Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Regence Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

Stris &
Maher LLP

b.     On or around January 27, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 216, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington Regence Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Washington Regence Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 216 instead of Sovereign.

309.   On information and belief: Patient 217 was a participant in or beneficiary of Defendant Intel Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Intel Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Intel Plan receives third party administrative services.

b.     On or around January 29, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 217, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Intel Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

233

d.      California Blue Cross and/or Intel Plan thereafter paid some or all of the assigned benefits to Patient 217 instead of Sovereign.

310.   On information and belief: Patient 218 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 218's plan either (i) is insured by Iowa Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Iowa Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around January 29, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 218, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Iowa Blue on the industry-standard UB-04 form.  Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Iowa Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 218 instead of Sovereign.

311.   On information and belief: Patient 219 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 219's plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue

Stris &
Maher LLP

Cross by which the unknown plan receives third party administrative services.

b.     On or around September 24, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 219, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross and/or the unknown thereafter paid some or all of the assigned benefits to Patient 219 instead of Sovereign.

312.   On information and belief: Patient 220 was a participant in or beneficiary of Defendant FAS Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the FAS Plan either (i) is insured by Florida Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Florida Blue and/or California Blue Cross by which the FAS Plan receives third party administrative services.

b.     On or around April 22, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 220, who validly assigned all claims arising as a result of Sovereign's services pursuant to the FAS Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Florida Blue on the industry-standard UB-04 form. Sovereign indicated that it was

requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Florida Blue, and/or FAS Plan thereafter paid some or all of the assigned benefits to Patient 220 instead of Sovereign.

313.  On information and belief: Patient 221 was a participant in or beneficiary of Defendant St. Luke's Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the St. Luke's Plan either (i) is insured by Minnesota Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Minnesota Blue and/or California Blue Cross by which the St. Luke's Plan receives third party administrative services.

b.     On or around October 1, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 221, who validly assigned all claims arising as a result of Sovereign's services pursuant to the St. Luke's Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Minnesota Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Minnesota Blue, and/or St. Luke's Plan thereafter paid some or all of the assigned benefits to Patient 221 instead of Sovereign.

314.  On information and belief: Patient 222 was a participant in or beneficiary of Defendant Bank of the West Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Bank of the West Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Bank of the West Plan receives third party administrative services.

b.      On or around January 16, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 222, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Bank of the West Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross and/or Bank of the West Plan thereafter paid some or all of the assigned benefits to Patient 222 instead of Sovereign.

315.  On information and belief: Patient 223 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 223's plan either (i) is insured by Florida Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Florida Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around April 28, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 223, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris & Maher LLP

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Florida Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Florida Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 223 instead of Sovereign.

316.  On information and belief: Patient 224 was a participant in or beneficiary of Defendant Wal-Mart Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Wal-Mart Plan either (i) is insured by California Blue Shield or (ii) is self-insured and has entered into an agreement with California Blue Shield by which the Wal-Mart Plan receives third party administrative services.

b.      On or around May 26, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 224, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Wal-Mart Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Shield and/or Wal-Mart Plan thereafter paid some or all of the assigned benefits to Patient 224 instead of Sovereign.

Stris &
Maher LLP

238

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

317. On information and belief: Patient 225 was a participant in or beneficiary of Defendant TAC Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the TAC Plan either (i) is insured by Michigan Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Michigan Blue and/or California Blue Cross by which the TAC Plan receives third party administrative services.

b. On or around November 7, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 225, who validly assigned all claims arising as a result of Sovereign's services pursuant to the TAC Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Michigan Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Michigan Blue, and/or TAC Plan thereafter paid some or all of the assigned benefits to Patient 225 instead of Sovereign.

318. On information and belief: Patient 226 was a participant in or beneficiary of Defendant Kongsberg Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Kongsberg Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the Kongsberg Plan receives third party administrative services.

Stris &
Maher LLP

b.      On or around December 29, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 226, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Kongsberg Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Texas Blue, and/or Kongsberg Plan thereafter paid some or all of the assigned benefits to Patient 226 instead of Sovereign.

319.   On information and belief: Patient 227 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 227's plan either (i) is insured by Florida Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Florida Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around February 5, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 227, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Florida Blue on the industry-standard UB-04 form. Sovereign indicated that it was

requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

     d.    California Blue Cross, Florida Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 227 instead of Sovereign.

320. On information and belief: Patient 228 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

     a.    With regard to the relevant welfare benefits implicated by this lawsuit: Patient 228's plan either (i) is insured by Indiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

     b.    On or around February 4, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 228, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

     c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Indiana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

     d.    California Blue Cross, Indiana Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 228 instead of Sovereign.

321. On information and belief: Patient 229 was a participant in or beneficiary of Defendant IBU Health Plan during all times relevant to this complaint. Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the IBU Health Plan either (i) is insured by Washington Premera Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Premera Blue and/or California Blue Cross by which the IBU Health Plan receives third party administrative services.

b.     On or around March 11, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 229, who validly assigned all claims arising as a result of Sovereign's services pursuant to the IBU Health Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington Premera Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Washington Premera Blue, and/or IBU Health Plan thereafter paid some or all of the assigned benefits to Patient 229 instead of Sovereign.

322.   On information and belief: Patient 230 was a participant in or beneficiary of Defendant HIAB Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the HIAB Plan either (i) is insured by Ohio Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Ohio Blue and/or California Blue Cross by which the HIAB Plan receives third party administrative services.

b.     On or around December 30, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 230, who validly

Stris &
Maher LLP

assigned all claims arising as a result of Sovereign's services pursuant to the HIAB Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Ohio Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Ohio Blue, and/or HIAB Plan thereafter paid some or all of the assigned benefits to Patient 230 instead of Sovereign.

323.   On information and belief: Patient 231 was a participant in or beneficiary of Defendant SMW No. 40 Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the SMW No. 40 Plan either (i) is insured by Indiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Indiana Blue and/or California Blue Cross by which the SMW No. 40 Plan receives third party administrative services.

b.     On or around November 7, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 231, who validly assigned all claims arising as a result of Sovereign's services pursuant to the SMW No. 40 Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Indiana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

d.     California Blue Cross, Indiana Blue, and/or SMW No. 40 Plan thereafter paid some or all of the assigned benefits to Patient 231 instead of Sovereign.

324.   On information and belief: Patient 232 was a participant in or beneficiary of Defendant Aerospace Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Aerospace Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Aerospace Plan receives third party administrative services.

b.     On or around April 3, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 232, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Aerospace Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross and/or Aerospace Plan thereafter paid some or all of the assigned benefits to Patient 232 instead of Sovereign.

325.   On information and belief: Patient 233 was a participant in or beneficiary of Defendant Albertson's Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Albertson's Plan either (i) is insured by Idaho Blue and/or California Blue Cross or (ii) is self-insured and has entered into an

agreement with Idaho Blue and/or California Blue Cross by which the Albertson's Plan receives third party administrative services.

b.      On or around January 13, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 233, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Albertson's Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Idaho Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Idaho Blue, and/or the Albertson's Plan thereafter paid some or all of the assigned benefits to Patient 233 instead of Sovereign.

326.   On information and belief: Patient 234 was a participant in or beneficiary of Defendant STCU Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the STCU Plan either (i) is insured by Washington Premera Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Premera Blue and/or California Blue Cross by which the STCU Plan receives third party administrative services.

b.      On or around February 23, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 234, who validly assigned all claims arising as a result of Sovereign's services pursuant to the STCU Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington

Stris &
Maher LLP

Premera Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.    California Blue Cross, Washington Premera Blue, and/or STCU Plan thereafter paid some or all of the assigned benefits to Patient 234 instead of Sovereign.

327.  On information and belief: Patient 235 was a participant in or beneficiary of Defendant CIL Plan during all times relevant to this complaint.  Further, on information and belief:

    a.    With regard to the relevant welfare benefits implicated by this lawsuit: the CIL Plan either (i) is insured by Kansas City Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Kansas City Blue and/or California Blue Cross by which the CIL Plan receives third party administrative services.

    b.    On or around February 10, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 235, who validly assigned all claims arising as a result of Sovereign's services pursuant to the CIL Plan.

    c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Kansas City Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.    California Blue Cross, Kansas City Blue, and/or CIL Plan thereafter paid some or all of the assigned benefits to Patient 235 instead of Sovereign.

Stris & Maher LLP

246

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

328.   On information and belief: Patient 236 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint.  Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: Patient 236's plan either (i) is insured by California Blue Shield or (ii) is self-insured and has entered into an agreement with California Blue Shield by which the unknown plan receives third party administrative services.

b.   On or around August 12, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 236, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.   Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.   California Blue Shield and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 236 instead of Sovereign.

329.   On information and belief: Patient 237 was a participant in or beneficiary of Defendant Intel Plan during all times relevant to this complaint.  Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: the Intel Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Intel Plan receives third party administrative services.

b.   On or around October 18, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 237, who validly

Stris &
Maher LLP

247

assigned all claims arising as a result of Sovereign's services pursuant to the Intel Plan.

      c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.     California Blue Cross and/or Intel Plan thereafter paid some or all of the assigned benefits to Patient 237 instead of Sovereign.

330. On information and belief: Patient 238 was a participant in or beneficiary of Defendant Intevac Plan during all times relevant to this complaint. Further, on information and belief:

      a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Intevac Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Intevac Plan receives third party administrative services.

      b.     On or around October 2, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 238, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Intevac Plan.

      c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

      d.     California Blue Cross and/or Intevac Plan thereafter paid some or all of the assigned benefits to Patient 238 instead of Sovereign.

331.   On information and belief: Patient 239 was a participant in or beneficiary of Defendant Nebraska Foundation Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Nebraska Foundation Plan either (i) is insured by Nebraska Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Nebraska Blue and/or California Blue Cross by which the Nebraska Foundation Plan receives third party administrative services.

b.     On or around February 4, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 239, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Nebraska Foundation Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Nebraska Blue on the industry-standard UB-04 form.  Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Nebraska Blue, and/or Nebraska Foundation Plan thereafter paid some or all of the assigned benefits to Patient 239 instead of Sovereign.

332.   On information and belief: Patient 240 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: Patient 240's plan either (i) is insured by Wisconsin Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Wisconsin Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around April 8, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 240, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Wisconsin Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Wisconsin Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 240 instead of Sovereign.

333.   On information and belief: Patient 241 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 241's plan either (i) is insured by Tennessee Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Tennessee Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around February 25, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 241, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Tennessee Blue on the industry-standard UB-04 form. Sovereign indicated that it was

Stris & Maher LLP

requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.    California Blue Cross, Tennessee Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 241 instead of Sovereign.

334. On information and belief: Patient 242 was a participant in or beneficiary of Defendant Tenet Plan during all times relevant to this complaint. Further, on information and belief:

    a.    With regard to the relevant welfare benefits implicated by this lawsuit: the Tenet Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the Tenet Plan receives third party administrative services.

    b.    On or around April 10, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 242, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Tenet Plan.

    c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

    d.    California Blue Cross, Texas Blue, and/or Tenet Plan thereafter paid some or all of the assigned benefits to Patient 242 instead of Sovereign.

335. On information and belief: Patient 243 was a participant in or beneficiary of Defendant Lincoln Electric Plan during all times relevant to this complaint. Further, on information and belief:

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Lincoln Electric Plan either (i) is insured by Ohio Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Ohio Blue and/or California Blue Cross by which the Lincoln Electric Plan receives third party administrative services.

b.      On or around February 22, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 243, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Lincoln Electric Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Ohio Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Ohio Blue, and/or Lincoln Electric Plan thereafter paid some or all of the assigned benefits to Patient 243 instead of Sovereign.

336.  On information and belief: Patient 244 was a participant in or beneficiary of Defendant Interrail Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Interrail Plan either (i) is insured by Tennessee Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Tennessee Blue and/or California Blue Cross by which the Interrail Plan receives third party administrative services.

b.      On or around April 24, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 244, who validly

Stris &
Maher LLP

assigned all claims arising as a result of Sovereign's services pursuant to the Interrail Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Tennessee Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Tennessee Blue, and/or Interrail Plan thereafter paid some or all of the assigned benefits to Patient 244 instead of Sovereign.

337.   On information and belief: Patient 245 was a participant in or beneficiary of Defendant Surgical Partners Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Surgical Partners Plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the Surgical Partners Plan receives third party administrative services.

b.     On or around February 6, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 245, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Surgical Partners Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

d.     California Blue Cross, Texas Blue, and/or Surgical Partners Plan thereafter paid some or all of the assigned benefits to Patient 245 instead of Sovereign.

338.   On information and belief: Patient 246 was a participant in or beneficiary of Defendant Ascension Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Ascension Plan either (i) is insured by Michigan Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Michigan Blue and/or California Blue Cross by which the Ascension Plan receives third party administrative services.

b.     On or around October 6, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 246, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Ascension Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Michigan Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Michigan Blue, and/or Ascension Plan thereafter paid some or all of the assigned benefits to Patient 246 instead of Sovereign.

339.   On information and belief: Patient 247 was a participant in or beneficiary of Defendant Kentucky Construction Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Kentucky Construction Plan either (i) is insured by Kentucky

Stris &
Maher LLP

Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Kentucky Blue and/or California Blue Cross by which the Kentucky Construction Plan receives third party administrative services.

b.   On or around April 17, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 247, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Kentucky Construction Plan.

c.   Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Kentucky Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.   California Blue Cross, Kentucky Blue, and/or Kentucky Construction Plan thereafter paid some or all of the assigned benefits to Patient 247 instead of Sovereign.

340.  On information and belief: Patient 248 was a participant in or beneficiary of Defendant GNC Plan during all times relevant to this complaint.  Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: the GNC Plan either (i) is insured by Western Pennsylvania Blue, Highmark, and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Western Pennsylvania Blue, Highmark, and/or California Blue Cross by which the GNC Plan receives third party administrative services.

b.   On or around February 18, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 248, who validly assigned all claims arising as a result of Sovereign's services pursuant to the GNC Plan.

Stris & Maher LLP

255

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross, Western Pennsylvania Blue, or Highmark on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Western Pennsylvania Blue, Highmark, and/or GNC Plan thereafter paid some or all of the assigned benefits to Patient 248 instead of Sovereign.

341. On information and belief: Patient 249 was a participant in or beneficiary of Defendant CIL Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the CIL Plan either (i) is insured by Kansas City Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Kansas City Blue and/or California Blue Cross by which the CIL Plan receives third party administrative services.

b. On or around February 17, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 249, who validly assigned all claims arising as a result of Sovereign's services pursuant to the CIL Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Kansas City Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

d.      California Blue Cross, Kansas City Blue, and/or CIL Plan thereafter paid some or all of the assigned benefits to Patient 249 instead of Sovereign.

342.  On information and belief: Patient 250 was a participant in or beneficiary of Defendant SCANA Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the SCANA Plan either (i) is insured by South Carolina Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with South Carolina Blue and/or California Blue Cross by which the SCANA Plan receives third party administrative services.

b.      On or around February 24, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 250, who validly assigned all claims arising as a result of Sovereign's services pursuant to the SCANA Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or South Carolina Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, South Carolina Blue, and/or SCANA Plan thereafter paid some or all of the assigned benefits to Patient 250 instead of Sovereign.

343.  On information and belief: Patient 251 was a participant in or beneficiary of Defendant Northrop Grumman Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Northrop Grumman Plan either (i) is insured by California Blue

Stris & Maher LLP

257

Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Northrop Grumman Plan receives third party administrative services.

b.     On or around October 2, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 251, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Northrop Grumman Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross and/or Northrop Grumman Plan thereafter paid some or all of the assigned benefits to Patient 251 instead of Sovereign.

344.  On information and belief: Patient 252 was a participant in or beneficiary of Defendant FAS Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the FAS Plan either (i) is insured by Florida Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Florida Blue and/or California Blue Cross by which the FAS Plan receives third party administrative services.

b.     On or around March 24, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 252, who validly assigned all claims arising as a result of Sovereign's services pursuant to the FAS Plan.

Stris &
Maher LLP

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Florida Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Florida Blue, and/or FAS Plan thereafter paid some or all of the assigned benefits to Patient 252 instead of Sovereign.

345.   On information and belief: Patient 253 was a participant in or beneficiary of Defendant Layne Plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Layne Plan either (i) is insured by Kansas City Blue and/or California Blue Shield or (ii) is self-insured and has entered into an agreement with Kansas City Blue and/or California Blue Shield by which the Layne Plan receives third party administrative services.

b.      On or around April 2, 2013, Sovereign began providing mental health and/or drug addiction treatment to Patient 253, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Layne Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield or Kansas City Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Kansas City Blue, and/or Layne Plan thereafter paid some or all of the assigned benefits to Patient 253 instead of Sovereign.

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

346.   On information and belief: Patient 254 was a participant in or beneficiary of Defendant L-Brands Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the L-Brands Plan either (i) is insured by Ohio Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Ohio Blue and/or California Blue Cross by which the L-Brands Plan receives third party administrative services.

b.      On or around May 18, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 254, who validly assigned all claims arising as a result of Sovereign's services pursuant to the L-Brands Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Ohio Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Ohio Blue, and/or L-Brands Plan thereafter paid some or all of the assigned benefits to Patient 254 instead of Sovereign.

347.   On information and belief: Patient 255 was a participant in or beneficiary of Defendant Asante Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the Asante Plan either (i) is insured by Oregon Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Oregon Blue and/or California Blue Cross by which the Asante Plan receives third party administrative services.

Stris &
Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

b. On or around May 20, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 255, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Asante Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Oregon Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Oregon Blue, and/or Asante Plan thereafter paid some or all of the assigned benefits to Patient 255 instead of Sovereign.

348. On information and belief: Patient 256 was a participant in or beneficiary of Defendant Nature's Path Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Nature's Path Plan either (i) is insured by Washington Premera Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Washington Premera Blue and/or California Blue Cross by which the Nature's Path Plan receives third party administrative services.

b. On or around February 18, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 256, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Nature's Path Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Washington Premera Blue on the industry-standard UB-04 form. Sovereign indicated that

Stris & Maher LLP

it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

     d.    California Blue Cross, Washington Premera Blue, and/or Nature's Path Plan thereafter paid some or all of the assigned benefits to Patient 256 instead of Sovereign.

349. On information and belief: Patient 257 was a participant in or beneficiary of Defendant So. Cal. IBEW-NECA Plan during all times relevant to this complaint.  Further, on information and belief:

     a.    With regard to the relevant welfare benefits implicated by this lawsuit: the So. Cal. IBEW-NECA Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the So. Cal. IBEW-NECA Plan receives third party administrative services.

     b.    On or around December 11, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 257, who validly assigned all claims arising as a result of Sovereign's services pursuant to the So. Cal. IBEW-NECA Plan.

     c.    Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

     d.    California Blue Cross and/or So. Cal. IBEW-NECA Plan thereafter paid some or all of the assigned benefits to Patient 257 instead of Sovereign.

350. On information and belief: Patient 258 was a participant in or beneficiary of Defendant Sage Software Plan during all times relevant to this complaint.  Further, on information and belief:

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Sage Software Plan either (i) is insured by California Blue Cross or (ii) is self-insured and has entered into an agreement with California Blue Cross by which the Sage Software Plan receives third party administrative services.

b. On or around March 3, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 258, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Sage Software Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross and/or Sage Software Plan thereafter paid some or all of the assigned benefits to Patient 258 instead of Sovereign.

351. On information and belief: Patient 259 was a participant in or beneficiary of Defendant Yates Petroleum Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Yates Petroleum Plan either (i) is insured by New Mexico Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with New Mexico Blue and/or California Blue Cross by which the Yates Petroleum Plan receives third party administrative services.

b. On or around January 8, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 259, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Yates Petroleum Plan.

Stris & Maher LLP

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or New Mexico Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, New Mexico Blue, and/or Yates Petroleum Plan thereafter paid some or all of the assigned benefits to Patient 259 instead of Sovereign.

352.  On information and belief: Patient 260 was a participant in or beneficiary of Defendant U.S. Steel Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the U.S. Steel Plan either (i) is insured by Western Pennsylvania Blue, Highmark, and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Western Pennsylvania Blue, Highmark, and/or California Blue Cross by which the U.S. Steel Plan receives third party administrative services.

b.      On or around December 13, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 260, who validly assigned all claims arising as a result of Sovereign's services pursuant to the U.S. Steel Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross, Western Pennsylvania Blue, or Highmark on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris &
Maher LLP

d.     California Blue Cross, Western Pennsylvania Blue, Highmark, and/or U.S. Steel Plan thereafter paid some or all of the assigned benefits to Patient 260 instead of Sovereign.

353.   On information and belief: Patient 261 was a participant in or beneficiary of Defendant Bayhealth Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Bayhealth Plan either (i) is insured by Delaware Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Delaware Blue and/or California Blue Cross by which the Bayhealth Plan receives third party administrative services.

b.     On or around May 7, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 261, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Bayhealth Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Delaware Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Delaware Blue, and/or Bayhealth Plan thereafter paid some or all of the assigned benefits to Patient 261 instead of Sovereign.

354.   On information and belief: Patient 262 was a participant in or beneficiary of Defendant Milton S. Hershey Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Milton S. Hershey Plan either (i) is insured by Central

Stris & Maher LLP

Pennsylvania Blue, Highmark, and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Central Pennsylvania Blue, Highmark, and/or California Blue Cross by which the Milton S. Hershey Plan receives third party administrative services.

b.      On or around February 25, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 262, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Milton S. Hershey Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross, Central Pennsylvania Blue, or Highmark on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Central Pennsylvania Blue, Highmark, and/or Milton S. Hershey Plan thereafter paid some or all of the assigned benefits to Patient 262 instead of Sovereign.

355.   On information and belief: Patient 263 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: Patient 263's plan either (i) is insured by CareFirst Maryland Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with CareFirst Maryland Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.      On or around January 16, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 263, who validly

assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or CareFirst Maryland Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, CareFirst Maryland Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits Patient 263 instead of Sovereign.

356. On information and belief: Patient 264 was a participant in or beneficiary of Defendant Portland UFCW Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Portland UFCW Plan either (i) is insured by Oregon Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Oregon Blue and/or California Blue Cross by which the Portland UFCW Plan receives third party administrative services.

b. On or around November 12, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 264, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Portland UFCW Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Oregon Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

Stris & Maher LLP

267

d.      California Blue Cross, Oregon Blue, and/or Portland UFCW Plan thereafter paid some or all of the assigned benefits to Patient 264 instead of Sovereign.

357. On information and belief: Patient 265 was a participant in or beneficiary of Defendant LBM Holdings Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the LBM Holdings Plan either (i) is insured by Wisconsin Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Wisconsin Blue and/or California Blue Cross by which the LBM Holdings Plan receives third party administrative services.

b.      On or around November 25, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 265, who validly assigned all claims arising as a result of Sovereign's services pursuant to the LBM Holdings Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Wisconsin Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Wisconsin Blue, and/or the LBM Holdings Plan thereafter paid some or all of the assigned benefits to Patient 265 instead of Sovereign.

358. On information and belief: Patient 266 was a participant in or beneficiary of Defendant U.S. Renal Plan during all times relevant to this complaint.  Further, on information and belief:

a.      With regard to the relevant welfare benefits implicated by this lawsuit: the U.S. Renal Plan either (i) is insured by Texas Blue and/or

268

Stris & Maher LLP

California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the U.S. Renal Plan receives third party administrative services.

b. On or around April 22, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 266, who validly assigned all claims arising as a result of Sovereign's services pursuant to the U.S. Renal Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Texas Blue, and/or U.S. Renal Plan thereafter paid some or all of the assigned benefits to Patient 266 instead of Sovereign.

359. On information and belief: Patient 267 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: Patient 267's plan either (i) is insured by Texas Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Texas Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b. On or around September 30, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 267, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

Stris & Maher LLP

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Texas Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Texas Blue, and/or the unknown plan thereafter paid some or all of the assigned benefits to Patient 267 instead of Sovereign.

360.   On information and belief: Patient 268  was a participant in or beneficiary of Defendant Einstein Bagels Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Einstein Bagels Plan either (i) is insured by Colorado Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Colorado Blue and/or California Blue Cross by which the Einstein Bagels Plan receives third party administrative services.

b.     On or around November 3, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 268, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Einstein Bagels Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Colorado Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Colorado Blue, and/or Einstein Bagels Plan thereafter paid some or all of the assigned benefits to Patient 268 instead of Sovereign.

Stris & Maher LLP

270

361.   On information and belief: Patient 269 was a participant in or beneficiary of Defendant Nor. Cal. SMW Plan during all times relevant to this complaint.  Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: the Nor. Cal. SMW Plan either (i) is insured by California Blue Shield or (ii) is self-insured and has entered into an agreement with California Blue Shield by which the Nor. Cal. SMW Plan receives third party administrative services.

b.   On or around January 7, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 269, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Nor. Cal. SMW Plan.

c.   Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Shield on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.   California Blue Shield and/or Nor. Cal. SMW Plan thereafter paid some or all of the assigned benefits to Patient 269 instead of Sovereign.

362.   On information and belief: Patient 270 was a participant in or beneficiary of Defendant Jennings Plan during all times relevant to this complaint.  Further, on information and belief:

a.   With regard to the relevant welfare benefits implicated by this lawsuit: the Jennings Plan either (i) is insured by Louisiana Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Louisiana Blue and/or California Blue Cross by which the Jennings Plan receives third party administrative services.

Stris & Maher LLP

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

b.     On or around March 11, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 270, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Jennings Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Louisiana Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, Louisiana Blue, and/or Jennings Plan thereafter paid some or all of the assigned benefits to Patient 270 instead of Sovereign.

363.   On information and belief: Patient 271 was a participant in or beneficiary of an unknown ERISA-governed welfare plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: Patient 271's plan either (i) is insured by North Carolina Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with North Carolina Blue and/or California Blue Cross by which the unknown plan receives third party administrative services.

b.     On or around April 3, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 271, who validly assigned all claims arising as a result of Sovereign's services pursuant to the unknown plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or North Carolina Blue on the industry-standard UB-04 form. Sovereign indicated that it was

requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, North Carolina Blue, and/the unknown plan thereafter paid some or all of the assigned benefits to Patient 271 instead of Sovereign.

364.  On information and belief: Patient 272 was a participant in or beneficiary of Defendant Mercy Plan during all times relevant to this complaint.  Further, on information and belief:

a.     With regard to the relevant welfare benefits implicated by this lawsuit: the Mercy Plan either (i) is insured by California Blue Cross, CareFirst Maryland Blue and/or CareFirst District of Columbia Blue or (ii) is self-insured and has entered into an agreement with California Blue Cross, CareFirst Maryland Blue and/or CareFirst District of Columbia Blue by which the Mercy Plan receives third party administrative services.

b.     On or around March 10, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 272, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Mercy Plan.

c.     Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross, CareFirst Maryland Blue, or CareFirst District of Columbia Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.     California Blue Cross, CareFirst Maryland Blue, CareFirst District of Columbia Blue, and/or Mercy Plan thereafter paid some or all of the assigned benefits to Patient 272 instead of Sovereign.

Stris &
Maher LLP

273

365. On information and belief: Patient 273 was a participant in or beneficiary of Defendant Tucson Electric Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Tucson Electric Plan either (i) is insured by Arizona Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Arizona Blue and/or California Blue Cross by which the Tucson Electric Plan receives third party administrative services.

b. On or around May 12, 2015, Sovereign began providing mental health and/or drug addiction treatment to Patient 273, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Tucson Electric Plan.

c. Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Arizona Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d. California Blue Cross, Arizona Blue, and/or Tucson Electric Plan thereafter paid some or all of the assigned benefits to Patient 273 instead of Sovereign.

366. On information and belief: Patient 274 was a participant in or beneficiary of Defendant Bimbo Plan during all times relevant to this complaint. Further, on information and belief:

a. With regard to the relevant welfare benefits implicated by this lawsuit: the Bimbo Plan either (i) is insured by Illinois Blue and/or California Blue Cross or (ii) is self-insured and has entered into an agreement with Illinois Blue and/or California Blue Cross by which the Bimbo Plan receives third party administrative services.

Stris &
Maher LLP

b.      On or around November 17, 2014, Sovereign began providing mental health and/or drug addiction treatment to Patient 274, who validly assigned all claims arising as a result of Sovereign's services pursuant to the Bimbo Plan.

c.      Shortly thereafter, Sovereign submitted claims seeking reimbursement for these services to California Blue Cross or Illinois Blue on the industry-standard UB-04 form. Sovereign indicated that it was requesting that benefits be paid to it as an assignee by inserting the letter Y in the appropriate field (box 53) each time it submitted a claim.

d.      California Blue Cross, Illinois Blue, and/or Bimbo Plan thereafter paid some or all of the assigned benefits to Patient 274 instead of Sovereign.

367.   Because Blue Cross Defendants' policy of refusing to acknowledge, honor, or pay Assigned Claims is ongoing, other instances of wrongfully denied claims—besides those detailed above—have occurred and are occurring. As those instances become known to Sovereign, it will offer proof of and seek relief for those claims in accordance with the relief sought herein.

368.   For each and every Assigned Claim, the relevant Blue Cross Defendant's decision to disregard Sovereign's assignment of benefits (and to, instead, send a check directly to the ERISA Beneficiary who had assigned his/her claims to Sovereign) constitutes an "adverse benefits determination" under the applicable federal law and regulations.

369.   For each and every Assigned Claim, the relevant Blue Cross Defendant's adverse benefits determination grossly violated ERISA and the applicable federal regulations, which require that adverse benefit determinations "set forth, in a manner calculated to be understood by the claimant—(i) the specific reason or reasons for the adverse determination; (ii) reference to the specific plan

Stris &
Maher LLP

275

provisions on which the determination is based; (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; (iv) a description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review. . . ." 29 C.F.R. § 2560.503-1(g)(1).

370.   As a result of Defendants' malfeasance, Plaintiffs are deemed to have exhausted all administrative remedies available to them. Federal regulations are clear that when claims procedure requirements are violated by administrators, claimants may immediately proceed to federal court. *See* 29 C.F.R. § 2560.503-1(l) and 29 C.F.R. §2590.715-2719(b)(2)(ii)(F).

371.   In addition, and in the alternative, any exhaustion of Plaintiffs' administrative remedies regarding the Assigned Claims would be futile. Plaintiffs properly submitted UB-04 forms seeking payment for the Assigned Claims, and those UB-04s were ignored. Plaintiffs also sent over two dozen follow-up letters, written by expert ERISA counsel, to Blue Cross Defendants seeking information and demanding payment; those follow-up efforts also failed to motivate the Blue Cross Defendants to comply with the governing claims regulations (or in many cases even respond intelligibly). As the Blue Cross Defendants (and the affiliated Welfare Plan Defendants) clearly have a policy of not paying any assigned claims, nor following any governing regulations concerning the handling of such claims, further administrative efforts brought by an assignee such as Sovereign would be futile.

372.   When no provision in an ERISA welfare plan prohibits assignment of a benefits claim, the assignee is entitled to payment. Upon information and belief, some if not all of Sovereign's Assigned Claims were made under welfare plans that

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)

Stris & Maher LLP

lacked an anti-assignment provision. For those Assigned Claims, pursuant to 29 U.S.C. § 1132(a)(1)(B), Sovereign is entitled to receive payment equal to the value of those claims for covered services.

373.   Even if a provision in an ERISA welfare plan prohibits assignment, those provisions are deemed waived with respect to specific claims made if the provision is not timely asserted by a plan administrator. Because no anti-assignment provision was identified and asserted by the Blue Cross Defendants as a ground to not pay Sovereign, Sovereign is entitled to receive payment on Assigned Claims for covered services even for those plans that have anti-assignment provisions. In addition, or in the alternative, anti-assignment provisions with respect to Sovereign's Assigned Claims are barred by relevant state law that is not preempted by ERISA.

374.   In light of the foregoing, under 29 U.S.C. § 1132(a)(1)(B), Sovereign is entitled to payment on all of its Assigned Claims, and is further entitled to recover attorneys' fees and costs under 29 U.S.C. § 1132(g), which together total in the millions.

## SECOND CLAIM FOR RELIEF

### (Against All Defendants—Seeking Removal of Breaching Fiduciaries)

### (29 U.S.C § 1132(a)(2) & 29 U.S.C. § 1109(a))

375.   The allegations of the prior paragraphs of this Complaint are hereby repeated as if fully set forth herein.

376. 29 U.S.C. § 1132(a)(2) permits a plaintiff to bring a claim for "appropriate relief" under 29 U.S.C. § 1109, which provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter . . . shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

Stris & Maher LLP

377.   All of the Welfare Plan Defendants, by ERISA statutory command, must have a named fiduciary.

378.   As set forth above, all the Blue Cross Defendants handled or otherwise exercised discretion with respect to benefit claim administration, review, and payment. Each of them is therefore a fiduciary under ERISA.

379.   Accordingly, pursuant to sections §§ 1132(a)(2) and 1109(a), Plaintiffs seek an order removing and dismissing the named fiduciaries of the Welfare Plan Defendants. Plaintiffs also seek an order removing and permanently barring the Blue Cross Defendants from serving as fiduciaries for any of the Welfare Plan Defendants.

380.   In addition to the removal of fiduciaries sought above, Sovereign is further entitled to recover attorneys' fees and costs under 29 U.S.C. § 1132(g).

### **THIRD CLAIM FOR RELIEF**

**(Against the Blue Cross Defendants—Seeking Injunctive & Declaratory Relief)**

**(29 U.S.C § 1132(a)(3))**

381.   The allegations of the prior paragraphs of this Complaint are hereby repeated as if fully set forth herein.

382.   29 U.S.C. § 1132(a)(3) permits a plaintiff to "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

383.   As set forth above, with respect to the Assigned Claims asserted by Sovereign, the Blue Cross Defendants have, as a matter of policy, pattern, and practice, grossly violated ERISA and the applicable claims procedure regulations promulgated by the relevant federal agencies.

384.   Plaintiffs seek a declaratory judgment that the Blue Cross Defendant's practice of ignoring or summarily denying Sovereign's Assigned Claims without

consulting the operative plan document and without informing Sovereign of the fact
of its denial, or the specific basis therefore, violates ERISA.

385. Plaintiffs seek an order that the Blue Cross Defendants (and those
controlled by them) must, with respect to all past and future Assigned Claims
submitted by Sovereign or its agents to a Blue Cross Defendant:

    a. Consult and carefully review the operative welfare plan documents
with respect to any Assigned Claim;

    b. Inform Sovereign, promptly and in writing, whether each Assigned
Claim is approved or denied;

    c. Inform Sovereign, promptly and in writing, of the particular plan
provision or provisions upon which any denial of an Assigned Claim,
in whole or in part, is based;

    d. Promptly provide Sovereign with a complete copy of the operative
plan document from which any provision has been cited as justification
for the denial, in whole or in part, of an Assigned Claim;

    e. Inform Sovereign, promptly and in writing, of any appeal rights it has
with respect to the denial, in whole or in part, of Assigned Claim;

    f. Otherwise strictly follow the federal regulations concerning the
handling of claims, as set forth in 29 C.F.R. § 2560.503-1 and/or 29
C.F.R. §2590.715-2719(b); and

    g. Insofar as an Assigned Claim is covered by the subject Welfare Plan,
pay Sovereign (rather than the assignor) directly and promptly.

386. In addition to the injunctive and equitable relief sought above,
Sovereign is further entitled to recover attorneys' fees and costs under 29 U.S.C. §
1132(g).

## **FOURTH CLAIM FOR RELIEF**

### **(Against the Blue Cross Defendants—Unfair Competition)**

Stris &
Maher LLP

**(Common Law and Cal. Bus. & Prof. Code §§ 17200 *et seq*.)**

387.    Plaintiffs reallege each paragraph of this Complaint as if fully set forth herein.

388.    Plaintiffs bring this claim in the alternative and in their own right, and not based on the assignment of benefits they received from the Former Patients.

389.    By virtue of the misconduct complained of above, the Blue Cross Defendants have engaged in unlawful and unfair business practices that have caused substantial, direct, and independent injury to Plaintiffs and unfairly interfered with the conduct of their business in violation of the common law and California Business and Professions Code §§ 17200 *et seq*.

390.    Plaintiffs will continue to suffer substantial injury unless the Blue Cross Defendants' unlawful and unfair practices, which constitute unfair competition proscribed by state law, are enjoined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.    For damages, in an amount to be proven at trial, plus all applicable interest and costs;

2.    For all attorneys' fees and costs incurred in bringing this action, to the extent recoverable by law;

3.    For the removal and dismissal of all fiduciaries who have breached their ERISA-imposed duties in connection with the welfare plans at issue here;

4.    For a declaration that the claims practices of the Defendants regarding Assigned Claims submitted by Sovereign violate governing law;

5.    For an order enjoining Defendants from continuing their illegal claims practices and commanding that they immediately and strictly comply with the governing federal regulations;

6.    And for all other relief the Court deems appropriate, proper, and just.

Stris &
Maher LLP

1

## **<u>DEMAND FOR JURY TRIAL</u>**

2

Plaintiffs demand a jury trial for all claims so triable.

3

4

**Dated**: October 5, 2015                          **STRIS & MAHER LLP**

5

<u>/s/ Peter K. Stris</u>

6

Peter K. Stris

*Attorneys for Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA
CASE NO. SACV15−736 DOC (RNBx)