O

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| **DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL.**<br><br>     **Plaintiffs,**<br><br><br>     **vs.**<br><br><br>**BLUE CROSS OF CALIFORNIA ET AL.**<br>     **Defendants.** | **Case No.: SA CV 15-0736-DOC (DFMx)**<br><br><br>**ORDER GRANTING IN PART OMNIBUS MOTION TO DISMISS [637]** |

Before the Court is Defendants' Omnibus Motion to Dismiss ("Motion") (Dkt. 637), along with supplemental addenda by various parties.

## I.      Background

This lawsuit arises from Plaintiffs Dual Diagnosis Treatment Center, Inc., Satya Health of California, Inc., Adeona Healthcare, Inc., Sovereign Health of Florida, Inc., Sovereign Health of Phoenix, Inc. and Sovereign Asset Management, Inc.'s (collectively, "Plaintiffs") allegations that they were not properly paid for medical benefits after they secured valid assignments of medical benefits from their patients. First Amended Complaint ("FAC") (Dkt. 298) ¶¶ 5, 22. Defendants are some of the welfare plans that provided coverage to the employee, and various Blue Cross entities ("carriers") that insure or administer the plans. FAC ¶¶ 22–23, 34.

Plaintiffs filed the FAC on November 5, 2015. Plaintiffs brought suit against 159 welfare plans and 49 Blue Cross entities, FAC ¶ 22–23 ("Defendants"), alleging they have assignments of rights from 274 patients, FAC ¶¶ 101–366. Due to voluntary dismissals, Plaintiffs are now pursuing claims assigned from 233 patients against 42 Blue Cross defendants and 143 welfare plan defendants. *See* Pls.' Identification of Remaining Patients and Corresponding Defs. Exs. A, B (Dkt. 1009-1, 1009-2).

Plaintiffs allege that because they provided medical treatment and received valid assignments, they are entitled to be paid directly by Defendants. FAC ¶ 51. However, Defendants paid the patients directly, *id.* ¶ 74, and never communicated that to Plaintiffs, *id.* ¶ 87. Plaintiffs allege that Defendants had a policy of intentionally refusing to honor valid assignments in order to punish out-of-network medical providers by forcing them to collect from their former patients. *See* FAC ¶¶ 77–79. As a result of this policy, Plaintiffs allege they would only receive a fraction of what they were owed because patients are less likely to forward their benefits checks or contest improper denials of benefits. FAC ¶¶ 79–81.

Plaintiffs allege four claims: (1) a claim for plan benefits under the Employee Retirement Income Security Act of 1974's ("ERISA") remedial scheme, 29 U.S.C. § 1132(a)(1)(B); (2) a claim for breach of fiduciary under an ERISA plan, 29 U.S.C. § 1132(a)(2); (3) a claim for equitable relief under ERISA's equitable catchall provision, 29

U.S.C. § 1132(a)(3); and (4) a state law claim under California Business and Professions Code §§ 17200 *et. seq.* ("UCL").

## II.      Procedural History

Plaintiffs filed suit on May 8, 2015. *See* Compl. Defendants filed a Motion to Dismiss on September 14, 2015 (Dkt. 246).  Plaintiffs filed the FAC on October 5, 2015. Defendants jointly filed the instant Omnibus Motion to Dismiss on January 25, 2016. Some Defendants also filed supplemental addenda (Dkts. 647, 652, 657, 670, 683, 690, 693, 704, 707, 710, 712, 727). Plaintiffs opposed Defendants' Motion (Dkt. 834) and filed opposition addenda on March 21, 2016 (Dkt. 835). Defendants filed their reply ("Reply") on April 4, 2016  (Dkt. 856). Some Defendants also filed supplemental reply addenda (Dkts. 859, 860, 861, 862, 864, 865, 871, 872, 873, 874, 875). The Court held a hearing on the instant Motion on May 31, 2016.

On June 24, 2016, the Court issued an Order requiring Defendants to identify and produce the plan instrument for each plan and identify provisions establishing the completeness of the plan instrument and the validity of its terms. Order Re: Supplemental Briefing ("Briefing Order") (Dkt. 904) at 8. Defendants compiled this briefing into a Second Addendum to Omnibus Motion to Dismiss ("Defendants' Revised Addendum") (Dkt. 1039-2). The Court also ordered Plaintiffs to respond to Defendants' supplemental briefing with any objections or disputes, including objections to the authenticity of the documents. Briefing Order at 8. Plaintiffs provided a Response Addressing Objections and Disputes to Defendants' Filed Documents which contained their legal objections ("Plaintiffs' Response") (Dkt. 1041), and their patient-by-patient objections ("Plaintiffs' Objections") (Dkt. 1041-2).

Some Defendants believed Plaintiffs' Response exceeded the scope of the Briefing Order by including lengthy sections of legal analysis not provided in their Opposition, and requested leave to respond. Defendants' Ex Parte Application for Leave to File Response (Dkt. 1045). The Court denied the request but agreed that pages eight to twenty-four of Plaintiffs' Response had exceeded the scope of the Briefing Order; the Court held that it would determine in its ruling on the Motion the degree to which it would consider the expanded arguments in Plaintiffs' Response. *See* Order Denying Ex Parte Application (Dkt. 1045).

### III.     Legal Standard 12(b)(6)

In ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 544 (2009). To survive a motion to dismiss, a complaint must contain factual matter that, if accepted as true, is sufficient to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 547. "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008) (citation omitted). However, pleading identical allegations against different and unrelated defendants for different events without explanation deprives each individual party of a fair and meaningful opportunity to defend itself. *Romero v. Countrywide Bank, N.A.*, 740 F. Supp. 2d 1129, 1136 (N.D. Cal. 2010) (quoting *Twombly*, 550 U.S. at 553–55).

Where a claim for relief is based on fraud or mistake, the circumstances of the fraud or mistake must be stated with particularity. Fed. R. Civ. P. 9(b). "Fraud arises from the plaintiff's reliance on the defendant's false representations of material fact, made with knowledge of falsity and the intent to deceive." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) (holding that FRCP 9(b) applies to ERISA claims based on fraud, but not *per se* to breach of fiduciary duty claims). This rule requires the party to state the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity.").

In ruling on a motion to dismiss for failure to state a claim, a court should follow a two-pronged approach: first, the court must discount conclusory statements, which are not presumed to be true; then, assuming any factual allegations are true, the court must determine "whether they plausibly give rise to an entitlement to relief." *See Iqbal*, 556 U.S. at 679; *accord Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). A court should consider the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

A district court should provide leave to amend upon granting a motion to dismiss, unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment."). Leave to amend, however, "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco,* 656 F.3d 1002, 1008 (9th Cir. 2011).

### IV.    Discussion

In Part A, the Court analyzes the text of the assignments to determine what rights Plaintiffs can pursue derivatively. In Part B, the Court determines whether Plaintiffs have stated a claim for each of the FAC's four counts against Defendants. Part C addresses Defendants' attacks on the validity of the assignments, including arguments based on the existence of anti-assignment provisions ("AAPs"). Finally, in Part D the Court evaluates Defendants' offered plan documents to determine whether they prohibited assignment.

### A. Plaintiffs' Standing to Bring the ERISA Counts by Assignment

Only parties identified in ERISA have standing to sue under the Act. *See* 29 U.S.C. § 1132(a)(1)–(3). As relevant here, (a)(1) identifies "beneficiaries." As providers, Plaintiffs are not themselves beneficiaries as the term is used in ERISA, and thus cannot sue under ERISA. *E.g.*, *Rojas v. Cigna Health and Life Ins. Co.*, 793 F.3d 253 at 257 (2d Cir. 2015) (holding "beneficiary" as it is used in ERISA does not, without more, encompass healthcare providers); *City of Hope Nat. Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223, 227–28 (1st Cir. 1998) (provider can sue under ERISA only by virtue of assignment); *Ward v. Alt. Health Delivery Sys., Inc.*, 261 F.3d 624, 627 (6th Cir. 2001) (declining to extend "beneficiary" to include a healthcare provider and noting that plaintiff's entitlement "to payment from defendants as a result of her clients' participation in an employee plan does not make her a beneficiary for the purpose of ERISA standing."); *Hobbs v. Blue Cross Blue Shield of Alabama*, 276 F.3d 1236, 1241 (11th Cir. 2001) ("Healthcare providers . . . generally are not considered 'beneficiaries' or 'participants' under ERISA."); *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona Inc.*, No. CV-13-01558-PHX-NVW, 2014 WL 3349920, at *7 (D. Ariz. July 9, 2014) ("Plaintiffs are not beneficiaries. They may sue to enforce ERISA only with valid assignments.").

Plaintiffs, however, allege that they received assignments from their patients. FAC ¶ 4. A medical provider who has received a valid assignment from a patient may sue the patient's ERISA plan for those benefits. *Misic v. Building Service Employees Health and Welfare Trust*, 789 F.2d 1374, 1377 (9th Cir. 1986) (per curiam). Therefore, the first question is whether Plaintiffs were assigned the rights they now seek to vindicate.[1] The Court must look to the contracts between the patients and Plaintiffs. *See Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1283 (9th Cir. 1983). Plaintiffs' assignments were effectuated through two different forms: Form A and Form B. *id.* ¶ 53; *id.* Exs. A, B. The Court will address whether each form could effect a valid assignment in turn.

### 1.    Plaintiffs' Assignment Under Form A

Plaintiff argues that patients who signed Form A have derivative standing to bring a claim for plan benefits under § 1132(a)(1)(B) based on the express terms of Form A. Opp'n at 22. Plaintiffs also argue that they can bring fiduciary breach claims by operation of the claim regulations, which the Court will address below. Opp'n at 22. Defendants argue that Form A did not assign any rights to Plaintiffs, and is instead a "direct-payment authorization form." Mot. at 8.

Defendants cite to two district court cases which they argue held that a purported assignment was merely a direct-payment authorization. *Id.* The relevant part of the first decision was abrogated by the Third Circuit. *MHA, LLC v. Aetna Health, Inc.*, 2013 WL 705612, at *3–7 (D.N.J. Feb. 25, 2013) ("*MHA*") (holding that a direct-payment authorization only assigned a right to payment, which was different from assigning plan benefits, and only the latter permitted a provider to sue under ERISA) *abrogated by N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.1, 372–73 (3d Cir. 2015) ("*NJBSC*") (identifying a district split over whether "an assignment of payments was sufficient to confer standing under [§ 1132(a)]" and resolving it against *MHA*).  Therefore, *MHA* is no longer good law. *See, e.g.*,

---

[1]     This doctrine was formerly called "statutory standing." *See, e.g., Harris v. Amgen, Inc.*, 573 F.3d 728, 736 (9th Cir. 2009) (analyzing whether an ERISA plaintiff has statutory standing). The Supreme Court has now clarified that statutory standing is not a standing or jurisdictional issue, but a merits issue as to whether that particular plaintiff has a cause of action under the statute. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (citing *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387 (2014)).

*Franco v. Connecticut Gen. Life Ins. Co.*, 647 F. App'x 76, 82 (3d Cir. 2016) (holding that *NJBSC* required reversing the district court's opinion, which *MHA* followed, that relied on a distinction between assigning the right to payment and the right to plan benefits). The second decision Defendants cite for support was overruled in relevant part by the Sixth Circuit. *Brown v. Blue Cross Blue Shield of Tennessee, Inc.*, Case No. XX-XXXX, 2015 WL 3622338, at *3 (E.D. Tenn. June 9, 2015), *aff'd on other grounds*, *Brown v. BlueCross BlueShield of Tennessee, Inc.*, 827 F.3d 543, 546–547 (6th Cir. June 27, 2016) ("*Brown*"). The purported assignment in that case read:

> I request that payment of authorized insurance benefits, including
> Medicare, if I am a Medicare Beneficiary, be made on my behalf to
> Harrogate Family Practice, LLC, or Cumberland Gap Medical for any
> medical services provided to me by that organization . . . . I understand that
> I am financially responsible to the organization for any charges not covered
> by health benefits . . . . I am responsible for the entire bill or balance of the
> bill as determined by the organization and/or my health care insurer if the
> submitted claims or any part of them are denied for payment.

*Brown*, 2015 WL 3622338 at 3. The district court held that "there is no consensus among the federal courts regarding whether language providing for direct payment of benefits constitutes an assignment for purposes of ERISA," and found that this form did not assign any ERISA rights but instead provided for direct payment from the insurer to the provider. *Id.* at 3, 6. The Sixth Circuit disagreed and reversed, holding that "the assignment of the right to payment is sufficient to confer derivative standing to bring suit for non-payment under ERISA." *Brown*, 827 F.3d at 547. Under the Third and Sixth Circuit decisions discussed above, when a patient requests or authorizes their benefits be paid to the medical provider, the medical provider has derivative standing to sue for those benefits under ERISA.

Form A is titled "ASSIGNMENT OF BENEFITS." Form A. Below the title is a line for the patient's name, and below that the document again says "<u>ASSIGNMENT OF BENEFITS</u>." *Id.* (emphasis in original). The first substantive paragraph of Form A states:

> I hereby authorize and request that payment of authorized insurance
> company benefits be made on my behalf directly to DUAL DIAGNOSIS . .
> .  for the amount due to me for any medical or psychological/psychiatric
> treatment or services that are rendered to me by DUAL DIAGNOSIS . . . .

(emphasis omitted). The second paragraph authorizes the release of medical information related to these services. Immediately below that paragraph is the signature line. This is the entire assignment.

The Court finds Form A sufficient to effect an assignment. Patients signing Form A both requested and authorized the payment of insurance benefits to Plaintiffs, and the document states that it is an assignment of benefits three times in fewer than two hundred words, including the phrase "assignment of benefits" as the title and above the signature line. Additionally, the document does not appear to envision or reserve any role for the patients in securing these benefits. The Court finds that Form A manifests an intent to assign a claim for benefits and the right to sue for them under ERISA. Thus, Plaintiffs can sue Defendants for ERISA benefits in the place of any patient who signed Form A.

Defendants argue that if Form A is sufficient to assign rights, "all plan participants or beneficiaries who sign authorizations like the Form A assignment at issue here would have assigned away their entitlement to enforce any ERISA right, including prospective claims regarding the plan." Mot. at 10:13–17. Defendants argue that these assignments could create a number of problems, including unknowingly depriving the beneficiary of standing to assert future claims. Mot. at 10:19–20. Defendants, however, misstate the scope of the assignment, which is limited on its face to the amount due for treatment and services rendered by Dual Diagnosis. *See* Form A. In addition, because Defendants do not argue Form A is unconscionable, concerns over the potential breadth of Form A have no bearing on the interpretation of its terms and whether it assigned Plaintiffs the right to benefits.

Next, Plaintiffs argue that Form A permits them to sue for fiduciary breach. Opp'n at 22–24. Plaintiffs contend the assignment of benefits makes them beneficiaries under ERISA because they are now "person[s] designated by a participant . . . who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8); *contra Rojas*, 793 F.3d at 257–8 (holding that

spouses and children are the types of beneficiaries described at 29 U.S.C. § 1002(8), not medical providers). Because Plaintiffs are beneficiaries seeking benefits, they argue they would also be claimants as defined in 29 C.F.R. § 2560.503-1. After exhausting administrative remedies, a claimant can "pursue any *available* remedies under [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim," including claims for equitable relief and fiduciary breach. 29 C.F.R. § 2560.503-1(l) (emphasis added).

Plaintiffs' argument fails for many reasons, but the simplest is that they misread the regulation. By its own terms, this regulation does not expand the remedies available to a party, nor could it.[2] This regulation merely provides a definition of exhaustion under the claims procedure. On its face, the regulation allows parties to pursue only remedies that were otherwise available, and nothing in its text suggests that it allows parties to pursue remedies that were previously unavailable to them. If Plaintiffs were right that they can now sue for fiduciary breach because they can sue for "any" remedy, Plaintiffs could sue as the Secretary of Labor to enforce 1132(a)(6) or a State to enforce 1132(a)(7). Because Plaintiffs' reading requires the Court to ignore the word "available" in the regulation and contradicts and expands the statutory text, it cannot be accepted. Plaintiffs have not argued they have any other basis to sue for fiduciary breach under Form A, and so the Court finds that Plaintiffs cannot sue for fiduciary breach for the patients who signed Form A.

### 2.     Plaintiffs' Standing for ERISA Counts Under Form B

Plaintiffs separately allege they can sue the Defendants under their three ERISA causes of action by virtue of assignments effectuated when certain patients signed Form B. Opp'n at 6:20–22. Defendants do not appear to dispute that Form B executed an assignment, but instead argue the removal of a fiduciary—the statutory remedy for a breach of fiduciary duty, 29 U.S.C. § 1109(a)—exceeds the scope of the assignment. Reply at 10:18–19.

---

[2]     Regulations may not invoke a right that Congress has not created. *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). Congress delineated who may sue under 29 U.S.C. § 1132(a), and regulations cannot expand upon that absent a statutory intention to permit the Department of Labor to expand the parties who may sue.

Defendants argue that Form B only assigns claims for the purpose of recovering benefits, and that an order removing fiduciaries and barring them from serving as fiduciaries in the future is beyond the assignment. Reply at 11:2–14. In essence, Defendants concede the assignment was specific enough to assign the statutory claim for fiduciary breach, but not the statutory remedies. Defendants have provided no authority for the proposition that an assignment of the statutory claim for fiduciary breach under 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109 would not include the statutory remedy of removal. *See also* 29 U.S.C. § 1109(a) (explicitly permitting the removal of a fiduciary who breaches their obligations under ERISA).

Defendants also argue that any remedy under Form B must be related to the recovery of benefits. Reply at 11:4–14. This reading of Form B would mean Plaintiffs are precluded from seeking reformation, estoppel, injunctions, or declaratory relief, even though these remedies are all expressly listed in Form B. *Id.* ¶ 3. The document must be read in context in order to determine the intent of the parties. *Klamath-Lake Pharm. Ass'n*, 701 F.2d at 1283. Form B's enumerated list indicates that the parties intended to, and did, assign many rights beyond the recovery of benefits, including the right to sue for benefits and fiduciary breach. Whether a single alleged fiduciary breach can justify removing a fiduciary is a merits question, which cannot be addressed at this stage.[3]

To summarize, Plaintiffs were assigned the right to sue for benefits by patients that signed either Form A or Form B. They were also assigned the right to sue for fiduciary breach and equitable relief by patients who signed Form B. However, Form A did not assign claims for fiduciary breach or equitable relief, and Plaintiffs as providers cannot bring those claims under ERISA without a valid assignment.

### B. Failure to State a Claim

In Part 1 of this Subsection, the Court will determine whether Plaintiffs have stated a claim for ERISA benefits against all Defendants. In Part 2, the Court will determine whether

---

[3] This discussion only covers whether claims were assigned by the text of Form A and Form B. That a right was assigned by those forms does not mean that it was validly assigned, or that Plaintiffs can sue over that right under ERISA. *See Davidowitz*, 946 F.2d at 1481 (holding that an otherwise assignable right to benefits is not assignable in the face of an AAP in the plan documents). This section of the Order is strictly limited to the contract interpretation involved in ascertaining the intent of Plaintiffs and their patients in signing Form A and Form B.

1   Plaintiffs have stated a claim for fiduciary breach against all Defendants who covered a patient

2   that signed Form B. In Part 3, the Court will determine whether Plaintiffs have stated a claim

3   for equitable relief against the Blue Cross Defendants who covered a patient who signed Form

4   B. Finally, the Court will determine in Part 4 whether Plaintiffs have stated a claim under

5   California's UCL against the Blue Cross Defendants.

6                                    **1.      Claim for ERISA Benefits**

7         Plaintiffs seek ERISA benefits under § 1132(a)(1)(B). Plaintiffs allege they provided

8   medical services to their patients which were covered by each patient's ERISA plan, FAC ¶¶

9   96, 98, and received an assignment of ERISA benefits from each patient, *id.* ¶ 97. Plaintiffs

10  allege they submitted a claim for those benefits, which they were entitled to receive by virtue of

11  the assignments, *id.* ¶ 98, but that the Blue Cross Defendants refused to pay, *id.* ¶ 99.

12        In their individual filings, so Defendants have argued the FAC fails to plead sufficient

13  factual information to sustain a benefits claim under ERISA. *See, e.g.*, Time Warner Cable

14  Benefit Plan's Addendum to Mot. (Dkt. 657) at 10:25. They argue that because Plaintiffs bear

15  the burden of proof and because ERISA plans can only pay benefits according to the plan

16  instrument, Plaintiffs must allege specific plan terms in order to state a claim under ERISA. *Id*.

17  at 10:25–11:9.

18         Burden of proof and pleading requirements are two different issues. The burden of

19  proof comes from ERISA. *See, e.g.*, *Muniz v. Amec Const. Management, Inc.*, 623 F.3d 1290,

20  1294 (9th Cir. 2010). Pleading requirements come from the Federal Rules of Civil Procedure.

21  *See* Fed. R. Civ. P. 8(a), 9(b). The pleading requirement for a benefits claim requires Plaintiffs

22  to plead factual allegations sufficient to give them a plausible entitlement to relief. *See Iqbal*

23  556 U.S. at 679; *accord Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

24  Defendants cite to some cases where plaintiffs were required to produce plan documents at the

25  motion to dismiss stage, but those cases all involve coverage disputes.[4] Those cases are not

26

27

28  _____
    [4]       *See, e.g.*, *Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*, No. 10-81589-CIV, 2013 WL 149356, at *3 (S.D.
    Fla. Jan. 14, 2013); *Forest Ambulatory Surgical Associates, L.P. v. United HealthCare Ins. Co.*, No. 10-CV-04911-EJD,
    2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011).

1   relevant here, since this is not a coverage dispute—Defendants have already paid the claims,

2   albeit directly to the patients. *See*, *e.g.*, FAC ¶ 101(d).

3        Defendants also argue that because they paid the claims, they never denied the claim or

4   made an adverse benefits decision, Mot. at 27:12–4, which means they were not obligated to

5   provide Plaintiffs with the specific plan terms. 29 C.F.R. § 2560.503-(1)(g). Therefore, if the

6   Court required Plaintiffs to provide the plan terms at the pleading stage in this case, Defendants

7   could simply assert anti-assignment provisions without actually proving that those clauses exist

8   in the plan instrument, because Plaintiffs' case would be dismissed when they could not

9   provide the plan terms.

10       Here, coverage is not in dispute, the claims were paid, the plan terms were never

11   provided in the administrative process, and anti-assignment and other limiting provisions can

12   be evaluated in this motion to dismiss. Therefore, the Court finds that Defendants have

13   sufficient notice of the factual allegations that they were obliged to pay for the treatments in

14   question.

15       For the foregoing reasons, Defendants' Motion to Dismiss Count 1 for failure to plead

16   sufficient facts is DENIED.

17                    **2.        Claim for Fiduciary Breach**

18       Plaintiffs allege a claim for fiduciary breach against all Defendants under 29 U.S.C. §

19   1132(a)(2). FAC at 277:17–20.  Plaintiffs' claim appears to rest primarily on an argument that

20   fiduciaries violated the claim regulations. Opp'n at 21:9–15. Plaintiffs assert ERISA permits

21   them to bring a claim as an assignee of their patients. Opp'n at 21:24–27. Above, the Court

22   ruled that Form A did not assign claims for fiduciary breach, but Form B did assign claims for

23   fiduciary breach. It is unclear whether claims for fiduciary breach under (a)(2) can ever be

24   assigned or if the judicial exception that permits providers to pursue ERISA claims is limited to

25   (a)(1)(B). *See Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir.2000)

26   *amended*, 234 F.3d 428 (9th Cir. 2000), *overruled on other grounds by Odom v. Microsoft*

27   *Corp.*, 486 F.3d 541 (9th Cir. 2007) (en banc) (holding that providers can only sue for benefits

28   because of a judicial exception to 29 U.S.C. § 1132(a)(1)(B)); *Almont Ambulatory Surgery*

      *Center v. UnitedHealth Group*, 99 F. Supp. 3d 1110, 1131 (C.D. Cal. 2015) ("The Ninth Circuit

has not explicitly stated that a beneficiary can assign the rights to sue for breach of fiduciary duty . . . .").[5] The Court assumes without deciding that a claim for statutory breach under (a)(2) can be assigned.

Twenty-nine U.S.C. § 1132(a)(2) imposes liability for any violation of 29 U.S.C. § 1109. This section in turn imposes liability upon any fiduciary who breaches "any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter . . . ." *Id.* Unlike (a)(1)(B), § 1109(a) limits the potential universe of parties that may be sued. *Compare Mertens v. Hewitt Associates*, 508 U.S. 248, 252, 262 (1993) (holding that 29 U.S.C. § 1109 only makes fiduciaries liable); *with Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1205 (9th Cir. 2011) (finding no limits in § 1132(a) on who can be sued). Under 29 U.S.C. § 1133(1), every benefit plan must, in accordance with regulations, "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142–43 (1985). Under the regulations, an adverse benefits decision is defined as a "denial, reduction, or termination of, or failure, or a failure to provide or make payments (in whole or in part) for, a benefit." 29 C.F.R. § 2560.503-(1)(m). Plaintiffs allege that they were denied benefits under 29 U.S.C. § 1133(1), and subject to an adverse benefits determination under 29 C.F.R. § 2560.503-(1) without the notifications required by those sections. As a remedy, Plaintiffs ask the Court to remove the breaching fiduciaries. FAC ¶ 379.

---

[5] This Court is less certain than the *Almont* court that claims for fiduciary breach, particularly (a)(2) claims, can be assigned. While the patient and provider have almost identical interests in a benefits claim, in a true fiduciary breach claim under § 1109 (as opposed to an (a)(3) claim which is really designed to obtain benefits, such as in *Amara*, 562 U.S. 421 at 435), the patient and provider can have strongly diverging interests. The provider will always want to remove the fiduciary, otherwise they would not include an (a)(2) claim in the complaint, since (a)(2) remedies can only benefit the plan and not the provider-assignee. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985). In this case for example, each patient might have little interest in pursuing alleged violations of the claims regulations when they have already been paid and may benefit from claims administrators using the incentive of guaranteed payment to in-network providers to lower their healthcare costs and out of pocket expenses, FAC ¶ 27, both of which providers, especially those out-of-network, may strongly dislike and seek to change. In addition, an (a)(2) claim can take far more plan resources to defend against than a benefits claim because, as here, it may involve claims from many different beneficiaries and providers over a period of years. Where providers and patients have strongly diverging interests, the question of whether the provider's enforcement comports with ERISA's purpose to protect plan participants and beneficiaries is especially pertinent. *See Boggs v. Boggs*, 520 U.S. 833, 845 (1997).

To rule on Plaintiffs' argument, the Court must determine what rights assignees have during the claims process, and what obligations are imposed upon claims administrators. Plaintiffs are not participants under ERISA, 29 U.S.C. § 1002(7), and they are not beneficiaries except by virtue of their assignments. *See, e.g.*, *Rojas*, 793 F.3d at 257–8. However, they are contractual assignees of beneficiaries, which gives them some rights under ERISA, such as the right to pursue properly assigned benefits claims in court. *See, e.g.*, *Misic*, 789 F.2d at 1377. Plaintiffs claim that they are entitled to the full panoply of ERISA's claims regulations. FAC ¶ 87. Defendants disagree, and argue that Plaintiffs are not entitled to any recovery and that in any event, the claims were paid. Mot. at 26:2–18.

Plaintiffs allege—using identical language for all 274 patients—that Defendants paid "some or all" of each claim. *See, e.g.*, FAC ¶ 101. There may be scenarios where the carrier was permitted to only pay some of the claim, such as permitted offsets. The Court therefore interprets the phrase "some or all" to mean merely that Plaintiffs allege that each patient was paid directly by Defendants. The Court does not interpret the FAC to allege that any particular patient was paid less than they were entitled to under the plan. If Plaintiffs can properly allege that specific patients were not paid the full amount they are entitled to under the plan and claim, Plaintiffs should clarify in future pleadings.

Because Plaintiffs have not alleged that any claim was unpaid, the Court cannot find that a claim was denied or an adverse benefits determination was made. Of course, payment to the assignor after notice of the assignment does not extinguish the debt, and this is why Plaintiffs can pursue a benefits claim. Restatement (Second) of Contracts § 336. However, the Court is unwilling to find that a check sent to a beneficiary is simultaneously a payment and a denial of payment. Congress identified the claims procedure as revolving around a singular claim which is either paid or denied, *see* 29 U.S.C. § 1133, which is exactly what Plaintiffs allege happened here. It is unlikely that Congress meant to require plans to send a payment check to one party and a notice of the right to appeal to another, or that Congress would specifically require the notice of denial to be written to a reasonable participant standard when the denials were sent to a sophisticated provider with its own experienced attorneys and dedicated office staff. *See* 29 U.S.C. § 1133 (requiring denials to be accompanied by the opportunity for a full and fair

1    review, and to be written in a manner "calculated to be understood by the participant."); FAC

2    ¶¶ 17, 76. Similarly, 29 C.F.R. § 2560.503-(1)(m) applies to a "denial, reduction, or termination

3    of, or failure, or a failure to provide or make payments (in whole or in part) for, a benefit."

4    Complete payment to the statutory beneficiary is simply not a reduction, termination, or failure

5    to make payments, because payment was made. Even in the natural reading of the language, it

6    is hard to justify how fully paying claims is an adverse benefits decision.

7        Congress expected the plan to receive a claim and pay benefits accordingly, which is

8    exactly what happened here. ERISA was enacted to protect the statutory beneficiaries. 29

9    U.S.C. § 1104(a)(1). ERISA's procedural protections are satisfied when the claims

10   administrator pays the patient directly, even if the patient has assigned away their right to those

11   specific benefits. *See Davidowitz v. Delta Dental Plan of California, Inc.*, 946 F.2d 1476, 1481

12   (9th Cir. 1991) (holding that under ERISA an AAP can prohibit assignments and require plans

13   to pay the beneficiary). Just as receiving medical treatment in exchange for an assignment of

14   benefits fulfills the purpose of the protections of ERISA, paying the beneficiary for their

15   treatment fulfills the purpose of the claims regulations of ERISA. *Cf. Misic*, 789 F.2d at 1377.

16       If Plaintiffs wish to become more involved in the claims process for the claims they are

17   assigned, the Department of Labor has issued regulations which permit a party to become an

18   authorized representative for specific claims. 29 C.F.R. § 2560.503-(1) (requiring plans to

19   permit parties to become an authorized representative). The existence of this opportunity also

20   supports the Court's view that the natural reading of the claim regulations in this context does

21   not separate claims from payment and does not give assignee-providers the regulatory

22   protections to which Plaintiffs think they are entitled.[6]

23       Because the Court has found that neither a denial nor adverse benefits determination

24   occurred when the Defendants paid the patients, the Court DISMISSES Plaintiffs' claims for

25   breach of fiduciary duty WITHOUT PREJUDICE.

26

27

28

---

[6]    The Court has interpreted this regulation without relying on the Department of Labor's website. It therefore does not need to decide whether *Auer* deference is appropriate. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997).

### 3. Claim for Injunctive and Declaratory Relief

In the FAC, Plaintiffs request two forms of relief under 29 U.S.C. § 1132(a)(3) from only the Blue Cross Defendants whose clients signed Form B: declaratory judgment and an injunction. FAC at 278:14–21. Plaintiffs also argue elsewhere in the FAC that the Defendants should be equitably estopped from asserting any anti-assignment provision ("AAP") defense. FAC ¶ 70. The Court will treat this as a request for equitable estoppel under 29 U.S.C. § 1132(a)(3). Nowhere in the FAC do the Plaintiffs request reformation or surcharge. The Court will first address Plaintiffs' claims for injunctive and declaratory relief before turning to their request for estoppel, and then finally to their request to "relabel" their claims to include pleas for reformation and surcharge.

#### a. Injunctive and Declaratory Relief

Plaintiffs ask for a declaratory judgment.[7] Plaintiffs argue that "the Blue Cross Defendant's practice of ignoring or summarily denying Sovereign's Assigned Claims without consulting the operative plan document and without informing Sovereign of the fact of its denial, or the specific basis therefore, violates ERISA." FAC ¶ 384. Plaintiffs also seek an injunction and the FAC specifies seven terms for the Court to impose upon the Blue Cross Defendants relating to "all past and future Assigned Claims submitted by Sovereign or its agents to a Blue Cross Defendant." *Id.* ¶¶ 385(a)–(g).

Both of these claims for relief suffer from the same fatal flaw: they request relief beyond the scope of the assignment. As explained above, Form B only assigns claims arising from "services rendered by Provider." By definition, this cannot include prospective claims because those services have not been rendered and have not been assigned. Indeed, an assignment that did include unknown prospective claims would be highly questionable because it would mean the patients have given up their right to sue for treatment benefits without ever actually having receiving any treatment, defeating the entire point of provider assignments. *Cf. Misic*, 789 F.2d at 1377 (permitting assignments of health care benefits to medical providers when they provide

---

[7]   Because neither party addresses whether declaratory judgment is available under (a)(3), or whether an order permanently barring the Blue Cross Defendants from serving as fiduciaries for any Welfare Plan Defendant is available under (a)(2) or (a)(3), if either, the Court will not do so at this stage. *See* FAC ¶ 379.

care because it is furthers ERISA's goal of providing healthcare to plan members without first evaluating solvency or sending the patients large bills).

Because Plaintiffs can only seek relief for claims they have actually been assigned, their claims for declaratory and injunctive relief are DISMISSED WITHOUT PREJUDICE.

### b. Estoppel

Plaintiffs have asked the Court to estop Defendants from asserting anti-assignment provisions in the plan instruments that would prevent Plaintiffs from asserting ERISA claims derivatively. *Id.* ¶ 70. Although Plaintiffs do not identify their request for estoppel under the heading for Count 3, ERISA does permit a party to ask for equitable estoppel as a form of equitable relief under 29 U.S.C. § 1132(a)(3). *See*, *e.g.*, *CIGNA Corp. v. Amara*, 563 U.S. 421, 443 (2011) ("*Amara*"). The traditional elements of equitable estoppel are: "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014) (quoting *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992)).

In addition, the Ninth Circuit has laid out additional equitable estoppel requirements in the ERISA context. *Gabriel*, 773 F.3d at 957. Those are (1) extraordinary circumstances, (2) "that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect," and (3) that the representations made about the plan were an interpretation of the plan, not an amendment or modification of the plan. *Id.* at 957. Federal pleading rules require that claims based on fraud or mistake to plead those circumstances with particularity. Fed. R. Civ. Proc. 9(b).

Plaintiffs' entire request for estoppel in their FAC states:

> Plaintiff is informed and believes that Blue Cross Defendants (or their agents) regularly informed Plaintiffs' agents through express words in many cases, but at a minimum impliedly through their actions, that the claims of Former Patients at issue were freely assignable. Accordingly,

1         Defendants have waived, or are estopped from asserting, any anti-

2         assignment clause as a defense to Plaintiffs' ERISA claims in this case.

3    FAC ¶ 70. This is a claim for estoppel based on either fraudulent representations or fraudulent

4    conduct. Plaintiffs specifically identify this paragraph as "explaining the specific misconduct of

5    Blue Cross" and satisfying an element of constructive fraud. Opp'n at 33:2–5. Thus, Plaintiffs

6    are basing their estoppel claim on an allegation of fraud. However, far from being pleaded with

7    particularity, their fraud claim is pleaded on information and belief and in the vaguest of terms.

8    Plaintiffs do not provide specific information about any representations made by any

9    Defendant, nor do Plaintiffs identify the misleading actions except to state that they took place

10   "over a long period of time" and involved processing UB-04 forms, unspecified

11   communications, and Defendants requesting additional documentation. *Id.* ¶ 69. Even when

12   Plaintiffs describe the benefits verification process, they allege that they called the Defendants

13   to verify benefits, *id.* ¶ 43, and investigated whether benefits were assignable and circled a

14   "yes" or "no" on a form, *id.* ¶ 45, but they never state what they were told in any of the at least

15   274 phone calls alleged in the FAC. These allegations are insufficient to give an individual

16   Defendant notice of the factual allegations under Rule 9.

17        Disregarding statements which do not meet the applicable pleading standard, Plaintiffs

18   have not met the factors required for equitable estoppel because they have not alleged what

19   statements or conduct they relied on in each of the 274 claims, that they were ignorant of AAPs

20   in any plan, or that they were injured by their reliance. [8] Plaintiffs have also not met the Ninth

21   Circuit's additional pleading requirements because they have not alleged the plan terms were

22   ambiguous or that Plaintiffs were unable to obtain plan documents. Finally, Plaintiffs have not

23   identified what constitutes extraordinary circumstances, especially when each Blue Cross

24

---

25       [8]    The closest the FAC comes to alleging reliance is when it alleges that the Plaintiffs "reasonably believed they
would be paid directly and relied on the Blue Cross Defendants express or implied representations." FAC ¶ 71(e). This is a

26   conclusory statement of law and not a factual allegation. The Plaintiffs allege three injuries from this alleged reliance. FAC
¶¶ 71(e)(1)–(3). The first has no relevance to an estoppel claim. The second does not allege Plaintiffs would or could have

27   created an "alternate payment arrangement," only that they were deprived of doing so, and does not allege that an alternate
payment system would have resulted in less injury. The third paragraph alleges that "obfuscation" denied the Plaintiffs the
ability to help their patients participate in the appeal process and that they therefore lost money, but Plaintiffs have not

28   alleged they were entitled to help patients whose claims they have alleged were fully assigned, how that caused the Plaintiffs
to lose money, and how this loss is connected to representations made about assignability.

1    Defendant is independent,  FAC ¶ 23, and may only have a single patient in this case. *See* Pls.'

2    Identification of Remaining Patients and Corresponding Defs. Ex. B (Dkt. 1009–2) at 3.

3            Because Plaintiffs have not pleaded all of the elements of equitable estoppel under

4    ERISA, Plaintiffs' request for equitable estoppel is DISMISSED WITHOUT PREJUDICE.

5                    ### c.  Reformation and Surcharge

6            The Plaintiffs for the first time in their Opposition ask for the remedies of reformation

7    and surcharge. Opp'n at 4 n.1. Under ERISA, these are claims for "other appropriate equitable

8    relief" under § 1132(a)(3)(B). *Amara*, 563 U.S. at 443. Claims for relief must be contained in a

9    pleading. Fed. R. Civ. P. 8(a)(3). This is not a mere "label" error. Opp'n at 4 n.1. Plaintiffs'

10   citation to *Johnson v. City of Shelby, Miss.* is unavailing. In *Johnson*, the Court held that the

11   failure to cite 42 U.S.C. § 1983 was not grounds to dismiss a complaint under Rule 8(a)(2), but

12   nothing in the *Johnson* opinion excuses a party from stating the relief they seek in their

13   complaint as required by Fed. R. Civ. Proc. 8(a)(3). Plaintiffs will therefore have to amend the

14   FAC in order to request reformation or surcharge.[9]

15                    ### 4.    Failure to State a Claim and Preemption of State UCL Claim

16           The FAC also alleges a UCL claim against the Blue Cross Defendants. FAC at 279:26.

17   Plaintiffs bring their UCL claim as an alternative to their request for injunction in Count 3 and

18   they do so directly, not by virtue of their assignments. FAC ¶ 388. Defendants argue the UCL

19   claim must be dismissed for two reasons: (1) Defendants' conduct was neither unlawful nor

20   unfair, and (2) the UCL claim is preempted by ERISA. Mot. at 31:10–32:12.

21           In order to have standing under California's UCL as amended by Proposition 64, a party

22   must (1) establish a loss or deprivation of money or property sufficient to qualify as injury in

23   fact, *i.e.* economic injury, and (2) show that the injury was the result of, *i.e.* caused by, the

24   unfair business practice or false advertising that is the gravamen of the claim. *Kwikset Corp. v.*

25   *Superior Court*, 51 Cal. 4th 310, 322–24 (Cal. 2011). Plaintiffs must then meet the substantive

26   elements of the statute and show that the behavior was unlawful, unfair, or fraudulent. *Id.* at

---

28   [9]        Should Plaintiffs amend their complaint to include a claim for reformation, they must plead with particularity the facts that show that because of mistake or fraud, the plan terms do not reflect those the sponsor assented to or intended to impose. *Gabriel*, 773 F.3d at 955 (holding that reformation of an ERISA plan is available for only for mistake or fraud); Fed. R. Civ. P. 9(b).

320. In order to state a violation of the unlawful prong, Plaintiffs must identify a particular section of a statutory scheme and describe with reasonable particularity the facts supporting the statutory elements of the alleged violation. *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (Cal. Ct. App. 1993). In order to state a violation of the unfair prong, Plaintiffs must identify the business practice that is unfair but not proscribed by some other law. *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 589760, at *22 (N.D. Cal. Feb. 14, 2016) (identifying three different tests that California courts currently apply to determine if a practice is unfair).

ERISA has a broad preemptive scope. In particular, ERISA preempts any state laws which would conflict with its exclusive remedial scheme in 29 U.S.C. § 1132(a). *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). Injuries that derive solely from ERISA, such as a failure to pay benefits, cannot be used as the injury in fact or economic loss for a UCL claim because those are derivative claims subject to ERISA's exclusive remedies. *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1226 (9th Cir. 2005) (holding that a UCL claim could not be based upon liabilities created by ERISA). For the same reason, a violation of ERISA cannot be used to satisfy the unlawful prong of a UCL claim because ERISA violations must be handled exclusively through the remedy that Congress created for ERISA violations. *Aetna*, 542 U.S. at 209 (holding that Congress intended to make ERISA's remedies exclusive and that state law causes of action that duplicate, supplement, or supplant ERISA's remedies are preempted).

Plaintiffs have attempted to allege direct and non-preempted harms, *see* FAC ¶¶ 71(e)(1)–(3), but none of those are sufficient to show an injury in fact and economic loss.

Plaintiffs' citation to *Cedars-Sinai* is unavailing because the provider in *Cedars-Sinai*, like the provider in *Blue Cross of California*, was suing based on a state law contract between the provider and the plan entity and thus had an injury cognizable outside of ERISA. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 976 (9th Cir. 2007); *Blue Cross of California v. Anesthesia Care Associates Med. Grp., Inc.*, 187 F.3d 1045, 1052 (9th Cir. 1999). Plaintiffs have made only conclusory allegations that they relied on statements or conduct by the Defendants. *See, e.g.*, FAC ¶ 70. They have not alleged Defendants lied to them

1  about the assignability of claims. *Id.* ¶ 45(c) (stating that Plaintiffs asked whether benefits were

2  assignable, but not stating what answer they received each of the at least 274 times that they

3  asked).

4       For the above reasons, Defendants' Motion to Dismiss Plaintiffs' UCL claim is

5  GRANTED. The claim is DISMISSED WITHOUT PREJUDICE.

6       **C. Validity of the Assignments[10]**

7       Defendants raise numerous challenges to the validity of the assignments. Defendants

8  challenge the sufficiency of the notice they received, Mot. at 21:21–2, the involvement of

9  another party in the billing process, Mot. at 24 n.9, the unconscionability of Form B, Mot. at

10  25:13–22, and most significantly, they argue that many plans contained valid and enforceable

11  AAPs which prohibited the assignment of plan benefits, Mot. at 16–1-8. The Court will address

12  each of these issues in turn.

13       **1.    Notice**

14       Defendants argue that Plaintiffs' assignments are invalid because "Plaintiffs did not

15  provide sufficient notice of the alleged assignments' scope." Mot. at 21:21-22. Plaintiffs argue

16  that they gave sufficient notice. Opp'n at 11:9. Both sides are wrong because both treat notice

17  as a necessary element of a valid assignment. Notice is not required to make an assignment

18  valid, although lack of notice is a defense for payments that were already made. *See, e.g.*, *Smith*

19  *v. Mallick*, 514 F.3d 48, 51 (D.C. Cir. 2008) ("[A] valid assignment of a chosen action requires

20  no notice to the obligor, the assignee takes it subject to all claims and defenses that accrued

21  before the obligor had notice of the assignment.") (citations omitted); Restatement (Second) of

22  Contracts §336(2). This is also the rule in California. California Code of Civ. Proc. § 368; *see*

23  *Salaman v. Bolt*, 74 Cal. App. 3d 907, 919 (Cal. Ct. App. 1977) (holding that an assignee stands

24  in the shoes of the assignor, taking rights and remedies subject to offset or defenses that exist

25  prior to actual notice of the assignment). Even if Plaintiffs had *never* given Defendants notice

---

[10] Neither party appears to have addressed whether, or to what degree, the assignments or their validity are governed by California law or federal ERISA common law. However, the Court need not address that question because there do not appear to be significant differences as applied to the relevant issues.

1   of the assignment, Plaintiffs would have still stated a valid claim—but each Defendant would

2   have a defense for the amount it paid before receiving adequate notice.

3           Notice is not necessary for an assignment to be valid and Plaintiffs could have stated a

4   claim for ERISA benefits even if they had alleged that they had never provided notice. The

5   remainder of the legal arguments the parties make on this topic should be raised at a later stage,

6   when the Court will be in a position to examine issues such as when notice of the assignment

7   was given, what constituted that notice,[11] and the amount and timing of the alleged payment(s)

8   to each patient.

9                    **2.      Medlink**

10          Even though Plaintiffs do not need to show that they provided notice of the assignments

11  to Defendants, to be considered beneficiaries under ERISA Plaintiffs do bear the burden of

12  showing that their assignments are valid. *Misic*, 789 F.2d at 1379; *Cockerell v. Title Ins. &*

13  *Trust Co.*, 42 Cal.2d 284, 292 (Cal. 1954). Defendants have challenged the validity of some

14  assignments because the claims were originally billed by Medlink and not Plaintiffs. Mot. at 24

15  n.9. Defendants have suggested that this means that patient claims were assigned to Medlink

16  and not Plaintiffs. Reply of Anthem Defs. (Dkt. 860) at 3. Because Medlink billed them,

17  Defendants argue they never had notice of the assignment to Plaintiffs. *Id.* at 5. There is also a

18  concern about whether Medlink's involvement with the assignments causes Plaintiffs to run

19  afoul of *Simon*, 208 F.3d at 1080–1, which prohibits providers from reassigning patient claims

20  to third parties.

21          On a motion to dismiss, the Court is bound to accept the plausible, non-conclusory

22  factual allegations in the FAC in the light most favorable to Plaintiffs. *See Iqbal*, 556 U.S. at

23  679. The FAC alleges that Medlink provided Sovereign with rehabilitation services as well as

24  "certain intake and claim matters." FAC ¶ 18. The FAC also alleges that Sovereign provided

25  medically necessary services to the patients, *id.* ¶ 56, and that every assignment, whether Form

26  A or Form B, lists a "Plaintiff entity" as the provider, *id.* ¶ 53. The Court interprets these

27

28  _____

[11]        Defendants repeatedly state that the only way they were given notice was by a checked box on UB-04 forms, Mot. at 22:21-4, but the FAC also alleges that Plaintiff Sovereign sent "over two dozen follow-up letters" requesting payment. *See, e.g.*, FAC ¶¶ 76, 93, 371. Regardless, the timing and contents of those letters is not properly before the Court.

allegations to mean that every entity listed on Form B under "Provider" is a Plaintiff in this case. In the light most favorable to the complaint, these allegations show that Medlink was involved in providing certain medical and administrative services on Plaintiffs' behalf, but they do not show that assignments were made to Medlink. Nothing alleged in the FAC about Medlink's involvement is sufficient, at this stage, to demonstrate the assignments are invalid. Defendants should raise their arguments about Medlink and the propriety of the assignments at a later stage, when they can properly provide evidence to back up their assertions.

### 3.      Unconscionability of Form B

Defendants argue that Form B is unconscionable. Defendants claim there is procedural unconscionability because Form B is an adhesive contract that required patients suffering from addiction or mental health issues to agree to its terms or forego Plaintiffs' services. Mot. at 25:13–22. Defendants also argue there is substantive unconscionability because Form B is unduly harsh and oppressive in conveying so many rights while leaving Plaintiffs without recourse or remedies. Mot. at 26:2–10. Both of these arguments are entirely unpersuasive.

California law provides that any clause or contract that is unconscionable as a matter of law at the time it was made is voidable. Cal. Civ. Code § 1670.5(a). California courts have established a sliding scale between procedural and substantive unconscionability—the more procedurally unconscionable a contract is, the less substantive unconscionability needs to be found in order to void the contract. *Armendariz v. Found Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). The procedural element focuses on surprise or oppression. *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581 (Cal. Ct. App. 2007). A contract of adhesion establishes a minimal degree of procedural unconscionability in the face of available alternatives. *Id.* at 585. The substantive element of unconscionability focuses on overly harsh or one-sided results. *Id.* at 586.

Defendants argue that Form B is oppressive and therefore procedurally unconscionable because Plaintiff Sovereign required patients suffering from addiction and mental health issues to sign an assignment before receiving treatment. Mot. at 25:14–22 (quoting FAC ¶ 51). Paragraph 51of the FAC states "Sovereign (or its agents, on Sovereign's behalf) obtained and obtains a valid assignment of benefits ("Assignment") from all patients before treating them." It

is unclear if Defendants are suggesting that all patients ever treated by Sovereign have signed assignments, or only the patients in this case. If the latter, that is not surprising given that Plaintiffs' first three causes of action can only be brought by virtue of assignment. Even if Defendants means all patients treated by Sovereign ever, this is not enough to show procedural unconscionability because it does not show that there was any surprise or oppression. Many patients would happily choose to assign their benefits in exchange for upfront treatment, it may mean less hassle with healthcare claims and billing. FAC ¶ 27, 52. Defendants have no authority to support the proposition that patients seeking treatment must either sign an assignment or forego treatment. Mot. at 25:14–5. Defendants have therefore failed to show that this was a contract of adhesion or has even a minimal level of procedural unconscionability.

Form B is also not substantively unconscionable. While it does assign many rights and protections, in exchange the patients get treatment up fron and presumably are able to pay the remainder later. Plaintiffs correctly argue these patients do not need many of the protections of ERISA for these services, because they have already been treated, which weighs heavily against finding substantive unconscionability. Opp'n at 8:7–9. Defendants also misconstrue Form B because they assert that the patients were forced to give up their rights "without meaningful limitation." Reply at 9:18. Were this true, there would be a stronger argument for substantive unconscionability, but as explained above, Form B is by its own terms limited to rights for "services rendered by Provider," meaning that Plaintiffs can only assert claims arising from the treatment they have already provided, but not yet been paid for. Some remedies may have an impact beyond the monetary claims for those treatments, but it is hard to understand how a provider asserting a patient's statutory rights "unreasonably and unexpectedly elevates the rights of Plaintiffs over that of plan members." Mot. at 26:9–10. Indeed, Plaintiffs can only assert the rights granted by ERISA and never have more rights than the assignor. Whether or not those remedies are appropriate is a merits question, but a provider requesting statutory remedies is not substantively unconscionable.

### 4.    Ariz. Rev. Stat. Ann. § 20-822(3)

Defendants Blue Cross Blue Shield of Arizona, Inc. ("BCBSAZ"), BCBSAZ Employee Health Plan, and Tucson Electric Power Company Group Insurance Plan defend against claims

1  related to Patients 94, 116, 131, and 273. The Court will refer to their arguments as

2  "BCBSAZ's" because BCBSAZ acted as the claims administrator for all four patients.

3  BCBSAZ argues that Arizona Revised Statute § 20-822(3) requires BCBSAZ to pay the

4  patients directly. BCBSAZ's Addendum to Mot. (Dkt. 683) at 3:1–11. In support, they attach as

5  Exhibit 2 a 1975 opinion from the Arizona Attorney General which they argue confirms their

6  position. Op. Atty. Gen. Az. No. R75-305 (1974). Plaintiffs disagree and argue ERISA

7  preempts state laws that relate to employee benefit plans, and the right to assign plan benefits is

8  created and therefore protected by ERISA. Pls.' Opp'n to BCBSAZ's Addendum (Dkt. 835-1)

9  at 3. Defendants argue the statute it is not preempted and cite the Fifth Circuit's opinion in

10  *Louisiana Health Services & Indemnity Company v. Rapides Healthcare System*, 461 F.3d 529,

11  536 (5th Cir. 2006). Plaintiffs argue that if the Arizona statute falls under ERISA's preemption

12  provision it is saved from preemption as it applies to Patient 116's insured plan under ERISA's

13  savings clause, 29 U.S.C. § 1144(b)(2)(A).

14       As an initial matter, the Court has not found any Arizona case construing this law, nor

15  has it found a case where a federal court has found this law to be enforceable in ERISA plans.

16  The law itself is titled "Definitions" and its payment provision only applies to payments made

17  to a hospital, physician, podiatrist, dentist, or optometrist by hospital service corporations or

18  medical service corporations. Ariz. Rev. Stat. Ann. § 20-822(3). BCBSAZ asserts they fall into

19  these categories under Arizona law. BCBSAZ's Addendum to Mot. (Dkt. 683) at 3:3. However,

20  this does not appear on the face of the complaint, nor is it in any document the Court has taken

21  judicial notice of or incorporated by reference. On a motion to dismiss, the Court cannot

22  examine facts outside the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

23  322–23 (2007). In addition, BCBSAZ has not explained how this law would apply to Plaintiffs,

24  who are not alleged to be a hospital or physician. BCBSAZ can make this argument again once

25  the facts are properly before the Court, but at this stage the Court cannot find that the

26  assignments by Patients 94, 116, 131, and 273 to Plaintiffs were invalid under Arizona law.

27

28

### 5.   Anti-Assignment Provisions (AAPs)

Defendants related to 172 patients seek dismissal on anti-assignment grounds.[12] An AAP in an ERISA plan prohibits patients from assigning their right to benefits. The Ninth Circuit in *Misic* held that ERISA neither mandated nor prohibited the ability to assign benefits. *Misic*, 789 F.2d at 1377. In *Davidowitz*, the Ninth Circuit explicitly upheld an AAP. *Davidowitz*, 946 F.2d at 1481. In regards to the AAPs, the Court must decide whether each asserted AAP is in an enforceable plan document, thus prohibiting assignment.

### a.   Prerequisites For an AAP to be Enforceable

Plaintiffs have argued that for an AAP to be enforceable, four procedural and two substantive requirements must be met. Opp'n at 14:9–15:20, 16:3–5. Importantly, Plaintiffs do not argue that any of their proposed procedural requirements are unique to AAPs or the motion to dismiss stage. That means that these requirements, if valid, would apply whenever any party tries to enforce any provision of an ERISA plan at any stage of litigation, presumably including Plaintiffs' own claims to plan benefits. The Court has considered these requirements and rejects each of them except the writing requirement, for the reasons set forth below.

### i.   An AAP Must Be in the written Plan Instrument

The Court agrees with Defendants that an AAP must be in the written plan instrument. This requirement derives squarely from the text of ERISA. 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument."). No Defendant has offered evidence of an oral or implied AAP.

### ii.   The Entire Instrument Must Be in the Record

Plaintiffs argue that before an AAP can be enforced "an anti-assignment provision must not be contradicted by other language in the 'written instrument.' That means the entire written instrument must be introduced into evidence." Opp'n at 15:3–5. Plaintiffs cite no authority for this proposition. At the hearing, Plaintiffs' attorney explained that the requirement of producing the entire written instrument comes from "black letter contract law as it maps onto ERISA,

---

[12] The Defendants related to the following 58 patients are not seeking dismissal on anti-assignment grounds: 4, 5, 10, 14, 17, 20, 21, 30, 38, 42, 48, 50, 57, 60, 76,78, 81, 84, 90, 91, 92, 100, 103, 107, 114, 121, 129, 133, 140, 146, 155, 159, 166, 168, 172, 175, 188, 189, 192, 194, 212, 217, 220, 223, 225, 227, 229, 230, 231, 233, 236, 237, 241, 244, 251, 252, 266, 269.

1   which is when you assess the meaning of a contract, you need to see the full contract." MTD

2   Hr'g Tr. (Dkt. 905) at 65:8–10. Plaintiffs' attorney did not state what that black letter law was.

3          The closest rule the Court can find is the rule of interpretation that says that a "writing is

4   interpreted as a whole, and all writings that are part of the same transaction are interpreted

5   together." Restatement (Second) of Contracts § 202(2). Plaintiffs appear to be converting a rule

6   of contract interpretation into a rule defining the burden of production or sufficiency of the

7   evidence. Importantly, Plaintiffs' proposed requirement is not limited to just AAPs—its logic

8   would apply to any ERISA provision and would prevent a court from enforcing any plan terms

9   unless the entire written instrument is before the court, even on summary judgment. This is not

10  the common law rule.

11         As the Court explained in the Briefing Order, *Prichard* requires a party asserting an

12  ERISA provision to show that such a provision was in a plan document, but it did not require

13  that party to necessarily produce the entire plan instrument. Briefing Order at 5; *Prichard v.*

14  *Metro. Life Ins. Co.*, 783 F.3d 1166, 1170–71 (9th Cir. 2015). *Prichard* also held that an

15  ERISA plan instrument can be comprised of multiple documents. It is unclear why the Court

16  would have to read, for example, a supplemental dental or vision policy in order to determine

17  whether an AAP would apply to Plaintiffs' claims for mental health and substance abuse

18  treatment reimbursements. FAC ¶ 32. As a more practical example, it is unclear why the Court

19  would need to look at old amendments or plan documents that are necessarily superseded by

20  conflicting documents. In addition, Plaintiffs' own claims rely on enforceable plan terms for

21  benefits, and this rule would require them to produce the complete plan instrument before they

22  could prevail on their benefits claims. Finally, even when a plan administrator denies a claim,

23  the claim regulations only require it to provide the specific plan provisions, not the entire plan

24  instrument. 29 C.F.R. § 2560.503-1(g)(1)(ii). Plaintiffs have provided no support or authority

25  for why Defendants must produce the entire plan instrument, and the Court declines to create

26  such a blanket rule.

27                              **iii.    The AAP Must Be Disclosed in the SPD**

28         Plaintiffs next assert that for an AAP to valid, the AAP must have been included in the

     Summary Plan Description ("SPD"). Opp'n at 15: 9–15. While the plan documents provide the

terms of the plan, 29 U.S.C. § 1102, SPDs are a statutorily required notice which must contain certain information about the plan. 29 U.S.C. § 1022. The Supreme Court has said the role of SPDs is to provide clear simple communication, and has cautioned that including too much technical or legal information thwarts ERISA's goal of having clear SPDs. *Amara*, 563 U.S. at 437–8.

In support of their proposed requirement, Plaintiffs cite to the entire statutory requirement for SPDs, 29 U.S.C. § 1022(a)–(b), the entire regulation specifying the contents of SPDs, 29 C.F.R. § 2520.102-3, and *Osberg v. Foot Locker*, 138 F. Supp. 3d 517, 552 (S.D.N.Y. 2015). Opp'n at 15: 9–15. *Osberg* may be relevant to other parts of Plaintiffs' case, but nothing in that case addresses whether or not an AAP must be in an SPD, because *Osberg* involved a pension plan and ERISA prohibits the assignment of pension benefits. *Id.* at 523; 29 U.S.C. § 1056(d). Because Plaintiffs cited the entire statutory and regulatory scheme governing SPDs without specificity or argument, the Court is forced to guess which provision among hundreds supposedly support Plaintiffs' assertion that a valid AAP must be in the SPD.[13]

Plaintiffs' argument is foreclosed by the Ninth Circuit's rulings in *Davidowitz* and subsequent cases that have upheld AAPs without ever discussing whether they were in an SPD. *Davidowitz*, 946 F.2d at 1481 (9th Cir. 1991); *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014). *Davidowitz* held that Congress was silent on whether health benefits could be assigned and intended to "allow the free marketplace to work out such competitive, cost effective, medical expense reducing structures as might evolve." *Davidowitz*, 946 F.2d at 1481.

Plaintiffs essentially argue that *Davidowitz* and *Misic* are wrong and that while Congress was intentionally silent on the validity of assignment, it simultaneously mandated the disclosure of anti-assignment provisions. Plaintiffs however cite to no case where a court has suggested that AAPs must be disclosed in an SPD. In addition, the Supreme Court has cautioned against including unnecessary legalese because it diminishes the utility of SPDs. *Amara*, 536 U.S. at

---

[13] Plaintiffs do appear to have narrowed their arguments in their Response. Pls.' Resp. at 18–20. However, Plaintiffs had the opportunity to make those arguments and provide those citations in their Opposition, and the Court will not address new arguments that were not made in the Opposition and went beyond the scope of the Briefing Order.

437. AAPs may be precisely such legalese because AAPs cannot lead to "disqualification, ineligibility, or denial or loss of benefits." *See Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 904 (9th Cir. 2009). Instead, AAPs merely identify who gets sent the check. SPDs must apprise patients of their rights under the plan, 29 U.S.C. § 1022(a), but AAPs prevent assignment. If anything, Plaintiffs' argument would have the opposite effect they argue for and instead require every plan *without* an AAP to disclose that those patients have the right to assign their benefits—a position also not supported by precedent.

In this case, there is no evidence that requiring AAPs to be disclosed in SPDs would have made any difference to anybody. Plaintiffs do not allege that they ever asked for an SPD or that they would have done anything differently had their patients' SPDs contained AAPs. This makes sense because SPDs are designed to convey information in a simple and understandable way to ERISA's statutory beneficiaries, not contractual assignees. 29 U.S.C. § 1022(a) (SPDs "must be written in a manner calculated to be understood by the average plan participant."). Plaintiffs have thus failed to show that the text or purpose of ERISA supports their proposed requirement.

### iv.    The AAP Must Be Furnished

Plaintiffs assert that for an AAP to valid it must be furnished to the "participant-assignee." Opp'n at 15:16–20. In other words, Plaintiffs argue that ERISA requires a claims administrator to regularly serve every provider-assignee with the SPD of every participant and beneficiary who has assigned them a claim. *See* 29 U.S.C. § 1024(b) (requiring SPDS be provided to participants and beneficiaries within specific deadlines of certain triggering events. There is nothing in the text of ERISA that would require this outcome and Plaintiffs have not identified any case where any party was ever required to show that SPDs were furnished. Nor is it clear how Defendants could do so on a motion to dismiss, where the patients' SPDs are never referenced in the complaint. In their Response, Plaintiffs appear to change their argument. Pls.' Resp. at 18, 20 (arguing that Defendants asserting AAPs must show the SPD was furnished to the "subject beneficiary" and stating that a "provider is not entitled to see the plan or the SPD; the only information it gets is from the patient."). Regardless, because the Court has found that

1  ERISA does not require AAPs to be disclosed in SPDs, Defendants are not required to show

2  that SPDs were furnished to individual Plaintiffs.

3  <b>v.   The AAP Must Be Express</b>

4  Plaintiffs argue that *Davidowitz* requires that AAPs be "express." Opp'n at 16:3–4.

5  Plaintiffs cite to the *Davidowitz* court's statement that "ERISA welfare plan payments are not

6  assignable in the face of an express non-assignment clause in the plan." *Davidowitz*, 946 F.2d at

7  1481. This sentence is a description of the provision at issue in that case, and does not create or

8  impose a substantive requirement for AAPs. This is a far cry from language creating the

9  requirement Plaintiffs suggest in their Objections that AAPs "expressly and unambiguously

10 prohibit the plan administrator from exercising discretion to authorize assignments." *See, e.g.*,

11 Pls.' Objs. at 4. Plaintiffs have provided no support for the standard they seek to impose, and

12 provide no explanation for what the word "express" would mean in this context. Black's Law

13 Dictionary defines express as "clearly and unmistakably communicated; stated with directness

14 and clarity." EXPRESS, Black's Law Dictionary (10th ed. 2014). Given that an AAP, like all

15 provisions of an ERISA plan, must be in writing under 29 U.S.C. § 1102, Plaintiffs' argument

16 that the AAP must be express adds no additional substantive requirement and does not support

17 the conclusions they draw in their Objections.

18 <b>vi.   The AAP Must Apply to the Type of Assignment</b>

19 The final AAP requirement Plaintiffs argue for is that the AAP "must clearly apply to

20 the type of assignments at issue here." Opp'n at 16:5, n.13. By this argument (which expanded

21 to two and a half pages in their Response, Order Denying Ex Parte Application (Dkt. 1045)),

22 Plaintiffs appear to be asking the Court to adopt the Fifth Circuit's rule that AAPs that do not

23 specifically mention medical providers do not apply to claims for reimbursement by

24 providers.[14] *See, e.g.*, *Abilene Reg'l Med. Ctr. v. United Indus. Workers Health & Benefits*

25 *Plan*, No. 06-10151, 2007 WL 715247, at *4 (5th Cir. 2007).

26 The Ninth and Fifth Circuit have both sought to facilitate the permitted assignment of

27 healthcare benefits to the provider of services while not making assignments freely tradeable

28

---

14       This may explain why Plaintiffs argue that the phrase "[t]he coverage and benefits described in this Agreement are not assignable by any Member" contains only spendthrift language, when it clearly does not. Pls.' Objs. at 95

commodities. The Ninth Circuit did so based on the text of ERISA. *Simon*, 208 F.3d at 1081 (holding that only providers can sue under 29 U.S.C. § 1132(a) to enforce an assigned benefits claim). The Fifth Circuit, on the other hand, created a rule interpreting AAPs to prohibit assignment to everyone except providers, unless the AAP specifically and unambiguously also applied to providers. *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 575 ("*Hermann Hosp.*") (5th Cir. 1992) *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012); *see LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 351 (5th Cir. 2002).

Most recently in *Spinedex*, the Ninth Circuit was faced with a Conditional AAP, a concept explained below, which prohibited assignments without the sponsor's consent but also permitted the claims administrator to pay the non-network provider directly. *Spinedex*, 770 F.3d at 1296. The AAP did not mention providers, but the Ninth Circuit followed *Davidowitz* and enforced the AAP according to its plain terms. *Id. Davidowitz* itself discussed the analogy between ERISA as a trust and spendthrift trusts that *Hermann Hospital* was based on and found that "[t]he analogy is not a valid one." *Davidowitz*, 946 F.2d at 1479–80. *Davidowitz* held that spendthrift trusts are designed to assure beneficiaries that they will receive necessary basic assistance, and that AAPs do not deny beneficiaries basic necessary assistance. *Id.* Rather, they mandate that the beneficiaries *will* receive the checks they are entitled to directly. *Id.* The trust-law analog used by the Fifth Circuit was examined and rejected by the Ninth Circuit. This Court is bound to follow *Davidowitz* and will interpret AAPs without requiring any special showing that they apply to providers.

### b.  General Types of AAPs

Because there are so many patients in this case, there are a wide variety in the language of specific AAP provisions. Rather than address the meaning and impact of each one as it arises, the Court has grouped the AAPs at issue by functionality and has tried to identify the common or necessary language for each AAP.

The Court has identified the following common types of AAPs: Absolute, We-Pay-You, Choice, and Conditional. It is important to note, however, that just as there are no magic words in assignment, there are no magic words in anti-assignment. Context is essential. These

categories are not strictly separated and contain some overlap, and indeed many plans will contain language combining two types of AAPs. Nonetheless, the Court has found these grouping useful in describing the effect of the differently-worded AAPs at issue in this case.

### i.   Absolute AAP

An Absolute AAP is just that: it prohibits assignment of benefits without exception or qualification. An example of such a provision is found in *Griffin v. Habitat for Humanity Int'l, Inc.*, 641 F. App'x 927, 929 (11th Cir. 2016). There, the court enforced an AAP that stated:

> Except as applicable law may otherwise require, no amount payable at any time hereunder shall be subject in any manner to alienation by . . . assignment . . . . Any attempt to . . . assign . . . any such amount, whether presently or hereafter payable, shall be void.

*Id.* The critical language in an Absolute AAP informs the patient that benefits, money, and reimbursements cannot be assigned, alienated, conveyed, or transferred by any other person.

### ii.   We-Pay-You AAP

A We-Pay-You AAP requires the plan to pay the patient directly regardless of whether there has been an assignment. Patient 66's plan document includes an example of a We-Pay-You AAP. In the context of describing the differences in the claims administration procedure for in-network and out-of-network benefits under the medical program, Patient 66's plan document states:

> All Benefits payable under the Out-of-Network Option described in Subsection A-1.3 of Attachment A with respect to an Employee who is a Member and his Dependents who are Members shall be paid to such Employee.

Medical Plan at 31 (Dkt. 704–2 at 33). This language requires the employee to be paid directly when receiving out-of-network benefits. To require a plan to pay out-of-network benefits to a provider would either require the administrator to violate the written terms of the We-Pay-You AAP, or permit the patient to unilaterally amend the terms of the plan in violation of the written amendment procedure described in 29 U.S.C. § 1102(b)(3).

A plan including a We-Pay-You AAP often also includes an Absolute AAP, as was the case in *Davidowitz.* 946 F.2d at 1477 (9th Cir. 1991). The dental plan there stated "[p]ayment for services provided by a dentist who is not a Participating Dentist shall be made to an Eligible Person, and shall not be assignable." *Id.* at 1477 n.2. Although the Ninth Circuit did not need to analyze the individual parts of the AAP, its logic applies equally to both the "shall be made to an Eligible Person" and "shall not be assignable" language. Therefore, either provision is likely sufficient to prohibit assignment and requires patients to be paid directly.

### iii.    Choice AAP

The difference between a We-Pay-You and a Choice AAP is that a Choice AAP gives the plan administrator discretion to choose whom it pays, usually between the patient and the provider. Choice AAPs typically describe how the plan will pay benefits. Choice AAPs are almost always accompanied by Absolute AAPs. The Court distinguishes between them, however, because Plaintiffs make extensive objections solely based on the language of Choice AAPs. *E.g.*, Pls.' Objs. at 10, 15–16.

For example, Patient 22's Choice AAP reads:

> **6. Direct Payment**: All payments for Covered Services by In-network providers will be made directly to such providers. In all other cases, payments will be made, at Blue Cross and Blue Shield of Nebraska's option, to the Subscriber, to his or her estate, to the provider or as required under state or federal law, including qualified medical child support orders. No assignment whether made before or after Services are provided, of any amount payable according to this Contract shall be recognized or accepted as binding upon Blue Cross and Blue Shield of Nebraska, unless otherwise required by state or federal law.

2012 Master Group Contract at 10 (Dkt. 940–9 at 13). Plaintiffs argue that this language (and language in every Choice AAP) permits the plan administrator to choose to honor assignments despite the clear language prohibiting assignment and that "[w]hether a particular Defendant has chosen to approve Plaintiffs' assignments is a question of fact which gives Plaintiffs the right to introduce extrinsic evidence to resolve the matter." Pls.' Objs. at 15–16. The Court

disagrees. The Eleventh Circuit was confronted by paired Absolute and Choice AAPs in a plan document and found that they unambiguously prohibited assignment, suggesting that interpreting such language is not as nearly as difficult or fact intensive as Plaintiffs argue. *Physicians Multispecialty Group. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1296 (11th Cir. 2004),

Even if Choice AAPs were not accompanied by Absolute AAPs, both of Plaintiffs' arguments would fail. Language like that quoted above does not give the plan administrator discretion to honor assignments, it gives the plan administrator a choice in who it pays and necessarily prohibits assignment. A valid assignment of ERISA benefits to a provider means that the patient has chosen to convey her legally enforceable entitlement to benefits to the provider, who otherwise could not be paid directly. *See Misic*, 789 F.2d at 1377. A Choice AAP, however, states that the *administrator* chooses who receives the benefits regardless of the patient's decision to assign benefits or not, and neither patient nor provider is legally entitled to the benefits as long as one of them is paid.

### iv.    Conditional AAP

A Conditional AAP permits assignment if a condition is satisfied. The most common condition the Court has found is the requiring of either the sponsor or administrator's prior consent. For example, Patient 26's plan states:

> A Member may not assign this Benefit Program or any of the Member's rights, benefits or obligations under this Benefit Program to any other person or entity except with the prior written consent of Anthem BCBS, which consent may be conditioned by or withheld by Anthem BCBS in its sole discretion. Any attempted assignment by a Member in violation of this provision shall not impose any obligation upon Anthem BCBS to honor or give effect to such assignment and shall constitute grounds for cancellation of this Benefit Program, effective as of the date to which Premiums have been paid

Certificate of Coverage at 91 (Dkt. 1017-6 at 120).

Unlike a Choice AAP, this language actually does allow the administrator to choose whether to honor the assignment. At the pleading stage, all a plaintiff must do to survive a motion to dismiss on anti-assignment grounds is allege in the complaint that the specific conditions have been met. This does not permit a plaintiff to plead in a conclusory fashion that "any conditions of assignment have been met." A plaintiff must plead the specific factual requirements of the condition. Thus, for Patient 26, Plaintiffs can survive a motion to dismiss if they allege that they had the prior written consent of Anthem BCBS to the assignment. *See Spinedex*, 770 F.3d at 1296 (holding that to survive summary judgment, a non-network provider had to provide evidence that the condition of a Conditional AAP had been satisfied, and the condition of the plan sponsor's consent was not satisfied by the claims administrator exercising its discretion to pay the party directly.).

### c.  Waiver of AAPs

Plaintiffs argue that each Defendant has waived its right to assert AAPs as a defense in this case. FAC ¶¶ 70, 373. Plaintiffs plead upon information and belief that "Blue Cross Defendants (or their agents) regularly informed Plaintiffs' agents through express words in many cases, but at a minimum impliedly through their actions, that the claims of Former Patients at issue were freely assignable." *Id.* ¶ 70 (emphasis omitted). Plaintiffs also argue that waiver is appropriate because "no anti-assignment provision was identified and asserted by the Blue Cross Defendants as a ground to not pay Sovereign . . . ." *Id.* ¶ 373. Plaintiffs argue that waiver is a fact-based issue, Opp'n at 19:8, but Plaintiffs have not pleaded specific facts supporting waiver against any Defendant. The minimal factual allegations in the FAC regarding waiver are pleaded generally against all Defendants and on information and belief, despite the fact that Plaintiffs or their agents possess the relevant knowledge. FAC ¶ 70.

This Court has already found that there was no denial or adverse benefits determination when Defendants paid the patients. Thus, it is unclear whether waiver could ever apply in this situation, because Defendants did not hold anything back and were not required to provide an administrative process when they paid the claims. *See Spinedex*, 770 F.3d at 1296–97 (finding waiver inapplicable and enforcing an AAP when the carrier had no reason to assert the AAP during the administrative process). Even assuming waiver could apply, Plaintiffs would have to

explain how it would apply in this case. Plaintiffs allege that they submitted their claims, received no response to those claims, and then discovered the patients had been paid directly. FAC ¶¶ 82, 83. Far from waiving the right to assert AAPs, these actions appear to be consistent with enforcing AAPs.

For the above reasons, the FAC fails to allege a plausible claim that any Defendant has waived its right to enforce AAPs in its plan instruments.

If Plaintiffs choose to continue to try to argue that waiver applies, they will have to plead facts that they or their agents are aware of for each relevant Defendant individually. Waiver is a fact specific allegation, and each Defendant has a right to know the factual allegations against it just as if this case had been filed individually against each Defendant. *See* Fed. R. Civ. Proc 8(a). Pleading waiver generally and identically for 42 Blue Cross Defendants, as Plaintiffs have done here, denies each Defendant of both the opportunity to understand what it is being accused of doing and the opportunity to defend itself. *Romero v. Countrywide Bank, N.A.*, 740 F. Supp. 2d 1129, 1136 (N.D. Cal. 2010) (treating disparate parties identically without explanation deprives each individual party of a fair and meaningful opportunity to defend itself).

### D. ERISA Plan Documents and Provisions

Defendants have provided numerous plan documents and ask the Court to consider them as incorporated by reference into the complaint. Reply at 13. Below, the Court examines each document to determine whether it can be incorporated by reference. A determination in this Order that a document is insufficient is not controlling for later stages of this litigation *per se*. At the motion to dismiss stage, the Court lacks the benefit of discovery and is limited in what it can consider without converting this into a motion for summary judgment. Fed R. Civ. Proc. 12(d). Many of the documents the Court finds insufficient at this stage may be sufficient if presented without dispute at the summary judgment stage.

### 1.     Incorporation by Reference Doctrine

The incorporation by reference doctrine permits a court to look beyond the pleadings without converting a Rule 12(b)(6) motion into one for summary judgment. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Incorporation by reference is appropriate when (1) a plaintiff's claim depends on a document or the contents of the document

have been alleged in the complaint, (2) the document is not attached to the complaint but the defendant attaches it to their moving papers, and (3) the parties do not dispute the authenticity of the document. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). If a document is incorporated by reference it may treated it as if it were part of the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). One of the purposes of the doctrine is to prevent a plaintiff from defeating a motion to dismiss by artful pleading instead of attaching the essential documents. As the Court stated in the Briefing Order, this doctrine is particularly apt in this case, where Plaintiffs' claims depend entirely on the existence and terms of ERISA plans and an entitlement to certain benefits under those plans. Briefing Order at 5. The Ninth Circuit has specifically endorsed incorporating ERISA plan documents by reference. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in McManus v. McManus Fin. Consultants, Inc.*, 552 F. App'x 713, 714 (9th Cir. 2014).

### 2. Defendants' Request for Incorporation by Reference and Subsequent Briefing

Defendants first raised the issue of incorporation by reference by filing declarations with attached documents along with the Motion. Plaintiffs objected in their Opposition, stating only "[t]heir completeness is in dispute, and Plaintiffs cannot agree to their authenticity." Opp'n at 14:5–6. Defendants argued in their Reply that the Court could properly consider the documents because they Defendants had provided authenticating declarations and "Plaintiffs cannot and do not reasonably question their authenticity." Reply at 13:16–18.

The Court was unable to determine the basis for Plaintiffs' objections and was also concerned that many Defendants provided inadequate documents. These concerns led the Court to issue the Briefing Order, which resulted in Plaintiffs' Response with their legal arguments, and Plaintiffs' Objections, which contained patient-by-patient objections related to the offered documents and their contents. Pursuant to the Briefing Order, Defendants created their Revised Addendum. The Court assumes that Defendants not listed in the Revised Addendum are not seeking dismissal on anti-assignment grounds at this time. Briefing Order at 8. The Court notes that despite raising incorporation by reference in their Motion and providing at least some arguments for authenticity in their Reply, Defendants offered no argument or analysis for

whether the individual documents or general types of documents they provided were sufficient. Reply at 13:14–18. For both parties, the Court assumes that any arguments not specifically made in the hundreds of pages of patient-by-patient briefing and objections to be waived at this stage.

### 3.    Authenticity

In their Opposition, Plaintiffs did not object to the authenticity of the offered documents *per se*, but did state that they "cannot agree to their authenticity." Opp'n at 14:5–6. In response to the Briefing Order, Plaintiffs filed a Response that included a section on authenticity. Pls.' Resp. at 5–8. Authenticity for incorporation by reference means the same thing as it does in Federal Rule of Evidence 901: whether a document is what its proponent claims it is.   *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1161 (9th Cir. 2012). Objections to incorporation by reference must be on legally cognizable grounds. *Id.* (holding that a party's objection to incorporation by reference because it had not seen the documents before was not related to authenticity and was therefore not a valid objection).

Plaintiffs make many arguments in the authenticity section of their Response. Pls.' Resp. at 5–8. However, every objection addresses whether the documents are plan documents, not whether they are the authentic documents. For example, Plaintiffs' first objection states:

> Plaintiffs dispute the authenticity of any document purporting to be part of an ERISA plan's written instrument unless (1) the document itself indicates that it is, in fact, the written instrument of the welfare benefit plan of the sponsoring employer or (2) was specifically incorporated by such a document (or by a plan amendment that abides by the plan's amendment procedures). []

*Id.* at 6:3–7. This objection disputes the legal sufficiency of the documents, but does not dispute that the documents provided are the documents that Defendants state they are. If Plaintiffs objections were actually about authenticity, then it would be the sort of objection that could be resolved by F.R.E. 901(b), which provides a list of ways to authenticate various types of documents. None of those are relevant here however, because Plaintiffs' objections, to the degree they are based in law, derive from substantive ERISA law and not the rules of evidence.

1   The *Almont* court reached the same conclusion, differentiating between the plaintiffs'

2   objections to using certain documents because they were not demonstrably reflective of the

3   operative plan terms and objections based on whether or not the documents were authentic.

4   *Almont*, 99 F. Supp. 3d at 1125.

5          In *Amara*, the Supreme Court rejected the idea that SPDs were necessarily plan

6   documents and could be enforced as such when they conflicted with plan documents. *Amara*,

7   563 U.S. at 437–38. Were Plaintiffs correct that any challenge to the legal sufficiency of

8   purported ERISA plan documents was a challenge to their authenticity, then *Amara*, despite not

9   using the word authenticity once, was merely laying down a rule of authenticity. *See generally*

10  *id.* This is not the case, and the sufficiency or completeness of the documents is distinct from

11  their authenticity. Intuitively this makes sense, because a document could be authentic but not a

12  plan document if it is an unincorporated SPD. Or, a document could be a plan document if it is

13  the document that establishes and maintains the written plan, but not authentic because it is

14  unaccompanied by an authenticating declaration.

15         Despite the fallacies of Plaintiffs' authenticity arguments, the Court has identified some

16  plan documents which do have authenticity issues, namely draft and partially-provided

17  documents. Where an offered plan document has the word draft on the face of the document or

18  still has redlining or edits in the document, the Court is unwilling to accept the authenticity of

19  the document even where no party has objected. Similarly, where a document appears to only

20  contain the first half of the conten, and particularly where a party cites to pages that were not

21  provided, the Court is unwilling to accept such a document as authentic even where no party

22  has objected. With the exception of draft or partially-produced documents or where otherwise

23  noted, the Court accepts the undisputed authenticity of all documents that have been provided.

24         **4.      Whether Offered Documents Are ERISA Plan Documents**

25         Unlike most other ERISA cases, there was no denial of benefits or adverse benefits

26  determination here and thus Plaintiffs were never provided with any plan documents. 29 C.F.R.

27  § 2560.503-1(g)(1)(ii) (requiring the notification of an adverse benefit determination to include

28  reference to the specific plan provisions on which the determination is based). Had the

    provision of plan documents occurred as it normally would in most ERISA cases, much of this

Court's work below would have been avoided and the Briefing Order would have been unnecessary. In addition, prior to the Briefing Order many Defendants asked the Court to incorporate by reference documents and dismiss the ERISA counts based on nothing more than an SPD or other summary documents without making any showing that the documents were plan documents. The Court cannot enforce documents that are legally insufficient at this stage. Briefing Order at 5.

### a. Criteria for a Document to be an ERISA Plan Document

ERISA requires that a plan be "established and maintained pursuant to a written instrument. 29 U.S.C. § 1102(a)(1). The plan documents that describe these features are collectively identified as the written instrument. *See* 29 U.S.C. § 1102(a)(1); *Prichard v. Metro. Life Ins. Co.*, 783 F.3d 1166, 1170 (9th Cir. 2015) (finding that the ERISA plan instrument was made up of the group policy, its exhibits including insurance certificates, the employer's application, and any additional amendments). A plan document can incorporate or integrate other documents into the plan. *Id.; see Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1162 (9th Cir. 2001). Therefore, the documents that establish or maintain the plan will be plan documents, as will documents that amend or restate the plan. ERISA does not require any formalities of the written instrument, and "there is no requirement that documents claimed to collectively form the employee benefit plan be formally labeled as such." *Horn v. Berdon, Inc. Defined Ben. Pension Plan*, 938 F.2d 125, 127–28 (9th Cir. 1991); *see Alday v. Raytheon Co.*, 693 F.3d 772, 778 (9th Cir. 2012) (holding that an ERISA plan that provides a method for funding and specifies how payments are made to and from the plan need not be in any particular form or even in an official plan document).

The Supreme Court has held that when an employer establishes a plan with an HMO, the documents that set up the HMO are not necessarily part of the plan, but the agreement between the HMO and the employer setting out rules under which beneficiaries are entitled to care are a part of the plan. *See Pegram v. Herdrich*, 530 U.S. 211, 222–23 (2000). The Ninth Circuit has also held that an insurance policy may constitute the written instrument of an ERISA plan. *Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995). Similarly, "[r]ules governing collection of premiums, definition of benefits, submission of claims, and resolution

of disagreements over entitlement to services" are also part of the plan. *See Pegram*, 530 U.S.
at 222–23. ERISA also requires the plan instrument to provide a funding mechanism, describe
the allocation of responsibilities for the operation and administration of the plan, provide for an
amendment procedure, and specify the basis on which payments are made to and from the plan.
29 U.S.C. § 1102(b).

Plaintiffs ask the Court to impose four additional requirements for a plan document, each
of which is discussed below. Pls.' Resp. at 6:4–8:16. Importantly, nothing about the proposed
requirements is limited to the incorporation by reference doctrine or the motion to dismiss stage
of this litigation. Instead, the proposed requirements would appear to apply any time a court
must determine whether offered documents are plan documents. In the section where Plaintiffs
articulate their proposed requirements, they only apply each of the last three requirements to a
single patient each (Patients 158, 9 and 102, respectively), and do not provide any citation or
authority for any of their proposed requirements. Plaintiffs chose to file this case against 208
Defendants, FAC ¶ 22–23, based on assignments from 274 patients, FAC ¶¶ 101–366, and they
provided 232 pages of objections on a patient-by-patient basis. *See* Pls.' Objs. at 1–232. The
Court therefore finds Plaintiffs' objections based on the above requirements waived where they
did not apply it to specific documents. To do otherwise would permit Plaintiffs to make vague
and generalized objections that would require the Court to analyze, for the first time, whether
each document meets their criteria. The Court will not do Plaintiffs' work for them. *Cf. Rivera
v. Ryan*, No. CV-15-00586-PHX-DLR, 2016 WL 1593816, at *1 (D. Ariz. Apr. 20, 2016) ("But
the Court is obligated to review only those portions of the R&R to which [a party] specifically
objects.").

### b.   Indicate Document is a Plan Instrument

Plaintiffs first and overarching proposed requirement is that a plan document must
indicate that it is the plan instrument, or be specifically incorporated by plan instrument. Pls.'
Objs. at 6:4–8. This requirement would mean that every plan would have to have a document
that formally identified itself as a plan document, and only that document could incorporate
other plan documents. This was flatly rejected in *Horn*, 938 F.2d at 127–28, where the Ninth
Circuit held that ERISA does not require any formalities of plan documents.

### c.   Documents Not in Effect

The parties have not addressed whether documents that were not in effect at the time of the assignment can retroactively affect that assignment. The Court notes that *Grosz-Salomon*, 237 F.3d at 1160, holds that unless welfare benefits are vested, the operative terms are those in effect at the time of the denial of benefits. Where there was no denial of benefits however, it may well be that the terms that govern assignment are those in place at the time of the assignment. The Court takes no opinion on the issue, but will not incorporate by reference documents that were not in effect at the time of the assignment when the parties have not briefed the issue.

### d.   Documents that Disclaim Plan Status

Plaintiffs argue that contracts between a Welfare Plan Defendant and a BCBS Defendant cannot be a plan document unless the parties have provided a self-identifying plan document that expressly incorporates that contract. Pls.' Resp. at 8:1–4. Plaintiffs have not identified any principle in ERISA that prohibits an Administrative Services Agreement or similar contract from being a plan document. ERISA permits such a contract to be a plan document if it meets the criteria above. *See Pegram*, 530 U.S. at 222–23 (stating that the contract that sets up an employer's HMO is not necessarily a plan document, but the agreement setting out the rules which entitle patients to benefits is a part of the plan).

Under the incorporation by reference doctrine, the Court can only examine documents which form the basis of the claim. *See Knievel*, 393 F.3d at 1076. Many offered plan documents either expressly state they are not plan documents or state that other documents are the plan documents. Defendants have not provided authority to support the idea that a document that says it is not a plan document can be treated as a plan document that forms the basis of the claim. The Court believes this contradiction is created because many carriers, whether they provide only administrative services or insure the benefits of the plan, have no interest in dealing with the employer's ERISA documents. Some carriers even go so far as to include contract language requiring employers to agree that nothing in the plan documents will impact the carrier's obligations, and that the carrier is not required to look at the plan documents. *See, e.g.*, Group Administration Document at 13 (Dkt. 1010-3 at 15).

However, the carriers also provide healthcare benefits and want their documents to be enforceable, which is why countless carriers have submitted documents, which they wrote, that state the plan documents are whatever documents the employer has plus the carrier's documents. *E.g.*, ASA at 3 (Dkt. 945-3 at 4) (defining Plan Documents as "[t]he documents that set forth the terms of the Plan, and which include the Benefit Booklet"). That this is common practice does not help it square with the Supreme Court's interpretation of ERISA, which requires the employer to write the basic terms and conditions of the plan and treats the plan administrator as a trustee-like fiduciary who follows its terms. *Amara*, 563 U.S. at 427. It does, however, explain why prior to the Briefing Order many carriers provided facially insufficient documents, and after the Briefing Order some of them provided documents which actually were the governing plan documents. For Patient 138 for example, a defendant originally provided only a Subscriber Certificate and stated that document "sets forth the terms of the member's enrollment" in the plan but the document provided no indication it was ever adopted by the sponsor or was the plan instrument. McInerney Decl. ¶ 7 (Dkt. 678). Only after the Briefing Order did Defendant provided a document which identified itself as a plan document and incorporated the Subscriber Certificate into the plan. Consolidated Plan Document and Summary Plan Description at 26 (Dkt. 972-1 at 30).

Nevertheless, Plaintiffs' proposed requirement would not address this problem. Where the Court cannot be certain the offered documents manifestly reflect the operative plan terms, the Court cannot incorporate the documents by reference. *See Almont*, 99 F. Supp. 3d at 1161. Conversely, where the Court can be certain despite language disclaiming plan status, the Court will incorporate the documents by reference.

### e.   Summary Documents

Plaintiffs argue that non-plan SPDs and summary-only Benefit Booklets cannot be plan documents. Pls.' Resp. at 6:18–7:22. Plaintiffs do not provide any citation for this proposition, but pursuant to *Amara*, 563 U.S. at 443, SPDs are generally not in and of themselves plan documents. The Court will also apply this holding to any document that indicates that it is only a summary of the plan terms. Plaintiffs concede that documents can be incorporated into the

plan by other plan documents and have not identified any issue with incorporating documents that otherwise state they are summaries. Pls.' Resp. at 6 n.5.

If a document appears to be an SPD or summary of the plan terms, the Court is generally unwilling to find that it is also a plan document unless that Defendant has also shown that it was incorporated by a plan document. The Court does incorporate by reference some documents that were SPDs where the Court determines that they were manifestly reflect the operative plan terms, such as where the documents acknowledged that they were SPDs and the governing plan documents or were otherwise clearly intended by the employer to contain the governing terms.

### f.   Confidential Documents

ERISA plan documents must be freely disclosed upon request, and nothing in ERISA appears to permit the plan to prohibit patients from freely disclosing plan documents once they have received them. *See* 29 U.S.C. § 1024(b)(4). If the sponsor agreed to keep the documents confidential, that suggests one of three possibilities: (1) the plan sponsor did not intend for the documents to govern the plan, (2) the sponsor intended to violate ERISA's disclosure requirements, or (3) the sponsor intended to breach any confidentiality provisions. The Court will not speculate at this stage which possibility is the case here, but will exercise its discretion to not incorporate such documents by reference. This does not apply if the documents have been identified as confidential only for the purposes of generating the documents for this litigation, or if the documents appears to be communicating to the patient that they are confidential.

### g.   Plans Potentially Not Governed by ERISA

Certain Defendants have provided documentation which suggests that they may not be in a plan governed by ERISA. ERISA only covers employee benefit plans, 29 U.S.C. § 1003(a), and therefore excludes plans individuals purchase directly from insurance companies. ERISA also excludes government plans, *id.* § 1003(b)(1), and qualifying church plans, 29 U.S.C. § 1003(b)(2), unless they have made an election under 26 U.S.C. § 410. The Court addressed this issue in the Briefing Order after some Defendants covering individual plans filed motions to dismiss because they were not covered under ERISA. Briefing Order at 2–3. As a result, the

1  parties agreed to remove from this suit the claims assigned by certain patients. Joint Stipulation
2  as to Certain Patient Claims (Dkt. 912).

3        It is apparent that some of the Defendants discussed below may not covered by ERISA.
4  Whether as part of a litigation strategy, oversight by their attorneys, or because the carrier did
5  not convey the identity of the employer to counsel, these parties did not file a motion to dismiss
6  based on the fact that they may not be covered by ERISA. At least one party has even asked the
7  Court to dismiss the claims against it on anti-assignment grounds despite the fact that its plan
8  documents state it is not covered under ERISA. *Compare* Mercy Addendum to Mot. (Dkt. 707–
9  2) at 4 (citing ERISA cases enforcing AAPs) *with* Mercy Health Services Health and Welfare
10 Benefit Plan at 34 (Dkt. 707-2 at 39) ("this Plan is not subject to [ERISA] . . . .").

11       Whether or not a plan is an employee benefit plan covered under ERISA used to be a
12 jurisdictional question. *Silvera v. Mut. Life Ins. Co. of N.Y.*, 884 F.2d 423, 427 (9th Cir. 1989)
13 (finding that the district court lacked jurisdiction over government plans). Now, it is a merits
14 question. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 997–98 (9th Cir. 2010) (affirming
15 the district court's dismissal for ERISA claims against a governmental plan, but stating that the
16 dismissal should have been labeled as failure to state a claim instead of for lack jurisdiction).
17 However, the numerous anti-assignment cases Defendants cite, all arose under ERISA. Mot. at
18 16–18. *See, e.g.*, *Davidowitz*, 946 F.2d at 1481 (holding that ERISA allows plans to enforce
19 AAPs). If a patient's claim is not covered under ERISA, a different body of law applies—one
20 which may or may not allow health care plans to enforce AAPs. Just as a plaintiff seeking
21 recovery under ERISA must show that their plan is covered by ERISA, a defendant seeking to
22 raise an ERISA-specific defense should have to make a similar showing when the Court has
23 doubts about whether the plan at issue is governed by ERISA. *See Leeson v. Transamerica
24 Disability Income Plan*, 671 F.3d 969, 979 (9th Cir. 2012) (holding that whether someone is a
25 participant goes to the merits and should have been addressed at summary judgment or trial).
26 To hold otherwise would permit a defendant with a non-ERISA plan to receive a favorable
27 verdict on the merits for a defense they may not be entitled to under the law that actually
28 governs the plan. *Cf. Cement Masons Health & Welfare Trust Fund for N. California v. Stone*,
197 F.3d 1003, 1008 (9th Cir. 1999) (holding that a dismissal under 29 U.S.C. § 1132(a)(3) for

failure to state a claim is a dismissal on the merits rather than for lack of subject matter

jurisdiction).

The Court is concerned that the following patients were enrolled in individual plans not

governed by ERISA:

- Patient 23, Currey Decl. ¶ 2 (Dkt. 938);

- Patient 77, Webb Decl. ¶ 81 (Dkt. 1027); and

- Patient 97, Dolsky Decl. ¶ 2 (Dkt. 940).

The Court is concerned that the following patients were enrolled in church plans which may not

be governed by ERISA:

- Patient 74, Armknecht Decl. ¶ 21 (Dkt. 1017);

- Patient 267, Webb Decl. ¶ 49 (Dkt. 1017); and

- Patient 272, Mercy Health Services Health and Welfare Benefit Plan at 34 (Dkt.
  707-2 at 39).

Finally, the Court is concerned that the following patients were enrolled in government plans

not governed by ERISA:

- Patient 106, 2014 Benefit Booklet at 1-1 (Dkt. 708-2 at 25) (stating the benefits
  for a Group Health Plan established and maintained by the City of Bradenton) *but
  see* Deen Decl. ¶ 3 (Dkt. 708) (stating that Patient 106 was in an ERISA funded
  plan);

- Patient 112, Smith Decl. ¶ 10 (Dkt. 1013);

- Patient 118, Armknecht Decl. ¶ 42 (Dkt. 1017);

- Patient 202, Graves Decl. ¶ 3 (Dkt. 953); and

- Patient 239, Master Group Application at 2 (Dkt. 940–15 at 4).

The Defendants related to these patients will therefore be permitted to make anti-

assignment arguments after Plaintiffs have amended their complaint, provided each Defendant

also presents briefing or evidence cognizable on a motion to dismiss that the plans for these

patients are covered under ERISA. Similarly, Plaintiffs will have to determine whether, given

the evidence provided by each Defendant above, they still have a good faith basis for believing

1  their factual contentions regarding ERISA jurisdiction still have or will have evidentiary
2  support.

3           **5.      Patient by Patient Plan Document Analysis**

4           The Court has identified the minimum criteria for a document to be a plan document,
5  and identified a number of criteria that prevents the Court from incorporating a document by
6  reference at this stage. Below, the Court applies these criteria to the documents offered for each
7  patient. Unless otherwise stated, any emphasis is in the original. In the documents before the
8  Court and cited below, bolding usually indicated a section heading or title and capitalized or
9  italicized words were usually those words specifically defined in the document.

10  • **Patient 1**

11
12          The Court has already evaluated the documents for Patient 1 and determined that they
13  were sufficiently complete. Briefing Order at 7 n.1. The Court found that the first AAP in the
14  attached declaration applied, which is a Conditional AAP. Crist Decl. ¶ 4 (Dkt. 671). Plaintiffs
15  have not alleged that BCBSNC consented to the assignment. Defendant's motion to dismiss the
16  ERISA counts related to Patient 1 on anti-assignment grounds is therefore GRANTED.

17  • **Patients 8, 61, 85, 86, 125, 210, 238, & 258**

18          These documents appear to be sufficiently similar that the Court can analyze the
19  documents in the same discussion. Defendants offer the following documents related to each
20  patient:

21          **Patient 8**: Combined Evidence of Coverage and Disclosure ("CECD") (Dkt. 697–2),
22  and Group Benefit Agreement ("GBA") (Dkt. 1017–2).

23          **Patient 61**: Combined Evidence of Coverage and Disclosure (Dkt. 697–6), and Group
24  Benefit Agreement (Dkt. 1017–8).

25          **Patient 85**: Combined Evidence of Coverage and Disclosure (Dkt. 697–10), and Group
26  Benefit Agreement (Dkt. 1017–11).

27          **Patient 86**: Combined Evidence of Coverage and Disclosure (Dkt. 697–11), and Group
28  Benefit Agreement (Dkt. 1017–12).

1      **Patient 125**: Combined Evidence of Coverage and Disclosure (Dkt. 1017–24), and

2   Group Benefit Agreement (Dkt. 1017–25).

3      **Patient 210**: Combined Evidence of Coverage and Disclosure (Dkt. 933–1), Group

4   Benefit Agreement (Dkt. 933–2), and Group Application (Dkt. 933–3).

5      **Patient 238:** Combined Evidence of Coverage and Disclosure (Dkt. 697–22), and Group

6   Benefit Agreement (Dkt. 1017–31).

7      **Patient 258**: Combined Evidence of Coverage and Disclosure (Dkt. 1017–34), and

8   Group Benefit Agreement (Dkt. 1017–35).

9      The CECDs state they are only a summary of the terms of the plan, and that the health

10  plan contracts must be consulted for the exact terms and conditions of coverage. CECD at

11  unnumbered page 5: (Patient 8: Dkt. 697–2 at 6); (Patient 61: Dkt. 697–6 at 6); (Patient 85:

12  Dkt. 697–10 at 6); (Patient 86: Dkt 697–11 at 6); (Patient 125: Dkt. 1017–24); (Patient 210:

13  Dkt. 933–1 at 6); (Patient 238: Dkt. 697–22 at 6); (Patient 258: Dkt. 1017–34 at 6). The Group

14  Benefit Agreement contains an integration clause which defines Agreement as the Group

15  Administration Document, the CECD, and the individual and group applications, and states that

16  these documents form an integral part of the entire agreement. (Patient 8: GBA at 1, 11, Dkt.

17  1017–2 at 4, 14); (Patient 61: GBA at 1, 19, Dkt. 1017–8 at 4, 22); (Patient 85: GBA at 1, Dkt.

18  1017–11 at 4); (Patient 86: GBA at 1, 13, Dkt. 1017–12 at 4, 16); (Patient 125: GBA at 1, 16,

19  Dkt. 1017–25 at 4, 19); (Patient 210: GBA at 1, 14, Dkt. 933–2 at 4, 17); (Patient 238: GBA at

20  1, 11, Dkt. 1017–31 at 4, 14); (Patient 258: GBA at 1, 16, (Dkt. 1017–35 at 4, 19). The Group

21  Benefit Agreements also specify the funding mechanism and extensively describe the role the

22  Anthem will play in the operation and administration of the plan. *See*, *e.g.*, (Patient 8: GBA at

23  10, Dkt. 1017–2 at 13); (Patient 61: GBA at 17, Dkt. 1017–8 at 20).

24      The CECDs contain the following language regarding assignment:

25          **Benefits Not Transferable.** Only the member is entitled to receive benefits

26          under this plan. The right to benefits cannot be transferred.

27          . . . .

28          **Payment to Providers.** We will pay the benefits of this plan directly to
            contracting hospitals, participating providers, CME and medical

transportation providers. If you or one of your family members receives services from non-contracting hospitals or non-participating providers, payment will be made directly to the subscriber and you will be responsible for payment to the provider. Any assignment of benefits, even if assignment includes the providers right to receive payment, is void unless an authorized referral has been approved by us. We will pay non-contracting hospitals and other providers of service directly when emergency services and care are provided to you or one of your family members. We will continue such direct payment until the emergency care results in stabilization. If you are a MediCal beneficiary and you assign benefits in writing to the State Department of Health Services, we will pay the benefits of this plan to the State Department of Health Services. These payments will fulfill our obligation to you for those covered services."

(Patient 8: CECD at 106–07, Dkt. 697–2 at 115–16); (Patient 61: CECD at 108, Dkt. 697–6 at 117) (Patient 85: CECD at 107, Dkt. 697–10 at 116); (Patient 86: CECD at 109, Dkt. 697–11 at 118); (Patient 125: CECD at 115–16, Dkt. 1017–24 at 123–23); (Patient 210: CECD at 114–15, Dkt. 933–1 at 122–23); (Patient 238: CECD at 113–14, Dkt. 607–22 at 122–23); (Patient 258: Cecd at 115–16, Dkt. 1017–34 at 123–24). This AAP states that an assignment to a provider is void unless an authorized referral has been approved. This language unambiguously requires the claims administrator to pay the subscriber directly for services received from non-participating providers, except in the case of an authorized referral where a participating provider has referred the patient in writing, there is no participating provider within the specified geographic area, and Anthem has authorized the referral. *See, e.g.,* CECD at 116 (Dkt. 697–6 at 125). This is therefore a Conditional AAP.

The Court finds that the Group Benefits Agreement is a plan document that incorporates the Combined Evidence of Coverage. The Court finds that both documents are incorporated by reference into the complaint, and that they contain an enforceable Conditional AAP. Plaintiffs have not alleged that an authorized referral was approved, therefore Defendant's motion to

dismiss the ERISA counts related to patients 8, 61, 85, 86, 125, 210, 238, and 258 on anti-assignments grounds is therefore GRANTED.

- **Patient 9**

Defendant offers the following document: Benefit Booklet (Dkt. 1017–3). Defendant provides a declaration stating that the Benefit Booklet was "referred to and relied on as the plan instrument," but the declaration does not cite or identify any provisions in the document related to its completeness. Armknecht Decl. ¶ 7 (Dkt. 1017). The Benefit Booklet itself states that it does not provide the full details of the plan:

> This Guide describes only the highlights of your medical coverage. It does not attempt to cover all the details. Additional details are provided in the plan documents and insurance and/or service contracts, which legally govern the plan. In the event of any discrepancy between this Guide and the plan documents, the plan documents will govern.

Benefit Booklet at 1 (Dkt. 1017–3 at 4). The Benefit Booklet expressly states that it does not provide all details, other documents legally govern the plan, and in case of conflict plan documents will supersede.

As explained above, the Court cannot incorporate documents by reference when they expressly state that other documents not before the Court are the plan documents. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 11**

Defendant offers the following documents: Group Policy (Dkt. 668–2), and Certificate of Insurance (Dkt. 668–3).

The Group Policy integrates the Certificate of Insurance, including the provisions in its Definitions section. Group Policy at C–3 (Dkt. 668–2 at 5) ("The Certificate of Insurance is included and made part of this Policy."). The Certificate of Insurance defines Group Policy as "the contract issued by Blue Shield Life to the policyholder that establishes the rights and obligations of Blue Shield Life and the policyholder. The Certificate of Insurance at B–73 (Dkt. 668–3 at 77). The Group Policy describes aspects of the plan's funding, the allocation of responsibilities and otherwise meets the criteria above for a plan document.

1  The Group Policy says that for services from Non-Preferred Providers "payment will be

2  made directly to the Insured, and the Insured is responsible for payment to the Non-Preferred

3  Provider (except that Hospital charges are generally paid directly to the Hospital)." Group

4  Policy at C–17 (Dkt. 688–2 at 19). The Certificate of Insurance contains the following language

5  regarding assignment:

6  **ASSIGNMENT**

7  Coverage or any Benefits of this Plan may not be assigned without

8  the written consent of Blue Shield Life. Possession of a Blue Shield Life ID

9  card confers no right to Services or other Benefits of this Plan. To be

10  entitled to Services, the Insured must be a Subscriber who has been

11  accepted by the Employer and enrolled by Blue Shield Life and who has

12  maintained enrollment under the terms of this Plan.

13  Participating Providers and Preferred Providers are paid directly by

14  the Plan. The Insured or the provider of Service may not request that

15  payment be made directly to any other party.

16  If the Insured receives Services from a Non-Preferred Provider and

17  the Insured's employer is subject to the Employee Retirement Income

18  Security Act of 1974 (ERISA) and any subsequent amendments to ERISA,

19  payment will be made directly to the Insured, and the Insured is responsible

20  for payment to the Non-Preferred Provider. The Insured or the provider of

21  Service may not request that the payment be made directly to the provider

22  of service.

23  If the Insured receives Services from a Non-Preferred Provider and

24  the Insured's employer is not subject to ERISA and any subsequent

25  amendments to ERISA, the Insured may assign payment to the Non-

26  Preferred Provider who then will receive payment directly from Blue Shield

27  Life.

28  Certificate of Insurance at B–65 (Dkt. 668–3 at 69). The AAP in the Group Policy requires the

Insured to be paid directly and is therefore a We-Pay-You AAP. The Certificate of Insurance is

1   more complicated, but appears to prohibit assignment in all ERISA governed plans and is

2   therefore an Absolute AAP. The Court interprets the language requiring Blue Cross's written

3   consent to apply as a formality for assignments when the language directly below it permits

4   assignment. Plaintiffs' alternative reading, Pls.' Objs. at 7, would render everything after the

5   first sentence above entirely superfluous.

6          The Court finds that the Group Policy is a plan document that incorporates the

7   Certificate of Insurance. The Court finds that both documents are incorporated by reference into

8   the complaint, and that they contain either a We-Pay-You AAP or an Absolute AAP, either of

9   which is sufficient to defeat Plaintiffs' claim. Defendant's motion to dismiss the ERISA counts

10  related to Patient 11 on anti-assignment grounds is therefore GRANTED.

11     • **Patient 18**

12          Plaintiffs have stated that Defendant provided the complete plan documents. Pls.' Chart

13  2; Briefing Order at 6. The Plan Document contains the following provisions regarding

14  assignment:

15                                   **ASSIGNMENT**

16          1. A Member's rights and Benefits under this Benefit Plan are personal to

17          the Member and may not be assigned in whole or in part by the Member.

18          We will recognize assignments of benefits to Hospitals if both this Benefit

19          Plan and the Provider are subject to La.R.S. 40:2010. If both this Benefit

20          Plan and the Provider are not subject to La.R.S. 40:2010, We will not

21          recognize assignments or attempted assignments of benefits. Nothing

22          contained in the written description of health coverage shall be construed to

23          make the health plan or Us liable to any third party to whom a Member

24          may be liable for the cost of medical care, treatment, or services.

25

26          2. We reserve the right to pay PPO and Participating Providers directly

27          instead of paying the Member.

28  Plan Document (Dkt. 709–2) at 9. This language is repeated verbatim in the General Provisions

    section K. *Id.* at 70. This language prohibits assignment entirely with one exception under

Louisiana law not relevant here, but reserves to the carrier the right to directly pay providers that have signed contracts with them. *Id.* at 18 (Dkt. 709–2 at 25). Plaintiffs are providers who have not signed a contract with any Blue Cross Defendant. FAC ¶ 49. Therefore, this language functions as an Absolute AAP, and does not permit Plaintiffs to be paid directly.

The Court finds that the Plan Document is a plan document, and is incorporated by reference into the complaint. The Court also finds that it contains an enforceable Absolute AAP. Defendant's motion to dismiss the ERISA counts related to Patient 18 on anti-assignment grounds is therefore GRANTED.

- **Patient 19**

Defendant offers the following documents: Health Certificate of Coverage (Dkt. 1017–4), and Master Group Contract (Dkt. 1017–5).

The Health Certificate of Coverage is integrated into the Master Group Contract. Health Certificate of Coverage at M–3 (Dkt. 1017–4 at 6); Master Group Contract at Addendum A (Dkt. 1017–5 at 3). The Master Group Contract specifies that benefits will be provided according to the Health Certificate of Coverage. Master Group Contract at Addendum A (Dkt. 1017–5 at 3). Because the integrated Master Group Contract is the document that specifies the benefits that patients receive and provides for the funding as well as the responsibilities of the respective parties, it meets the criteria for a plan document.

The Health Certificate of Coverage contains the following language regarding assignment:

**Payment of Benefits**

*You authorize Us to make payments directly to Providers for Covered Services.* Payments may also be made to, and notice regarding the receipt and/or adjudication of claims sent to, an Alternate Recipient (any child of a Subscriber who is recognized, under a Qualified Medical Child Support Order (QMSCO), as having a right to enrollment under the Group's Contract), or that person's custodial parent or designated representative. Any payments made by Us will discharge Our obligation to pay for Covered Services. *You cannot assign your right to receive payment*

*to anyone else, except as required by a "Qualified Medical Child Support Order" as defined by ERISA or any applicable state law.*

*Once a Provider performs a Covered Service, We will not honor a request for Us to withhold payment of the claims submitted.*

*. . . .*

**Assignment**

*The Group cannot legally transfer this Certificate, without obtaining written permission from the Plan. Members cannot legally transfer the coverage. Benefits available under this Certificate are not assignable by any Member without obtaining written permission from the Plan, unless in a way described in this Certificate.*

Health Certificate of Coverage at M–77–M–78 (Dkt. 1017–4 at 18–19) (italics added). Plaintiffs quote only the italicized portion above. Plaintiffs argue that phrase "[y]ou cannot assign your right to receive payment to anyone else" means that the language expressly permits assignment. Pls.' Objs. at 11. Taken in full context however, the provisions Plaintiffs cite refer only to a Qualified Medical Child Support Order and do not permit assignments to providers at all. The section above does, however, permit the assignment of benefits with written permission from the Community Insurance Company, *id.* at M–108 (Dkt. 1017–4 at 111) (defining Plan as "Community Insurance Company"), but Plaintiffs have not alleged that they received written permission from anyone when the Patient 19 signed the applicable form. This is therefore a Conditional AAP, and Plaintiffs have not alleged facts sufficient to show that the condition has been satisfied.

The Court finds that the Master Group Contract is a plan document that incorporates the Health Certificate of Coverage, and both documents are therefore incorporated into the complaint by reference. The Court also finds that the documents contain an enforceable Conditional AAP, the conditions of which have not been alleged in the complaint. Defendant's motion to dismiss the ERISA counts related to Patient 19 on anti-assignments grounds is therefore GRANTED.

- **Patient 22**

Defendants have offered the following documents: 2012 SPD (Dkt. 940–6), 2013 SPD (Dkt. 940–7), 2012 Master Group Application (Dkt. 940–8), 2013 Master Group Contract (Dkt. 940–9), Endorsements (Dkt. 940–10), 2013 Master Group Application (Dkt. 940–11), 2013 Master Group Contract (Dkt. 940–12), Endorsements (Dkt. 940–13).

The SPDs Defendant provides explicitly state on the first page of each that they are summaries only. 2012 SPD at 1 (Dkt. 940–6 at 7) ("Please note that the information provided in this SPD is only a summary and it is not intended to be a complete description of every detail of the Plan. Your Group health care plan is administered in accordance with the provisions set forth in the Master Group Contract and the Administrative Services Agreement between the Group [BCBSNE]."); 2013 SPD at 1 (Dkt. 940–7 at 7) (same). The Master Group Contracts contain the following integration language:

> This Contract consists of the Master Group Application, subgroup application, the enrollment information, this document, any addenda, attachments or endorsements thereto and the Administrative Services Agreement. Only Blue Cross and Blue Shield of Nebraska can approve a change to this Contract and that change must be in writing and agreed to by both parties. Any change will affect all Covered Persons and no agent may change the Contract in any way.

> The Group, as the plan administrator or plan sponsor of the group health plan, binds all Subscribers and their covered Eligible Dependents who are beneficiaries of such plan, to the terms and conditions of this Contract.

2012 Master Group Contract at Cover Letter (Dkt. 940–9 at 2); 2013 Master Group Contract at Cover Letter (Dkt. 940–12 at 2). The Master Group Contracts have therefore been adopted by the plan sponsor and are the documents that provide the details of the benefits Subscribers receive.

The Master Group Contract contains the following language regarding assignment:

> **6. Direct Payment**: All payments for Covered Services by In-network providers will be made directly to such providers. In all other cases,

payments will be made, at Blue Cross and Blue Shield of Nebraska's option, to the Subscriber, to his or her estate, to the provider or as required under state or federal law, including qualified medical child support orders. No assignment whether made before or after Services are provided, of any amount payable according to this Contract shall be recognized or accepted as binding upon Blue Cross and Blue Shield of Nebraska, unless otherwise required by state or federal law.

2012 Master Group Contract at 10 (Dkt. 940–9 at 13); 2013 Master Group Contract at 10 (Dkt. 940–12 at 13). This language prohibits assignment and states that for out-of-network providers payment can be made either to the Subscriber or the provider. This language therefore functions as both Absolute and Choice AAPs. Defendant points to functionally identical language in the SPDs, 2012 SPD at 34 (Dkt. 940–6 at 40); 2013 SPD at 34 (Dkt. 940–7 at 40), but only quotes the Choice AAP language and argues that this language "raises questions of fact that cannot be resolved at the pleading stage." Pls.' Objs. at 14. As explained above however, Choice AAPs do not create questions of fact, nor is the SPD itself even a plan document.

The Court finds that the Master Group Contracts are plan documents and are incorporated by reference into the complaint. The Court also finds that they contain enforceable Absolute and Choice AAPs. Defendant's motion to dismiss the ERISA counts related to Patient 22 on anti-assignment grounds is therefore GRANTED.

- **Patient 26**

Defendant offers the following documents: Certificate of Coverage (Dkt. 1017–6), and Group Health Care Benefits Contract (Dkt. 1017–7).

The Certificate of Coverage states that it is the document which describes the "rights, benefits, terms, conditions and limitations of the coverage available to Covered Persons and eligible Dependents, including the Schedule of Benefits, the Membership application, rate page and any Riders and amendments thereto." Certificate of Coverage at 12 (Dkt. 1017–6 at 41). Because this appears to be the sole document which contains the rights, benefits, and terms of coverage, it meets the criteria for a plan document.

The Certificate of Coverage contains the following language regarding assignment:

**Assigning Coverage**

> A Member may not assign this Benefit Program or any of the
> Member's rights, benefits or obligations under this Benefit Program to any
> other person or entity except with the prior written consent of Anthem
> BCBS, which consent may be conditioned by or withheld by Anthem
> BCBS in its sole discretion. Any attempted assignment by a Member in
> violation of this provision shall not impose any obligation upon Anthem
> BCBS to honor or give effect to such assignment and shall constitute
> grounds for cancellation of this Benefit Program, effective as of the date to
> which Premiums have been paid.

> Notwithstanding the terms of any provision regarding the payment
> of benefits payable for a Covered Service, a Member may assign the
> benefits to a dentist or oral surgeon, who performs such services, in
> accordance with the Connecticut Law concerning Assignment of Benefits
> to a Dentist or Oral Surgeon.

*Id.* at 91 (Dkt 1017–6 at 120). This section prohibits assignment without the prior consent of
Anthem BCBS, making it a Conditional AAP. Plaintiffs argue this language "raises questions
of fact that cannot be resolved at the pleading stage." Pls.' Objs. at 18. Plaintiffs do not
specifically identify what the question of fact is, but the Court assumes that the question is
whether Anthem BCBS provided prior written consent to the assignment. Plaintiffs however do
not allege that Anthem BCBS ever provided prior written consent.

The Court finds that the Certificate of Coverage is a plan document and is incorporated
by reference into the complaint. The Court also finds that it contains an enforceable Conditional
AAP, and that Plaintiffs have not alleged they had Anthem BCBS's prior written consent to the
assignment. Defendant's motion to dismiss the ERISA counts related to Patient 26 on AAP
grounds is therefore GRANTED.

- **Patient 27**

Defendant offers the following documents: Group Contract (Dkt. 997–1 at 5–21, 45–48, 157–165), Supplemental Medical-Surgical Healthcare Contract ("Supplement") (Dkt. 997–1 at 23–43), Benefits Booklet (Dkt. 997–1 at 51–156), and 2013 SPD (Dkt. 996–1).

The Group Contract integrates the Benefits Booklet. Group Contract at exhibit 1 page 5 (Dkt. 997–1 at 5) ("Carrier hereby agrees to provide each eligible Covered Person of the Group . . . the benefits as described in The Personal Choice Health Benefits Plan Booklet/Certificate for eligible persons who enroll hereunder, in accordance with the terms, conditions, limitations, and exclusions of this Contract."); *id.* at 6 (Dkt. 997–1 at 10). Defendant does not appear to argue that the SPD is a part of the plan. The Supplemental Medical-Surgical Healthcare Contract appears to be an amendment to the Group Contract. Supplement at Cover Page (Dkt. 997–1 at 23). The Group Contract and Benefits Booklet are the documents that provide the terms and funding for benefits, as well as allocate the responsibilities of the parties.

The integrated Contract documents repeatedly prohibit assignment and permit the Plan to choose whether to pay the Subscriber of the Provider. Supplement at 18–20 (Dkt. 997–1 at 40, 41, 42); Benefits Booklet at 1, 19 (Dkt. 997–1 at 55, 119). The Court concludes that these provisions function as both Absolute and Choice AAPs.

The Court finds that the Group Contract and its integrated documents are plan documents that are incorporated by reference into the complaint. The Court also finds that they contain enforceable Absolute and Choice AAPs. Defendant's motion to dismiss the ERISA counts related to Patient 27 on anti-assignment grounds is therefore GRANTED.

- **Patients 28, 99, 135, 144, 156, 186, & 216**

Because Defendant offers virtually identical documents for these six patients, the Court will analyze them together. Defendant offers the following documents for each patient:

**Patient 28**: Group Contract (Dkt. 728–2 at 1–18), Benefit Booklet (Dkt. 728–2 at 19–102).

**Patient 99**: Group Contract (Dkt. 728–4), Benefit Booklet (Dkt. 728–5).

**Patient 135**: Group Contract (Dkt. 728–6 at 1–16), Benefit Booklet (Dkt. 728–6 at 16 through 728–7).

**Patient 144**: Group Contract (Dkt. 728–8), Benefit Booklet (Dkt. 728–9–10).

**Patient 154**: Group Contract (Dkt. 645 at 5–20), Benefit Booklet (Dkt. 645 at 21–96).

**Patient 186**: Group Contract (Dkt. 728–13 at 1–16), Benefit Booklet (Dkt. 728–13 at 17 through 728–15).

**Patient 216**: Group Contract (Dkt. 728–16 at 1–17), Benefit Booklet (Dkt. 728–16 at 19 through 728–18).

The Court has already deemed the above submissions to be complete except for Patients 144 and 154. Briefing Order at 6. Even if it had not, each Benefit Booklet is integrated into its respective Group Contract. Group Contract at 1–2 (Patient 28: Dkt. 728–2 at 3–4); (Patient 99: 728–4 at 3–4); (Patient 135: 728–6 at 3–4); (Patient 144: 728–8 at 3–4); (Patient 154: Dkt. 645 at 6–7); (Patient 186: 728–13 at 3–4); (Patient 216: 728–16 at 3–4). Each pair of documents meets the criteria above for plan documents and appears to be manifestly reflective of the operative plan terms.

The Benefit Booklets contains the following language regarding assignment:

> **NONASSIGNMENT**
>
> Only You are entitled to benefits under the Contract. These benefits are not assignable or transferable to anyone else and You (or a custodial parent or the state Medicaid agency, if applicable) may not delegate, in full or in part, benefits or payments to any person, corporation or entity. Any attempted assignment, transfer or delegation of benefits will be considered null and void and will not be binding on Us. You may not assign, transfer or delegate any right of representation or collection other than to legal counsel directly authorized by You on a case-by-case basis.

(Patient 28: Benefit Booklet at 38, Dkt. 728–2 at 70); (Patient 99: Benefit Booklet at 34–35 Dkt. 728–5 at 44–45); (Patient 135: Benefit Booklet at 33, Dkt. 728–7 at 14); (Patient 144: Benefit Booklet at 35, Dkt. 728–10 at 5); (Patient 154: Benefit Booklet at 36, Dkt. 625 at 63); (Patient 186: Benefit Booklet at 32–33, Dkt. 728–15 at 4–5); (Patient 216: Benefit Booklet at 34, Dkt. 728–18 at 5). This language clearly prohibits assignment.

The Court finds that these documents are plan documents and are incorporated by reference into the complaint. The Court also finds that the plan documents for each patient

contain an enforceable Absolute AAP. Defendant's motion to dismiss the ERISA counts relating to patients 28, 99, 135, 144, 154, 186, and 216 on anti-assignment grounds is therefore GRANTED.

- **Patients 31 & 180**

Defendants offer the following documents that appear identical in relevant part:

**Patient 31**: Subscriber Certificate (Dkt. 678–2).

**Patient 180**: Subscriber Certificate (Dkt. 678–5).

The cover pages of the Subscriber Certificates state "[t]his Subscriber Certificate is a comprehensive description of your benefits, so it includes some technical language." Subscriber Certificate at Cover Page: (Patient 31: Dkt. 678–2 at 2); (Patient 180: Dkt. 678–5 at 3). These documents appear to be the only documents which contain the benefits that Subscribers are entitled to receive from the plan. Although the Subscriber Certificate for Patient 180 appears to include a cover letter indicating that that it should not be passed along to any person or entity "for any other purpose unless authorized by Blue Cross and Blue Shield of Massachusetts, Inc. or Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.," Subscriber Certificate at Cover Letter (Dkt. 678–5 at 1), the date on the cover letter is 12/03/2015, well after the document's effective date, and over six months after this case was filed. The Court believes this cover letter was not originally a part of this document as it was provided to Subscribers because as quoted above, the cover page addresses Subscribers directly, and instead this cover letter was included as part of gathering documents for this litigation.

The documents contain an AAP that permits assignment only with Blue Cross's written Consent:

> **Assignment of Benefits**
>
> You cannot assign any benefit or monies due from this health plan to any person, corporation, or other organization without Blue Cross Blue Shield HMO Blue's written consent. Any assignment by you will be void. Assignment means the transfer of your rights to the benefits provided by this health plan to another person or organization. There is one exception. If

1

Medicaid has already paid the health care provider, you can assign your

2

benefits to Medicaid.

3

(Patient 31: Subscriber Certificate at 65, Dkt. 672–2 at 74); (Patient 180: Subscriber Certificate

4

at 66, Dkt. 678–5 at 76). Because these AAPs require Blue Cross Blue Shield's written consent,

5

they are Conditional AAPs. Plaintiffs never allege they received such written consent.

6

In addition, Plaintiffs have sued the Henry Schein, Inc. Dependent and Medical Flexible

7

Spend Account Plan ("Henry Schein"). Henry Schein has provided a declaration stating that it

8

is not a benefits plan but a Flexible Spending Account Plan ("FSA"), and that Patient 180 was

9

not enrolled in it but was instead enrolled in the Ace Surgical Supply Co., Inc. Plan. Franco

10

Decl. ¶¶ 4–5 (Dkt. 928). The Court however cannot determine whether Patient 180 was

11

enrolled in this plan or not at this stage, and no documents have been provided that appear to

12

relate to the Henry Schein. Plaintiffs will have to determine upon amending their complaint

13

whether they have a good faith basis to proceed against the Henry Schein.

14

The Court finds that the above Subscriber Certificates are plan documents that are

15

incorporated by reference into the complaint. The Court also finds that both Subscriber

16

Certificates contain enforceable conditional AAPs. Because Plaintiffs have not alleged that they

17

had Blue Cross Blue Shield HMO Blue's written consent for either patient's assignment,

18

Defendants BCBS of Massachusetts Inc., BCBS of Massachusetts Blue, Inc., and TUV

19

America, Inc. Insurance Benefits Plan's motion to dismiss the ERISA counts related to patients

20

31 and 180 on anti-assignment grounds is GRANTED.

21

- **Patient 32**

22

Defendant offers the following document: Benefits Guide and Summary Plan

23

Description (Dkt. 1025–1).

24

The document contains the following language regarding assignment:

25

**Assignment of Benefits**

26

You may request that the claims processor pay your service provider

27

directly by assigning your benefits.

28

You may assign medical and dental benefits for eligible expenses incurred

for hospital care, surgery, dental care, or medical treatment for illness or

-61-

1    injury. You may only assign benefits to the person or institution that

2    provides the services or supplies for which these benefits are payable.

3    Benefits Guide and Summary Plan Description at 173 (Dkt. 1025–1 at 174). The document also

4    states that benefits will be paid to the patient unless the patient has assigned payment to the

5    service provider, and that benefits are paid after the claims processor receives satisfactory

6    written proof of a claim. *Id.*

7    Regardless of whether the Benefits Guide and Summary Plan Description is a plan

8    document, it expressly permits assignment of medical benefits to the institution that provided

9    the services. Defendant's motion to dismiss the claim on anti-assignment grounds is therefore

10   DENIED.

11   • **Patients 33, 43, & 162**

12   Defendants provide the following documents:

13   **Patients 33 & 43**: 2013 Wells Fargo & Company Health Plan (Dkt. 687–1), 2013

14   Benefits Book (Dkt. 697–4)

15   **Patient 162**: 2012 Wells Fargo & Company Health Plan (Dkt. 687–2), 2012 Benefits

16   Book (Dkt. 687–3).

17   Patients 33 and 43 have the same plan documents, and the documents for Patient 162

18   appear to be similar in the relevant sections. The Health Plans both state "[t]his Plan Statement,

19   together with the applicable Insurance Policies and Summary Plan Descriptions, as they may be

20   amended from time to time, shall constitute the written plan document for the Plan for purposes

21   of ERISA." (Patients 33 & 43: 2013 Health Plan at 5, Dkt. 687–1 at 6); (Patient 162: 2012

22   Health Plan at 5, Dkt. 687–2 at 6). The Health Plans also have very elaborate conflicts clauses

23   which specify which integrated documents control in five different scenarios between the Plan

24   Statement (Health Plan), the SPD, and the Insurance Policy. (Patients 33 & 43: 2013 Health

25   Plan at 5–6, Dkt. 687–1 at 6–7); (Patient 162: 2012 Health Plan at 5–6, Dkt. 687–2 at 6–7).

26   This however does not explain the ERISA status of the Benefits Book, nor does it help clarify

27   which plan the participants were even in, because the Benefits Books contains the SPDs for 7

28   different benefit plans all titled "Wells Fargo & Company Health Plan." (Patients 33 & 43:

2013 Benefits Book Chapter 1 at 33–34, Dkt. 697–4 at 42–43); (Patient 162: 2012 Benefits

Book Chapter 2 at 3, Dkt. 687–3 at 55). The Benefits Books also state that they contain SPDs for certain plans, (Patients 33 & 43: 2013 Benefits Book at 1–3, Dkt. 697–4 at 12); (Patient 162: 2012 Benefits Book Chapter 1 at 3, Dkt. 687–3 at 13), and "[i]n case of any conflict between the SPDs in this Benefits Book or any other information provided and the official plan document, the official plan document governs. (In some cases, portions of the Benefits Book may constitute part of the official plan document.)" (Patients 33 & 43: 2013 Benefits Book at 1–3, Dkt. 697–4 at 12); (Patient 162: 2012 Benefits Book Chapter 1 at 3, Dkt. 687–3 at 13). Defendant has not provided any language to indicate what portions of the Benefits Books are the official plan documents, and what portions are merely summaries.

In addition, the Benefits Books contains at least three different AAPs, depending on whether the plan is administered by HealthPartners, Anthem BCBS, or UnitedHealthcare, two of which appear to expressly permit assignment. (Patients 33 & 43: 2013 Benefits Book at Chapter 2 107–109, Dkt. 697–4 at 152–54); (Patient 162: 2012 Benefits Book Chapter 2 at 91–93, Dkt. 687–3 at 145–45). These AAPs are all different than the AAP in the Company Health Plan, which identifies itself as a Spendthrift Provision. (Patients 33 & 43: 2013 Health Plan at 31, Dkt. 687–1 at 32); (Patient 162: 2012 Health Plan at 29, Dkt. 687–2 at 31).

The Benefits Book does not appear to be an insurance policy, and by its own terms it is not a fully incorporated SPD. The Court therefore cannot find that it has been incorporated by the Health Plans. (Patients 33 & 43: 2013 Health Plan at 5, Dkt. 687–1 at 6); (Patient 162: 2012 Health Plan at 5, Dkt. 687–2 at 6). The Court also cannot identify what comprises the SPD for these patients because the Benefits Book appears to contain multiple SPDs, including conflicting amendment provisions, and requires the reader to decode it by identifying which particular sections are relevant for their personal plan and which do not apply to them. If this information is even in the record, Defendant has not identified it for the Court. *See, e.g.,* Defs.' Revised Addendum at 62.

Because the Court cannot determine at this stage whether the offered documents are plan documents or whether some portion of them are plan documents, and the Court cannot resolve the numerous conflicts between the provided exhibits, the Court cannot incorporate these

documents by reference. Defendant's motion to dismiss the claims from these patients on anti-assignment grounds is therefore DENIED.

- **Patient 34**

Defendant offers the following documents: Benefit Booklet (Dkt. 660–2), and Group Contract (Dkt. 1013–2).

The Group Contract states that the Group "agrees to provide the benefits described in this Contract for eligible employees of the Group and their eligible dependents who are enrolled for coverage under this Contract," and "[a]ll benefits of this Contract are subject to the terms and conditions stated herein and any endorsements or riders included or issued thereafter." Group Contract at 1 (Dkt 1013–2 at 2). The Group Contract also integrates the Benefit Booklet. Group Contract at 2 (Dkt. 1013–2 at 3) (stating that the entire Contract between the Group and Premera Blue Cross consists of this document, the attached benefit booklet(s), the Group's signed application, and all attachments, endorsements and riders). The Group Contract is a plan document because it meets the criteria above and provides the mechanism for funding the insurance, allocates responsibility between the parties, and indicates the document that contains the benefits that patients are entitled to receive. Although the Benefit Booklet may be an SPD, this would be irrelevant because it is integrated by the Group Contract. Group Contract at 2 (Dkt. 1013–2 at 3).

There does not appear to be any AAP language in the Group Contract. The Benefit Booklet contains the following language regarding assignment:

> **Right To And Payment Of Benefits**
>
> Benefits of this plan are available only to members. Except as required by law, we won't honor any attempted assignment, garnishment or attachment of any right of this plan. In addition, members may not assign a payee for claims, payments or any other rights of this plan.
>
> *At our option only and in accordance with the law, we may pay the benefits of this plan to*:
>
> - The subscriber
> - *A provider*

- Another health insurance carrier
- The member
- Another party legally entitled under federal or state medical child support laws
- Jointly to any of the above

Payment to any of the above satisfies our obligation as to payment of benefits.

Benefit Booklet at 51 (Dkt. 660–2 at 56) (italics added). Plaintiffs only quote the italicized portions of the document and argue that this creates a question of fact. Pls.' Objs. at 25. The Court disagrees and finds that this language prohibits assignment and gives Premera the choice in whom it pays from among the listed entities. This therefore functions as both Absolute and Choice AAPs.

The Court therefore finds that the Group Contract integrates the Benefit Booklet and both are plan documents that are incorporated by reference into the complaint. The Court also finds that the plan documents contain enforceable Absolute and Choice AAPs. Defendant's motion to dismiss the ERISA counts related to Patient 34 on anti-assignment grounds is therefore GRANTED.

- **Patients 35 & 44**

Defendants offer the following documents:

**Patient 35**: Group Health and Welfare Plan (Dkt. 1004–3), 2013 SPD (Dkt. 1004–4).

**Patient 44**: Group Health and Welfare Plan (Dkt. 1004–1), 2012 SPD (Dkt. 1004–2).

Plaintiffs appear to have objected to the wrong exhibits and objected to the documents for Patient 44 twice. Pls.' Objs. at 26, 34. The documents for both patients appear to be identical in relevant portions. Defendant has not explained why only one out of the eleven attachments listed in the Group Health and Welfare Plans, only these were provided. Group Health and Welfare Plans at 14–15 (Patient 35: Dkt. 1004–3 at 15–16); (Patient 44: Dkt. 1004–1 at 15–16). Some would clearly be irrelevant to the issues in this motion, but without providing some context or explanation, it is difficult for the Court to determine whether the documents provided are manifestly reflective of the operative plan terms.

-65-

1    The provided SPDs contain the following language regarding assignment:

2         **Benefit Payments**

3         **If your provider submits the claim:**

4         Blue Cross of Idaho will usually send the benefit payment directly to your

5         provider if an assignment of benefits has been received. In certain

6         circumstances involving Out-of-Network Providers, the Plan may send the

7         benefit payment to you.

8    (Patient 35: 2013 SPD at 66, Dkt. 1004–4 at 69); (Patient 44: 2012 SPD at 67, Dkt. 1004–2 at

9    70). There is no explanation provided for the meaning of the terms "usually" or "certain

10   circumstances." This language does not on its face actually prohibit assignment, and without

11   defining these circumstances or providing some explanation in a plan document for when

12   assignments that are otherwise valid will be prohibited, the Court cannot find that this language

13   prohibits assignment. Defendant's motion to dismiss the claims related to Patients 35 and 44 is

14   therefore DENIED.

15   **Patient 36**

16        Defendant offers the following documents: Wrap Document (Dkt. 1028–1), 2013 SPD

17   (Dkt. 1028–2), Administrative Services Agreement (Dkt.1028–4), and Benefit Program

18   Application (Dkt. 1028–5).

19        As an initial matter, the Wrap Document states that it is effective on January 1, 2014.

20   Wrap Document at 1 (Dkt. 1028–1 at 2). The FAC alleges that Patient 36 began receiving

21   treatment on or around December 30, 2013. FAC ¶ 131(b). As explained above, the Court will

22   not at this stage enforce language prohibiting assignment that was only in effect after the

23   assignment took place. Therefore, the Wrap Document cannot be enforced at this stage. The

24   2013 SPD specifically states that it is not an official plan document, and that the plan

25   documents including insurance contracts govern. 2013 SPD at 1 (Dkt. 1028–2 at 2). The ASA

26   also expressly states that it is not a plan document, and that the Employer must create a separate

27   plan document which may include or incorporate the ASA's terms. ASA at 11, ¶ 15.1 (Dkt.

28   1028–4 at 12). Finally, the Benefit Program Application does not appear to have any AAP

language.

1    Defendant has not provided any document that can be incorporated by reference into the

2    complaint. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

3    • **Patient 37**

4    Defendant offers the following document: Comprehensive Major Medical Contract (Dkt.

5    682–2).

6    The Comprehensive Major Medical Contract defines Contract as "this agreement,

7    including the Group Application, individual applications, renewal letters and Amendatory

8    Riders, if any, between the Plan and the Group . . . ." Comprehensive Major Medical Contract

9    at 7 (Dkt. 682–2 at 9). The Contract was accepted by the employer when the employer paid the

10   first premium, and the employer agreed to receive the benefits specified in the Contract. *Id.* at 3

11   (Dkt. 682–2 at 5). Finally, the Contract states that this document sets forth the details of

12   inpatient and outpatient benefits, cost sharing, and important limitations. *Id.* at 1 (Dkt. 682–2 at

13   1).

14   The Contract contains the following language regarding assignment:

15   **W. PAYMENT OF BENEFITS**

16   1. The Plan is authorized by the Member to make payments directly to

17   Providers and Suppliers furnishing Covered Services for which benefits are

18   provided under this Contract. However, the Plan reserves the right to make

19   the payments directly to the Member.

20   The right of a Member to receive payment is not assignable, except to the

21   extent required by law, nor may benefits of this Contract be transferred

22   either before or after Covered Services are rendered.

23   *Id.* at 96 (Dkt. 682–2 at 98). This language prohibits a Member from assigning benefits and also

24   gives Highmark the option to directly pay either the provider or the Member. It therefore

25   functions as both Absolute and Choice AAPs.

26   The Court finds that the Comprehensive Major Medical Contract is a plan document and

27   is therefore incorporated by reference into the complaint. The Court also finds that it contains

28   enforceable Absolute and Choice AAPs. Defendant's motion to dismiss the ERISA counts

related to Patient 37 on anti-assignment grounds is therefore GRANTED.

- **Patient 41**

Defendant offers the following documents: Benefit Booklet (Dkt. 671–3), SAS Institute Inc. Medical Plan ("Medical Plan") (Dkt. 672–2), and 2014 SPD (Dkt. 672–3).

Contrary to Defendant's addendum, Defs.' Revised Addendum at 15, the Court did not find this Defendant's submission complete for this party. In the Briefing Order the Court identified the submissions related to docket entry 671–2 as complete, which were the documents for Patient 1. Briefing Order at 6. The Court specifically stated that BCBSNC should provide the full plan documents for all other patients. Briefing Order at 7 n.1.

The 2014 SPD appears to include the entire Benefit Booklet. 2014 SPD exhibit 2 page 41–109 (Dkt. 672–3 at 16–84). The SPD appears to do this intentionally, and includes different information both before and after the enclosed Benefit Booklet. 2014 SPD at 2 (Dkt. 672–3 at 3). The Medical Plan is the document which establishes and maintains the restated healthcare plan. Medical Plan at 1 (Dkt. 672–2 at 2). It defines Plan as itself along with Coverage Documents, *id.* at 4 (Dkt. 672–2 at 5), and defines Coverage Documents as the SPD, Benefit Booklet, certificate of benefits, and other written documents pursuant to which Benefits may be paid, *id.* at 3 (Dkt. 672–2 at 4).

The Benefit Booklet (and therefore the 2014 SPD as well) contain the following language regarding assignment:

> **<u>BENEFITS TO WHICH MEMBERS ARE ENTITLED</u>**
>
> The benefits described in this benefit booklet are provided only for MEMBERS. These benefits and the right to receive payment under this health benefit plan cannot be transferred or assigned to any other person or entity, including PROVIDERS. *Under the PLAN, BCBSNC may pay a PROVIDER directly.* For example, BCBSNC pays IN-NETWORK PROVIDERS directly under applicable contracts with those PROVIDERS. However, any PROVIDER'S right to be paid directly is through such contract with BCBSNC, and not through the PLAN. Under the PLAN, BCBSNC has the sole right to determine whether payment for services is made to the PROVIDER, to the SUBSCRIBER, or allocated among both.

> BCBSNC's decision to pay a PROVIDER directly in no way reflects or
> creates any rights of the PROVIDER under the PLAN, including but not
> limited to benefits, payments or procedures.

2014 SPD at 15 (Dkt. 672–3 at 66) (italics added); Benefit Booklet at 45 (Dkt. 671–3 at 57). This language explicitly prohibits Members from assigning benefits, but clearly gives the carrier (BCBSNC) a choice in whether it pays the provider, the Subscriber, or both. It therefore functions as both Absolute and Choice AAPs. Even more than many other Choice AAPs, it specifically explains that the right of a provider to be paid directly comes from independent contracts and not from the plan documents. Plaintiffs quote only the italicized sentence above, and argue that language gives the plan administrator discretion with respect to assignments, Pls.' Objs. at 31, but they do not address the sentences before or after their selected quote or explain how the plan administrator has discretion when the plain language of the plan prohibit assignment.

The Court finds that the Medical Plan is a plan document that incorporates the SPD and Benefit Booklet, and that all three documents are incorporated by reference into the complaint. The Court finds that the plan documents contain enforceable Absolute and Choice AAPs. Defendant's motion to dismiss the ERISA counts related to Patient 41 on anti-assignment grounds is GRANTED.

- **Patient 45**

Defendant offers the following document: AA Plan's Benefits Guide and Summary Plan Description ("Guide") (Dkt. 1016–1).

It is unclear whether this is a consolidated plan. *See* Schneider Decl. ¶ 6 (Dkt. 1016) (stating that the Guide is contains the legal plan documents); C*ontra id.* ¶ 7 (stating that in the event of conflict between the Guide and any applicable collective bargaining agreement and/or insurance policy for fully insured plans, those documents prevail over the terms in the Guide). The Guide appears to contemplate and permit assignment. Guide at 238, 239, 271. The closest the document comes to prohibiting assignment is in the glossary definition of "Assignment of Benefits." *Id.* at 271. The glossary definition says that benefits can be assigned to the provider which then authorizes the network/claims administrator to directly reimburse the provider for

eligible expenses. *Id.* It then states "[h]owever, not all Network/Claims Administrators will accept assignments for out-of-network providers." *Id.* The document however provides no explanation for the circumstances that can justify the claims administrator ignoring an assignment, what does happen in those situations, and how a patient would ever know.

Even if this document is a plan document, or even the only plan document, the Court cannot find that this language is sufficient to defeat Plaintiffs' claims at this stage because it appears to expressly permit assignment. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 47**

Defendant offers the following documents: Welfare Benefit Plan (Dkt. 677–1), and 80% Health Care Plan ("80% SPD") (Dkt. 677–2).

The Welfare Benefit Plan defines Plan Statement as itself and the Benefit Appendices. Welfare Benefit Plan at 2 (Dkt. 677–1 at 6). Benefit Appendices are the appendices at the end of the Welfare Benefit Plan that expressly incorporate the 80% SPD, unless the Plan Statement provides otherwise. *Id.* at 1, A–1 (Dkt. 677–1 at 5, 41).

The Welfare Benefit Plan contains the following language regarding assignment:

> **No Assignment.** No Participant, eligible dependent or beneficiary shall have any transmissible interest in any benefit under the Plan nor shall any Participant, eligible dependent or beneficiary have any power to anticipate, alienate, dispose of, pledge or encumber the same, nor shall the Employer recognize any assignment thereof, either in whole or in part, nor shall any benefit be subject to attachment, garnishment, execution following judgment or other legal process, provided that a Participant, eligible dependent or beneficiary may authorize, to the extent anticipated by the applicable provisions of this Plan Statement, that benefits due or receivable under the Plan be made available to the facility or other provider furnishing services for which such benefits are payable. This Section shall not prevent the Employer from complying with section 609 of ERISA.

*Id.* at 17 (Dkt. 677–1 at 21). The SPD itself states that assignment is prohibited six times. 80% SPD at 11, 22–23, 81 (Dkt. 677–2 at 21, 32–33, 91). Plaintiffs quote from the italicized portion below and argue that it gives the Plan Administrator discretion with respect to assignments, Pls.' Objs. at 36:

> *The Claims Administrator will, in most cases, pay the benefits for any covered health care services received from a Nonparticipating Provider directly to the member based on the allowed amounts and subject to the other applicable limitations in the Plan.* An assignment of benefits from a member to a Nonparticipating Provider generally will not be recognized, except in the instance in which a custodial parent requests, in writing, that the Plan pay a Nonparticipating Provider for covered services for a child

80% SPD at 11 (Dkt. 677–2 at 21) (italics added). The Court disagrees with Plaintiffs' interpretation. When read in context, the quoted language says that benefit payments for services from Nonparticipating Providers will be given directly to the members, and that assignments will not be recognized except for where a custodial parent requests that the provider be paid directly. Plaintiffs have not alleged that they provided services that fall within this exception. This provision therefore prohibits assignment, and requires that members be paid directly.

The Court finds that the Welfare Benefit Plan is a plan document that incorporates the SPD, and that both documents are therefore incorporated by reference into the complaint. The Court also finds that they contain enforceable Absolute and We-Pay-You AAPs. Defendant's motion to dismiss the ERISA counts related to Patient 47 on anti-assignment grounds is therefore GRANTED.

- **Patient 51**

Defendant offers the following documents: Plan Document (Dkt. 1038–1 at 9–73), SPD (Dkt. 1038–1 at 75–215), and 2010 Summary of Material Modifications (Dkt. 1038–1 at 217–220).

Defendant has provided these documents all as a single attachment in its notice of errata because the original declaration identified the wrong plan and attached the wrong documents.

1    Notice of Errata (Dkt. 1038). The SPD is for the years 2014 and 2015, Strong Decl. ¶ 8 (Dkt.

2    1038–1), although this is not clear from the face of the SPD itself.

3         The Plan Document is in fact a plan document because it establishes, amends, and

4    restates the plan. Plan Document at 1 (Dkt. 1038–1 at 11). It also expressly incorporates the

5    SPDs for each of the component plans such as vision, dental, medical etc. as a "component plan

6    document." *Id.* at 2 (Dkt. 1038–1 at 12). The Plan Document contains an AAP which states:

7    "No participant, beneficiary, or any other person shall have any right or power, by draft,

8    assignment, or otherwise, to assign, mortgage, pledge, or otherwise encumber in advance any

9    benefit provide under a Component Plan, and every attempted draft, assignment, or other

10   disposition thereof shall be void." Plan Document at 13 (Dkt. 1038–1 at 23).

11        However, the SPD states: "Benefits for out-of-network services will be paid to the

12   member unless there is an assignment of benefits on the claim. If there is an assignment on an

13   out-of-network claim but evidence that the claim has been paid, benefits will be issued to the

14   member." SPD at 65 (Dkt. 1038–1 at 150). It also states: "You cannot assign, transfer, or

15   convey any of the benefits provided by the plans, except pursuant to a qualified domestic

16   relations order, a qualified medical child support order or with respect to the Company's

17   healthcare plan, reimbursement for covered expenses may be assigned to the provider of

18   healthcare services." *Id.* at 120 (Dkt. 1038–1 at 205). Plaintiffs have alleged that they provided

19   mental health and/or drug addiction treatment services to Patient 51. FAC ¶ 145(b).

20        Defendant does not explain the apparent contradiction between the Plan Document

21   which prohibits assignment, and the incorporated SPD which appears to permit assignment to

22   the provider of healthcare services. Because the Court cannot reconcile these conflicting

23   provisions at this stage, and Plaintiffs have alleged the facts required by the SPD to make an

24   assignment valid, Defendant's motion to dismiss is DENIED.

25   • **Patient 52**

26        Defendant provides the following documents: 2013 SPD (Dkt. 985–1), Administrative

27   Services Agreement (Dkt. 985–2), and Health Care Plan (Dkt. 256).

28        The Health Care Plan established, amended, and restated the plan. Health Care Plan at 1

     (Dkt. 256 at 9). The Health Care Plan also appears to expressly permit assignment. *Id.* at 13

(Dkt. 256 at 21) ("A Participant or beneficiary may assign benefits otherwise payable to him or to the persons or institutions providing care, the expenses of which are covered under the Plan."). The only limitation on that is that "[n]o such assignment, however, shall be binding on the Plan unless the Claims Administrator is notified in writing of such assignment prior to payment hereunder." *Id.* This creates a condition for assignment that the Claims Administrator is notified in writing prior to payment and is therefore a Conditional AAP. Plaintiffs have alleged that they provided written notice to Defendant by sending it the UB-04 form with the box for assignment marked with a Y, FAC ¶ 146(c), and that notice was sent prior to the Claims Administrator paying the patient directly, *id.* ¶ 146(d). As explained above, the Court cannot evaluate the sufficiency of notice at this stage, but Plaintiffs have alleged sufficient facts to state compliance with the condition of Health Care Plan. Defendant also has not identified any conflict provision that would show that the other documents provided, if they are plan documents, would supersede the language of the Health Care Plan. Defs.' Revised Addendum at 19–20.

Because Plaintiffs have alleged facts sufficient to state compliance with the Conditional AAP, Defendant's motion to dismiss on anti-assignments grounds is DENIED.

- **Patient 53**

Defendant offers the following documents: 2013 Benefit Booklet (Dkt. 974–1), and 2014 Benefit Booklet (Dkt. 974–2).

Defendant states that these documents "constituted the complete plan instrument for the health benefit plan component of The Live Nation Entertainment, Inc. Group Benefits Plan during the relevant period of time for Patient 53." Herrera Decl. ¶ 3 (Dkt. 974). This however does not explain why both documents refer to a separate plan document. 2013 Benefit Booklet at 112 (Dkt. 974–1 at 119) ("The plan document and this booklet entitled 'Benefit Booklet,' contain information on reporting claims, including the time limitations on submitting a claim."); 2014 Benefit Booklet at 120 (Dkt. 974–2 at 127) (same).

Because these documents refer to other document(s) as the plan document the Court cannot accept at this stage that these documents manifestly reflective of the operative plan terms. While Defendant may consider these documents to be the "complete plan instrument for

the health benefit plan component of the . . . Group Benefits Plan," Herrera Decl. ¶ 3 (Dkt. 974), the provided documents clearly state that the plan has been established and maintained through other document(s). Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 55**

Defendant offers the following document: WebMD Health and Welfare Plan (Dkt. 650–1).

Plaintiffs have stated that the complete plan was provided. Briefing Order at 6. Even had they not, the Health and Welfare Plan states that it is the document which amended and restated the plan. Health and Welfare Plan at 1 (Dkt. 650–1 at 7). It is therefore the document that established and maintains the welfare plan. The document contains the following language regarding assignment:

> **Section 15.03 <u>No Assignments</u>.** The right of any Participant to receive any
> benefits under the Plan shall not be subject to any claims by any creditor of
> or claimant against the Participant; and any attempt to reach such amounts
> by any such creditor or claimant, or any attempt by the Participant to confer
> on any such creditor or claimant any right or interest with respect to such
> amounts, shall be null and void, except as provided in Section 609 of
> ERISA with respect to QMCSO.

*Id.* at 78–79 (Dkt. 650–1 at 87–88). This section prohibits assignment, except as required by ERISA for a QMCSO, 29 U.S.C. § 1169(b). It therefore functions as an Absolute AAP.

The Court finds that the Health and Welfare Plan is a plan document and is incorporated by reference into the complaint. The Court also finds that it contains an enforceable Absolute AAP. Defendant's motion to dismiss the ERISA counts related to Patient 55 on anti-assignment grounds is therefore GRANTED.

- **Patients 56 & 179**

Defendants offer the following documents:

1       **Patient 56**: Administrative Services Agreement (Dkt. 977–1), Amendment 1 (Dkt. 977–

2  2), Amendment 2 (Dkt. 977–3), and Benefit Booklet (Dkt. 977–4). Plaintiffs appear to

3  mistakenly cite to documents at Dkt. 714 and Dkt. 1019–1, both of which are for Patient 54.

4  Pls.' Objs. at 45.

5       **Patient 179**: Benefit Booklet (Dkt. 1017–27), and Administrative Services Agreement

6  and Amendments (Dkt. 1017–28).

7       The ASAs define Group Health Plan or Plan as "an employee welfare benefit plan

8  established by the Employer, in effect as of the Effective Date, as described in the Plan

9  Documents, as they may be amended from time to time." (Patient 56: ASA at 2, Dkt. 977–1 at

10  2); (Patient 179: ASA at 1, Dkt. 1017–28 at 2). The ASAs define Plan Documents as "the

11  documents that set forth the terms of the Plan, and which include the Benefits Booklet."

12  (Patient 56: ASA at 3, Dkt. 977–1 at 4); (Patient 179: ASA at 3, Dkt. 1017–28 at 4) (same but

13  also includes the SPD). The ASAs define Benefits Booklet as a "description of the portion of

14  the health care benefits provided under the Plan that is administered by Anthem Blue Cross

15  Life and Health." (Patient 56: ASA at 1, Dkt. 977–1 at 2); (Patient 179: ASA at 1, Dkt. 1017–

16  28 at 2). Defendant argues that the four documents above for Patient 56 constitute the complete

17  plan instrument as it relates to health benefits. Jobin Decl. ¶ 3 (Dkt 977). That however does

18  not explain why the ASA says that plan documents are the documents which set forth the terms

19  of the Plan, including the Benefits Booklet, but does not mention that it itself is a plan

20  document, as Defendant contends.

21       This confusion is exemplified by the AAP language in the ASAs which state:

22                Anthem Blue Cross Life and Health reserves the right to make benefit

23                payments to either Providers or Members at its discretion. Employer agrees

24                that the terms of the Plan will include provisions for supporting such

25                discretion in determining the direction of payment including, but not

26                limited to, a provision prohibiting Members from assigning their rights to

27                receive benefit payments, unless otherwise prohibited by applicable law.

28  (Patient 56: ASA at 4, Dkt. 977–1 at 5); (Patient 179: ASA at 4, Dkt. 1017–28 at 5). These

   clauses reinforce the Court's view that, while it may be shown later that the ASAs are plan

documents, these agreements envision separate agreements which contains the "terms of the plan."

Because the ASAs suggest they are not plan documents and that other documents are plan documents, the Court cannot incorporate them or the Benefit Booklets by reference. Defendants' motion to dismiss on anti-assignment grounds is DENIED.

- **Patient 66**

Defendant offers the following documents: Medical Plan (Dkt. 704–2), Wrap Plan (Dkt. 704–3), and 2013 SPD (Dkt. 704–4).

The Wrap Plan establishes the amended and restated plan. Wrap Plan at 1 (Dkt. 704–3 at 3). The Wrap Plan states that the plan is made up of the Wrap Plan, the Medical Plan, the Group Life Plan document, the Group LTD Plan document, the Group LTC Plan document, the Flexible Compensation Plan document, the Travel Accident Plan and the AD&D Plan document. *Id.* at 2 (Dkt. 704–3 at 5). Only the first two documents are relevant to the issues in this case, and since the SPD is not on the list above, it is not incorporated as a plan document and is thus not enforceable.

The Medical Plan contains the following language regarding assignment:

> **12.1 Assignment.** Unless otherwise permitted under this Plan (including Attachment A), a Member cannot assign any Benefits or payments due under the Medical Program to any person (including a physician), corporation or other organization. Any such assignment by the Member will be void. A Member may assign any Benefits or payments due under the Dental Program to any person (including a dentist), corporation or other organization.

Medical Plan at 55 (Dkt. 704–2 at 57). The Medical Plan also states that for services provided by out-of-network providers (such as Plaintiffs, FAC ¶ 2), it will pay the patient directly, unless the patient has died or there is a QMSCO. Medical Plan at 31 (Dkt. 704–2 at 33).

The Wrap Plan contains a similar anti-assignment language which states:

9.3 Interests Not Assignable/Transferable. The interests of Members under the Program and the Welfare Benefit Documents are not subject to the claims of their creditors and may not be transferred, assigned or encumbered, unless required by applicable law. Any attempt to cause such interests to be so transferred, assigned or encumbered will not be recognized, except to the extent required by applicable law.

Wrap Plan at 15 (Dkt. 704–3 at 18). The Wrap Plan also contains a conflicts provision which states that in the case of conflict with any other plan document the Wrap Plan's provisions control. Wrap Plan at 15, 18 (Dkt. 704–3 at 18, 21). Plaintiffs argue that "Defendants have not identified any provision in the documents that expressly and unambiguously prohibits the plan administrator from exercising discretion to authorize assignments. Plaintiffs are unable to find any such provision." Pls.' Objs. at 50. Plaintiffs do not appear to address the numerous provisions which prohibit assignment and require that payments for services provided by Plaintiffs must be paid directly to the members.

The Court finds that the Wrap Plan is a plan document that incorporates the Medical Plan, and that both documents are incorporated by reference into the complaint. The Court also finds that they contain enforceable Absolute and We-Pay-You AAPs. Defendant's motion to dismiss the ERISA counts related to Patient 66 on anti-assignment grounds is GRANTED.

- **Patient 67**

Defendant offers the following documents: SPD (Dkt. 994–1), Choices Plan (Dkt. 994–2), GTE Bargained Group Insurance Plan (Dkt. 994–3), Collective Bargaining Agreement (Dkt. 994–4), 2014 Summary of Material Modifications (Dkt. 994–5), 2015 Summary of Material Modifications (Dkt. 994–6), Plan for Group Insurance ("PGI") (Dkt. 994–7), Administrative Services Agreement (Dkt. 1001–1), and Amendments to the Administrative Services Agreement (Dkt. 1001–1).

The Court notes that the PGI is very similar in relevant provisions to the Wrap Health and Welfare Plan, (Dkt. 973–1), for Patient 209. The PGI is the document that established the plan, PGI at 1–2 (Dkt. 973–1 at 5–6), and expressly states that it is a plan document, *id.* at 6 (Dkt. 973–1 at 10). The PGI contains an Absolute AAP, *id.* at 25 (Dkt. 973–1 at 29), and a We-

Pay-You AAP, *id.* at 12 (Dkt. 973–1 at 16), that apply except to the extent otherwise provided in a Component Benefit or PGI Section 3.5, *id.* at 25 (Dkt. 973–1 at 29). The Court applies the reasoning below for the Wrap Health and Welfare Plan for Patient 209 because that plan contains identical language for PGI Section 3.5 and Defendant makes the same objection. *Compare* Defs.' Obj. at 51 with *id.* at 172.

The PGI prohibits assignment and requires the patient be paid directly unless a Component Benefit permitted otherwise. Regardless of whether the other documents are Component Benefits or plan documents, Plaintiffs have not identified any provision in any document that permits assignment or conflicts with the Absolute and We-Pay-You AAPs in the PGI. Plaintiffs have therefore not provided the Court with any basis to find the provisions in the PGI unenforceable.

Based on the foregoing the Court finds that the Plan for Group Insurance is a plan document and is incorporated by reference into the complaint. The Court also finds that the Plan for Group Insurance contains both Absolute and We-Pay-You AAPs that are enforceable. Defendant's motion to dismiss the ERISA counts on anti-assignment grounds for claims related to Patient 67 is therefore GRANTED.

- **Patients 68 & 171**

Defendant offers the following documents:

**Patient 68**: 2012 SPD (Dkt. 677–3).

**Patient 171**: 2013 SPD (Dkt. 677–4).

Plaintiffs have said that the plans for 3M were complete. Briefing Order at 6. The accompanying declaration appears to at one point have referenced Patient 38 in conjunction with this document, the Court assumes this was a typo. Mintzer Decl. ¶ 10 (Dkt. 677). Because the two documents are identical in relevant parts, the Court will analyze both here.

The SPDs states that they are the SPD and the official plan documents. 2012 SPD at 1, (Dkt. 677–3 at 6); 2013 SPD at 1 (Dkt. 677–4 at 7). ("This booklet is the summary plan description 'SPD' or 'Summary') for the BlueCard PPO 3M Medical Plan ('Plan'). It is based

on plan provisions effective January 1, 2012. This Summary, together with any separate amendments and other documents, is also the official plan document for the Plan.").

The SPDs contain the following language regarding anti-assignment:

**Assignment Prohibited**

Except as permitted by this Summary or the Plan Administrator, no individual shall have any transmissible interest in any benefit under the Plan or any power to anticipate, alienate, dispose of, pledge or encumber the same, not nor shall 3M recognize an assignment thereof, either in whole or in part, nor shall any benefit be subject to attachment, garnishment, execution following judgment or other legal process.

The employer is not required to reimburse anyone other than you for covered expenses when you use Nonparticipating Providers. It is your responsibility to arrange for the payment of those expenses and then get reimbursed from the Plan. Except as may be required by law, your benefits under the Plan are not subject to the claims of your creditors.

2012 SPD at 121 (Dkt. 677–3 at 126); 2013 SPD at 103 (Dkt. 677–4 at 109). The SPDs also state who will be paid for services from Nonparticipating Providers:

The allowed amount for a Nonparticipating Provider [sic] usually less than the allowed amount for a Participating Provider for the same service and can be significantly less than the Nonparticipating Provider's billed charges. You will be paid the benefit under the Plan and in most cases **you are responsible for paying the Nonparticipating Provider.** The only exception to this is stated in the Claims Procedures section under Claims Payment. This amount can be significant and the amount you pay does not apply toward any out-of-pocket maximum contained in the Plan.

. . . .

*The Claims Administrator will, in most cases, pay the benefits for any covered health care services received from a Nonparticipating Provider directly to the member based on the allowed amounts and subject to the*

-79-

*other applicable limitations in the Plan.* An assignment of benefits from a

member to a Nonparticipating Provider generally will not be recognized,

except in the instance in which a custodial parent requests, in writing, that

the Plan pay a Nonparticipating Provider for covered services for a child.

2012 SPD at 23–24 (Dkt. 677–3 at 125–26) (bold in original, italics added); 2013 SPD at 24–25 (Dkt. 677–4 at 30–31) (same). Plaintiffs quote only the italicized portion above and argue this language "raises issues of fact that cannot be resolved at the pleading stage." Pls.' Objs. at 52. The Court does not find that this language raises any questions of fact. It is clear in the full context of the paragraph that "in most cases" means in all cases except the one identified in the next sentence, an assignment pursuant to a QMCSO. The quoted sections above prohibit assignment and require the member to be paid directly for services rendered from Nonparticipating Providers. They therefore function as Absolute and We-Pay-You AAPs.

The Court finds that both SPDs are plan documents that are incorporated by reference into the complaint. The Court also finds that they contain enforceable Absolute and We-Pay-You AAPs. Defendant's motion to dismiss the ERISA counts related to Patients 68 and 171 on anti-assignment grounds is therefore GRANTED.

- **Patient 69**

Defendant offers the following documents: Amended and Restated Covance Inc. Health & Welfare Plan (Dkt. 936–2), and 2016 SPD (Dkt. 936–3).

The SPD states that it is effective January 2016. 2016 SPD at 3 (Dkt. 936–3 at 4). Patient 69 began receiving treatment on or around March 4, 2014. FAC ¶ 161(b). As explained above, the Court is unwilling at this stage to enforce an AAP in a document that was only effective after the alleged assignment took place. Plaintiffs however do not cite to this document in opposing Defendant's motion to dismiss, and the Court does not believe it is necessary in order to make a ruling.

The Health and Welfare Plan is a plan document. Amended and Restated Covance Inc. Health & Welfare Plan at 1 (Dkt. 936–2 at 4) (establishing the welfare plan). The Welfare Plan contains an AAP which states "8.3. <u>Nonalienation</u>. No benefit payable under the Program shall

be subject in any manner to anticipation, assignment, or voluntary or involuntary alienation." *Id.* at 14 (Dkt. 936–2 at 17).

The Court finds that the Amended and Restated Covance Inc. Health & Welfare Plan is a plan document that is incorporated by reference into the complaint. The Court finds that it contains an enforceable Absolute AAP. Defendant's motion to dismiss the ERISA counts related to Patient 69 on anti-assignment grounds is therefore GRANTED.

- **Patient 70**

Defendant offers the following document: Group Contract (Dkt. 656–1).

The Group Contract appears to contain the Group's contract and amendments, (Dkt. 656–1 at 2–14), as well as the Evidence of Coverage and its attachments and amendments, (Dkt. 656–1 at 15–168).

The Group Contract states "CareFirst has not provided any document intended to constitute a Plan Document or a Summary Plan Description for purposes of [ERISA]. The Group is the party responsible for the preparation of the Plan Document and the preparation and distribution of the Summary Plan Description." Group Contract at GC 7 (Dkt. 656–1 at 10). It also states "The parties expressly understand and agree that this Group Contract, including the portions that are to be distributed to the Members, do not necessarily satisfy all requirements for a 'written plan document' or a 'summary plan description' (as those terms are defined under ERISA)." *Id.* The Group Contract integrates a number of other documents, including the Evidence of Coverage. *Id.* at GC 5–6 (Dkt. 656–1 at 8–9).

Although neither party identified these provisions or addressed their meaning, the Court is unwilling to incorporate by reference documents which the employer has agreed are not necessarily plan documents, and which state that a separate plan document must be prepared. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 71**

Defendant offers the following documents: Wrap Plan (Dkt. 661–2), Benefit Booklets (Dkt. 661–2), 2014 SPD (Dkt. 916–2), and Administrative Services Agreement (Dkt. 916–3).

The Wrap Plan is a plan document. Wrap Plan at 1, 6 (Dkt. 661–2 at 6, 11). It also expressly incorporates the ASA, Benefit Booklets, and SPD. *Id.* at 6 (Dkt. 661–1 at 11). The Wrap Plan contains the following language regarding assignment:

**11.08 Assignment or Alienation**

Except as otherwise expressly permitted by a Plan [this document] or as may be required by the tax withholding provisions of the Code or any state's income tax act, benefits under the Plan are not in any way subject to the debts or other obligations of the persons entitled thereto and may not be voluntarily or involuntarily sold, transferred, alienated, assigned or encumbered.

*Id.* at 51 (Dkt. 661–2 at 56). This language prohibits assignment and is therefore an Absolute AAP.

The Court finds that the Wrap Plan is a plan document and is incorporated by reference into the complaint. The Court also finds that it contains an enforceable Absolute AAP. Defendant's motion to dismiss the ERISA counts related to Patient 71 on anti-assignment grounds is therefore GRANTED.

- **Patient 72**

Defendant offers the following documents: Wrap Plan (Dkt. 643–1), 2013 SPD (Dkt. 643–2), 2014 SPD (Dkt. 643–3), and 2015 SPD (Dkt. 643–4, 643–5).

Plaintiffs have stated that these documents are the complete plan instrument. Briefing Order at 6. The 2013, 2014 and 2015 AAPs all appear to be virtually identical in relevant passages, so the Court will only cite to the 2013 SPD.

The Wrap Plan is a plan document that permits the incorporation of SPDs. Wrap Plan at 1 (Dkt. 643–1 at 5) (establishing the Plan and stating that it is composed of the Wrap Plan and the Operative Documents which may include plan summaries). It also states that in case of a conflict between the two, the Operative Documents govern. *Id.*

The Wrap Plan contains an AAP which prohibits assignment entirely, except as required by law. Wrap Plan at 15 (Dkt. 643–1 at 19). The SPDs also prohibits assignment in numerous

sections. 2013 SPD at 84 (Dkt. 643–2 at 91) ("No benefit, right or interest of any person covered under the Eaton Medical Plan or Health Savings Account is assignable. Nothing contained in the Plan or this Booklet shall be construed to make the Plan or the Company liable for medical care, treatment or services."); *id.* at 45 (Dkt. 643–2 at 52) ("Benefit payments are usually sent directly to participating providers. Benefit payments for non-participating providers are sent to you.").

The 2013 SPD also contains an Alternate Payee Provision. This provision states:

> *Under normal conditions, Eaton Medical Plan benefits are payable to you and can only be paid directly to another party upon signed authorization from you.* If conditions exist under which a valid release or assignment cannot be obtained, the Plan may make payment to any individual or organization that has assumed the care or principal support for you and is equitably entitled to payment. The Plan must make payments to your separated/divorced spouse, state child support agencies or Medicaid agencies if required by a qualified medical child support order (QMCSO) or state Medicaid law.
>
> The Plan may also honor benefit assignments made prior to your death in relation to remaining benefits payable by the Plan.
>
> Any payment made by the Plan in accordance with this provision will fully release the Plan of its liability to you."

*Id.* at 85 (Dkt. 643–2 at 92) (italics added). Plaintiffs quote only the first sentence and argue that this provision expressly permits assignment to providers. Pls.' Objs. at 56. The Court however reads this section as only applying to alternate payees within ERISA's definition of the term, which are spouses, former spouses, children, other dependents, who are recognized by a domestic relations order. 29 U.S.C. § 1056(d)(3)(K). This section therefore is not relevant to Plaintiffs' claims.

The Court finds that the Wrap Plan is a plan document that incorporates the relevant SPDs, and that these documents are incorporated by reference into the complaint. The Court also finds that the plan documents contain enforceable Absolute and We-Pay-You AAPs.

Defendant's motion to dismiss the ERISA counts related to Patient 72 on anti-assignment grounds is therefore GRANTED.

- **Patient 73**

Defendant offers the following documents: Plan Document (Dkt. 1018–1), 2014 SPD (Dkt. 1018–2), and Administrative Services Agreement (Dkt. 1018–3).

The 2014 SPD appears to explicitly permit assignments to providers. 2014 SPD at 75 (Dkt. 1018–2 at 81) ("Generally, you cannot transfer or assign your benefits or claims under the Baxter Medical Plan except to the provider."). The question is therefore whether the 2014 SPD is a plan document. The Court believes these documents suffer from similar problems as those provided for Patient 170 below. Although that analysis will not necessary control for the documents for this patient, the Court is unwilling to incorporate similar documents by reference without briefing on whether the SPD is or is not a plan document. Defendant's motion to dismiss on anti-assignment grounds is DENIED.

- **Patient 83**

Defendant offers the following document: Member Certificate (Dkts. 696–2, 696-3 , 696–4). Plaintiffs object based on language found at Dkt. 696–5. Pls.' Objs. at 63. That document however is titled Exhibit 2 and has been offered for Patient 207 and not Patient 83. Kholar Decl. ¶ 9 (Dkt. 696).

The Member Certificate for Patient 83 appears to meet the criteria for a plan document. While it does not appear to be the only document because it references a group contract, Member Certificate at 1 (Dkt. 696–2 at 2), it appears to be manifestly reflective of the operative plan terms.

The Member Certificate contains an AAP that states:

> **No Assignment**. You cannot assign any benefits or monies due under the Group Contract or this Certificate to any person, corporation or other organization. Any assignment by you will be void. Assignment means the transfer to another person or to an organization of your right to the services

provided under this Certificate or your right to collect money from us for

those services."

Member Certificate at 34 (Dkt. 696–2 at 36). This provision prohibits assignment entirely and is an Absolute AAP.

The Court finds that the Member Certificate is a plan document that is incorporated by reference into the Complaint. The Court also finds that it contains an enforceable Absolute AAP. Defendant's motion to dismiss the ERISA counts related to Patient 83 on anti-assignment grounds is therefore GRANTED.

- **Patient 87**

Defendant offers the following documents: Schedule of Benefits (Dkt. 709–3 at 1–8), and Group Health Benefit Plan (Dkt. 709–3 at 9–102).

Defendant's declarations never identified that the provided attachment contained multiple documents, nor did it give the documents within it the correct titles. *See generally* Conway Decl. (Dkts. 709, 909) (titling the attachment 'Plan Document'). Nonetheless, the Group Health Benefit Plan and Schedule of Benefits are integrated into the contract between Blue Cross Blue Shield Louisiana and the employer. Group Health Benefit Plan at 67 (Dkt. 709–3 at 76). This contract meets the criteria for a plan document because it describes the benefits of the plan, specifies the employer's funding, and identifies the responsibilities of the parties.

The Group Health Benefit Plan contains the following language regarding assignment:

**ASSIGNMENT**

A Member's rights and Benefits under this Benefit Plan are personal to the Member and may not be assigned in whole or in part by the Member. We will recognize assignments of benefits to Hospitals if both this Benefit Plan and the Provider are subject to Louisiana State Law at L.R.S. 40:2010. If both this Benefit Plan and the Provider are not subject to Louisiana State Law at L.R.S. 40:2010, We will not recognize assignments or attempted assignments of benefits. Nothing contained in the written description of

> health coverage shall be construed to make the health plan or Us liable to
>
> any third party to whom a Member may be liable for the cost of medical
>
> care, treatment, or services. We reserve the right to pay PPO and
>
> Participating Providers directly instead of paying the Member.

*Id.* at 9 (Dkt. 709–3 at 18). Because this language prohibits assignment entirely it is an Absolute AAP. While it does reserve the administrator choice in whether to pay PPO and Participating Providers, because Plaintiffs are neither, it is not a Choice AAP with regards to their claims. This language is repeated again in the General Provisions section, except the last sentence above is replaced with "[w]e reserve the right to pay Preferred Care Network Providers, and/or Providers in the Blue Cross and Blue Shield of Louisiana Participating Provider Network directly instead of paying the Member." *Id.* at 70 (Dkt. 709–3 at 79). Plaintiffs argue that this sentence "raises questions of fact that cannot be resolved at the pleading stage." Pls. Objs. at 66. As explained above, this language does not raise any questions of fact, especially because Plaintiffs have not alleged that they are Preferred Care Network Providers or in the Participating Provider Network, meaning this language both does not apply to Plaintiffs and does not mean what they argue it means. The FAC itself states that this litigation arose out of Blue Cross's efforts to coerce Plaintiffs because they are out-of-network providers. FAC ¶ 2.

The Court finds that the Schedule of Benefits and Group Health Benefit Plan are integrated plan documents and are incorporated by reference into the complaint. The Court also finds that they contain an enforceable Absolute AAP. However, BCBSLA has redacted the Group Name. Schedule of Benefits at 1 (Dkt. 709–3 at 1). BCBSLA has provided no authority or explanation for why it did so and the Court is not aware of any legitimate reason why a carrier would need to redact such information. As explained above, the Court will not grant a motion to dismiss on ERISA-specific defenses unless it is satisfied that the plan is covered by ERISA. Rather than deny the motion to incorporate the documents by reference, the Court will CONDITIONALLY GRANT Defendant's motion to dismiss the ERISA counts related to Patient 87 on anti-assignment grounds, pending BCBSLA providing a declaration or other cognizable evidence within two weeks from the issuance of this order that identifies the plan

name and employer applicable to Patient 87 on or around September 25, 2012, showing to the Court's satisfaction that there are no coverage concerns under ERISA, 29 U.S.C. § 1003.

- **Patient 93**

Defendant offers the following documents: Group Contract (Dkt. 656–3 at 2–14), and Evidence of Coverage (Dkt. 656–3 at 15–170).

Both of the documents are part of attachment 3, Dkt. 656–3. Group Contract pages start with GC, and the original 35 pages of the Evidence of Coverage start with EOC, but the contract attachments and amendments all restart their numbering or have a different numbering convention.

Both the Group Contract and the Evidence of Coverage state that the Evidence of Coverage is a part of the Group Contract which provides the subscribers benefits. GC at 11 (Dkt. 656–3 at 14); EOC at 1 (Dkt. 656–3 at 15). The Group Contract meets the criteria for a plan document.

Under the No Assignment heading the Evidence of Coverage states that "A Member cannot assign benefits or payments due under this Evidence of Coverage to any person, corporation or other organization, except as specifically provided by this Evidence of Coverage or required by applicable law . . . ." EOC at 31 (Dkt. 656–3 at 45). The only exceptions it contains are for emergency ambulance services and services provided by a non-participating dentist or oral surgeon, and even in those cases CareFirst must be notified in writing. *Id.*

The Court finds that the Evidence of Coverage and Group Contract are plan documents that are incorporated by reference into the complaint. The Court also finds that the plan documents contain an enforceable Absolute AAP. Defendant's motion to dismiss the ERISA counts related to Patient 93 is therefore GRANTED.

- **Patient 94**

Defendant offers the following documents: Administrative Services Agreement (Dkt. 999–1), and Benefit Booklet (Dkt. 654–1).

1    The Benefit Booklet states that the employer sponsors a self-funded employee health

2 care plan, and that plan is established and maintained "pursuant to a written document called a

3 Plan Document." Benefit Booklet at 1 (Dkt. 654–1 at 3). It also states that:

4        This benefit book describes the benefits for employees and their dependents

5        that are eligible for and have elected coverage, under the PPO benefit plan.

6        BCBSAZ may distribute a similar benefit book for insured employer

7        groups and self-funded employer groups. This book by itself is not your

8        employer's Summary Plan Description or a Plan Document. Your employer

9        is responsible for providing those documents to you.

10 *Id.* Plaintiffs argue that this language clearly shows that the Benefit Booklet expressly disclaims

11 its status as an ERISA plan document. Pls.' Opp. to BCBSAZ and Tuscon's Joinder at 2 (Dkt.

12 835–4). Defendant BCBSAZ argues that Plaintiffs are wrong because the Benefit Booklet

13 explicitly states that the BCBSAZ plan includes this book. BCBSAZ and TEP Reply at 2 (Dkt.

14 863). BCBSAZ tries to explain the above language by saying the Benefit Booklet alone is not a

15 plan document, *id.* at 3 (Dkt. 863), but that it becomes a plan document when combined with

16 some other unidentified documents. This however is contradicted by the declaration it provides,

17 which states there are no separate SPDs or plan documents for this patient. Epper Decl. ¶ 3

18 (Dkt. 999).

19    Defendant's argument also fails to explain what the Benefit Booklet means by saying the

20 employer is responsible for providing the plan document(s) and SPD, because the Benefit

21 Booklet is provided by BCBSAZ, or why it would refer to itself as "those documents." The

22 natural reading of the above passage is that the Benefit Booklet could be incorporated by the

23 employer's plan document, but unless it has been (which would require producing that

24 document that incorporates it), it is neither an SPD or a plan document. This is strongly

25 reinforced by the documents for Patient 273, whose Benefit Booklet contained an identical

26 provision, Benefit Booklet at 1 (Dkt. 654–5 at 3), but also provided a separate plan document

27 and SPD, albeit only after being ordered to do so by the Court, Plan Document and SPD (Dkt.

28 1000–1).

The Court could analyze whether the ASA is a plan document, but the offered AAP and venue provisions in the ASA only apply to the signing Parties and refer to suits over the ASA, not to benefits under the employer's ERISA plan. *See* Epper Decl. ¶¶ 5, 8. In addition, the ASA is mentioned on the same page as quoted above, Benefit Booklet at 1 (Dkt. 654–1 at 3), strongly suggesting that it is not the document that the employer must separately provide.

The Court is unwilling to incorporate by reference documents which state they are not ERISA plan documents. Defendant's motion to dismiss due to anti-assignment and venue selection provisions is therefore DENIED.

- **Patient 96**

Defendant offers the following document: 2014 Summary Plan Description (Dkt. 708–3).

Plaintiffs have stated that this plan was complete. Briefing Order at 6. This document maintains the plan and is both a plan document and SPD and. 2014 SPD at 1 (Dkt. 708–3). It also incorporates its appendices. *Id.* It contains the following language regarding assignment:

> **Assignment**
>
> No Covered Person shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate any benefit payment under the Plan to a third party, and such payment shall not be subject to any legal process to levy execution upon or attachment or garnishment proceedings against for the payment of any claims. Benefit payments under the Plan may not be assigned, transferred, or in any way made over to another party by a Covered Person. Nothing contained in this Plan shall be construed to make the Plan or the Plan Sponsor liable to any third party to whom a Covered Person may be liable for medical care, treatment, or services. If authorized in writing by a Covered Person, the Plan Administrator may pay a benefit directly to a provider of medical care, treatment, or services instead of the Covered Person as a convenience to the Covered Person; when this is done, all of the Plan's obligation to the

Covered Person with respect to such benefit shall be discharged by such payment. However, the Plan reserves the right to not honor any assignment to any third party, including but not limited to, any provider. The foregoing does not preclude any assignment of payment to Medicaid to the extent required by law. The Plan will not honor claims for benefits brought by a third party; such third-party shall not have standing to bring any such claim either independently, as a Covered Person or beneficiary, or derivatively, as an assignee of a Covered Person or beneficiary.

SPD at 58 (Dkt. 708–3 at 63). This AAP explicitly prohibits assignment, but permits the provider to be paid directly if the plan administrator receives written authorization and chooses to do so. This language therefore appears to be function as an Absolute AAP and also a Choice AAP, if the patient so authorizes.

The Court finds that the 2014 Summary Plan Description is a plan document and is incorporated by reference into the complaint. The Court also finds that it contains enforceable Absolute and Choice AAPs. Defendant's motion to dismiss the ERISA counts related to Patient 96 on anti-assignment grounds is therefore GRANTED.

- **Patient 102**

The Defendant provides the following documents: Plan Summary (Dkt. 1027-1), Administrative Services Agreement (Dkt. 1027-2), and Benefit Program Application (Dkt. 1027-3) ("BPA").

The ASA incorporates four exhibits, exhibit 2 is attached to the ASA and titled "Fee Schedule, Financial Responsibilities & Required Disclosures," exhibit 4 is the BPA, which is included here as a separate document. ASA at 15, 37 (Dkt. 1027-2 at 16, 38). The BPA also states it is part of the ASA. BPA at 9 (Dkt. 1027-3 at 10). It is initially unclear whether the Plan Summary is a plan document. The Plan Summary states "[t]his Plan Summary is issued according to the terms of the Plan. It is not a contract. It is only a summary of Benefits, and all statements in this Summary are subject to the terms of the Plan documents on file in your Human Resources Department." Plan Summary at 1 (Dkt. 1027-1 at 5). However, the Plan Summary also reads as if it is the primary plan document. For example, it states "[b]eginning

1  on your Effective Date, the Plan agrees to provide you the Benefits described in this
2  Summary." *Id.* It also states that riders will be added to the plan summary, *id.* at 9 (Dkt. 1027-1
3  at 13), and "[t]he Plan provides only the Benefits specified in this Plan Summary." *Id.* at 56
4  (Dkt. 1027-1 at 60). It defines the word Plan as "[t]his Plan of Benefits for Covered
5  Comprehensive Health Care Services provided by and through the Employer, as set forth
6  herein." *Id.* at 81 (Dkt. 1027-1 at 85). Most importantly, the ASA states in the ERISA section:
7  "[t]he Employer hereby acknowledges (i) Plan Summary serves as both Plan Document and
8  Summary Plan Description . . . ." ASA at 14 (Dkt. 1027-2 at 15). The Court is ultimately
9  persuaded that the employer has either adopted the ASA and Plan Summary as plan documents,
10 or the employer has adopted the ASA as a plan document that incorporates the Plan Summary.

11    Exhibit 2 of the ASA prohibits assignment, and permits the claims administrator to pay
12 either the provider furnishing services for which payment is due, or the covered person directly.
13 ASA at 26 (Dkt. 1027-2 at 27). The Plan Summary has a functionally identical AAP that states:

14    **PAYMENT OF BENEFITS**

15    *You authorize the Claims Administrator to make payments directly*
16    *to Providers giving Covered Services for which Benefits are provided under*
17    *the Plan.* The Claims Administrator also reserves the right to make
18    payments directly to you.

19    You cannot assign your right to receive payment to anyone else,
20    either before or after Covered Services are received.

21    *Once a Provider gives a Covered Service, the Claims Administrator*
22    *will not honor a request not to pay the claims submitted.*

23 Plan Summary at 57 (1027-1 at 61) (italics added). Plaintiffs quote the italicized sentences
24 above, conveniently replacing the Choice and Absolute AAP language with ellipses.

25    These documents appear to be manifestly reflective of the operative plan terms. The
26 Court therefore finds that the ASA and Plan Summary are plan documents that are incorporated
27 by reference into the complaint. The Court also finds that they contain enforceable Absolute
28 and Choice AAPs.  Defendant's motion to dismiss the ERISA counts related to Patient 102 on
anti-assignment grounds is therefore GRANTED.

-91-

- **Patient 105**

Defendant offers the following documents: Oregon-Washington Carpenters-Employers Amended and Restated Health and Welfare Plan ("OCW Health Plan") (Dkt. 987–3), and 2014 SPD (Dkt. 987–4).

The OCW Health Plan states that the plan consists of "this plan document and the related insurance agreements providing benefits to the Covered Individuals, namely the Kaiser Foundation Health Plan of the Northwest ("Kaiser") health maintenance organization ("HMO") agreement and the Union Labor Life Insurance Company policy." OCW Health Plan at 1 (Dkt. 987–3 at 7). The 2014 SPD states that it is not a plan document and explains that participants may choose the HMO insurance option instead of the self-insured medical benefits. SPD at i (Dkt. 987–4 at 3). OCW Health Plan is therefore the document that details the benefits that patients are entitled to from the plan.

The OCW Health Plan contains the following language regarding assignment:

13.2 PAYMENT OF BENEFITS.

(a) All benefits will be paid by the Plan to the providers or the Covered Individual as they accrue upon receipt of written proof, satisfactory to the Plan, covering the occurrence, character, and extent of the event for which the benefit is paid.

(b) Plan benefits shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any person; however, any Covered Individual may direct that benefits due be paid to an institution in which the Covered Individual is hospitalized or to any provider of medical services or supplies in consideration for medical or Hospital services rendered or to be rendered, or to any other person or agency that may have provided or paid for, or agreed to provide or pay for, any benefits payable hereunder. Such a payment direction is not an assignment of the Covered Individual's Plan benefits, does not result in the payee being the Covered Individual's authorized representative, and does

1    not entitle the payee to bring a claim for benefits under the Plan on its own

2    or the Covered Individual's behalf.

3    OCW Health Plan at 55 (Dkt. 987–3 at 61). Plaintiffs quote the first sentence of (b) and argue

4    that language raises a question of fact which cannot be resolved at this stage. Pls.' Objs. at 78.

5    Plaintiffs' quote however does not include the second sentence which starts with the phrase

6    "Such a payment direction is not an assignment . . . ." *Id.* Plaintiffs' selective quoting does not

7    change that this language clearly prohibits assignment. While it appears to also contain Choice

8    AAP language, the above provision specifically states that payment direction authorization does

9    not permit assignments or entitle anyone else to bring a claim, therefore as it applies to

10   Plaintiffs, it is an Absolute AAP.

11   The Court finds that the OCW Health Plan is a plan document and is incorporated by

12   reference into the complaint. The Court also finds that it contains an enforceable Absolute

13   AAP. Defendant's motion to dismiss the ERISA counts related to Patient 105 on anti-

14   assignment grounds is therefore GRANTED.

15   • **Patient 108**

16   Defendant offers the following documents: Benefit Booklet (Dkt. 1017–16), and

17   Administrative Services Agreement (Dkt. 1036–1).

18   Defendant offers an Administrative Services Agreement, and while the Benefit Booklet

19   does appear to incorporate an ASA, Benefit Booklet at 73 (Dkt. 1017–16 at 74), it also

20   incorporates an "ASO Agreement." *Id.* at 83 (Dkt. 1017–16 at 84). This discrepancy is likely

21   caused by the fact that the Court was provided a redlined version of the Benefit Booklet and not

22   the final version. Defendant has not pointed to an AAP in any other document. Despite the fact

23   that neither party appears to have addressed that this document is clearly a draft, the Court is

24   unwilling to incorporate a draft document as a plan document. Defendant's motion to dismiss

25   on anti-assignment grounds is therefore DENIED.

26   • **Patient 110**

27   Defendant offers the following documents: Benefit Booklet (Dkt. 1017–17), Group

28   Policy (Dkt. 1017–18).

The Benefit Booklet defines Benefit Booklet as "this written description of the benefits provided under the plan. This description serves as both a Summary Plan Description and the Plan Document." Benefit Booklet at 1 (Dkt. 1017–17 at 10). The Group Policy however states that Anthem "agrees to provide the benefits of this *policy* for enrolled *insured persons* of the *group*. These benefits are subject to all of the terms and conditions of this *policy*." Group Policy cover page (Dkt. 1017–18 at 2). The Group Policy states that "[t]he entire policy consists of: 1. this policy, including any endorsements; 2. all certificate forms, including any amendments; 3. the application of the group; and 4. the individual applications, of eligible persons." *Id.* at 1 (Dkt. 1017–18 at 4).

The Group Policy makes no mention of the Benefit Booklet, and the Benefit Booklet does not appear to even acknowledge the existence of the Group Policy. The Benefit Booklet also states it is a plan document, which means that the plan would be governed according to its terms, while the Group Policy states that Anthem will be providing benefits according to the Group Policy and a number of other documents, not including the Benefit Booklet.

Defendant has not acknowledged these issues or identified language in either document which would resolve this apparent tension. In addition, the Benefit Booklet expressly purports to be an SPD and a plan document, which raises the issue of whether an SPD drafted by the claims administrator can be unilaterally turned into a plan document. This, coupled with the Benefit Booklet's circular definition of plan which seems to indicate the existence of other documents which describe the plan benefits, Benefit Booklet at 10 (Dkt. 1017–17 at 19), provides the Court with more than enough reasons to not resolve these issues on its own at the motion to dismiss stage.

The Court therefore declines to incorporate these documents by reference. Defendant's motion to dismiss is DENIED.

- **Patient 115**

Defendant states that this patient received coverage under two different plans, meaning there are two different plans that cover this period. Pls.' Objs. at 85 n.1.

Defendant Regence BlueCross BlueShield of Oregon offers the following document: Summary Plan Description (Dkt. 987–5).

As explained above, pursuant to *Amara* SPDs are not themselves plan documents, unless they have been incorporated by a plan document. Defendant's declaration stating that "[t]o the best of my knowledge, the Empres Plan does not maintain a separate plan instrument and the SPD is the plan instrument for the Empres Plan" is not sufficient as per the Court's Briefing Order to convince the Court that the SPD is manifestly reflective of the operative plan terms. Briefing Order at 5. The Court therefore declines to incorporate this document by reference.

Defendant Premera offers the following document: Plan Booklet (Dkt. 660–5). The Plan Booklet states that the plan year for this plan ends on March 31, Plan Booklet at 46 (Dkt. 660–5 at 51), and the effective date for this document is April 1, 2013, *id.* at Introduction (Dkt. 660–5 at 2), suggesting that this document was only effective until March 31, 2014. Patient 115 began treatment on or around November 4, 2014. FAC ¶ 207(b). Of course, if this document truly is a plan document then it does not necessarily need to be reissued at the end of the plan year. However, the document appears to contain required SPD information, Plan Booklet at 45–47 (Dkt. 660–5 at 50–52), and similar documents from this Defendant are issued every year, *see, e.g.*, Dkt. 660–3–4 (2014 and 2015 Benefit Booklets for Patient 112). These facts suggest that the document may not have been in effect during the relevant assignment, or that it is an SPD. In either case, the Court declines to incorporate the document by reference.

Defendants' motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 116**

Defendant offers the following documents: Group Contract (Dkt. 999–2), and Benefit Booklet (Dkt. 654–2).

The Master Group Contract states:

> Group acknowledges and agrees that a Benefit Plan Booklet is not a [SPD] and this Contract is not a plan document for the purposes of ERISA. In the event of any conflict between the Summary Plan Description and the Benefit Plan Booklet, the terms of the Benefit Plan Booklet shall control

1    BCBSAZ's performance under this Contract. Group acknowledges that an

2    "employee welfare benefit plan" as defined in ERISA must be established

3    and maintained through a separate plan document.

4   Master Group Contract at 2 (Dkt. 999–2 at 6). Defendant acknowledges this language exists

5   and provides a declaration which states "[h]owever, the Origami Owl, LLC Plan did not create

6   any separate plan document." Epper Decl. ¶ 10 (Dkt. 999). It is unclear what factual basis the

7   declarant has to make statements about whether or not a company she does not work for has a

8   separate plan document, and in either case the Court is unwilling to incorporate documents

9   which disclaim their plan status.

10      Defendant's motion to dismiss or transfer based on venue and anti-assignment

11  provisions is therefore DENIED.

12  • **Patient 117**

13      Defendant offers the following documents: Benefit Booklet (Dkt. 1017–19), and Group

14  Benefit Agreement (Dkt. 1017–20).

15      Defendant seeks to have the Court enforce an AAP contained in the Benefit Booklet.

16  Armknecht Decl. ¶ 40 (Dkt. 1017). The Benefit Booklet however repeatedly states that it is a

17  summary only, and that the Group Benefits Agreement contains the actual terms of coverage.

18  Benefit Booklet (Dkt. 1017–19 at 2, 8, 20). Defendant even quotes most of this language in the

19  provided declaration. Armknecht Decl. ¶ 40 (Dkt. 1017). As explained above, the Court cannot

20  enforce an AAP when the document expressly states that it is not a document which governs

21  the plan. The Court therefore declines to incorporate by reference the Benefit Booklet.

22  Defendant has not identified an AAP in the Group Benefit Agreement or provided citations to

23  allow the Court to determine whether it is a plan document, Defs' Revised Addendum at 40,

24  and the Court declines to do so on its own. Defendant's motion to dismiss on anti-assignment

25  grounds is therefore DENIED.

26  • **Patient 122**

27      Defendant offers the following document: Benefit Booklet (Dkt. 697–15).

28      The Benefit Booklet appears to be an SPD. Benefit Booklet at 144 (Dkt. 697-15 at 150)

    (containing the model SPD language found at 29 C.F.R. § 2520.102-3 but replacing the word

summary plan description with benefit booklet). If this is the only plan document, Armknecht

Decl. ¶ 46 (identifying the Benefit Booklet as the plan instrument), then this would be a

consolidated plan. Defendant however has not specifically identified it as such in the

declaration, or cited to any relevant provisions in the document as required by the Briefing

Order. Briefing Order at 7. Defendant did not even identify the document as an SPD. In

addition, because the plan is self-funded, Anthem only acts as the claims administrator. Benefit

Booklet at Cover Letter (Dkt. 697-15 at 3). Amara's explained the different roles played by the

sponsor of the plan and the plan administrator, *Amara*, 536 U.S. at 437. Defendant has not

explained how a claims administrator, a step further removed from the sponsor, could draft and

maintain the sole plan instrument. How would the claims administrator know the terms of the

plan or that it even has the authority to draft the plan document/SPD? In addition, required

features of the plan instrument such as the employer's obligation to fund the plan and the

procedure for amendment do not appear to be specified, raising further questions as to whether

this document is manifestly reflective of the operative plan terms.

Based on the foregoing, the Court declines to incorporate the benefit booklet by

reference. Defendant's motion to dismiss on anti-assignment grounds is DENIED.

- **Patient 123**

Defendant offers the following documents: Group Contract (Dkts. 725–2–6), and Benefit

Booklet (Dkts. 725–7–12).

The only document which Defendant contends prohibits assignment is the Benefit

Booklet. Defs.' Revised Addendum at 41. The Benefit Booklet says that it is just a summary.

Benefit Booklet at 3 (Dkt.725–8 at 5) ("Please remember that this Benefit Booklet is a

summary of the provisions and benefits provided in the Program selected by the Member's

Group."). This language also suggests that these documents may reflect the terms of some other

document. The Court also notes that these two documents are split over 11 files, making

evaluating the documents unnecessarily difficult.

Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 126**

Defendant offers the following documents: SPD (Dkt. 940–2), Master Group Application (Dkt. 940–3), Master Group Contract (Dkt. 940–4), and Endorsements (Dkt. 940–5).

Defendants' Revised Addendum does not contain any citations to integration or incorporation provisions for these documents. Defs.' Revised Addendum at 43–44. Defendants do however point out, Dolsky Decl. ¶ 6 (Dkt. 940), that the SPD states that the Master Group Application, any Subgroup applications, the enrollment information, the Master Group Contract, addenda, attachments or endorsements provide the terms of the group health plan. The Master Group Contract also contains the same language regarding the terms of the group health plan. Master Group Contract at 63 (Dkt. 940–4 at 66). Thus, the SPD does not even purport to be a plan document, and any AAP found within it is unenforceable. The Master Group Contract however contains the terms of the plan and is a plan document.

The Master Group Contract contains the following language regarding assignment:

> **6. Direct Payment**: All payments for Covered Services by In-network providers will be made directly to such providers. In all other cases, payments will be made, at Blue Cross and Blue Shield of Nebraska's option, to the Subscriber, to his or her estate, to the provider or as required under state or federal law, including qualified medical child support orders. No assignment whether made before or after Services are provided, of any amount payable according to this Contract shall be recognized or accepted as binding upon Blue Cross and Blue Shield of Nebraska, unless otherwise required by state or federal law.

*Id.* at 11 (Dkt. 940–4 at 14). This language appears to prohibit assignment and gives BCBSNE the power to choose who it pays when someone receives services from an out-of-network provider, and therefore functions as Absolute and Choice AAPs.

The Court finds the Master Group Contract is a plan document that is incorporated by reference into the complaint. The Court also finds that it contains enforceable Absolute and

Choice AAPs. Defendant's motion to dismiss the ERISA counts related to Patient 126 on anti-assignment grounds is therefore GRANTED.

- **Patients 127 & 248**

Defendant offers the following documents that appear to be identical in the relevant portions:

**Patient 127**: Administrative Services Agreement (Dkt. 682–5), and Benefit Booklet (Dkt. 682–6).

**Patient 248**: Administrative Services Agreement (Dkt. 682–12), and Benefit Booklet (Dkt. 682–13).

The ASAs define Plan as "the employee welfare benefit plan, as this term is defined in ERISA, established by the Group for the purpose of providing certain Benefits, as described in the Summary Plan Description for its Members, including any amendments thereto." (Patient 127: ASA at 7, Dkt. 682–5 at 7); (Patient 248: ASA at 6, Dkt. 682–12 at 6). The Benefit Booklets provided are not the SPDs because the ASAs require the SPDs to be prepared by the Group, plan administrator, or their designee. The carrier, Highmark, wrote the Benefit Booklet, and there is nothing before the Court to suggest that Highmark did so in any of those capacities. (Patient 127: ASA at 8, Dkt. 682–5 at 8); (Patient 248: ASA at 7, Dkt. 682–12 at 7). Defendant has provided an SPD for Patient 248, but the SPD is not a plan document. Burger Decl. ¶ 17 (Dkt. 1012) ("The SPD is not, however, the legal or governing plan document."). In addition, the "Whereas" provisions of the ASAs appear to suggest that an ERISA plan has already been established and maintained by documents which are not the ASAs. (Patient 127: ASA at 3, Dkt. 682–5 at 3); (Patient 248: ASA at 3, Dkt. 682–12 at 3). In addition, the ASA for Patient 127 states that it is confidential and should not be disclosed without the prior written consent of Highmark Inc. ASA at 1 (Dkt. 682–5 at 1).

These documents appear to contemplate that the plans have already been established and maintained by separate documents. The Court therefore cannot incorporate the documents for these patients. Defendant's motion to dismiss the claims related to these patients is DENIED.

- **Patient 130**

Defendant offers the following documents: Welfare Plan (Dkt. 965–1), and Health Plan (Dkt. 965–2).

The Welfare Plan appears to be the document that establishes the plan. Welfare Plan at 1 (Dkt. 965–1 at 5). The Welfare Plan repeatedly prohibits assignment. *Id.* at 11, 12 (Dkt. 965–1 at 15, 16) ("To the maximum extent permitted by law, no participant, beneficiary, or any other person shall have any right or power, by draft, assignment . . . any benefit provided under the Welfare Plan or any Component Plan . . . ."). It also states that except for when a participant or beneficiary is not competent, "benefit payments under a Component Plan shall be made to the participant in the Component Plan or his beneficiary, if any." *Id.* at 4 (Dkt. 965–1 at 8).

The Court therefore finds that the Welfare Plan is a plan document and is incorporated by reference into the complaint. The Court also finds that it contains an enforceable Absolute AAP. Defendant's motion to dismiss the ERISA counts related to Patient 130 on anti-assignment grounds is therefore GRANTED.

- **Patient 131**

Defendant offers the following documents: 2014 Plan Document and SPD (Dkt. 999–3), 2015 $700 Plan Benefit Booklet (Dkt. 654–3), and 2012 $600 Plan Benefit Booklet (Dkt. 654–4).

The 2014 Plan Document and SPD, even assuming it is a plan document, incorporates the applicable Benefit Plan Booklets that comprise the plans that are specified in Exhibit 1. 2014 Plan Document and SPD at 1 (Dkt. 999–3 at 4). Exhibit 1 however incorporates a flex plan entitled "BCBSAZ Flexible Benefit Plan" and a health plan entitled "BCBSAZ Employee Health Plan." *Id.* at Exhibit 1 (Dkt. 999–3 at 26). Defendant appears to assume rather than explain that the offered Benefit Booklets are actually the ones incorporated by reference. *See* Epper Decl. ¶ 16 (Dkt. 999). This is complicated by the fact that the 2012 Benefit Booklet was issued before the 2014 Plan Document and SPD, and the 2015 Benefit Booklet was issued after the patient began receiving treatment, FAC ¶ 223(b) (stating that Patient 131 began receiving treatment on or around August 14, 2014), suggesting that neither of them may have been in force at the time. In addition, the $700 and $600 Plans appear to be different plans, leading the

1    Court to question which one the patient was enrolled in, and whether the 2012 Benefit Booklet

2    was even still in effect in August 2014. Defendant has not identified any venue or anti-

3    assignment provisions in the 2014 Plan Document and SPD. Epper Decl. at 6–7 (Dkt. 999). The

4    Court cannot incorporate documents by reference at this stage that were not in effect, or where

5    Defendant cannot show that the provision was contained in a plan document. For these reasons,

6    Defendant's motion to dismiss on anti-assignment grounds is DENIED.

7        • **Patient 134**

8        Defendant offers the following documents: Employee Benefits Plan Document and SPD

9    (Dkt. 666–1), and Health Benefit Booklet (Dkt. 1002–1).

10        The title of the first document makes analyzing its plan status more confusing. Plan

11    Documents are supposed to provide the terms of the plan, and SPDs are supposed to summarize

12    a beneficiary's rights under the plan. Although they can be done in the same document as in a

13    consolidated plan, explained above, the Court is unsure which this document is, if either. The

14    document states that this document is a plan document. Employee Benefits Plan Document and

15    SPD at 1 (Dkt. 666–1 at 2) ("This document together with documents incorporated by reference

16    constitutes the written plan document requires by ERISA Section 402 and the Summary Plan

17    Description required by ERISA Section 102"). The document however states that it contains a

18    summary of rights available under the plan, *id.* at 3 (Dkt. 666–1 at 4). The document also

19    appears to only contain references to where benefit information can be obtained in other

20    documents and does not actually state what benefits or coverage employees receive, *id.* at 4–5

21    (Dkt. 661–1 at 5–6) (stating that much of the information required to be in an SPD can be found

22    in various "Benefit Plan Descriptions" that are incorporated by reference). The document also

23    does not appear to state what documents are Benefit Plan Descriptions aside from listing that

24    Anthem BlueCross BlueShield is the service provider; nowhere does the document identify that

25    the offered Health Benefit Booklet is a plan document.

26        The Court has trouble understanding a document which states that it simultaneously is

27    the plan, and that it is only a summary of the plan. The case may be different if it were an SPD

28    that was incorporated by a separate plan document, but here the document cannot be relied on

     at this stage to state whether it is or is not a plan document.

1    The Court therefore cannot conclude at this stage whether the Employee Benefits Plan

2    Document and SPD is a plan document, an SPD, both, or neither. Because it is unclear whether

3    this document incorporates the Benefit Booklet, the Court is also unwilling to incorporate the

4    Benefit Booklet by reference into the complaint. The motion to dismiss on anti-assignments

5    grounds is therefore DENIED.

6    • **Patients 136 & 218**

7    Defendant offers the following documents for these patients:

8    **Patient 136**: Group Insurance Policy (Dkt. 711–5), and Coverage Manual (Dkt. 711–6).

9    **Patient 218**: Group Insurance Policy (Dkt. 711–7), and Coverage Manual (Dkt. 711–7–

10   8).

11   Because Defendant offers virtually identical documents the Court will analyze them

12   together. Defendant provides a declaration which states that "[t]o the best of my knowledge,

13   there is no Summary Plan Description." (Patient 136: Douglas Decl. ¶ 7, Dkt. 711); (Patient

14   218: *id.* ¶ 18). This would be very surprising because ERISA requires that SPDs contain

15   specific information, 29 C.F.R. § 2520.102-3, and be furnished to plan members on a regular

16   basis, 21 U.S.C. § 1024. Given that the Coverage Manual contains many if not all of the SPD-

17   specific disclosures, (Patient 136: Coverage Manual at 71–73, Dkt. 711–6 at 77–79); (Patient

18   218: Coverage Manual at 75–76, Dkt. 711–8 at 33–34), the Court believes that there is a

19   meaningful chance that the Coverage Manual serves as the plan's SPD.

20   The Group Insurance Policy integrates Benefits Documents into the Policy, (Patient 136:

21   Group Insurance Policy at 3, Dkt. 711–5 at 4); (Patient 218: Group Insurance Policy at 1, Dkt.

22   711–7 at 3) (defining the word Agreement identically as Patient 136's definition of Policy), and

23   defines Benefits Documents as:

24   the written document(s) that describe and define the terms and benefits of

25   the Plan and may be titled Benefits Certificate, Coverage Manual, or

26   something similar. If the Plan is subject to the terms of ERISA, Account

27   [employer] may at its option incorporate the Benefits Document into its

28   ERISA Summary Plan Description (SPD).

(Patient 136: Group Insurance Policy at 1, Dkt. 711–5 at 2); (Patient 218: Group Insurance Policy at 1, Dkt. 711–5 at 3). This at least suggests that the Coverage Manual may be integrated into the Policy, but even if that were the case that does not necessarily make it a plan document. The Group Insurance Policy defines Plan Member as:

> an employee or other individual identified by Account as a person eligible and enrolled to receive health benefits under the Plan subject to the terms, conditions, and limitations described in the **Plan documents** and who is the applicant on a completed enrollment form that has been provided to and accepted by Wellmark.

(Patient 136: Group Insurance Policy at 3, Dkt. 711–5 at 4); (Patient 218: Group Insurance Policy at 3, Dkt. 711–7 at 5) (emphasis added). It also defines Plan Year as:

> the year designated by the plan sponsor as the plan year in the **plan document** of the Plan, except that if the plan document does not designate a plan year or **if there is no plan document**, the plan year is: [listing four different methods it will use to determine plan year].

(Patient 136: Group Insurance Policy at 3, Dkt. 711–5 at 4); (Patient 218: Group Insurance Policy at 3, Dkt. 711–7 at 5) (emphasis added). Although this document does confirm the possibility that there may be no plan document, no explanation has been provided for why the Plan Year ends on March 31. (Patient 136: Coverage Manual at 73, Dkt. 711–6 at 79); (Patient 218 does not have an equivalent page). More importantly, it suggests both that other expressly identifiable plan documents do exist, and that the Group Insurance policy may not be a plan document.

The Court has no opinion on whether or not the Group Insurance Policy is a plan document, but the Court declines to incorporate any of these documents at this stage. Defendant's motion to dismiss the claims related to patients 136 and 218 on anti-assignment grounds is DENIED.

- **Patient 137**

Defendant offers the following documents: Medical and Dental Plan (Dkt. 960–1), and 2014 SPD (Dkts. 699–1–5).

1    The Medical and Dental Plan is the document that establishes the plan and expressly

2    states it is a plan document. Medical and Dental Plan at 1, 3 (Dkt. 960–1 at 6, 8). The Medical

3    and Dental Plan incorporates the SPDs in Appendix B into the plan, but in case of a conflict the

4    Medical and Dental Plan controls. *Id.* at 4 (Dkt. 960–1 at 9). The 2014 SPD however does not

5    appear to be listed in Appendix B. *Id.* at 20–21. (Dkt. 960–1 at 25–26).

6    The Medical and Dental Plan however has its own AAP which states that "[b]enefits

7    may be paid to the Covered Person, or, at the option of the Claims Administrator, all or any part

8    of the benefits may be paid directly to the person or institution that provided the services with

9    respect to such claim." *Id.* at 6 (Dkt. 960–1 at 11–12). This is a Choice AAP because it gives

10   the Claims Administrator the choice in whom it pays, regardless of assignment.

11   For the foregoing reasons the Court finds that the Medical and Dental Plan is a plan

12   document and incorporates it by reference into the complaint. The Court also finds that it

13   contains an enforceable Choice AAP. Defendant's motion to dismiss the ERISA counts relating

14   to Patient 137 on anti-assignment grounds is therefore GRANTED.

15   - **Patient 138**

16   Defendant offers the following documents for this patient: Consolidated Plan Document

17   and Summary Plan Description ("CPD") (Dkt. 972–1), and the 2013 Subscriber Certificate

18   (Dkt. 678–3).

19   Although Defendant did not identify this as a consolidated plan in its declaration or cite

20   to those provisions in the document, by its name the Consolidated Plan Document and

21   Summary Plan Description purports to be a consolidated plan. The CPD states that it is the

22   document that sets forth the plan. CDP at 1 (Dkt. 972–1 at 5). The CPD specifically states that

23   it is both a plan document and SPD. *Id.* ("This document, together with the Welfare Benefit

24   Contracts identified in Schedule A, constitute the written plan and the summary plan

25   description as required by Section 102 of [ERISA] and U.S. Department of Labor Regulation

26   Sections 2520.102–2 and 2520.102–3 for the Plan."). The CPD also expressly incorporates the

27   Welfare Benefit Contracts into the plan. *Id.* at 26 (Dkt. 678–3 at 30). It defines Welfare Benefit

28   Contract as:

1          any contractual arrangement maintained by the Company, and described on

2          Schedule A, under which group health or other welfare benefits are

3          available to Employees and their eligible dependents, including any

4          description of benefits, certificate of coverage, summary plan description,

5          subscriber agreement, evidence of coverage, or other related materials

6          relating to such benefits.

7  *Id.* Schedule A includes the BCBS of MA PPO enhanced Value Plan. *Id.* at 28 (Dkt. 678–

8  3 at 32). The CPD therefore appears to incorporate the BCBS of MA's Subscriber

9  Certificate.

10        The Subscriber Certificate contains the following language regarding assignment:

11          You cannot assign any benefit or monies due from this health plan to any

12          person, corporation, or other organization without Blue Cross and Blue

13          Shield's written consent. Any assignment by you will be void. Assignment

14          means the transfer of your rights to the benefits provided by this health plan

15          to another person or organization. There is one exception. If Medicaid has

16          already paid the health care provider, you can assign your benefits to

17          Medicaid.

18  Subscriber Certificate at 67 (Dkt. 678–3 at 77). Plaintiffs quote only the first sentence and

19  argue that "this language raises questions of fact that cannot be resolved at the pleading stage."

20  Pls.' Objs. at 106. This however is incorrect. As explained above, if an AAP contains

21  conditions like written consent, Plaintiffs need to allege in their complaint that they have

22  fulfilled those conditions. Plaintiffs do not allege that they obtained Blue Cross Blue Shield's

23  written consent.

24        The Court finds that the two above documents are plan documents and are incorporated

25  by reference into the complaint. The Court also finds that these documents contain an

26  enforceable Conditional AAP. Defendant's motion to dismiss the ERISA counts relating to

27  Patient 138 on anti-assignment grounds is GRANTED.

28

- **Patient 140**

Defendant offers the following documents for this patient: Benefits Plan (Dkt. 657–2), 2014 SPD (Dkt. 657–3), 2014 Medical and Prescription Drug Program Provisions (Dkt. 657–4), and 2014 Medical and Prescription Drug Benefits Highlights (Dkt. 657–5).

Plaintiffs have stated that these documents are the complete plan instrument. O'Connell Decl. (Dkt. 834–3) ("Chart 2"). Plaintiffs the same day however also filed an opposition stating that because the Benefits Plan incorporates documents such as instruments suspending plan provisions, terminating the plan, or amending plan documents, they "dispute whether TWC has provided a complete set of plan documents." Pls.' Opp'n to Time Warner Cable's Addendum at 10 (Dkt. 835–2). The Court need not resolve this contradiction because it finds that the Benefits Plan amends and restates the plan and is a plan document. Benefits Plan at 1 (Dkt. 657–2 at 5). The Benefits Plan contains the following language regarding assignment:

> Except to the extent provided by a Component Program, any benefit or interest available under the Plan, any right to receive payments under the Plan, and any payment made under the Plan shall not be subject to assignment or alienation, garnishment, attachment, transfer or anticipation, execution or levy, whether by the voluntary or involuntary act of any interested person under the Plan.

*Id.* at 24 (Dkt. 657–2 at 28). Plaintiffs quote the above language that it expressly authorizes assignment to providers. Pls.' Objs. at 107. The Court does not understand Plaintiffs' argument because the quoted language appears to plainly state that benefits, the right to receive payments, and payments themselves "shall not be subject to alienation . . . ." Benefits Plan at 24 (Dkt. 657–2 at 28). Plaintiffs also argue "[t]he Component Program does not expressly bar assignments to providers. ERISA provides for assignment unless assignment is specifically prohibited in a plan document. *Davidowitz v. Delta Dental Plan of California, Inc.*, 946 F.2d 1476 (9th Cir. 1991). Pls.' Objs. at 107. The Court does not understand this argument. Defendant has offered an Absolute AAP in a plan document, *Davidowitz* would therefore support Defendant's argument, and Plaintiffs have not identified any language in any other document which would contradict this language or render it unenforceable.

The Court finds that the Benefit Plan is a plan document and is incorporated by reference into the complaint. The Court also finds it contains an enforceable Absolute AAP. Defendant's motion to dismiss the ERISA counts related to Patient 140 on anti-assignment grounds is therefore GRANTED. This disposition also MOOTS Defendant's requests for transfer pursuant to 29 U.S.C. § 1132(e)(3), and dismissal pursuant to a limitation of action provision.

- **Patient 143**

Defendant offers the following document for this patient: Combined Evidence of Coverage and Disclosure (Dkt. 1005–1).

The CECD states that it "is a summary of the important terms of your health plan. The health plan contract must be consulted to determine the exact terms and conditions of coverage." CECD (Dkt. 1005–1 at 6). The Court is unwilling to incorporate a document by reference when it states that does not contain the actual terms of coverage, let alone whether it constitutes a plan document. Defendant's motion to dismiss claims relating to Patient 143 on anti-assignment grounds is therefore DENIED.

- **Patient 145**

Defendant offers the following documents: Group Contract (Dkt. 671–4 at 1–50), HSA Account Services Agreement (Dkt. 671–4 at 51–54), and 5 Benefit Booklets.

Defendant does not explain which of the attached Benefit Booklets are relevant, what the differences between them are, or even whether they are all governed by ERISA. The HSA Account Services Agreement for example states that HealthEquity does not administer HSA that are subject to ERISA. HSA Account Services Agreement at 1 (Dkt. 671–4 at 51).

The Group Contract states the following regarding assignment: "Assignment. This Contract, the right to receive benefits hereunder, and the right to receive payment for services, shall not be assigned, sublet or transferred by the Plan Sponsor, without the consent of BCBSNC." Group Contract at 18 (Dkt. 671–4 at 30). It is not clear to Court however that this language must mean that assignment of benefits by patients is prohibited, or if it only prohibits the Plan Sponsor from assigning, subletting or transferring the right to receive benefits and the right to receive payment for services.

More importantly however, this Group Contract does not appear to have been in force during the relevant period. The FAC alleges that Patient 145 began receiving treatment on or around January 9, 2015. FAC ¶ 237(b). The Group Contract states that it is effective January 1, 2015, Group Contract at Cover Page, 15 (Dkt. 671–4 at 7, 27). However, this Group Contract is signed February 11, 2015, *id.* at 20 (Dkt. 671–4 at 32), and states that it is an amendment and restatement of the previous Group Contract which went into effect on January 1, 2014 and would be automatically renewed for one year, *id.* at 1 (Dkt. 671–4 at 13). It is therefore unclear whether this document was in fact in force at the time that Patient 145 began receiving treatment (if that is even the relevant date for determining plan terms), if it is being applied retroactively, or if the previous contract was in force and/or automatically renewed.

For the remaining documents, the declaration provided by Defendant only identifies the exhibit as containing the Group Contract and two Benefit Booklets, Crist Decl. ¶ 4 (Dkt. 948), but provides no citations for the booklets, page ranges within the exhibit, or any explanation on what they are and how they are different from the three other Benefit Booklets and the HSA Account Services Agreement that were never mentioned. The Court is unwilling to wade through 6 documents over almost 350 pages that have been provided without explanation or citation. The Court therefore declines to incorporate them by reference at this stage. The Court also declines to incorporate the Group Contract because it may not have even been signed at the time that the patient received treatment.

Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 147**

Defendant offers the following documents: 2015 SPD (Dkt. 677–10), and Welfare Benefit Plan (Dkt. 937–1).

The 2015 SPD states that it is a plan document:

> This SPD contains a summary, in English, of your rights and benefits under the Cargill, Incorporated Medical Plan (the "Plan", also known as the Cargill, Incorporated Preferred Provider Organization (PPO) Health Care Plan) which is part of a larger, single plan, known as the Cargill, Incorporated Welfare Benefit Plan. This document, along with the general

1   provisions in the Cargill, Incorporated Welfare Benefit Plan, serves as the

2   plan document for the Cargill, Incorporated Medical Plan.

3   2015 SPD exhibit 10 page 1082 (Dkt. 677–10 at 3). The 2015 SPD also states that it is *not* a

4   plan document:

5   This SPD is intended to help you understand the main features of the Plan.

6   It should not be considered as a substitute for the plan document, which

7   governs the operations of the Plan. The Plan document sets forth all of the

8   details and provisions concerning the Plan and is subject to amendment. If

9   any questions arise that are not covered in this SPD or if this SPD appears

10  to conflict with the official plan document, the text of the official plan

11  document will determine how questions will be resolved. Except as they

12  may be subject to federal law, including ERISA, any questions, claims,

13  disputes, or litigation concerning or arising from the Plan will be governed

14  by the laws of the State of Minnesota.

15  2015 SPD at 97, exhibit 10 page 1188 (Dkt. 677–10 at 109). Defendant has provided no

16  explanation for how the Court should resolve this apparent contradiction. The closest

17  Defendant comes is citing to page 6 of the Welfare Benefit Plan for an incorporation clause.

18  Defs.' Revised Addendum at 56. Assuming this means page 6 according to the document's

19  pagination, this page defines the term Plan as "this written document, including Exhibits,

20  attachments and items incorporated by reference, intended to be the written plan document for

21  purposes of ERISA and the Code." Welfare Benefit Plan at 6, exhibit A page 10 (Dkt. 937–1 at

22  9). This however does not explain whether or not the SPD has been incorporated into the plan

23  as a plan document. Defendant has not identified any anti-assignment language in the Welfare

24  Benefit Plan, so the Court does not need to determine whether it is a plan document or not.

25      Because the only identified AAP is in the 2015 SPD and the 2015 SPD cannot be

26  incorporated by reference at this stage, the Defendant's motion to dismiss on anti-assignment

27  grounds is DENIED.

28

- **Patient 148**

Defendant offers the following documents: 2012 SPD (Dkt. 945–1), Summary of Benefits (Dkt. 945–2), and Administrative Services Agreement (Dkt. 945–3).

The ASA defines Group Health Plan or Plan as "[a]n employee welfare benefit plan established by the Plan Sponsor, in effect as of the Effective Date, as described in the Plan Documents, as they may be amended from time to time." ASA at 2 (Dkt. 945–3 at 3). It defines Plan Documents as "[t]he documents that set forth the terms of the Plan, and which include the Benefit Booklet." *Id.* at 3 (Dkt. 945–3 at 4). The ASA therefore appears to state that the plan was established and maintained pursuant to some other document.

Defendant claims that the Benefit Booklet referred to in the ASA means the 2012 SPD. Smith Decl. ¶ 9 (Dkt. 945). The Court would expect that if the 2012 SPD were the Benefit Booklet, it would be stated somewhere in the 2012 SPD, and countless other Defendants have produced documents which are clearly titled Benefit Booklet, yet Defendant provides no citation for its assertion that the 2012 SPD and Benefit Booklet are one and the same. In addition, the 2012 SPD states that it is a summary only, and says that the Evidence of Coverage prevails in case of a discrepancy between the two. *Id.* ¶ 7 (Dkt. 945). The Evidence of Coverage has not been provided.

Because the offered documents state that other documents are the plan documents, the Court cannot find that these documents are manifestly reflective of the operative plan terms. The Court therefore declines to incorporate any of these three documents by reference. Defendant's motion to dismiss the claims related to Patient 148 on anti-assignment grounds is therefore DENIED.

- **Patient 149**

Defendant offers the following documents: SPD (Dkt. 665–2), Health Benefits Booklet (DKt. 665–3), Health & Welfare Benefits Plan ("Wrap Document") (Dkt. 984–2), and 2014 Benefits Guide (Dkt. 984–3).

The Wrap Document appears to be the document which established and maintains the plan. Wrap Document at 1 (Dkt. 984–2 at 4) ("This Plan instrument sets forth the terms and conditions of welfare benefits coverage for Eligible Employees and their eligible Spouses and

dependents . . . ."). It incorporates the documents listed in Appendix A and Appendix B as plan documents. *Id.*

The Wrap Document contains the following AAP:

**9.6      Nonalienation of Benefits**

Except as required by applicable law, benefits payable under this Plan shall

not be subject in any manner to anticipation, alienation, sale, transfer,

assignment, pledge, encumbrance, charge, garnishment, execution or levy

of any kind, either voluntary or involuntary, including any such liability

which is for alimony or other payments for the support of a Spouse or

former Spouse, or for any other relative of the Eligible Employee, prior to

actually being received by the person entitled to the benefit under the

provisions of the Plan Instrument; and any attempt to anticipate, alienate,

sell, transfer, assign, pledge, encumber, charge or otherwise dispose of any

right to benefits payable under the Plan shall be void. None of the

Employers shall in any manner be liable for, or subject to, the debts,

contracts, liabilities, and engagements of torts of any person entitled to

benefits under the Plan.

*Id.* at 18 (Dkt. 984–2 at 21). This language constitutes an Absolute AAP. While there are other documents, the Court does not believe it needs to analyze them. This is because once the Court has found an applicable AAP in a plan document, absent another provision specifically permitting and recognizing assignment in a document whose terms would supersede the AAP in the first, the AAP will be enforceable. While Plaintiffs point to a Choice AAP in the SPD and argue it creates a question of fact, Pls.' Objs. at 116, this language would still prohibit assignment. Thus, no matter whether the Absolute or the Choice AAP is applicable, both would prohibit the patient's ERISA claims from being assigned.

The Court finds that the Health & Welfare Benefits Plan is a plan document and is incorporated by reference into the complaint. The Court also finds that it contains an enforceable Absolute AAP. Defendant's motion to dismiss the ERISA counts related to Patient 149 on anti-assignment grounds is therefore GRANTED.

- **Patients 150 & 204**

Patients 150 and 204 were enrolled in the same plan and began their treatment in 2014 and 2015 respectively. Mintzer Decl. ¶ 15 (Dkt. 677). Defendant offers the following documents: Group Insurance Plan (Dkt. 983–1), 2014 SPD (Dkt. 677–5) for Patient 150, and 2015 SPD (Dkt. 677–6) for Patient 204.

The Group Insurance Plan is the document which establishes the plan. Group Insurance Plan at i (Dkt. 983–1 at 3). It states that it contains "certain definitions and general administrative provisions that govern the Plan." *Id.* The Group Insurance Plan is therefore a plan document. Although it purports to incorporate summary plan documents, it is unclear whether the document incorporates SPDs that are not included in Attachment A. *Id.* at 1 (Dkt. 98301 at 8). The Court need not resolve this issue however, because the Group Insurance Plan contains its own AAP.

The Group Insurance Plan contains the following AAP:

> **9.11 Nonalienation of Benefits**
>
> To the extent permitted by law, the rights or interests of any Participant or his beneficiary to any benefits hereunder shall not be subject to attachment or garnishment or other legal process by any creditor of any such Participant or beneficiary, nor shall any such Participant or beneficiary have any right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits which he may expect to receive, contingently or otherwise, under this Plan, and any attempt to anticipate, alienate, commute, pledge, encumber, or assign any right to benefits hereunder shall be void. Notwithstanding the foregoing, the Plan Administer may pay Plan benefits directly to the provider of services. Such payment shall fully discharge the Plan Administrator from further liability under the Plan."

*Id.* at 24 (Dkt. 983–1 at 31). Plaintiffs only quote the phrase "the Plan Administer may pay Plan benefits directly to the provider of services" from the above section and argue that it "raises questions of fact that cannot be resolved at the pleading stage." Pls.' Objs. at 117, 168.

Plaintiffs however ignore the rest of the language in this section which contains an Absolute AAP and a Choice AAP.

The Court therefore finds that the Group Insurance Plan is a plan document and is incorporated by reference into the complaint. The Court also finds that it contains enforceable Absolute and Choice AAPs. Defendant's motion to dismiss the ERISA counts related to patients 150 and 204 on anti-assignment grounds is therefore GRANTED.

- **Patient 151**

Defendant offers the following documents: 2014 Benefits Book (Dkt. 700–1), and Health Care Program ("HCP") (Dkt. 968–1).

The Health Care Program appears to be the document that establishes the amended and restated plan. HCP at 1 (Dkt. 968–1 at 5). It defines Plan as the "PepsiCo Employee Health Care Program, as set forth herein, and as amended from time to time. The Plan includes all of the Separate Programs (and the SPDs of the Separate Programs) effective as of the applicable time." *Id.* at 8 (Dkt. 968–1 at 12). There is a definition of Separate Program, but Defendant does not appear to cite to it or explain whether the plan at issue meets the detailed criteria. *Id.* at 10 (Dkt. 968–1 at 14). This is particularly relevant because SPDs are only partially incorporated into the plan. *Id.* at 11 (Dkt. 968–1 at 15) "Only those portions of an SPD that relate to Separate Programs are incorporated herein . . . ."). Without some explanation of whether or not this plan is a Separate Program, the Court cannot determine whether the SPD is incorporated at all, and if it is, what portions of the SPD are incorporated.

The HCP also contains anti-assignment language which states:

> (f) Assignment. To the extent that a benefit is payable from a Separate Program or to the extent that an expense is eligible for reimbursement by a Separate Program, such benefit or reimbursement -
>
> (1) Shall be paid pursuant to any applicable rules and conditions established by the applicable Contract Administrator, and
>
> (2) Shall be paid to the provider that rendered the services or to the Participant, in the discretion of the applicable Contract Administrator.

> A Participant shall not have the right to assign any reimbursement or
> benefit payments under the Plan, unless otherwise allowed by applicable
> law and then only to the extent allowed by such applicable law. This
> subsection shall apply to any benefit of or eligible expense incurred by the
> Participant and/or the Participant's Dependents.

*Id.* at 34–35 (Dkt. 968–1 at 39–40). There is also a provision referencing the rules of the plan or contract administrator, but it is not clear whether that provision even covers assignment, and does not provide where the rules are actually found. *Id.* at 87–88 (Dkt. 968–1 at 91–92). In addition to (2) above which appears to require direct provider payment subject to discretion, the line after that says that Participants do not have the right to assign benefits "unless otherwise allowed by applicable law and then only to the extent allowed by such applicable law." *Id.* at 35 (Dkt. 968–1 at 40). ERISA allows for the assignment of benefits to providers, *Davidowitz*, 946 F.2d at 1481, raising questions as to whether this provision prohibits assignment of ERISA claims at all. These issues together require more briefing before this purported AAP, or one in another document, can be enforced.

For the foregoing reasons, the Court declines to incorporate these documents by reference. Defendant's motion to dismiss on anti-assignment is therefore DENIED.

- **Patient 152**

Defendant offers the following documents: Welfare Benefit Plan (Dkt. 957–1), Amendments to the Welfare Benefit Plan (Dkt. 957–2), and Benefit Booklet (957–3).

The Welfare Benefit Plan says that it prohibits assignment, but at the end of that section states ". . . the Plan Administrator may, in its discretion, permit the assignment of benefits to medical providers under any Supplement providing health or accident benefits." Welfare Benefit Plan at 17 (Dkt. 957–1 at 21). This language suggests that the Plan Administrator has been granted discretion, and having not been briefed on the topic, the Court cannot say whether such discretion is reviewable or entitles Defendant to dismissal at this stage. Even if the Welfare Benefit Plan is a plan document and incorporates the Benefit Booklet, the Benefit Booklet says that in case of conflict, the plan document controls. Benefit Booklet at 61 (Dkt.

957–3 at 64). The Benefit Booklet is also not a plan document on its own because it is also the plan's SPD. *Id.*

Because Defendant has not explained the legal significance of the language in the plan, whether it permits assignment, allows for judicial review of the plan administrator's discretion, or whether it is just a Conditional AAP, the Court cannot grand Defendant's motion at this stage. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 153**

Defendant offers the following documents: Plan of Benefits (Dkt. 721–2–4), Amended and Restated Plan (Dkt. 1014–2), and 2014 SPD (Dkt. 1014–3).

The Amended and Restated Plan appears to be the document that establishes the plan, Amended and Restated Plan at 1 (Dkt. 1014–2 at 6), and this document defines itself as the plan, *id.* 5 (Dkt. 1014–2 at 10). This means that it is a plan document. It is unclear whether it incorporates BCBSSC's Plan of Benefits or the 2014 SPD. Neither party addresses whether the Plan of Benefits is a plan document, although Defendant states that the 2014 SPD is not expressly incorporated by reference. Daniel Decl. ¶ 7 (Dkt. 1014). Since neither party addresses the issue and it does not appear necessary for the analysis, the Court will not in the first instance determine if they are also plan documents.

The Amended and Restated Plan's Article VIII is titled Assignability and states:

> Amounts payable at any time may be used to make direct payments to Physicians and Hospitals; provided, however, that except insofar as applicable law may otherwise require, no amount payable at any time under this Plan shall be subject in any manner to alienation by anticipation, sale, transfer, assignment, bankruptcy, pledge, attachment, charge, or encumbrance of any kind; and any attempt to alienate, sell, transfer, assign, pledge, attach, charge, or otherwise encumber any such amount, whether presently or hereafter payable, shall be void. The Plan shall not be liable for or subject to the debts or liabilities of any Participant, or any part thereof. If by reason of the Participant's bankruptcy or other event happening at any such time, an amount payable under the Plan would not be enjoyed by the

1    Participant, then the Plan Administrator, in its sole discretion, may

2    terminate the Participant's interest in any such amount and shall hold or

3    apply it to or for the benefit of the Participant, his or her spouse, children or

4    other Dependents, or any of them, in such manner as the Plan Administrator

5    may deem proper. Notwithstanding the foregoing, amounts payable under

6    the Plan may be assigned as provided in the Plan.

7    Amended and Restated Plan at 20–21 (Dkt. 1014–2 at 26–27). This language permits the plan

8    to pay hospitals and providers directly, but also expressly prohibits assignment. This therefore

9    functions as both Absolute and Choice AAPs. The only relevant exception is the final line,

10   which permits assignment as provided elsewhere in this document. Plaintiffs point to no other

11   language in this document which would demonstrate that they indeed received a valid

12   assignment, Pls. Objs. at 120, and the only other provision which expressly uses the word

13   assignment is for Medicaid. Amended and Restated Plan at 16 (Dkt. 1014–2 at 21).

14        The Court finds that the Amended and Restated Plan is a plan document and is

15   incorporated into the complaint by reference. The Court also finds that it contains enforceable

16   Absolute and Choice AAPs. Defendant's motion to dismiss the ERISA counts related to Patient

17   153 on anti-assignment grounds is therefore GRANTED.

18   • **Patient 156**

19        Defendant provides the following documents: Administrative Services Agreement (Dkt.

20   682–7), 2014 SPD (Dkt. 1012–2), and Benefit Booklet (Dkt. 1012–3).

21        Defendant Highmark states that it does not maintain the plan instrument for the FNB

22   Plan. Burger Decl. ¶ 12 (Dkt. 1012). The Court cannot incorporate by reference the offered

23   documents because it is not clear that they are manifestly reflective of the operative plan terms.

24   Even had Defendant Highmark not stated as such, the Court would have been unable to

25   incorporate the ASA because it is supposed to be kept confidential, except as necessary to carry

26   out the responsibilities of the agreement or required by law. ASA at 22 (Dkt. 682–7 at 22). The

27   parties address at a later stage the degree to which plan documents can otherwise be kept

28   confidential, but at this stage without being briefed the Court is unwilling to accept that a

document the parties intended to keep a document confidential is also the document the plan

sponsor intended to govern the plan and be distributed upon request. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 157**

Defendant offers the following documents: Plan Document (Dkt. 978–1), Plan Document Exhibits A & B(Dkt. 978–2), Group Contract (Dkt. 978–3), Riders (Dkt. 978–4), Plan Summary (Dkt. 978–5), and Enrollment Booklet (Dkt. 978–6).

The Plan Document appears to be the document which establishes or maintains the plan, defines itself as the Plan, and incorporates Exhibit A. Plan Document (Dkt. 978–1 at 2) ("This document [together with the contracts] listed on the Exhibit A hereto, the terms of which are incorporated herein by reference, constitutes the LeCroy Corporation Welfare Benefit Plan (the 'Plan').") . The Plan document contains the following provision regarding assignment:

> 7.3. No Alienation or Assignment. No interest in or entitlement under this Plan may be alienated, whether voluntarily or involuntarily, except upon death by will or the laws of descent and distribution. For this purpose, "alienation" includes any assignment, attachment, pledge, hypothecation, garnishment or levy whether attempted by or with the consent of the participant or a beneficiary, by operation of law, or otherwise. "Alienation" shall not include, however, the designation of a beneficiary or beneficiaries in accordance with the terms of any Contract to govern the disposition of any benefits due following the death of a participant.

*Id.* (Dkt. 978–1 at 6). This language prohibits assignment entirely and is therefore an Absolute AAP.

Defendant offers numerous other documents. However, Exhibit A incorporates contracts for medical health benefits provided by "The Connecticut General (CIGNA) Insurance Policy." Plan Document Exhibits A & B(Dkt. 978–2 at 2). There have not been any documents provided that relate to any contracts with CIGNA. The Court therefore cannot incorporate by reference any of the other documents provided, although the Court takes no opinion on whether or not they could eventually be found to be plan documents. This however does not appear to alter the status of the Plan Document.

The Court therefore finds that the Plan Document is in fact a plan document, and is incorporated by reference into the complaint. Defendant's motion to dismiss the ERISA counts related to Patient 157 on anti-assignment grounds is therefore GRANTED.

- **Patient 158**

There appears to be some confusion over whether Patient 158 was enrolled in the Simmons Welfare Benefit Plan or the Experian Information Solutions, Inc. Plan. See Pls.' Objs. at 125. The Simmons Welfare Plan says that it cannot confirm that Patient 158 was enrolled in its plan. Lisle Decl. ¶ 19 (Dkt. 682). Defendant Anthem however affirmatively states that Patient 158 was enrolled in the Experian Information Solutions, Inc. Plan. Armknecht Decl. ¶ 51 (Dkt. 1017). The Court will therefore analyze the Experian Information Solutions, Inc. Plan. The Court declines to analyze the plan documents for the Simmons Welfare Benefit Plan when the parties are not sure that there was a patient enrolled in that plan. Such an opinion could be entirely advisory and is outside the scope of the incorporation by reference doctrine.

Defendant Experian Information Solutions, Inc. Plan offers the following document: Benefit Summary Plan Description (Dkt. 1017–26)

Defendant has not identified an AAP in the offered document in its Declaration, Armknecht Decl. ¶ 52, or on Defendants' Revised Addendum. Defendant has also not provided any explanation or citations that would establish that the offered document is a plan document. In any case, the document itself says that the plan is governed by other official plan documents, meaning that this document cannot be enforced by itself as a plan document at this stage. Benefit Summary Plan Description at 1 (Dkt. 1017–26 at 7) ("Complete details of each plan or program are contained in the official plan documents and contracts that govern these plans.").

The Court therefore declines to incorporate this document by reference. Defendant's motion to dismiss on anti-assignment grounds is DENIED.

- **Patients 161, 203, & 246**

All three patients had the same employer and were enrolled in the same plan. Feinstein Decl. ¶ 5 (Dkt. 649). Defendant offers the following document: Ascension Smart Health Medical Plan (Dkt. 649–1–2).

The Ascension Smart Health Medical Plan defines itself as the Plan. Ascension Smart Health Medical Plan at 11 (Dkt. 649–1 at 17). It also appears to be the document that restates all prior plans. *Id.* at 1(Dkt. 649–1 at 7). The Medical Plan is therefore a plan document. The Medical Plan contains the following provisions related to assignment:

> 11.2 ***Anti-Assignment.*** None of the payments, benefits, rights or interest provided for under this Plan shall be subject to any claim of any creditor of any Participant in law or in equity and shall not be subject to attachment, garnishment, execution or other legal process by any such creditor; nor shall the Participant have any right to assign, transfer, encumber, anticipate or otherwise dispose of any such payments, benefits, rights or interest or their proceeds or avails; *provided, however, a Participant may authorize the Claims Administrator to pay benefits directly to the institution(s) or person(s) on whose charge a claim is based*, and the Participant may, on or after August 10, 1993, make an assignment of rights pursuant to a state plan for medical assistance approved under Title XIX of the Social Security Act. . . . .
>
> 11.4 ***Payments of Benefit.*** The Claims Administrator may pay benefits in accordance with the provisions of this Plan to the Participant, or may make payment directly to the individual(s) or institution(s) which performed the services or provided the supplies giving rise to the expenses for which benefits are being paid.

*Id.* at 81 (Dkt. 649–1 at 87) (italics added). Plaintiffs argue the italicized language shows that the plan expressly permits assignment. Pls.' Objs. at 127. The Court however does not read the language that way. The Court has explained above that plan language that permits an administrator to choose who it pays necessarily means that the benefits cannot be assigned. This language is even stronger in Defendant's favor because it only allows a patient to authorize the Claims Administrator to pay the provider directly, but authorizing something is far short of legally requiring it, and this language still prohibits assignment regardless. AUTHORIZE, Black's Law Dictionary (10th ed. 2014) ("1. To give legal authority; to

empower . . . . 2. To give legal authority; to sanction." The Court therefore interprets this language as both an Absolute AAP and a Choice AAP.

Based on the foregoing, the Court finds that the Ascension Smart Health Medical Plan is a plan document and is incorporated by reference into the complaint. The Court also finds that it contains enforceable Absolute and Choice AAPs. Defendant's motion to dismiss the ERISA counts related to patients 161, 203, and 246 on anti-assignment grounds is therefore GRANTED.

- **Patients 163 & 197**

Defendant offers the following documents:

**Patient 163**: 2012 Welfare Benefit Plan (Dkt. 969–1), First Amendment to the Welfare Benefit Plan (Dkt. 969–2), Second Amendment to the Welfare Benefit Plan (Dkt. 969–3), 2012 SPD (Dkt. 969–4), 2013 Benefit Booklet (Dkt. 701–1)

**Patient 197**: 2014 Welfare Benefit Plan (Dkt. 969–5), Third Amendment to the Welfare Benefit Plan (Dkt. 969–6), 2014 SPD (Dkt. 969–7), 2015 Benefit Booklet (Dkt. 682–11)

Defendant has provided many documents for these patients. The most important documents are the respective Welfare Benefit Plans. These documents state that they are the plan document as amended and restated. 2012 Welfare Benefit Plan at 1 (Dkt. 969–1 at 10); 2014 Welfare Benefit Plan at 1 (Dkt. 969–5 at 11). Both Welfare Benefit Plans incorporate SPDs, insurance certificate booklets, membership booklets, including the 2013 Benefit Booklet. 2012 Welfare Benefit Plan at 20, A–1 (Dkt. 969–1 at 29, 65); 2014 Welfare Benefit Plan at 26 (Dkt. 969–5 at 36). Both documents contain a conflicts provision, the 2012 Welfare Benefit Plan provides that the benefit summaries control first, then the Welfare Benefit Plan, then SPDs. 2012 Welfare Benefit Plan at 20, A–1 (Dkt. 969–1 at 29). The 2014 Welfare Benefit Plan states that the Welfare Benefit Plan controls first, then the benefit summaries, then the SPD. 2014 Welfare Benefit Plan at 26 (Dkt. 969–5 at 36).

The 2013 Benefit Booklet contains the following language regarding assignment:

> **Assignment**
>
> You authorize the Claims Administrator, on behalf of the Employer, to make payments directly to Providers for Covered Services. The Claims

Administrator also reserves the right to make payments directly to You. Payments may also be made to, and notice regarding the receipt and/or adjudication of claims, an Alternate Recipient, or that person's custodial parent or designated representative. Any payments made by the Claims Administrator will discharge the Employer's obligation to pay for Covered Services. You cannot assign Your right to receive payment to anyone else, except as required by a "Qualified Medical Child Support order" as defined by ERISA or any applicable Federal law.

Once a Provider performs a Covered Service, the Claims Administrator will not honor a request to withhold payment of the claims submitted.

The coverage and any benefits under the Plan are not assignable by any Member without the written consent of the Plan, except as provided above.

2013 Benefit Booklet at 42 (Dkt. 701–1 at 58). This document prohibits assignment without the written consent of the plan, and permits the Claims Administrator to choose to pay either the Member or the provider. This therefore appears to be a Conditional AAP and a Choice AAP. The Court need not resolve the potential conflict between the two because Plaintiffs have not alleged that the Plan ever consented in writing to the assignment.

The 2014 Welfare Benefit Plan contains the following language regarding assignment:

**10.3 Interests Not Transferable**

The interests of Covered Persons under the Plan or a Participating Benefit are not subject to the claims of their creditors and may not be voluntarily or involuntarily sold, transferred, alienated, assigned or encumbered, unless required by applicable law or authorized by an insurer. Any attempt to cause such interests to be so sold, transferred, alienated, assigned or encumbered will not be recognized, except to the extent required by applicable law.

2014 Welfare Benefit Plan at 48 (Dkt. 969–5 at 58). This language prohibits assignment entirely and is therefore an Absolute AAP.

Plaintiffs cite to the 2012 SPD for Patient 163, Pls.' Objs. at 129, and the 2015 Benefit Booklet for Patient 197, *id.* at 161. Plaintiffs however do not explain why those documents apply, or why it is ambiguous which document governs. Plaintiffs cannot pick and choose which documents they seek to enforce any more than Defendants can, the plans are governed by their written instrument. Defendant has cited to clear, if complicated, conflicts provisions that specify which documents govern in case of conflicting provisions. The Court has identified the relevant AAP language in the controlling document for each patient, and any contradictory language in subordinate documents would therefore be unenforceable.

The Court finds that the 2012 and 2014 Welfare Benefit Plans are both plan documents, and that the 2012 Welfare Benefit Plan incorporates the 2013 Benefit Booklet. The Court also finds that these three documents are incorporated by reference into the complaint. The Court finds that the 2013 Benefit Booklet contains Conditional and Choice AAPs, and the 2014 Welfare Benefit Plan contains an Absolute AAP. Defendant's motion to dismiss the claims related to patients 163 and 197 on anti-assignment grounds is therefore GRANTED.

- **Patient 165**

Defendant offers the following documents for this patient: Amended and Restated Machinist Health and Welfare Trust Agreement (Dkt. 1008–2), Summary Plan Description (Dkt. 1008–3), and Benefit Booklet (Dkt. 728–11–12).

Defendant argues that the SPD is an enforceable plan document because the SPD identifies itself as a plan document. Ekman Decl. ¶ 6 (Dkt. 1002). Defendant has not however provided any authority for the proposition that a SPD can unilaterally declare itself a plan document, especially if there are document(s) that are offered as plan documents that do not incorporate the SPD or even mention it in any way. The only reference in the SPD to identify it as an SPD is the "Continue Employer Health Plan Coverage" section among the required SPD disclosures and states:

> Continue health care coverage for Yourself, spouse, or children if there is a
> loss of coverage under the Plan as a result of a qualifying event under

1     COBRA. You or Your Beneficiaries may have to pay for such coverage.
2     Review this **Plan Document** and the documents governing the Plan for a
3     description of the rules governing Your COBRA continuation coverage
4     rights.

5  SPD at 68 (Dkt 1008–3 at 83) (emphasis added). Comparing this to the model language from
6  the relevant SPD regulation:

7     Continue health care coverage for yourself, spouse or dependents if there is
8     a loss of coverage under the plan as a result of a qualifying event. You or
9     your dependents may have to pay for such coverage. Review this **summary**
10    **plan description** and the documents governing the plan on the rules
11    governing your COBRA continuation coverage rights.

12  29 C.F.R. § 2520.102–3(t)(2) (emphasis added). This is the only reference to the SPD being a
13  document which governs the plan. It is unclear whether the SPD was ever adopted as a plan
14  document by an entity with authority to do so, and if so, it is concerning why the only reference
15  to this SPD being a governing plan document and not a summary is buried on the last page
16  surrounded by model language required by regulation. The general rule from *Amara* is that
17  SPDs summarize the plan and are not themselves part of the plan, and this single line at the end
18  of the SPD is not enough at this stage to persuade the Court otherwise.

19        Defendant also provides the Trust Agreement and argues that it is a plan document.
20  Ekman Decl. ¶¶ 7, 10 (Dkt. 1008). Defendant however does not provide citation to any relevant
21  provisions that will be necessary to evaluate the completeness of the plan instrument or the
22  validity of its terms, *see* Briefing Order at 7, and the Court will not do Defendant's job for it.

23        Defendant's final document is the Benefit Booklet. Every page of writing including the
24  first page contains a watermark with the word "DRAFT" on it. *See* Benefit Booklet (Dkt. 728–
25  11–12). The Court does not know why both parties appear not to have noticed or commented
26  on this, especially given that Defendant had an opportunity to file the new documents when
27  they filed the Trust Agreement and SPD. *See generally* Dkt. 1008.

28        For the foregoing reasons the Court declines to incorporate these documents by
   reference. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patients 167 & 169**

Defendants offer the following document:

**Patient 167**: Benefit Booklet (Dkt. 947–1).

**Patient 169**: HSA Plan Benefit Booklet (Dkt. 694 at 4).

The offered plan documents are identical in relevant portions so the Court will analyze them together. Defendants have provided declaration stating that the Benefit Booklets were the complete plan instrument for the plan at the time. Ashley Decl. ¶ 3 (Dkt. 947); Lezaja Decl. ¶ 7 (Dkt. 943). These documents however appear to be SPDs, and they suggest the existence of a separate plan documents. (Patient 167: Benefit Booklet at 152–162) (containing the information required to be in SPDs and stating "This document, together with the attached plan document, constitutes the Benefit Booklet required by ERISA."); (Patient 169: HSA Plan Benefit Booklet at 135–144, Dkt. 694 at 145–54) (same). Defendants did not state that this was a consolidated plan or cite to any provisions showing that this document was both an SPD and the only plan document. Briefing Order at 7. In addition, the documents appears to have been written by the carrier, but the carrier is only the claims administrator, (Patient 167: Benefit Booklet at 124, Dkt. 947–1 at 131); (Patient 169: HSA Plan Benefit Booklet at 114, Dkt. 694 at 124), thus raising questions about how the claims administrator could have written the sole plan documents, as well as whether these documents meets all the required elements of 29 U.S.C. 1102(b).

For the foregoing reasons, the Court declines to incorporate these documents by reference. Defendants' motion to dismiss on anti-assignment grounds is DENIED.

- **Patient 170**

Defendants offer the following documents: Wrap Document (Dkt. 1028–1), 2014 SPD (Dkt. 1028–3), Administrative Services Agreement (Dkt.1028–4), and Benefit Program Application (Dkt. 1028–5).

Unlike for Patient 36 above, Patient 170 is alleged to have begun receiving treatment on or around February 11, 2014. FAC ¶ 262. This means that the Wrap Document applies to this patient because it went into effect on January 1, 2014. Wrap Document at 1 (Dkt. 1028–1 at 2).

The Wrap Document states that it and the Welfare Program Documents constitute the

plan documents and written instrument for this benefit plan for the purposes of ERISA. Wrap Document ¶ 1.1 (Dkt. 1028–1 at 5). The Wrap Document contains a lengthy definition of Welfare Program Document. *Id.* ¶ 1.3(t) (Dkt. 1028–1 at 7). This appears to potentially include SPDs (and states that one is attached as Appendix C), as well as insurance policies and certificates of insurance and "any and all benefits books or other formal documents provided by third party administrators of any self-insured Welfare Programs." *Id.* The Wrap Document also states that in case of a conflict between the Wrap Document and the Welfare Program Document, the Wrap Document controls unless it is silent, in which case the Welfare Program Document Controls. *Id.*

The Wrap Document contains what Plaintiffs would consider a spendthrift style AAP, but which the Court has categorized as an Absolute AAP because it prohibits assignment entirely. *Id.* at 21 (Dkt. 1028–1 at 25). However, it qualifies the AAP by saying "[e]xcept as otherwise may be provided in the applicable Welfare Program Documents…." *Id.* This language would suggest that a "Nonalienation of Benefits" clause in the SPD should prevail over the Wrap Document. Unfortunately, the relevant SPD has two different AAPs, both in different sections and but under identical headings of "Assignment of Benefits."

The first AAP in the SPD (and second for this patient) states:

> Except as expressly permitted by the Plan Administrator, your benefits under the Plan cannot be used as collateral for loans or be assigned in any other way, except as required by federal law. The Plan shall not be in any manner liable for or subject to debts, contracts, liabilities or torts of any person entitled to benefits under the Plan. To the extent permitted by law, neither the benefits nor payments under the Plan will be subject to the claim of creditors or to any legal process.

2014 SPD at 62 (Dkt. 1028–3 at 64). This language is a Conditional AAP because it permits assignment only with the consent of the Plan Administrator. The second AAP in the SPD (and the third SPD provided for this patient) states:

> Unless otherwise specified in the Plan document, the plans will normally reimburse your selected Providers for services they provide to you.

1    However, this assignment is subject to the discretion of the Plan

2    Administrator. If the Plan Administrator does not accept your assignment to

3    a health care Provider, any benefits due will be paid directly to you. Your

4    right to benefits from the Plans cannot be assigned in any other way. The

5    Employer shall not be in any manner liable for or subject to the debts,

6    contract, liabilities or torts of any person entitled to benefits under these

7    Plans.

8    2014 SPD at 149 (Dkt. 1028–3 at 151). This provision appears to permit patients to assign their

9    benefits, but then gives the Plan Administrator discretion to reject assignments, subject to any

10   anti-assignment language in the Plan document. The difference between the second and third

11   AAPs above is that the second requires the Plan Administrator's consent to assign benefits, and

12   the third makes benefits freely assignable and then gives the Plan Administrator discretion to

13   not accept the assignment. In addition, the SPD that they are both in also confusingly states that

14   it is not plan document, and that in the case of discrepancy between the SPD and the Plan

15   documents, the Plan documents always govern. 2014 SPD at 1 (Dkt. 1028–3 at 2).

16        If either of the first two AAPs apply, then Defendants may be entitled to dismissal of the

17   case (unless Plaintiffs can allege that they had the Plan Administrator's consent). Defendants

18   have not briefed the effect of the third AAP, and if it applies the Court is unwilling without

19   briefing to grant a motion to dismiss on anti-assignment grounds based on a clause that

20   expressly permits assignment.

21        These three provisions in two separate documents have left the Court in a carousel of

22   confusion. The Wrap Document states SPDs are incorporated but that the Wrap Document

23   prevails. The Wrap Document has an AAP which specifically says that an AAP in an SPD will

24   prevail. The SPD says it is not a plan document, but it has two AAPs, the latter of which states

25   that any AAP in the Wrap Document will prevail. The Court makes no findings regarding what

26   any of these provisions mean or do, and instead only finds that it will exercise its discretion to

27   not incorporate by reference any of these documents and leaves it to Defendant to make its own

28   arguments about what provisions apply and what they mean. Defendant's motion to dismiss on

     anti-assignment grounds is therefore DENIED.

- **Patients 173 & 200**

Defendant offers the following documents: 2014 Member Handbook (Dkt. 920–2), 2013 SPD (Dkt. 920–3), and Summary of Material Modifications (Dkt. 920–4).

The 2014 Member Handbook states that it and the SPD are the "legal documents governing all benefits under the Plan." 2014 Member Handbook at 66 (Dkt. 920–2 at 69). The 2014 Member Handbook appears to state the benefits members are entitled to and otherwise meets the criteria for a plan document. It contains the following language regarding assignment:

> **Assignment and Attachment**
>
> No member shall have any right to assign, transfer, appropriate, encumber, commute, anticipate or otherwise alienate his or her interest in this Plan or any payments to be made thereunder; and no benefits, payments, rights or interests of a member of any kind or nature shall be in any way subject to legal process to levy upon, garnish or attach the same for payment of any claim against the member. However, benefit payments may be assigned by a member to a Network Provider of covered medical services for which the member is entitled to reimbursement under the Plan.

*Id.* at 47 (Dkt. 920–2 at 50). This language permits the assignment of benefits to a Network Provider. Plaintiffs however are not Network Providers, FAC ¶ 2, and this language prohibits assignment in all other situations. Whether this anti-assignment language is treated as a Conditional AAP where the condition is being a Network Provider, or an Absolute AAP as it regards Plaintiffs, the result is the same, this language prohibited these patients from assigning their claims to Plaintiffs.

The Court finds that the 2014 Member Handbook is a plan document that is incorporated by reference into the complaint. The Court also finds that it contains a Conditional AAP and Plaintiffs have not alleged that the condition has been satisfied. Defendant's motion to dismiss the ERISA counts related to patients 173 and 200 on anti-assignment grounds is therefore GRANTED.

- **Patient 174**

Defendant offers the following document: 2009 SPD (Dkt. 669–2).

Plaintiffs have already stated that this plan provided the complete documents. Briefing Order at 6. The document states that it serves as the written plan document and SPD, and that the Plan consists of it and its appendices which are incorporated by reference. 2009 SPD at 1 (Dkt. 669–2 at 5).

### Assignment

No Covered Person shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate any benefit payment under the Plan to a third party, and such payment shall not be subject to any legal process to levy execution upon or attachment or garnishment proceedings against for the payment of any claims. Benefit payments under the Plan may not be assigned, transferred, or in any way made over to another party by a Covered Person. Nothing contained in this Plan shall be construed to make the Plan or the Plan Sponsor liable to any third party to whom a Covered Person may be liable for medical care, treatment, or services. *If authorized in writing by a Covered Person, the Plan Administrator may pay a benefit directly to a provider of medical care, treatment, or services instead of the Covered Person as a convenience to the Covered Person*; when this is done, all of the Plan's obligation to the Covered Person with respect to such benefit shall be discharged by such payment. However, the Plan reserves the right to not honor any assignment to any third party, including but not limited to, any provider. The foregoing does not preclude any assignment of payment to Medicaid to the extent required by law. The Plan will not honor claims for benefits brought by a thirdparty; such third-party shall not have standing to bring any such claim either independently, as a Covered Person or beneficiary, or derivatively, as an assignee of a Covered Person or beneficiary.

1   2009 SPD at 54 (Dkt. 669–2 at 58) (italics added). Plaintiffs quote only the italicized language

2   and argue that this language authorizes the plan administrator to exercise discretion with

3   respect to assignment and raises questions of fact which cannot be resolved at this stage. Pls.'

4   Objs. at 140. Plaintiffs however ignore the repeated language that prohibits assignment of

5   benefits to third parties. This section prohibits the assignment of benefits, and permits but does

6   not require benefits to be paid directly to the provider, if the patient has so authorized. This

7   language therefore functions as both Absolute and Choice AAPs.

8         The Court finds that the 2009 SPD is a plan document that is incorporated by reference

9   into the complaint. The Court also finds that it contains enforceable Absolute and Choice

10  AAPs. Defendant's motion to dismiss the ERISA counts related to Patient 174 on anti-

11  assignment grounds is therefore GRANTED.

12  • **Patient 176**

13        Defendant offers the following document: 2014 SPD (Dkt. 677–7).

14        Defendant has filed a declaration saying that the SPD is the only plan instrument for its

15  medical plan for driver employees. West Decl. ¶ 2 (Dkt. 935). This declaration however does

16  not specifically identify the plan as a consolidated plan, nor does it cite to any provision in the

17  SPD which states that the SPD is also the plan document, as was required by the Court's

18  previous order. Briefing Order at 7. In addition, the Court cannot find anything in the SPD that

19  informs a reader that this is the sole plan document and not merely a summary description of

20  the plan. This is different from other consolidated plans in this case. For example the SPD for

21  Patient 68 expressly informs the reader that it is both an SPD and the plan document. Even in

22  the Glossary of Common Terms defines Plan as "[t]he plan of benefits established by the Plan

23  Administrator." 2014 SPD at 92, exhibit 7 page 872 (Dkt. 677–7 at 101). In the section on

24  ERISA Statement of Rights the SPD states that under ERISA plan participants are entitled to

25  "[o]btain, upon written request to the Plan Administrator, copies of documents governing the

26  operation of the Plan, including insurance contracts and collective bargaining agreements, and

27  copies of the latest annual report (Form 5500 Series) and updated Summary Plan Description."

28  *Id.* at 79, exhibit 7 page 859 (Dkt. 677–7 at 88). If the SPD is the only plan document, then this

    is confusing and redundant language. Of course, this language is directly from the Department

of Labor Regulation on model language to include in an SPD, but that regulation also states that items of information which are not applicable should be deleted, presumably so that SPDs do not defeat their very purpose accurately reflecting the contents of the plan. 29 C.F.R. § 2520.102-3(t)(2).

At this stage the Court cannot be certain that the SPD is manifestly reflective of the operative plan terms. The Court therefore declines to incorporate this document by reference at this stage and Defendant's motion to dismiss on anti-assignment grounds is DENIED.

- **Patient 178**

Defendant offers the following documents: Wrap Document (Dkt. 1007–2), Medical Plan (Dkt. 688–1), 2012 SPD (Dkt. 688–2), and Benefit Description (Dkt. 678–4).

The Wrap Document provided did not go into effect until January 1, 2015. Wrap Document at 1 (Dkt. 1007–2). Patient 178 is alleged to have begun treatment on or around September 24, 2014. FAC ¶ 270(b). The Court therefore cannot incorporate this document by reference for anti-assignment language. Its only purpose however was to wrap together various plans and incorporate those documents, it does not provide any substantive terms. The substantive terms of the plan are instead provided by the Medical Plan, which states that it is the document which amends and restates the specific terms of the medical plan as of January 1, 2014. Medical Plan at I–1 (Dkt. 688–1 at 6). The Medical Plan specifies that SPDs are not part of the plan, and Benefit Booklets are only part of the plan to the degree that the Medical Plan incorporates specific sections by reference. *Id.* at X–1 (Dkt. 688–1 at 51).

The Medical Plan contains the following language regarding assignment:

10.3 <u>Payment of Benefits</u>. Benefits payable under this Plan for any loss will be paid to a Covered Employee upon receipt of adequate proof of loss by him or by ills Covered Dependents. In the case of continuation coverage benefits payable pursuant to Article VI, payment shall be made to a Covered Dependent where there is no election by a Covered Employee or where there is no Covered Employee.

If any benefit under this Plan shall be payable to the estate of a Covered Employee, or to any Covered Employee who is not competent to

give a valid release, the Plan may pay such benefit to any relative by blood
or by marriage of the Covered Employee who is deemed by the Plan to be
equitably entitled thereto. Any payment made pursuant to tills provision
shall fully discharge the Plan to the extent of such payment.

No assignment of any of the benefits payable under this Plan shall be
binding on the Plan Administrator without its written consent thereto.

*Id.* This language prohibits assignment without the Plan Administrator's written consent.
Plaintiffs argue that language in the 2012 SPD gives the administrator discretion to respect
assignments, Pls.' Objs. at 144, but the quoted language appears to only refer to QMSCO
benefits, and in either case, they have not shown that the SPD is an enforceable plan document.

The Court finds that the Medical Plan is a plan document that is manifestly reflective of
the operative plan terms and is incorporated by reference into the complaint. The Court also
finds that it contains a Conditional AAP, and Plaintiffs have not alleged that they had the Plan
Administrator's written consent to the assignment. Defendant's motion to dismiss the ERISA
counts related to Patient 178 on anti-assignment grounds is therefore GRANTED.

- **Patient 184**

Defendant offers the following document: Benefit Booklet (Dkt. 660–6).

The Benefit Booklet states that it is effective October 1, 2015. Benefit Booklet (Dkt.
660–6 at 2). The FAC however alleges that Patient 184 began receiving treatment on or around
March 16, 2015. FAC ¶ 276(b). In addition, the document may be an SPD, *id.* at 51 (Dkt. 660–
6 at 56), and it is asserted to be the plan instrument, Smith Decl. ¶ 22, yet it is written Premera
for a self-funded plan, Benefit Booklet (Dkt. 660–6 at 2). The Court has been provided with no
explanation for how a self-funded plan could have no other document than something written
by the Claims Administrator, or how this document meets the requirements of a plan
instrument, 29 U.S.C. § 1102(b).

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

- **Patient 185**

Defendant offers the following documents: Employee Benefit Trust (Dkt. 991–1), and
2014 SPD (Dkt. 677–13).

1    The Employee Benefit Trust is incorporated as part of the Plans, and Plans is defined as

2  "the plans set forth on Schedule 1 attached hereto." Employee Benefit Trust at 2–3 (Dkt. 991–1

3  at 3–4). Schedule 1 states in its entirety "MDU Resources Group, Inc. Health and Welfare

4  Benefits Program." While it may be that the Employee Benefit Trust is a plan document, the

5  Court cannot find that it is manifestly reflective of the operative terms of the plan when it says

6  that it is a part of a document titled Health and Welfare Benefits Program that has not been

7  provided. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

8    • **Patient 187**

9    Defendant offers the following documents: Employee Benefit Plan (Dkt. 697–1), and

10 2015 SPD (Dkt 677–11).

11    The Briefing Order required Defendants seeking dismissal on anti-assignment grounds

12 to identify any provisions relevant to evaluating the completeness of the offered plan

13 documents or their validity. Briefing Order at 7. Defendant does not appear to have cited to any

14 provisions establishing that either of the provided documents are plan documents or

15 incorporated by plan documents. *See* Zellmer Decl. (Dkt. 967); Defs.' Revised Addendum at

16 77–78. Defendant only cites to anti-assignment language in the 2015 SPD, *id.*, but without any

17 way to determine whether the 2015 SPD has been incorporated as a plan document, the Court

18 cannot enforce it at this stage. Defendant's motion to dismiss on anti-assignment grounds is

19 therefore DENIED.

20    • **Patient 190**

21    Defendant offers the following document: Benefits Booklet (Dkt. 708–6).

22    It is unclear what documents have been provided. The provided declaration states that

23 the provided document is Benefits Booklet, Deen Decl. ¶ 9 (Dkt. 956), but it then states that the

24 Schedule of Benefits begins at page 18 of the Benefits Booklet, *id.* ¶ 10 (Dkt. 956) and quotes a

25 conflict provision that suggests the existence of two separate documents, the Plan of Benefits

26 and the Schedule of Benefits, Benefits Booklet at 34 (Dkt. 708–6 at 42) ("The payment of

27 Covered Expenses for Benefits is subject to all terms and conditions of the Plan of Benefits and

28 the Schedule of Benefits. In the event of a conflict between the Plan of Benefits and the

Schedule of Benefits, the Schedule of Benefits controls."). There is nothing in the Benefits

Booklet to identify whether the Schedule of Benefits is a separate document, just that single section of the Benefits Booklet, or how it relates to the rest of the Benefits Booklet or the referenced Plan of Benefits. *Id.* at Table of Contents (Dkt 708–6 at 3).

Because the Court cannot determine the relationship between the provided document and the referenced documents or determine whether the document provided is a plan document, the Court declines to incorporate it by reference into the complaint. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 191**

Defendant offers the following documents: Welfare Benefit Plan (Dkt. 1011–1), 2014 SPD (Dkt. 1011–2), 2015 Benefits Guide (Dkt. 1011–3), Administrative Services Agreement (Dkt. 1011–4), and Administrative Services Only Benefit Program Application (Dkt. 1011–5).

The Welfare Benefit Plan is the document that amended and restated the plan and is expressly made a plan document. Welfare Benefit Plan at 1, exhibit 1 page 4 (Dkt. 1011–1 at 5). The Welfare Benefit Plan defines the word Plan as:

> . . . the Ardent Health Services Welfare Benefit Plan as restated herein, together with any and all Group Insurance Contracts, Administrative Services Agreements, HMO Group Contracts, Self-Insured Benefit Documents and other documentation referred to in Table I hereto, and any and all amendments and supplements to any of the foregoing.

*Id.* at 4, exhibit 1 page 7 (Dkt. 1011–1 at 8). The Welfare Benefit Plan also contains more specific language regarding incorporate and conflicting provisions, stating:

> The conditions of payment, benefits, manner, and time of payment and other provisions as set forth in each applicable Group Insurance Contract, Administrative Services Agreement, HMO Group Contract, Self-Insured Benefit Document or other documentation referenced in Table I hereto, are hereby incorporated herein by reference.

*Id.* at 10, exhibit 1 page 13 (Dkt. 1011–1 at 14). Table I references Blue Cross Blue Shield of Oklahoma Medical Policy/Contract "YNS008," the same Group Number on the ASA. *Compare* Welfare benefit Plan at Table I, exhibit 1 page 26 (Dkt. 1011–1 at 27) *with* ASA at 1 (Dkt.

1011–4 at 2). The Welfare Benefit Plan's definition of Self-Insured includes "any document approved by the Employer to provide certain welfare benefits under the Plan to Employees pursuant to Article 5 of the Plan on a self-insured basis." Welfare Benefit Plan at 4 (Dkt. 1011–1 at 8). The Welfare Benefit Plan therefore expressly incorporates the ASA because it was agreed to by the employer, but it is unclear whether this provision incorporates the SPD or Benefits Guide. The 2014 SPD and 2015 Benefits Guide both expressly state that they are summaries and the formal plan documents will govern. 2014 SPD at 1 (Dkt. 1011–2 at 5); 2015 Benefits Booklet at 8 (Dkt. 1011–3 at 9).

The ASA contains the following language regarding assignment of benefits:

**SECTION 10: PAYMENT OF CLAIMS AND ASSIGNMENT OF BENEFITS**

**10.1 *Claim payment assignment***. All payments by the Claim Administrator for the benefit of any Covered Person may be made directly to any Provider furnishing Covered Services for which such payment is due, and the Claim Administrator is authorized by such Covered Person to make such payments directly to such Providers. However, the Claim Administrator reserves the right in its sole discretion to pay any benefits that are payable under the terms of the Plan directly to the Covered Person or Provider furnishing Covered Services. All benefits payable to the Covered Person which remain unpaid at the time of the death of the Covered Person will be paid to the estate of the Covered Person.

 . . . .

**10.3 *Plan coverage assignment***. Neither the Plan nor a Covered Person's claims for payment of benefits under the Plan are assignable in whole or in part to any person or entity at any time. Coverage under the Plan is expressly non-assignable or non-transferable and will be forfeited if a Covered Person attempts to assign or transfer coverage or aids or attempts to aid any other person in fraudulently obtaining coverage under the Plan. However, if the Claim Administrator makes payment because of a person's

1       wrongful use of the identification card of a Covered Person, such payment

2       will be considered a proper payment and the Claim Administrator will have

3       no obligation to pursue recovery of such payment.

4 ASA at 27–28 (Dkt. 1011–4 at 28–29). This language expressly prohibits assignment, and lets

5 the Claim Administrator in its sole discretion choose whether it pays the Covered Person or

6 Provider. These provisions therefore act as both an Absolute AAP and a Choice AAP. The

7 2014 SPD also contains Absolute and Choice AAPs. 2014 SPD at 66, exhibit 2 page 69 (Dkt.

8 1011–2 at 70). Therefore, regardless of whether the SPD is incorporated into the plan, it

9 contains the same AAPs as the ASA, which is incorporated.

10       The Court therefore finds that the Welfare Benefit Plan and Administrative Services

11 Agreement are plan documents and are incorporated by reference into the complaint. The Court

12 also finds that the plan documents contain enforceable Absolute and Choice AAPs. Defendant's

13 motion to dismiss the ERISA counts related to Patient 191 on anti-assignment grounds is

14 therefore GRANTED.

15    • **Patient 193**

16       Defendant offers the following documents: Flexible Benefits Plan (Dkt. 954–1), and

17 2015 SPD (Dkt. 954–2).

18       The Flexible Benefits Plan contains the following language regarding assignment:

19       1.09. <u>**Non-Alienation of Earned Benefits**</u>

20       Except as permitted by law, the terms of a Contract, and this Plan section,

21       no assignment of any rights or benefits arising under this Plan or any

22       component of the Plan is permitted or recognized. No rights or benefits are

23       subject to attachment or other legal or equitable process or subject to the

24       jurisdiction of any bankruptcy court. If any Participant is adjudicated

25       bankrupt or attempts to assign any benefits, then in the Sponsor's

26       discretion, those benefits cease. If that happens, the Administrator may

27       apply those benefits for that Participant, his Dependent or his Beneficiaries,

28       as the Administrator sees fit. The Sponsor is not liable for or subject to the

debts, contracts, liabilities or torts of any person entitled to benefits under the Plan.

Flexible Benefits Plan at 5 (Dkt. 954–1 at 12). Plaintiffs argue that this language, particularly the first sentence, means that assignment is permitted in this circumstance because ERISA permits assignment of benefits to a provider, no Contract has been provided, and narrowly reading the phrase "this Plan Section" would render the entire sentence meaningless. Pls.' Objs. at 157–58. The Court agrees that because ERISA permits assignment, *Davidowitz* 846 F.2d at 1478, this language is sufficiently ambiguous that the Court cannot enforce it at this stage. The Court however makes no findings regarding its meaning or whether these documents are plan documents. For the foregoing reasons, Defendant's motion to dismiss on anti-assignment grounds is DENIED.

- **Patient 195**

Defendant offers the following documents: Administrative Information Booklet (Dkt. 698–1), and Health Benefits Booklet (Dkt. 698–2).

Defendant provides a declaration that the Administrative Information Booklet is "wrap plan" which wraps together and is the plan document for various different components of the benefit plan including the health benefits plan. Vaid Decl. ¶ 5 (Dkt. 969). However, the Administrative Information Booklet says on its front cover that it is an SPD, and that the plan documents will always govern in case of any discrepancy. Administrative Information Booklet at Cover Page (Dkt. 698–1 at 2). In describing the relationship between the SPD and the plan documents it states:

> This booklet, in conjunction with each of the specific benefit booklets applicable to each component, constitutes the Summary Plan Description ("SPD") for the Plan. If there is any difference between the information contained in the individual benefit booklets or this Administrative Information booklet and the actual insurance contracts and policies or other governing Plan documents, the insurance contracts, policies and Plan documents will always govern.

*Id.* at Introduction (Dkt. 698–1 at 3). These documents therefore clearly state they are summary documents and that the plan is governed by other documents. While the declaration states that no other such documents exist, Vaid Decl. ¶ 7 (Dkt. 969), the Court cannot accept factual assertions like that at this stage, especially where they directly contradict the plain language of the documents. The Court therefore cannot incorporate by reference documents such as these which clearly state that the do not govern the plan.

The Court declines to incorporate the offered documents by reference into the complaint. Defendant's motion to dismiss on anti-assignment grounds is DENIED.

- **Patient 198**

Defendant offers the following documents: Health Plan (Dkt. 1022–1), Benefit Booklet (Dkt. 1022–2), Administrative Services Agreement (Dkt. 1022–3), and Benefit Program Application (Dkt. 1022–4).

The Health Plan is the document that amends and restates the plan, and defines itself as the plan. Health Plan at 1, 7 (Dkt. 1022–1 at 6, 12). The Health Plan contains the following language regarding assignment:

> **9.2** <u>Non-Alienation of Benefits</u>. No benefit, right or interest of any Covered Person under the Plan shall be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, seizure, attachment or legal, equitable or other process, or be liable for, or subject to, the debts, liabilities or other obligations of such person, *except as otherwise permitted by law*, or as otherwise provided in a Welfare Program.

Health Plan at 21 (Dkt. 1022–1 at 26) (italics added). Plaintiffs argue the italicized words expressly permit assignment. Pls.' Objs. at 162. The Court disagrees. Plaintiffs' interpretation would render the entire paragraph meaningless, and the phrase "except as otherwise permitted by law" indicates that assignment is prohibited except where it is required by ERISA, such as with a QMCSO, 29 U.S.C. § 1169(b). The quoted language prohibits assignment except when required by law, and is therefore an Absolute AAP. Plaintiffs have not identified any language in any other document that would contradict this language or render it ambiguous.

1  The Court finds that that the Health Plan is a plan document that is incorporated by

2  reference into the complaint. The Court also finds that it contains an enforceable Absolute

3  AAP. Defendant's motion to dismiss the ERISA counts related to Patient 198 on anti-

4  assignment grounds is therefore GRANTED.

5  • **Patient 199**

6  Defendant offers the following documents: 2015 SPD (Dkt. 677–8), and Welfare Benefit

7  Plan (Dkt. 970–1).

8  The attached declaration states that the 2015 SPD and the Welfare Benefit Plan

9  "comprise the plan instrument of the Metal-Matic, Inc. Welfare Benefit Plan relevant to this

10 action . . . ." Jackson Decl. ¶ 2 (Dkt. 970–1). As an initial matter, the FAC alleges that Patient

11 199 began treatment on or around February 23, 2015. FAC ¶ 291(b). The first line of the SPD

12 in the introduction however states "[t]his Summary Plan Description (SPD) contains a summary

13 of the Metal-Matic, Inc. Preferred Provider Organization (PPO) Health Care Plan for benefits

14 effective April 1, 2015." 2015 SPD at 1, exhibit 8 page 886 (Dkt. 677–8 at 11). Thus, contrary

15 to the provided declaration, Mintzer Decl. ¶ 29, this does not appear to be the SPD in effect

16 during the relevant time period and the Court cannot apply its terms at this stage to a patient

17 who began treatment before this document was effective. The Court therefore does not address

18 whether this SPD is incorporated or otherwise enforceable as a plan document.

19 The Welfare Benefit Plan has the word Summary on its cover. Welfare Benefit Plan

20 exhibit A page 3 (Dkt. 970–1 at 2). The next page is titled Introduction and has three sections,

21 "About this Booklet," "It's Only a Summary," and the Table of Contents. *Id.* at 1, exhibit A

22 page 4 (Dkt. 970–1 at 3). Given these section titles, it is not surprising that the "About this

23 Booklet" section states "This booklet is a summary of the Metal-Matic, Inc. Welfare Benefit

24 Plan (the 'Plan') and a brief description of your rights as a participant. Metal-Matic, Inc.

25 (Metal-Matic) sponsors this Plan for its eligible employees." *Id.* The "It's Only a Summary"

26 section states:

27  We have tried to include the information that we think is necessary for a

28  general understanding of how the Plan works. It is important to remember,

   however, that this booklet is only intended to be a summary and therefore

1                 provides only generalized information. A summary cannot deal with every

2                 conceivable set of circumstances. The Plan has been established under

3                 detailed legal documents and/or insurance contracts which control the

4                 rights of participants. If this summary is inconsistent with those documents

5                 in any way, the legal documents will nevertheless control. Copies of the

6                 legal documents or insurance contracts are available for you to review."

7 *Id.* The Welfare Benefit Plan clearly states it is only a summary and that the plan has been

8 established under detailed legal documents and/or insurance contracts which are not in front of

9 the Court.

10      Because the 2015 SPD was not in force, and the Welfare Benefit Plan states it is a

11 summary and that other documents govern, the Court cannot incorporate either of them by

12 reference into the complaint. Defendant's motion to dismiss on anti-assignment grounds is

13 therefore DENIED.

14     **•  Patient 201**

15      Defendant offers the following documents: Group Contract (Dkt. 948–2), and Benefit

16 Booklet (Dkt. 948–2).

17      Defendants do not identify in their declaration which portions of the 664 page attached

18 exhibit are the Group Contract and Benefit Booklet. Crist Decl. (Dkt. 948). Defendant notes

19 that the provided documents went into effect on October 1, 2014, *id.* ¶ 21, but the patient began

20 treatment and made the assignment of benefits on or around September 10, 2014, *id.* ¶ 18. Most

21 importantly however, Defendant "has no record of Patient 201 being enrolled in the TriNet Plan

22 as a participant or beneficiary." *Id.* The Court cannot incorporate documents by reference if

23 there is a factual dispute over whether the patient was even enrolled in the plan because it is not

24 clear that the offered plan documents form the basis of the claim. The Court cannot resolve on

25 this record whether the patient was enrolled in this plan or not, and it therefore cannot resolve

26 whether these documents would prohibit the patient from assigning benefits. Defendant's

27 motion to dismiss on anti-assignment grounds is therefore DENIED.

28     **•  Patient 207**

      Defendant offers the following document: Member Certificate (Dkt. 696–5).

Although the employer has also signed a group contract, the Member Certificate states that benefits are provided according to the terms of the Member Certificate. Member Certificate at 10 (Dkt. 696–5 at 12). The Member Certificate therefore meets the criteria above for a plan document.

The Member Certificate contains the following language regarding assignment:

**2. Assignment.**

You cannot assign any benefits under this Certificate to any person, corporation or other organization. You cannot assign any monies due under this Certificate to any person, corporation or other organization unless it is an assignment to Your Physician for a surprise bill for Covered Services provided on and after April 1, 2015. See the How Your Coverage Works section of this Certificate for more information about surprise bills. Any assignment by You other than for monies due for a surprise bill will be void. Assignment means the transfer to another person or to an organization of Your right to the services provided under this Certificate or Your right to collect money from Us for those services. However, You may request Us to make payment for services directly to Your Provider instead of You.

Member Certificate at 99 (Dkt. 696–5 at 101). It also states that the claims administrator can choose whether to pay non-participating providers directly or pay the employee:

**34. Who Receives Payment under this Certificate.**

Payments under this Certificate for services provided by a Participating Provider will be made directly by Us to the Provider. If You receive services from a Non-Participating Provider, We reserve the right to pay either You or the Provider, regardless of whether an assignment has been made.

*Id.* at 105 (Dkt. 696–5 at 107). Plaintiffs argue the second section quoted above may reserve the plan's right to pay a participant instead of a provider, but does not prohibit other rights that would accompany an assignment of benefits such as their "right to notice that their claims were denied by payment to patients." Pls.' Objs. at 170. Plaintiffs' argument appears to ignore the

first section quoted above which expressly prohibits assignment. In addition, the Court has explained above that even language reserving the plan the choice of who it pays necessarily prohibits assignment, and Plaintiffs have not identified any rights under the claims regulations when there was no denial or adverse benefits determination.

The Court finds that the Member Certificate is a plan document and hereby incorporates it by reference. The Court also finds that it contains enforceable Absolute and Choice AAPs. Defendant's motion to dismiss the ERISA counts related to Patient 207 on anti-assignment grounds is GRANTED.

- **Patient 208**

Defendant offers the following documents: Member Guide (Dkt. 1027–7), Group Contract (Dkt. 1027–8), and Benefit Program Application (Dkt. 1027–9).

Patient 208 is alleged to have begun receiving treatment from Plaintiffs on or around December 30, 2014. FAC ¶ 300b. The Group Contract provided however states that it is effective December 1, 2015. Group Contract at exhibit 8 page 1 (Dkt. 1027–8 at 2). As explained above, the Court cannot apply this document's assignment provisions retroactively.

The Member Guide defines itself as "[t]he summary of Benefits issued to a Member that describes the Benefits available under the Group Plan." Member Guide at 70 (Dkt. 1027–7 at 78). The Group Plan is defined as "[t]he Contract between Blue Cross and Blue Shield of Montana and the Group." *Id.* at 68 (Dkt. 1027–7 at 76). Group is defined as "[t]he organization, employer, or trust to which the Contract has been issued and includes the Beneficiary Members and their Family Members." *Id.* The Member guide also states "[t]his Member Guide is a summary of the Benefits available under the Group Plan. Nothing in this Member Guide will alter any of the terms, conditions, limitations, or Exclusions of the Group Plan. If questions should arise, the provisions of the Group Plan will prevail." *Id.* at exhibit 7 page 3 (Dkt 1027–7 at 4). The Member Guide therefore appears summarize the benefits under the plan, but does not suggest that it is itself part of the plan. Pursuant to *Amara*, unincorporated SPDs are not plan documents, and under the incorporation by reference doctrine documents which disclaim plan status cannot be enforced as such without being incorporated by a plan document. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 209**

Defendant offers the following documents: Wrap Health and Welfare Plan ("Wrap Plan")(Dkt. 973–1), 2012 SPD (Dkt. 973–2), 2012 Summary of Material Modifications (Dkt. 973–3), and 2013 Summary of Material modifications (Dkt. 973–4).

The Wrap Plan is the document that establishes the plan and is expressly a plan document. Wrap Plan at 1, 4 (Dkt. 973–1 at 5, 8). The Wrap Plan expressly incorporates the Component Benefits that are listed in Schedule A into the plan. *Id.* Schedule A includes the medical plan and states that "[a]ll Component Benefits are described in the applicable Summary Plan Description." *Id.* at 25 (Dkt. 973–1 at 29). The 2012 SPD is therefore incorporated into the plan as a Component Benefit.

The Wrap Plan contains an Absolute AAP except to the extent otherwise provided by Section 3.5 or a Component Benefit. *Id.* at 17 (Dkt. 973–1 at 21). Section 3.5 is titled Payment to Participant and states:

> (a) Except as otherwise provided in subsection (b) below, benefit payments under a Component Benefit shall be made to the Participant.
>
> (b) To the extent permitted under a Component Benefit, payments may be made to a third party to whom a Participant has made a valid assignment of his right to receive such payments.

*Id.* at 8 (Dkt. 973–1 at 12). Neither party has pointed to any language in a Component Benefit that is relevant to the question of assignment. Plaintiffs interpret the quoted provision above as not barring assignment, and argue that under *Davidowitz*, 946 F.2d 1476, a "failure to bar assignment constitutes permission to assign." Plaintiffs however misinterpret the provisions of the Wrap Plan because it repeatedly bars assignment. The Wrap Plan as explained above contains Absolute and We-Pay-You AAPs, the only exception is for "the extent permitted under a Component Benefit." To avail themselves of this exception, Plaintiffs would have to cite to a relevant document that fits the definition of Component Benefit above expressly permits assignment. Plaintiffs have not done so, and therefore the Wrap Plan prohibits assignment.

1   The Court finds that the Wrap Plan is a plan document and is incorporated into the

2   complaint by reference. The Court also finds that it contains enforceable Absolute and We-Pay-

3   You AAPs. Defendant's motion to dismiss the ERISA counts on anti-assignment grounds is

4   therefore GRANTED.

5   • **Patient 211**

6   Defendant offers the following documents: Member Contract and Certificate of

7   Coverage (Dkt. 696–6–7), and Wrap SPD (Dkt. 929–2).

8   The Wrap SPD was expressly adopted as a plan document by the plan sponsor. Wrap

9   SPD at 46 (Dkt. 929–2 at 56). The Wrap SPD incorporates insurance policies, booklets and

10   plan documents, (Dkt. 929–2 at 3), as well as certificates or evidences of coverage, *id.* at 17

11   (Dkt. 929–2 at 27). The Member Contract is therefore incorporated into the plan and is a plan

12   document. It contains the following language regarding assignment:

13   1. **No Assignment**. You cannot assign any benefits or monies due under the

14   Group Contract or this Certificate to any person, corporation or other

15   organization. Any assignment by you will be void. Assignment means the

16   transfer to another person or an organization of your right to the services

17   provided under this Certificate or your right to collect money from us for

18   those services.

19   Member Contract at 44 (Dkt. 696–6 at 46). This language prohibits assignment entirely and is

20   therefore an Absolute AAP.

21   The Court finds that the above documents are plan documents and are incorporated by

22   reference into the complaint. The Court also finds that they contain an enforceable Absolute

23   AAP. Defendant's motion to dismiss the ERISA counts related to Patient 211 on anti-

24   assignment grounds is GRANTED.

25   • **Patient 213**

26   Defendant offers the following documents: Certificate of Coverage for Lumenos Health

27   Savings Account (Dkt. 1017-29).

28   Defendant does not provide identify any provisions that would allow the Court to

determine whether this is a plan document or even who the employer is. Without such

-143-

1   information, the Court cannot determine whether this document forms part of the plan

2   instrument under ERISA. *See* 29 U.S.C. § 1102. The Court therefore declines to incorporate

3   this document by reference and Defendant's motion to dismiss on anti-assignment grounds is

4   DENIED.

5      • **Patient 215**

6         Defendant offers the following documents: Health and Welfare Benefit Plan (Dkt. 964–

7   1), and Medical Benefit Booklet (Dkt. 964–2).

8         The Health and Welfare Benefit Plan was adopted by the employer to meet the

9   requirements of ERISA and is the plan document for the plan. Health and Welfare Plan at 1

10   (Dkt. 964–1 at 6). It incorporates Benefit Programs by reference, but the Health and Welfare

11   Benefit Plan controls unless it specifically indicates that the Benefit Program documents

12   control. *Id.* The Health and Welfare Benefit Plan states that "[a] Participant's benefits under the

13   Plan may not be assigned or alienated." *Id.* at 9 (Dkt. 964–1 at 14). The Court does not need to

14   address the Medical Benefit Booklet because the Health and Welfare Benefit Plan is a plan

15   document that prevails in case of conflict with other plan documents, and nothing in the

16   provision prohibiting assignment indicates that an AAP in a Benefit Program document would

17   prevail. Analyzing the Medical Benefit Booklet is therefore unnecessary to establishing the

18   applicable AAP for this plan.

19         The Court finds that the Health and Welfare Benefit Plan is a plan document that is

20   incorporated by reference into the complaint. The Court also finds that it contains an

21   enforceable Absolute AAP. Defendant's motion to dismiss the ERISA counts related to Patient

22   215 is therefore GRANTED.

23      • **Patient 221**

24         Defendant offers the following document: Health Care Certificate/SPD (Dkt. 677–9).

25         Although the document is titled Health Care Certificate, exhibit 9 page 978 (Dkt. 677–9

26   at 1), both declarations identify it as an SPD. Mintzer Decl. ¶ 37 (Dkt. 677); Brandt Decl. ¶ 2

27   (Dkt. 986). The Brandt Decl. states that this SPD "is the only plan instrument for the employee

28   benefits plan at issue." *Id.* ¶ 2 (Dkt. 986). This however is not sufficient to comply with the

   Court's earlier order. The Briefing Order required parties with consolidated SPDs to

specifically identify themselves as such and cite to the relevant portions of the SPD, neither of which was done here.

This document appears to use language similar if not identical to many parts the document for Patient 176, above. Indeed, in the section of ERISA Statement of Rights it contains the same model language, but has replaced the term Summary Plan Description with Certificate of Coverage. This suggests that this certificate is the SPD for the plan (without any kind of showing post-*Amara* that this document contains the plan terms and does not merely summarize them), and its drafters either wrote a separate plan document or did not delete inapplicable information as they were supposed to. *See* 29 C.F.R. § 2520.102-3(t)(2). Regardless, because the Court cannot be certain that this document is manifestly reflective of the operative plan terms, the Court will decline to incorporate it by reference at this stage. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 222**

Defendant offers the following documents: Wrap Plan (Dkt. 944–1), Health Component Plan (Dkt. 944–2), and 2012 SPD (Dkt. 944–3).

The 2012 SPD contains the following language regarding assignment:

> **Payment to Providers**. The benefits of this *plan* will be paid directly to *contracting hospitals*, *participating providers*, *CME* and medical transportation providers. Also, *non-contracting hospitals* and other providers of service will be paid directly when *you* assign benefits in writing. If *you* are a MediCal member and you assign benefits in writing to the state Department of Health Services, the benefits of this *plan* will be paid to the state Department of Health Services. These payments will fulfill the *plan's* obligation to you for those covered services.

2012 SPD at 42 (Dkt. 944–3 at 47). It however also states:

> **No Assignment**
>
> No benefit under the *plan* may be voluntarily or involuntarily assigned or alienated. Notwithstanding the foregoing, the *plan* will pay benefits in

1

2

3

> accordance with the terms of a Qualified Medical Child Support Order
> (*QMCSO*). See HOW COVERAGE BEGINS AND ENDS for more
> information regarding *QMCSOs*.

4 *Id.* at 95 (Dkt. 944–3 at 100). Defendant provides a declaration stating that this document is

5 part of the plan instrument. Anderson Decl. ¶ 4 (Dkt. 944). Defendant has not provided any

6 clear conflicts clause that would demonstrate that this document does not provide the operative

7 plan terms, or explained the tension between the two quoted provisions above. The Court

8 makes no findings regarding what documents are plan documents or the meaning of the quoted

9 provisions and declines to incorporate the documents by reference where they may permit

10 assignment. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

11 • **Patient 228**

12

13     Defendant offers the following documents: Health Certificate (Dkt. 1017–30), and Fully

14 Insured Master Contract ("Master Contract") (Dkt. 1036–2).

15     Defendant points to the Master Contract's integration provisions, Armknecht Decl. ¶ 5

16 (Dkt. 1036), but do not explain why the Master Contract assumes that there are other plan

17 documents. Master Contract at 1 (Dkt. 1036–2 at 164) (defining Group Health Plan or Plan as

18 "A benefits plan established by the Employer as described in the plan documents, which

19 includes the Booklet."). The Master Contract also permits Anthem to disclose personal health

20 information after the Employer certifies that its plan documents comply with the privacy

21 requirements of HIPAA. *Id.* (Dkt. 1036–2 at 173). The Master Contract expressly states that the

22 employer's plan has been established by other documents, and thus the Court cannot

23 incorporate these documents by reference at this stage. Defendant's motion to dismiss on anti-

24 assignment grounds is therefore DENIED.

25 • **Patient 232**

26

27     Defendant offers the following documents: 2011 SPD (Dkt. 942–1), and Benefit Booklet

28 (Dkt. 942–2).

Defendant has not provided any citations to support that the 2011 SPD is a plan document. The 2011 SPD does state that it together with the Evidence of Coverage, plan summaries, enrollment announcements and "other communications provided by Company" are "intended to comply with Department of Labor requirements and the disclosure requirements of the Employee Retirement Income Security Act of 1974 (ERISA)." 2011 SPD at 4 (Dkt. 942–1 at 8). An SPD complying with ERISA's disclosure requirements however is likely referring to the SPD disclosure requirements. 29 U.S.C. § 1024(b). The 2011 SPD also refers to a Master Policy, stating:

> This document describes your benefits under the Aerospace Health and
> Welfare Plans. It is not a certificate. If any conflict should arise between the
> content of this description and the master policies or if any point is not
> covered, the terms of the master policies will govern in all cases. The
> master policies are available for inspection during regular business hours in
> the Aerospace Employee Benefits Department. To review the plan
> documents or to obtain more information, call the Employee Benefits
> Department at 310.336.5107.

2011 SPD at 26 (Dkt. 942–1 at 30). The Benefit Booklet similarly confirms the existence of other plan documents. Benefit Booklet at 146 (Dkt. 942 at 153) ("The plan document and this booklet entitled 'Benefit Booklet,' contain information on reporting claims, including the time limitations on submitting a claim."). Absent any explanation regarding these referred to plan documents or whether the offered documents are plan documents, the Court cannot incorporate these documents by reference. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 234**

Defendant offers the following document: Benefit Booklet (Dkt. 660–7).

Defendant identifies the offered document as "Plan Booklet," Smith Decl. ¶ 20 (Dkt. 660), but the document identifies itself as the Benefit Booklet, Benefit Booklet at Introduction (Dkt.660–7 at 2).

The Benefit Booklet appears to contain language identical to the language required to be in SPDs. *Compare* Benefit Booklet at 51–52 (Dkt. 660–7 at 58–59) *with* 29 C.F.R. § 2420.102–3. The Benefit Booklet also states that it is a self-funded plan, and Premera is the Claims Administrator. Benefit Booklet at Introduction (Dkt. 660–7 at 2). Defendant provides a declaration stating:

> To the best of my knowledge, the STCU Plan does not maintain a separate plan instrument or SPD. To the best of my knowledge, the Benefits Booklet . . . constitutes all of the relevant plan documents that relate to the payment of benefits for healthcare services, and is the plan instrument with respect to healthcare benefits, in effect at the time Patient 184 allegedly received services from one or more of the Plaintiffs.

Smith Decl. ¶ 26 (Dkt. 1013). The Court assumes this reference to Patient 184 is a typo because Patient 184 was not enrolled in the STCU plan, and patient is discussed in above this section which addresses the document for Patient 234. If this document is the sole plan document and SPD, Defendant did not comply with the Briefing Order and identify it as such and cite to the relevant portions of the document, Briefing Order at 7, and the Court has not been given an explanation for how a self-funded plan, Benefit Booklet at Introduction (Dkt.660–7 at 2), can have its only plan document written by the claims administrator.

For the foregoing reasons, the Court declines to incorporate the Benefit Booklet by reference and Defendant's motion to dismiss on anti-assignment grounds is DENIED.

- **Patients 235 & 249**

Defendant offers the following documents: 2003 SPD (Dkt. 995–1), Administrative Services Agreement (Dkt. 995–2), Revised Eighth Amendment to the 2003 SPD (Dkt. 995–3), and 2014 SPD with Notice of 2016 Material Modification ("2014 SPD") (Dkt. 995–4).

It is unclear what relevance the first three documents have to this case. Patient 235 began treatment on or around February 10, 2015, FAC ¶ 327(b), and Patient 249 began receiving treatment on or around February 17, 2015, FAC ¶ 341(b). The Court therefore does not understand the relevance of the documents issued before the 2014 SPD. The 2014 SPD also

1  states there is a separate plan document. 2014 SPD at i (Dkt. 995–4 at 2) ("There is a separate

2  Plan Document which describes in more detail your eligibility to participate and the benefits

3  you will receive under the Plan. Only the Trustees are authorized to interpret the Plan and not

4  any Employer or Union representative. This Plan Document is available at the Fund Office for

5  your review."). Defendant provides a declaration stating that the Fund has not finalized the Plan

6  Document, Amelung Decl. ¶ 8 (Dkt. 995), but the Court is unwilling to accept such a

7  declaration of fact at this stage. Defendant has not provided any citation or argument that would

8  allow the Court to find that the SPD is a plan document itself no matter what SPD incorporation

9  rules post-*Amara* the Court adopts, and Defendant's factual assertion necessarily means that the

10  SPD is wrong when it says that the Plan Document is available for your review.

11  In addition, the 2014 SPD as originally issued did not contain language prohibiting

12  assignment of medical benefits to providers, but on January 27, 2016 Defendant issued a Notice

13  of Material Modification indicating that "details on designating an Authorized Representative

14  (as stated in the current 2003 SPD/Plan Document) were inadvertently omitted." 2014 SPD,

15  exhibit 4 page 186 (Dkt. 995–4 at 69). Defendant originally provided this document by way of

16  a declaration signed January 22, 2016, Currey Decl. at 5 (Dkt. 662), as part of this Motion,

17  which was filed January 25, 2016. Mot. (Dkt. 637). This means that Defendant wrote an

18  amendment to an alleged plan document well after litigation had already started, potentially

19  informed the Court about the amendment before plan members, sought dismissal based on

20  provisions not yet in effect, and filed declarations that appear to misstate whether the provisions

21  were in the document at all, or even were at the time of treatment, Currey Decl. ¶ 14 (Dkt. 662);

22  Amelung Decl. ¶ 10 (Dkt. 995).

23  For the foregoing reasons, Defendant's motion to dismiss on anti-assignment grounds is

24  DENIED.

25  • **Patient 240**

26  Defendant offers the following documents: Health Certificate of Coverage (Dkt. 1017–

27  32), and Fully Insured Master Contract ("Master Contract") (Dkt. 1017–33).

28  The Master Contract integrates many other documents including addenda, endorsements,

schedules, the employer's application, Anthem's policies, guidelines, practices and procedures,

and the Certificate of Coverage. Master Contract at 1 (Dkt. 1017–33 at 1). This document meets the criteria for a plan document because it integrates the document that provides benefits, as well as describing the funding for the plan and the allocation of responsibilities between the employer and Anthem. The Health Certificate of Coverage contains the following language regarding assignment:

> **Payment of Benefits**
>
> *You authorize Us to make payments directly to Providers for Covered Services*. Payments may also be made to, and notice regarding the receipt and/or adjudication of claims sent to, an Alternate Recipient (any child of a Subscriber who is recognized, under a Qualified Medical Child Support Order (QMSCO), as having a right to enrollment under the Group's Contract), or that person's custodial parent or designated representative. Any payments made by Us will discharge Our obligation to pay for Covered Services. *You cannot assign your right to receive payment to anyone else, except as required by a "Qualified Medical Child Support Order" as defined by ERISA or any applicable state law.*
>
> *Once a Provider performs a Covered Service, We will not honor a request for Us to withhold payment of the claims submitted.*

Health Certificate of Coverage at M–88 (Dkt. 1017–32 at 91) (italics added). Plaintiffs quote only the italicized language and emphasize the phrase "to anyone else" to show that this language expressly permits assignment. Pls.' Objs. at 200. By omitting the sentences in between however, Plaintiffs have removed the sentences which show that the "anyone else" more naturally refers to an Alternate Recipient's custodial parent or designated representative, and not Providers. Because this language permits payment directly to providers without assignment and prohibits assignment except for certain circumstances not relevant here, it functions as both Absolute and Choice AAPs.

The Court finds that the Health Certificate of Coverage and Fully Insured Master Contract are integrated plan documents that are incorporated by reference into the complaint. The Court also finds that it contains enforceable Absolute and Choice AAPs. Defendant's

1   motion to dismiss the ERISA counts related to Patient 240 on anti-assignment grounds is

2   therefore GRANTED.

3   • **Patient 242**

4   Defendant offers the following documents: Employee Benefit Plan (Dkt. 1032–1), 2015

5   SPD (Dkt 1032–2), and Administrative Services Agreement (Dkt. 1032–3).

6   The Employee Benefit Plan is the document that established, amended, restated, and is

7   defined as the plan. Employee Benefit Plan at i, 8, 11 (Dkt. 1032–1 at 3, 16, 19). The Employee

8   Benefit Plan incorporates Component Program Documents into the plan, but states that it will

9   prevail in case of conflict unless it specifically provides otherwise. *Id.* at 10 (Dkt. 1032–1 at

10  18). Component Program Documents are "The written documents (i.e., insurance policies,

11  HMO contracts, summary plan descriptions, pamphlets and brochures) setting forth the terms of

12  the applicable Component Program, the provisions of which are incorporated herein by this

13  reference." *Id.* at 2 (Dkt. 1032–1 at 10). This would clearly incorporate the 2015 SPD.

14  Defendant identifies anti-assignment language in the Employee Benefit Plan which

15  states that assignment is prohibited, Jones Decl. ¶ 6 (Dkt. 1032), but Defendant does not

16  explain the language in the Payment of Benefits section that appears to specifically

17  acknowledge assignment in language similar to a Choice AAP. Employee Benefit Plan at 52

18  (Dkt. 1032–1 at 60). This provision however may only apply in the absence of such terms in the

19  Component Program, *id.*, but the 2015 SPD expressly permits assignment, 2015 SPD at 232

20  (Dkt. 1032–2 at 233) ("We will recognize any assignment you make under this policy, provided

21  it is duly executed, and a copy is on file with us. Neither we, nor the Employer assume

22  responsibility for the validity or effect of an assignment.").

23  The Court cannot incorporate an anti-assignment provision when this language has not

24  been addressed and may permit assignment. Defendant's motion to dismiss on anti-assignment

25  grounds is therefore DENIED.

26  • **Patient 243**

27  Defendant offers the following documents: 2015 Benefits Guide (Dkt. 966–1), Medical

28  Benefit Booklet (Dkt. 966–2), and Summary of Benefits and Coverage (Dkt. 966–3).

The 2015 Benefits Guide wraps together numerous components of the employee welfare benefit plan, Drew Decl. ¶ 4 (Dkt. 966), with the Medical Benefit Booklet providing the specific benefit details for medical coverage , Medical Benefit Booklet at 2, 80–81 (Dkt. 966–2 at 3, 81–82). The Medical Benefit Booklet contains the following language regarding assignment:

> **Assignment**
>
> You authorize the Claims Administrator, on behalf of the Employer, to make payments directly to Providers for Covered Services. The Claims Administrator also reserves the right to make payments directly to You. Payments may also be made to, and notice regarding the receipt and/or adjudication of claims, an Alternate Recipient, or that person's custodial parent or designated representative. Any payments made by the Claims Administrator will discharge the Employer's obligation to pay for Covered Services. You cannot assign Your right to receive payment to anyone else, except as required by a "Qualified Medical Child Support Order" as defined by ERISA or any applicable Federal law.

*Id.* at 50 (Dkt. 966–2 at 51). This language gives the Claims Administrator a choice in who it pays regardless of assignment, and generally prohibits assignment. It therefore functions as Absolute and Choice AAPs.

The Court finds that the 2015 Benefits Guide and Medical Benefit Booklet are plan documents that are incorporated by reference into the complaint. The Court also finds that the plan documents contain enforceable Absolute and Choice AAPs. Defendant's motion to dismiss the ERISA counts related to Patient 243 on anti-assignment grounds is therefore GRANTED.

- **Patient 245**

Defendant offers the following documents: Benefit Booklet (Dkt. 1033–1), Welfare Benefit Plan and SPD (Dkt. 1033–2), and Administrative Services Agreement (Dkt. 1033–3).

The Welfare Benefit Plan states that it is the document which consolidated and maintains the employer's various health and welfare plans into a single wrap or umbrella plan. Welfare Benefit Plan and SPD at 2 (Dkt. 1033–2 at 4). The document however says that it is

effective January 1, 2016. *Id.* The FAC alleges that Patient 245 began receiving treatment on or around February 6, 2015. FAC ¶ 337(b). As explained above, the Court cannot apply this document's provisions to assignments that took place before it went into effect. The Court therefore cannot examine the other documents that may have been incorporated by the Welfare Benefit Plan and SPD. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 247**

Defendant offers the following documents: Declaration of Trust (Dkt. 963–1), Master Contract (Dkt. 963–2), and Health Plan Document (Dkt. 963–3).

The Health Plan Document appears to be the document which establishes the plan, and incorporates component program documents and the trust document. Health Plan Document at 1, 2, (Dkt. 963–3 at 5–6). The Health Plan Document prohibits assignment, *id.* at 8 (Dkt. 963–3 at 12) ("The rights of a Participant under the Plan and the Plan benefits to which he is entitled, including the right to assert any cause of action with respect thereto, are personal to the Participant and shall not be subject in any manner to anticipation . . . ."), but gives the Plan the option or right to pay a provider directly if the Participant has so authorized, *id.* at 8–9 (Dkt. 963–3 at 12–13). This language permits but does not require the Plan to pay the provider, and expressly prohibits assignment, and therefore functions as Absolute and Choice AAPs. Plaintiffs do not point to any other provisions in any document that would undermine this conclusion. Pls.' Objs. at 207.

The Court finds that the Health Plan Document is a plan document that is incorporated by reference into the complaint. The Court also finds that it contains enforceable Absolute and Choice AAPs. Defendant's motion to dismiss the ERISA counts related to Patient 247 on anti-assignment grounds is therefore GRANTED.

- **Patient 250**

Defendant offers the following documents: Preferred Provider Plan of Benefits (Dkt. 721–5), Health and Welfare Plan (Dkt. 917–2), and 2015 SPD (Dkt. 917–3).

1    The Health and Welfare Plan is the document which established, amends, and restates

2    the plan. Health and Welfare Plan at 1 (Dkt. 917–2 at 4). It contains the following language

3    regarding assignment

4              **Section 11.02 <u>No Assignments.</u>** The right of any Participant to receive any

5              benefits under the Plan shall not be subject to any claims by any creditor of

6              or claimant against the Participant; and any attempt to reach such amounts

7              by any such creditor or claimant, or any attempt by the Participant to confer

8              on any such creditor or claimant any right or interest with respect to such

9              amounts, shall be null and void, except as provided in Section 609 of

10             ERISA with respect to a qualified medical child support order.

11   *Id.* at 15 (Dkt. 917–2 at 18). Plaintiffs state that they were unable to find any provision which

12   expressly and unambiguously prohibited assignment, but they do not address why the above

13   language prohibiting Participants from conferring any right or interest to creditors or claimants

14   would not apply to them. Pls.' Objs. at 210. This language appears to prohibit assignment in all

15   circumstances except a QMCSO, and is therefore an Absolute AAP. The Court does not need to

16   evaluate the other documents provided because it has determined that there is an AAP in a plan

17   document that is manifestly reflective of the operative plan terms, and Plaintiffs have not

18   identified any provision in any other document which would be relevant to this analysis.

19        The Court finds that the Health and Welfare Plan is a Plan Document that is

20   incorporated by reference into the complaint and contains an enforceable Absolute AAP.

21   Defendant's motion to dismiss the ERISA counts related to Patient 250 on anti-assignment

22   grounds is therefore GRANTED.

23        • **Patient 253**

24        Defendant offers the following documents: 2013 Group Contract (Dkt. 662–2), 2014

25   Group Contract (Dkt. 662–3), 2013 Health Benefits Certificate (Dkt. 958–1), and 2014 Health

26   Benefits Certificate (Dkt. 958–2).

27        The Health Benefits Certificates may be SPDs because they contain verbatim language

28   from the SPD regulation. *Compare* 2013 Health Benefits Certificate at 93–95 (Dkt. 958–1 at

96–98) *with* 29 C.F.R. § 2520.102-3(t). The 2013 Health Benefit Certificate also refers to other

plan documents which the employer must amend to permit the disclosure of health information. 2013 Health Benefit Certificate exhibit 1 page 160 (Dkt. 958–1 at 155). The declarations provided by Defendant do not cite to the Group Contracts or attempt to demonstrate that they are plan documents. *See* Robertson Decl. (Dkt. 958); Currey Decl. (Dkt. 662).

Because Defendant has not demonstrated that there is an AAP in plan document that is manifestly reflective of the operative plan terms, the Court cannot incorporate these documents by reference. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 254**

Defendant offers the following documents: Health and Welfare Benefits Plan (Dkt. 941–1), Amendment to the Health and Welfare Benefits Plan (Dkt. 941–2), and Benefits Book (Dkt. 941–3).

The Health and Welfare Benefits Plan is the document which amends and restates the plan and defines itself as the Plan. Health and Welfare Benefits Plan at 1, 4 (Dkt. 941–1 at 5, 8). The Health and Welfare Plan contains the following language regarding assignment:

> **11.6   No Assignments.** None of the payments, benefits or rights of any Participant or his or her beneficiary shall be subject to any claim of any creditor, and, in particular, to the fullest extent permitted by law, all such payments, benefits and rights shall be free from attachment, garnishment, trustee's process or any other legal or equitable process available to any creditor or such Participant or his or her beneficiary, and no Participant or beneficiary shall have the right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or payments which he or she may expect to receive, contingently or otherwise, under this Plan, except the right to designate a beneficiary or beneficiaries as hereinbefore provided.

*Id.* at 34 (Dkt. 941–1 at 38). Plaintiffs assert this language is "Spendthrift only," Pls.' Objs. at 214, but the Court has rejected the distinction they attempt to create. This language states that no Participant or beneficiary shall have the right to assign any benefits or payment, which means it is an Absolute AAP.

1       The Court finds that the Health and Welfare Benefits Plan is a plan document that is

2   incorporated by reference into the complaint. The Court also finds that it contains an

3   enforceable Absolute AAP. Defendant's motion to dismiss the ERISA counts related to Patient

4   254 on anti-assignment grounds is therefore GRANTED.

5   • **Patient 255**

6       Defendant offers the following documents: Wrap Document (Dkt. 1015–2), and 2015

7   SPD (Dkt. 1015–2).

8       The Wrap Document is the document that amends and restates the plan. Wrap Document

9   at 1 (Dkt. 1015–2 at 6). Defendant however has not shown that the SPD is incorporated into the

10  plan. The Court generally cannot enforce an SPD at this stage unless the SPD has been

11  incorporated by a plan document. The Wrap Document incorporates the component documents

12  listed in Appendix I, but this SPD is not listed there. *Id.* at A–1 (Dkt. 1015–2 at 53). Defendant

13  does not cite to any anti-assignment language in the Wrap Document. Defs.' Revised

14  Addendum at 108. While the 2015 SPD may be shown to be a plan document at a later stage,

15  the Court cannot incorporate it by reference without some sort of showing that it is not merely a

16  summary of the terms. Defendant's motion to dismiss on anti-assignment grounds is DENIED.

17  • **Patient 256**

18      Defendant offers the following documents: Group Contract (Dkt. 1013–5), and Benefit

19  Booklet (Dkt. 660–8).

20      Patient 256 began is alleged to have begun receiving treatment on or around February

21  18, 2015. FAC ¶ 348(b). Both of the offered documents went into effect on December 1, 2015.

22  Group Contract at 1 (Dkt. 1013–5 at 2); Benefit Booklet at Introduction (Dkt. 660–8 at 2). As

23  explained above, the Court will not at this stage incorporate by reference documents which

24  were not yet valid without briefing on the parties on whether these documents can retroactively

25  prohibit assignment. Defendant's motion to dismiss on anti-assignment grounds is therefore

26  DENIED.

27  • **Patient 257**

28      Defendant offers the following documents: 2014 Combined Evidence of Coverage and

Disclosure (Dkt. 663–1), 2015 Combined Evidence of Coverage and Disclosure (Dkt. 993–1),

Trust Agreement (Dkt. 993–2), Group Benefit Agreement (Dkt. 993–2), and 1996 Group Benefit Agreement (Dkt. 993–2).

Defendant does not argue that the 1996 Group Benefit Agreement is a plan document and instead provides it to explain why there is no Group Benefit Application. Keller Decl. at 9 (Dkt. 993). The Trust Agreement prohibits assignment "by any person except as permitted by ERISA." Exhibit B at 159 (Dkt. 993–2 at 6). As Plaintiffs point out, ERISA permits the assignment of benefits to providers who provided the medical service. Pls.' Objs. at 217. Defendant concedes that the Trust Agreement is plan document, Keller Decl. ¶ 9 (Dkt. 993), and has provided no conflicts clauses that would show whether its terms are the operative plan terms regarding assignment. The Court will not incorporate these documents where they may permit assignment of benefits to providers. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 259**

Defendant offers the following documents: Administrative Services Agreement (Dkt. 980–1), Benefits Booklet (Dkt. 980–2), Summary of Benefits and Coverage (Dkt. 980–3), and Benefits Program Application (Dkt. 980–4).

The ASA contains the following language regarding the plan instrument:

> **RECITALS:**
>
> WHEREAS, the Employer's Group Health Plan has established and adopted an employee welfare benefit plan ("Plan") as described in its plan document, which shall be provided by the Employer to the Claim Administrator;
>
> . . . .
>
> The Employer hereby acknowledges (i) that an employee welfare benefit plan must be established and maintained through a separate plan document which may include the terms of this Agreement or incorporate its terms by reference, and (ii) an employee welfare benefit plan document may provide for the allocation and delegation of responsibilities thereunder. However, notwithstanding anything contained in the Plan or any other employee

1                     welfare benefit plan document of the Employer, the Employer agrees that

2                     no allocation or delegation of any fiduciary or non-fiduciary responsibilities

3                     under the Plan or any other employee welfare benefit plan of the Employer

4                     is effective with respect to or accepted by the Claim Administrator.

5 ASA at 1, 10 (Dkt. 980–1 at 1, 10). In the quoted section above Defendant acknowledges that

6 the plan is established and maintained by the employer through a separate document the Claim

7 Administrator does not have. None of the documents provided by Defendant fit that

8 description. Every page of the ASA also states that the document is "Proprietary Information,"

9 and that the document is "[n]ot for use or disclosure outside Claim Administrator, Employer,

10 their respective affiliated companies and third party representatives except under written

11 agreement." *See generally* ASA (Dkt. 980–1). This suggests another reason that this document

12 is not a plan document, because as explained above, confidential documents conflict with

13 ERISA's mandatory disclosure requirements.

14         For the foregoing reasons, Defendant's motion to dismiss on anti-assignment grounds is

15 DENIED.

16        • **Patients 260**

17         Defendant offers the following documents: Program of Insurance Benefits (Dkt. 682–

18 15–16), and Administrative Services Agreement (Dkt. 682–14). Although Defendant's Revised

19 Addendum identifies the Lisle Declaration as being at Dkt. 882, Defs.' Revised Addendum at

20 114, the Court believes this is a typo and is instead supposed to be Dkt. 682.

21         The provided ASA states "[t]his Agreement is CONFIDENTIAL and PROPRIETARY

22 and should not be disclosed to any third party without prior, written consent of Highmark Inc."

23 ASA at Cover (Dkt. 682–14 at 1). Every page has a watermark with the word

24 "CONFIDENTIAL" on it. *See generally* ASA (Dkt. 682–14). The ASA also appears to assume

25 that the plan has already been established and maintained pursuant to other document. ASA at

26 3, 5 (Dkt 682–14 at 3, 5). Defendants have also not identified any anti-assignment language in

27 the Program of Insurance Benefits.

28         The Court therefore declines to incorporate by reference the ASA. It is marked

confidential and proprietary, and appears to assume the existence of other plan documents,

either of which is enough to suggest that the sponsor did not intend for this document to contain governing terms of the plan. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

- **Patient 261**

Defendant offers the following documents: Wrap Plan Document (Dkt. 693–2), Benefit Booklet (Dkt. 693–3–4), and an Administrative Services Agreement (Dkt. 693–5).

The Wrap Plan Document expressly states that it is the document which amends and restates the plan, Wrap Plan Document at 1 (Dkt. 693–2 at 5), is a consolidated plan because it is both the plan document and SPD, *id.* at Cover (Dkt. 693–2 at 2), and incorporates Component Benefit Programs listed in Schedule A and their respective documents, *id.* at 1 (Dkt. 693–2 at 5). Schedule A incorporates any document describing the benefits provided by BlueCross BlueShield of Delaware Blue Choice PPO. *Id.* at A–1 (Dkt. 693–2 at 64). Plaintiffs appear to agree that the Wrap Plan Document is a plan document. Opp'n. to Bayhealth at 2–4 (Dkt. 835–5 at 3–5).

The Wrap Plan document contains the following language regarding assignment:

**11.2. Assignment of Benefits.**

Except as may otherwise be required by applicable law, or as otherwise specifically provided in the Plan, no amount payable at any time under the Plan shall be subject in any manner to alienation by anticipation, sale, transfer, assignment, bankruptcy, pledge, attachment, charge or encumbrance of any kind, nor in any manner be subject to the debts or liabilities of any person.

Any attempt to so alienate or subject any such amount, whether presently or thereafter payable, shall be void. Notwithstanding the foregoing, *any Covered Person may request and authorize the Plan Administrator or any Insurer to pay benefits directly to a health care provider furnishing services or supplies covered under the Plan*, and any such payment, if made, shall constitute a complete discharge of the liability of the Plan therefor.

*Id.* at 75 (Dkt. 693–2 at 61) (emphasis added). Plaintiffs quote only the italicized portion in their compiled objections and argue that this language expressly permits assignment. Pls.' Objs. at 221. The Court disagrees. The Court interprets the quoted language as prohibiting assignment, but permitting the Plan Administrator to pay benefits directly to a provider if it chooses to do so ("if made"), when it has been requested and authorized by a Covered Person. Plaintiffs do not identify any other language that they believe permits assignment.

The Court finds that the Wrap Plan Document is a plan document and is incorporated by reference into the complaint. Because neither party cites to any language in any document besides the Wrap Plan Document, the Court does not need to address whether those documents are plan documents. The Court also finds that the Wrap Plan Document contains enforceable Absolute and Choice AAPs. Defendant's motion to dismiss the ERISA counts related to Patient 261 on anti-assignment grounds is therefore GRANTED.

- **Patient 264**

Defendant offers the following document: Plan Booklet Describing Health Plan Provisions, Benefits, and Legal Summary Plan Description ("Plan Booklet") (Dkt. 695–1).

The Plan Booklet expressly states that it is the document that provides the governing rules, benefits and details of the plan, and that it also contains the SPD for the plan. Plan Booklet at 1 (Dkt. 695–1 at 6). Regarding assignment it states that "[t]he right to receive benefits under this Plan is not assignable or transferable to any other party. Any attempted assignment or transfer will not be binding on the Plan." *Id.* at 86 (Dkt. 695–1 at 91).

The Court finds that the Plan Booklet is a plan document and is incorporated by reference into the complaint. The Court also finds that it contains an enforceable Absolute AAP. Defendant's motion to dismiss the ERISA counts related to Patient 264 on anti-assignment grounds is therefore GRANTED.

- **Patient 268**

Defendant offers the following documents: Employee Benefit Plan (Dkt. 949–1), SPD (Dkt. 949–2), 2014 Benefits Guide (Dkt. 949–3), and Summary of Benefits and Coverage (Dkt. 949–4).

The Employee Benefit Plan states that it is the document which amended and restates the plan, Employee Benefit Plan at 4 (Dkt. 949–1 at 6), states that it is the plan, *id.* at 5 (Dkt. 949–1 at 7), and identifies itself as a wrap document that incorporates the terms of the underlying plan documents, *id.* at 4 (Dkt. 949–1 at 6) ("The Employer also intends that, for purposes of the annual report requirement (Form 5500), this document is considered a 'wrap' plan and the terms of the underlying plans for which Participants are making contributions through this Plan are hereby incorporated by reference."). Defendant does not argue that the SPD, Benefits Guide or Summary of Benefits and Coverage are plan documents, and provides citations to each stating that they are not the official plan documents and do not govern the plan. Lanzi Decl. ¶¶ 8–10 (Dkt. 949).

The Employee Benefit Plan contains the following language regarding assignment:

> **8.5 NONASSIGNABILITY OF RIGHTS**
>
> The right of any Participant to receive any reimbursement under the Plan shall not be alienable by the Participant by assignment or any other method, and shall not be subject to the rights of creditors, and any attempt to cause such right to be so subjected shall not be recognized, except to such extent as may be required by law.

Employee Benefit Plan at 20 (Dkt. 949–1 at 22). This language prohibits assignment entirely and is therefore an Absolute AAP. Plaintiffs argue that this language is "Spendthrift Language Only," Pls.' Objs. at 226, but the Court has addressed that concern elsewhere. Plaintiffs have not identified any other language relevant to this analysis.

The Court finds that the Employee Benefit Plan is a plan document that is incorporated by reference into the complaint. The Court also finds that it contains an enforceable Absolute AAP. Defendant's motion to dismiss the ERISA counts related to Patient 268 on anti-assignment grounds is therefore GRANTED.

- **Patient 270**

Defendant offers the following documents: Schedule of Benefits (Dkt. 709–4 at 1–6), and Group Health Benefit Plan (Dkt. 709–4 at 7–52).

1    Defendant did not state that the exhibit contained two separate document, and

2    incorrectly titled the exhibit Plan Document, which is not the title of either document. Conway

3    Decl. ¶ 11 (Dkt. 709). Defendant identifies an integration provision at page 65 of the plan

4    document, Defs.' Revised Addendum at 118, and states that this exhibit is the "complete plan

5    document or plan instrument" for the plan. Conway Decl. ¶ 11 (Dkt. 989). Unfortunately

6    however, the provided document only contains 52 pages, and the Group Health Benefit Plan

7    pagination stops at 45. *See* Dkt. 709–4 at 52. The table of contents however goes until at least

8    page 84, (Dkt. 709–4 at 10). The Court can only conclude that this is not the full Group Health

9    Benefit Plan, and that it contains at least another 30 pages that were omitted from the exhibit.

10   The Court cannot incorporate by reference a document which is not complete, especially

11   when key cited provisions of the document have been omitted. Defendant's motion to dismiss

12   is therefore DENIED.

13   - **Patient 271**

14   Defendant offers the following documents: Group Contract (Dkt. 671–5 at 1–33), and

15   Benefit Booklet for BlueOptions ("Benefit Booklet") (Dkt. 671–5 at 39–125).

16   The Group Contract appears to meet the criteria above for a plan document because it

17   describes the allocation of responsibility between the employer and Defendant BlueCross

18   BlueShield North Carolina as well as the procedure for amending the document, Group

19   Contract at 19 (Dkt. 671–5 at 31). The Group Contract integrates two documents into the Group

20   Contract, the "K50, Important Notice For Executive Contact," and a BlueOptions Booklet. *Id.*

21   at 3 (Dkt. 671–5 at 15). It also states that "[i]f there is any conflict between the provisions of

22   the Benefit Booklet(s) and this Contract, as amended, the provisions of this Contract, as

23   amended, shall prevail." *Id.* at 1 (Dkt. 671–5 at 13).

24   The Group Contract contains the following language regarding assignment:

25   "<u>Assignment</u>. This Contract, the right to receive benefits hereunder, and the right to receive

26   payment for services, shall not be assigned, sublet or transferred by the Plan Sponsor, without

27   the consent of BCBSNC." *Id.* at 19 (Dkt. 671–5 at 31). As with Patient 145, this language

28   appears to contain at least some ambiguity because it appears to apply to the Plan Sponsor, and

does not refer to Members. If it was meant to prohibit Members (as the term is used in the

Group Contract) from assigning their benefits, this is a particularly odd way of saying it. However, if this language does not prohibit Members from assigning their right to benefits, then it necessarily does not conflict with a provision of the Benefits Booklet that does.

Defendant points to an AAP in the Benefits Booklet which states:

**<u>Benefits to Which MEMBERS Are Entitled</u>**

The only legally binding benefits are described in this benefit booklet, which is part of the GROUP CONTRACT between BCBSNC and your EMPLOYER. The terms of your coverage cannot be changed or waived unless BCBSNC agrees in writing to the change. The benefits described in this benefit booklet are provided only for MEMBERS. These benefits and the right to receive payment under this health benefit plan cannot be transferred or assigned to any other person or entity, including any PROVIDERS. BCBSNC may pay a PROVIDER directly. For example, BCBSNC pays IN-NETWORK PROVIDERS directly under applicable contracts with those PROVIDERS. However, any PROVIDER'S right to be paid directly is through such contract with BCBSNC, and not through this health benefit plan. Under this health benefit plan, BCBSNC has the sole right to determine if; payment for services is made to the PROVIDER ,to the SUBSCRIBER, or allocated among both. BCBSNC's decision to pay a PROVIDER directly in no way reflects or creates any rights of the PROVIDER under this health benefit plan, including but not limited to benefits, payments, or procedures.

Benefit Booklet at 57 (Dkt. 671–5 at 101). This language contains an Absolute AAP because it prohibits assignment even to Providers, and a Choice AAP because it permits BCBSNC to decide who it will pay for services.

The Court finds that the above documents are plan documents and are incorporated by reference into the complaint. The Court also finds that they contain enforceable Absolute and Choice AAPs. Defendant's motion to dismiss the claims related to Patient 271 on anti-assignment grounds is therefore GRANTED.

- **Patient 273**

Defendant offers the following documents: Plan Document and SPD (Dkt. 1000–1), and Benefit Booklet (Dkt. 654–5).

The Benefit Booklet contains identical language to that quoted for Patient 94 above. Defendant however has provided the separate plan document for Patient 273, although this document does not appear to incorporate the Benefit Booklet. Defs.' Revised Addendum at 120. The Court has not been provided an explanation for how the Benefit Booklet is a plan document or its terms would be enforceable, especially where it contains provisions (such as the very venue provision Defendant seeks to enforce) that are not contained in the Plan Document and SPD. There is an AAP in the Plan Document and SPD which states:

> **Assignments**
>
> Benefits for medical expenses covered under this Plan may be assigned by a Participant to the Provider as consideration in full for services rendered; however, if those benefits are paid directly to the Employee, the Plan shall be deemed to have fulfilled its obligations with respect to such benefits. The Plan will not be responsible for determining whether any such assignment is valid. Payment of benefits which have been assigned will be made directly to the assignee unless a written request not to honor the assignment, signed by the covered Employee and the assignee, has been received before the proof of loss is submitted.
>
> No Participant shall at any time, either during the time in which he or she is a Participant in the Plan, or following his or her termination as a Participant, in any manner, have any right to assign his or her right to sue to recover benefits under the Plan, to enforce rights due under the Plan or to any other causes of action which he or she may have against the Plan or its fiduciaries.

1
2
3

> A Provider which accepts an assignment of benefits, in accordance with this Plan as consideration in full for services rendered, is bound by the rules and provisions set forth within the terms of this document.

4   Plan Document and SPD at 155 (Dkt. 1000–1 at 160). There are numerous issues raised by this

5   AAP. It requires the Provider to accept the assignment as consideration in full for services

6   rendered, although it is unclear how or when the provider would become aware that by

7   pursuing the assignment it forgoes its right to bill for the remainder. It states that assigned

8   benefits will be paid directly to the assignee unless the employee and assignee submit a written

9   request before the proof of loss is received, but it is unclear how that works in conjunction with

10  the provision requiring the Provider-assignee to waive its claim to the remainder of the bill.

11  This AAP also prohibits a participant from assigning the right to sue to obtain the benefits that

12  were assigned, and it requires a Provider to accept the rules of the Plan when it accepts an

13  assignment. The last clause would be particularly challenging to comply with since Defendant

14  may not have given this document to the Plaintiffs until the Court issued the Briefing Order.

15  Individually each of these provisions may be unique in this litigation. Defendant provided this

16  document via declaration without legal briefing on the validity of any of the provisions, and

17  Plaintiffs have not had an opportunity to brief any of the issues presented. The Court will

18  therefore decline to incorporate this document by reference.

19      The Court declines to incorporate the Plan Document and SPD by reference until

20  Defendant can present the issues in a way that informs the Court of their validity and Plaintiffs

21  have an opportunity respond. Defendant's motion to dismiss or transfer on anti-assignment and

22  venue grounds is therefore DENIED.

23  • **Patient 274**

24      Defendant offers the following documents: Health and Welfare Plan Document (Dkt.

25  727–1 at 4–13), and 2014 SPD (Dkt. 727–1 at 14–58).

26      The Health and Welfare Plan Document is the document that amends and restates the

27  plan. Health and Welfare Plan Document at 2 (Dkt. 727–1 at 5). It expressly incorporates the

28  SPDs that describe benefits. *Id.* The 2014 SPD contains the following language regarding

    assignment:

**Assignment**

Covered persons cannot assign, pledge, encumber or otherwise alienate any legal or beneficial interest in benefits under the Plan, and any attempt to do so will be void. The payment of benefits directly to a hospital, physician, or other provider, if any, shall be done as a convenience to the covered person and shall not constitute an assignment of benefits under the Plan. Participating providers normally bill the Plan directly. If services, supplies or treatment has been received from such a provider, benefits are automatically paid to that provider. The covered person's portion of the negotiated rate, after the Plan's payment, will be billed to the covered person by the participating provider. This Plan will pay benefits to the responsible party of an alternate recipient as designated in a Qualified Medical Child Support Order.

**Benefits Not Transferable**

Except as otherwise staled herein, no person other than an eligible covered person is entitled to receive benefits under this Plan. Any right to benefits is not transferable

*Id.* at 29 (Dkt. 727–1 at 43). Plaintiffs argue that Defendant has not identified any language that expressly and unambiguously prohibits the plan administrator from exercising discretion to authorize assignments. Pls.' Objs. at 232. The quoted language prohibits patients from assigning benefits gives the plan the choice to pay non-Participating providers directly, but expressly states that doing so does not constitute an assignment of benefits. In addition, Plaintiffs' argument is therefore directly contradicted by the text of the plan which contains Absolute and Choice AAPs.

The Court finds that the Health and Welfare Plan Document and 2014 SPD are plan documents that are incorporated by reference into the complaint. The Court also finds that they contain enforceable Absolute and Choice AAPs. Defendant's motion to dismiss the ERISA counts related to Patient 274 on anti-assignment grounds is therefore GRANTED.

- **"Pursuant to Other Written Documents" Patients**

Many patients have language in their Group Contract, Group Administration Document, or similar document which states that if the plan is governed by ERISA, the employer has established the plan pursuant to other written documents. As explained above, the Court cannot incorporate any documents containing language that disclaims plan status unless Defendant has also offered those other written documents, and in this case that means document(s) written by the employer. Some also include language stating that nothing in the documents affects the carrier's rights, and that the carrier will not have to examine the documents. Sample language stating that the ERISA plan has been established "pursuant to other written documents" from the Group Administration Document for Patient 164 states:

> L. **ERISA**: This provision applies to any Contract which implements any employee welfare benefit plan as defined by Section 3 (2) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").
>
> 1. The Employer (or (i) if the Employer is a trust, the grantor of such trust or (ii) if the Employer is an association, each member of such association who pays premiums under such Contract) has established and as sponsor, maintains pursuant to other written documents, a health benefit program ("Employer's ERISA Health Benefit Program") through the purchase of insurance for the benefit of its eligible Participants, which Employer's ERISA Health Benefit Program is an "employee welfare benefit plan" within the meaning of ERISA.
>
> . . . .
>
> Nothing in an Employer's ERISA Health Benefit Program will affect the obligations of BCBSTX with respect to this Contract. BCBSTX will not be required to examine the provisions of an Employer's ERISA Health Benefit Program or any related trust agreement, or any modification, amendment or supplement thereto.

Group Administration Document at 13 (Dkt. 1010–3 at 15).

The documents for the following patients contain similar language without providing the "other written documents" that establish and maintain the ERISA plan:

> **Patient 24** – Group Administration Document at 11–12 (Dkt. 1020–2 at 12–13)
>
> **Patient 25** – Group Administration Document at 12 (Dkt. 1027–18 at 13)
>
> **Patient 40** – Administrative Services Agreement at 13 (Dkt. 1021–2 at 14)
>
> **Patient 49** – Administrative Services Agreement at 11 (Dkt. 1034–2 at 12)
>
> **Patient 54** – Administrative Services Agreement at 13 (Dkt. 1019–2 at 14)
>
> **Patient 124** – Group Administration Document at 16 (Dkt. 1027–5 at 17)
>
> **Patient 128** – Group Administration Document at 13 (Dkt. 1029–4 at 14)
>
> **Patients 141 & 142** – Administrative Services Agreement at 13 (Dkt. 1027–21 at 14)
>
> **Patient 164** – Group Administration Document at 13, exhibit 3 page 14 (Dkt. 1010–3 at 15)
>
> **Patient 183** – Group Administration Document at 13, exhibit 2 page 13 (Dkt. 1031–2 at 14)
>
> **Patient 206** – Group Administration Document at 16–17 (Dkt. 1026–2 at 17–18)
>
> **Patient 214** – Administrative Services Agreement at 14 (Dkt. 1030–2 at 15)
>
> **Patient 226** – Group Administration Document at 12 (Dkt. 1027–12 at 13)

The Court has no opinion on the effect or meaning of such provisions at this stage.

### E. Jury Trial

Plaintiffs have demanded a jury trial "for all claims so triable." FAC at 281:2. Both parties agree that none of the four causes of action in the FAC are triable by jury. Mot. at 34:10–2, Opp'n at 35:7–8. Because there is no right to a jury trial for any of these causes of action, the Court STRIKES the demand for a jury trial.

## V.      DISPOSITION

The Motion to Dismiss Count 1 is DENIED.

The Motion to Dismiss Count 2 is GRANTED. The claim is DISMISSED WITHOUT PREJUDICE.

The Motion to Dismiss Count 3 is GRANTED. The claim is DISMISSED WITHOUT PREJUDICE.

The Motion to Dismiss Count 4 is GRANTED. The claim is DISMISSED WITHOUT PREJUDICE.

The Motion to Strike the jury trial request is GRANTED.

The Motion to Dismiss on anti-assignment grounds is GRANTED for claims related to the following Patients: 1, 8, 11, 18, 19, 22, 26, 27, 28, 31, 34 , 37, 41, 47, 55, 61, 66, 67, 68, 69, 71, 72, 83, 85, 86, 93, 96, 99, 102, 105 ,125 ,126 ,130, 135, 137, 138, 140, 144, 149, 150, 153, 154, 157, 161, 163, 171, 173, 174, 178, 180, 186, 191, 197, 198, 200, 203, 204, 207, 209, 210, 211, 215, 216, 238, 240, 243, 246, 247, 250, 254, 258, 261, 264, 268, 271, 274. The claim is DISMISSED WITHOUT PREJUDICE to allow Plaintiffs an opportunity to demonstrate that waiver or estoppel would prevent the APP's enforcement.

Defendant BCBSLA's Motion to Dismiss on anti-assignment grounds for claims related to Patient 87 is CONDITIONALLY GRANTED pending BCBSLA filing a declaration with the Court identifying the plan name and the employer for Patient 87's plan.

Defendants related to Patients 23, 74, 77, 97, 106, 112, 118, 202, 239, 267, and 272 may renew their anti-assignment arguments pursuant to the analysis above in Part IV.D.4.g.

Defendants are ORDERED to read L.R. 5-4.3.1. The Court may strike future documents that are not text-searchable, contain multiple documents, or otherwise violate the Local Rules.

If Plaintiffs choose to amend their complaint in compliance with this Order, they may do so **on or before December 14, 2016**.

_David O. Carter_

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

DATED:  November 22, 2016