**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

**DUAL DIAGNOSIS TREATMENT CENTER, INC. ET AL.,**

**Plaintiffs,**

**vs.**

**BLUE CROSS OF CALIFORNIA ET AL.,**

**Defendants.**

**Case No.: SA CV 15-0736-DOC (DFMx)**

**ORDER GRANTING IN PART OMNIBUS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT [1085]**

Before the Court is Defendants' Omnibus Motion to Dismiss the Second Amended Complaint ("Motion") (Dkt. 1085), along with supplemental addenda by various parties.

**I. BACKGROUND**

This lawsuit arises from Plaintiffs Dual Diagnosis Treatment Center, Inc.; Satya Health of California, Inc.; Adeona Healthcare, Inc.; Sovereign Health of Phoenix, Inc.; and Sovereign Asset Management, Inc.'s (collectively, "Plaintiffs") allegations that they were not paid for medical benefits after they secured valid assignments of medical benefits from their patients. Second Amended Complaint ("SAC") (Dkt. 1071) ¶ 5.

Plaintiffs filed the SAC on December 23, 2016. Plaintiffs brought suit against 133 welfare plans and forty-seven Blue Cross entities (collectively, "Defendants") for claims related to 230 patients. *Id.* ¶¶ 23–154, 157, 159–204. Plaintiffs allege that their assignments entitle them to be paid by Blue Cross directly, and they submitted forms accordingly. *Id.* ¶¶ 233–34, 264. However, without informing Plaintiffs, the Blue Cross Defendants paid the patients instead. *Id.* ¶¶ 265, 269. Plaintiffs allege that this was part of a policy of intentionally refusing to honor valid assignments so that out-of-network providers like Plaintiffs would receive only a fraction of what they were owed. *Id.* ¶¶ 6, 257, 263. Plaintiffs also allege that a number of Blue Cross Defendants stated over the phone that the benefits for specific patients were assignable, when in reality the plans for those patients prohibited assignment. *Id.* ¶ 283.

Plaintiffs allege four claims: (1) a claim for plan benefits under the Employee Retirement Income Security Act of 1974's ("ERISA") remedial scheme, 29 U.S.C. § 1132(a)(1)(B); (2) a claim to recover ERISA benefits from those Welfare and Blue Cross Defendants who misled Plaintiffs about the assignability of benefits, through reformation of the plan or equitable estoppel under 29 U.S.C. § 1132(a)(3); (3) a state law claim under California Business and Professions Code § 17200, *et. seq.* ("UCL") against the Blue Cross Defendants that misled Plaintiffs about the assignability of benefits; and (4) California state-law claims for misrepresentation, breach of contract, and "other state law," seeking estoppel and/or reformation against certain welfare plans and Blue Cross Defendants for plans that are not covered under ERISA.

## II. PROCEDURAL HISTORY

The Court ruled on the previous motion to dismiss the First Amended Complaint ("FAC") on November 22, 2016 ("Order") (Dkt. 1063). In that Order, the Court dismissed without prejudice Plaintiffs' claims for fiduciary breach, equitable remedies under ERISA, and violations of California's UCL. Order at 168–69. The Court incorporated the documents it could determine as a matter of law were ERISA plan documents, and dismissed the ERISA claims for seventy-seven Defendants based on anti-assignment provisions ("AAPs") in their plan documents. *Id.* at 169. The Court did, however, permit Plaintiffs to amend their complaint so that Plaintiffs might have an opportunity to demonstrate that waiver or estoppel would apply to the anti-assignment provisions. *Id.* The Court also noted that a number of plans might not be governed by ERISA at all. *Id.* at 44–46.

Plaintiffs filed the Second Amended Complaint ("SAC") on December 23, 2016. Defendants jointly filed the instant Motion on March 1, 2017. Some Defendants also filed supplemental addenda to the Motion (Dkts. 1087, 1089, 1091, 1092, 1093, 1094, 1096, 1097, 1098, 1099, 1100, 1101, 1103, 1105, 1108, 1109). On May 8, 2017, Plaintiffs filed their Opposition to Defendants' Motion (Dkt. 1143) and filed opposition addenda (Dkt. 1144, Attachments 1–14). On May 30, 2017, Defendants filed their joint Reply (Dkt. 1155), and some Defendants filed supplemental reply addenda. (Dkts. 1150, 1154, 1156–65). The Court held hearings on the instant Motion on June 12 and 13, 2017.

On May 22, 2017, the Court ordered Plaintiffs to update certain tables listing the claims still at issue and to provide certain supplemental information relating to the amount owed per patient and the name of the provider entity on each assignment alleged in the SAC. Order Calling for Supplemental Information (Dkt. 1148). Plaintiffs provided this information on May 30, 2017. Pls.' Notice of Filing Tables ("Plaintiffs' Supplemental Information") (Dkt. 1166). The Court will treat this information as part of the SAC. Fed. R. Civ. P. 10(c).

## III. LEGAL STANDARD

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),

and *Ashcroft v. Iqbal*, 556 U.S. 544 (2009). To survive a motion to dismiss, a complaint must contain factual matter that, if accepted as true, is sufficient to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 547. “All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff.” *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008) (citation omitted). However, pleading identical allegations against different and unrelated defendants for different events without explanation deprives each individual party of a fair and meaningful opportunity to defend itself. *Romero v. Countrywide Bank, N.A.*, 740 F. Supp. 2d 1129, 1136 (N.D. Cal. 2010) (quoting *Twombly*, 550 U.S. at 553–55); *see also Bautista v. Los Angeles Cty.*, 216 F.3d 837, 840–41 (9th Cir. 2000) (“[Under Rule 10(b)] Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation.”). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide “more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.” *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Where a claim for relief is based on fraud or mistake, a heightened pleading standard applies: the circumstances of the fraud or mistake must be stated with particularity. Fed. R. Civ. P. 9(b); *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) (holding that FRCP 9(b) applies to ERISA claims based on fraud). This rule requires the party to state the “who, what, when, where, and how” of the fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (“[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity.”).

In ruling on a motion to dismiss for failure to state a claim, a court should follow a two-pronged approach: first, the court must discount conclusory statements, which are not presumed to be true; then, assuming any factual allegations are true, the court must determine “whether they plausibly give rise to an entitlement to relief.” *See Iqbal*, 556 U.S. at 679; *accord Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). A court should consider the contents of

the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Dismissal with leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Dismissal without leave to amend is appropriate only when "it is clear . . . that the complaint could not be saved by any amendment." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *see also Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (noting that leave to amend "is properly denied . . . if amendment would be futile").

## IV. DISCUSSION

Defendants seek to dismiss Plaintiffs' claims for equitable relief under ERISA, violations of California's UCL, and additional violations state law. Defendants seek to dismiss Plaintiffs' claims for reformation and equitable estoppel under ERISA because they fail as a matter of law, and because they are not pleaded with the particularity required by Rule 9(b) for claims grounded in fraud and mistake by Rule 9(b). Mot. at 5–17. Defendants seek to dismiss Plaintiffs' UCL claims because the SAC does not allege unfair or unlawful conduct within the meaning of the UCL, and because the UCL claim is not pleaded with the particularity required by Rule 9(b). *Id.* at 5–8, 18–22. Defendants seek to dismiss the claims for additional violations of additional state law because the SAC does not give Defendants fair notice of the claims alleged against them. *Id.* at 22–25. Defendants also ask the Court to consider additional issues specific to particular Defendants. *Id.* at 25. The Court ordered Plaintiffs to provide certain supplemental information based on some of the issues raised by Defendants, and Plaintiffs provided this information after Defendants had submitted their reply. Order Calling for Supplemental Information (Dkt. 1148); Pls.' Supplemental Information (Dkt. 1166).

In Part A below, the Court rules that Plaintiffs cannot maintain claims based on assignments that were made solely to a third party. In Part B, the Court examines Plaintiffs' claims for reformation and equitable estoppel under ERISA and finds that they fail as a matter of law. In Part C, the Court examines Plaintiffs' UCL claims and concludes that Plaintiffs have failed to allege facts that show they have standing to bring a UCL claim, and that their UCL claims must be pleaded separately. In Part D, the Court addresses Plaintiffs' claims for other state-law violations and concludes that Plaintiffs have not alleged sufficient facts to show that the Court has subject matter jurisdiction over these claims. Finally, in Part E, the Court examines additional issues raised by individual Defendants.

**A. Validity of Assignments to Medlink**

Under ERISA's civil enforcement statute, only a health plan participant or beneficiary can bring a civil enforcement action to recover ERISA plan benefits. 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has construed this section narrowly to permit only the parties enumerated therein to sue directly for relief. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27 (1983). Healthcare providers such as Plaintiffs are not beneficiaries under ERISA's enforcement provisions and therefore cannot bring a claim for benefits directly. *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868, 874 (9th Cir. 2017). However, ERISA does not generally forbid a beneficiary from assigning her right to reimbursement of health care benefits to the health care provider. *Misic v. Bldg. Serv. Emps. Health and Welfare Tr.*, 789 F.2d 1374, 1377 (9th Cir. 1986) (per curiam). A provider who has been assigned health care benefits by a beneficiary may therefore be able to assert the claims of the ERISA beneficiary derivatively. *Id.*; *DB Healthcare*, 852 F.3d at 874. The Court concludes that Plaintiffs have not alleged sufficient facts to have derivative standing for assignments that were not made to Plaintiff and were instead made to a third party, Medical Concierge, Inc. ("Medlink").

In *Simon v. Value Behavioral Health, Inc.*, the Ninth Circuit faced a plaintiff who obtained assignments of benefits claims of more than 600 patients from various providers, who had in turn received the assignments from their patients. *Simon*, 208 F.3d 1073, 1080–81 (9th

Cir. 2000) *amended*, 234 F.3d 428 (9th Cir. 2000), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (en banc). The Ninth Circuit dismissed the plaintiff's claims and held that a health care provider has derivative standing to sue under ERISA's civil enforcement provisions only if it received the assignment of health care benefits from the beneficiary or participant in exchange for health care services. *Id.* That ruling's purpose was, in part, to prevent health benefit claims from becoming freely tradeable commodities subject to an endless reassignment of claims by people with no relationship to the beneficiary. *Id.* The consequence of *Simon* is that if a provider lacks derivative standing, then it cannot state a claim under ERISA's civil enforcement provisions. *Id.* at 1082. The Court addressed this concern in its previous Order, and ruled that because the FAC had alleged that every assignment was made to a Plaintiff entity, the involvement of Medlink in billing, intake, and medical services was insufficient to dismiss the FAC's claims for ERISA benefits. Order at 22–23.

In the SAC, however, Plaintiffs removed the allegation that each assignment was made to a Plaintiff entity. As a result, the Court ordered Plaintiffs to provide additional information about the entities to which assignments were made. That additional information revealed that the claims for some sixty-five patients in this case rely on assignments made solely to Medlink rather than to a Plaintiff entity, and that twenty-four patients signed assignments to both Medlink and one or more Plaintiffs. Pls.' Suppl. Information Ex. E. In order to state a claim under ERISA's civil enforcement provisions, Plaintiffs must allege facts that explain the basis on which they are entitled to sue Defendants over assignments made to a third party. Plaintiffs' allegations that they "obtained" the assignments are insufficient because even the plaintiff in *Simon* could have alleged that he "obtained" the assignments. *Compare* SAC ¶¶ 3, 233 (alleging that Plaintiffs or their agents obtain assignments) with *Simon*, 208 F.3d at 1081 (denying derivative standing to a plaintiff who alleged that he acquired assignments). The statutory standing issue created by assignments having been made to Medlink rather than Plaintiffs might be resolved if Plaintiffs can add Medlink as a plaintiff and allege that Medlink received those assignments in exchange for health care services. *See Simon*, 208 F.3d at 1080–

81. Adding Medlink as a plaintiff would also obviate the need for the Court to conduct a separate analysis to determine whether Medlink is a necessary or indispensable party for the eighty-nine patients that assigned it their medical benefits.

For the foregoing reasons, Plaintiffs' claim for ERISA benefits for any Patient who assigned her benefits solely to Medlink and not a plaintiff is DISMISSED WITHOUT PREJUDICE. While there may be valid concerns about the twenty-four patients who assigned their benefits to Medlink in addition to a Plaintiff, the Court cannot address those concerns on a motion to dismiss.

### B. Claim for Equitable Relief under ERISA

In an attempt to recover ERISA benefits from Welfare and Blue Cross Defendants, Plaintiffs seek relief in the form of reformation or equitable estoppel of AAPs in ERISA plan documents, which are both remedies available through ERISA under 29 U.S.C. § 1132(a)(3).[1] *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014). Plaintiffs allege that certain Defendants led them to believe that the underlying claims for health care benefits were assignable, even though the plan documents may have had provisions that prohibited assignment, SAC ¶¶ 283–85. Plaintiffs argue that these false representations support claims for reformation or equitable estoppel under 29 U.S.C. § 1132(a). SAC ¶¶ 287–88.

#### 1. Plaintiffs Have Failed to State a Claim for Reformation

Plaintiffs seek to reform plan documents by excising AAPs from the plan documents of those Defendants that told Plaintiffs that their plans did not prohibit assignment. SAC ¶¶ 283, 287. Excising the AAPs would entitle Plaintiffs to payment directly from Defendants. *Id.* Reformation is an available remedy only for fraud or mistake. *Gabriel*, 773 F.3d at 955. Ninth Circuit case law does not make clear whether the Court must base application of the traditional equitable factors for reformation on trust law or contract law. *See Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012) (explaining the different elements

[1] It is unclear how claims for reformation and equitable estoppel to remove AAPs apply to the threshold question of statutory standing. *Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*, No. CV 14-01480 MMM AGRX, 2014 WL 6603761, at *14 (C.D. Cal. July 28, 2014). The Court assumes without deciding that a derivative-assignee can assert claims under 29 U.S.C. § 1132(a)(3) in order to validate its standing to sue under ERISA.

of reformation for mistake under either contract or trust law, and fraud under either contract or trust law). Although Plaintiffs discuss *Skinner* and *Gabriel*, they do not identify which standard(s) the Court should apply to their claims. Under any of the four possible combinations, Plaintiffs would have to show, at minimum, that fraud or mistake in either the creation of each plan or each patient's assent to the plan caused the plan's terms to differ from the terms the plan should have had absent the mistake or fraud. *See Gabriel*, 773 F.3d at 955. Plaintiffs do not allege fiduciary breach or a misrepresentation in any document required by ERISA, such as a summary plan description ("SPD"). *See* 29 U.S.C. § 1022. The only misrepresentation or mistake alleged by Plaintiffs is that some Blue Cross representatives for some plans told Plaintiffs (or their agents) that plan benefits were assignable when in reality the plans had provisions prohibiting the assignment of benefits. SAC ¶ 227(c).

However, "[r]eformation is meant to effectuate mutual intent *at the time of contracting*." *CIGNA Corp. v. Amara*, 563 U.S. 421, 450 (2011) (Scalia, J., dissenting) (emphasis added). Here, the misrepresentations were made well after the formation of the plans, and no misrepresentation was ever made to a patient. As a result, Plaintiffs cannot show that the misrepresentations affected the understanding or assent of the plan sponsors or patients to the terms of the plan as written. *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1169 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 2511 (2016) ("Reformation is the appropriate remedy . . . for fraud or mistake in the written expression of the agreement.") (quoting Dan B. Dobbs, *Law of Remedies* § 9.5 (2d ed. 1993)). Plaintiffs' request for reformation must therefore fail as a matter of law.

Nevertheless, Plaintiffs argue that the Second Circuit acknowledged in *Amara v. CIGNA Corp.*, 775 F.3d 510 (2d Cir. 2014),[2] that plan documents could be reformed based on circumstances similar to this case, where misrepresentations by the plan administrator were made after the plan was formed, and there was no error or fraud in the plan. Opp'n at 10. However, the Second Circuit only reformed the plan at issue in *Amara* because of

---

[2] This discussion focuses on *Amara v. CIGNA Corp.*, 775 F.3d 510, the Second Circuit's subsequent opinion after the Supreme Court remanded *CIGNA Corp v. Amara*, 563 U.S. 421, back to the district court to evaluate whether to impose equitable remedies under the appropriate standard.

misrepresentations that went directly to the understanding of the beneficiaries at the time the plan was amended. *Amara* is further distinguishable from this case because, there, the misrepresentations were in documents required by statute, and made by CIGNA acting as both plan administrator and plan sponsor.

Plaintiffs argue that the misrepresentations at issue in *Amara* were similar to those in this case because they were also made after the plan was formed, and there was no error or fraud in the plan documents. *Id.* However, contrary to Plaintiffs' position, in *Amara* the Second Circuit focused on fraud arising from CIGNA's representations to its own employees as it converted its defined benefit pension plan into a defined contribution plan. *Amara*, 775 F.3d at 515, 525–31 (citing *Skinner* and adopting the fraud analysis under contract law). The Second Circuit specifically noted that CIGNA affirmatively misrepresented the effects of conversion, and "misrepresented the terms of CIGNA's new pension plan and actively prevented employees from learning the truth about the plan." *Id.* at 526, 531. The fraud therefore induced those plaintiffs to assent to CIGNA's new plan. *Id.* at 528–29.

In contrast, here Plaintiffs allege misrepresentations that took place potentially years after the plans were written, and were not made to anyone who needed to assent to plan terms. By untethering their reformation analysis from the intent of any party to the trust or contract at the time it was formed, Plaintiffs are attempting to dress up an estoppel claim as a reformation claim. *See* Restatement (Second) of Contracts § 336 cmt. g (describing how estoppel may be appropriate when an obligor induces reliance and action by a prospective assignee).

*Amara* is further distinguished from Plaintiffs' claim for reformation because the relevant misrepresentations in *Amara* were made in notices and disclosures statutorily-required by ERISA, and they were made by the entity that acted as both plan sponsor and plan administrator. In *Amara*, the misrepresentations were in two Summary Plan Descriptions ("SPDs"), a summary of material modifications, and a 204(h) notice, all of which were required by ERISA. *Amara*, 775 F.3d at 530; 29 U.S.C. §§ 1024(b)(1), 1054(h)(1). That is, CIGNA misrepresented what the changes would do in the very documents mandated by ERISA that are "essential in informing employees of their rights under the employers' pension plans." *Amara*,

775 F.3d at 530 (quoting the district court's first opinion in *Amara v. Cigna Corp.*, 534 F. Supp. 2d 288, 345 (D. Conn. 2008), *aff'd*, 348 F. App'x 627 (2d Cir. 2009), *vacated and remanded*, 563 U.S. 421 (2011)). This is unlike the misrepresentations Plaintiffs allege, which were not in any document required by statute.

In addition, the Second Circuit's holding was limited to situations in which the plan sponsor also acted as plan's administrator. *Amara*, 775 F.3d at 527 n.14. Plaintiffs' case and the facts underlying their request for reformation differ in two important ways. First, the alleged misrepresentations were made by plan administrators rather than plan sponsors. While plan sponsors write and can generally amend an ERISA plan, plan administrators can only amend the plan if the plan documents give them authority to do so. 29 U.S.C. § 1102(b)(3) (requiring an ERISA plan to provide a procedure for amending the plan and identifying who has authority to amend the plan). Granting Plaintiffs' request to reform ERISA plans to conform to statements made by plan administrators in effect gives plan administrators the power to amend the plan documents, without regard to whether the plan documents give them that power. Second, the identification of the separate roles of plan sponsor and plan administrator in *Amara* is relevant because the Second Circuit held that they "need not and do not decide whether a court may properly disregard the distinction between sponsors and administrators when the entities that perform these roles are distinct or when plaintiffs do not make a showing of fraud or inequitable conduct on the part of both." *Amara*, 775 F.3d at 527 n.14. Plaintiffs in this case have alleged exactly the opposite, which is that the Welfare Defendants are separate entities from the Blue Cross Defendants, and the Welfare Defendants hired the Blue Cross Defendants to act as plan administrators. SAC ¶ 216. Plaintiffs have also not alleged any fraud or inequitable conduct on the part of any plan sponsor. *Amara* thus provides Plaintiffs no support for amending plan documents based on post-formation oral misrepresentations by the plan administrator.

Plaintiffs' claim for reformation also fails because the misrepresentations were not made to the patients. Plaintiffs are not beneficiaries, and thus must sue derivatively, standing in the shoes of the patients. *DB Healthcare*, 852 F.3d at 875. From this perspective, the

misrepresentations were made by the plan administrator to a third-party provider. Plaintiffs have not identified any cases suggesting that reformation is available for post-formation misrepresentations made solely to third parties who are not beneficiaries of the trust or parties to the contract. This is unsurprising because statements made solely to third-parties cannot by their nature impact the assent or intent of the parties to the formation or terms of the contract. *See Skinner*, 673 F.3d at 1167 (holding that reformation under a fraud theory in contract law requires that the party's assent to the contract was induced by the misrepresentation). The SAC itself further demonstrates that Plaintiffs' claim for reformation is not based on communications between the plan administrator and the plan beneficiaries because Plaintiffs plead virtually identical facts for their UCL claim, which they bring in their own right and not derivatively. SAC ¶¶ 290–306. Plaintiffs cannot stand in the shoes of the patients to reform the plan according to statements that were never made to the patients and that did not affect the patients' assent to or understanding of their plan terms.

For the foregoing reasons, Plaintiffs' request for reformation is DISMISSED WITH PREJUDICE.

**2. Plaintiffs Have Failed to State a Claim for Estoppel**

Plaintiffs also argue that Defendants who incorrectly told Plaintiffs' agents that benefits were assignable should be equitably estopped from asserting the anti-assignment provisions in their plan instruments. SAC ¶ 288. The traditional elements of equitable estoppel are: "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014) (quoting *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992)). In addition, in the ERISA context the Ninth Circuit requires that the party seeking to apply estoppel also show (1) extraordinary circumstances, (2) "that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect," and (3) that the representations made about the plan were an interpretation of the plan, not an amendment or

modification of the plan. *Id.* at 957. These additional requirements derive from ERISA's writing and amendment requirements, 29 U.S.C. §§ 1102(a)(2), (b)(3), and prevent a party from asserting an estoppel claim under ERISA that would contradict the written plan provisions, result in a payment of benefits inconsistent with the written plan, or as a practical matter result in an amendment of the plan. *Gabriel*, 773 F.3d. at 956 (quotations and citations omitted).

Even assuming Plaintiffs have satisfied the traditional estoppel factors, they have not satisfied the Ninth Circuit's additional factors. Plaintiffs' claim the situation at issue in this case qualifies as an extraordinary circumstance for four reasons: (1) Defendants knew that Plaintiffs would be more likely to take the patient because they thought the benefits were assignable, (2) Plaintiffs would face greater inconvenience collecting benefits as an out-of-network provider, (3) the misrepresentations occurred repeatedly over a long period of time, and (4) Defendants took advantage of Plaintiffs' good faith willingness to accept what Defendants told them over the phone. SAC ¶¶ 288(e)(1)–(4). Reasons 1, 2, and 4 merely repeat the same traditional estoppel factors and would apply to virtually every misrepresentation relating to coverage or eligibility. These reasons, therefore, cannot constitute extraordinary circumstances. *See Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996) (holding that extraordinary circumstances requires more than just satisfying the ordinary elements of equitable estoppel).

Plaintiffs' third ground—that the misrepresentations occurred repeatedly over a long period of time—may be sufficient, but the SAC is not specific enough to support this allegation. Plaintiffs allege, on information and belief, that misrepresentations related to over one hundred patients were made by up to thirty-nine different Blue Cross entities. SAC ¶ 283; Pls.' Suppl. Information Ex. B. The SAC does not specify whether it was Plaintiffs or their agents who called the provider hotline, or the identity of the entity on the other end of the phone call that actually made the alleged misrepresentation. *E.g.*, SAC ¶ 545(d) (Patient 272) (alleging on information and belief that Sovereign or its agents learned from California Blue Cross, CareFirst Maryland Blue and/or CareFirst District of Columbia Blue that Patient 272's benefits were assignable). Such pleading in the disjunctive for ninety-seven patients prevents each Defendant from understanding what it is alleged to have done as to each patient, and

prevents the Court from inferring that these misrepresentations are part of a connected series of events, which might then constitute extraordinary circumstances. Plaintiffs were specifically informed of this problem in the Court's prior Order. Order at 18–19.

If this were the only problem, the Court would dismiss this claim with leave to amend so that Plaintiffs could plead the claim in accordance with Federal Rules of Civil Procedure 8 and 9(b). Order at 18. Plaintiffs, however, cannot avoid the fact that a clear anti-assignment provision in a plan determines whether or not Plaintiffs must be (or can be) paid directly. Plaintiffs are asking for plans to be amended based on statements made over the phone by Blue Cross employees that contradict the written plan terms. However, an equitable estoppel claim simply cannot "as a practical matter result in the amendment or modification of a plan . . . ." *Gabriel*, 773 F.3d. at 956. In addition, Plaintiffs cannot satisfy the Ninth Circuit's second additional estoppel element requiring the plan provisions to be ambiguous, because none of the AAPs the Court has incorporated by reference are ambiguous. Finally, Plaintiffs cannot satisfy the third additional estoppel element because they cannot show that the misrepresentations were interpretations, rather than modifications, of the plan.

For the foregoing reasons Plaintiffs' request for equitable estoppel is DISMISSED WITH PREJUDICE.

### C. UCL Claim

The SAC's third claim seeks relief based on alleged violations of California's Unfair Competition Law stemming from misrepresentations by some Blue Cross Defendants regarding the assignability of benefits. SAC ¶¶ 290–306. Plaintiffs bring this claim directly against all Blue Cross Defendants and independent of any assignments. *Id.* ¶¶ 291, 293.

The Court dismissed Plaintiffs' previous UCL claim because Plaintiffs failed to meet the UCL standing requirements. Order at 19–20. Although Plaintiffs have attempted to rectify this issue, their pleadings do not comply with Rules 9(b) and 10(b) and prevent the Court from determining whether Plaintiffs have met the UCL's standing requirements for any of their UCL claims against any Defendants. *See* Fed. R. Civ. P. 9(b), 10(b).

As the Court explained in its prior Order, Plaintiffs' identical pleading for all Blue Cross Defendants denies each Defendant both the opportunity to understand the claim Plaintiffs allege against it and the opportunity to defend itself. Order at 36. This stems from the basic principle that the pleading standards are not relaxed just because Plaintiffs have brought this case against hundreds of Defendants for claims related to hundreds of patients. Fed. R. Civ. P. 8(a), 10(b). Thus, the SAC is obviously deficient where it alleges a UCL claim based on misrepresentation against Blue Cross Defendants who Plaintiffs never allege made a misrepresentation. *E.g.*, SAC ¶ 400 (no misrepresentation alleged relating to Patient 112). The SAC is similarly deficient where Plaintiffs have not alleged an economic injury for each distinct UCL claim. That is, if Plaintiffs allege an economic injury that was the result of a UCL violation by Defendants related to Patient A, that allegation does not plausibly give Plaintiffs a UCL claim against Defendants related to Patients B, C, or D.[3] In the context of this case, where Plaintiffs have chosen to bring UCL claims against forty-seven Blue Cross Defendants based on over one hundred alleged misrepresentations, Rule 10(b) requires that the paragraphs alleging each UCL claim be limited as far as practicable to the circumstances of just that claim.[4] *See Bautista v. Los Angeles Cty.*, 216 F.3d 837, 840–41 (9th Cir. 2000) ("[Under Rule 10(b)] courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation."); *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2010 WL 3940694, at *3 (N.D. Ill. Oct. 6, 2010) (holding that plaintiffs cannot lump separate claims against separate defendants together into a single claim).

Defendants also argue that Plaintiffs' UCL claims must meet the heightened pleading requirements for fraud under Rule 9(b). Mot. at 5–9. Plaintiffs do not appear to dispute this point, because they argue that Defendants' conduct violated, among other laws, California's prohibition on fraud and constructive fraud. Opp'n at 19–20. Plaintiffs instead argue that the SAC's allegations of fraud satisfy Rule 9(b), and that Defendants' objections that they do not

[3] Although the Court has often referenced Plaintiffs' claim as a single UCL claim for convenience, it appears to be a number of separate claims related to each misrepresentation or Blue Cross Defendant.
[4] Alternatively, Plaintiffs may choose to organize their UCL claims by Defendant if doing so would promote clarity.

are "pettifogging." Opp'n at 3–5. Rule 9(b), however, requires Plaintiffs to plead more specifics than they have in the SAC, particularly regarding what entity was contacted, and who contacted that entity.[5] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (requiring the who, what, when, where, and how for allegations of fraud). It is particularly problematic that the entire patient appendix is pleaded on information and belief when much of it is within the personal knowledge of Plaintiffs or their agents. *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed.) (noting that even under Rule 8 "pleading on information and belief is not an appropriate form of pleading if the matter is within the personal knowledge of the pleader or 'presumptively' within his knowledge, unless he rebuts that presumption"); *but see Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (noting that Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge). At bottom, Plaintiffs must allege facts that show they have stated at least one UCL claim against each Blue Cross Defendant they allege violated the UCL, and plead their allegations of fraud with the particularly required by Rule 9(b).

**1. Plaintiffs' Economic Injury/Causation**

As the Court explained in its prior Order, the UCL imposes a standing requirement under which a party must establish (1) an economic injury, and (2) that the injury was the result of the unfair business practice. Order at 19–20 (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322–24 (Cal. 2011). The Court dismissed Plaintiffs' UCL claim in the FAC because Plaintiffs had not alleged an economic injury falling outside of ERISA andhad failed to identify any false statements, and thus could not show any sort of reliance or causation. Order at 20–21

In order to meet the UCL's standing requirements, Plaintiffs must allege an economic injury that is not covered by ERISA. Thus, the fact that Plaintiffs did not receive payment directly from the Blue Cross Defendants for medical treatment Plaintiffs provided to their patients is not sufficient, because the failure to pay plan benefits according to plan terms must

---

[5] Rule 9(b) also prohibits a plaintiff from lumping multiple defendants together and instead requires plaintiffs to differentiate their allegations so that they inform each defendant separately of the allegations of fraud against it. *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007). Rule 9(b)'s heightened pleading standard, however, only applies to the allegations concerning the participation in fraud. *Id.* Rule 10(b) does not require pleading to a heightened standard, but does apply to the entire claim.

be pursued exclusively through ERISA's remedial scheme and cannot be the basis of a UCL claim. Order at 20; *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1226 (9th Cir. 2005) (holding that a UCL claim could not be based upon liabilities created by ERISA).[6] Plaintiffs have, however, alleged a number of other economic harms caused by Defendants' misrepresentations. SAC ¶ 303. Plaintiffs allege an economic injury resulting from: (1) "the lost opportunity to make alternate payment arrangements with the Former Patients or to collect additional money from the Former Patients up front," which resulted in less compensation than they reasonably expected and were entitled to receive; (2) time and resources pursuing the claims process for claims that had already been paid directly to the patients; and (3) the lost opportunity to assist their patients with the administrative appeals process, resulting in Plaintiffs receiving less compensation for their services than they expected or were entitled to receive. *Id.* In a separate section, Plaintiffs also assert that but for the misrepresentations on assignability, they would have either not taken some patients, or still taken them and made alternative payment arrangements that would have reduced the cost of collection. SAC ¶ 288(c). The Court will address each of these potential grounds for UCL standing in turn.

In its prior Order, the Court addressed Plaintiffs' allegation that Defendants' misrepresentations deprived them of the opportunity to create an alternate payment arrangement in the context of Plaintiffs' equitable estoppel claim. Order at 18 n.8. The Court noted that the allegation did not establish an injury or reliance because Plaintiffs did not allege that they would have done anything differently, or that Defendants actually prevented Plaintiffs from doing anything differently. *Id.* The SAC is similarly deficient because the Court cannot understand exactly what economic injury Plaintiffs have suffered by the lost opportunity to make alternative payment arrangements or collect more money up front. No property interest of Plaintiffs' was diminished, they were not deprived of money to which they had a claim (outside of ERISA), they gave up none of their own money, and they were not forced to do something they otherwise would not have done. *See Kwikset Corp.*, 51 Cal. 4th at 885–86 (listing some

---

[6] In addition, Plaintiffs have not alleged that the failure to be paid directly was a result of any misrepresentation, regardless of whether the plan terms prohibit assignment or not.

ways that a plaintiff can show economic injury under the UCL). Plaintiffs may, however, be able to amend their complaint to remedy the lack of injury.

Plaintiffs' second asserted injury is the time and resources spent pursuing the claims process for claims that were paid directly to patients. SAC ¶ 303(b). However, the SAC does not allege that the time and resources Plaintiffs spent resulted in lost money or property, as is required by the UCL. *Kwikset Corp.*, 51 Cal. 4th at 885.

Third, Plaintiffs argue that the misrepresentations about assignability caused an economic injury because they prevented Plaintiffs from assisting in the appeals process, resulting in their receiving less compensation than they reasonably expected and were entitled to receive. SAC ¶ 302(c). This economic loss may be entirely preempted, because ERISA itself has its own detailed appeal procedures. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. However, even if this loss is not subject to ERISA's exclusive remedial scheme, there appears to be a step missing in the explanation. Although the SAC does not specify, Plaintiffs presumably signed some sort of contract with the patients to provide them services. The crux of Plaintiffs' complaint is that Defendants ignored the assignments and paid the patients directly. *E.g.*, SAC ¶ 256. Regardless of how much the patients received from their insurance company, the amount they owe Plaintiffs will still be determined entirely by the contract between Plaintiffs and the patients. Plaintiffs may certainly prefer to see that their patients receive the highest reimbursement amount possible during any appeals of their benefits claims. However, if the patients receive less money because Plaintiffs could not assist them in the appeals process, that economic loss appears to be borne solely by the patients, not Plaintiffs.

Plaintiffs' final argument is that, but for the misrepresentations, they would not have taken some patients. SAC ¶ 288(c). However, it is not clear that this allegation applies to any particular patient or corresponding Defendant. As discussed above, Plaintiffs must plead their UCL claims separately as to each different Defendant. While Plaintiffs are allowed to allege multiple statements of a UCL claim as long as one is sufficient, Plaintiffs must still state a sufficient UCL claim against each Blue Cross Defendant they allege violated the UCL. *See* Fed. R. Civ. P. 8(d)(2).

For the foregoing reasons, Plaintiffs' UCL claims are DISMISSED WITHOUT PREJUDICE.

**D. Other State-Law Claims for Non-ERISA Plans**

Plaintiffs' fourth claim seeks recovery from non-ERISA plan Defendants for misrepresentation, breach of contract, and "other state law."[7] SAC at 67. The only asserted basis for jurisdiction of these state law claims, which were raised for the first time in the SAC, is supplemental jurisdiction. SAC ¶ 7. The Court may only assert supplemental jurisdiction if the state law claims are so related to the ERISA claims that they form part of the same case or controversy under Article III. 28 U.S.C. § 1367(a). Whether the state and federal claims form part of the same case or controversy turns on whether they "derive from a common nucleus of operative fact," such that Plaintiffs "would ordinarily be expected to try them all in one judicial proceeding . . . ." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). The Ninth Circuit has found, for example, that state law and ERISA claims derive from a common nucleus of operative fact when they concern the same exact debt. *Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) ("The debt that Trustees seek to recover from Richardson under Nevada Revised Statute 608.150 is the same ERISA-related debt that Trustees also sought to recover from Desert Valley."). Although neither party addresses supplemental jurisdiction over these claims, federal courts have a duty to examine their subject matter jurisdiction whether or not the parties raise the issue. *See United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 966 (9th Cir. 2004) ("[A] district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments . . . .") (citing *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)).

As the SAC stands, the state law claims against non-ERISA plan Defendants involve different patients under different plans receiving different treatment on different days for potentially different issues, and misrepresentations about the assignability of benefits by some

---

[7] This claim is brought only against Defendants related to patients 23, 77, 97, 106, 112, 118, 202, 239, and 267. Pls.' Suppl. Information Ex. C. The SAC alleges that each plan is a non-ERISA plan. *E.g.*, SAC ¶ 331 ("Patient 23 was subject to a non-ERISA plan or policy during all times relevant to this complaint.").

but not all Defendants.[8] The misrepresentations regarding the assignability of benefits, were also made on different days, and may have been made by many different people and entities. SAC ¶ 331(d) (Patient 23, January 17, 2013); ¶ 376(d) (Patient 77, March 6, 2016); ¶ 396(d) (Patient 106, March 11, 2015); ¶ 540(d) (Patient 267, September 22, 2014). As such, it is not clear that any fact relevant to the claim for a patient in a non-ERISA plan shares any fact in common with a patient in an ERISA-governed plan. The only commonality between these claims appears to be that they are all against Blue Cross Defendants. Commonality of Defendants alone is plainly insufficient to support supplemental jurisdiction, because supplemental jurisdiction is exercised over claims, not parties. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3567.1 (3d ed.)

Plaintiffs must therefore amend their complaint to show how these claims form the same case or controversy as a claim over which this Court has original jurisdiction. Because state law claims are also not subject to ERISA's broader venue provisions, and some of the Plaintiffs operate facilities in other judicial districts, SAC ¶¶ 13–14, Plaintiffs should also allege facts that would allow the Court to determine whether it is the proper venue for these claims.[9] *Compare* 29 U.S.C. § 1132(e)(2) *with* 28 U.S.C. § 1391(b). Once the Court has established that it has jurisdiction to hear these claims, it can determine what pleading standards apply and whether Plaintiffs have stated claims upon which relief can be granted.

For the foregoing reasons, Plaintiffs' claims for violations of state laws other than the UCL are DISMISSED WITHOUT PREJUDICE.

### E. Additional AAPs

Some Defendants have presented additional idiosyncratic arguments for why certain claims against them should be dismissed. Plaintiffs believe that these arguments have been or should have been raised earlier and are now waived, but concede that the Court can revisit these

---

[8] Plaintiffs assert in their Opposition that this claim also seeks non-ERISA health insurance benefits that were assigned to Plaintiffs. Opp'n at 22. The Court does not read the SAC as asserting a state-law claim for insurance benefits based on assignment. *See* SAC ¶¶ 307–316. If Plaintiffs intend to bring such a claim, Plaintiffs will have to allege facts that show how a state-law claim for insurance benefits arises out of a common nucleus of facts with a different patient's ERISA claim.

[9] Relatedly, when they amend their complaint Plaintiffs should resolve whether Sovereign Health of Florida is still a plaintiff in this case.

issues. Pls.' Opp'n to HL Financial's Addendum at 3–4 (Dkt. 1144-6 at 4–5). For those Defendants that seek to clarify their previous submissions or correct the deficiencies the Court identified in its prior Order, the Court generally believes it is better to examine those issues now rather than force the parties to conduct unnecessary discovery.

**1. Patients 5 & 84**

Defendant Blue Cross Blue Shield of North Carolina ("BCBSNC") asks the Court to dismiss the ERISA claims related to patients 5 and 84 because those patients were enrolled in individual plans not governed by ERISA. BCBSNC's Addendum to Mot. (Dkt. 1101) at 2. Plaintiffs correctly point out that it is not clear from the plans provided by Defendant that these are individual plans. Plaintiffs' Opp'n to BCBSNC's Addendum (Dkt. 1144-10 at 1). Defendant does not actually point to any language in the documents they wish to incorporate by reference that indicates whether these are individual or employer plans. Defendant's only argument is that there is no language in the plans suggesting they are governed by ERISA, such as a "Statement of ERISA Rights." BCBSNC's Reply Addendum (Dkt. 1159) at 2. The Court cannot grant a motion to dismiss based on the absence of a Statement of ERISA Rights, particularly given that there is no requirement that ERISA documents be labeled as such. *Horn v. Berdon, Inc. Defined Ben. Pension Plan*, 938 F.2d 125, 127–28 (9th Cir. 1991). Defendant's motion to dismiss the state law claims against it related to Patients 5 and 84 is therefore DENIED.

**2. Patient 70**

Defendant Ntent, Inc., formerly known as Vertical Search Works, Inc., has provided a declaration asserting that its plan documents contain an enforceable AAP. Jones Decl. (Dkt. 1086). The Court construes this declaration as a motion to dismiss the ERISA claims based on the AAP. In its prior Order, the Court noted the conflict between Defendant Ntent, Inc.'s position that the Group Contract is a plan document, and the actual language of the Group Contract, which states both that the Group Contract is not intended to be a plan document, and that Ntent, Inc. was responsible for creating a plan document. Order at 81. The declaration provided by Defendant for this motion states that it adopted the Group Contract as its plan

document anyway. Jones Decl. ¶ 7–8. This, however, does not address the Court's concern that the document Defendant seeks to have incorporated by reference as a plan document states that it is not a plan document. Order at 81. To admit the declaration would require the Court to convert this motion into one for summary judgment, which the Court declines to do. Fed. R. Civ. P 12(d). As such, Defendant's motion to dismiss the ERISA claims related to Patient 70 is DENIED.

**3. Patient 74**

At the hearing on this Motion, the parties informed the Court that they had reached a stipulation that the plan for Patient 74 was governed by ERISA. Defendant has provided a document entitled "Health Benefits Booklet" (Dkt. 981) and a declaration stating that this booklet is Defendant's only plan document as well as its SPD. Castle Decl. (Dkt. 981) ¶ 4. However, the first page of the Health Benefits Booklet states that it "has been prepared by the Administrator, on behalf of the Employer, to help explain your health benefits." Health Benefits Booklet at M-3 (Dkt. 981 at 9). Defendant has not explained how the sole plan document could have been created by the plan administrator. *See Amara*, 563 U.S. at 427 (explaining that the employer writes the basic terms and conditions of the plan and the administrator is a trustee-like fiduciary who follows them). The Health Benefits Booklet also states that the coverage it describes is "based upon the conditions of the Administrative Services Agreement ["ASA"] issued to your Employer, and is based upon the benefit plan that your Employer chose for you." Health Benefits Booklet at M-3 (Dkt. 981 at 9). Covered Services are available to patients based on the ASA, which is comprised of itself, the Health Benefits Booklet, and any endorsements, amendments, or riders. *Id.* Contrary to Defendant's Declaration, Castle Decl. ¶ 7, the Health Benefits Booklet also includes an integration provision that states, "This Benefit Booklet, the [ASA], the Employer's application, any Riders, Endorsements or Attachments, and the individual applications of the Subscriber and Dependents, if any, constitute the entire agreement between the Plan and the Employer." Health Benefits Booklet at M-95 (Dkt. 981 at 101). It thus appears that it may be necessary to examine the ASA to determine whether it is a

plan document. Defendant's motion to dismiss on anti-assignment grounds is therefore DENIED.

**4. Patients 77 & 267**

Defendant Health Care Service Corporation asks the Court to dismiss the ERISA claims against the Defendants associated with patients 77 and 267 because the SAC alleges those patients' plans were not governed by ERISA. HSCS's Addendum to Mot. (Dkt. 1098) at 2–3. Plaintiffs' claim for ERISA benefits does not appear to be brought against defendants related to either patient 77 or 267. SAC ¶¶ 280(a)–(b). The second ERISA claim is brought against defendants related to both patients. SAC ¶ 283. Plaintiffs have said this was a scrivener's error with regard to Patient 77. Pls.' Opp'n to HCSC Addendum (Dkt. 1144-7) at 1. The parties agreed at the hearing on this Motion that Patient 267 is enrolled in a church plan, and the SAC alleges that the plan was a non-ERISA plan. SAC ¶ 540. Defendant's motion to dismiss the ERISA counts related to non-ERISA Patients 77 and 267 is therefore GRANTED.

**5. Patient 106**

It is unclear whether Patient 106 was enrolled in an ERISA-governed plan. Initially, Defendant Blue Cross Blue Shield Florida ("BCBSF") asked the Court to dismiss the ERISA claims against it because it was an ERISA-governed plan that had a valid AAP, and provided two declarations to that effect. Defs.' Addendum to Omnibus Mot. to Dismiss FAC (Dkt. 648) at 61; Deen Decl. (Dkt. 708) ¶ 3; Second Deen Decl. (Dkt. 956) ¶ 3. The Court, however, noted that the asserted plan document stated that it was a health plan for the City of Bradenton, and that local governments are not covered under ERISA. Order at 46. Defendant BCBSF now asks the Court to dismiss the ERISA claims against it because the SAC alleges that Patient 106's health insurance plan is not governed by ERISA. BCBSF's Addendum to Mot. (Dkt. 1099) at 2. The SAC does allege that Patient 106's health insurance plan is not governed by ERISA, it is a non-ERISA plan, SAC ¶ 283, but also specifically notes that it pleads its ERISA claims in the alternative for this patient because it is unclear whether this plan is an ERISA plan. SAC ¶ 308 n.3. Only in its Reply does Defendant BCBSF state that its initial declaration was a mistake.

BCBSF Reply (Dkt. 1154) at 2. The Court declines to resolve this issue at this stage. Defendant's motion to dismiss the ERISA claims against it is therefore DENIED.

**6. Patient 117**

The Court denied Defendant Anthem's previous motion to dismiss on anti-assignment grounds because the AAP it asserted was in a Benefit Booklet (Dkt. 1017-19) that stated it was only a summary of the plan terms, and that the Group Benefit Agreement (Dkt. 1017-20) contained the actual terms of coverage. Order at 96. Defendant Anthem has now provided more briefing to explain why the Benefit Booklet and Group Benefit Agreement it provided contained the enforceable plan terms. Anthem's Addendum to Mot. (Dkt. 1094). Regardless of whether the documents are plan documents, the SAC alleges that patient 117 began his treatment on or before November 11, 2014. SAC ¶ 404 (e). Defendant Anthem has provided a declaration stating the Benefit Booklet and Group Benefit Agreement it previously provided are the plan documents that were in effect during the relevant time. Anthem's Addendum to Mot. (Dkt. 1094) at 1–3 (citing Armknecht Decl. (Dkt. 1017) ¶¶ 40–41). However, the Group Benefit Agreement Defendant Anthem cites to states, "This Agreement becomes effective at 12:01a.m., Pacific Standard Time on December 1, 2014." The Court explained that it would not incorporate documents by reference if they were not in effect at the time of assignment, unless parties provided additional briefing on the issue. Order at 42. Defendant's motion to dismiss the ERISA claims related to Patient 117 on anti-assignment grounds is therefore DENIED.

**7. Patient 134**

Defendant HL Financial Services asks the Court to dismiss the ERISA claims against it for Patient 134 because it has an AAP in its plan documents. HL Financial Services's Addendum to Mot. (Dkt. 1097) at 8–9. In its previous Order, the Court expressed some hesitation about enforcing, at the motion to dismiss stage, a plan document that stated it constituted both the terms of the plan, and a summary of the plan. Order at 101–02. Defendant has provided significantly more detailed briefing for this Motion arguing that its Employee Benefits Plan Document and SPD (Dkt. 666-1) is a plan document. HL Financial Services's Addendum to Mot. at 3–7. The Court does not express an opinion about whether this document

also meets the requirements for an SPD, but the Court is persuaded that this is a governing plan document. Defendant has identified an AAP in this plan document, and Plaintiffs do not dispute the effect of this provision. Employee Benefits Plan Document and SPD at 13 (" . . . no Participant or beneficiary may transfer, assign or pledge any Plan benefits."); Pls.' Opp'n to HL Financial Services's Addendum (Dkt. 1144-6) at 3. Defendant's motion to dismiss the ERISA claims related to Patient 134 on anti-assignment grounds is therefore GRANTED.

**8. Patient 148**

In its previous motion asserting its AAP, Defendant Anthem provided three documents: 2012 SPD (Dkt. 945-1), Summary of Benefits (Dkt. 945-2), and Administrative Services Agreement (Dkt. 945-3). Order at 110. The Court denied Anthem's request to incorporate these documents by reference because the ASA suggested that other documents established and maintained the plan, there was no evidence that the 2012 SPD was the referenced Benefit Booklet, and no Evidence of Coverage had been provided. *Id.* Defendant now argues that the Benefit Booklet and Evidence of Coverage are the names that the ASA and Summary of Benefits use respectively for the 2012 SPD. ACWA/JPIA's Addendum to Mot. (Dkt. 1092) at 2. Anthem has not explained why two documents of a patient's ERISA plan would refer to the third document by different names, especially given that the ASA refers to a required Benefit Booklet over forty times. Anthem also provides no explanation as to why the ASA is a plan document, despite the Court identifying language suggesting that it may not be a plan document. Order at 110; *e.g.*, ASA at 3, 4 (Dkt. 945-3 at 4, 5). Because these issues are ill-suited for resolution through incorporation by reference at this stage, the Court declines to resolve them at this time. Defendant's motion to dismiss the ERISA claims related to Patient 148 on anti-assignment grounds is therefore DENIED.

**9. Patient 152**

The Court declined to enforce the AAP in Defendant Follett's Welfare Benefit Plan (Dkt. 957-1 at 21) because it had idiosyncratic language and Follett had not provided any briefing on the legal significance of that language, particularly the provision's use of the term "discretion." Order at 114–15. Based on the briefing for this Motion, the Court is persuaded

that incorporation by reference is appropriate, the relevant AAP is a Conditional AAP, and the condition is the Plan Administrator's consent. Follett's Addendum to Mot. (Dkt. 1091) at 1–2; Follett's Reply (Dkt. 1158) at 3. Discretion as it is used in this plan's AAP is thus unrelated to discretion as it often used in the ERISA context. *See, e.g.*, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (holding that a *de novo* standard of review applies unless the administrator has discretionary authority to determine eligibility for benefits or to construe the terms of the plan). Because these plan terms are now incorporated by reference into the SAC, Plaintiffs must allege that the plan administrator consented to the assignment in order to state a claim for ERISA benefits. Order at 34–35. Because the SAC makes no such allegation, Defendant's motion to dismiss the ERISA claims related to Patient 152 on anti-assignment grounds is GRANTED.

**10. Patients 175 & 225**

Defendants TAC Manufacturing, Inc., Employee Welfare Benefit Plan, and USUI International Group Health & Welfare Plan now for the first time ask the Court to dismiss the ERISA claims against them based on AAPs in the plan documents for Patients 175 and 225. Emp. Welfare Benefit Plan, and USUI Int'l Grp. Health & Welfare Plan Addendum to Mot. (Dkt. 1109) at 2. Defendants could have provided these documents in response to the FAC as hundreds of defendants did, or when they were ordered to do so by this Court almost a year before the hearing on the instant Motion. Order Re: Supplemental Briefing, June 24, 2016 ("Briefing Order") (Dkt. 904) at 8. The Court therefore declines to review these documents now. Defendant's motion to dismiss the ERISA claims related to Patients 175 and 225 on anti-assignment grounds is DENIED.

**11. Patient 256**

The Court previously denied Defendant Premera's motion to dismiss on anti-assignment grounds because it provided the December 2015 plan documents that had not yet gone into effect when Patient 256 received treatment and assigned his benefits to Medlink in February 2015. Order at 156; SAC ¶ 532; Pls.' Suppl. Information Ex. E at 8. Defendant has now provided the following documents that were in effect in February 2015: Group Contract (Dkt.

1107-2 at 2–3) and Benefit Booklet (Dkt. 1107-2 at 4–74). It appears, however, that only the first page of the Group Contract has been provided. Group Contract at 1. The Group Contract is therefore missing pages that were in both other plan documents from this same Defendant and later documents for this same patient. *Compare* Group Contract for Patient 256 (Dkt. 1107-2 at 2–3) *with* Group Contract for Patient 34 (Dkt. 1013-2 at 3) and Group Contract for Patient 256 (Dkt. 1013-5 at 3) (starting the following year). These missing pages might contain the integration clause to which Defendant cites that incorporates the Benefits Booklet and its AAP. Smith Decl. ¶ 7. However, because the full Group Contract was not provided to the Court, the Court cannot incorporate by reference the Benefits Booklet or its AAP. Defendant's motion to dismiss the ERISA claims against it related to Patient 256 on anti-assignment grounds is therefore DENIED.

**12. Patient 270**

The Court previously denied Defendant Blue Cross Blue Shield of Louisiana's ("BCBSLA") motion to dismiss on anti-assignment grounds because BCBSLA only provided the first fifty-two pages of a ninety-nine page document. Order at 162. Defendant has now provided the full plan document. Group Health Benefit Plan (Dkt. 1104-2). The Group Health Benefit Plan appears to meet the criteria for an ERISA plan document, and it contains a Choice AAP. Group Health Benefit Plan at 7–8, 68–69. The Court previously held that a Choice AAP prohibits assignment because it gives the plan administrator the ability to choose who it pays, which necessarily means that the patient can no longer assign his benefits and thus choose who gets paid. Order at 33–34. Defendant's motion to dismiss the ERISA claims related to Patient 270 on anti-assignment grounds is therefore GRANTED.

**V. CONCLUSION**

The Motion to Dismiss Claim 2 (equitable relief under ERISA) is GRANTED. The claim is DISMISSED WITH PREJUDICE. As such, the ERISA claims against Defendants related to the following patients with enforceable anti-assignment provisions are also DISMISSED WITH PREJUDICE: 1, 8, 11, 18, 19, 22, 26, 27, 28, 31, 34 , 37, 41, 47, 55, 61, 66, 67, 68, 69, 71, 72, 83, 85, 86, 87, 93, 96, 99, 102, 105 ,125 ,126 ,130, 134, 135, 137, 138,

140, 144, 149, 150, 152, 153, 154, 157, 161, 163, 171, 173, 174, 178, 180, 186, 191, 197, 198, 200, 203, 204, 207, 209, 210, 211, 215, 216, 238, 240, 243, 246, 247, 250, 254, 258, 261, 264, 268, 270, 271, and 274.

The Motion to Dismiss the ERISA Claims against Defendants related to Patients 77 and 267 is GRANTED. These claims are DISMISSED WITHOUT PREJUDICE.

The Motion to Dismiss Claim 3 (UCL) is GRANTED. The claim is DISMISSED WITHOUT PREJUDICE.

The Motion to Dismiss Claim 4 (other state law claims) is GRANTED. The claim is DISMISSED WITHOUT PREJUDICE.

The claims related to patients who made assignments to Medlink and not a Plaintiff are also DISMISSED WITHOUT PREJUDICE.

If Plaintiffs choose to amend their complaint in compliance with this Order, they may do so **on or before October 16, 2017**. The Court will not entertain future requests to incorporate plan documents by reference in order to enforce anti-assignment provisions.

DATED: September 25, 2017

David O. Carter

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE